# LTD CLAIM PROFILE

**Date:** 4/25/2024 **LFG** **Claim #:** 1220082997

| | | | | | |
|---|---|---|---|---|---|
| **Insurer:** | The Lincoln National Life Insurance Company | **Posted:** | 9/12/2022 | **Location:** | HOME |
| **Policy:** | 00001021227100000 - | **Status:** | EXTENDED | **User ID:** | LAW |
| | John Soules Foods, Inc. | **Business:** | TRUE LTD | | |

## Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | WILLIAM J REYNOLDS | **Phone:** | | **DOB:** | |
| **SSN:** | | **Sex:** | M | **Hire:** | 2/13/1997 |
| **Address:** | | **Ins Eff:** | 1/1/2016 | **Class:** | 2 |
| | | **Occ:** | MANAGEMENT ANALYST (|**DOT** ss. & k161167010ɜ titles: | | |
| | | **Salary:** | $8,583.06 | **Period:** | Monthly |

## Claim Information

**Special Provisions:** **Min Ben:** $600.81

**Ben:** 70% / 0% **A/S:** 0% **Age:** 68 **Elim Per:** 90 day

**DLW:** 5/6/2022 **DOD:** 5/7/2022 **S/A:** S **W/R:** N **M/N:** Y **D/A:** N **ADL:** **Ben Amt:** $6,008.14

**Max Duration:** RBDSS **Res ID:** NONE

**Diagnosis Pri:** F43.8 Other reactions to severe stress **Limits:**

**Sec:** F43.23 Adjustment disorder w ith mixed anxiety a **Prognosis:**

**Recovery Date:** 11/5/2023

## Benefit Information

| | | | | | |
|---|---|---|---|---|---|
| **Date Ben Begin:** | 8/5/2022 | **Months Paid:** | 0 | **Actual Age:** | 69 |
| **Modal:** | $6,008.14 | **Reins:** | $0.00 | **Reserve:** | $0.00 |

## Policy Information

| | | | | | |
|---|---|---|---|---|---|
| **M/N Limits:** | Y **Drug Limits:** Y | **Pension Sup:** | N | **Own Occ:** | 24 Mos |
| **SS Offset:** | Primary & Family | **Prex:** | 3/12 | | |
| **COLA:** | NONE | | | | |

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| SS EMP | NOT QUALIFY | 10/1/2022 | | | |
| SS RT PR | NOT QUALIFY | 8/5/2022 | | | |
| RET EMP | NOT QUALIFY | 8/5/2022 | | | |
| Fam Care | PENDING | 8/5/2022 | 8/5/2023 | $250.00 | |
| STD | TERMINATED | 5/7/2022 | 8/2/2022 | $1,141.00 | $0.00 |
| PIB | PENDING | 8/5/2022 | | $858.31 | |

## Dependent Information

| Type | DOB | Name |
|---|---|---|

## Alert Information

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|



EXHIBIT

3

**LTD CLAIM PROFILE**

**Date:** 4/25/2024 **LFG** **Claim #:** 1220082997

| | | |
|---|---|---|
| W | MENTAL ILLNESS LIMITATION | 12/19/2022 |

**Action Plan**

# Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | WILLIAM REYNOLDS | | | **Occupation:** | MANAGEMENT ANALYST (profess. & kin.) alternate titles: | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 9/12/2022 | **Months Dis:** | 23 |
| **Claim #:** | 1220082997 | **DOD:** | 5/7/2022 | **Ben:** | $6,008.14 | **Months Pd:** | 0 |
| **Coverage:** | LTD | **Status:** | EXTENDED | | | **Assignee:** | LAW |
| **Policy Holder:** | John Soules Foods, Inc. | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | | | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 7/26/2023 | Appeal | 1 | Level 1 | Closed | SMMCSHA |
| 5/4/2023 11:27:06 AM | Appeal | 1 | Level 1 | New | SMMCSHA |
| 12/5/2023 | Appeal | 3 | Level 1 | Closed | JXBOOTH |
| | Level 2 appeal already set up and assigned to me. closing marked up in error. - JXBOOTH - Dec 05, 2023 10:19:13 am | | | | |
| 1/4/2024 | Appeal | 4 | Level 1 | Closed | JXBOOTH |
| 2/5/2024 | Appeal | 5 | Level 1 | Closed | JXBOOTH |
| | Appeal set up in error, level 2 appeal already in process. - JXBOOTH - Feb 05, 2024 01:41:17 pm | | | | |
| 3/7/2024 | Appeal | 2 | Level 2 | Closed | JXBOOTH |

1st or 2nd Level Appeal: Level 2
Date Appeal Received:12/01/2023
30th day 12/31/2023
45th Day:01/15/2024
90th Day:2/29/2024

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed: JSOULES3 - John Soules Foods

Claim Demographics
Current Age: 70
Situs State:TXState Language applicable (y/n)
State of Residence:TXState Language applicable (y/n)
Estimated Net benefit amount(s):$6008.14
Date of Disability: 05/07/2022
EP: 90
Benefit Commencement Date: 08/05/2022
Benefit Paid/Approved To Date:n/a
Change in Definition (COD) Date: 24 mo 8/5/2024 - 24 mo for specified injuries
Max Duration Date: 11/05/2023
Occupation / Location in AWD: management analyst
Physical Demand Level of Occ:sedentary
Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning
Co-Morbid Diagnoses: adjustment disorder w ith mixed anxiety and depression. obesity
ERISA or NON-ERISA: ERISA per FE
Attorney: J. Price McNamara 225-201-8311
Riders:PIB, fam care
STD claim status:1220042749 - closed
LW claim status:n/a
LTD claim status:appealed

Pre Ex investigation required (y/n)n/a
AO investigation required (y/n)n/a
SSDI Aw ard information needed/requested - if not - w hy - not eligible

Notes: Contractual Limits
Legal Action - 3 years
Proof of claim - 90 days after the end of the elim

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Initial Claim Decision:
Reason/Date of denial: 12/16/22 - not TDOO
Type of Medical Review , Name, & Specialty: ECN - Steven Choi - psychiatry peer; Lensw orth Ellis - IM peer - ICP;
Prior peers:

Level 1 Appeal:
Reason/Date of denial: 7/21/2023 - not TDOO
Type of Medical Review , Name, & Specialty: NDC

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Mariana Flakas - cardiology
Last Date of Service: 10/6/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: James Hoff
Last Date of Service: 10/7/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Clint Carter - 903-630-7130 (f)903-705-0992
Last Date of Service: 10/23/22
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Lisa Leffler - 903-907-7002
Last Date of Service: 4/6/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Clinton Carter
Last Date of Service: 11/03/2022
Restrictions and Limitations/Duration: Mental Status Exam

AP Name/Specialty/Phone Number: Sarah Jordan - LPC
Last Date of Service:
Restrictions and Limitations/Duration: 10/21/22 BH form

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"Appealing determination to deny and provides additional evidence and reserves the right to provide further evidence

Information Submitted w ith appeal and not previously review ed:
"OV notes from Dr. Mariana Flakas dated 5/12/23-10/6/23
"OV notes from Dr. James Hoff dated 10/6/23-10/7/23

PATH: Sent attorney and ER ack letters, set up tasks, requested IM and psychiatry peer.

- JXBOOTH - Dec 04, 2023 02:24:06 pm

received Im an psychiatry peer - JXBOOTH - Dec 18, 2023 08:16:54 am

Psyhc peer noted no R&L's, IM peers does not support ot TDOO. Sent RTR letter. - JXBOOTH - Dec 18, 2023 01:06:20 pm

**Chronological Activity List**

Rcvd response from law office including a letter from Clint Carter and his physicians restrictions. - JXBOOTH - Jan 04, 2024 02:00:58 pm

Rqtd IM peer addendum. - JXBOOTH - Jan 04, 2024 02:12:22 pm

Rcvd addendum, dies not support. Sending RTR letter and resuming tolling. - JXBOOTH - Jan 16, 2024 09:50:09 am

Rcvd mailed copy of 1/3/24 attorney letter and medical - JXBOOTH - Jan 17, 2024 11:25:59 am

2/02/2024 - Received letter from attorney, 12/12/23 OV notes from M. Flaskas, 3/27/23 letter from Dr Carter and his recommended restrictions, - JXBOOTH - Feb 05, 2024 02:26:25 pm

Submitted IM and Psych addendums, tolling stopped - JXBOOTH - Feb 05, 2024 03:08:19 pm

rcvd duplicate 2/2/24 letter(mailed) and medical records. - JXBOOTH - Feb 12, 2024 12:56:27 pm

Rcvd IM addendum, R&L's did not change. - JXBOOTH - Feb 12, 2024 02:39:02 pm

Rcvd psych peer, no changes to R&L's. Sent RTR letter and resumed tolling. - JXBOOTH - Feb 14, 2024 03:30:24 pm

Rcvd letter, from law office, clmt w ill not be submitting additional information. - JXBOOTH - Mar 06, 2024 09:57:41 am

PATH: Complete appeal UH decision, send letters and close appeal handling. - JXBOOTH - Mar 07, 2024 02:11:48 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2023 9:14:20 AM | Appeal | 2 | Level 2 | New | JXBOOTH |

1st or 2nd Level Appeal: Level 2
Date Appeal Received:12/01/2023
30th day12/31/2023
45th Day:01/15/2024
90th Day:2/29/2024

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed: JSOULES3 - John Soules Foods

Claim Demographics
Current Age: 70
Situs State:TXState Language applicable (y/n)
State of Residence:TXState Language applicable (y/n)
Estimated Net benefit amount(s):$6008.14
Date of Disability: 05/07/2022
EP: 90
Benefit Commencement Date: 08/05/2022
Benefit Paid/Approved To Date:n/a
Change in Definition (COD) Date: 24 mo 8/5/2024 - 24 mo for specified injuries
Max Duration Date: 11/05/2023
Occupation / Location in AWD: management analyst
Physical Demand Level of Occ:sedentary
Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning
Co-Morbid Diagnoses: adjustment disorder w ith mixed anxiety and depression. obesity
ERISA or NON-ERISA: ERISA per FE
Attorney: J. Price McNamara 225-201-8311
Riders:PIB, fam care
STD claim status:1220042749 - closed
LW claim status:n/a
LTD claim status:appealed

Pre Ex investigation required (y/n)n/a
AO investigation required (y/n)n/a

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

SSDI Award information needed/requested - if not - why - not eligible

Notes: Contractual Limits
Legal Action - 3 years
Proof of claim - 90 days after the end of the elim

Initial Claim Decision:
Reason/Date of denial: 12/16/22 - not TDOO
Type of Medical Review, Name, & Specialty: ECN - Steven Choi - psychiatry peer; Lensworth Ellis - IM peer - ICP;
Prior peers:

Level 1 Appeal:
Reason/Date of denial: 7/21/2023 - not TDOO
Type of Medical Review, Name, & Specialty: NDC

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Mariana Flakas - cardiology
Last Date of Service: 10/6/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: James Hoff
Last Date of Service: 10/7/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Clint Carter - 903-630-7130 (f)903-705-0992
Last Date of Service: 10/23/22
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Lisa Leffler - 903-907-7002
Last Date of Service: 4/6/23
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Clinton Carter
Last Date of Service: 11/03/2022
Restrictions and Limitations/Duration: Mental Status Exam

AP Name/Specialty/Phone Number: Sarah Jordan - LPC
Last Date of Service:
Restrictions and Limitations/Duration: 10/21/22 BH form

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"Appealing determination to deny and provides additional evidence and reserves the right to provide further evidence

Information Submitted with appeal and not previously reviewed:
"OV notes from Dr. Mariana Flakas dated 5/12/23-10/6/23
"OV notes from Dr. James Hoff dated 10/6/23-10/7/23

PATH: Sent attorney and ER ack letters, set up tasks, requested IM and psychiatry peer.

**Chronological Activity List**

- JXBOOTH - Dec 04, 2023 02:24:06 pm

received Im an psychiatry peer - JXBOOTH - Dec 18, 2023 08:16:54 am

Psyhc peer noted no R&L's, IM peers does not support ot TDOO. Sent RTR letter. - JXBOOTH - Dec 18, 2023 01:06:20 pm

Rcvd response from law office including a letter from Clint Carter and his physicians restrictions. - JXBOOTH - Jan 04, 2024 02:00:58 pm

Rqtd IM peer addendum. - JXBOOTH - Jan 04, 2024 02:12:22 pm

Rcvd addendum, dies not support. Sending RTR letter and resuming tolling. - JXBOOTH - Jan 16, 2024 09:50:09 am

Rcvd mailed copy of 1/3/24 attorney letter and medical - JXBOOTH - Jan 17, 2024 11:25:59 am

2/02/2024 - Received letter from attorney, 12/12/23 OV notes from M. Flaskas, 3/27/23 letter from Dr Carter and his recommended restrictions, - JXBOOTH - Feb 05, 2024 02:26:25 pm

Submitted IM and Psych addendums, tolling stopped - JXBOOTH - Feb 05, 2024 03:08:19 pm

rcvd duplicate 2/2/24 letter(mailed) and medical records. - JXBOOTH - Feb 12, 2024 12:56:27 pm

Rcvd IM addendum, R&L's did not change. - JXBOOTH - Feb 12, 2024 02:39:02 pm

Rcvd psych peer, no changes to R&L's. Sent RTR letter and resumed tolling. - JXBOOTH - Feb 14, 2024 03:30:24 pm

Rcvd letter, from law office, clmt w ill not be submitting additional information. - JXBOOTH - Mar 06, 2024 09:57:41 am

PATH: Complete appeal UH decision, send letters and close appeal handling. - JXBOOTH - Mar 07, 2024 02:11:48 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/30/1899 | Claim Tasks | 7 | Begin AO Investigation | Completed | PKKWE5 |
| 12/30/1899 | Claim Tasks | 9 | Unable to process correspondence | Completed | PKKWE5 |
| | "Disability Acknow ledgement" letter not sent due to issues w ith contact list. There w as no entry for CLMLOC | | | | |
| 12/30/1899 | Claim Tasks | 10 | Unable to process correspondence | Completed | PKKWE5 |
| | Letter "Disability Acknow ledgement" w as not sent: No Claim location contact exists for this claim. | | | | |
| 12/30/1899 | Claim Tasks | 15 | 105 Day.Need Decision/Extension | Completed | PKKWE5 |
| 9/21/2022 | Claim Tasks | 1 | Eligibility Notes | Completed | PKKWE5 |
| | Please verify the STD claim/class for EE before making any outreach to ER and EE. STD Class 3 EE's do not have LTD coverage, if Class 3 STD claim has been transitioned to LTD a closure for no coverage should be processed. (04/06/2022)<br>- BRMCLMINTK - Sep 21, 2022 08:17:19 am | | | | |
| 9/21/2022 | Claim Tasks | 2 | Missing Tax Info on Cert Ref | Completed | PKKWE5 |
| | Task completed by system 21-SEP-22 09.04.17.027733 AM -05:00 | | | | |
| 9/21/2022 | Claim Tasks | 3 | Missing Info | Completed | PKKWE5 |
| | The follow ing fields contained no data w hen the claim form w as submitted: SALARY,SALARY_PERIOD,CLASS_OF_COV,ACCOUNT_ID,HIRE_DATE | | | | |
| 9/21/2022 | Claim Tasks | 4 | Verify Offsets | Completed | PKKWE5 |
| | Verify Offsets | | | | |
| 9/21/2022 | Claim Tasks | 5 | Verify Class | Completed | PKKWE5 |
| | Verify Class | | | | |
| 9/21/2022 | Claim Tasks | 6 | Verify BLOC / CLOC | Completed | PKKWE5 |
| | Verify Billing Location | | | | |
| 9/26/2022 | Claim Tasks | 8 | Full retirement age met | Completed | LLJONES |
| 9/21/2022 8:10:53 PM | Claim Tasks | 8 | Full retirement age met | Requested | LLJONES |
| 10/5/2022 | Claim Tasks | 11 | Full retirement age met | Completed | LLJONES |

left vmail for clmt req c/b on ssrt benfit.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

LTD claim form signed dated by clmt 9/9/2022
states other income rec'd is ssrt. dated started 8/10/2022 and date filed 5/6/2022 amount: $2936.
---
reset f/u for response from clmt. - LLJONES - Sep 26, 2022 01:41:34 pm

no response from clmt
mailed clmt ssrt ltr req ssrt noa ltr reset f/u response. - LLJONES - Oct 04, 2022 08:05:43 am

rec'd from clmt BVL from ssa for ssrt stating from 12/1/2021 to 12/1/2021 ssrt benefit w as $2762.00
DOD w as 5/7/2022 -ssrt is not elig offiset. updated offset grid and closed both claim task and ss referral. - LLJONES - Oct 05, 2022 07:10:08 am

| | | | | | |
|---|---|---|---|---|---|
| 9/26/2022 1:31:44 PM | Claim Tasks | 11 | Full retirement age met | Requested | LLJONES |

left vmail for clmt req c/b on ssrt benfit.
LTD claim form signed dated by clmt 9/9/2022
states other income rec'd is ssrt. dated started 8/10/2022 and date filed 5/6/2022 amount: $2936.
---
reset f/u for response from clmt. - LLJONES - Sep 26, 2022 01:41:34 pm

no response from clmt
mailed clmt ssrt ltr req ssrt noa ltr reset f/u response. - LLJONES - Oct 04, 2022 08:05:43 am

rec'd from clmt BVL from ssa for ssrt stating from 12/1/2021 to 12/1/2021 ssrt benefit w as $2762.00
DOD w as 5/7/2022 -ssrt is not elig offiset. updated offset grid and closed both claim task and ss referral. - LLJONES - Oct 05, 2022 07:10:08 am

| | | | | | |
|---|---|---|---|---|---|
| 10/21/2022 | Claim Tasks | 13 | 45 Day.Need Decision/Extension | Completed | PKKWE5 |
| 10/20/2022 8:11:30 PM | Claim Tasks | 13 | 45 Day.Need Decision/Extension | Requested | PKKWE5 |
| 11/21/2022 | Claim Tasks | 14 | 75 Day.Need Decision/Extension | Completed | PKKWE5 |
| 11/18/2022 8:14:52 PM | Claim Tasks | 14 | 75 Day.Need Decision/Extension | Requested | PKKWE5 |
| 12/20/2022 | Claim Tasks | 12 | Call Claimant | Completed | PKKWE5 |

Complete Initial Calls
Aw ait MR from MyMD Select/Clint Carter, Other Providers, SSRT NOA
Peer Review upon receipt

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

Sent Pend Letter/MR Follow Up Request Letter 09/26/2022.
Send 45 Day/Final Pend/Second Request Letter and place call to EE if not received by D30.
Send for Management Review for possible FTP closure if not received by D45.

D30: 10/26/2022
D45: 11/10/2022
- PKKWE5 - Sep 26, 2022 06:24:44 pm

MR received from MyMD Select/Clint Carter
Requested clarification from EE if any additional MR w ill be provided.
Send for Peer Review 10/14/2022 if no response.

Send 45 Day/Final Pend/Second Request Letter and place call to EE if not received by D30.
Send for Management Review for possible FTP closure if not received by D45.

D30: 10/26/2022
D45: 11/10/2022
- PKKWE5 - Oct 07, 2022 04:41:16 pm

Sent 45 Day/Final Pend/Second Request Letter and placed call to EE 10/21/2022.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Send for Management Review for possible FTP closure if not received by D45.

D45: 11/10/2022
- PKKWE5 - Oct 21, 2022 09:41:03 am

Management recommended w aiting for MR from Sarah S Jorden, MA, LPC.
Direct to Peer Review upon receipt.
- PKKWE5 - Nov 10, 2022 03:03:46 pm

Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.

Requested BH Peer Review for behavioral
Requested Clinical Review for physical.
- PKKWE5 - Nov 14, 2022 03:29:19 pm

Sent 75 Day Letter and sent for Director Review 11/21/2022.

Claim is currently pending BH Peer Review for behavioral and Peer Review for physical.
- PKKWE5 - Nov 21, 2022 11:11:43 am

Management in agreement w ith denial.
Sent letter and notified EE.
- PKKWE5 - Dec 20, 2022 08:04:43 am

| | | | | | |
|---|---|---|---|---|---|
| 9/26/2022 6:24:37 PM | Claim Tasks | 12 | Call Claimant | Requested | PKKWE5 |

Complete Initial Calls
Aw ait MR from MyMD Select/Clint Carter, Other Providers, SSRT NOA
Peer Review upon receipt

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

Sent Pend Letter/MR Follow Up Request Letter 09/26/2022.
Send 45 Day/Final Pend/Second Request Letter and place call to EE if not received by D30.
Send for Management Review for possible FTP closure if not received by D45.

D30: 10/26/2022
D45: 11/10/2022
- PKKWE5 - Sep 26, 2022 06:24:44 pm

MR received from MyMD Select/Clint Carter
Requested clarification from EE if any additional MR w ill be provided.
Send for Peer Review 10/14/2022 if no response.

Send 45 Day/Final Pend/Second Request Letter and place call to EE if not received by D30.
Send for Management Review for possible FTP closure if not received by D45.

D30: 10/26/2022
D45: 11/10/2022
- PKKWE5 - Oct 07, 2022 04:41:16 pm

Sent 45 Day/Final Pend/Second Request Letter and placed call to EE 10/21/2022.
Send for Management Review for possible FTP closure if not received by D45.

D45: 11/10/2022
- PKKWE5 - Oct 21, 2022 09:41:03 am

Management recommended w aiting for MR from Sarah S Jorden, MA, LPC.
Direct to Peer Review upon receipt.
- PKKWE5 - Nov 10, 2022 03:03:46 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.<br><br>Requested BH Peer Review for behavioral<br>Requested Clinical Review for physical.<br>- PKKWE5 - Nov 14, 2022 03:29:19 pm<br><br>Sent 75 Day Letter and sent for Director Review 11/21/2022.<br><br>Claim is currently pending BH Peer Review for behavioral and Peer Review for physical.<br>- PKKWE5 - Nov 21, 2022 11:11:43 am<br><br>Management in agreement w ith denial.<br>Sent letter and notified EE.<br>- PKKWE5 - Dec 20, 2022 08:04:43 am | | | | |
| 1/26/2023 | Claim Tasks | 16 | File scan request | Completed | CAANI7 |
| | Prepare file copy for LTD 1220082997 for Attorney<br>Email: support@jpricemcnamara.com<br>- PKKWE5 - Jan 24, 2023 01:30:16 pm<br><br>Copy has been prepared, it is in the U:\Claims Support\File Copies 2017 Folder as:<br><br>W REYNOLDS LTD 1220082997 01-25-2023<br><br>Please review , advise if any pages need to be removed due to PHI and flip the task back into my initials w ith the requestor's email address. I w ill then send the file copy securely via email to them w ith you CC'd ** Please note to notify the requestor that they w ill only have 24 hours to access the item once it is sent to them.**<br>- CAANI7 - Jan 25, 2023 12:38:55 pm<br><br>File good to send.<br>- PKKWE5 - Jan 25, 2023 01:42:41 pm<br><br>Email of file copy has been sent securely to requestor and CE - CAANI7 - Jan 26, 2023 12:30:27 pm | | | | |
| 1/24/2023 1:28:35 PM | Claim Tasks | 16 | File scan request | Requested | CAANI7 |
| | Prepare file copy for LTD 1220082997 for Attorney<br>Email: support@jpricemcnamara.com<br>- PKKWE5 - Jan 24, 2023 01:30:16 pm<br><br>Copy has been prepared, it is in the U:\Claims Support\File Copies 2017 Folder as:<br><br>W REYNOLDS LTD 1220082997 01-25-2023<br><br>Please review , advise if any pages need to be removed due to PHI and flip the task back into my initials w ith the requestor's email address. I w ill then send the file copy securely via email to them w ith you CC'd ** Please note to notify the requestor that they w ill only have 24 hours to access the item once it is sent to them.**<br>- CAANI7 - Jan 25, 2023 12:38:55 pm<br><br>File good to send.<br>- PKKWE5 - Jan 25, 2023 01:42:41 pm<br><br>Email of file copy has been sent securely to requestor and CE - CAANI7 - Jan 26, 2023 12:30:27 pm | | | | |
| 5/10/2023 | Claim Tasks | 17 | Appeal - 4 day notice | Completed | SMMCSHA |
| 5/9/2023 8:00:55 PM | Claim Tasks | 17 | Appeal - 4 day notice | Requested | SMMCSHA |
| 6/13/2023 | Claim Tasks | 19 | Appeal - 45 Day Reminder | Completed | SMMCSHA |
| 6/12/2023 8:00:50 PM | Claim Tasks | 19 | Appeal - 45 Day Reminder | Requested | SMMCSHA |
| 7/21/2023 | Claim Tasks | 18 | Update Claim Direction | Completed | SMMCSHA |
| | 30th day06/11/2023<br>45th Day:06/17/2023<br>90th Day:08/01/2023 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | tolling with ack letter and ext taken - SMMCSHA - May 11, 2023 12:50:33 pm | | | | |
| | recved recs tolling ends - tolled 28 days NEW 90th = 09/06/2023 - SMMCSHA - Jun 14, 2023 02:06:19 pm | | | | |
| | sent RTR letter today with NDC and twoprior peers. response due 07/19/2023. tollig again - SMMCSHA - Jun 28, 2023 10:17:44 am | | | | |
| 5/11/2023 12:49:47 PM | Claim Tasks | 18 | Update Claim Direction | Requested | SMMCSHA |
| | 30th day06/11/2023<br>45th Day:06/17/2023<br>90th Day:08/01/2023 | | | | |
| | tolling with ack letter and ext taken - SMMCSHA - May 11, 2023 12:50:33 pm | | | | |
| | recved recs tolling ends - tolled 28 days NEW 90th = 09/06/2023 - SMMCSHA - Jun 14, 2023 02:06:19 pm | | | | |
| | sent RTR letter today with NDC and twoprior peers. response due 07/19/2023. tollig again - SMMCSHA - Jun 28, 2023 10:17:44 am | | | | |
| 7/26/2023 | Claim Tasks | 20 | Update Claim Direction | Completed | SMMCSHA |
| | sent for DR - SMMCSHA - Jul 21, 2023 03:42:19 pm | | | | |
| 7/21/2023 3:42:01 PM | Claim Tasks | 20 | Update Claim Direction | Requested | SMMCSHA |
| | sent for DR - SMMCSHA - Jul 21, 2023 03:42:19 pm | | | | |
| 10/3/2023 | Claim Tasks | 21 | Paper File | Completed | DMQMA5 |
| | Please prepare a full file copy. As a reminder the file copy should include the following information, in this order.<br><br>1. Claim Profile<br>2. Chronological Activity List<br>3. Policy at time of DOD<br>4. Certificate at time of DOD<br>5. All AWD/Paper documents.<br><br>Please save the following file(s) in the Legal Requests folder:<br><br>LTD 1220082997<br>STD 1220042749<br>- DMQMA5 - Oct 02, 2023 10:26:02 am<br><br>files can now be located in the legal folder in OneDrive - DAMKE5 - Oct 03, 2023 02:18:34 pm | | | | |
| 10/2/2023 10:25:09 AM | Claim Tasks | 21 | Paper File | Requested | DMQMA5 |
| | Please prepare a full file copy. As a reminder the file copy should include the following information, in this order.<br><br>1. Claim Profile<br>2. Chronological Activity List<br>3. Policy at time of DOD<br>4. Certificate at time of DOD<br>5. All AWD/Paper documents.<br><br>Please save the following file(s) in the Legal Requests folder:<br><br>LTD 1220082997<br>STD 1220042749<br>- DMQMA5 - Oct 02, 2023 10:26:02 am<br><br>files can now be located in the legal folder in OneDrive - DAMKE5 - Oct 03, 2023 02:18:34 pm | | | | |
| 10/3/2023 | Claim Tasks | 22 | Max Duration Notice | Completed | LAW |
| 10/2/2023 8:02:46 PM | Claim Tasks | 22 | Max Duration Notice | Requested | LAW |

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/17/2024 | Claim Tasks | 23 | Appeal - 45 Day Reminder | Completed | JXBOOTH |
| | 30th day 12/31/2023 45th day 1/15/2024 - JXBOOTH - Dec 04, 2023 02:14:38 pm<br>rtr sent 12/18 - JXBOOTH - Dec 18, 2023 01:06:39 pm | | | | |
| 12/4/2023 2:14:06 PM | Claim Tasks | 23 | Appeal - 45 Day Reminder | Requested | JXBOOTH |
| | 30th day 12/31/2023 45th day 1/15/2024 - JXBOOTH - Dec 04, 2023 02:14:38 pm<br>rtr sent 12/18 - JXBOOTH - Dec 18, 2023 01:06:39 pm | | | | |
| 2/5/2024 | Claim Tasks | 26 | Update Claim Information | Completed | JXBOOTH |
| | ready for im and psych addendums. - JXBOOTH - Feb 05, 2024 02:26:59 pm | | | | |
| 3/7/2024 | Claim Tasks | 24 | Appeal 90 Day Extension | Completed | JXBOOTH |
| | 90th day 2/29/2024 - JXBOOTH - Dec 04, 2023 02:15:08 pm<br>new 90th day 4/5/24 - JXBOOTH - Feb 05, 2024 03:08:41 pm | | | | |
| 12/4/2023 2:14:41 PM | Claim Tasks | 24 | Appeal 90 Day Extension | Requested | JXBOOTH |
| | 90th day 2/29/2024 - JXBOOTH - Dec 04, 2023 02:15:08 pm<br>new 90th day 4/5/24 - JXBOOTH - Feb 05, 2024 03:08:41 pm | | | | |
| 3/7/2024 | Claim Tasks | 25 | Update Claim Information | Completed | JXBOOTH |

Today's Date12/18/2023
Appeal Rcvd Date12/1/2023
Days Since Received18
Extension Sent Date12/18/2023
Tolling Start DateTolling end DateTolling Days
12/18/202330
0
0
0
0
0
0
Tolling Days30
90th Day of Active Review 3/30/2024
Active Review Days Remaining to 90th Day102

- JXBOOTH - Dec 18, 2023 01:08:35 pm

Today's Date12/18/2023
Appeal Rcvd Date12/1/2023
Days Since Received18
Extension Sent Date12/18/2023
Tolling Start DateTolling end DateTolling Days
12/18/20231/4/202418
1/16/202430
0
0
0
0
0
Tolling Days48
90th Day of Active Review 4/17/2024
Active Review Days Remaining to 90th Day120

rtr sent - JXBOOTH - Jan 16, 2024 09:50:35 am

Today's Date12/18/2023
Appeal Rcvd Date12/1/2023
Days Since Received18
Extension Sent Date12/18/2023
Tolling Start DateTolling end DateTolling Days
12/18/20231/4/202418
1/16/20242/2/202418
0

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | 0<br>0<br>0<br>0<br>Tolling Days36<br>90th Day of Active Review 4/5/2024<br>Active Review Days Remaining to 90th Day108<br>- JXBOOTH - Feb 05, 2024 03:09:15 pm<br><br>Today's Date12/18/2023<br>Appeal Rcvd Date12/1/2023<br>Days Since Received18<br>Extension Sent Date12/18/2023<br>Tolling Start DateTolling end DateTolling Days<br>12/18/20231/4/202418<br>1/16/20242/2/202418<br>2/14/202430<br>0<br>0<br>0<br>0<br>Tolling Days66<br>90th Day of Active Review 5/5/2024<br>Active Review Days Remaining to 90th Day138<br><br>sent rtr - JXBOOTH - Feb 14, 2024 03:30:52 pm<br><br>proceed w ith decision - JXBOOTH - Mar 06, 2024 09:58:06 am | | | | |
| 12/18/2023 1:07:11 PM | Claim Tasks | 25 | Update Claim Information | Requested | JXBOOTH |
| | Today's Date12/18/2023<br>Appeal Rcvd Date12/1/2023<br>Days Since Received18<br>Extension Sent Date12/18/2023<br>Tolling Start DateTolling end DateTolling Days<br>12/18/202330<br>0<br>0<br>0<br>0<br>0<br>0<br>Tolling Days30<br>90th Day of Active Review 3/30/2024<br>Active Review Days Remaining to 90th Day102<br><br>- JXBOOTH - Dec 18, 2023 01:08:35 pm<br><br>Today's Date12/18/2023<br>Appeal Rcvd Date12/1/2023<br>Days Since Received18<br>Extension Sent Date12/18/2023<br>Tolling Start DateTolling end DateTolling Days<br>12/18/20231/4/202418<br>1/16/202430<br>0<br>0<br>0<br>0<br>0<br>Tolling Days48 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | 90th Day of Active Review 4/17/2024<br>Active Review Days Remaining to 90th Day120<br><br>rtr sent - JXBOOTH - Jan 16, 2024 09:50:35 am<br><br>Today's Date12/18/2023<br>Appeal Rcvd Date12/1/2023<br>Days Since Received18<br>Extension Sent Date12/18/2023<br>Tolling Start DateTolling end DateTolling Days<br>12/18/20231/4/202418<br>1/16/20242/2/202418<br>0<br>0<br>0<br>0<br>0<br>Tolling Days36<br>90th Day of Active Review 4/5/2024<br>Active Review Days Remaining to 90th Day108<br>- JXBOOTH - Feb 05, 2024 03:09:15 pm<br><br>Today's Date12/18/2023<br>Appeal Rcvd Date12/1/2023<br>Days Since Received18<br>Extension Sent Date12/18/2023<br>Tolling Start DateTolling end DateTolling Days<br>12/18/20231/4/202418<br>1/16/20242/2/202418<br>2/14/202430<br>0<br>0<br>0<br>0<br>Tolling Days66<br>90th Day of Active Review 5/5/2024<br>Active Review Days Remaining to 90th Day138<br><br>sent rtr - JXBOOTH - Feb 14, 2024 03:30:52 pm<br><br>proceed w ith decision - JXBOOTH - Mar 06, 2024 09:58:06 am | | | | |
| 4/23/2024 11:23:13 AM | Claim Tasks | 27 | Paper File | Follow Up | CHGLA1 |
| | Please prepare a full file copy. As a reminder the file copy should include the follow ing information, in this order.<br><br>1. Claim Profile<br>2. Chronological Activity List<br>3. Policy at time of DOD<br>4. Certificate at time of DOD<br>5. All AWD/Paper documents.<br><br>Please save the follow ing file(s) in the Legal Requests folder:<br><br>LTD 1220082997<br>STD 1220042749<br>- DMQMA5 - Apr 23, 2024 11:24:20 am | | | | |
| 9/15/2022 | Documents/Mail | 14 | Claim Form - Authorization | Completed | PKKWE5 |
| | 2022-09-17-12.23.15.164120O01 | | | | |
| 9/15/2022 | Documents/Mail | 15 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| | 2022-09-17-12.23.32.002120O01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/15/2022 | Documents/Mail<br>2022-09-15-16.35.00.990920O01 | 13 | Email | Completed | PKKWE5 |
| 9/15/2022 | Documents/Mail<br>2022-09-17-12.24.14.421120O01 | 16 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-21-14.20.49.744120O01 | 11 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-17.17.08.681000O01 | 6 | Medical Records | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-09.50.19.393980O01 | 1 | Email | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-17.17.44.200000O01 | 3 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-17.17.08.681000O01 | 2 | Medical Records | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-21-14.19.48.044120O01 | 10 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-21-14.21.30.098120O01 | 12 | Claim Form - Authorization | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-09.50.19.393980O01 | 5 | Email | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-17.17.44.200000O01 | 7 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-20-11.41.50.855040O01 | 8 | Email | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-12-08.39.14.383980O01 | 4 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/21/2022 | Documents/Mail<br>2022-09-20-11.41.50.876040O01 | 9 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| 9/26/2022 | Documents/Mail<br>Pend Ltr to Employee | 17 | Pend Ltr to Employee | Completed | PKKWE5 |
| 9/26/2022 | Documents/Mail<br>Pend Ltr to Employer | 18 | Pend Ltr to Employer | Completed | PKKWE5 |
| 9/30/2022 | Documents/Mail<br>2022-09-29-13.45.07.654260O01 | 19 | Email | Completed | PKKWE5 |
| 9/30/2022 | Documents/Mail<br>2022-09-29-13.45.07.690260O01 | 20 | Claim Form - Authorization | Completed | PKKWE5 |
| 10/3/2022 | Documents/Mail<br>Med Rec RequestAttachments:W REYNOLDS - LFG AUTH.pdf | 21 | Med Rec Request | Completed | SMRUSSO |
| 10/4/2022 | Documents/Mail<br>SS 30 day follow up for SS Application | 22 | SS 30 day follow up for SS Applicat | Completed | LLJONES |
| 10/5/2022 | Documents/Mail<br>2022-10-04-09.21.47.289280O01 | 24 | Medical Records | Completed | PKKWE5 |

MR received from MyMed Select Tyler:
MR range 02/25/2022-09/09/2022. EE seen for MDD exacerbated by open hear surgery then secondary heart attack. Noted at 04/28/2022 OV that EE had been under increased scrutiny at w ork since returning and w as feeling extra pressure. EE reported several anxiety attacks prior to going to w ork w here he w as sure that he w as going to die. EE reported that he does not feel that he has ever recovered from the 2 heart attacks or the subsequent depression and now having difficulty fulfilling his w ork obligations. EE reported that he needs disability in order to afford to stop w orking. Provider recommended that he have some time off of w ork for physical rehab as w ell a time to focus on mental health w ith counseling, medication, and exercise. EE seen 09/09/2022. Objective findings noted that EE w as w ell appearing psych A/O x 3. EE w as unable to w ork due to reactions to severe stress and w as to

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

continue to address anxiety. No indication of any escalation of treatment.
- PKKWE5 - Oct 07, 2022 03:32:06 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/5/2022 | Documents/Mail | 25 | Medical Records | Completed | PKKWE5 |
| | 2022-10-04-09.24.59.457320O01 | | | | |

MR received from MyMed Select Tyler:
MR range 11/11/2021-09/09/2022. EE seen for MDD exacerbated by open hear surgery then secondary heart attack. Noted at 04/28/2022 OV that EE had been under increased scrutiny at w ork since returning and w as feeling extra pressure. EE reported several anxiety attacks prior to going to w ork w here he w as sure that he w as going to die. EE reported that he does not feel that he has ever recovered from the 2 heart attacks or the subsequent depression and now having difficulty fulfilling his w ork obligations. EE reported that he needs disability in order to afford to stop w orking. Provider recommended that he have some time off of w ork for physical rehab as w ell a time to focus on mental health w ith counseling, medication, and exercise. EE seen 09/09/2022. Objective findings noted that EE w as w ell appearing psych A/O x 3. EE w as unable to w ork due to reactions to severe stress and w as to continue to address anxiety. No indication of any escalation of treatment.
- PKKWE5 - Oct 07, 2022 03:33:55 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/5/2022 | Documents/Mail | 23 | Medical Records | Completed | PKKWE5 |
| | 2022-10-04-09.21.47.941280O01 | | | | |

MR received from MyMed Select Tyler:
MR range 11/11/2021-09/09/2022. EE seen for MDD exacerbated by open hear surgery then secondary heart attack. Noted at 04/28/2022 OV that EE had been under increased scrutiny at w ork since returning and w as feeling extra pressure. EE reported several anxiety attacks prior to going to w ork w here he w as sure that he w as going to die. EE reported that he does not feel that he has ever recovered from the 2 heart attacks or the subsequent depression and now having difficulty fulfilling his w ork obligations. EE reported that he needs disability in order to afford to stop w orking. Provider recommended that he have some time off of w ork for physical rehab as w ell a time to focus on mental health w ith counseling, medication, and exercise. EE seen 09/09/2022. Objective findings noted that EE w as w ell appearing psych A/O x 3. EE w as unable to w ork due to reactions to severe stress and w as to continue to address anxiety. No indication of any escalation of treatment.
- PKKWE5 - Oct 07, 2022 03:33:16 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/7/2022 | Documents/Mail | 27 | Incoming Correspondence | Completed | LLJONES |
| | 2022-10-04-11.15.02.118380O01 | | | | |
| 10/5/2022 2:33:20 PM | Documents/Mail | 27 | Incoming Correspondence | Received | LLJONES |
| | 2022-10-04-11.15.02.118380O01 | | | | |
| 10/7/2022 | Documents/Mail | 29 | Social Security Forms | Completed | LLJONES |
| | 2022-10-05-08.12.39.469360O01 | | | | |
| 10/6/2022 10:48:19 AM | Documents/Mail | 29 | Social Security Forms | Received | LLJONES |
| | 2022-10-05-08.12.39.469360O01 | | | | |
| 10/7/2022 | Documents/Mail | 26 | Email | Completed | LLJONES |
| | 2022-10-04-11.15.02.053380O01 | | | | |
| 10/5/2022 2:33:20 PM | Documents/Mail | 26 | Email | Received | LLJONES |
| | 2022-10-04-11.15.02.053380O01 | | | | |
| 10/7/2022 | Documents/Mail | 28 | Email | Completed | LLJONES |
| | 2022-10-05-08.12.39.436360O01 | | | | |
| 10/6/2022 10:48:18 AM | Documents/Mail | 28 | Email | Received | LLJONES |
| | 2022-10-05-08.12.39.436360O01 | | | | |
| 10/21/2022 | Documents/Mail | 30 | Email | Completed | PKKWE5 |

From: Webber, Paul K
Sent: Friday, October 21, 2022 8:45 AM
To: Bill Reynolds <
Subject: RE: Lincoln Financial Group Information for Claim 1220082997 (SECURE)
Importance: High

Bill,

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Is there no dates of service beyond 09/09/2022 from Clint Carter, MD at MyMed Select Tyler?

Have Sarah S Jorden, MA, LPC complete the attached form. If you provide a fax number for Sarah S Jorden, MA, LPC. I will place a courtesy request to her.

Thank you,

Paul K Webber
LTD Technical Specialist II
Lincoln Financial Group
LincolnFinancial.com
402.361.7695 Office
402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: Bill Reynolds <
Sent: Wednesday, October 19, 2022 3:45 PM
To: Jones, Lori <Lori.Jones@lfg.com>
Cc: Disability Claims <disabilityclaims@lfg.com>; Karen Dalton <karen.dalton@ebctx.com>; Webber, Paul K <Paul.Webber@lfg.com>; MD Clint Carter <drcarter@mymdselect.com>; sarah2jorden@gmail.com
Subject: Lincoln Financial Group Information for Claim 1220082997 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Lori,
On Thursday, October 13, 2022, I began a counseling program with Sarah S Jorden, Tyler, Texas.
Sarah is a Licensed Professional Counselor, MA, LPC. and I will see her on a bi-weekly period going forward.

Her contact information is:

101 E Southeast Loop 323
Suite 100-A
Tyler, TX 75703
(903) 730-6676

I was referred to Ms. Jorden by Dr. Clint Carter and both she and Dr. Carter have discussed my anxiety and stress issues relating to my pending long-term disability case. Dr. Carter has already submitted documents to you on my behalf as he is my regular family doctor. Please feel free to reach out to either of these professionals for their findings and my current limitations.

Thank you,

Bill Reynolds
- PKKWE5 - Oct 21, 2022 08:49:52 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/21/2022 | Documents/Mail | 33 | Email | Completed | PKKWE5 |
| | 2022-10-20-08.13.22.686060O01 | | | | |
| 10/21/2022 | Documents/Mail | 32 | Email | Completed | PKKWE5 |
| | 2022-10-19-16.45.59.726880O01 | | | | |
| 10/21/2022 | Documents/Mail | 35 | Email | Completed | PKKWE5 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | From: Bill Reynolds <<br>Sent: Friday, October 21, 2022 11:55 AM<br>To: Webber, Paul K <Paul.Webber@lfg.com><br>Subject: Re: Lincoln Financial Group Information for Claim 1220082997 (SECURE)<br><br>***This email is from an external source. Only open links and attachments from a Trusted Sender.***<br>Hi Paul,<br><br>I have not seen Dr. Carter since my early September visit, but I do have an appointment scheduled for next Wednesday, October 26th. Also, I have begun counseling as he recommended w hen I last visited w ith him.<br><br>I appreciate your quick replies, Paul and w ill promptly do all I can w hen you reach out to me for any needed information.<br><br>Thank you,<br>Bill Reynolds<br>903-539-5767<br>- PKKWE5 - Nov 02, 2022 09:57:05 am | | | | |
| 10/21/2022 | Documents/Mail | 31 | STD_LTD 45 Day Extension Letter | Completed | PKKWE5 |
| | STD_LTD 45 Day Extension Letter | | | | |
| 10/31/2022 | Documents/Mail | 34 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| | 2022-10-28-08.16.30.763560O01<br><br>BHAPS completed by Sarah S Jorden, MA, LPC dated 10/21/2022:<br>Offered diagnose of other reactions to severe stress, adjustment disorder w ith mixed anxiety and depressed mood. Noted CBT w as recommended every 2 w eeks for 6 months. NOV 11/08/2022.<br>- PKKWE5 - Nov 02, 2022 09:38:30 am | | | | |
| 11/8/2022 | Documents/Mail | 36 | Medical Records | Completed | PKKWE5 |
| | 2022-11-02-10.47.19.940620O01 | | | | |
| 11/4/2022 11:21:35 AM | Documents/Mail | 36 | Medical Records | Received | PKKWE5 |
| | 2022-11-02-10.47.19.940620O01 | | | | |
| 11/8/2022 | Documents/Mail | 39 | Claim Form - EE, ER, APS | Completed | PKKWE5 |
| | 2022-11-03-13.50.20.950620O01 | | | | |
| 11/5/2022 1:25:46 PM | Documents/Mail | 39 | Claim Form - EE, ER, APS | Received | PKKWE5 |
| | 2022-11-03-13.50.20.950620O01 | | | | |
| 11/8/2022 | Documents/Mail | 40 | Medical Records | Completed | PKKWE5 |
| | 2022-11-04-09.48.02.238700O01<br><br>MR received from MyMD Select Tyler:<br>EE seen virtually 10/23/2022. Noted EE had just had second counseling session w ith Sarah S Jorden MA, LPC. Is on Wellbutrin XL 300. Was on Lexapro w ithout side effects. EE to continue counseling, continue Wellbutrin XL 300, add Lexapro. EE to follow up 1-2 months.<br>- PKKWE5 - Nov 08, 2022 09:52:01 am | | | | |
| 11/6/2022 10:08:12 AM | Documents/Mail | 40 | Medical Records | Received | PKKWE5 |
| | 2022-11-04-09.48.02.238700O01<br><br>MR received from MyMD Select Tyler:<br>EE seen virtually 10/23/2022. Noted EE had just had second counseling session w ith Sarah S Jorden MA, LPC. Is on Wellbutrin XL 300. Was on Lexapro w ithout side effects. EE to continue counseling, continue Wellbutrin XL 300, add Lexapro. EE to follow up 1-2 months.<br>- PKKWE5 - Nov 08, 2022 09:52:01 am | | | | |
| 11/8/2022 | Documents/Mail | 38 | Medical Records | Completed | PKKWE5 |
| | 2022-11-03-13.50.20.913620O01<br><br>MR received from MyMD Select Tyler:<br>Referral for completing Disability Paperw ork dated 11/03/2022. Noted EE taking Eliquis and Metoprolol for atrial | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | fibrillation. Noted EE taking Flomax benign prostatic hyperplasia. Noted EE taking temazepam for insomnia. Noted EE taking Wellbutrin XL 300 for major depressive disorder. Noted EE had elevated A1c, elevated LDL cholesterol. Noted EE uses CPAP for obstructive sleep apnea. EE also has history of insulin resistance, low vitamin D level, CAD, STEMI, CABG, hypothyroid, hearing aids.<br>- PKKWE5 - Nov 08, 2022 09:46:46 am | | | | |
| 11/5/2022 1:25:45 PM | Documents/Mail | 38 | Medical Records | Received | PKKWE5 |
| | 2022-11-03-13.50.20.913620O01<br><br>MR received from MyMD Select Tyler:<br>Referral for completing Disability Paperw ork dated 11/03/2022. Noted EE taking Eliquis and Metoprolol for atrial fibrillation. Noted EE taking Flomax benign prostatic hyperplasia. Noted EE taking temazepam for insomnia. Noted EE taking Wellbutrin XL 300 for major depressive disorder. Noted EE had elevated A1c, elevated LDL cholesterol. Noted EE uses CPAP for obstructive sleep apnea. EE also has history of insulin resistance, low vitamin D level, CAD, STEMI, CABG, hypothyroid, hearing aids.<br>- PKKWE5 - Nov 08, 2022 09:46:46 am | | | | |
| 11/8/2022 | Documents/Mail | 37 | Fax | Completed | PKKWE5 |
| | 2022-11-03-13.50.20.863620O01 | | | | |
| 11/5/2022 1:25:44 PM | Documents/Mail | 37 | Fax | Received | PKKWE5 |
| | 2022-11-03-13.50.20.863620O01 | | | | |
| 11/10/2022 | Documents/Mail | 45 | Incoming Correspondence | Completed | PKKWE5 |
| | 2022-11-10-15.12.12.416740O01 | | | | |
| 11/10/2022 | Documents/Mail | 47 | Incoming Correspondence | Completed | PKKWE5 |
| | 2022-11-10-15.12.12.470740O01 | | | | |
| 11/10/2022 | Documents/Mail | 44 | Email | Completed | PKKWE5 |
| | 2022-11-10-15.12.12.386740O01 | | | | |
| 11/10/2022 | Documents/Mail | 49 | | Completed | PKKWE5 |
| | From: Webber, Paul K<br>Sent: Thursday, November 10, 2022 3:12:06 PM<br>To: Viviana Aguilar <vaguilar@jsfoods.com><br>Subject: FW: LTD - William J Reynolds<br>Importance: High<br><br>Viviana,<br><br>The W-2 that you previously provided is from 2008. Please provide Mr. Reynolds' 2021 W-2.<br><br>Paul K Webber<br>LTD Technical Specialist II<br>Lincoln Financial Group<br>LincolnFinancial.com<br>402.361.7695 Office<br>402.951.0498 Fax<br><br>Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**<br><br>- PKKWE5 - Nov 14, 2022 02:56:45 pm | | | | |
| 11/10/2022 | Documents/Mail | 46 | Incoming Correspondence | Completed | PKKWE5 |
| | 2022-11-10-15.12.12.449740O01 | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/10/2022 | Documents/Mail | 41 | Email | Completed | PKKWE5 |

From: Webber, Paul K
Sent: Thursday, November 10, 2022 11:15 AM
To: Bill Reynolds <
Subject: RE: Bill Reynolds # 1220082997
Importance: High

Bill,

This w ill not be sufficient. We have requested the office/treatment notes and diagnostic test results from Sarah S Jorden MA, LPC. Once received, all information w ill be review ed by our clinical staff.

Please have Sarah S Jorden MA, LPC provide the information requested.

Thank you,

Paul K Webber
LTD Technical Specialist II
Lincoln Financial Group
LincolnFinancial.com
402.361.7695 Office
402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: Bill Reynolds <
Sent: Thursday, November 10, 2022 10:35 AM
To: Webber, Paul K <Paul.Webber@lfg.com>
Subject: Re: Bill Reynolds # 1220082997

Hi Paul,
Sarah Jorden and Dr Clint Carter (MY MD Select) have jointly created a letter summarizing their findings. You should be receiving this today; w ould you please let me know w hen that comes across?

I am hoping to get you everything needed by cob today.

Thank you,
Bill Reynolds
903-539-5767
- PKKWE5 - Nov 10, 2022 02:12:44 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/11/2022 | Documents/Mail | 42 | Email | Completed | DOPPO2 |

From: Porter, Donald
Sent: Friday, November 11, 2022 11:00 AM
To: 'Bill Reynolds' <
Cc: Webber, Paul K <Paul.Webber@lfg.com>
Subject: RE: Final forms case # 1220082997

The last thing in your claim is a form submitted from Sarah Jorden, MA, LPC, and an office note from 10/23/2022 by Clinton Carter, MD. Both of these w ere review ed by Mr. Webber on 11/8/2022.

On 11/10/2022, Mr. Webber emailed you advising that office/treatment notes and diagnostic test results from Sarah S Jorden MA, LPC, are still needed and that once these are received, all information w ill be review ed by our clinical staff.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

There is new or additional information attached to your file.

Donald Porter
Senior Claims Examiner
LFG Group Protection
800 423 2765 x 6734 Office

From: Bill Reynolds <
Sent: Friday, November 11, 2022 10:50 AM
To: Porter, Donald <Donald.Porter@lfg.com>
Subject: Final forms case # 1220082997

Hi Donald,
I believe info w as submitted to Paul Webber yesterday from MyMD Select/Dr Clint Carter and Sarah Jorden LPC.
Thank you for filling in for Paul.
Please confirm info did come in yesterday.
Thank you so much,
Bill Reynolds
903-539-5767
Sent from my iPhone

On Nov 11, 2022, at 7:34 AM, Porter, Donald <Donald.Porter@lfg.com> w rote:

There are no new records attached to your claim. Please note that any documents received may take up to 48 hrs to be processed and attached.

Donald Porter
Senior Claims Examiner
LFG Group Protection
800 423 2765 x 6734 Office

From: Bill Reynolds <
Sent: Thursday, November 10, 2022 4:46 PM
To: Porter, Donald <Donald.Porter@lfg.com>
Subject: Fw d: Automatic reply: Final forms

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Donald,
Could you let me know if documents have come in today regarding my case # 1220082997?
Thanks,
Bill Reynolds
903-539-5767
Sent from my iPhone

Begin forw arded message:
From: "Webber, Paul K" <Paul.Webber@lfg.com>
Date: November 10, 2022 at 4:38:43 PM CST
To: Bill Reynolds <
Subject: Automatic reply: Final forms

I w ill be out of the office w ith no access to email Friday 11/11/2022, returning Monday 11/14/2022.

If you need immediate assistance, please contact Donald Porter [Donald.Porter@LFG.com]. Otherw ise, I w ill respond to your email upon my return.

If you need to submit information for your claim, please email to disabilityclaims@lfg.com.

Thank you for contacting Lincoln Financial Group and have a great day.

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**
- DOPPO2 - Nov 11, 2022 11:00:46 am

11/11/2022 Documents/Mail 43 Email Completed DOPPO2

From: Porter, Donald
Sent: Friday, November 11, 2022 2:54 PM
To: Bill Reynolds <
Cc: Webber, Paul K <Paul.Webber@lfg.com>
Subject: RE: Final forms case # 1220082997

Okay - I just checked again and there are no new records attached to your claim. Please note that any documents received may take up to 48 hrs to be processed and attached.

Donald Porter
Senior Claims Examiner
LFG Group Protection
800 423 2765 x 6734 Office

From: Bill Reynolds <
Sent: Friday, November 11, 2022 2:40 PM
To: Porter, Donald <Donald.Porter@lfg.com>
Subject: Re: Final forms case # 1220082997

Donald,
I just received verification from MyMD Select that all my documents
w ere faxed in to Lincoln Financial yesterday, November 10th. This w ould include notes from Sarah Jorden LPC.
Thank you,
Bill Reynolds
- DOPPO2 - Nov 11, 2022 02:55:19 pm

11/11/2022 Documents/Mail 48 Medical Records Completed PKKWE5

2022-11-11-09.03.36.700680O01

11/14/2022 Documents/Mail 50 Email Completed PKKWE5

From: Webber, Paul K
Sent: Monday, November 14, 2022 4:06 PM
To: Bill Reynolds <
Subject: RE: Final forms
Importance: High

Bill,

The only piece of documented medical evidence received from Sarah S Jorden, MA, LPC w as a Mental Status Exam dated 10/21/2022 and a letter drafted by her dated 11/08/2022 summarizing your care and explicitly advising that her therapy notes are confidential. No therapy notes have been received. I w ill let you know once the report is returned to me. There w ill be no updates on your claim available until this report is returned to me.

Thank you,

Paul K Webber
LTD Technical Specialist II
Lincoln Financial Group
LincolnFinancial.com
402.361.7695 Office
402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: Bill Reynolds <
Sent: Monday, November 14, 2022 3:34 PM
To: Webber, Paul K <Paul.Webber@lfg.com>
Cc: Clint Carter <drcarter@mymdselect.com>; sarah jorden <sarah2jorden@gmail.com>
Subject: Re: Final forms

Thank you, Paul.
I checked w ith Sarah and MyMD Select and confirmed that Sarah's notes w ere included in the group that w as faxed by MyMD Select late last w eek.

Thank you,
Bill Reynolds

From: "Webber, Paul K" <Paul.Webber@lfg.com>
Date: November 14, 2022 at 3:01:41 PM CST
To: Bill Reynolds <
Subject: FW: Final forms
Bill,

It w ould appear that Sarah Jorden, LPC has declined to provide your therapy notes. Your claim file has been sent to be review ed by a board certified physician. I w ill advise w hen their report is finalized and returned to me.

Paul K Webber
LTD Technical Specialist II
Lincoln Financial Group
LincolnFinancial.com
402.361.7695 Office
402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently

delete the original and any copy of this E-mail and any printout. Thank You.**

-----Original Message-----
From: Webber, Paul K
Sent: Monday, November 14, 2022 9:04 AM
To: Bill Reynolds <
Subject: RE: Final forms

Bill,

There is something that w as indexed on Saturday. I w ill let you know w hen I am able to review it.

Paul K Webber
LTD Technical Specialist II
Lincoln Financial Group
LincolnFinancial.com
402.361.7695 Office
402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

-----Original Message-----
From: Bill Reynolds <
Sent: Monday, November 14, 2022 9:02 AM
To: Webber, Paul K <Paul.Webber@lfg.com>
Subject: Re: Final forms

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Paul,
Please let me know if info from Sarah and MyMD Select came in late last w eek and my file is now complete.
Thank you,
Bill Reynolds

Sent from my iPhone
- PKKWE5 - Nov 14, 2022 04:09:35 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/21/2022 | Documents/Mail | 51 | STD_LTD 75 Day Extension Letter | Completed | PKKWE5 |
| | STD_LTD 75 Day Extension Letter | | | | |
| 11/28/2022 | Documents/Mail | 54 | Outgoing Correspondence | Completed | PKKWE5 |
| | 2022-11-28-12.27.07.147120O01 | | | | |
| 11/28/2022 | Documents/Mail | 52 | Email | Completed | PKKWE5 |
| | 2022-11-28-12.27.07.069120O01 | | | | |
| 11/28/2022 | Documents/Mail | 53 | Medical Records | Completed | PKKWE5 |
| | 2022-11-28-12.27.07.090120O01 | | | | |

Peer Review completed by Lenw orth Ellis, MD, MPH dated 11/24/2022:
Primary Impairing Diagnoses: Coronary artery disease (I25); Physical deconditioning (Z72.3)
Clinically Significant Comorbid Diagnosis: Class 3 obesity (E66.01)

The records indicate that EE has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review .

The medical evidence reasonably supports the follow ing restrictions and limitations:

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | From 8/5/22 to 4/30/23:<br>1. Unable to lift, carry, push or pull more than 10 pounds occasionally.<br>2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.<br>3. Unable to stand or w alk for more than 2 hours in an 8 hour w ork day.<br>4. Unable to climb ropes, ladders or scaffolds.<br>5. Unable to climb stairs, stoop, squat, kneel or craw l, more than occasionally.<br><br>From 5/1/23 onw ards:<br>Ongoing medical records, including updated cardiology records, stress testing etc., w ill be required in order to determine the need for restrictions and limitations.<br><br>Call w ith Clint Carter, MD on 11/23/2022 indicated that EE has been diagnosed w ith severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated w ith counseling and medications. He has had tw o episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning w ill improve gradually w ith time.<br>- PKKWE5 - Nov 30, 2022 12:02:43 pm | | | | |
| 12/9/2022 | Documents/Mail | 56 | Incoming Correspondence | Completed | PKKWE5 |
| | 2022-12-09-15.22.22.135160O01<br><br>Management Analyst. (DOT): 161.167-010 Sedentary. - PKKWE5 - Dec 13, 2022 09:25:08 am | | | | |
| 12/9/2022 | Documents/Mail | 57 | Incoming Correspondence | Completed | PKKWE5 |
| | 2022-12-09-15.22.22.167160O01<br><br>Management Analyst. (DOT): 161.167-010 Sedentary. - PKKWE5 - Dec 13, 2022 09:31:58 am | | | | |
| 12/9/2022 | Documents/Mail | 55 | Email | Completed | PKKWE5 |
| | 2022-12-09-15.22.22.109160O01 | | | | |
| 12/13/2022 | Documents/Mail | 58 | Email | Completed | PKKWE5 |
| | 2022-12-13-17.50.52.121360O01 | | | | |
| 12/14/2022 | Documents/Mail | 59 | Medical Records | Completed | PKKWE5 |
| | 2022-12-13-17.50.52.152360O01 | | | | |
| 12/20/2022 | Documents/Mail | 60 | Denial Not Disabled | Completed | PKKWE5 |
| | Denial Not DisabledAttachments:Translation services | | | | |
| 12/16/2022 12:35:56 PM | Documents/Mail | 60 | Denial Not Disabled | Work In Progress | PKKWE5 |
| | Denial Not DisabledAttachments:Translation services | | | | |
| 12/20/2022 | Documents/Mail | 61 | Generic Denial Ltr Sent to Employer | Completed | PKKWE5 |
| | Generic Denial Ltr Sent to Employer | | | | |
| 12/16/2022 2:32:26 PM | Documents/Mail | 61 | Generic Denial Ltr Sent to Employer | Work In Progress | PKKWE5 |
| | Generic Denial Ltr Sent to Employer | | | | |
| 1/12/2023 | Documents/Mail | 62 | Incoming Correspondence | Completed | PKKWE5 |
| | 2023-01-12-10.31.50.167460O01 | | | | |
| 1/18/2023 | Documents/Mail | 63 | Incoming Correspondence | Completed | PKKWE5 |
| | 2023-01-18-09.36.14.793580O01 | | | | |
| 1/20/2023 | Documents/Mail | 66 | Claim Form - Authorization | Completed | PKKWE5 |
| | 2023-01-20-10.25.32.128580O01 | | | | |
| 1/20/2023 | Documents/Mail | 64 | Fax | Completed | PKKWE5 |
| | 2023-01-20-10.25.32.011580O01 | | | | |
| 1/20/2023 | Documents/Mail | 65 | Incoming Correspondence | Completed | PKKWE5 |
| | 2023-01-20-10.25.32.082580O01 | | | | |
| 1/24/2023 | Documents/Mail | 68 | Incoming Correspondence | Completed | PKKWE5 |
| | 2023-01-24-13.02.26.529640O01 | | | | |
| 1/24/2023 | Documents/Mail | 69 | Claim Form - Authorization | Completed | PKKWE5 |
| | 2023-01-24-13.02.26.570640O01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/24/2023 | Documents/Mail<br>2023-01-24-13.02.26.475640O01 | 67 | Envelope | Completed | PKKWE5 |
| 5/5/2023 | Documents/Mail<br>2023-05-03-11.28.59.293600O01 | 72 | Medical Records | Completed | SMMCSHA |
| 5/4/2023 11:29:49 AM | Documents/Mail<br>2023-05-03-11.28.59.293600O01 | 72 | Medical Records | Received | SMMCSHA |
| 5/5/2023 | Documents/Mail<br>2023-05-03-11.28.59.171600O01 | 70 | Fax | Completed | SMMCSHA |
| 5/4/2023 11:29:48 AM | Documents/Mail<br>2023-05-03-11.28.59.171600O01 | 70 | Fax | Received | SMMCSHA |
| 5/5/2023 | Documents/Mail<br>2023-05-03-11.28.59.235600O01 | 71 | Appeal Notice | Completed | SMMCSHA |
| 5/4/2023 11:29:48 AM | Documents/Mail<br>2023-05-03-11.28.59.235600O01 | 71 | Appeal Notice | Received | SMMCSHA |
| 5/8/2023 | Documents/Mail<br>2023-05-08-12.30.07.409580O01 | 73 | Envelope | Completed | SMMCSHA |
| 5/8/2023 | Documents/Mail<br>2023-05-08-12.30.07.582580O01 | 76 | Medical Records | Completed | SMMCSHA |
| 5/8/2023 | Documents/Mail<br>2023-05-08-12.30.07.540580O01 | 75 | Incoming Correspondence | Completed | SMMCSHA |
| 5/8/2023 | Documents/Mail<br>2023-05-08-12.30.07.489580O01 | 74 | Incoming Correspondence | Completed | SMMCSHA |
| 5/11/2023 | Documents/Mail<br>Appeal Dis Delay Letter to Group | 78 | Appeal Dis Delay Letter to Group | Completed | SMMCSHA |
| 5/11/2023 | Documents/Mail<br>Appeal Dis Atty Ackappeal | 77 | Appeal Dis Atty Ackappeal | Completed | SMMCSHA |
| 5/15/2023 | Documents/Mail<br>2023-05-11-13.53.31.536600O01 | 80 | Outgoing Correspondence | Completed | SMMCSHA |
| 5/12/2023 11:02:33 AM | Documents/Mail<br>2023-05-11-13.53.31.536600O01 | 80 | Outgoing Correspondence | Received | SMMCSHA |
| 5/15/2023 | Documents/Mail<br>2023-05-11-13.53.31.492600O01 | 79 | Email | Completed | SMMCSHA |
| 5/12/2023 11:02:32 AM | Documents/Mail<br>2023-05-11-13.53.31.492600O01 | 79 | Email | Received | SMMCSHA |
| 6/13/2023 | Documents/Mail<br>2023-06-12-15.28.36.738120O01 | 84 | Envelope | Completed | SMMCSHA |
| 6/14/2023 | Documents/Mail<br>2023-06-09-11.25.12.229980O01 | 81 | Fax | Completed | SMMCSHA |
| 6/12/2023 4:14:30 PM | Documents/Mail<br>2023-06-09-11.25.12.229980O01 | 81 | Fax | Received | SMMCSHA |
| 6/14/2023 | Documents/Mail<br>2023-06-12-15.28.36.800120O01 | 85 | Incoming Correspondence | Completed | SMMCSHA |
| 6/13/2023 11:00:38 AM | Documents/Mail<br>2023-06-12-15.28.36.800120O01 | 85 | Incoming Correspondence | Received | SMMCSHA |
| 6/14/2023 | Documents/Mail<br>2023-06-09-11.25.12.293980O01 | 82 | Appeal Notice | Completed | SMMCSHA |
| 6/12/2023 4:14:31 PM | Documents/Mail<br>2023-06-09-11.25.12.293980O01 | 82 | Appeal Notice | Received | SMMCSHA |
| 6/14/2023 | Documents/Mail<br>2023-06-12-15.28.36.842120O01 | 86 | Medical Records | Completed | SMMCSHA |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/13/2023 11:00:39 AM | Documents/Mail<br>2023-06-12-15.28.36.842120O01 | 86 | Medical Records | Received | SMMCSHA |
| 6/14/2023 | Documents/Mail<br>2023-06-09-11.25.12.365980O01 | 83 | Medical Records | Completed | SMMCSHA |
| 6/12/2023 4:14:32 PM | Documents/Mail<br>2023-06-09-11.25.12.365980O01 | 83 | Medical Records | Received | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>2023-06-28-11.24.26.968220O01 | 90 | Incoming Correspondence | Completed | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>2023-06-28-11.24.26.894220O01 | 88 | Email | Completed | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>2023-06-28-11.24.27.041220O01 | 92 | Incoming Correspondence | Completed | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>2023-06-28-11.24.26.924220O01 | 89 | Incoming Correspondence | Completed | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>2023-06-28-11.24.27.002220O01 | 91 | Incoming Correspondence | Completed | SMMCSHA |
| 6/28/2023 | Documents/Mail<br>Appeal Dis Atty 21 Day Letter | 87 | Appeal Dis Atty 21 Day Letter | Completed | SMMCSHA |
| 7/11/2023 | Documents/Mail<br>2023-07-06-09.33.41.139220O01 | 93 | Incoming Correspondence | Completed | SMMCSHA |
| 7/10/2023 2:26:23 PM | Documents/Mail<br>2023-07-06-09.33.41.139220O01 | 93 | Incoming Correspondence | Received | SMMCSHA |
| 7/14/2023 | Documents/Mail<br>2023-07-11-14.45.52.140220O01 | 94 | Incoming Correspondence | Completed | SMMCSHA |
| 7/12/2023 2:22:31 PM | Documents/Mail<br>2023-07-11-14.45.52.140220O01 | 94 | Incoming Correspondence | Received | SMMCSHA |
| 7/26/2023 | Documents/Mail<br>2023-07-26-11.49.24.575740O01 | 96 | Email | Completed | SMMCSHA |
| 7/26/2023 | Documents/Mail<br>2023-07-26-11.49.24.597740O01 | 97 | Outgoing Correspondence | Completed | SMMCSHA |
| 7/26/2023 | Documents/Mail<br>Appeal Ow n Occ Level 1 Uphold AttyAttachments:Translation services | 95 | Appeal Ow n Occ Level 1 Uphold Atty | Completed | SMMCSHA |
| 7/21/2023 2:40:39 PM | Documents/Mail<br>Appeal Ow n Occ Level 1 Uphold AttyAttachments:Translation services | 95 | Appeal Ow n Occ Level 1 Uphold Atty | Work In Progress | SMMCSHA |
| 12/4/2023 | Documents/Mail<br>2023-12-01-13.29.56.905020O01 | 98 | Appeal Notice | Completed | LAW |
| 12/4/2023 | Documents/Mail<br>2023-12-01-14.10.23.669160O01 | 101 | Appeal Notice | Completed | LAW |
| 12/4/2023 | Documents/Mail<br>2023-12-01-14.10.23.543160O01 | 100 | Fax | Completed | LAW |
| 12/4/2023 | Documents/Mail<br>2023-12-01-13.29.57.185140O01 | 99 | Incoming Correspondence | Completed | LAW |
| 12/4/2023 | Documents/Mail<br>2023-12-01-14.10.23.771160O01 | 102 | Medical Records | Completed | LAW |
| 12/4/2023 | Documents/Mail<br>Appeal Dis Atty Ackappeal | 104 | Appeal Dis Atty Ackappeal | Completed | JXBOOTH |
| 12/4/2023 | Documents/Mail<br>Appeal Dis Delay Letter to Group | 103 | Appeal Dis Delay Letter to Group | Completed | JXBOOTH |
| 12/5/2023 | Documents/Mail<br>2023-12-01-14.57.06.769140O01 | 107 | Medical Records | Completed | JXBOOTH |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/5/2023 | Documents/Mail<br>2023-12-01-14.57.06.713140O01 | 106 | Appeal Notice | Completed | JXBOOTH |
| 12/5/2023 | Documents/Mail<br>2023-12-01-14.57.06.673140O01 | 105 | Fax | Completed | JXBOOTH |
| 12/14/2023 | Documents/Mail<br>2023-12-13-16.11.37.005280O01 | 108 | Envelope | Completed | PKKWE5 |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.04.51.513260O01 | 116 | Medical Records | Completed | JXBOOTH |
| 12/15/2023 10:09:26 AM | Documents/Mail<br>2023-12-15-09.04.51.513260O01 | 116 | Medical Records | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.04.51.458280O01 | 113 | Email | Completed | JXBOOTH |
| 12/15/2023 10:07:13 AM | Documents/Mail<br>2023-12-15-09.04.51.458280O01 | 113 | Email | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-13-16.11.37.133280O01 | 110 | Medical Records | Completed | JXBOOTH |
| 12/14/2023 1:26:26 PM | Documents/Mail<br>2023-12-13-16.11.37.133280O01 | 110 | Medical Records | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.04.51.480260O01 | 115 | Email | Completed | JXBOOTH |
| 12/15/2023 10:09:24 AM | Documents/Mail<br>2023-12-15-09.04.51.480260O01 | 115 | Email | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.01.05.505300O01 | 111 | Email | Completed | JXBOOTH |
| 12/15/2023 10:05:20 AM | Documents/Mail<br>2023-12-15-09.01.05.505300O01 | 111 | Email | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.01.05.560300O01 | 112 | Medical Records | Completed | JXBOOTH |
| 12/15/2023 10:05:21 AM | Documents/Mail<br>2023-12-15-09.01.05.560300O01 | 112 | Medical Records | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-15-09.04.51.487280O01 | 114 | Medical Records | Completed | JXBOOTH |
| 12/15/2023 10:07:14 AM | Documents/Mail<br>2023-12-15-09.04.51.487280O01 | 114 | Medical Records | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>2023-12-13-16.11.37.067280O01 | 109 | Appeal Notice | Completed | JXBOOTH |
| 12/14/2023 1:26:25 PM | Documents/Mail<br>2023-12-13-16.11.37.067280O01 | 109 | Appeal Notice | Received | JXBOOTH |
| 12/18/2023 | Documents/Mail<br>Appeal Dis Atty 21 Day LetterAttachments:IM Peer.pdf Psychiatry peer.pdf | 117 | Appeal Dis Atty 21 Day Letter | Completed | JXBOOTH |
| 1/4/2024 | Documents/Mail<br>2024-01-04-09.56.19.502500O01 | 120 | Medical Records | Completed | JXBOOTH |
| 1/4/2024 | Documents/Mail<br>2024-01-04-09.56.19.393500O01 | 119 | Appeal Notice | Completed | JXBOOTH |
| 1/4/2024 | Documents/Mail<br>2024-01-04-09.56.19.280500O01 | 118 | Fax | Completed | JXBOOTH |
| 1/16/2024 | Documents/Mail<br>2024-01-12-16.49.15.766480O01 | 122 | Incoming Correspondence | Completed | JXBOOTH |
| 1/12/2024 3:51:27 PM | Documents/Mail<br>2024-01-12-16.49.15.766480O01 | 122 | Incoming Correspondence | Received | JXBOOTH |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/16/2024 | Documents/Mail | 121 | Email | Completed | JXBOOTH |
| | 2024-01-12-13.44.02.857520O01 | | | | |
| 1/12/2024 3:51:26 PM | Documents/Mail | 121 | Email | Received | JXBOOTH |
| | 2024-01-12-13.44.02.857520O01 | | | | |
| 1/16/2024 | Documents/Mail | 123 | Appeal Dis Atty 21 Day Letter | Completed | JXBOOTH |
| | Appeal Dis Atty 21 Day LetterAttachments:W REYNOLDS 1220082997 INTERN MED ADDENDUM REPORT.pdf | | | | |
| 1/17/2024 | Documents/Mail | 124 | Envelope | Completed | JXBOOTH |
| | 2024-01-16-13.26.43.281600O01 | | | | |
| 1/17/2024 | Documents/Mail | 126 | Medical Records | Completed | JXBOOTH |
| | 2024-01-16-13.26.43.403600O01 | | | | |
| 1/17/2024 | Documents/Mail | 125 | Appeal Notice | Completed | JXBOOTH |
| | 2024-01-16-13.26.43.316600O01 | | | | |
| 2/5/2024 | Documents/Mail | 127 | Fax | Completed | JXBOOTH |
| | 2024-02-02-11.25.04.224780O01 | | | | |
| 2/5/2024 | Documents/Mail | 128 | Appeal Notice | Completed | JXBOOTH |
| | 2024-02-02-11.25.04.282780O01 | | | | |
| 2/5/2024 | Documents/Mail | 129 | Medical Records | Completed | JXBOOTH |
| | 2024-02-02-11.25.04.326780O01 | | | | |
| 2/12/2024 | Documents/Mail | 132 | Medical Records | Completed | JXBOOTH |
| | 2024-02-12-10.17.07.561920O01 | | | | |
| 2/12/2024 | Documents/Mail | 131 | Appeal Notice | Completed | JXBOOTH |
| | 2024-02-12-10.17.07.506920O01 | | | | |
| 2/12/2024 | Documents/Mail | 130 | Envelope | Completed | JXBOOTH |
| | 2024-02-12-10.17.07.452920O01 | | | | |
| 2/13/2024 | Documents/Mail | 134 | Medical Records | Completed | JXBOOTH |
| | 2024-02-12-13.49.19.317880O01 | | | | |
| 2/12/2024 3:59:32 PM | Documents/Mail | 134 | Medical Records | Received | JXBOOTH |
| | 2024-02-12-13.49.19.317880O01 | | | | |
| 2/13/2024 | Documents/Mail | 133 | Email | Completed | JXBOOTH |
| | 2024-02-12-13.49.19.271880O01 | | | | |
| 2/12/2024 3:59:31 PM | Documents/Mail | 133 | Email | Received | JXBOOTH |
| | 2024-02-12-13.49.19.271880O01 | | | | |
| 2/14/2024 | Documents/Mail | 135 | Appeal Dis Atty 21 Day Letter | Completed | JXBOOTH |
| | Appeal Dis Atty 21 Day LetterAttachments:W REYNOLDS 1220082997 INTER MED ADDENDUM REPORT.pdfW REYNOLDS 1220082997 PSYCH ADDENDUM REPORT.pdf | | | | |
| 2/15/2024 | Documents/Mail | 136 | Email | Completed | JXBOOTH |
| | 2024-02-14-15.51.15.585940O01 | | | | |
| 2/15/2024 | Documents/Mail | 137 | Medical Records | Completed | JXBOOTH |
| | 2024-02-14-15.51.15.654940O01 | | | | |
| 3/6/2024 | Documents/Mail | 138 | Incoming Correspondence | Completed | JXBOOTH |
| | 2024-03-06-09.10.40.674300O01 | | | | |
| 3/6/2024 | Documents/Mail | 139 | Incoming Correspondence | Completed | JXBOOTH |
| | 2024-03-06-09.10.40.299300O01 | | | | |
| 3/6/2024 | Documents/Mail | 140 | Incoming Correspondence | Completed | JXBOOTH |
| | 2024-03-06-09.10.41.133280O01 | | | | |
| 3/7/2024 | Documents/Mail | 141 | Appeal Own Occ Level 2 Uphold Atty | Completed | JXBOOTH |
| | Appeal Own Occ Level 2 Uphold AttyAttachments:Translation services | | | | |
| 3/6/2024 3:11:22 PM | Documents/Mail | 141 | Appeal Own Occ Level 2 Uphold Atty | Work In Progress | JXBOOTH |
| | Appeal Own Occ Level 2 Uphold AttyAttachments:Translation services | | | | |
| 10/5/2022 | Medical | 1 | | Closed | PKKWE5 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

sent auth to lead to fix - KEIKU2 - Sep 28, 2022 11:50:26 am

No STAT call needed, AW show s recieved
2022-10-04-09.21.47.289280
2022-10-04-09.24.59.457320
2022-10-04-09.21.47.941280 - JAUDR4 - Oct 06, 2022 02:55:07 pm

| 9/26/2022 5:13:47 PM | Medical | 1 | | Initial | PKKWE5 |
|---|---|---|---|---|---|

sent auth to lead to fix - KEIKU2 - Sep 28, 2022 11:50:26 am

No STAT call needed, AW show s recieved
2022-10-04-09.21.47.289280
2022-10-04-09.24.59.457320
2022-10-04-09.21.47.941280 - JAUDR4 - Oct 06, 2022 02:55:07 pm

| 10/5/2022 | Referrals | 1 | Representation | Completed | LLJONES |
|---|---|---|---|---|---|

left vmail for clmt req c/b on ssrt benfit.
LTD claim form signed dated by clmt 9/9/2022
states other income rec'd is ssrt. dated started 8/10/2022 and date filed 5/6/2022 amount: $2936.
---
reset f/u for response from clmt. - LLJONES - Sep 26, 2022 01:41:34 pm

no response from clmt
mailed clmt ssrt ltr req ssrt noa ltr reset f/u response. - LLJONES - Oct 04, 2022 08:06:16 am

rec'd from clmt BVL from ssa for ssrt stating from 12/1/2021 to 12/1/2021 ssrt benefit w as $2762.00
DOD w as 5/7/2022 -ssrt is not elig offiset. updated offset grid and closed both claim task and ss referral. - LLJONES - Oct 05, 2022 07:09:57 am

| 10/4/2022 8:05:49 AM | Referrals | 1 | Representation | Initial | LLJONES |
|---|---|---|---|---|---|

left vmail for clmt req c/b on ssrt benfit.
LTD claim form signed dated by clmt 9/9/2022
states other income rec'd is ssrt. dated started 8/10/2022 and date filed 5/6/2022 amount: $2936.
---
reset f/u for response from clmt. - LLJONES - Sep 26, 2022 01:41:34 pm

no response from clmt
mailed clmt ssrt ltr req ssrt noa ltr reset f/u response. - LLJONES - Oct 04, 2022 08:06:16 am

rec'd from clmt BVL from ssa for ssrt stating from 12/1/2021 to 12/1/2021 ssrt benefit w as $2762.00
DOD w as 5/7/2022 -ssrt is not elig offiset. updated offset grid and closed both claim task and ss referral. - LLJONES - Oct 05, 2022 07:09:57 am

| 11/23/2022 | Referrals | 5 | Management Review | Completed | PKKWE5 |
|---|---|---|---|---|---|

Please review . ERISA D75 is 11/26/2022.

EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.

Claim is currently pending BH Peer Review for behavioral and Peer Review for physical.
- Management Review - PKKWE5 - Nov 21, 2022 11:11:03 am

75 DAY PENDING INITIAL CLAIM REVIEW: (JSOULES3) STD - LTD Mr. Reynolds is a 68 YOM Reports Analyst (Sedentary occ??), w ho ceased w orking on 05/06/2022 and a DOD of 05/07/2022, due to a dx of reactions to sever stress and adjustment disorder. He w as hired on 02/13/1997 and became effective for coverage on 001/01/2016. He is a member of Class 2 All Full-Time Managers, Office Clerical, Sales Representatives, Pilots and

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Maintenance Employees, w orking a minimum of 30 hours per w eek. Group is Self-billed. Employer statement notes that Mr. Reynolds is scheduled for 40 hours a w eek. The policy has a 90-day elim. The policy contains a 3/12 pre-existing condition exclusion w hich does NOT impact this claim. Policy provides a 70% benefit rate to a $10,000 maximum and a $100 or 10% minimum; the policy has an Extensive Ow n Occupation definition.

APS completed by Dr. Clint Carter on 08/08/2022. Primary dx CABG. Secondary - acute stress reaction. Symptoms - Acute MI Oct 2021 w ith CABG. Rehab interrupted by second MI in DEC, requiring a stent. Unable to return to w ork due to mental and physical deconditioning. Ultimately caused stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety, making it impossible for him to w ork. After completing a full frond of short term disability, he is still not able to return to his position due to complex mental requirements and high stress environment of his job. Objective findings - Flat affect, tearful, anxiety, DOE and fatigue w ith w alking in office. R&Ls - physical exertion, complex decision making, high stress. Complex decision making, especially in high stress environment. Treatment- cardiac follow up. Mental health counseling and treatment. Prognosis - Poor. Has not responded w ell to cardiac rehab. Hs persistent anxiety w ith trying complex computing and or returning to the high stress environment that is necessary to perform w ork.

File referred for both physical and M/N evaluation to determine if the records support R&Ls that w ould preclude Mr. Reynolds from his OO.

Would agree w ith sending 75 day letter w hile aw aiting return of file from Peer review .

1)Please update Max - Mr. Reynolds w as 68 as of DOD therefore w ould only be eligible for up to 15 months of benefits and not 24.
 - Management Review - JLDOWSE - Nov 23, 2022 09:41:35 am

Updated MBD.
 - Management Review - PKKWE5 - Nov 23, 2022 12:39:09 pm

| 11/21/2022 11:05:58 AM | Referrals | 5 | Management Review | Initial | PKKWE5 |
|---|---|---|---|---|---|

Please review . ERISA D75 is 11/26/2022.

EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.

Claim is currently pending BH Peer Review for behavioral and Peer Review for physical.
 - Management Review - PKKWE5 - Nov 21, 2022 11:11:03 am

75 DAY PENDING INITIAL CLAIM REVIEW: (JSOULES3) STD - LTD Mr. Reynolds is a 68 YOM Reports Analyst (Sedentary occ??), w ho ceased w orking on 05/06/2022 and a DOD of 05/07/2022, due to a dx of reactions to sever stress and adjustment disorder. He w as hired on 02/13/1997 and became effective for coverage on 001/01/2016. He is a member of Class 2 All Full-Time Managers, Office Clerical, Sales Representatives, Pilots and Maintenance Employees, w orking a minimum of 30 hours per w eek. Group is Self-billed. Employer statement notes that Mr. Reynolds is scheduled for 40 hours a w eek. The policy has a 90-day elim. The policy contains a 3/12 pre-existing condition exclusion w hich does NOT impact this claim. Policy provides a 70% benefit rate to a $10,000 maximum and a $100 or 10% minimum; the policy has an Extensive Ow n Occupation definition.

APS completed by Dr. Clint Carter on 08/08/2022. Primary dx CABG. Secondary - acute stress reaction. Symptoms - Acute MI Oct 2021 w ith CABG. Rehab interrupted by second MI in DEC, requiring a stent. Unable to return to w ork due to mental and physical deconditioning. Ultimately caused stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety, making it impossible for him to w ork. After completing a full frond of short term disability, he is still not able to return to his position due to complex mental requirements and high stress environment of his job. Objective findings - Flat affect, tearful, anxiety, DOE and fatigue w ith w alking in office. R&Ls - physical exertion, complex decision making, high stress. Complex decision making, especially in high stress environment. Treatment- cardiac follow up. Mental health counseling and treatment. Prognosis - Poor. Has not responded w ell to cardiac rehab. Hs persistent anxiety w ith trying complex computing and or returning to the high stress environment that is necessary to perform w ork.

File referred for both physical and M/N evaluation to determine if the records support R&Ls that w ould preclude Mr. Reynolds from his OO.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Would agree w ith sending 75 day letter w hile aw aiting return of file from Peer review .

1)Please update Max - Mr. Reynolds w as 68 as of DOD therefore w ould only be eligible for up to 15 months of benefits and not 24.
- Management Review - JLDOWSE - Nov 23, 2022 09:41:35 am

Updated MBD.
- Management Review - PKKWE5 - Nov 23, 2022 12:39:09 pm

| 11/28/2022 | Referrals | 4 | Initial Claim Review | Completed | PKKWE5 |
|---|---|---|---|---|---|

Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Occupation/level: Reports Analysts/Sednetary [Pending OA]
Diagnosis: Disability due to neuro disorder; other reactions to severe stress
DOD: 05/07/2022
DLW: 05/06/2022

Specific Medical Question:
Are the restrictions and limitations placed upon the claimant's w ork activities by Clint Carter, MD reasonable and consistent w ith the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that w ould be required. - PKKWE5 - Nov 14, 2022 03:28:31 pm
transferred to kipos3

sending for peer review - KIPOS3 - Nov 15, 2022 10:07:39 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - JOOMO5 - Nov 28, 2022 11:26:25 am
Referral Date: 11/15/2022
Claims Specialist Name: Paul Webber
Phone Number: 800-423-2765 ext. 7695
Email Address: Paul.Webber@lfg.com

Submitter's Name: Kim Ostdiek, RN BSN
Phone Number: 402-361-2729
Email Address: Kimberly.Ostdiek@lfg.com

Is this referral COVID related? No

Referral Type: Standard File Review
Claimant Name: William Reynolds
Claim Number: LTD 1220082997
Additional Claims to be included: STD 1220042749
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods, Inc
Job Title: Reports Analyst
Product Type: LTD

Diagnosis: Neurological disorder, reactions to severe stress
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Internal Medicine

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: No

Core Questions:

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 08/05/22 to present and beyond, and comment on the expected duration.

4. Are the restrictions and limitations placed upon the claimant's w ork activities by Clint Carter, MD reasonable and consistent w ith the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that w ould be required.

5. Please describe the claimant's maximal functional abilities w hich he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration.

a.Please include your opinion regarding the claimant's ability to w ork in regards to hours/day and days/w eek in a reliable and consistent manor.
b.Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one.
c.Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy).
d.In particular, please note his ability to lift/carry, sit, stand, w alk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.

6. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name:Dr. Clint Carter, MD
"Phone Number: (903)630-7130
"Fax Number: (903)705-0992 - KIPOS3 - Nov 15, 2022 10:15:25 am
Case submitted to CRT case #144034 for a peer review w ith an Internal Medicine physician. - JOOMO5 - Nov 16, 2022 09:45:12 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2022 3:26:18 PM | Referrals | 4 | Initial Claim Review | Initial | PKKWE5 |

Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Occupation/level: Reports Analysts/Sednetary [Pending OA]
Diagnosis: Disability due to neuro disorder; other reactions to severe stress
DOD: 05/07/2022
DLW: 05/06/2022

Specific Medical Question:
Are the restrictions and limitations placed upon the claimant's w ork activities by Clint Carter, MD reasonable and consistent w ith the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that w ould be required. - PKKWE5 - Nov 14, 2022 03:28:31 pm
transferred to kipos3

sending for peer review - KIPOS3 - Nov 15, 2022 10:07:39 am
Referral Date: 11/15/2022
Claims Specialist Name: Paul Webber
Phone Number: 800-423-2765 ext. 7695
Email Address: Paul.Webber@lfg.com

Submitter's Name: Kim Ostdiek, RN BSN
Phone Number: 402-361-2729
Email Address: Kimberly.Ostdiek@lfg.com

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Is this referral COVID related? No

Referral Type: Standard File Review
Claimant Name: William Reynolds
Claim Number: LTD 1220082997
Additional Claims to be included: STD 1220042749
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods, Inc
Job Title: Reports Analyst
Product Type: LTD

Diagnosis: Neurological disorder, reactions to severe stress
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Internal Medicine

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: No

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 08/05/22 to present and beyond, and comment on the expected duration.

4. Are the restrictions and limitations placed upon the claimant's w ork activities by Clint Carter, MD reasonable and consistent w ith the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that w ould be required.

5. Please describe the claimant's maximal functional abilities w hich he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration.

a.Please include your opinion regarding the claimant's ability to w ork in regards to hours/day and days/w eek in a reliable and consistent manor.
b.Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one.
c.Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy).
d.In particular, please note his ability to lift/carry, sit, stand, w alk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.

6. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name:Dr. Clint Carter, MD
"Phone Number: (903)630-7130
"Fax Number: (903)705-0992 - KIPOS3 - Nov 15, 2022 10:15:25 am
Case submitted to CRT case #144034 for a peer review w ith an Internal Medicine physician. - JOOMO5 - Nov 16, 2022 09:45:12 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - JOOMO5 - Nov 28, 2022 11:26:25 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/9/2022 | Referrals | 6 | Occ Analysis | Completed | PKKWE5 |

Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Benefit Amount: UNKNOWN
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? No
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions? No
If Local Economy, please identify EE's location at time of disability: N/A

Medical Information
Current Functional Capacity and R&Ls supported by physician: Peer Review 2022-11-28-12.27.07.090120O01

Vocational Information:
Job Title from ER: Retail Project Analyst
Previous OA/TSA/TSR/Voc Rehab review completed? No
Job Description on file? 2022-11-10-15.12.12.470740O01
Job Analysis on file? No
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) No

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:
Management requesting OA and confirmation if physical R&Ls are consistent w ith OO.
- PKKWE5 - Dec 07, 2022 04:40:13 pm

VRC Response:
The occupation (Management Analyst) is performed at the sedentary physical demand level. Resources utilized include:
Dictionary of Occupational Titles (DOT): 161.167-010
Occupational Information Netw ork (O*NET): 13.1111.00
Economic Research Institute (ERI): 161.167-010

Jennifer Belew , MS, CRC
Vocational Rehabilitation Consultant
- JEXBE7 - Dec 09, 2022 02:22:05 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/7/2022 4:37:24 PM | Referrals | 6 | Occ Analysis | Initial | PKKWE5 |

Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Benefit Amount: UNKNOWN
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? No
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions? No
If Local Economy, please identify EE's location at time of disability: N/A

Medical Information
Current Functional Capacity and R&Ls supported by physician: Peer Review 2022-11-28-12.27.07.090120O01

Vocational Information:
Job Title from ER: Retail Project Analyst
Previous OA/TSA/TSR/Voc Rehab review completed? No
Job Description on file? 2022-11-10-15.12.12.470740O01
Job Analysis on file? No
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) No

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:
Management requesting OA and confirmation if physical R&Ls are consistent w ith OO.
- PKKWE5 - Dec 07, 2022 04:40:13 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

VRC Response:
The occupation (Management Analyst) is performed at the sedentary physical demand level. Resources utilized include:
Dictionary of Occupational Titles (DOT): 161.167-010
Occupational Information Netw ork (O*NET): 13.1111.00
Economic Research Institute (ERI): 161.167-010

Jennifer Belew , MS, CRC
Vocational Rehabilitation Consultant
- JEXBE7 - Dec 09, 2022 02:22:05 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/14/2022 | Referrals | 3 | Initial Claim Review | Completed | PKKWE5 |

DIRECT TO PEER REVIEW
Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Occupation/level: Reports Analysts/Sednetary [Pending OA]
Diagnosis: Other reactions to severe stress; Adjustment disorder w ith mixed anxiety and depressed mood
DOD: 05/07/2022
DLW: 05/06/2022

Specific Medical Question:
Please review documented objective medical evidence and assess w hat, if any, psychiatric impairment(s) are present.

If psych impairment is noted in the records, please describe the level of intensity that relates to the claimant's behavior and/or cognitive function and note the expected duration of the impairment. Is the frequency of treatment and has the escalation of care been appropriate? - PKKWE5 - Nov 14, 2022 03:20:38 pm
Referral Date: 11/21/22

Claims Specialist Name: (First/Last) Paul Webber
Phone Number: 800-423-2765 ext 7695
Email Address: Paul.Webber@lfg.com

Submitter's Name (First/Last): Sheila Cordero
Phone Number: 402-361-6767
Email Address: Sheila.Cordero@lfg.com

Is this referral COVID related? No

Referral Type: Standard

If Addendum, Select Physician: n/a
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): N/A

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved: 1220042749
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central Standard Time

Customer/Group Name: John Soules Foods
Job Title: Reports Analyst

Product Type: LTD

Diagnosis: Adjustment d/o mixed anxiety and depression

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Date of Disability: 5/7/22

Last Day Worked: 5/2/22

LTD Benefit Begin Date: 8/5/22

Specialty Requested: Psychiatry

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: NO
Attorney Contact Information (If applicable):

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 5/2/22 to present and beyond , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:

Clint Carter, MD
Danyel Kush, FNP
2385 Oak Alley
Tyler, TX 75703
Phone 903-630-7130
Fax 903-705-0992

Sarah S Jorden, MA, LPC
1101 ESE Loop 323, suite 100-A
Tyler, TX 75701
Phone 972-591-7012
Email: Sarah2.Jordan@gmail.com - SGGCO6 - Nov 21, 2022 09:04:14 am
Final report received back from ECN - sent to Disability Claims to be uploaded into AWD - ADYOUNG - Dec 13, 2022 04:49:54 pm
Case submitted to CRT case #144849 for a peer review w ith an Psychiatry physician. - STEGU1 - Nov 21, 2022 12:56:52 pm
CRT / ICP is unable to process - asked that w e Vend this out on 11/28 - File w as submitted to ECN #225143 for peer review w ith Psychiatry physician - STEGU1 - Nov 30, 2022 08:42:39 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2022 3:20:09 PM | Referrals | 3 | Initial Claim Review | Initial | PKKWE5 |

DIRECT TO PEER REV IEW
Demographics
Claimant Name: William Reynolds
Claim Number: 1220082997
Occupation/level: Reports Analysts/Sednetary [Pending OA]

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Diagnosis: Other reactions to severe stress; Adjustment disorder w ith mixed anxiety and depressed mood
DOD: 05/07/2022
DLW: 05/06/2022

Specific Medical Question:
Please review documented objective medical evidence and assess w hat, if any, psychiatric impairment(s) are present.

If psych impairment is noted in the records, please describe the level of intensity that relates to the claimant's behavior and/or cognitive function and note the expected duration of the impairment. Is the frequency of treatment and has the escalation of care been appropriate? - PKKWE5 - Nov 14, 2022 03:20:38 pm
Referral Date: 11/21/22

Claims Specialist Name: (First/Last) Paul Webber
Phone Number: 800-423-2765 ext 7695
Email Address: Paul.Webber@lfg.com

Submitter's Name (First/Last): Sheila Cordero
Phone Number: 402-361-6767
Email Address: Sheila.Cordero@lfg.com

Is this referral COVID related? No

Referral Type: Standard

If Addendum, Select Physician: n/a
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): N/A

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved: 1220042749
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central Standard Time

Customer/Group Name: John Soules Foods
Job Title: Reports Analyst

Product Type: LTD

Diagnosis: Adjustment d/o mixed anxiety and depression

Date of Disability: 5/7/22

Last Day Worked: 5/2/22

LTD Benefit Begin Date: 8/5/22

Specialty Requested: Psychiatry

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: NO
Attorney Contact Information (If applicable):

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 5/2/22 to present and beyond , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:

Clint Carter, MD
Danyel Kush, FNP
2385 Oak Alley
Tyler, TX 75703
Phone 903-630-7130
Fax 903-705-0992

Sarah S Jorden, MA, LPC
1101 ESE Loop 323, suite 100-A
Tyler, TX 75701
Phone 972-591-7012
Email: Sarah2.Jordan@gmail.com - SGGCO6 - Nov 21, 2022 09:04:14 am
Case submitted to CRT case #144849 for a peer review w ith an Psychiatry physician. - STEGU1 - Nov 21, 2022 12:56:52 pm
CRT / ICP is unable to process - asked that w e Vend this out on 11/28 - File w as submitted to ECN #225143 for peer review w ith Psychiatry physician - STEGU1 - Nov 30, 2022 08:42:39 am
Final report received back from ECN - sent to Disability Claims to be uploaded into AWD - ADYOUNG - Dec 13, 2022 04:49:54 pm

12/20/2022 Referrals 2 Management Review Completed PKKWE5

Please review . D45 is 11/10/2022.

EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

MR received from MyMD Select/Clint Carter
Requested clarification from EE if any additional MR w ill be provided.

Received Email from EE 10/19/2022 advising he began a counseling program w ith Sarah S Jorden, MA, LPC in Tyler, Texas on 10/13/2022. EE seen bi-w eekly.

Unable to reach provider w ith information provided. Advised EE all MR and BH APS Initial to be completed by Sarah S Jorden, MA, LPC w ill be required. Requested contact information/fax number for provider. Also requested confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler.
- Management Review - PKKWE5 - Oct 21, 2022 09:44:49 am

D45 = 11/10/22. Will review claim if needed closer to this date. - Management Review - DRLMO0 - Oct 21, 2022 05:08:06 pm

*********

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

MANAGER REVIEW:

SUMMARY:
EE is a 69yom, unknow n occ. DOD is 5/7/22, BCD 8/5/22, no COD, MBD 11/5/23. Diagnosis is adjustment disorder. The current claim status is pending. GMB ~$?. Day 45 = 11/10/22 (based on proofs date).

TIMELINE:
9/26/22: Pending letter sent requesting MR from all TMP 9/1/21 to current, SSRT NOA
9/26/22: Initial call attempt, left VM.
9/27/22: Initial call attempt, left VM.
10/7/22: Initial call attempt, left VM.
10/21/22: Pending letter sent requesting all MR from Sarah Jorden, MA LPC, MR from MyMed Tyler 9/9/22 to current, BH APS from Sarah Jorden, MA LPC, initial call.
10/28/22: BH APS received form Sarah Jorden
11/4/22: MR received from MyMD Select Tyler 10/23/22, 11/3/22

ASSESSMENT:
Claim has received most information, but w e are still aw aiting MR from Sarah Jordan, LPC (w e have completed BH APS though). This information w as first requested from EE on 10/21/22. I w ould allow additional time for this info to be received since he just started seeing this provider and is trying to get info to us.

RECOMMENDATIONS:
"We have contact info from Sarah Jorden. I w ould recommend a call to her office to see if they can provide you w ith treatment notes since they just completed the APS. If no success, then please submit a MR request for these records.
"EE appears to only communicate by email. I w ould email him and ask him to set up a time to complete detailed initial interview .
"If MR from Sarah Jorden have not been received by around 12/5/22, send back for my review for possible FTP.
"I also w as unable to find ER info and specifically an ERS. Should claim be incomplete? Do w e need to f/u w / ER again for info?
- Management Review - DRLMO0 - Nov 09, 2022 11:29:44 am

Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.

Requested BH Peer Review for behavioral
Requested Clinical Review for physical.
- Management Review - PKKWE5 - Nov 14, 2022 03:29:31 pm

Please review Peer Review and if clarification is needed as Peer Review both recommends specific R&Ls related to physical conditions stating that history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review and indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported w hich are related to history of anxiety and depression.
- Management Review - PKKWE5 - Nov 30, 2022 12:54:00 pm

******
MANAGER REVIEW:

Discussed claim w / CS. I w ould recommend OA at this time first to confirm if current "physical" R&Ls are consistent w ith ow n occ. If R&Ls are consistent, then no further clarification w ould be needed and w e w ill aw aiting Psychiatry review . If R&Ls are not consistent, then let's discuss claim.
- Management Review - DRLMO0 - Dec 06, 2022 01:44:27 pm

Requested OA.
- Management Review - PKKWE5 - Dec 07, 2022 04:40:46 pm

According to OA dated 12/09/2022:
EE is a Management Analyst [(DOT): 161.167-010]. The demand is sedentary.

R&Ls consistent w ith OO.

According to BH Peer Review completed by Steven Choi, DO dated 12/12/2022:
Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond. Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Please review for possible Not TDOO denial.
 - Management Review - PKKWE5 - Dec 14, 2022 05:21:54 pm

*********
MANAGER REVIEW:

11/24/22 PHYSICAL Peer Review Lenw orth Ellis, MD (Occ Med): P2P call w / Dr. Carter indicated EE has had tw o episodes of MI's and can only exercise for short periods. He becomes SOB easily and has a hard time functioning as he is severely deconditioned. DX: CAD, physical deconditioning. Echo on 1/5/22 indicated a normal EF w / e/o diastolic dysfunction. EE has not been dx w / CHF. Most of EE's symptomology appears to be related to deconditioning. MR do indicate he w alks 2-4 miles per day indicating he has significant physical capacity. Dr. Carter has indicated his impairment is largely psychological in nature. R&Ls provided by Dr. Carter in P2P call are reasonable supported. Supported R&Ls from 8/5/22 to 4/30/23:
"NEVER: climb ropes/ladders/scaffolds
"OCC: lift 10lbs, stand/w alk 2 hours, climb stairs, stoop, squat, kneel, craw l
"UNRESTRICTED: sit, handle, finger, operate foot controls, drive, reach above shoulder

12/12/22 BH Peer Review Steven Choi, DO (Psychiatry): P2P contact w / Dr. Carter - MD stated all info has been provided in the MR. P2P contact w / Saah Jordan, unsuccessful. DX: adjustment disorder w / mixed anxiety and depression. EE first presented w / complaints of anxiety and depression in 11/2021 after cardiac surgery. He w as managed w / Lexapro and Wellbutrin by Dr. Clinton Carter. He had normal MSE findings on 3/15/22, 9/7/22, 10/17/22, and 10/21/22. He began psychotherapy on 10/17/22 and there w ere no sig psychiatric symptoms noted. Overall, EE appears to be lacking any severe psychiatric symptoms that w ould supported R&LS from 5/2/22 and beyond.

ASSESSMENT:
This claim has been fully evaluated from physical and behavioral health perspectives. Per 11/24/22 PHYSICAL peer review , R&Ls w ere provided largely due to deconditioning. Comparing R&Ls to OA of Management Analyst (Sedentary), R&Ls are consistent w ith ow n occ. Ow n occ requires frequent sitting, talking, and hearing, but occasional or never for all other functions.

It w as indicated in 11/24/22 peer review and specifically in the P2P call w / Dr. Carter that EE's impairment is largely psychological in nature. Per 12/12/22 BH peer review , no psychiatric R&Ls w ere supported, mainly due to normal MSE findings and no sig psychiatric symptoms noted in therapy notes.

Of note, a P2P call w as able to be completed w / Dr. Carter on the PHYSICAL peer review and he indicated that EE's impairment is largely psychological, but then w hen a P2P call w as attempted on the BH review Dr. Carter declined to provided more info.

Agree w / NOT TDOO denial of claim for physical and behavioral health diagnoses. Send back denial letter for review .
 - Management Review - DRLMO0 - Dec 15, 2022 09:15:19 am

Letter drafted.
 - Management Review - PKKWE5 - Dec 16, 2022 02:31:25 pm

Letter good to send. - Management Review - DRLMO0 - Dec 19, 2022 12:45:16 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/21/2022 9:41:24 AM | Referrals | 2 | Management Review | Initial | PKKWE5 |

Please review . D45 is 11/10/2022.

EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Requested all other MR/SSRT NOA from EE.

MR received from MyMD Select/Clint Carter
Requested clarification from EE if any additional MR w ill be provided.

Received Email from EE 10/19/2022 advising he began a counseling program w ith Sarah S Jorden, MA, LPC in Tyler, Texas on 10/13/2022. EE seen bi-w eekly.

Unable to reach provider w ith information provided. Advised EE all MR and BH APS Initial to be completed by Sarah S Jorden, MA, LPC w ill be required. Requested contact information/fax number for provider. Also requested confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler.
- Management Review - PKKWE5 - Oct 21, 2022 09:44:49 am

D45 = 11/10/22. Will review claim if needed closer to this date. - Management Review - DRLMO0 - Oct 21, 2022 05:08:06 pm

*********
MANAGER REVIEW:

SUMMARY:
EE is a 69yom, unknow n occ. DOD is 5/7/22, BCD 8/5/22, no COD, MBD 11/5/23. Diagnosis is adjustment disorder. The current claim status is pending. GMB ~$?. Day 45 = 11/10/22 (based on proofs date).

TIMELINE:
9/26/22: Pending letter sent requesting MR from all TMP 9/1/21 to current, SSRT NOA
9/26/22: Initial call attempt, left VM.
9/27/22: Initial call attempt, left VM.
10/7/22: Initial call attempt, left VM.
10/21/22: Pending letter sent requesting all MR from Sarah Jorden, MA LPC, MR from MyMed Tyler 9/9/22 to current, BH APS from Sarah Jorden, MA LPC, initial call.
10/28/22: BH APS received form Sarah Jorden
11/4/22: MR received from MyMD Select Tyler 10/23/22, 11/3/22

ASSESSMENT:
Claim has received most information, but w e are still aw aiting MR from Sarah Jordan, LPC (w e have completed BH APS though). This information w as first requested from EE on 10/21/22. I w ould allow additional time for this info to be received since he just started seeing this provider and is trying to get info to us.

RECOMMENDATIONS:
"We have contact info from Sarah Jorden. I w ould recommend a call to her office to see if they can provide you w ith treatment notes since they just completed the APS. If no success, then please submit a MR request for these records.
"EE appears to only communicate by email. I w ould email him and ask him to set up a time to complete detailed initial interview .
"If MR from Sarah Jorden have not been received by around 12/5/22, send back for my review for possible FTP.
"I also w as unable to find ER info and specifically an ERS. Should claim be incomplete? Do w e need to f/u w / ER again for info?
- Management Review - DRLMO0 - Nov 09, 2022 11:29:44 am

Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.

Requested BH Peer Review for behavioral
Requested Clinical Review for physical.
- Management Review - PKKWE5 - Nov 14, 2022 03:29:31 pm

Please review Peer Review and if clarification is needed as Peer Review both recommends specific R&Ls related to physical conditions stating that history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review and indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported w hich are related to history of anxiety and

depression.
- Management Review - PKKWE5 - Nov 30, 2022 12:54:00 pm

******
MANAGER REVIEW:

Discussed claim w / CS. I w ould recommend OA at this time first to confirm if current "physical" R&Ls are consistent w ith ow n occ. If R&Ls are consistent, then no further clarification w ould be needed and w e w ill aw aiting Psychiatry review . If R&Ls are not consistent, then let's discuss claim.
- Management Review - DRLMO0 - Dec 06, 2022 01:44:27 pm

Requested OA.
- Management Review - PKKWE5 - Dec 07, 2022 04:40:46 pm

According to OA dated 12/09/2022:
EE is a Management Analyst [(DOT): 161.167-010]. The demand is sedentary.

R&Ls consistent w ith OO.

According to BH Peer Review completed by Steven Choi, DO dated 12/12/2022:
Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond. Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Please review for possible Not TDOO denial.
- Management Review - PKKWE5 - Dec 14, 2022 05:21:54 pm

*********
MANAGER REVIEW:

11/24/22 PHYSICAL Peer Review Lenw orth Ellis, MD (Occ Med): P2P call w / Dr. Carter indicated EE has had tw o episodes of MI's and can only exercise for short periods. He becomes SOB easily and has a hard time functioning as he is severely deconditioned. DX: CAD, physical deconditioning. Echo on 1/5/22 indicated a normal EF w / e/o diastolic dysfunction. EE has not been dx w / CHF. Most of EE's symptomology appears to be related to deconditioning. MR do indicate he w alks 2-4 miles per day indicating he has significant physical capacity. Dr. Carter has indicated his impairment is largely psychological in nature. R&Ls provided by Dr. Carter in P2P call are reasonable supported. Supported R&Ls from 8/5/22 to 4/30/23:
"NEVER: climb ropes/ladders/scaffolds
"OCC: lift 10lbs, stand/w alk 2 hours, climb stairs, stoop, squat, kneel, craw l
"UNRESTRICTED: sit, handle, finger, operate foot controls, drive, reach above shoulder

12/12/22 BH Peer Review Steven Choi, DO (Psychiatry): P2P contact w / Dr. Carter - MD stated all info has been provided in the MR. P2P contact w / Saah Jordan, unsuccessful. DX: adjustment disorder w / mixed anxiety and depression. EE first presented w / complaints of anxiety and depression in 11/2021 after cardiac surgery. He w as managed w / Lexapro and Wellbutrin by Dr. Clinton Carter. He had normal MSE findings on 3/15/22, 9/7/22, 10/17/22, and 10/21/22. He began psychotherapy on 10/17/22 and there w ere no sig psychiatric symptoms noted. Overall, EE appears to be lacking any severe psychiatric symptoms that w ould supported R&LS from 5/2/22 and beyond.

ASSESSMENT:
This claim has been fully evaluated from physical and behavioral health perspectives. Per 11/24/22 PHYSICAL peer review , R&Ls w ere provided largely due to deconditioning. Comparing R&Ls to OA of Management Analyst (Sedentary), R&Ls are consistent w ith ow n occ. Ow n occ requires frequent sitting, talking, and hearing, but occasional or never for all other functions.

It w as indicated in 11/24/22 peer review and specifically in the P2P call w / Dr. Carter that EE's impairment is largely psychological in nature. Per 12/12/22 BH peer review , no psychiatric R&Ls w ere supported, mainly due to normal MSE findings and no sig psychiatric symptoms noted in therapy notes.

Of note, a P2P call w as able to be completed w / Dr. Carter on the PHYSICAL peer review and he indicated that EE's

impairment is largely psychological, but then w hen a P2P call w as attempted on the BH review Dr. Carter declined to provided more info.

Agree w / NOT TDOO denial of claim for physical and behavioral health diagnoses. Send back denial letter for review .
- Management Review - DRLMO0 - Dec 15, 2022 09:15:19 am

Letter drafted.
- Management Review - PKKWE5 - Dec 16, 2022 02:31:25 pm

Letter good to send. - Management Review - DRLMO0 - Dec 19, 2022 12:45:16 pm

6/28/2023 Referrals 8 Initial Claim Review Completed SMMCSHA

1st Level Appeal:
Date Appeal Received:05/03/2023
30th day06/11/2023
45th Day:06/17/2023
90th Day:08/01/2023

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed:JSOULES3 John Soules Foods, Inc

Claim Demographics
Current Age: 69DOB:
State Residence:TX
Situs State:TX
Estimated Net benefit:$6,008
SSDI benefit:not qualify and SSRT STARED 12/2021, NOT AN OFFSET
Date of Disability: 05/07/2022
EP: 90
Benefit Comm Date:08/05/2022
Benefit Paid To Date:none
COD Date:11/05/2023
Max Duration Date:11/05/202315 months as EE w as 68 on DOD
Occupation / Loc in AWD:Management AnalystOA Aw d 12/09/2022
Physical Level of Occ:sed
Primary Diagnosis: reaction to severe stress
Co-Morbid Diagnoses: adjustment disorder w ith anxiety
ERISA: inc. co
Attorney:J. Price McNamara 255-201-8311 support@pricemcnamara.com
Riders:RET PIB FC - not qualify
STD claim status:1220042749 - closed
LW claim status:none
LTD claim status:appealed

Note ++ any payments go to EE AND Attny address on appeal letter++++

LT handed - middle finger missing at knuckle

Initial Claim Decision:
Reason/Date of denial: 12/16/2022 NTDOO Physical and BH
Type of Medical Review , Name, & Specialty:

Peer Dr. Lenw orth Ellis IM/Occ Med - 11/24/2022 sed capabilities
Dx's:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The medical evidence reasonably supports the follow ing restrictions and limitations:
From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or w alk for more than 2 hours in an 8 hour w ork day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or craw l, more than occasionally.

ECN Dr. Steven Choi Psychiatry 12/12/2022 is a lack of severe
Dx: Adjustment disorder w ith mixed anxiety and depression (F43.23)

Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number:
Last Date of Service: Dr. Clinton Carter FP
Restrictions and Limitations/Duration: 903-630-7130

Date and Type of Recent Surgeries:

Recent Auth: (12/24 mo):
Pre Ex investigation required: DOH 1997
AO investigation required: no
Rehab/EBF if 6 mo of COD: no

SSRT is aw arded in 12/2021, not an offset.

Appeal being discussed
Reasons for disagreement as explained in appeal:

Information Submitted w ith appeal and not previously review ed:

Affadavit from William say hs LDW w as 04/22/2022 list of Rx meds
Affidavit from son-in-law eric Johnson
Affidavit from Samantha Reynolds - spouse
Affidavit from Sandra St. Clair - sister-in-law
Affidavit from Stephanie Price - Niece
Physician letterDr. Clint carter 03/27/2023 ack his physical conitions and agrees > sed sit up to 2 hrs -
Depression and anxiety are secondary to physical

OVN 04/06/2023

OVN Pulmonary - 02/20/2023 BMI 38.37 RTC 3 months

Appeal Analysis: Clmnt is a 69 YOM Management Analyst (sed) w ho w ent out 05/07/2022 due to CAD and deconditioning and comorbid is sever stress causing depression and anxiety. On clm level a IM?OCC MED peer done w ith sed capabilities and a Psych peer don ith no R&L's form BH standpoint. No benefits w ere paid. This is 1st level appeal and Attny sent in letter attesting to his physical conditions w ith affidavits of several family members. Also a Physician's statement giving some less than sed capabilities signed 03/2023.

Attny ack letter and ER as w ell.

Pending for med recs since they submitted a statement form 03/2023, a year later.
Tolling w ith ack letter

- SMMCSHA - May 11, 2023 12:53:14 pm

revieved the follow ing:

05/12-14 2023 Christus Trinity Clinic:
OVN 05/12/2023 CAD dyspenea

Per Attny proceed w ith review . - SMMCSHA - Jun 14, 2023 02:02:10 pm

As w e are reivew ing back to 05/2022, and only new reocrds are 05/2023, w ill send to NDC.

NDC questions

1.Please provide a review of the medical findings. Please state your findings upon review of the medical information.
2.Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from 05/07/2022 and forw ard.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to w hich the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at w ith specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent w ith the medical findings? Please explain. - SMMCSHA - Jun 14, 2023 02:08:52 pm
Please extract records for this claim and create case in Sequoia to be fully indexed
William Reynolds
LTD 1220082997
STD 1220042749

Thanks - DWKEE - Jun 14, 2023 02:42:50 pm
Date:June 27, 2023

Subject:Appeal Nursing Memorandum

Claim #: 1220082997
Claimant: William Reynolds
Date of Birth:
Date of Disability: 5/7/22

Review of medical records on file completed. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review .

Clinical Assessment:
The EE stopped w orking on 5/7/22 due to acute stress reaction, adjustment disorder w ith anxiety, and depression related to his cardiac condition. He has history of acute myocardial infarction (heart attack) 10/2021 and subsequent heart attack 12/2021 status post stent placement. An echocardiogram (evaluate the structures of the heart) 1/6/22 revealed abnormal diastolic function (left ventricle does not fill properly reducing the amount of blood pumped to the body) and normal ejection fraction (heart's ability to pump blood out of the heart). Co-morbid conditions include coronary artery disease, atrial fibrillation (abnormal heartrate), benign prostatic hypertrophy (enlarged prostate), insomnia, elevated A1C (measures average blood sugar), obstructive sleep apnea (intermittent air flow blockage w hile sleeping) treated w ith continuous positive airw ay pressure (CPAP) (delivers constant steady air pressure w hile sleeping), and hypothyroidism (underactive thyroid) that are stable/w ell controlled w ith medication management.

The EE saw Dr. Carter (Family Medicine) on 4/28/22 for FMLA evaluation. He reports stress for the past 7 months since bypass surgery; he w as doing cardiac rehab and then he had another small heart attack requiring stent and this inhibited him from ability and motivation to do cardiac rehab; this has also impacted the progress he w as making w ith his depression. He w ent back to w ork as soon as he could and notes issues since returning to w ork (pressure at w ork and increased w orkload); he does not feel he has recovered from his heart attacks or subsequent depression/anxiety, and he is now having difficulty doing his job; he needs to stop and do physical and mental rehab necessary to function in his current position. His blood pressure and oxygen level are normal. On exam, he alert and oriented, in no acute distress. He denies suicidal or homicidal ideation. Remaining exam is unremarkable. Recommend time off for physical rehab and mental health w ith counseling, medications, and exercise. FMLA paperw ork completed. An APS dated 5/5/22 does not provide specific R/Ls. Treatment cardiac rehab, PT, and mental health counseling. Return to w ork 7/18/22-8/1/22. The EE saw Parker FNP (Family Medicine) on 6/21/22 for complaints of low back pain that started last w eek. He reports w orsening back pain yesterday w ith certain movements. He denies know n injury; he did yard w ork this past w eek but does not recall specific movement

that caused pain. he denies radiation to buttock or legs, and no w eakness or numbness. EE reports w alking 2-4 miles a day for exercise. On exam, he is alert and oriented in no acute distress. Back exam documents full ROM mild tenderness lumbar paraspinals, mostly over left sacroiliac joint. Positive straight leg raises (assess presence of herniated disc/evaluate for nerve root sensitivity) on the left. Strength and sensation are intact. Plan is to start Flexeril (muscle relaxer) and over-the counter analgesic medications (Voltaren gel, Tylenol). On 7/26/22, he reports he is slow ing progressing w ith his physical endurance, shortness of breath, and ability to do activities of daily living (ADLs) as w ell as gradual improvements in depression and anxiety; he still feels anxious about returning to w ork and is due to discuss options w ith employer. He stopped Lexapro (depression, anxiety) as he does not feel it w as helping; he continues to take Wellbutrin (depression) and only takes Xanax (anxiety) 3-4 times a month. He still reports minimal libido, and his w ife is nervous about that level of exertion, and she is also not comfortable w ith him being outside alone. Atrial fibrillation (abnormal heartbeat), EE w as cleared to stop Eliquis (blood thinner) by cardiology last w eek. He reports sleeping w ell w ith Restoril (sleep aid). His vital signs are stable. There are no documented exam findings. Plan is to continue current medications and recommend FMLA extension to 8/1/22. An APS dated 7/26/22 documents R/Ls to include limitations in concentration, short-term memory, and ability to perform high level analysis. An APS dated 8/8/22 documents diagnosis coronary artery bypass graft (CABG) and acute stress reaction. AP opines EE cannot return to w ork due to mental and physical deconditioning; he cannot return to his position due to complex mental requirements and high stress w ork environment. Objective findings include flat affect, tearful, anxiety, and shortness of breath and fatigue w ith w alking into office. R/Ls include physical exertion, complex decision making, high stress. No return to w ork.
The EE saw Dr. Carter on 9/7/22 to discuss disability. He reports he is not going to return to w ork; he gets overw helming anxiety at the thought of returning to w ork. He has been gradually increasing exercise capacity at home supervised by his w ife. EE feels he needed to w ork longer as planned to afford retirement how ever the inability to return to w ork has put him in a financial bind and he is hoping to qualify for long-term disability to make up for lost w ages due to medical disability. Limited exam notes EE to be alert and oriented, in no acute distress. Plan is to complete LTD paperw ork. On 9/9/22, EE presents to discuss LTD. He reports gradual recovery from CABG; his w ife still w on't let him w ork in the yard on his ow n. He reports ongoing anxiety/stress about returning to w ork and he gets anxious w hen meeting employer at gate to pick up his things; he w as planning to w ork several more years. Exam is unremarkable/unchanged. LTD paperw ork completed.

The EE saw Jorden LPC (Therapist) on 10/17/22 for adjustment disorder w ith mixed anxiety and depressed mood. General mild anxiety w ith depressive features. On exam, he is alert and oriented w ith anxious mood and appropriate affect, fair judgement/insight. His memory is intact, attention is good, thought process/content is normal, speech is normal. Plan is to attend therapy every 2 w eeks.

The EE saw Dr. Carter via telehealth on 10/23/22 for follow up depression. He reports he is in a "funk". He just had 2nd session w ith therapist. He has been taking Wellbutrin and took Lexapro for a short time w ithout know side effects. Plan is to continue Wellbutrin and restart Lexapro and continue counseling. Check in in 2 w eeks w ith follow up in 1-2 months.

A letter from Jorden LPC dated 11/8/22 documents EE's participation in counseling 11/17/21 and 12/1/21, and most recently 10/13/22, 10/25/22, 11/8/22 for severe stress reaction and adjustment disorder w ith mixed anxiety and depression.

An independent medical peer review w as completed on 11/24/22 by Dr. Ellis (Internal Medicine/Occupational Medicine) w ho opined EE w ould have R/Ls 8/5/22-4/30/23 to include occasional lift, carry, push, or pull up to 10 lbs., climb stairs, stoop, squat, kneel or craw l. He cannot stand or w alk for more than 2 hours in an 8-hour w orkday, climb ropes, ladders, or scaffolds. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder. Please see report for details.

An independent medical peer review w as completed on 12/12/22 by Dr. Choi (Psychiatry) w ho opined the medical records lack severe symptoms and objective findings to support psychiatric impairment. Please see report for details.

Visit summaries from Dr. Johnson indicate EE w as seen on 1/17/23 and 2/8/23 for his medical conditions including sleep disturbance, depression, in remission, high cholesterol, heart disease, atrial fibrillation, sleep apnea, high blood pressure, shortness of breath, fatigue, increased blood sugar, and obesity BMI 38.5 (normal 18.5-25). His vital signs are stable and oxygen level is normal. There are no documented exam findings or treatment plans.

Visit summary from Dr. Wang-Kocik (Pulmonology) indicates EE w as seen on 2/20/23 for sleep apnea. His vital signs are stable and oxygen level is normal. There are no documented exam findings. Plan for follow up in 3 months.

A letter from Dr. Carter dated 3/27/23 opines the EE is disabled from any time of gainful employment.

The EE saw Dr. Leffler (Internal Medicine) on 4/6/23 for follow up depression. He reports he is feeling better and has the desire to do things; he continues to take Wellbutrin and Lexapro, and reports trazadone is helping w ith his sleep. Exam findings appear to be normal (distorted image). Mental status exam is unremarkable. EE is noted to be stable. He denies suicidal or homicidal ideation. Plan is to continue medications and continue to increase social activities. He is counseled on diet and exercise for w eight loss.

The EE saw Dr. Flakas (Cardiology) on 5/12/23 for follow up CAD and shortness of breath (dyspnea) w ith exertion. He reports w orsening shortness of breath w ith exertion; he is doing w ell on medication management. He denies chest pain. He reports seeing pulmonology and being diagnosed w ith chronic obstructive pulmonary disease (COPD) (inflammatory lung disease causing obstructive airflow from the lungs) and noted significant improvement since starting inhalers though he is not back to baseline. Vital signs are stable. On exam, he is noted to be alert and oriented, in no distress. Physical exam is unremarkable including normal cardiac and respiratory exams. EKG on this date is abnormal. Plan is to start Imdur (chest pain) and admit for left heart catheterization (evaluate for heart conditions). He is also referred for cardiac rehab.
A visit summary 5/12/23-5/14/23 documents EE's hospitalization for ST segment depression. On discharge, he is prescribed Plavix (blood thinner) and nitroglycerin (chest pain). Plan for follow up w ith cardiology on 6/26/23.

The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder w ith anxiety, and depression related to his cardiac condition. The EE is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine) as noted above. There are no mental status exam documenting impairing psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) w ith noted improvements. Additional treatment includes psychotherapy by Jorden LPC how ever there is a significant gap in treatment from 12/1/21-10/13/22. Mental status exam is normal except noted anxious mood. From a mental health standpoint, although the EE reports stress and anxiety that appears to specific to returning to the w orkplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that w ould support restrictions or limitations from 5/7/22 and forw ard. All examinations, EE is noted to be alert and oriented w ithout documentation of cognitive slow ing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and EE did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that w ould change the prior determination. NDC agrees w ith prior peer review .

The medical records document ongoing care and treatment follow ing CABG and stent placement in 2021 associated w ith fatigue and shortness of breath w ith exertion. EE has a history of multiple medical conditions that are stable w ith medication management and CPAP as noted above. There are no documented side effects to any medications. Most recent ECHO 1/6/22 show ed normal ejection fraction. The EE is treated by Dr. Carter (Family Medicine) w ithout significant exam findings. His oxygen level is consistently normal. The records also indicate EE is follow ed by cardiology and he is noted to be doing w ell from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries w ithout clinical exam findings or treatment plans. During follow up visit 5/12/23 w ith Dr. Flakas (Cardiology), EE reports dyspnea w ith exertion. He also noted recent diagnosis of COPD treated w ith inhalers w ith significant improvements. Exam is unremarkable how ever EE required hospitalization 5/12/23-5/14/23 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or w ith activity w ith symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated hypotension, pulmonary and dependent edema, dizziness, vertigo, w itnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that w ould translate into a functional impairment 5/7/22 and forw ard except during most recent hospitalization and diagnostic testing. The R/Ls outlined in detail by peer review er Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

Amy M. RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - AMAMA3 - Jun 27, 2023 01:45:12 pm
Files have been extracted, combined, and sent to Sequoia / Pro-Index for full-index - STEGU1 - Jun 14, 2023 03:55:33 pm
Transferred to amama3.

prety2 - PRETY2 - Jun 23, 2023 02:34:15 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/14/2023 2:06:45 PM | Referrals | 8 | Initial Claim Review | Initial | SMMCSHA |

1st Level Appeal:
Date Appeal Received:05/03/2023

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

30th day06/11/2023
45th Day:06/17/2023
90th Day:08/01/2023

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed:JSOULES3 John Soules Foods, Inc

Claim Demographics
Current Age: 69DOB:
State Residence:TX
Situs State:TX
Estimated Net benefit:$6,008
SSDI benefit:not qualify and SSRT STARED 12/2021, NOT AN OFFSET
Date of Disability: 05/07/2022
EP: 90
Benefit Comm Date:08/05/2022
Benefit Paid To Date:none
COD Date:11/05/2023
Max Duration Date:11/05/202315 months as EE was 68 on DOD
Occupation / Loc in AWD:Management AnalystOA Awd 12/09/2022
Physical Level of Occ:sed
Primary Diagnosis: reaction to severe stress
Co-Morbid Diagnoses: adjustment disorder with anxiety
ERISA: inc. co
Attorney:J. Price McNamara 255-201-8311 support@pricemcnamara.com
Riders:RET PIB FC - not qualify
STD claim status:1220042749 - closed
LW claim status:none
LTD claim status:appealed

Note ++ any payments go to EE AND Attny address on appeal letter++++

LT handed - middle finger missing at knuckle

Initial Claim Decision:
Reason/Date of denial: 12/16/2022 NTDOO Physical and BH
Type of Medical Review , Name, & Specialty:

Peer Dr. Lenworth Ellis IM/Occ Med - 11/24/2022 sed capabilities
Dx's:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The medical evidence reasonably supports the following restrictions and limitations:
From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

ECN Dr. Steven Choi Psychiatry 12/12/2022 is a lack of severe
Dx: Adjustment disorder with mixed anxiety and depression (F43.23)

Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Current Providers - last 18 to 24 months

AP Name/Specialty/Phone Number:
Last Date of Service: Dr. Clinton Carter FP
Restrictions and Limitations/Duration: 903-630-7130

Date and Type of Recent Surgeries:

Recent Auth: (12/24 mo):
Pre Ex investigation required: DOH 1997
AO investigation required: no
Rehab/EBF if 6 mo of COD: no

SSRT is aw arded in 12/2021, not an offset.

Appeal being discussed
Reasons for disagreement as explained in appeal:

Information Submitted w ith appeal and not previously review ed:

Affadavit from William say hs LDW w as 04/22/2022 list of Rx meds
Affidavit from son-in-law eric Johnson
Affidavit from Samantha Reynolds - spouse
Affidavit from Sandra St. Clair - sister-in-law
Affidavit from Stephanie Price - Niece
Physician letterDr. Clint carter 03/27/2023 ack his physical conitions and agrees > sed sit up to 2 hrs -
Depression and anxiety are secondary to physical

OVN 04/06/2023

OVN Pulmonary - 02/20/2023 BMI 38.37 RTC 3 months

Appeal Analysis: Clmnt is a 69 YOM Management Analyst (sed) w ho w ent out 05/07/2022 due to CAD and deconditioning and comorbid is sever stress causing depression and anxiety. On clm level a IM?OCC MED peer done w ith sed capabilities and a Psych peer don ith no R&L's form BH standpoint. No benefits w ere paid. This is 1st level appeal and Attny sent in letter attesting to his physical conditions w ith affidavits of several family members. Also a Physician's statement giving some less than sed capabilities signed 03/2023.

Attny ack letter and ER as w ell.

Pending for med recs since they submitted a statement form 03/2023, a year later.
Tolling w ith ack letter

- SMMCSHA - May 11, 2023 12:53:14 pm

revieved the follow ing:
05/12-14 2023 Christus Trinity Clinic:
OVN 05/12/2023 CAD dyspenea

Per Attny proceed w ith review . - SMMCSHA - Jun 14, 2023 02:02:10 pm

As w e are reivew ing back to 05/2022, and only new reocrds are 05/2023, w ill send to NDC.

NDC questions

1.Please provide a review of the medical findings. Please state your findings upon review of the medical information.
2.Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from 05/07/2022 and forw ard.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to w hich the limitations and/or restrictions apply.

b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - SMMCSHA - Jun 14, 2023 02:08:52 pm
Please extract records for this claim and create case in Sequoia to be fully indexed
William Reynolds
LTD 1220082997
STD 1220042749

Thanks - DWKEE - Jun 14, 2023 02:42:50 pm
Files have been extracted, combined, and sent to Sequoia / Pro-Index for full-index - STEGU1 - Jun 14, 2023 03:55:33 pm
Transferred to amama3.

prety2 - PRETY2 - Jun 23, 2023 02:34:15 pm
Date:June 27, 2023

Subject:Appeal Nursing Memorandum

Claim #: 1220082997
Claimant: William Reynolds
Date of Birth:
Date of Disability: 5/7/22

Review of medical records on file completed. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review.

Clinical Assessment:
The EE stopped working on 5/7/22 due to acute stress reaction, adjustment disorder with anxiety, and depression related to his cardiac condition. He has history of acute myocardial infarction (heart attack) 10/2021 and subsequent heart attack 12/2021 status post stent placement. An echocardiogram (evaluate the structures of the heart) 1/6/22 revealed abnormal diastolic function (left ventricle does not fill properly reducing the amount of blood pumped to the body) and normal ejection fraction (heart's ability to pump blood out of the heart). Co-morbid conditions include coronary artery disease, atrial fibrillation (abnormal heartrate), benign prostatic hypertrophy (enlarged prostate), insomnia, elevated A1C (measures average blood sugar), obstructive sleep apnea (intermittent air flow blockage while sleeping) treated with continuous positive airway pressure (CPAP) (delivers constant steady air pressure while sleeping), and hypothyroidism (underactive thyroid) that are stable/well controlled with medication management.

The EE saw Dr. Carter (Family Medicine) on 4/28/22 for FMLA evaluation. He reports stress for the past 7 months since bypass surgery; he was doing cardiac rehab and then he had another small heart attack requiring stent and this inhibited him from ability and motivation to do cardiac rehab; this has also impacted the progress he was making with his depression. He went back to work as soon as he could and notes issues since returning to work (pressure at work and increased workload); he does not feel he has recovered from his heart attacks or subsequent depression/anxiety, and he is now having difficulty doing his job; he needs to stop and do physical and mental rehab necessary to function in his current position. His blood pressure and oxygen level are normal. On exam, he alert and oriented, in no acute distress. He denies suicidal or homicidal ideation. Remaining exam is unremarkable. Recommend time off for physical rehab and mental health with counseling, medications, and exercise. FMLA paperwork completed. An APS dated 5/5/22 does not provide specific R/Ls. Treatment cardiac rehab, PT, and mental health counseling. Return to work 7/18/22-8/1/22. The EE saw Parker FNP (Family Medicine) on 6/21/22 for complaints of low back pain that started last week. He reports worsening back pain yesterday with certain movements. He denies known injury; he did yard work this past week but does not recall specific movement that caused pain. he denies radiation to buttock or legs, and no weakness or numbness. EE reports walking 2-4 miles a day for exercise. On exam, he is alert and oriented in no acute distress. Back exam documents full ROM mild tenderness lumbar paraspinals, mostly over left sacroiliac joint. Positive straight leg raises (assess presence of herniated disc/evaluate for nerve root sensitivity) on the left. Strength and sensation are intact. Plan is to start Flexeril (muscle relaxer) and over-the counter analgesic medications (Voltaren gel, Tylenol). On 7/26/22, he reports he is slowing progressing with his physical endurance, shortness of breath, and ability to do activities of daily living (ADLs) as well as gradual improvements in depression and anxiety; he still feels anxious about returning to work and is due to discuss options with employer. He stopped Lexapro (depression, anxiety) as he does not feel it was helping; he continues to take Wellbutrin (depression) and only takes Xanax (anxiety) 3-4 times a month. He still reports minimal libido, and his wife is nervous about that level of exertion, and she is also not comfortable with him

being outside alone. Atrial fibrillation (abnormal heartbeat), EE w as cleared to stop Eliquis (blood thinner) by cardiology last w eek. He reports sleeping w ell w ith Restoril (sleep aid). His vital signs are stable. There are no documented exam findings. Plan is to continue current medications and recommend FMLA extension to 8/1/22. An APS dated 7/26/22 documents R/Ls to include limitations in concentration, short-term memory, and ability to perform high level analysis. An APS dated 8/8/22 documents diagnosis coronary artery bypass graft (CABG) and acute stress reaction. AP opines EE cannot return to w ork due to mental and physical deconditioning; he cannot return to his position due to complex mental requirements and high stress w ork environment. Objective findings include flat affect, tearful, anxiety, and shortness of breath and fatigue w ith w alking into office. R/Ls include physical exertion, complex decision making, high stress. No return to w ork.
The EE saw Dr. Carter on 9/7/22 to discuss disability. He reports he is not going to return to w ork; he gets overw helming anxiety at the thought of returning to w ork. He has been gradually increasing exercise capacity at home supervised by his w ife. EE feels he needed to w ork longer as planned to afford retirement how ever the inability to return to w ork has put him in a financial bind and he is hoping to qualify for long-term disability to make up for lost w ages due to medical disability. Limited exam notes EE to be alert and oriented, in no acute distress. Plan is to complete LTD paperw ork. On 9/9/22, EE presents to discuss LTD. He reports gradual recovery from CABG; his w ife still w on't let him w ork in the yard on his ow n. He reports ongoing anxiety/stress about returning to w ork and he gets anxious w hen meeting employer at gate to pick up his things; he w as planning to w ork several more years. Exam is unremarkable/unchanged. LTD paperw ork completed.

The EE saw Jorden LPC (Therapist) on 10/17/22 for adjustment disorder w ith mixed anxiety and depressed mood. General mild anxiety w ith depressive features. On exam, he is alert and oriented w ith anxious mood and appropriate affect, fair judgement/insight. His memory is intact, attention is good, thought process/content is normal, speech is normal. Plan is to attend therapy every 2 w eeks.

The EE saw Dr. Carter via telehealth on 10/23/22 for follow up depression. He reports he is in a "funk". He just had 2nd session w ith therapist. He has been taking Wellbutrin and took Lexapro for a short time w ithout know side effects. Plan is to continue Wellbutrin and restart Lexapro and continue counseling. Check in in 2 w eeks w ith follow up in 1-2 months.

A letter from Jorden LPC dated 11/8/22 documents EE's participation in counseling 11/17/21 and 12/1/21, and most recently 10/13/22, 10/25/22, 11/8/22 for severe stress reaction and adjustment disorder w ith mixed anxiety and depression.

An independent medical peer review w as completed on 11/24/22 by Dr. Ellis (Internal Medicine/Occupational Medicine) w ho opined EE w ould have R/Ls 8/5/22-4/30/23 to include occasional lift, carry, push, or pull up to 10 lbs., climb stairs, stoop, squat, kneel or craw l. He cannot stand or w alk for more than 2 hours in an 8-hour w orkday, climb ropes, ladders, or scaffolds. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder. Please see report for details.

An independent medical peer review w as completed on 12/12/22 by Dr. Choi (Psychiatry) w ho opined the medical records lack severe symptoms and objective findings to support psychiatric impairment. Please see report for details.

Visit summaries from Dr. Johnson indicate EE w as seen on 1/17/23 and 2/8/23 for his medical conditions including sleep disturbance, depression, in remission, high cholesterol, heart disease, atrial fibrillation, sleep apnea, high blood pressure, shortness of breath, fatigue, increased blood sugar, and obesity BMI 38.5 (normal 18.5-25). His vital signs are stable and oxygen level is normal. There are no documented exam findings or treatment plans.

Visit summary from Dr. Wang-Kocik (Pulmonology) indicates EE w as seen on 2/20/23 for sleep apnea. His vital signs are stable and oxygen level is normal. There are no documented exam findings. Plan for follow up in 3 months.

A letter from Dr. Carter dated 3/27/23 opines the EE is disabled from any time of gainful employment.

The EE saw Dr. Leffler (Internal Medicine) on 4/6/23 for follow up depression. He reports he is feeling better and has the desire to do things; he continues to take Wellbutrin and Lexapro, and reports trazadone is helping w ith his sleep. Exam findings appear to be normal (distorted image). Mental status exam is unremarkable. EE is noted to be stable. He denies suicidal or homicidal ideation. Plan is to continue medications and continue to increase social activities. He is counseled on diet and exercise for w eight loss.

The EE saw Dr. Flakas (Cardiology) on 5/12/23 for follow up CAD and shortness of breath (dyspnea) w ith exertion. He reports w orsening shortness of breath w ith exertion; he is doing w ell on medication management. He denies chest pain. He reports seeing pulmonology and being diagnosed w ith chronic obstructive pulmonary disease

(COPD) (inflammatory lung disease causing obstructive airflow from the lungs) and noted significant improvement since starting inhalers though he is not back to baseline. Vital signs are stable. On exam, he is noted to be alert and oriented, in no distress. Physical exam is unremarkable including normal cardiac and respiratory exams. EKG on this date is abnormal. Plan is to start Imdur (chest pain) and admit for left heart catheterization (evaluate for heart conditions). He is also referred for cardiac rehab.
A visit summary 5/12/23-5/14/23 documents EE's hospitalization for ST segment depression. On discharge, he is prescribed Plavix (blood thinner) and nitroglycerin (chest pain). Plan for follow up w ith cardiology on 6/26/23.

The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder w ith anxiety, and depression related to his cardiac condition. The EE is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine) as noted above. There are no mental status exam documenting impairing psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) w ith noted improvements. Additional treatment includes psychotherapy by Jorden LPC how ever there is a significant gap in treatment from 12/1/21-10/13/22. Mental status exam is normal except noted anxious mood. From a mental health standpoint, although the EE reports stress and anxiety that appears to specific to returning to the w orkplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that w ould support restrictions or limitations from 5/7/22 and forw ard. All examinations, EE is noted to be alert and oriented w ithout documentation of cognitive slow ing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and EE did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that w ould change the prior determination. NDC agrees w ith prior peer review .

The medical records document ongoing care and treatment follow ing CABG and stent placement in 2021 associated w ith fatigue and shortness of breath w ith exertion. EE has a history of multiple medical conditions that are stable w ith medication management and CPAP as noted above. There are no documented side effects to any medications. Most recent ECHO 1/6/22 show ed normal ejection fraction. The EE is treated by Dr. Carter (Family Medicine) w ithout significant exam findings. His oxygen level is consistently normal. The records also indicate EE is follow ed by cardiology and he is noted to be doing w ell from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries w ithout clinical exam findings or treatment plans. During follow up visit 5/12/23 w ith Dr. Flakas (Cardiology), EE reports dyspnea w ith exertion. He also noted recent diagnosis of COPD treated w ith inhalers w ith significant improvements. Exam is unremarkable how ever EE required hospitalization 5/12/23-5/14/23 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or w ith activity w ith symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated hypotension, pulmonary and dependent edema, dizziness, vertigo, w itnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that w ould translate into a functional impairment 5/7/22 and forw ard except during most recent hospitalization and diagnostic testing. The R/Ls outlined in detail by peer review er Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

Amy M. RN, CCM
Nurse Disability Consultant, Lincoln Financial Group - AMAMA3 - Jun 27, 2023 01:45:12 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/21/2023 | Referrals | 7 | Tolling Review | Completed | SMMCSHA |

Today's Date5/11/2023
Appeal Rcvd Date5/3/2023
Days Since Received8
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/2023N/A
0
0
0
0
0
0
Tolling Days0
90th Day of Active Review 8/1/2023
Active Review Days Remaining to 90th Day82

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

- SMMCSHA - May 11, 2023 12:49:36 pm

+++ UPDTED TOLLING++++++++++++++++

Today's Date6/14/2023
Appeal Rcvd Date5/11/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
0
0
0
0
0
0
Tolling Days28
90th Day of Active Review 9/6/2023
Active Review Days Remaining to 90th Day84

- SMMCSHA - Jun 14, 2023 02:05:04 pm

+++ UPDATED TOLLING+++++++++++++++++

Today's Date6/28/2023
Appeal Rcvd Date5/11/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
6/28/2023N/A
0
0
0
0
0
Tolling Days28
90th Day of Active Review 9/6/2023
Active Review Days Remaining to 90th Day70

- SMMCSHA - Jun 28, 2023 10:16:36 am

+++ UPDTED TOLLING+++++++++++++

Today's Date7/14/2023
Appeal Rcvd Date5/3/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20237/5/202355
0
0
0
0
0
0
Tolling Days55
90th Day of Active Review 9/25/2023
Active Review Days Remaining to 90th Day73

- SMMCSHA - Jul 14, 2023 01:29:54 pm

+++ CORRECTED TOLLING++++++++++++++

Today's Date7/21/2023
Appeal Rcvd Date5/3/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
6/28/20237/11/202313
0
0
0
0
0
Tolling Days41
90th Day of Active Review 9/11/2023
Active Review Days Remaining to 90th Day52

- SMMCSHA - Jul 21, 2023 02:12:28 pm

5/11/2023 12:49:13 PM Referrals 7 Tolling Review In Active Review SMMCSHA

Today's Date5/11/2023
Appeal Rcvd Date5/3/2023
Days Since Received8
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/2023N/A
0
0
0
0
0
0
Tolling Days0
90th Day of Active Review 8/1/2023
Active Review Days Remaining to 90th Day82

- SMMCSHA - May 11, 2023 12:49:36 pm

+++ UPDTED TOLLING++++++++++++++++

Today's Date6/14/2023
Appeal Rcvd Date5/11/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
0
0
0
0
0
0
Tolling Days28
90th Day of Active Review 9/6/2023
Active Review Days Remaining to 90th Day84

- SMMCSHA - Jun 14, 2023 02:05:04 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

+++ UPDATED TOLLING+++++++++++++++++

Today's Date6/28/2023
Appeal Rcvd Date5/11/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
6/28/2023N/A
0
0
0
0
0
Tolling Days28
90th Day of Active Review 9/6/2023
Active Review Days Remaining to 90th Day70

- SMMCSHA - Jun 28, 2023 10:16:36 am

+++ UPDTED TOLLING+++++++++++++

Today's Date7/14/2023
Appeal Rcvd Date5/3/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20237/5/202355
0
0
0
0
0
0
Tolling Days55
90th Day of Active Review 9/25/2023
Active Review Days Remaining to 90th Day73

- SMMCSHA - Jul 14, 2023 01:29:54 pm

+++ CORRECTED TOLLING++++++++++++++

Today's Date7/21/2023
Appeal Rcvd Date5/3/2023
Days Since Received
Extension Sent Date5/11/2023
Tolling Start DateTolling end DateTolling Days
5/11/20236/8/202328
6/28/20237/11/202313
0
0
0
0
0
Tolling Days41
90th Day of Active Review 9/11/2023
Active Review Days Remaining to 90th Day52

- SMMCSHA - Jul 21, 2023 02:12:28 pm

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/18/2023 | Referrals | 9 | External Review | Completed | JXBOOTH |

Please complete file copy of LTD 1220082997 & STD 1220042749 for a Internal Medicine peer.

Referral Date: 12/04/2023
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review , or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Job Title: management analyst
Product Type: 2nd Appeal LTD

Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder w ith mixed anxiety and depression. obesity
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Internal Medicine Peer

Name and Specialty of prior external vendor review ers/ examiners: ECN - Steven Choi - psychiatry peer; Lensw orth Ellis - IM peer - ICP;

Attorney Involvement: Yes or No: yes
Attorney Contact Information (If applicable): J. Price McNamara 225-201-8311

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that w ould impact occupational functioning? If so, please outline specific side

effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

8. Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Dec 04, 2023 02:20:40 pm
Case Submitted to CRT Case #197788 for peer review w ith an Internal Medicine Physician. - KAONE5 - Dec 05, 2023 02:32:41 pm
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - KAONE5 - Dec 15, 2023 08:04:14 am
CRT / ICP is unable to process - asked that w e Vend this out on 12-6 - File w as submitted to ECN #254926 for a peer review w ith Internal Medicine physician - KAONE5 - Dec 06, 2023 01:54:46 pm

12/4/2023 2:19:14 PM Referrals 9 External Review Initial JXBOOTH

Please complete file copy of LTD 1220082997 & STD 1220042749 for a Internal Medicine peer.

Referral Date: 12/04/2023
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review , or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Job Title: management analyst
Product Type: 2nd Appeal LTD

Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder w ith mixed anxiety and depression. obesity
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Internal Medicine Peer

Name and Specialty of prior external vendor review ers/ examiners: ECN - Steven Choi - psychiatry peer; Lensw orth Ellis - IM peer - ICP;

Attorney Involvement: Yes or No: yes
Attorney Contact Information (If applicable): J. Price McNamara 225-201-8311

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

questions?

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

7. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

8. Do the medical records indicate r/ls that would prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Dec 04, 2023 02:20:40 pm
Case Submitted to CRT Case #197788 for peer review with an Internal Medicine Physician. - KAONE5 - Dec 05, 2023 02:32:41 pm
CRT / ICP is unable to process - asked that we Vend this out on 12-6 - File was submitted to ECN #254926 for a peer review with Internal Medicine physician - KAONE5 - Dec 06, 2023 01:54:46 pm
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - KAONE5 - Dec 15, 2023 08:04:14 am

| 12/18/2023 | Referrals | 10 | External Review | Completed | JXBOOTH |
|---|---|---|---|---|---|

Please complete file copy of LTD 1220082997 and STD 1220042749 for Psychiatry peer.

Referral Date: 12/04/2023
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review, or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Job Title: management analyst
Product Type: 2nd Appeal LTD

Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Psychiatry Peer

Name and Specialty of prior external vendor reviewers/ examiners: ECN - Steven Choi - psychiatry peer; Lensworth Ellis - IM peer - ICP;

Attorney Involvement: Yes or No: yes
Attorney Contact Information (If applicable): J. Price McNamara 225-201-8311

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that w ould impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

8. Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Dec 04, 2023 02:22:11 pm
Case Submitted to CRT Case #197786 for peer review w ith an Psychiatry Physician. - KAONE5 - Dec 05, 2023 02:26:49 pm
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - KAONE5 - Dec 15, 2023 08:00:27 am
CRT / ICP is unable to process - asked that w e Vend this out on 12-6 - File w as submitted to ECN #254925 for a peer review w ith Psychiatry physician - KAONE5 - Dec 06, 2023 01:56:42 pm
Per ECN:
Good Afternoon Karryn,
Thank you again for this kind request. We noticed on the referral that there is attorney involvement, as w ell as request for AP Contact. Before having the review er contact the AP, I did just w ant to confirm that our review er has permission to contact the AP via phone, despite the attorney involvement?
Please confirm at your earliest convenience. Thank you!

Forw arding to JXBOOTH to see how they w ould like to proceed - KAONE5 - Dec 08, 2023 12:34:41 pm
Per JXBOOTH:
Karryn,
The attorney did not state that w e needed to go through his office for peer to peer contact.
Thank you - KAONE5 - Dec 08, 2023 12:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/4/2023 2:20:58 PM | Referrals | 10 | External Review | Initial | JXBOOTH |

Please complete file copy of LTD 1220082997 and STD 1220042749 for Psychiatry peer.

Referral Date: 12/04/2023
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review , or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): William Reynolds
Claim Number: 1220082997
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Job Title: management analyst
Product Type: 2nd Appeal LTD

Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder w ith mixed anxiety and depression. obesity
Date of Disability: 05/07/2022
Last Day Worked: 05/06/2022
Benefit Begin Date: 08/05/2022
Specialty Requested: Psychiatry Peer

Name and Specialty of prior external vendor review ers/ examiners: ECN - Steven Choi - psychiatry peer; Lensw orth Ellis - IM peer - ICP;

Attorney Involvement: Yes or No: yes
Attorney Contact Information (If applicable): J. Price McNamara 225-201-8311

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that w ould impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

8. Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Dec 04, 2023 02:22:11 pm
Case Submitted to CRT Case #197786 for peer review w ith an Psychiatry Physician. - KAONE5 - Dec 05, 2023 02:26:49 pm
CRT / ICP is unable to process - asked that w e Vend this out on 12-6 - File w as submitted to ECN #254925 for a peer review w ith Psychiatry physician - KAONE5 - Dec 06, 2023 01:56:42 pm
Per ECN:
Good Afternoon Karryn,
Thank you again for this kind request. We noticed on the referral that there is attorney involvement, as w ell as request for AP Contact. Before having the review er contact the AP, I did just w ant to confirm that our review er has

permission to contact the AP via phone, despite the attorney involvement?
Please confirm at your earliest convenience. Thank you!

Forw arding to JXBOOTH to see how they w ould like to proceed - KAONE5 - Dec 08, 2023 12:34:41 pm
Per JXBOOTH:
Karryn,
The attorney did not state that w e needed to go through his office for peer to peer contact.
Thank you - KAONE5 - Dec 08, 2023 12:45:28 pm
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - KAONE5 - Dec 15, 2023 08:00:27 am

| | | | | | |
|---|---|---|---|---|---|
| 1/16/2024 | Referrals | 11 | External Review | Completed | JXBOOTH |

Addendum for IM peer, records emailed seperately.

Referral Date: 01/04/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Robert Small
Specialty of Prior Review er / Examiner: Internal Medicine
Claimant Name: William Reynolds
Date of Birth:
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Jan 04, 2024 02:11:53 pm
Case submitted to ECN case #257071 for an Addendum w ith Dr Robert Small (Internal Medicine ) - KAONE5 - Jan 05, 2024 12:21:51 pm
Addendum recieved back from ECN- Sent to LFG APPEALS to be uploaded into AWD. - KAONE5 - Jan 12, 2024 12:42:49 pm
Per ECN:
Good Afternoon Karryn,
I w ould like to inform you that the previous review er Dr. Small is set to return to office Monday 01/08/2024. Please confirm if an extension to 01/12/2024 for the completed report w ould be approved.
Thank you. - KAONE5 - Jan 08, 2024 12:56:10 pm
Forw arding to JXBOOTH to advise. - KAONE5 - Jan 08, 2024 12:56:10 pm
Per JXBOOTH:
Karryn
The extension is fine.
Thank you, - KAONE5 - Jan 08, 2024 02:32:40 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/4/2024 2:10:52 PM | Referrals | 11 | External Review | Initial | JXBOOTH |

Addendum for IM peer, records emailed seperately.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Referral Date: 01/04/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Robert Small
Specialty of Prior Review er / Examiner: Internal Medicine
Claimant Name: William Reynolds
Date of Birth:
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Jan 04, 2024 02:11:53 pm
Case submitted to ECN case #257071 for an Addendum w ith Dr Robert Small (Internal Medicine ) - KAONE5 - Jan 05, 2024 12:21:51 pm
Per ECN:
Good Afternoon Karryn,
I w ould like to inform you that the previous review er Dr. Small is set to return to office Monday 01/08/2024. Please confirm if an extension to 01/12/2024 for the completed report w ould be approved.
Thank you. - KAONE5 - Jan 08, 2024 12:56:10 pm
Forw arding to JXBOOTH to advise. - KAONE5 - Jan 08, 2024 12:56:10 pm
Per JXBOOTH:
Karryn
The extension is fine.
Thank you, - KAONE5 - Jan 08, 2024 02:32:40 pm
Addendum recieved back from ECN- Sent to LFG APPEALS to be uploaded into AWD. - KAONE5 - Jan 12, 2024 12:42:49 pm

| 2/12/2024 | Referrals | 13 | External Review | Completed | JXBOOTH |
|---|---|---|---|---|---|

IM addendum, records emailed seperately.

Referral Date: 02/05/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Robert Small

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Specialty of Prior Review er / Examiner: Internal Medicine
Claimant Name: William Reynolds
Date of Birth:
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Feb 05, 2024 03:11:39 pm
Case submitted to ECN case #259512 for an Addendum w ith Dr Robert Small( Internal Medicine ) - KAONE5 - Feb 06, 2024 12:39:41 pm
Addendum received back from ECN - sent to LFGAppeals to be uploaded into AWD - ADYOUNG - Feb 12, 2024 12:48:26 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/5/2024 3:10:53 PM | Referrals | 13 | External Review | Initial | JXBOOTH |

IM addendum, records emailed seperately.

Referral Date: 02/05/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Robert Small
Specialty of Prior Review er / Examiner: Internal Medicine
Claimant Name: William Reynolds
Date of Birth:
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Feb 05, 2024 03:11:39 pm
Case submitted to ECN case #259512 for an Addendum w ith Dr Robert Small( Internal Medicine ) - KAONE5 - Feb 06, 2024 12:39:41 pm
Addendum received back from ECN - sent to LFGAppeals to be uploaded into AWD - ADYOUNG - Feb 12, 2024 12:48:26 pm

| 2/14/2024 | Referrals | 12 | External Review | Completed | JXBOOTH |
|---|---|---|---|---|---|

Psych addendum, records emailed seperately.
Referral Date: 02/05/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Elbert Greer Richardson
Specialty of Prior Review er / Examiner: Psychiatry
Claimant Name: William Reynolds
Date of Birth:
Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Feb 05, 2024 03:10:36 pm
Case submitted to ECN case #259508 for an Addendum w ith Dr Elbert Greer Richardson(PSYCHIATRY ) - KAONE5 - Feb 06, 2024 12:24:27 pm
Addendum recieved back from ECN- Sent to LFG APPEALS to be uploaded into AWD. - KAONE5 - Feb 14, 2024 02:50:49 pm

| 2/5/2024 3:09:42 PM | Referrals | 12 | External Review | Initial | JXBOOTH |
|---|---|---|---|---|---|

Psych addendum, records emailed seperately.
Referral Date: 02/05/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No)

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN - Elbert Greer Richardson
Specialty of Prior Review er / Examiner: Psychiatry
Claimant Name: William Reynolds
Date of Birth:

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claimant Time Zone: Central
Customer/Group Name: John Soules Foods
Is Linked Provider in S1.NXT? No

Claim Number: 1220082997
2nd Appeal LTD:
Diagnosis: other reactions to severe stress, coronary artery disease, physical deconditioning
Date of Disability: 05/07/2022
Benefit Begin Date: 08/05/2022
Job Title: management analyst
Last Day Worked: 05/06/2022

Thank you for your report regarding the LTD claim for William Reynolds. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Feb 05, 2024 03:10:36 pm
Case submitted to ECN case #259508 for an Addendum w ith Dr Elbert Greer Richardson(PSYCHIATRY ) - KAONE5 - Feb 06, 2024 12:24:27 pm
Addendum recieved back from ECN- Sent to LFG APPEALS to be uploaded into AWD. - KAONE5 - Feb 14, 2024 02:50:49 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/15/2023 10:31:46 AM | Status | | Not TD Ow n Occ | CLOSED | PKKWE5 |
| 12/6/2023 8:26:19 AM | Status | | Not TD Ow n Occ | CLOSED | CXGEARY |
| 12/20/2022 8:07:28 AM | Status | | Not TD Ow n Occ | CLOSED | PKKWE5 |
| 3/7/2024 2:16:30 PM | Status | | Not TD Ow n Occ | CLOSED | JXBOOTH |
| 7/26/2023 10:49:38 AM | Status | | Not TD Ow n Occ | CLOSED | SMMCSHA |
| 5/4/2023 11:26:49 AM | Status | | | REOPENED | BETWA1 |
| 12/15/2023 10:31:46 AM | Status | | | REOPENED | PKKWE5 |
| 10/2/2023 2:49:22 PM | Status | | | REOPENED | CXGEARY |
| 4/23/2024 1:11:49 PM | Status | | | REOPENED | CXGEARY |
| 12/18/2023 11:27:39 AM | Status | | | REOPENED | JXBOOTH |
| 12/20/2022 | Summary/Assessment/Pa | 1 | INITIAL SAP - PKKWE5 - Sep 26, 2022 06:12:59 pm | Completed | PKKWE5 |

Summary Notes
INITIAL SAP - PKKWE5 - Sep 26, 2022 06:12:59 pm
Assessment Notes
BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means 1/12th of the Insured Employee's annual gross earnings from the Employer during the calendar year just prior to the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.

It is figured from the income box on the Insured Employee's W-2 form, w hich reports w ages, tips and other compensation from the Employer for federal income tax purposes. It includes the Insured Employee's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does not include:
1.any Employer contributions to a deferred compensation plan;
2.income received from any car, housing or moving allow ance; or
3.income from a source other than the Employer.
It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. For an Insured Employee w ho did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the monthly gross earnings received during the actual period of employment, as show n in the Employer's financial records.

Self-Billed 100% ER Paid Pre-Tax

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Class: 2 [TBC w ith ER]
BME Def: W-2
BME Calc: $TOTALGROSS/12 = $BME
- PKKWE5 - Sep 26, 2022 06:12:59 pm
Path Notes
Summary:

EE is a 69 year old, Male, OCCUPATION (DEMAND) [Pending JD/OA]
DOB:
DOH: 02/13/1997
EFD: 01/01/2016 [TBC w ith ER]
DLW: 05/06/2022
DOD: 05/07/2022
BCD: 08/05/2022
MBD: 11/05/2023
Diagnosis: Other symptoms and signs involving the nervous system; Other reactions to severe stress
Claim Status: PENDING

Assessment:

Eligibility
Self-Billed 100% ER Paid Pre-Tax
Class: 2 [TBC w ith ER]
BME Def: W-2
BME Calc: $TOTALGROSS/12 = $BME
FIT: [TBC w ith EE]
Retirement: [TBC w ith ER]
SSDI: NQ [FRA at DOD]
SSRT: $2936.00 [TBC w ith EE]
Pre-Ex: 3/12 [N/A]
PIB: NQ [Confirmed via APS]
Fam Care: NQ [TBC w ith EE]

Medical

According to Clinical Review dated 08/22/2022:
Review ed file, including previous NDC review s dated 5/20/22 and 8/12/22 related to physical conditions. Please see these review s for full history related to cardiac conditions. Claim w as previously supported through 7/18/22. EE is currently treating w ith Clinton Carter, MD (Primary Care) for Acute Stress Reaction (F43.0) and Major Depressive Disorder (F32.9). The EE had met w ith a colleague of Dr. Carter, Danyel Kush, FNP on 4/20/22 and reported fatigue and symptoms of depression, such as fatigue, anhedonia (lack of interest or pleasure), increased sleep, decreased appetite, and sadness, along w ith lack of motivation to participate in cardiac rehab. The EE noted having met w ith behavioral health staff, Sara, in the past, but noted that he did not find it beneficial and declined to meet w ith this staff again. EE noted to be taking tw o anti-depressant medications, Wellbutrin and Lexapro, but indicated that he did not think the Lexapro w as helping and w ould like to discontinue this medication. Psychiatric exam findings w ere w ithin normal limits. With Ms. Kush recommending that the EE remain on current medications. The EE w as then seen by Dr. Carter on 4/28/22 and reported anxiety attacks prior to w ork, making mistakes in the w orkplace, second guessing himself, and decreased speed due to fear of making further mistakes. Dr. Carter recommended that the EE take leave for physical and mental recovery.

The EE w as not seen again by Dr. Carter until 7/26/22, at w hich time it w as noted that symptoms w ere gradually improving. Ongoing anxiety w as noted around RTW. The EE reported that he had discontinued the Lexapro due to lack of benefit, but w as taking Wellbutrin, along w ith as needed anxiety medication, Xanax, 3-4 times per month. Psychiatric exam findings w ere not noted. Dr. Carter recommended that the EE remain OOW through at least 8/1/22, but no further escalations in care w ere noted, such as medication adjustments or referral to additional behavioral health providers. There is no indication that the EE w as treating w ith psychotherapy, as no records are currently available from any therapy provider, and records do not note treatment w ith outside therapy provider. Dr. Carter provided a Continuance of Disability Form dated 7/26/22 noting difficulty w ith concentration and short-term memory, along w ith difficulty w ith ability to perform high level analysis, but noted that the EE w as w orking tow ards RTW if possible.

While the EE has continued to note some anxiety, there is currently no indication that the EE has received any escalations in care related to behavioral health conditions, as he declined to meet w ith behavioral health staff w ithin Dr. Carter's office, and discontinued his secondary anti-depressant medication, w ith no further medication adjustments indicated by Dr. Carter. There is no indication that the EE is currently treating w ith additional behavioral health providers, such as therapy or psychiatry, as no records are currently available from any additional providers, and this treatment is not noted w ithin visits w ith Dr. Carter. The EE is currently meeting w ith Dr. Carter every 3 months, w hich w ould not be a frequency consistent w ith impairing levels of psychiatric symptoms, w ith w hich treatment w ould be expected on a monthly basis. Due to these reasons, R&Ls beyond 7/18/22 w ould not be supported from a behavioral health standpoint. Should additional information become available, such as records from behavioral health providers, such as therapy or psychiatry, it w ould be recommended that the CS re-refer to clinical for further review at that time. CS updated.

Benefits beyond 08/01/2022 on STD 1220042749 w ere denied for Not TDOO.

According to APS completed by Clint Carter, MD dated 09/09/2022:
Offered diagnoses of disability due to neurological disorder, other reactions to severe stress. Noted back to back acute myocardial infarctions w ith difficult rehab and depression, anxiety. Unable to return to his job of complex decision making and computations. Anxiety becomes severe w ith returning to w ork/properties. Symptoms of flat affect, visible anxiety w ith discussing returning to w ork. Noted symptoms first appeared 09/28/2021 w ith hospital confinement 09/28/2021-10/08/2021, reduced ability to w ork 01/01/2022, advised to stop w ork 04/28/2022. Most recent treatment 09/07/2022, next treatment in 3 months. EE restricted from return to complicated computations and decisions. Treatment noted as Wellbutrin. Prognosis poor. Not likely to return to w ork.

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

Sent Pend Letters.

Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait MR from MyMD Select/Clint Carter; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Sep 26, 2022 06:12:59 pm

Updated Assessment:

According to MR received from MyMed Select Tyler:
MR range 11/11/2021-09/09/2022. EE seen for MDD exacerbated by open hear surgery then secondary heart attack. Noted at 04/28/2022 OV that EE had been under increased scrutiny at w ork since returning and w as feeling extra pressure. EE reported several anxiety attacks prior to going to w ork w here he w as sure that he w as going to die. EE reported that he does not feel that he has ever recovered from the 2 heart attacks or the subsequent depression and now having difficulty fulfilling his w ork obligations. EE reported that he needs disability in order to afford to stop w orking. Provider recommended that he have some time off of w ork for physical rehab as w ell a time to focus on mental health w ith counseling, medication, and exercise. EE seen 09/09/2022. Objective findings noted that EE w as w ell appearing psych A/O x 3. EE w as unable to w ork due to reactions to severe stress and w as to continue to address anxiety. No indication of any escalation of treatment.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait Additional MR; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Oct 07, 2022 04:41:32 pm

Updated Assessment:

According to Email from EE dated 10/19/2022:
EE began a counseling program w ith Sarah S Jorden, MA, LPC in Tyler, Texas on 10/13/2022. EE seen bi-w eekly.

EE provided contact information:
101 E Southeast Loop 323
Suite 100-A

Tyler, TX 75703
(903) 730-6676

Unable to reach provider at number provided. Desktop search found same number and unable to locate fax number. Advised EE all MR and BH APS Initial to be completed by Sarah S Jorden, MA, LPC w ill be required. Requested contact information/fax number for provider. Also requested confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait MR/BHAPS from Sarah S Jorden, MA, LPC; Aw ait confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Oct 21, 2022 09:40:06 am

Updated Assessment:

According to Email from EE dated 10/21/2022:
EE had not been seen at MyMed Select Tyler since early 09/2022 visit. EE has follow up scheduled for 10/26/2022.

According to BHAPS completed by Sarah S Jorden, MA, LPC dated 10/21/2022:
Offered diagnose of other reactions to severe stress, adjustment disorder w ith mixed anxiety and depressed mood. Noted CBT w as recommended every 2 w eeks for 6 months. NOV 11/08/2022.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete Initial Calls; Aw ait MR from Sarah S Jorden, MA, LPC; Aw ait confirmation if DOS 10/26/2022 w ith MyMed Select Tyler w ill be provided; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 02, 2022 10:10:24 am

Updated Assessment:

According to MR received from MyMD Select Tyler:
EE seen virtually 10/23/2022. Noted EE had just had second counseling session w ith Sarah S Jorden MA, LPC. Is on Wellbutrin XL 300. Was on Lexapro w ithout side effects. EE to continue counseling, continue Wellbutrin XL 300, add Lexapro. EE to follow up 1-2 months. Referral for completing Disability Paperw ork dated 11/03/2022. Noted EE taking Eliquis and Metoprolol for atrial fibrillation. Noted EE taking Flomax benign prostatic hyperplasia. Noted EE taking temazepam for insomnia. Noted EE taking Wellbutrin XL 300 for major depressive disorder. Noted EE had elevated A1c, elevated LDL cholesterol. Noted EE uses CPAP for obstructive sleep apnea. EE also has history of insulin resistance, low vitamin D level, CAD, STEMI, CABG, hypothyroid, hearing aids.

According to MR received from Sarah S Jorden, MA, LPC:
Undated normal MSE. EE to be seen every tw o w eeks.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete Initial Calls; Aw ait MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 08, 2022 10:01:59 am

Updated Assessment:

According to Management Review dated 11/09/2022:
We have contact info from Sarah Jorden. I w ould recommend a call to her office to see if they can provide you w ith treatment notes since they just completed the APS. If no success, then please submit a MR request for these records.
EE appears to only communicate by email. I w ould email him and ask him to set up a time to complete detailed initial interview .
If MR from Sarah Jorden have not been received by around 12/5/22, send back for my review for possible FTP.

I also w as unable to find ER info and specifically an ERS. Should claim be incomplete? Do w e need to f/u w / ER again for info?

According to Email from ER dated 11/10/2022:
DOH: 02/13/1997
LFG LTD EFD: 01/01/2016
Insurance Class: 2
DLW: 05/06/2022

Regular scheduled w ork hours: Monday - Friday; 40 hours a w eek
Other Income: STD Only
Retirement: 401k

EE on LOA after stopping w ork due to personal illness, cardiac rehab/mental health treatment. No time missed prior to DLW related to condition. EE has exhausted FMLA. No return. Position is being recruited for.

According to 2021 W-2 and EOY Statement:
Total Gross Income of $102,966.70. No Section 125, 132, FSA, or GTL deduction.

BME Calc: $102966.70/12 = $8583.06

A formal OA has not been completed at this time. How ever, based on the job description received, EE is likely best described as a Reports Analyst. The demand is sedentary.

According to Teleconference w ith Sarah S Jorden, MA, LPC dated 11/10/2022:
Provider sending all office/treatment notes and diagnostic test results No formal request for information needed.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Aw ait MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 10, 2022 03:02:53 pm

Updated Assessment:

Correction: W-2 is from 2008.
Email sent to ER to provide 2021 W-2.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Aw ait MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 10, 2022 03:30:11 pm

Updated Assessment:

Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.

Requested BH Peer Review for behavioral
Requested Clinical Review for physical.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Aw ait BH Peer Review for behavioral; Clinical Review for physical
LTP: RTW-OO
- PKKWE5 - Nov 14, 2022 03:25:27 pm

Updated Assessment:

According to Peer Review completed by Lenworth Ellis, MD, MPH dated 11/24/2022:
Primary Impairing Diagnoses: Coronary artery disease (I25); Physical deconditioning (Z72.3)
Clinically Significant Comorbid Diagnosis: Class 3 obesity (E66.01)

Peer Reviewer comments that the records indicate that EE has a history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review. But, also indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported.

The medical evidence reasonably supports the following restrictions and limitations:
From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

Call with Clint Carter, MD on 11/23/2022 indicated that EE has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks and has been treated with counseling and medications. He has had two episodes of myocardial infarction and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.

Requested Management Review of Peer Review if clarification is needed as Peer Review both recommends specific R&Ls related to physical conditions stating that history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review and indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported which are related to history of anxiety and depression.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity appear consistent with sedentary demand.
STP: Complete EE Initial Call; Await BH Peer Review for behavioral
LTP: RTW-OO
- PKKWE5 - Nov 30, 2022 12:51:37 pm

Updated Assessment:

According to OA dated 12/09/2022:
EE is a Management Analyst [(DOT): 161.167-010]. The demand is sedentary.

Updated Path:
EE likely no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent with OO.
STP: Complete EE Initial Call; Await BH Peer Review for behavioral
LTP: RTW-OO
- PKKWE5 - Dec 13, 2022 09:33:45 am

Updated Assessment:

According to BH Peer Review completed by Steven Choi, DO dated 12/12/2022:
Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond. Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Sent for Management Review for possible Not TDOO Denial.

Updated Path:
EE is not TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent w ith OO. No supported R&Ls from a psychiatric perspective.
STP: Aw ait Management Review ; Draft Denial Letter and notify EE
LTP: RTW-OO
- PKKWE5 - Dec 14, 2022 05:23:31 pm

Updated Assessment:

Management in agreement w ith denial.
Sent Letter and notified EE.

Updated Path:
EE is not TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent w ith OO. No supported R&Ls from a psychiatric perspective. Claim has been denied.
STP: Close Claim
LTP: RTW-OO
- PKKWE5 - Dec 20, 2022 08:06:50 am

9/26/2022 6:12:26 PM Summary/Assessment/Path INITIAL SAP - PKKWE5 - Sep 26, 2022 06:12:59 pm Requested PKKWE5

Summary Notes
INITIAL SAP - PKKWE5 - Sep 26, 2022 06:12:59 pm
Assessment Notes
BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means 1/12th of the Insured Employee's annual gross earnings from the Employer during the calendar year just prior to the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.

It is figured from the income box on the Insured Employee's W-2 form, w hich reports w ages, tips and other compensation from the Employer for federal income tax purposes. It includes the Insured Employee's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does not include:
1.any Employer contributions to a deferred compensation plan;
2.income received from any car, housing or moving allow ance; or
3.income from a source other than the Employer.
It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. For an Insured Employee w ho did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the monthly gross earnings received during the actual period of employment, as show n in the Employer's financial records.

Self-Billed 100% ER Paid Pre-Tax
Class: 2 [TBC w ith ER]
BME Def: W-2
BME Calc: $TOTALGROSS/12 = $BME
- PKKWE5 - Sep 26, 2022 06:12:59 pm
Path Notes
Summary:

EE is a 69 year old, Male, OCCUPATION (DEMAND) [Pending JD/OA]
DOB:
DOH: 02/13/1997
EFD: 01/01/2016 [TBC w ith ER]
DLW: 05/06/2022
DOD: 05/07/2022
BCD: 08/05/2022
MBD: 11/05/2023

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Diagnosis: Other symptoms and signs involving the nervous system; Other reactions to severe stress
Claim Status: PENDING

Assessment:

Eligibility
Self-Billed 100% ER Paid Pre-Tax
Class: 2 [TBC w ith ER]
BME Def: W-2
BME Calc: $TOTALGROSS/12 = $BME
FIT: [TBC w ith EE]
Retirement: [TBC w ith ER]
SSDI: NQ [FRA at DOD]
SSRT: $2936.00 [TBC w ith EE]
Pre-Ex: 3/12 [N/A]
PIB: NQ [Confirmed via APS]
Fam Care: NQ [TBC w ith EE]

Medical

According to Clinical Review dated 08/22/2022:
Review ed file, including previous NDC review s dated 5/20/22 and 8/12/22 related to physical conditions. Please see these review s for full history related to cardiac conditions. Claim w as previously supported through 7/18/22. EE is currently treating w ith Clinton Carter, MD (Primary Care) for Acute Stress Reaction (F43.0) and Major Depressive Disorder (F32.9). The EE had met w ith a colleague of Dr. Carter, Danyel Kush, FNP on 4/20/22 and reported fatigue and symptoms of depression, such as fatigue, anhedonia (lack of interest or pleasure), increased sleep, decreased appetite, and sadness, along w ith lack of motivation to participate in cardiac rehab. The EE noted having met w ith behavioral health staff, Sara, in the past, but noted that he did not find it beneficial and declined to meet w ith this staff again. EE noted to be taking tw o anti-depressant medications, Wellbutrin and Lexapro, but indicated that he did not think the Lexapro w as helping and w ould like to discontinue this medication. Psychiatric exam findings w ere w ithin normal limits. With Ms. Kush recommending that the EE remain on current medications. The EE w as then seen by Dr. Carter on 4/28/22 and reported anxiety attacks prior to w ork, making mistakes in the w orkplace, second guessing himself, and decreased speed due to fear of making further mistakes. Dr. Carter recommended that the EE take leave for physical and mental recovery.

The EE w as not seen again by Dr. Carter until 7/26/22, at w hich time it w as noted that symptoms w ere gradually improving. Ongoing anxiety w as noted around RTW. The EE reported that he had discontinued the Lexapro due to lack of benefit, but w as taking Wellbutrin, along w ith as needed anxiety medication, Xanax, 3-4 times per month. Psychiatric exam findings w ere not noted. Dr. Carter recommended that the EE remain OOW through at least 8/1/22, but no further escalations in care w ere noted, such as medication adjustments or referral to additional behavioral health providers. There is no indication that the EE w as treating w ith psychotherapy, as no records are currently available from any therapy provider, and records do not note treatment w ith outside therapy provider. Dr. Carter provided a Continuance of Disability Form dated 7/26/22 noting difficulty w ith concentration and short-term memory, along w ith difficulty w ith ability to perform high level analysis, but noted that the EE w as w orking tow ards RTW if possible.

While the EE has continued to note some anxiety, there is currently no indication that the EE has received any escalations in care related to behavioral health conditions, as he declined to meet w ith behavioral health staff w ithin Dr. Carter's office, and discontinued his secondary anti-depressant medication, w ith no further medication adjustments indicated by Dr. Carter. There is no indication that the EE is currently treating w ith additional behavioral health providers, such as therapy or psychiatry, as no records are currently available from any additional providers, and this treatment is not noted w ithin visits w ith Dr. Carter. The EE is currently meeting w ith Dr. Carter every 3 months, w hich w ould not be a frequency consistent w ith impairing levels of psychiatric symptoms, w ith w hich treatment w ould be expected on a monthly basis. Due to these reasons, R&Ls beyond 7/18/22 w ould not be supported from a behavioral health standpoint. Should additional information become available, such as records from behavioral health providers, such as therapy or psychiatry, it w ould be recommended that the CS re-refer to clinical for further review at that time. CS updated.

Benefits beyond 08/01/2022 on STD 1220042749 w ere denied for Not TDOO.



Lincoln/Reynolds 0154

According to APS completed by Clint Carter, MD dated 09/09/2022:
Offered diagnoses of disability due to neurological disorder, other reactions to severe stress. Noted back to back acute myocardial infarctions w ith difficult rehab and depression, anxiety. Unable to return to his job of complex decision making and computations. Anxiety becomes severe w ith returning to w ork/properties. Symptoms of flat affect, visible anxiety w ith discussing returning to w ork. Noted symptoms first appeared 09/28/2021 w ith hospital confinement 09/28/2021-10/08/2021, reduced ability to w ork 01/01/2022, advised to stop w ork 04/28/2022. Most recent treatment 09/07/2022, next treatment in 3 months. EE restricted from return to complicated computations and decisions. Treatment noted as Wellbutrin. Prognosis poor. Not likely to return to w ork.

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

Sent Pend Letters.

Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait MR from MyMD Select/Clint Carter; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Sep 26, 2022 06:12:59 pm

Updated Assessment:

According to MR received from MyMed Select Tyler:
MR range 11/11/2021-09/09/2022. EE seen for MDD exacerbated by open hear surgery then secondary heart attack. Noted at 04/28/2022 OV that EE had been under increased scrutiny at w ork since returning and w as feeling extra pressure. EE reported several anxiety attacks prior to going to w ork w here he w as sure that he w as going to die. EE reported that he does not feel that he has ever recovered from the 2 heart attacks or the subsequent depression and now having difficulty fulfilling his w ork obligations. EE reported that he needs disability in order to afford to stop w orking. Provider recommended that he have some time off of w ork for physical rehab as w ell a time to focus on mental health w ith counseling, medication, and exercise. EE seen 09/09/2022. Objective findings noted that EE w as w ell appearing psych A/O x 3. EE w as unable to w ork due to reactions to severe stress and w as to continue to address anxiety. No indication of any escalation of treatment.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait Additional MR; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Oct 07, 2022 04:41:32 pm

Updated Assessment:

According to Email from EE dated 10/19/2022:
EE began a counseling program w ith Sarah S Jorden, MA, LPC in Tyler, Texas on 10/13/2022. EE seen bi-w eekly.

EE provided contact information:
101 E Southeast Loop 323
Suite 100-A
Tyler, TX 75703
(903) 730-6676

Unable to reach provider at number provided. Desktop search found same number and unable to locate fax number. Advised EE all MR and BH APS Initial to be completed by Sarah S Jorden, MA, LPC w ill be required. Requested contact information/fax number for provider. Also requested confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress.
STP: Complete Initial Calls; Aw ait MR/BHAPS from Sarah S Jorden, MA, LPC; Aw ait confirmation if there are any additional DOS beyond 09/09/2022 at MyMed Select Tyler; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Oct 21, 2022 09:40:06 am

Updated Assessment:

According to Email from EE dated 10/21/2022:
EE had not been seen at MyMed Select Tyler since early 09/2022 visit. EE has follow up scheduled for 10/26/2022.

According to BHAPS completed by Sarah S Jorden, MA, LPC dated 10/21/2022:
Offered diagnose of other reactions to severe stress, adjustment disorder w ith mixed anxiety and depressed mood. Noted CBT w as recommended every 2 w eeks for 6 months. NOV 11/08/2022.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete Initial Calls; Aw ait MR from Sarah S Jorden, MA, LPC; Aw ait confirmation if DOS 10/26/2022 w ith MyMed Select Tyler w ill be provided; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 02, 2022 10:10:24 am

Updated Assessment:

According to MR received from MyMD Select Tyler:
EE seen virtually 10/23/2022. Noted EE had just had second counseling session w ith Sarah S Jorden MA, LPC. Is on Wellbutrin XL 300. Was on Lexapro w ithout side effects. EE to continue counseling, continue Wellbutrin XL 300, add Lexapro. EE to follow up 1-2 months. Referral for completing Disability Paperw ork dated 11/03/2022. Noted EE taking Eliquis and Metoprolol for atrial fibrillation. Noted EE taking Flomax benign prostatic hyperplasia. Noted EE taking temazepam for insomnia. Noted EE taking Wellbutrin XL 300 for major depressive disorder. Noted EE had elevated A1c, elevated LDL cholesterol. Noted EE uses CPAP for obstructive sleep apnea. EE also has history of insulin resistance, low vitamin D level, CAD, STEMI, CABG, hypothyroid, hearing aids.

According to MR received from Sarah S Jorden, MA, LPC:
Undated normal MSE. EE to be seen every tw o w eeks.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete Initial Calls; Aw ait MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 08, 2022 10:01:59 am

Updated Assessment:

According to Management Review dated 11/09/2022:
We have contact info from Sarah Jorden. I w ould recommend a call to her office to see if they can provide you w ith treatment notes since they just completed the APS. If no success, then please submit a MR request for these records.
EE appears to only communicate by email. I w ould email him and ask him to set up a time to complete detailed initial interview .
If MR from Sarah Jorden have not been received by around 12/5/22, send back for my review for possible FTP.
I also w as unable to find ER info and specifically an ERS. Should claim be incomplete? Do w e need to f/u w / ER again for info?

According to Email from ER dated 11/10/2022:
DOH: 02/13/1997
LFG LTD EFD: 01/01/2016
Insurance Class: 2
DLW: 05/06/2022

Regular scheduled w ork hours: Monday - Friday; 40 hours a w eek
Other Income: STD Only
Retirement: 401k

EE on LOA after stopping w ork due to personal illness, cardiac rehab/mental health treatment. No time missed prior to DLW related to condition. EE has exhausted FMLA. No return. Position is being recruited for.

According to 2021 W-2 and EOY Statement:
Total Gross Income of $102,966.70. No Section 125, 132, FSA, or GTL deduction.

BME Calc: $102966.70/12 = $8583.06

A formal OA has not been completed at this time. However, based on the job description received, EE is likely best described as a Reports Analyst. The demand is sedentary.

According to Teleconference with Sarah S Jorden, MA, LPC dated 11/10/2022:
Provider sending all office/treatment notes and diagnostic test results No formal request for information needed.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Await MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 10, 2022 03:02:53 pm

Updated Assessment:

Correction: W-2 is from 2008.
Email sent to ER to provide 2021 W-2.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Await MR from Sarah S Jorden, MA, LPC; Peer Review upon receipt
LTP: RTW-OO
- PKKWE5 - Nov 10, 2022 03:30:11 pm

Updated Assessment:

Received MSE and Letter from Sarah S Jorden, MA, LPC declining to provide therapy notes.

Requested BH Peer Review for behavioral
Requested Clinical Review for physical.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition.
STP: Complete EE Initial Call; Await BH Peer Review for behavioral; Clinical Review for physical
LTP: RTW-OO
- PKKWE5 - Nov 14, 2022 03:25:27 pm

Updated Assessment:

According to Peer Review completed by Lenworth Ellis, MD, MPH dated 11/24/2022:
Primary Impairing Diagnoses: Coronary artery disease (I25); Physical deconditioning (Z72.3)
Clinically Significant Comorbid Diagnosis: Class 3 obesity (E66.01)

Peer Reviewer comments that the records indicate that EE has a history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review. But, also indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported.

The medical evidence reasonably supports the following restrictions and limitations:
From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onw ards:
Ongoing medical records, including updated cardiology records, stress testing etc., w ill be required in order to determine the need for restrictions and limitations.

Call w ith Clint Carter, MD on 11/23/2022 indicated that EE has been diagnosed w ith severe anxiety and has been under emotional stress. He has been having panic attacks and has been treated w ith counseling and medications. He has had tw o episodes of myocardial infarction and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning w ill improve gradually w ith time.

Requested Management Review of Peer Review if clarification is needed as Peer Review both recommends specific R&Ls related to physical conditions stating that history of anxiety and depression and that an evaluation of these diagnoses is outside the scope of this Internal Medicine review and indicates that the restrictions and limitations recommended by Clint Carter, MD based on discussion are reasonably supported w hich are related to history of anxiety and depression.

Updated Path:
EE may no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity appear consistent w ith sedentary demand.
STP: Complete EE Initial Call; Aw ait BH Peer Review for behavioral
LTP: RTW-OO
- PKKWE5 - Nov 30, 2022 12:51:37 pm

Updated Assessment:

According to OA dated 12/09/2022:
EE is a Management Analyst [(DOT): 161.167-010]. The demand is sedentary.

Updated Path:
EE likely no longer be TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent w ith OO.
STP: Complete EE Initial Call; Aw ait BH Peer Review for behavioral
LTP: RTW-OO
- PKKWE5 - Dec 13, 2022 09:33:45 am

Updated Assessment:

According to BH Peer Review completed by Steven Choi, DO dated 12/12/2022:
Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond. Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Sent for Management Review for possible Not TDOO Denial.

Updated Path:
EE is not TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent w ith OO. No supported R&Ls from a psychiatric perspective.
STP: Aw ait Management Review ; Draft Denial Letter and notify EE
LTP: RTW-OO
- PKKWE5 - Dec 14, 2022 05:23:31 pm

Updated Assessment:

Management in agreement w ith denial.
Sent Letter and notified EE.

Updated Path:

EE is not TDOO as a result of neurological disorder, other reactions to severe stress. Frequency of treatment likely not indicative of a disabling behavioral condition. R&Ls related to coronary artery disease, physical deconditioning, and class 3 obesity consistent w ith OO. No supported R&Ls from a psychiatric perspective. Claim has been denied.
STP: Close Claim
LTP: RTW-OO
- PKKWE5 - Dec 20, 2022 08:06:50 am

| | | | | |
|---|---|---|---|---|
| 7/21/2023 | Summary/Assessment/P≥2h | 1st Level Appeal: - SMMCSHA - May 11, 2023 12:53:14 pm | Completed | SMMCSHA |

Summary Notes
1st Level Appeal: - SMMCSHA - May 11, 2023 12:53:14 pm
Assessment Notes

Path Notes
1st Level Appeal:
Date Appeal Received:05/03/2023
30th day06/11/2023
45th Day:06/17/2023
90th Day:08/01/2023

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed:JSOULES3 John Soules Foods, Inc

Claim Demographics
Current Age: 69DOB:
State Residence:TX
Situs State:TX
Estimated Net benefit:$6,008
SSDI benefit:not qualify and SSRT STARED 12/2021, NOT AN OFFSET
Date of Disability: 05/07/2022
EP: 90
Benefit Comm Date:08/05/2022
Benefit Paid To Date:none
COD Date:11/05/2023
Max Duration Date:11/05/202315 months as EE w as 68 on DOD
Occupation / Loc in AWD:Management AnalystOA Aw d 12/09/2022
Physical Level of Occ:sed
Primary Diagnosis: reaction to severe stress
Co-Morbid Diagnoses: adjustment disorder w ith anxiety
ERISA: inc. co
Attorney:J. Price McNamara 255-201-8311 support@pricemcnamara.com
Riders:RET PIB FC - not qualify
STD claim status:1220042749 - closed
LW claim status:none
LTD claim status:appealed

Note ++ any payments go to EE AND Attny address on appeal letter++++

LT handed - middle finger missing at knuckle

Initial Claim Decision:
Reason/Date of denial: 12/16/2022 NTDOO Physical and BH
Type of Medical Review , Name, & Specialty:

Peer Dr. Lenw orth Ellis IM/Occ Med - 11/24/2022 sed capabilities
Dx's:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The medical evidence reasonably supports the follow ing restrictions and limitations:
From 8/5/22 to 4/30/23:

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or w alk for more than 2 hours in an 8 hour w ork day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or craw l, more than occasionally.

ECN Dr. Steven Choi Psychiatry 12/12/2022 is a lack of severe
Dx: Adjustment disorder w ith mixed anxiety and depression (F43.23)

Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number:
Last Date of Service: Dr. Clinton Carter FP
Restrictions and Limitations/Duration: 903-630-7130

Date and Type of Recent Surgeries:

Recent Auth: (12/24 mo):
Pre Ex investigation required: DOH 1997
AO investigation required: no
Rehab/EBF if 6 mo of COD: no

SSRT is aw arded in 12/2021, not an offset.

Appeal being discussed
Reasons for disagreement as explained in appeal:

Information Submitted w ith appeal and not previously review ed:

Affadavit from William say hs LDW w as 04/22/2022 list of Rx meds
Affidavit from son-in-law eric Johnson
Affidavit from Samantha Reynolds - spouse
Affidavit from Sandra St. Clair - sister-in-law
Affidavit from Stephanie Price - Niece
Physician letterDr. Clint carter 03/27/2023 ack his physical conitions and agrees > sed sit up to 2 hrs -
Depression and anxiety are secondary to physical

OVN 04/06/2023

OVN Pulmonary - 02/20/2023 BMI 38.37 RTC 3 months

Appeal Analysis: Clmnt is a 69 YOM Management Analyst (sed) w ho w ent out 05/07/2022 due to CAD and deconditioning and comorbid is sever stress causing depression and anxiety. On clm level a IM?OCC MED peer done w ith sed capabilities and a Psych peer don ith no R&L's form BH standpoint. No benefits w ere paid. This is 1st level appeal and Attny sent in letter attesting to his physical conditions w ith affidavits of several family members. Also a Physician's statement giving some less than sed capabilities signed 03/2023.

Attny ack letter and ER as w ell.

Pending for med recs since they submitted a statement form 03/2023, a year later.
Tolling w ith ack letter

- SMMCSHA - May 11, 2023 12:53:14 pm

revieved the follow ing:
05/12-14 2023 Christus Trinity Clinic:
OVN 05/12/2023 CAD dyspenea

Per Attny proceed w ith review . - SMMCSHA - Jun 14, 2023 02:02:10 pm

As w e are reivew ing back to 05/2022, and only new reocrds are 05/2023, w ill send to NDC.
- SMMCSHA - Jun 14, 2023 02:03:40 pm

NDC review back and support prior peer review for physical (give sed capabilities) . Prior Psych did not find impairing conditions. Sending for RTR the NDC review and both prior peers. Response due by 07/19/2023 - SMMCSHA - Jun 28, 2023 10:10:02 am

Attny letter (dated 07/05/2023 stating no furhter response coming in, - proceed w ith determaiton. - SMMCSHA - Jul 14, 2023 01:28:39 pm

See decsion SAP - SMMCSHA - Jul 21, 2023 02:13:58 pm

5/11/2023 12:52:43 PM Summary/Assessment/Path 1st Level Appeal: - SMMCSHA - May 11, 2023 12:53:14 pm Requested SMMCSHA

Summary Notes
1st Level Appeal: - SMMCSHA - May 11, 2023 12:53:14 pm
Assessment Notes

Path Notes
1st Level Appeal:
Date Appeal Received:05/03/2023
30th day06/11/2023
45th Day:06/17/2023
90th Day:08/01/2023

Claimant Name: William Reynolds
Claim Number: 1220082997
Group ID & active/termed:JSOULES3 John Soules Foods, Inc

Claim Demographics
Current Age: 69DOB:
State Residence:TX
Situs State:TX
Estimated Net benefit:$6,008
SSDI benefit:not qualify and SSRT STARED 12/2021, NOT AN OFFSET
Date of Disability: 05/07/2022
EP: 90
Benefit Comm Date:08/05/2022
Benefit Paid To Date:none
COD Date:11/05/2023
Max Duration Date:11/05/202315 months as EE w as 68 on DOD
Occupation / Loc in AWD:Management AnalystOA Aw d 12/09/2022
Physical Level of Occ:sed
Primary Diagnosis: reaction to severe stress
Co-Morbid Diagnoses: adjustment disorder w ith anxiety
ERISA: inc. co
Attorney:J. Price McNamara 255-201-8311 support@pricemcnamara.com
Riders:RET PIB FC - not qualify
STD claim status:1220042749 - closed
LW claim status:none
LTD claim status:appealed

Note ++ any payments go to EE AND Attny address on appeal letter++++

LT handed - middle finger missing at knuckle

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Initial Claim Decision:
Reason/Date of denial: 12/16/2022 NTDOO Physical and BH
Type of Medical Review , Name, & Specialty:

Peer Dr. Lenw orth Ellis IM/Occ Med - 11/24/2022 sed capabilities
Dx's:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The medical evidence reasonably supports the follow ing restrictions and limitations:
From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or w alk for more than 2 hours in an 8 hour w ork day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or craw l, more than occasionally.

ECN Dr. Steven Choi Psychiatry 12/12/2022 is a lack of severe
Dx: Adjustment disorder w ith mixed anxiety and depression (F43.23)

Overall, there is a lack of severe symptoms and objective findings to support these recommendations from a psychiatric perspective.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number:
Last Date of Service: Dr. Clinton Carter FP
Restrictions and Limitations/Duration: 903-630-7130

Date and Type of Recent Surgeries:

Recent Auth: (12/24 mo):
Pre Ex investigation required: DOH 1997
AO investigation required: no
Rehab/EBF if 6 mo of COD: no

SSRT is aw arded in 12/2021, not an offset.

Appeal being discussed
Reasons for disagreement as explained in appeal:

Information Submitted w ith appeal and not previously review ed:

Affadavit from William say hs LDW w as 04/22/2022 list of Rx meds
Affidavit from son-in-law eric Johnson
Affidavit from Samantha Reynolds - spouse
Affidavit from Sandra St. Clair - sister-in-law
Affidavit from Stephanie Price - Niece
Physician letterDr. Clint carter 03/27/2023 ack his physical conitions and agrees > sed sit up to 2 hrs -
Depression and anxiety are secondary to physical

OVN 04/06/2023

OVN Pulmonary - 02/20/2023 BMI 38.37 RTC 3 months

Appeal Analysis: Clmnt is a 69 YOM Management Analyst (sed) w ho w ent out 05/07/2022 due to CAD and deconditioning and comorbid is sever stress causing depression and anxiety. On clm level a IM?OCC MED peer

done w ith sed capabilities and a Psych peer don ith no R&L's form BH standpoint. No benefits w ere paid. This is 1st level appeal and Attny sent in letter attesting to his physical conditions w ith affidavits of several family members. Also a Physician's statement giving some less than sed capabilities signed 03/2023.

Attny ack letter and ER as w ell.

Pending for med recs since they submitted a statement form 03/2023, a year later.
Tolling w ith ack letter

- SMMCSHA - May 11, 2023 12:53:14 pm

revieved the follow ing:
05/12-14 2023 Christus Trinity Clinic:
OVN 05/12/2023 CAD dyspenea

Per Attny proceed w ith review . - SMMCSHA - Jun 14, 2023 02:02:10 pm

As w e are reivew ing back to 05/2022, and only new reocrds are 05/2023, w ill send to NDC.
- SMMCSHA - Jun 14, 2023 02:03:40 pm

NDC review back and support prior peer review for physical (give sed capabilities) . Prior Psych did not find impairing conditions. Sending for RTR the NDC review and both prior peers. Response due by 07/19/2023 - SMMCSHA - Jun 28, 2023 10:10:02 am

Attny letter (dated 07/05/2023 stating no furhter response coming in, - proceed w ith determaiton. - SMMCSHA - Jul 14, 2023 01:28:39 pm

See decsion SAP - SMMCSHA - Jul 21, 2023 02:13:58 pm

| | | | | |
|---|---|---|---|---|
| 7/26/2023 | Summary/Assessment/Path | 1st level appeal UPHOLD OO - SMMCSHA - Jul 26, 2023 | Completed | SMMCSHA |

Summary Notes
1st level appeal UPHOLD OO - SMMCSHA - Jul 26, 2023 10:46:38 am
Assessment Notes

Path Notes
1st level appeal UPHOLD OO
Williams Reynolds
1220082997

Claim Summary:
Clmnt is a 69 YOM Management Analyst (sed) w ho w ent out 05/07/2022 due to CAD and deconditioning and comorbid is severe stress causing depression and anxiety. On clm level a IM/OCC MED peer done w ith sed capabilities and a Psych peer done w ith no R&L's from BH standpoint. No benefits w ere paid. This is 1st level appeal and Attny sent in letter attesting to his physical conditions w ith affidavits of several family members. Also a Physician's statement giving some less than sed capabilities signed 03/2023.

Appeal Review Summary:
NDC :

The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder w ith anxiety, and depression related to his cardiac condition. The EE is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine) as noted above. There are no mental status exam documenting impairing psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) w ith noted improvements. Additional treatment includes psychotherapy by Jorden LPC how ever there is a significant gap in treatment from 12/1/21-10/13/22. Mental status exam is normal except noted anxious mood. From a mental health standpoint, although the EE reports stress and anxiety that appears to specific to returning to the w orkplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that w ould support restrictions or limitations from 5/7/22 and forw ard. All examinations, EE is noted to be alert and oriented w ithout

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

documentation of cognitive slow ing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and EE did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that w ould change the prior determination. NDC agrees w ith prior peer review .

The medical records document ongoing care and treatment follow ing CABG and stent placement in 2021 associated w ith fatigue and shortness of breath w ith exertion. EE has a history of multiple medical conditions that are stable w ith medication management and CPAP as noted above. There are no documented side effects to any medications. Most recent ECHO 1/6/22 show ed normal ejection fraction. The EE is treated by Dr. Carter (Family Medicine) w ithout significant exam findings. His oxygen level is consistently normal. The records also indicate EE is follow ed by cardiology and he is noted to be doing w ell from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries w ithout clinical exam findings or treatment plans. During follow up visit 5/12/23 w ith Dr. Flakas (Cardiology), EE reports dyspnea w ith exertion. He also noted recent diagnosis of COPD treated w ith inhalers w ith significant improvements. Exam is unremarkable how ever EE required hospitalization 5/12/23-5/14/23 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or w ith activity w ith symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated hypotension, pulmonary and dependent edema, dizziness, vertigo, w itnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that w ould translate into a functional impairment 5/7/22 and forw ard except during most recent hospitalization and diagnostic testing. The R/Ls outlined in detail by peer review er Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

RTR sent 06/28/2023 w ith response due by 07/19/2023. We revived a letter from Attny Stamped 07/11/2023, that they w ill not be responding. Proceeding w ith determination.

Appeal Decision Rationale:

Review of the medical records and tw o prior peer review s in Psychiatry and IM/Occ Med. The Clinical review on this appeal agreed w ith the latest Psych peer that there is no indication of further escalation of care or treatment by a psychiatrist and EE did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that w ould change the prior determination. The clinical review also agreed w ith the recent IM/Occ peer in that the evidence failed to support multiple conditions that w ould translate in functional impairment of 05/07/2022 forw ard.

UPHOLD for not TDOO Letter to Attny and to ER
- SMMCSHA - Jul 26, 2023 10:46:38 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/26/2022 | Telephone (IN) | 1 | WILLIAM J. REYNOLDS | Completed | PKKWE5 |

Left non-descript VM requesting return call.
Need to complete Initial Call.
Need MR from Clint Carter, MD and all other medical providers treating EE for disabiling condition.
- PKKWE5 - Sep 27, 2022 03:21:43 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/22/2022 | Telephone (IN) | 6 | viviana contreras | Completed | AMJGR1 |

viviana contreras, grp adm
1220082997

adv letter w ent out to insured dated 11/21 letter, per letter file has been submitted for full clinical review and 30 day extension has started.

adv per path notes 11/14 aw aiting additional medical reports.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/11/2023 | Telephone (IN) | 8 | LAW OFFICES OF J. PRICE MCNAMARA | Completed | SMMCSHA |

CP to Attny office - recp indicated Erica is para and need to send any info to helpdesk@jpricemcnamara.com I w ill send ack leter to see if any furhter reocrds to come in. - SMMCSHA - May 11, 2023 11:45:23 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/26/2022 | Telephone (OUT) | 2 | John Soules Foods, Inc. | Completed | PKKWE5 |

Email to ER - PKKWE5 - Sep 27, 2022 03:22:17 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/27/2022 | Telephone (OUT) | 3 | WILLIAM J. REYNOLDS | Completed | PKKWE5 |
| | Left non-descript VM requesting return call.<br>Need to complete Initial Call.<br>Need MR from Clint Carter, MD and all other medical providers treating EE for disabiling condition.<br>- PKKWE5 - Sep 27, 2022 03:22:32 pm | | | | |
| 10/7/2022 | Telephone (OUT) | 4 | WILLIAM J. REYNOLDS | Completed | PKKWE5 |
| | Left non-descript VM requesting return call.<br>Need to complete Initial Call.<br>Need to clarify if any additional MR w ill be provided for claim.<br>- PKKWE5 - Oct 07, 2022 04:39:29 pm | | | | |
| 11/10/2022 | Telephone (OUT) | 5 | SARAH S JORDEN, MA, LPC | Completed | PKKWE5 |
| | Spoke w ith Sarah S Jorden, MA, LPC. Provider indicated that she w as preparing all office/treatment notes and diagnositc test results and those w ill be sent.<br><br>Provider did not need a formal request for information sent.<br>- PKKWE5 - Nov 10, 2022 03:01:15 pm | | | | |
| 1/18/2023 | Telephone (OUT) | 7 | LAW OFFICES OF J. PRICE MCNAMARA | Completed | PKKWE5 |
| | Spoke w ith Erica, Paralegal for J Price McNamara.<br>Requested Attorney Auth to release claim file.<br>- PKKWE5 - Jan 18, 2023 11:11:27 am | | | | |
| 12/19/2023 | Telephone (OUT) | 9 | LAW OFFICES OF J. PRICE MCNAMARA | Completed | JXBOOTH |
| | Returned call to law office, left vmail for attorney. - JXBOOTH - Dec 19, 2023 02:02:21 pm | | | | |

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

March 5, 2024

**SENT VIA EMAIL (LFGAPPEALS@LFG.COM)**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Mr. Booth,

In response to Lincoln's letter of February 14, 2024, this is to advise that Mr. Reynolds will not be submitting additional evidence. Please resume the appeal review.

LAW OFFICES OF J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

March 5, 2024

**SENT VIA EMAIL (LFGAPPEALS@LFG.COM)**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

Re: **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Mr. Booth,

In response to Lincoln's letter of February 14, 2024, this is to advise that Mr. Reynolds will not be submitting additional evidence. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313)

LAW OFFICES
OF
J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

March 5, 2024

**SENT VIA EMAIL (LFGAPPEALS@LFG.COM)**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

Re: **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Mr. Booth,

In response to Lincoln's letter of February 14, 2024, this is to advise that Mr. Reynolds will not be submitting additional evidence. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

*J. Price McNamara*

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej

Date: Wed Feb 14 15:45:22 CST 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: support@jpricemcnamara.com
Message-ID: <884868698.3.1707947123008.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

February 14, 2024

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE 130
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This letter is in regard to your client's appeal for Long Term Disability benefits.

As part of your client's appeal review, your client's medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your client to review prior to completion of our appeal decision.

Your client may wish to provide this assessment to their treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 03/06/2024. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your client's disability claim at this time as we want to provide your client every opportunity to review our assessment and provide a response.

If we do not receive a response by 03/06/2024, then we will render a decision based on the information currently in the file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

# Robert A. Small, MD
***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-6
**Claim #:** 1220082997
**Date of Service:** 02/09/2024

## ADDENDUM

### MEDICAL INFORMATION REVIEWED

- 03/27/2023 – Physician's Recommended Restrictions – Clint Carter, M.D.
- 03/27/2023 – Letter Note – Clint Carter, M.D.
- 05/12/2023 – 10/07/2023 – Lab Report
- 12/12/2023 – Class Cardiac Rehab – Progress Notes – Marina Flaskas, M.D.

CLINICAL SYNOPSIS

The claimant is a 70-year-old male. He is diagnosed with osteoarthritis, anxiety, depression, fatigue, paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia.

### LAB REPORTS

05/12/2023 – Lab Report:
ALT: 75, Result: High
AST: 60, Result: High

10/07/2023 – Lab Report:
Sodium: 133, Result: Low
Chloride: 99, Result: Low

OFFICE VISITS

03/27/2023 – Physician's Recommended Restrictions – Clint Carter, M.D.:
The medical conditions that limit his ability to sit are drowsiness and stiffness/pain due to osteoarthritis. He should not expect to be present for more than one hour per day of the nine-hour workday on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition is expected to cause an absence from work. He can lift/carry less than 10 pounds occasionally and frequently. The medical conditions that limit his ability to lift/carry are stamina, balance, and fatigue. He can use his hands for repetitive grasping, handling, pushing and pulling. He cannot use his hands for fine manipulation and fingering. He can use repetitive movement as in operating foot controls. He can bend, climb stairs, reach above his shoulder, and operate machinery occasionally. He can never kneel, squat, crawl, climb ladders, and work from heights. He should avoid engaging in any activity that causes severe pain.

03/27/2023 – Letter Note – Clint Carter, M.D.:

The claimant's complaints, clinical examination, and diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Due to his physical condition, it is not reasonable to expect him to sit, walk, or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve but rather are expected to continue to become worse with time. It is the physician's opinion that he is disabled from any type of gainful employment.

12/12/2023 – Class Cardiac Rehab – Progress Notes – Marina Flaskas, M.D.:
The claimant presents with paroxysmal atrial fibrillation and mixed hyperlipidemia. He had a history of coronary artery disease, hypertension, dyslipidemia, and obesity. He underwent aortocoronary bypass surgery and PCI to PDA. He reports he is compliant with aspirin and Plavix, working on his weight and lost some. He is feeling better and planning to be involved in cardiac rehabilitation. His blood pressure is 102/60. EKG showed improvement concerning ST changes in inferior and precordial leads. The assessments are paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia. The planned treatment includes continuing with dual antiplatelet therapy, ACE inhibitors, beta-blockers, antiplatelets, statins, and weight reduction. Cardiac rehabilitation is also recommended. Future appointments are scheduled for cardiac outpatient rehabilitation.

**Questions:**

1. **Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale**

The additional medical information was reviewed. On 3/27/2023, Dr. Darter opined the claimant's medical conditions limited his ability to sit. The claimant experienced drowsiness and stiffness from pain due to osteoarthritis. His medical condition is expected to cause an absence from work. He can lift/carry less than 10 pounds occasionally and frequently. The medical conditions that limit his ability to lift/carry are stamina, balance, and fatigue. He can use his hands for repetitive grasping, handling, pushing, and pulling. He cannot use his hands for fine manipulation and fingering. He can use repetitive movement as in operating foot controls. He can bend, climb stairs, reach above his shoulder, and operate machinery occasionally. He can never kneel, squat, crawl, climb ladders, or work from heights. He should avoid engaging in any activity that causes severe pain. On 3/27/2023, Dr. Carter opined the claimant's complaints, clinical examination, and diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Cardiac rehab note dated 12/12/2023 noted the claimant was feeling better and planning to be involved in cardiac rehabilitation. His blood pressure is 102/60. EKG showed improvement concerning ST changes in inferior and precordial leads. The assessments are paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia. The planned treatment includes continuing with dual antiplatelet therapy, ACE inhibitors, beta-blockers, antiplatelets, statins, and weight reduction.

The additional medical information has not altered the initial opinion of this reviewer. The claimant's medical conditions were taken into consideration upon completion of initial review. The updated medical information was not consistent with the presence of acute exacerbation of symptoms, the presence of previously unknown conditions, and/or evidence of functional decline to an extent that it would alter the previously delineated R&Ls. Therefore, the original opinion of this reviewer remains upheld. The R&Ls

remain supported as delineated in the initial report. A reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable evaluate for a progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Robert A Small MD

Robert A. Small, MD
Board-Certified in Internal Medicine
State Medical Licensure
IL: 036.071724

# Elbert Greer Richardson, MD

***Board-Certified in Psychiatry***

CLAIMANT NAME: Reynolds, William
EXAMINER: Elbert Greer Richardson, MD
ECN #: 225143-5
CLAIM #: 1220082997
DATE OF LOSS: 5/7/2022
DATE OF SERVICE: 2/9/2024

## ADDENDUM

12/12/23, Marina Flaskas, MD, FACC / Cardiology: The claimant was prescribed Lexapro 10 mg and Wellbutrin XL 300 mg. He presented alert and oriented to person, place, and time.
02/02/24, Attorney Letter: The claimant was still not able to return to position as of 08/08/22 due to complex mental requirements and high stress environment. He was documented to endorse anxiety thinking about going back and resuming his job. He got anxious meeting them at gate to pick up some of his things. On 09/02/22 Dr. Carter stated the claimant could not return to work. He was assessed as having other reactions to severe stress.

1. **Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

No, the new information does not at all impact and/or change the findings expressed in my prior peer review.

Attorney letter from 02/02/24 documented the claimant's provider, Dr. Carter opined on 09/02/22 that he could not return to work due to complex mental requirements and high stress environment. He was documented to endorse anxiety thinking about going back and resuming his job. He was assessed as having other reactions to severe stress. While this is acknowledged, there was still no medical records corroborating he endorsed debilitating psychopathology on clinical examinations and measurable testing. His cardiology follow up from 12/12/23 was provided, which revealed no psychiatric/cognitive abnormalities. Despite reported severity of symptoms, the claimant continued to require no referral to a higher level of psychiatric care, such as IOP, PHP, and hospitalization. As it stands, restrictions and limitations remain not supported.

Sincerely,

Elbert Greer Richardson, MD
ABPN Board Certification Psychiatry
American Board of Addiction Medicine
Medical License Number CT 037889

# Elbert Greer Richardson, MD

***Board-Certified in Psychiatry***

CLAIMANT NAME: Reynolds, William
EXAMINER: Elbert Greer Richardson, MD
ECN #: 225143-5
CLAIM #: 1220082997
DATE OF LOSS: 5/7/2022
DATE OF SERVICE: 2/9/2024

**ADDENDUM**

12/12/23, Marina Flaskas, MD, FACC / Cardiology: The claimant was prescribed Lexapro 10 mg and Wellbutrin XL 300 mg. He presented alert and oriented to person, place, and time.
02/02/24, Attorney Letter: The claimant was still not able to return to position as of 08/08/22 due to complex mental requirements and high stress environment. He was documented to endorse anxiety thinking about going back and resuming his job. He got anxious meeting them at gate to pick up some of his things. On 09/02/22 Dr. Carter stated the claimant could not return to work. He was assessed as having other reactions to severe stress.

1. **Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

No, the new information does not at all impact and/or change the findings expressed in my prior peer review.

Attorney letter from 02/02/24 documented the claimant's provider, Dr. Carter opined on 09/02/22 that he could not return to work due to complex mental requirements and high stress environment. He was documented to endorse anxiety thinking about going back and resuming his job. He was assessed as having other reactions to severe stress. While this is acknowledged, there was still no medical records corroborating he endorsed debilitating psychopathology on clinical examinations and measurable testing. His cardiology follow up from 12/12/23 was provided, which revealed no psychiatric/cognitive abnormalities. Despite reported severity of symptoms, the claimant continued to require no referral to a higher level of psychiatric care, such as IOP, PHP, and hospitalization. As it stands, restrictions and limitations remain not supported.

Sincerely,

Elbert Greer Richardson, MD
ABPN Board Certification Psychiatry
American Board of Addiction Medicine
Medical License Number CT 037889

# Robert A. Small, MD
***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-6
**Claim #:** 1220082997
**Date of Service:** 02/09/2024

**ADDENDUM**

**MEDICAL INFORMATION REVIEWED**

- 03/27/2023 – Physician's Recommended Restrictions – Clint Carter, M.D.
- 03/27/2023 – Letter Note – Clint Carter, M.D.
- 05/12/2023 – 10/07/2023 – Lab Report
- 12/12/2023 – Class Cardiac Rehab – Progress Notes – Marina Flaskas, M.D.

CLINICAL SYNOPSIS

The claimant is a 70-year-old male. He is diagnosed with osteoarthritis, anxiety, depression, fatigue, paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia.

**LAB REPORTS**

05/12/2023 – Lab Report:
ALT: 75, Result: High
AST: 60, Result: High

10/07/2023 – Lab Report:
Sodium: 133, Result: Low
Chloride: 99, Result: Low

OFFICE VISITS

03/27/2023 – Physician's Recommended Restrictions – Clint Carter, M.D.:
The medical conditions that limit his ability to sit are drowsiness and stiffness/pain due to osteoarthritis. He should not expect to be present for more than one hour per day of the nine-hour workday on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition is expected to cause an absence from work. He can lift/carry less than 10 pounds occasionally and frequently. The medical conditions that limit his ability to lift/carry are stamina, balance, and fatigue. He can use his hands for repetitive grasping, handling, pushing and pulling. He cannot use his hands for fine manipulation and fingering. He can use repetitive movement as in operating foot controls. He can bend, climb stairs, reach above his shoulder, and operate machinery occasionally. He can never kneel, squat, crawl, climb ladders, and work from heights. He should avoid engaging in any activity that causes severe pain.

03/27/2023 – Letter Note – Clint Carter, M.D.:

The claimant's complaints, clinical examination, and diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Due to his physical condition, it is not reasonable to expect him to sit, walk, or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve but rather are expected to continue to become worse with time. It is the physician's opinion that he is disabled from any type of gainful employment.

12/12/2023 – Class Cardiac Rehab – Progress Notes – Marina Flaskas, M.D.:
The claimant presents with paroxysmal atrial fibrillation and mixed hyperlipidemia. He had a history of coronary artery disease, hypertension, dyslipidemia, and obesity. He underwent aortocoronary bypass surgery and PCI to PDA. He reports he is compliant with aspirin and Plavix, working on his weight and lost some. He is feeling better and planning to be involved in cardiac rehabilitation. His blood pressure is 102/60. EKG showed improvement concerning ST changes in inferior and precordial leads. The assessments are paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia. The planned treatment includes continuing with dual antiplatelet therapy, ACE inhibitors, beta-blockers, antiplatelets, statins, and weight reduction. Cardiac rehabilitation is also recommended. Future appointments are scheduled for cardiac outpatient rehabilitation.

**Questions:**

1. **Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale**

The additional medical information was reviewed. On 3/27/2023, Dr. Darter opined the claimant's medical conditions limited his ability to sit. The claimant experienced drowsiness and stiffness from pain due to osteoarthritis. His medical condition is expected to cause an absence from work. He can lift/carry less than 10 pounds occasionally and frequently. The medical conditions that limit his ability to lift/carry are stamina, balance, and fatigue. He can use his hands for repetitive grasping, handling, pushing, and pulling. He cannot use his hands for fine manipulation and fingering. He can use repetitive movement as in operating foot controls. He can bend, climb stairs, reach above his shoulder, and operate machinery occasionally. He can never kneel, squat, crawl, climb ladders, or work from heights. He should avoid engaging in any activity that causes severe pain. On 3/27/2023, Dr. Carter opined the claimant's complaints, clinical examination, and diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Cardiac rehab note dated 12/12/2023 noted the claimant was feeling better and planning to be involved in cardiac rehabilitation. His blood pressure is 102/60. EKG showed improvement concerning ST changes in inferior and precordial leads. The assessments are paroxysmal atrial fibrillation, arteriosclerotic heart disease, and mixed hyperlipidemia. The planned treatment includes continuing with dual antiplatelet therapy, ACE inhibitors, beta-blockers, antiplatelets, statins, and weight reduction.

The additional medical information has not altered the initial opinion of this reviewer. The claimant's medical conditions were taken into consideration upon completion of initial review. The updated medical information was not consistent with the presence of acute exacerbation of symptoms, the presence of previously unknown conditions, and/or evidence of functional decline to an extent that it would alter the previously delineated R&Ls. Therefore, the original opinion of this reviewer remains upheld. The R&Ls

remain supported as delineated in the initial report. A reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable evaluate for a progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Robert A Small MD

Robert A. Small, MD
Board-Certified in Internal Medicine
State Medical Licensure
IL: 036.071724

FEB 12 2024

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

February 2, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

In response to your January 16, 2024 letter, enclosed are Mr. Reynolds' December 12, 2023 progress notes from Dr. Flaskas. This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds' treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

> 8/8/22 Clint Carter, MD
> CABG. Acute stress reaction
> Mental and physical deconditioning.
> **Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**

Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr. Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds' extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second

heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden.. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

J. Price McNamara
**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/ccj
Enclosure

# NOTE

**RE: Patient: William Revnolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#: ____________
Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

________1__(2)__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

_x_ Yes

___ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. 100%

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

_x_ less than 10 pounds
___ 11-20 pounds
___ 21-50 pounds
___ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

_x_ less than 10 pounds
___ 11-20 pounds
___ 21-50 pounds
___ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

| | | |
|---|---|---|
| Simple grasping and handling? | ✓ Yes | ___ No |
| Pushing and pulling? | ✓ Yes | ___ No |
| Fine manipulation and fingering? | ___ Yes | ✓ No |

What medical conditions limit the patient's ability to use hands? *arthritis*

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

___ No

What medical conditions limit the patient's ability to use feet? *Limitations in sitting/standing as above*

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | ___ | ✓ | ___ |
| Kneel | ___ | ___ | ✓ |
| Squat | ___ | ___ | ✓ |
| Crawl | ___ | ___ | ✓ |
| Climb stairs | ___ | ✓ | ___ |
| Climb ladders | ___ | ___ | ✓ |
| Reach above shoulder level | ___ | ✓ | ___ |
| Work from heights | ___ | ___ | ✓ |
| Drive or operate machinery | ___ | ✓ | ___ |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[illegible signature]
Signature

3/27/23
Date

Name: William J Reynolds | DOB | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment
**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
| --- | --- | --- | --- | --- |
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

Name: William J Reynolds | DOB | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

| | | | | |
|---|---|---|---|---|
| 1/3/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/4/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/8/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/10/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

ASSESSMENT AND PLAN:

1. Coronary artery disease. Status post aortocoronary bypass surgery, PCI to PDA and saphenous venous graft to RCA recently in October. Continue with dual antiplatelet therapy. EKG showed improvement concerning ST changes in inferior and precordial leads. Cardiac rehabilitation to continue.

2. Ischemic cardiomyopathy, preserved EF. We would like to see the patient on low dose of ACE inhibitor restarted today. Continue with beta blockers, antiplatelets and statins.

3. Mixed dyslipidemia. Doing very well on present dose of statins. Heart-healthy diet emphasized.

4. Obesity. Weight reduction to continue. Follow up with cardiac rehab.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
HD/#3498/2

**Subjective:**

Subjective

**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup after PCI.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male with known coronary artery disease, hypertension, dyslipidemia, obesity -- BMI index of 36. The patient is status post non-ST MI in August 2022. At that time diagnosed with severe multivessel coronary artery disease and underwent coronary artery bypass surgery with LIMA to LAD, saphenous venous graft to RCA with left atrial appendage ligation with 45 mm AtriClip. Ligation was successful. He recovered well. In December 2022 the patient developed worsening shortness of breath, diagnosed with ST elevation MI. Heart catheterization showed subtotal anastomosis with LIMA to LAD. He underwent drug-coated stenting by Dr. Kumar successfully. In June 2023 the patient was seen for followup. EKG showed dynamic ST elevation and ST depression. The patient underwent diagnostic heart catheterization by Dr. Carr and diagnosed with severe PDA disease. Status post drug-coated stent to PDA. Compliant with aspirin and Plavix. In October he was seen at the clinic. Same changes on EKG which showed some resolution in June but persisted in October. He underwent 4.5 x 22 mm Onyx drug-eluted stent to saphenous venous graft to RCA. LIMA to LAD was patent. Reports compliant with aspirin and Plavix, working on his weight, lost some. Feeling better and planning to be involved in cardiac rehabilitation. Currently on beta blockers, Ranexa, statins. Blood pressure is 102/60.

Marina Flaskas, MD, FACC
HD/#3498/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
| --- | --- | --- |
| • BRAIN SURGERY *blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM *19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY *Leg* | Left | |
| • KNEE SURGERY *CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY *rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
| --- | --- | --- |
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

• Marital status: Married

Tobacco Use

• Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Additional pack years: 0.00
  - Total pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.4
• Smokeless tobacco: Never
• Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

• Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 12/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | Take 10 mg by mouth daily | | |
| • furosemide (Lasix) 20 MG tablet | Take 1 tablet (20 mg total) by mouth daily as needed (for weight gain of 2lb/day or 5lb/week) | 30 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • pantoprazole (Protonix) 40 MG enteric-coated tablet | Take 1 tablet (40 mg total) by mouth daily | 90 tablet | 0 |
| • ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet | Take 1 tablet (500 mg total) by mouth 2 (two) times daily | 180 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • lisinopril (Prinivil) 2.5 MG tablet | Take 1 tablet (2.5 mg total) by mouth at bedtime | 90 tablet | 3 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |

No facility-administered encounter medications on file as of 12/12/2023.

Allergies as of 12/12/2023
- (No Known Allergies)

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for fever, malaise/fatigue, weight gain and weight loss.
HENT: Negative for congestion.
Eyes: Negative for double vision and visual disturbance.
Cardiovascular: Negative for chest pain, claudication, dyspnea on exertion, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for polydipsia, polyphagia and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem.
Musculoskeletal: Negative for joint pain, muscle cramps and muscle weakness.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for dizziness, headaches, loss of balance and numbness.

**Objective:**

Objective

BP 102/62 (BP Location: Left arm, Patient Position: Sitting) | Pulse 78 | Ht 1.727 m (5' 8") | Wt 108 kg (238 lb) | BMI 36.19 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.

Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

12/17/2023
Marina Flaskas, MD

# Patient Instructions

Nurse Cindy, RN at 12/12/2023 1:45 PM

062S0005843986

$7.840
US POSTAGE
FIRST-CLASS
FROM 70809
02/02/2024
stamps
endicia

FEB 12 2024

CERTIFIED MAIL

9414 8118 9956 4891 5032 36

PS Form 3800 6/02

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
ATTN: Jeff Booth - Specialist, Appeals Claims
PO BOX 2337
OMAHA NE 68103-2337

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

FEB 12 2024

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

February 2, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

In response to your January 16, 2024 letter, enclosed are Mr. Reynolds' December 12, 2023 progress notes from Dr. Flaskas. This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds' treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

> 8/8/22 Clint Carter, MD
> CABG. Acute stress reaction
> Mental and physical deconditioning.
> **Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**

Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr. Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds' extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second

heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden.. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

J. Price McNamara
**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/ccj
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

**PHYSICIAN'S RECOMMENDED RESTRICTIONS**

Patient's Name: William Reynolds S.S.#: ____________

Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to stand?
stamina, balance

III. The patient can sit up to:

___1___(2)___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than ___1___ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

_X_ Yes

_____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. _100%_

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

_X_ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

_X_ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
_stamina, balance, fatigue_

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? ✓ Yes ___ No

Pushing and pulling? ✓ Yes ___ No

Fine manipulation and fingering? ___ Yes ✓ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

___ No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

Y Yes

___ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature] Signature

3/27/23 Date

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

### Assessment and Plan:

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

### Other Visit Diagnoses

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

### Future Appointments

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

| | | | | |
|---|---|---|---|---|
| 1/3/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/4/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/8/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/10/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

ASSESSMENT AND PLAN:

1. Coronary artery disease. Status post aortocoronary bypass surgery, PCI to PDA and saphenous venous graft to RCA recently in October. Continue with dual antiplatelet therapy. EKG showed improvement concerning ST changes in inferior and precordial leads. Cardiac rehabilitation to continue.

2. Ischemic cardiomyopathy, preserved EF. We would like to see the patient on low dose of ACE inhibitor restarted today. Continue with beta blockers, antiplatelets and statins.

3. Mixed dyslipidemia. Doing very well on present dose of statins. Heart-healthy diet emphasized.

4. Obesity. Weight reduction to continue. Follow up with cardiac rehab.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
HD/#3498/2

**Subjective:**

Subjective

**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup after PCI.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male with known coronary artery disease, hypertension, dyslipidemia, obesity -- BMI index of 36. The patient is status post non-ST MI in August 2022. At that time diagnosed with severe multivessel coronary artery disease and underwent coronary artery bypass surgery with LIMA to LAD, saphenous venous graft to RCA with left atrial appendage ligation with 45 mm AtriClip. Ligation was successful. He recovered well. In December 2022 the patient developed worsening shortness of breath, diagnosed with ST elevation MI. Heart catheterization showed subtotal anastomosis with LIMA to LAD. He underwent drug-coated stenting by Dr. Kumar successfully. In June 2023 the patient was seen for followup. EKG showed dynamic ST elevation and ST depression. The patient underwent diagnostic heart catheterization by Dr. Carr and diagnosed with severe PDA disease. Status post drug-coated stent to PDA. Compliant with aspirin and Plavix. In October he was seen at the clinic. Same changes on EKG which showed some resolution in June but persisted in October. He underwent 4.5 x 22 mm Onyx drug-eluted stent to saphenous venous graft to RCA. LIMA to LAD was patent. Reports compliant with aspirin and Plavix, working on his weight, lost some. Feeling better and planning to be involved in cardiac rehabilitation. Currently on beta blockers, Ranexa, statins. Blood pressure is 102/60.

Marina Flaskas, MD, FACC
HD/#3498/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Additional pack years: | 0.00 |
| Total pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.4 |
| • Smokeless tobacco: | Never |
| • Tobacco comments:<br>*Quit 15-16 years ago* | |

Vaping Use

| | |
|---|---|
| • Vaping Use: | Never used |

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 12/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | Take 10 mg by mouth daily | | |
| • furosemide (Lasix) 20 MG tablet | Take 1 tablet (20 mg total) by mouth daily as needed (for weight gain of 2lb/day or 5lb/week) | 30 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • pantoprazole (Protonix) 40 MG enteric-coated tablet | Take 1 tablet (40 mg total) by mouth daily | 90 tablet | 0 |
| • ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet | Take 1 tablet (500 mg total) by mouth 2 (two) times daily | 180 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • lisinopril (Prinivil) 2.5 MG tablet | Take 1 tablet (2.5 mg total) by mouth at bedtime | 90 tablet | 3 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |

No facility-administered encounter medications on file as of 12/12/2023.

Allergies as of 12/12/2023
- (No Known Allergies)

| Interpreter | 5/14/2023 |
| --- | --- |
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for fever, malaise/fatigue, weight gain and weight loss.
HENT: Negative for congestion.
Eyes: Negative for double vision and visual disturbance.
Cardiovascular: Negative for chest pain, claudication, dyspnea on exertion, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for polydipsia, polyphagia and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem.
Musculoskeletal: Negative for joint pain, muscle cramps and muscle weakness.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for dizziness, headaches, loss of balance and numbness.

**Objective:**

Objective

BP 102/62 (BP Location: Left arm, Patient Position: Sitting) | Pulse 78 | Ht 1.727 m (5' 8") | Wt 108 kg (238 lb) | BMI 36.19 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.

Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

12/17/2023
Marina Flaskas, MD

# Patient Instructions

Nurse Cindy, RN at 12/12/2023 1:45 PM

LAW OFFICES
OF
J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

February 2, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

In response to your January 16, 2024 letter, enclosed are Mr. Reynolds' December 12, 2023 progress notes from Dr. Flaskas. This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds' treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

> 8/8/22 Clint Carter, MD
> CABG. Acute stress reaction
> Mental and physical deconditioning.
> **Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**

Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when be thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr. Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds' extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second

heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**

Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**

Response 2:

Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**

Response 3:

The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

### Assessment and Plan:

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

### Other Visit Diagnoses

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

### Future Appointments

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

| | | | | |
|---|---|---|---|---|
| 1/3/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/4/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/8/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/10/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

ASSESSMENT AND PLAN:

1. Coronary artery disease. Status post aortocoronary bypass surgery, PCI to PDA and saphenous venous graft to RCA recently in October. Continue with dual antiplatelet therapy. EKG showed improvement concerning ST changes in inferior and precordial leads. Cardiac rehabilitation to continue.

2. Ischemic cardiomyopathy, preserved EF. We would like to see the patient on low dose of ACE inhibitor restarted today. Continue with beta blockers, antiplatelets and statins.

3. Mixed dyslipidemia. Doing very well on present dose of statins. Heart-healthy diet emphasized.

4. Obesity. Weight reduction to continue. Follow up with cardiac rehab.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
HD/#3498/2

**Subjective:**

Subjective

**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup after PCI.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male with known coronary artery disease, hypertension, dyslipidemia, obesity -- BMI index of 36. The patient is status post non-ST MI in August 2022. At that time diagnosed with severe multivessel coronary artery disease and underwent coronary artery bypass surgery with LIMA to LAD, saphenous venous graft to RCA with left atrial appendage ligation with 45 mm AtriClip. Ligation was successful. He recovered well. In December 2022 the patient developed worsening shortness of breath, diagnosed with ST elevation MI. Heart catheterization showed subtotal anastomosis with LIMA to LAD. He underwent drug-coated stenting by Dr. Kumar successfully. In June 2023 the patient was seen for followup. EKG showed dynamic ST elevation and ST depression. The patient underwent diagnostic heart catheterization by Dr. Carr and diagnosed with severe PDA disease. Status post drug-coated stent to PDA. Compliant with aspirin and Plavix. In October he was seen at the clinic. Same changes on EKG which showed some resolution in June but persisted in October. He underwent 4.5 x 22 mm Onyx drug-eluted stent to saphenous venous graft to RCA. LIMA to LAD was patent. Reports compliant with aspirin and Plavix, working on his weight, lost some. Feeling better and planning to be involved in cardiac rehabilitation. Currently on beta blockers, Ranexa, statins. Blood pressure is 102/60.

Marina Flaskas, MD, FACC
HD/#3498/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| * Allergy | 1973 |
| * Anxiety | |
| * Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| * BPH (benign prostatic hyperplasia) | |
| * CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| * Coronary artery disease | |
| * Depression | |
| * Diabetes mellitus (HC Category) | |
| * ED (erectile dysfunction) | |
| * History of irregular heartbeat<br>*a-fib* | |
| * Hyperthyroidism | |
| * Insomnia | |
| * Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| * OSA on CPAP | |
| * Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| * Paroxysmal A-fib (HC Category) | |
| * Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Additional pack years: 0.00
  - Total pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.4
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 12/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | Take 10 mg by mouth daily | | |
| • furosemide (Lasix) 20 MG tablet | Take 1 tablet (20 mg total) by mouth daily as needed (for weight gain of 2lb/day or 5lb/week) | 30 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • pantoprazole (Protonix) 40 MG enteric-coated tablet | Take 1 tablet (40 mg total) by mouth daily | 90 tablet | 0 |
| • ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet | Take 1 tablet (500 mg total) by mouth 2 (two) times daily | 180 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • lisinopril (Prinivil) 2.5 MG tablet | Take 1 tablet (2.5 mg total) by mouth at bedtime | 90 tablet | 3 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |

No facility-administered encounter medications on file as of 12/12/2023.

Allergies as of 12/12/2023
* (No Known Allergies)

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for fever, malaise/fatigue, weight gain and weight loss.
HENT: Negative for congestion.
Eyes: Negative for double vision and visual disturbance.
Cardiovascular: Negative for chest pain, claudication, dyspnea on exertion, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for polydipsia, polyphagia and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem.
Musculoskeletal: Negative for joint pain, muscle cramps and muscle weakness.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for dizziness, headaches, loss of balance and numbness.

**Objective:**

Objective

BP 102/62 (BP Location: Left arm, Patient Position: Sitting) | Pulse 78 | Ht 1.727 m (5' 8") | Wt 108 kg (238 lb) | BMI 36.19 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.

Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

12/17/2023
Marina Flaskas, MD

## Patient Instructions

Nurse Cindy, RN at 12/12/2023 1:45 PM

# NOTE

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23
PHYSICIAN SIGNATURE DATE

Clint Carter
PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#: ________
Physician's Name: Chastin Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

______1 (2) 3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

__X__ Yes

_____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. __100%__

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? __✓__ Yes ______ No

Pushing and pulling? __✓__ Yes ______ No

Fine manipulation and fingering? ______ Yes __✓__ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

__✓__ Yes

______ No

What medical conditions limit the patient's ability to use feet? Limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?
Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

Y Yes

___ No

Additional Restrictions or Comments:
Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

February 2, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

In response to your January 16, 2024 letter, enclosed are Mr. Reynolds' December 12, 2023 progress notes from Dr. Flaskas. This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds' treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.
**Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**

Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when be thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr. Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds' extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second

heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**

Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**

Response 2:

Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**

Response 3:

The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#:
Physician's Name: Christin Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

1 (2) 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than 1 total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

X Yes

_____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. 100%

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

X less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

X less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?

Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? __✓__ Yes _____ No

Pushing and pulling? __✓__ Yes _____ No

Fine manipulation and fingering? _____ Yes __✓__ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

__✓__ Yes

_____ No

What medical conditions limit the patient's ability to use feet? Limitations in sitting/standing as above

X. The patient is able to:

| | | | |
|---|---|---|---|
| Bend | ___ Frequently | ✓ Occasionally | ___ Never |
| Kneel | ___ Frequently | ___ Occasionally | ✓ Never |
| Squat | ___ Frequently | ___ Occasionally | ✓ Never |
| Crawl | ___ Frequently | ___ Occasionally | ✓ Never |
| Climb stairs | ___ Frequently | ✓ Occasionally | ___ Never |
| Climb ladders | ___ Frequently | ___ Occasionally | ✓ Never |
| Reach above shoulder level | ___ Frequently | ✓ Occasionally | ___ Never |
| Work from heights | ___ Frequently | ___ Occasionally | ✓ Never |
| Drive or operate machinery | ___ Frequently | ✓ Occasionally | ___ Never |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Thomas Buzbee, MD | Legal Name: William J Reynolds

# Appointment Details

## Progress Notes

M Flaskas, MD at 12/12/2023 1:45 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

**Problem List Items Addressed This Visit**

**Paroxysmal A-fib (HC Category) (HCC) - Primary (Chronic)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

Other Relevant Orders
*EKG 12 lead (Completed)*

**S/P CABG x 2**

**Other Visit Diagnoses**

**ASHD (arteriosclerotic heart disease)**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Mixed hyperlipidemia**
Relevant Medications
lisinopril (Prinivil) 2.5 MG tablet

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 12/18/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/20/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/21/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/27/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 12/28/2023 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

| | | | | |
|---|---|---|---|---|
| 1/3/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/4/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/8/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |
| 1/10/2024 | 8:00 AM | CLASS CARDIAC REHAB | OUTPT CR | CR |

ASSESSMENT AND PLAN:

1. Coronary artery disease. Status post aortocoronary bypass surgery, PCI to PDA and saphenous venous graft to RCA recently in October. Continue with dual antiplatelet therapy. EKG showed improvement concerning ST changes in inferior and precordial leads. Cardiac rehabilitation to continue.

2. Ischemic cardiomyopathy, preserved EF. We would like to see the patient on low dose of ACE inhibitor restarted today. Continue with beta blockers, antiplatelets and statins.

3. Mixed dyslipidemia. Doing very well on present dose of statins. Heart-healthy diet emphasized.

4. Obesity. Weight reduction to continue. Follow up with cardiac rehab.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
HD/#3498/2

**Subjective:**

Subjective

**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup after PCI.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male with known coronary artery disease, hypertension, dyslipidemia, obesity -- BMI index of 36. The patient is status post non-ST MI in August 2022. At that time diagnosed with severe multivessel coronary artery disease and underwent coronary artery bypass surgery with LIMA to LAD, saphenous venous graft to RCA with left atrial appendage ligation with 45 mm AtriClip. Ligation was successful. He recovered well. In December 2022 the patient developed worsening shortness of breath, diagnosed with ST elevation MI. Heart catheterization showed subtotal anastomosis with LIMA to LAD. He underwent drug-coated stenting by Dr. Kumar successfully. In June 2023 the patient was seen for followup. EKG showed dynamic ST elevation and ST depression. The patient underwent diagnostic heart catheterization by Dr. Carr and diagnosed with severe PDA disease. Status post drug-coated stent to PDA. Compliant with aspirin and Plavix. In October he was seen at the clinic. Same changes on EKG which showed some resolution in June but persisted in October. He underwent 4.5 x 22 mm Onyx drug-eluted stent to saphenous venous graft to RCA. LIMA to LAD was patent. Reports compliant with aspirin and Plavix, working on his weight, lost some. Feeling better and planning to be involved in cardiac rehabilitation. Currently on beta blockers, Ranexa, statins. Blood pressure is 102/60.

Marina Flaskas, MD, FACC
HD/#3498/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| * Allergy | 1973 |
| * Anxiety | |
| * Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| * BPH (benign prostatic hyperplasia) | |
| * CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| * Coronary artery disease | |
| * Depression | |
| * Diabetes mellitus (HC Category) | |
| * ED (erectile dysfunction) | |
| * History of irregular heartbeat<br>*a-fib* | |
| * Hyperthyroidism | |
| * Insomnia | |
| * Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| * OSA on CPAP | |
| * Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| * Paroxysmal A-fib (HC Category) | |
| * Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History
- Marital status: Married

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Additional pack years: 0.00
  - Total pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.4
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance and Sexual Activity

* Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
* Drug use: Never
* Sexual activity: Yes
  Partners: Female

Social History Narrative
*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 12/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | Take 10 mg by mouth daily | | |
| • furosemide (Lasix) 20 MG tablet | Take 1 tablet (20 mg total) by mouth daily as needed (for weight gain of 2lb/day or 5lb/week) | 30 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • pantoprazole (Protonix) 40 MG enteric-coated tablet | Take 1 tablet (40 mg total) by mouth daily | 90 tablet | 0 |
| • ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet | Take 1 tablet (500 mg total) by mouth 2 (two) times daily | 180 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • lisinopril (Prinivil) 2.5 MG tablet | Take 1 tablet (2.5 mg total) by mouth at bedtime | 90 tablet | 3 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |

No facility-administered encounter medications on file as of 12/12/2023.

Allergies as of 12/12/2023
- (No Known Allergies)

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for fever, malaise/fatigue, weight gain and weight loss.
HENT: Negative for congestion.
Eyes: Negative for double vision and visual disturbance.
Cardiovascular: Negative for chest pain, claudication, dyspnea on exertion, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for polydipsia, polyphagia and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem.
Musculoskeletal: Negative for joint pain, muscle cramps and muscle weakness.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for dizziness, headaches, loss of balance and numbness.

**Objective:**

Objective

BP 102/62 (BP Location: Left arm, Patient Position: Sitting) | Pulse 78 | Ht 1.727 m (5' 8") | Wt 108 kg (238 lb) | BMI 36.19 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.

Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

12/17/2023
Marina Flaskas, MD

## Patient Instructions

Nurse Cindy, RN at 12/12/2023 1:45 PM

JAN 16 2024

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 3, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

We respond to your December 18, 2023 letter as follows:

This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all-due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds's treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.

**Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job. Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr.

Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds's extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent

depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: <u>From 8/5/22 to 4/30/23</u>:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/stb
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.# ____________

Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

________1__(2)__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than ___1___ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

___X___ Yes

______ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. ___100%___

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

___X___ less than 10 pounds
______ 11-20 pounds
______ 21-50 pounds
______ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

___X___ less than 10 pounds
______ 11-20 pounds
______ 21-50 pounds
______ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? __✓__ Yes _____ No

Pushing and pulling? __✓__ Yes _____ No

Fine manipulation and fingering? _____ Yes __✓__ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

__✓__ Yes

_____ No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above.

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

______ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln Re Response to IME - 01-03-24_2024-01-03-0722-PST.pdf | **Pages:** | 11 |
| **Sent:** | January 3, 2024 7:22 AM PST | **Rec'd:** | January 3, 2024 7:26 AM PST |

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

CERTIFIED MAIL

9414 8118 9956 2613 0014 35

PS Form 3800 6/02.

$7.420
US POSTAGE
FIRST-CLASS
FROM 70809
01/03/2024
stamps
endicia
062S0005843986

JAN 16 2024

~~THE LINCOLN~~ NATIONAL LIFE INSURANCE COMPANY
ATTN: Jeff Booth - Specialist, Appeals Claims
PO BOX 2337
OMAHA NE 68103-2337

JAN 16 2024

LAW OFFICES
OF
J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 3, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

We respond to your December 18, 2023 letter as follows:

This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all-due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds's treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.

**Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr.

Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds's extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent

depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/stb
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

# PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#:________________
Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

__________1___(2)___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than ___1___ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

__✓__ Yes

______ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. __100%__

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

__✓__ less than 10 pounds
______ 11-20 pounds
______ 21-50 pounds
______ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

__✓__ less than 10 pounds
______ 11-20 pounds
______ 21-50 pounds
______ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? __✓__Yes _____No

Pushing and pulling? __✓__Yes _____No

Fine manipulation and fingering? _____Yes __✓__No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

__✓__Yes

_____No

What medical conditions limit the patient's ability to use feet? Limitations in sitting/standing as above.

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature] Signature

3/27/23 Date

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln Re Response to IME - 01-03-24_2024-01-03-0722-PST.pdf | **Pages:** | 11 |
| **Sent:** | January 3, 2024 7:22 AM PST | **Rec'd:** | January 3, 2024 7:26 AM PST |

Date: Tue Jan 16 10:00:53 CST 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: support@jpricemcnamara.com
Message-ID: <55439810.13.1705420853164.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 402-361-2665
Fax: 402-501-9321
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

January 16, 2024

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This letter is in regard to your client's appeal for Long Term Disability benefits.

As part of your client's appeal review, your client's medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your client to review prior to completion of our appeal decision.

Your client may wish to provide this assessment to their treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 02/06/2024. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your client's disability claim at this time as we want to provide your client every opportunity to review our assessment and provide a response.

If we do not receive a response by 02/06/2024, then we will render a decision based on the information currently in the file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
402-361-2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

**January 11, 2024**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-4**

**Specialty: Internal Medicine**

## Robert A. Small, MD
***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-4
**Claim #:** 1220082997
**Date of Service:** 01/10/2024

**ADDENDUM**

**MEDICAL INFORMATION REVIEWED**

- 03/27/2023 - Attending Physician's Statement - Clint Carter, MD

**CLINICAL SYNOPSIS**
The claimant is a 70-year-old male. He was diagnosed with arthritis, cardiovascular conditions, depression, and anxiety.

**OFFICE VISITS**
03/27/2023 - Attending Physician's Statement - Clint Carter, MD:
The claimant had cardiovascular limitations and medication side effects limiting his ability to walk and would be able to walk for less than 1 hour. He was able to stand for less than 1 hour and the medical conditions limiting his ability to stand were stamina and balance. He was able to sit for up to 2 hours and drowsiness, stiffness, and pain due to arthritis had limited his ability to sit. The claimant was not expected to be present for more than 1 total hour per day of the nine-hour work described above on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition caused him to be absent from work. The number of such absences per month was 100%. The claimant was able to lift/carry less than 10 pounds occasionally as a maximum of 1/3 of the day and less than 10 pounds frequently as a maximum of 2/3 of the day. The medical conditions that limited his ability to lift/carry were stamina, balance, and fatigue. The claimant was able to use his hands for repetitive simple grasping, handling, pushing, and pulling. He was unable to perform fine manipulation and fingering. The medical condition that limited his ability to use his hands was arthritis. The claimant was able to use feet for repetitive movements as in operating foot controls. The claimant was able to bend, climb stairs, reach above shoulder level, and drive or operate machinery occasionally. He was unable to kneel, squat, crawl, climb ladders, and work from heights. The medical conditions that limited the ability to engage in these activities were dizziness, balance, and fatigue. The claimant should avoid engaging in any activity that causes severe pain. The additional restrictions or comments included that depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic.

**We are requesting you to review the attached documents and then forward an addendum to our office. Please include an itemized listing of all medical records received.**

**1. Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

The updated medical information was reviewed. An attention physician statement (APS) by Dr. Carter dated 3/27/2023 was reviewed in its entirety. Dr. Carter opined the claimant had cardiovascular limitations and medication side effects limiting his ability to walk and would be able to walk for less than 1 hour. He was able to stand for less than 1 hour and the medical conditions limiting his ability to stand were stamina and balance. He was able to sit for up to 2 hours and drowsiness, stiffness, and pain due to arthritis had limited his ability to sit. The claimant was not expected to be present for more than 1 total hour per day of the nine-hour work described above on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition caused him to be absent from work. The medical conditions that limited the ability to engage in these activities were dizziness, balance, and fatigue. The updated medical information has not altered the initial opinion of this reviewer. The claimant's conditions were taken into consideration upon completion of initial review. While the opinions expressed by Dr. Carter are acknowledged; the additional information did not contain updated clinical information such as documented exam findings, diagnostic studies, or evidence of treatment plan to correspond with the claimants reports level of symptom severity. Therefore, this reviewer's opinion remains unchanged. The R&Ls remain supported as outlined in the initial report. A reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for a progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Robert A Small MD

Robert A. Small, MD
Board-Certified in Internal Medicine

State Medical Licensure
IL: 036.071724

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**January 11, 2024**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-4**

**Specialty: Internal Medicine**

# Robert A. Small, MD

***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-4
**Claim #:** 1220082997
**Date of Service:** 01/10/2024

## ADDENDUM

**MEDICAL INFORMATION REVIEWED**

- 03/27/2023 - Attending Physician's Statement - Clint Carter, MD

**CLINICAL SYNOPSIS**
The claimant is a 70-year-old male. He was diagnosed with arthritis, cardiovascular conditions, depression, and anxiety.

**OFFICE VISITS**
03/27/2023 - Attending Physician's Statement - Clint Carter, MD:
The claimant had cardiovascular limitations and medication side effects limiting his ability to walk and would be able to walk for less than 1 hour. He was able to stand for less than 1 hour and the medical conditions limiting his ability to stand were stamina and balance. He was able to sit for up to 2 hours and drowsiness, stiffness, and pain due to arthritis had limited his ability to sit. The claimant was not expected to be present for more than 1 total hour per day of the nine-hour work described above on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition caused him to be absent from work. The number of such absences per month was 100%. The claimant was able to lift/carry less than 10 pounds occasionally as a maximum of 1/3 of the day and less than 10 pounds frequently as a maximum of 2/3 of the day. The medical conditions that limited his ability to lift/carry were stamina, balance, and fatigue. The claimant was able to use his hands for repetitive simple grasping, handling, pushing, and pulling. He was unable to perform fine manipulation and fingering. The medical condition that limited his ability to use his hands was arthritis. The claimant was able to use feet for repetitive movements as in operating foot controls. The claimant was able to bend, climb stairs, reach above shoulder level, and drive or operate machinery occasionally. He was unable to kneel, squat, crawl, climb ladders, and work from heights. The medical conditions that limited the ability to engage in these activities were dizziness, balance, and fatigue. The claimant should avoid engaging in any activity that causes severe pain. The additional restrictions or comments included that depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic.

**We are requesting you to review the attached documents and then forward an addendum to our office. Please include an itemized listing of all medical records received.**

**1. Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

The updated medical information was reviewed. An attention physician statement (APS) by Dr. Carter dated 3/27/2023 was reviewed in its entirety. Dr. Carter opined the claimant had cardiovascular limitations and medication side effects limiting his ability to walk and would be able to walk for less than 1 hour. He was able to stand for less than 1 hour and the medical conditions limiting his ability to stand were stamina and balance. He was able to sit for up to 2 hours and drowsiness, stiffness, and pain due to arthritis had limited his ability to sit. The claimant was not expected to be present for more than 1 total hour per day of the nine-hour work described above on a sustained and regular basis in any combination of sitting, standing, or walking. His medical condition caused him to be absent from work. The medical conditions that limited the ability to engage in these activities were dizziness, balance, and fatigue. The updated medical information has not altered the initial opinion of this reviewer. The claimant's conditions were taken into consideration upon completion of initial review. While the opinions expressed by Dr. Carter are acknowledged; the additional information did not contain updated clinical information such as documented exam findings, diagnostic studies, or evidence of treatment plan to correspond with the claimants reports level of symptom severity. Therefore, this reviewer's opinion remains unchanged. The R&Ls remain supported as outlined in the initial report. A reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for a progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Robert A Small MD

Robert A. Small, MD
Board-Certified in Internal Medicine

State Medical Licensure
IL: 036.071724

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 3, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

We respond to your December 18, 2023 letter as follows:

This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all-due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds's treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.

**Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job. Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr.

Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds's extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent

depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: From 8/5/22 to 4/30/23:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/stb
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#:__________

Physician's Name: Christen Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

1 (2) 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

_X_ Yes

___ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. _100%_

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

- _X_ less than 10 pounds
- ___ 11-20 pounds
- ___ 21-50 pounds
- ___ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

- _X_ less than 10 pounds
- ___ 11-20 pounds
- ___ 21-50 pounds
- ___ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? ✓ Yes ___ No

Pushing and pulling? ✓ Yes ___ No

Fine manipulation and fingering? ___ Yes ✓ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

___ No

What medical conditions limit the patient's ability to use feet? Limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 3, 2024

**SENT VIA CERTIFIED MAIL**
**& EMAIL: lfgappeals@lfg.com**
**& FAX 402-361-1460**

The Lincoln National Life Insurance Company
**ATTN: Jeff Booth - Specialist, Appeals Claims**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

Dear Jeff:

We respond to your December 18, 2023 letter as follows:

This entire claim involves only 12 months of benefits for now-70-year-old Mr. Reynolds. That's the entire remaining term of the policy. With all-due respect, the opinions of Lincoln's own Dr. Ellis appear to support disability and are hair-splitting and baffling at best. This is a deserving claim, and Mr. Reynolds prays that the denial be overturned. The record contains the following:

On March 27, 2023, Mr. Reynolds's treating cardiologist, Dr. Carter, issued restrictions that Mr. Reynolds could not walk and stand more than one hour, and could sit up to two hours in a given day, and not be expected to be present more than one total hour in a workday, and that he did not have the capacity to work at all. See attached note and restrictions form.

On November 24, 2022, Lincoln's medical reviewer, Dr. Lenworth Ellis, found unrestricted sitting, but walking and standing restricted for not more than two hours in a workday from August 5, 2022 through April 30, 2023. From May 1, 2023 forward, the reviewer determined that medical records would be required. The reviewer also stated that from May 1, 2023 forward: **"The restrictions and limitations recommended by Dr. Carter, based on our discussion are reasonably supported."** This was Lincoln's own board-certified internal medicine and occupational medicine doctor.

Further down in his own report, Dr. Ellis recites Dr. Carter's restrictions and limitations recommendations during the relevant time period as follows:

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.

**Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.**
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
**Advised to stop work 4/28/22.**
**Prognosis poor.** Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
**c/c disability discussion**
**is not going to be able to rtw.** Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD. no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
**stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job.**
**Gets anxious meeting them at the gate to pick up some of his things.**
**Ass: reaction to severe stress.**
**Unable to rtw.** Continue to address anxiety. Will fill out LTD ppw.

First, how can Dr. Ellis prognosticate in a November 22, 2022 report into the future, that Mr. Reynolds would become unable to work at all in May of 2023? And how does he arbitrarily opine that he could work from August 5, 2022 through April 30, 2023 on the record below?

Add to that, Lincoln's Nurse Review of June 23, 2023 finding **no** restrictions even as of that date, when Lincoln's Dr. Ellis was opining complete disability.

Then, Lincoln's July 21, 2023 appeal denial letter states: "In regard to his physical conditions, the clinical reviewer also agreed with the most recent M/OCC peer that the evidence failed to support multiple conditions that would translate in functional impairment of May 7, 2022 forward." That's not accurate, as it does not even acknowledge that the reviewer, Dr. Ellis, had found him completely disabled as of May 1, 2023.

In our second appeal of December 1, 2023, we forwarded additional medical records from Dr. Marina Laskas and Dr. James Hoff.

On December 18, 2023, Lincoln forwarded a peer review by Dr. Robert Small, internal medicine. Dr. Small opined that from May 7, 2022 through October 5, 2023, Mr. Reynolds had the capacity to sit constantly, stand occasionally and walk occasionally. But as of October 6, 2023 to present and ongoing, he opined that Mr. Reynolds has no sustainable work capacity at any level.

With Lincoln's experts' opinions being all over the board, and with Lincoln's Dr. Ellis stating agreement with treating Dr. Carter's restrictions as of Dr. Ellis's report date of November 22, 2022, and Dr.

Carter's opinion at that time being what it was, this is a baffling record that cannot reasonably support the hair-splitting timing of total disability as opined by Dr. Ellis.

Mr. Reynolds's extensive treatment records demonstrate the following:

On November 11, 2021, the plaintiff is seen virtually by Dr. Clinton Carter, family physician at My MD Select Tyler. He was fairly frustrated with the slow and difficult recovery. He has obstructing sleep apnea and is using CPAP machine. He had an open-heart surgery six weeks ago and started cardiac rehabilitation this week. (230)

On March 15, 2022, family nurse practitioner Kush re-evaluates the plaintiff. He had a double bypass on October 02, 2021 and completed cardiac rehabilitation and had a stent placed on November 19, 2021. He was seen two weeks ago by cardiology and was told he needs to walk at least 30 minutes a day. He was assessed as having atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroidism. (226-228)

On March 15, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm. There was a first degree AV block. There was slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change. This was a borderline ECG. (198)

On March 23, 2022, nurse practitioner Kush obtains an electrocardiogram study. The study was in sinus rhythm with first degree AV block. A right axis deviation was noted. There was possible inferior myocardial infarction, CF indeterminate age. (200)

On April 20, 2022, nurse practitioner Kush re-examines him. He stated he had been having increased feeling of fatigue for the last seven months. He feels since his coronary artery bypass graft in December, he has not felt the same. He felt like the shortness of breath was slightly worse over the last three days with occasional wheezing. He had been trying to walk 30 minutes a day and do some yard work, but reported having to stop frequently. He admitted this had caused increased frustration for him. He was assessed as having fatigue, shortness of breath, and major depressive disorder. He admitted that his coronary artery bypass graft had changed his life and he felt like he is not the same. (221)

On April 20, 2022, an x-ray of the chest is obtained at Tyler Open MRI by Dr. Pulin Patel ordered by nurse practitioner Kush. The study showed scattered interstitial opacities due to edema or infiltrate. (195)

On April 20, 2022, laboratory workup is obtained at CPL Laboratory ordered by nurse practitioner Kush. Complete blood count showed decreased lymphocytes. Hemoglobin A1c was elevated. (212-215)

On April 28, 2022, he follows up with Dr. Carter for FMLA evaluation. Dr. Carter indicated that Mr. Reynolds had been through a lot in the last seven months. He had a heart attack and had a bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring stent to the anastomosis of the LIMA to the LAD. He went back to work as soon as possible both times, as he feels that he is the only one who really knows how to do his job. He had been under increased scrutiny at work since returning the second time that he is making more mistakes. He felt that it is that there is more volume so mistakes appear more frequent. He fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He was now feeling extra pressure and was second guessing himself, which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place. He did not feel that he ever really recovered from the two heart attacks or the subsequent

depression/anxiety and he was now having difficulty fulfilling his work obligations. He needed to stop and do the physical and mental rehab that was necessary to function at his current position. He was assessed as having major depressive disorder that was greatly exacerbated by the open-heart surgery and then the second heart attack. His condition was complicated by incomplete rehabilitation. His condition was amplified by increased pressure at work as the workload changes and increases. He was recommended to take some time off work for physical rehabilitation up to twice a day as well as time to focus on mental health with counselling, medications, exercise, etc. FMLA paperwork was filled out. (210)

On September 09, 2022, Mr. Reynolds returns to Dr. Carter to discuss long term disability. Dr. Carter stated that the plaintiff cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He was definitely planning on working for several more years. He was assessed as having other reactions to severe stress and history of coronary artery bypass graft. Long term disability paperwork was filled out. He was advised to follow up with cardiology. (202)

On October 23, 2022, he follows up with Dr. Carter virtually. He just had his second counselling session with Sarah Jorden. He had been on Wellbutrin XL 300 mg. He was on Lexapro for a short time without known side effects. He was assessed as having major depressive disorder. Counselling and Wellbutrin were continued. Lexapro 10 mg was added. His PDQ-9 score was 7, indicating mild depression. (156)

On November 24, 2022, a clinical review memo from Dr. Lenworth Ellis, internist and occupational medicine specialist notes: (133-138)

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations: <u>From 8/5/22 to 4/30/23</u>:
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds. 5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
**I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.**

**He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.**

Date letter sent to AP: 11/24/2022.

This is a deserving claim, and Mr. Reynolds prays that the denial be overturned.

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/stb
Enclosure

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23
PHYSICIAN SIGNATURE DATE

Clint Carter
PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#.

Physician's Name: Christin Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) 2 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

1 (2) 3 4 5 6 7 8 9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

X Yes

____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. 100%

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

- X less than 10 pounds
- ____ 11-20 pounds
- ____ 21-50 pounds
- ____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

- X less than 10 pounds
- ____ 11-20 pounds
- ____ 21-50 pounds
- ____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?

Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? ✓ Yes ___ No

Pushing and pulling? ✓ Yes ___ No

Fine manipulation and fingering? ___ Yes ✓ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

___ No

What medical conditions limit the patient's ability to use feet? Limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

Date: Mon Dec 18 13:20:43 CST 2023
From: Jeff Booth <Jeff.Booth@lfg.com>
To: support@jpricemcnamara.com
Message-ID: <1447550987.3.1702927243686.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 402-361-2665
Fax: 402-501-9321
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 18, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This letter is in regard to your client's appeal for Long Term Disability benefits.

As part of your client's appeal review, your client's medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your client to review prior to completion of our appeal decision.

Your client may wish to provide this assessment to their treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 01/08/2024. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your client's disability claim at this time as we want to provide your client every opportunity to review our assessment and provide a response.

If we do not receive a response by 01/08/2024, then we will render a decision based on the information currently in the file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
402-361-2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**December 13, 2023**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-3**

**Specialty: Internal Medicine**

**Robert A. Small, MD**
***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-3
**Claim #:** 1220082997
**Date of Service:** 12/13/2023

**PEER REVIEW**

**MEDICAL INFORMATION REVIEWED**

- 01/07/2022 – Christus Health – Echocardiogram
- 02/21/2022 – 10/07/2023 – Lab Reports
- 02/22/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 02/23/2022 – Trinity Clinic Cardiology – ECG – Peter Pitonak, M.D.
- 03/15/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 03/15/2022 – ECG
- 04/20/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 04/20/2022 – Tyler Open MRI – X-ray of the Chest – Pulin Patel, M.D.
- 04/28/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 05/05/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.
- 06/21/2022 – MyMD Select Tyler – Office Visit Note – Rebecca Parker, FNP
- 07/26/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 07/26/2022 – Lincoln Financial Group – Short Term Continuance of Disability
- 08/08/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.
- 09/07/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 09/09/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 10/21/2022 – Lincoln Financial Group – Behavioral Health Disability Claim Form Treating Provider Statement – Sarah Jordan, LPC
- 10/23/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 11/24/2022 – Clinical Review Memo – Lenworth Ellis, M.D.
- 11/24/2022 – Letter – Lenworth Ellis, M.D.
- 12/12/2022 – Peer Review – Steven Choi, D.O.
- 02/20/2023 – UT Health East Texas Pulmonary Institute – After Visit Summary – C Wang-Kocik, M.D.
- 03/27/2023 – Letter – Clinton Carter, M.D.
- 03/27/2023 – Physician's Recommended Restrictions – Clinton Carter, M.D.
- 04/06/2023 – History and Physical – Lisa Leffler, M.D.
- 05/12/2023 – Progress Note – Marina Flaskas, M.D.
- 06/26/2023 – Progress Note – Marina Flaskas, M.D.
- 06/27/2023 – Lincoln Financial Group – Appeal Nursing Memorandum – Amy M., RN
- 10/06/2023 – Progress Note – Marina Flaskas, M.D.
- 10/06/2023 – Emergency Department Note – Kasi Addison, M.D.

- 10/06/2023 – History and Physical – James G. Hoff, M.D.
- 10/06/2023 – Operative Note – James G. Hoff, M.D.
- 10/06/2023 – Cardiac Catheterization – James G. Hoff, M.D.
- 10/07/2023 – Progress Note – Michaela, RN
- 10/07/2023 – Discharge Summary – James G. Hoff, M.D.

**CLINICAL SYNOPSIS**

The claimant is a 70-year-old male retail project analyst. He is diagnosed with other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression and obesity.

**DIAGNOSTIC REPORTS**

01/07/2022 – Christus Health – Echocardiogram:
1. Normal left ventricular size.
2. Abnormal diastolic function is noted.
3. The visually estimated ejection fraction Is 65%.
4. There is no evidence of regional wall motion abnormalities.
5. There is trace mitral valve regurgitation.
6. The right ventricular systolic pressure is normal.

02/23/2022 – Trinity Clinic Cardiology – ECG – Peter Pitonak, M.D.:
1. Sinus rhythm with first degree av block.
2. Right axis deviation.
3. Possible inferior myocardial infarction.
4. Abnormal ECG.

03/15/2022 – ECG:
1. Sinus rhythm (slow).
2. First degree AV block (limited).
3. Slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change.
4. Borderline ECG.

04/20/2022 – Tyler Open MRI – X-ray of the Chest – Pulin Patel, M.D.:
1. Scattered interstitial opacities due to edema or infiltrate.

10/06/2023 – Cardiac Catheterization – James G. Hoff, M.D.:
Emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction is 65%, left ventricular end diastolic pressure is 13 mm Hg.

**LAB REPORTS**

02/21/2022 – Lab Report:
Hemoglobin A1c: 5.8, Result: High.
Estimated Average Glucose: 120, Result: High.

TSH, Third Generation: 8.250, Result: High.
Vitamin-D, 25 OH: 26, Result: Low.

05/12/2023 – Lab Report:
ALT: 75, Result: High.
AST: 60, Result: High.

04/20/2022 – Lab Report:
Absolute Lymphocytes: 0.61, Result: Low.
Hemoglobin A1C: 5.7, Result: High.

10/06/2023 – Lab Report:
Neutrophils%: 73.5, Result: High.
Lymphocytes%: 14.8, Result: Low.
Lymphocytes#:0.90, Result: Low.
Sodium: 133, Result: Low.
Osmolality, Calculated: 268, Result: Low.

10/07/2023 – Lab Report:
Sodium: 133, Result: Low.
Chloride: 99, Result: Low.

**OFFICE VISITS**

02/22/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant presents to have labs drawn and a urine sample. He tolerated well with no complaints.

03/15/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant presents for the lab review, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1C, obstructive sleep apnea, low vitamin D, coronary artery disease and hypothyroid. He has been on metoprolol for the last two years and is stable but feels like he is slightly more tired than normal. He has some nocturia but is manageable. He has been more tired recently with time change and has been using temazepam nightly and using CPAP. He is being followed by cardiology closely. He had double bypass on 10/02/2021, then after completing cardiac rehab had a stent placed on 11/19/2021. He was seen two weeks ago by cardiologist and told he needs to walk at least 30 minutes a day. He did not want to do cardiac rehab. He is trying to walk daily for 30 minutes a day. He feels more tired some days than others. The diagnosis is preventive health care, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin A1c, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroid. Recommended to continue wearing CPAP. Increased levothyroxine to 75 mcg. Ordered labs.

04/20/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant has been having an increased feeling of fatigue for the last seven months. He feels since CABG (coronary artery bypass graft) in December he has not felt the same. Prior to that he has was placed on Lexapro in October, but he feels like that with the Wellbutrin has made him feel flatter and no emotion. He endorses anhedonia, increased sleep, decreased appetite and at times has feelings of sadness. He has tried to wean off Wellbutrin in the past, but it did not feel right. He is also concerned that his thyroid level is causing his fatigue. He sleeps well and uses CPAP; most nights feel rested. His wife has noticed that he is hot himself. He has sore throat, dry cough, and headache for the last three days. He feels like the shortness of breath is slightly worse over the last three days with occasional wheeze. He has declined cardiac rehab in the past since coronary artery bypass graft. He feels that after he did its last time that is what cause last heart attack, and he just does not feel motivated and feels lazy to do it. He has been trying to walk 30 min

a day and do some yard work, but reports have to stop frequently as it causes increased frustration in him. He has major depressive disorder.

04/28/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant had a heart attack and had bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring a stent to the anastomosis of the LIMA to the LAD which has greatly inhibited his ability/motivation to do cardiac rehab. It also halted the process he was making with depression. He went back to work as soon as possible both times, as he feels that he is the only one that really knows how to do his job. He has been under increased scrutiny at work since returning the second time as he is making more mistakes. He feels that there is more volume, so mistakes appear more frequent without an increase in the low% of mistakes made but fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He feels extra pressure and is second guessing himself which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work where he was sure that he was going to die that day but fortunately nothing physically deleterious took place. He does not feel that he really recovered from the two heart attacks, or the subsequent depression/anxiety and he is having difficulty fulfilling his work obligations. He needs to stop and do the physical and mental rehab that is necessary to function at his current position. The diagnosis is major depressive disorder. His major depressive disorder is greatly exacerbated by the open-heart surgery and then the secondary heart attack and complicated by incomplete rehab and amplified by increased pressure at work as the workload changes and increases. Recommended some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling, meds and exercise, etc. FMLA paper is delivered by him to be filled out.

05/05/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.:
The claimant had acute myocardial infarction in October 2021 with coronary artery bypass graft. His rehab got interrupted by a second myocardial infarction with a stent. He returned to work without mental/physical recovery. The acute stress and physical fatigue are making him unable to work. His symptoms include flat affect and is fearful while entering the office. His reduced ability to work was on 01/01/2022 and he was advised to stop working on 04/28/2022. The diagnosis is coronary artery bypass graft and acute stress reaction. His prognosis is good. Recommended cardiac rehab, physical therapy, and mental health counseling. He can return to work between 07/18/2022 – 08/01/2022. (Illegible handwritten record).

06/21/2022 – MyMD Select Tyler – Office Visit Note – Rebecca Parker, FNP:
The claimant has low back pain that started last week but was much worse yesterday. The pain is worse when he twists or steps down wrong and when trying to turn on side in bed. He has done some yards work this past week but does not recall any specific movement that caused the pain. He had a lumbar strain on the same side about 14 years ago that got improved with one-week bed rest. The physical examination revealed tenderness over lumbar paraspinal, mostly tender over SI joint. The straight leg is positive on left. The diagnosis is lumbago. Prescribed Tylenol, Voltaren gel, and Flexeril 10 mg.

07/26/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant follows up for coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. He has been on short term disability for further physical and mental rehab for almost 12 weeks. The short-term disability company stopped paying at 10 weeks and he needs a continuance form filled out today. He has been slowly progressing in his physical endurance, shortness of breath and ability to do activities of daily living. He is gradually improving with depression and anxiety. He still feels anxious about returning to his position and is due to speak with JSF/HR to discuss options. He did not feel that Lexapro was helping so he stopped it and is still on Wellbutrin 300 mg. He feels that he is gradually improving (depression). He still has minimal libido, and his wife is nervous about that level of exertion. She is also not comfortable with him being outside alone. He only needs Xanax 3-4 times per month. The

diagnosis is coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. Recommended to continue medication, physical and mental rehab. His short-term disability form has been filled in and is extended until 0/01/2022. Recommended to continue levothyroxine 75 mcg, Wellbutrin and temazepam.

07/26/2022 – Lincoln Financial Group – Short Term Continuance of Disability:
The claimant has acute myocardial infarction with coronary artery bypass graft then blocked graft with second myocardial infarction and stent that interrupted cardiac rehab and caused depression, fatigue, and decreased concentration. He cannot perform duties due to concentration and short-term memory. He is restricted from performing high level analysis. He is working on returning if possible and is following with employer as well.

08/08/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.:
The claimant is unable to return to work due to mental and physical deconditioning which ultimately caused a stress reaction with anxiety and worsening mental and physical fatigue as well as anxiety and making it impossible for him to work. After completing a full round of short-term disability, he is still not able to return to his position due to complex mental requirements and the high stress environment of his job. The physical examination revealed flat affect, tearful, anxiety and DOE and fatigue with walking in office. The diagnosis is coronary bypass graft and acute stress reaction. He is restricted in physical exertion, complex decision making especially in high stress environments and high stress. He is unable to return to work.

09/07/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant is not going to be able to return to work. He gets overwhelming anxiety at the thought of it and at the thought of going on property. He has been gradually increasing his exercise capacity at home, under the close supervision of his wife. He feels that he needed to work longer as he had planned in order to afford to retire. He is unfortunately unable to return to work and it puts him in a financial bind. He is hoping to qualify for long term disability in order to make up for the lost wages due to his medical disability. The diagnosis is disability due to neurological disorder. He needs disability to afford to stop working at this time. Long term disability paperwork will be filled out when available.

09/09/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant has a history of coronary artery bypass graft, and he is gradually recovering. His wife does not let him work in the yard on his own. He has a stress reaction. He cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He had definitely planned on working for several more years. He continues to address anxiety. The diagnosis is other reaction to severe stress and history of coronary artery bypass graft. The long-term disability will be filled out, Follow-up with cardiologist.

10/21/2022 – Lincoln Financial Group – Behavioral Health Disability Claim Form Treating Provider Statement – Sarah Jordan, LPC:
The claimant has anxiety and depression. The anxiety he experiences makes decision making and complex problem solving extremely difficult. He experiences anxiety at the job location. He has increased anxiety, and he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and concentrate. The physical examination revealed an anxious and depressed mood. Recommended cognitive behavioral therapy 2 times a week for 6 weeks.

10/23/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant presents via telemedicine. He has depression and major depressive disorder. He has been in a funk. He just had his second counseling session with Sarah Jorden. His PHQ-9 score is 7 (mild depression).

The diagnosis is major depressive disorder. Prescribed Lexapro 10 mg. Recommended to continue Wellbutrin XL 300 mg Follow up in 1-2 months.

02/20/2023 – UT Health East Texas Pulmonary Institute – After Visit Summary – C Wang-Kocik, M.D.:
The claimant presents for sleep apnea. Follow up in three months.

03/27/2023 – Letter – Clinton Carter, M.D.:
The physician is familiar with his overall medical condition and his medication regimen. He has reviewed the attached affidavit of this claimant. The statements that he makes in his affidavit regarding his physical condition, limitations and the effects of his condition are credible, consistent with and expected given his overall medical condition and the physician's objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date. His statements regarding prescribed medication and its side-effects are also consistent with common side-effects of the prescribed medication. His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain and is not recommended and will be detrimental to and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve and rather are expected to continue to become worse with time. It is the physician, opinion that he is disabled from any type of gainful employment.

03/27/2023 – Physician's Recommended Restrictions – Clinton Carter, M.D.:
The claimant can walk less than 1 hour due to cardiovascular limitations and medication side effects. He can stand up to less than 1 hour due to less stamina and balance. He can sit up to 2 hours due to drowsiness, stiffness and pain due to osteoarthritis. He should not be expected to be present for more than 1 total hour per day of the nine-hour workday. His medical condition is expected to cause absences from work, these absences can be 100% per month. He can occasionally lift/carry less than 10 lbs. for 1/3 of the day and frequently lift/carry less than 10 lbs. for 2/3 of the day. The medical conditions lift his ability to lift/carry are stamina, balance, and fatigue. He can use hands for repetitive movements in simple grasp and handling and push and pull and operating foot controls but cannot do fine manipulation and fingering due to arthritis. The medical condition limits his ability to use feet is limitation in sitting/standing. He is able to occasionally bend, climb stairs, reach above shoulder level, and operate machinery. He can never kneel, squat, crawl, climb ladders or work from heights. Dizziness, balance, and fatigue limit his ability to engage in the above activities. He should avoid engaging in any activities that cause severe pain. (Illegible handwritten records).

04/06/2023 – History and Physical – Lisa Leffler, M.D.:
The claimant presents with a complaint of depression. He reports improvement in mood and activities. The diagnosis is an encounter for annual general medical examination with abnormal findings in adult, moderate recurrent major depressive disorder, congestive heart failure, morbid obesity, BMI 38.0-38.9, adult, chronic obstructive pulmonary disease, paroxysmal A-fib, benign prostatic hyperplasia, controlled diabetes mellitus with diabetic polyneuropathy, acquired absence of the left finger, hypothyroid and hyperlipidemia. Recommended to continue Lexapro 10 mg, trazodone 100 mg, metoprolol succinate 25 mg, tamsulosin 0.4 mg and metformin 500 mg. Follow up with primary care physician.

05/12/2023 – Progress Note – Marina Flaskas, M.D.:
The claimant has worsening shortness of breath with exertion. He reports doing well in medical management. He reports that he would like to exercise more but shortness of breath stops him from activity. He was seen by a Pulmonary specialist and diagnosed with COPD. Since he started on inhalers, he is doing

significantly better concerning shortness of breath but not all back to baseline. Abnormal ECG was obtained in the office concerning ST elevation and depression in anterolateral leads. The diagnosis is dyspnea with exertion, coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021, Diastolic dysfunction, mixed dyslipidemia, obesity, angina at rest, primary hypertension, mixed hyperlipidemia and dyspnea on exertion. Ordered left heart catheterization. Prescribed Imdur 30 mg. Ordered labs.

06/26/2023 – Progress Note – Marina Flaskas, M.D.:
The claimant reports improvement in dyspnea on exertion after PCi to PDA. The diagnosis is coronary artery disease due to lipid-rich plaque, primary hypertension, mixed hyperlipidemia, status post coronary artery bypass graft X 2, dyspnea with exertion, coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021, diastolic dysfunction, mixed dyslipidemia, and obesity.

06/27/2023 – Lincoln Financial Group – Appeal Nursing Memorandum – Amy M., RN:
The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder with anxiety and depression related to his cardiac condition. The claimant is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine). There are no mental status exams documenting impaired psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) with noted improvements. Additional treatment includes psychotherapy by Jorden LPC however there is a significant gap in treatment from 12/01/2021-10/13/2022. Mental status exams are normal except noted anxious mood. From a mental health standpoint, although the claimant reports stress and anxiety that appears to specific to returning to the workplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that would support restrictions or limitations from 05/07/2022 and forward. All examinations, claimant is noted to be alert and oriented without documentation of cognitive slowing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and the claimant did not require a higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that would change the prior determination. NDC agrees with prior peer review. The medical records document ongoing care and treatment following coronary artery bypass graft and stent placement in 2021 associated with fatigue and shortness of breath with exertion. The claimant has a history of multiple medical conditions that are stable with medication management and CPAP. There are no documented side effects to any medications. Most recent ECHO 01/06/2022 showed normal ejection fraction. The claimant is treated by Dr. Carter (Family Medicine) without significant exam findings. His oxygen level is consistently normal. The records also indicate claimant is followed by cardiology and he is noted to be doing well from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries without clinical exam findings or treatment plans. During a follow-up visit on 05/12/2023 with Dr. Flakas (Cardiology), he reports dyspnea with exertion. He also noted a recent diagnosis of COPD treated with inhalers with significant improvements. The exam is unremarkable, however, he required hospitalization 05/12/2023-05/14/2023 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or with activity with symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated hypotension, pulmonary and dependent edema, dizziness, vertigo, witnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that would translate into a functional impairment 05/07/2022 and forward except during most recent hospitalization and diagnostic testing. The restrictions/limitations outlined in detail by peer reviewer Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

10/06/2023 – Progress Note – Marina Flaskas, M.D.:

The claimant reports compliance with dual antiplatelet therapy. Two weeks ago, had chest pains and tightness as pressure. The diagnosis is primary hypertension, coronary artery disease involving the native coronary artery of the native heart with angina pectoris and mixed hyperlipidemia.

10/06/2023 – Emergency Department Note – Kasi Addison, M.D.:
The claimant presents due to an abnormal ECG. He is seen by his cardiologist, Dr. Flaskas, this morning for a follow-up secondary to stent placement in May. He has been informed of an abnormal EKG and prompted to catheterization for further care. He does sleep with a CPAP machine. The physical examination revealed he is obese. He has a midline sternotomy scar. The diagnosis is an abnormal EKG. Ordered labs.

10/06/2023 – History and Physical – James G. Hoff, M.D.:
The claimant has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention, and he continues to have electrocardiogram changes. Recommended cardiac catheterization.

10/07/2023 – Progress Note – Michaela, RN:
The claimant's right groin dressing remains clean, dry, and intact. No complaints of pain since arrival to unit.

10/07/2023 – Discharge Summary – James G. Hoff, M.D.:
The claimant at the time of discharge, he does not have chest pain that sounds cardiac in nature. The diagnosis is ST elevation on electrocardiogram without active chest pain and a history of coronary atherosclerotic heart disease. Prescribed Protonix 40 mg and Ranexa 500 mg.

**Questions to be addressed:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s).**

Other reactions to severe stress, F43.8 –detailed discussion related to this condition is deferred as it is outside the scope of this review.
Coronary artery disease, I25.10
Physical deconditioning/other malaise, R53.81
Adjustment disorder with mixed anxiety and depression, F43.23–detailed discussion related to this condition is deferred as it is outside the scope of this review.
Obesity, E66*

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Atrial fibrillation, I48.1
Hypothyroidism, E03.9
Insomnia, G47.0

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current, and comment on the expected duration.**

The claimant is a 70-year-old male retail project analyst who is managed for the conditions of other reactions to severe stress, coronary artery disease, physical deconditioning/other malaise, adjustment disorder with mixed anxiety and depression, and obesity. Any detailed discussion related to the claimant's psychiatric symptoms and/or conditions related to potential impairments are deferred as they remain outside the scope of this review. Therefore, this reviewer defers any discussion related to the conditions of other reactions to severe stress and adjustment disorder with mixed anxiety and depression. The claimant is managed for the medical comorbid conditions of atrial fibrillation, hypothyroidism, and insomnia. On 01/07/2022, the claimant underwent an echocardiogram which revealed the following impressions:

> Normal left ventricular size.
> Abnormal diastolic function is noted.
> The visually estimated ejection fraction Is 65%.
> There is no evidence of regional wall motion abnormalities.
> There is trace mitral valve regurgitation.
> The right ventricular systolic pressure is normal.

On office visit note dated 04/20/2022, Danyel Kush, FNP evaluated the claimant for several month history of fatigue. The claimant reported he has not felt the same since his CABG (coronary artery bypass graft) in December. The claimant started on Lexapro in October prior to his CABG, but he feels like that with the Wellbutrin has made him feel flatter and no emotion. He endorses anhedonia, increased sleep, decreased appetite and at times has feelings of sadness. He has tried to wean off Wellbutrin in the past, but it did not feel right. He is also concerned that his thyroid level is causing his fatigue. He sleeps well and uses CPAP; most nights feel rested. His wife has noticed that he is hot himself. He has sore throat, dry cough, and headache for the last three days. He feels like the shortness of breath is slightly worse over the last three days with occasional wheeze. He has declined cardiac rehab in the past since coronary artery bypass graft. He feels that after he did its last time that is what cause last heart attack, and he just does not feel motivated and feels lazy to do it. He has been trying to walk 30 min a day and do some yard work, but reports have to stop frequently as it causes increased frustration in him. He has major depressive disorder.

5/5/2022 short term disability claim form physician's statement notes the claimant had acute myocardial infarction in October 2021 with coronary artery bypass graft. His rehab got interrupted by a second myocardial infarction with a stent. On office visit dated 07/26/2022, Dr. Carter evaluated the claimant in follow up for ongoing management of the conditions of coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. He has been slowly progressing in his physical endurance, shortness of breath and ability to do activities of daily living. Office visit note with Dr. Carter dated 9/07/2022 notes the claimant has been gradually increasing his exercise capacity at home, under the close supervision of his wife. Dr. Carter opined the claimant was unable to return to work.

On 3/27/2023, Dr. Carter authored a letter. Due to the claimant's physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain and is not recommended and will be detrimental to and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve and rather are expected to continue to become worse with time. It is the physician, opinion that he is disabled from any type of gainful employment.

Office visit note dated 5/12/2023 with Dr. Flaskas notes the claimant is experiencing worsening shortness of breath with exertion. The claimant would like to exercise more than he is currently, however, his shortness of breath stops him from activity. He was seen by a Pulmonary specialist and diagnosed with COPD. Since he started on inhalers, he is doing significantly better concerning shortness of breath but not all back to baseline. Abnormal ECG was obtained in the office concerning ST elevation and depression in anterolateral leads. The diagnosis is dyspnea with exertion, coronary artery disease, status post

aortocoronary bypass surgery, LIMA to LAD in December 2021, Diastolic dysfunction, mixed dyslipidemia, obesity, angina at rest, primary hypertension, mixed hyperlipidemia and dyspnea on exertion. Ordered left heart catheterization. Prescribed Imdur 30 mg. Ordered labs.

On 10/06/2023, Dr. Flaskas reports the claimant developed chest pains and tightness approximately 2 weeks ago. The diagnosis is primary hypertension, coronary artery disease involving the native coronary artery of the native heart with angina pectoris and mixed hyperlipidemia. The claimant presented to the emergency department on 10/06/2023 and was evaluated by Dr. Addison. EKG performed and noted to be abnormal. Recommendations were made for cardiac catheterization. The physical examination revealed he is obese. He has a midline sternotomy scar. On 10/06/2023, Dr. Hoff performed cardiac catheterization due to dynamic ST elevation on the electrocardiogram revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction is 65%, left ventricular end diastolic pressure is 13 mm Hg. The claimant was discharged to home on 10/07/2023 with prescriptions for chest pain, coronary atherosclerotic heart disease. Prescribed Protonix 40 mg and Ranexa 500 mg.

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, the supported level of impairment translates into restrictions and limitations from 05/07/2022 to 10/05/2023 of:

The claimant is managed for the conditions of coronary artery disease, physical deconditioning/other malaise, and obesity.
Sitting: Constant
Standing: Occasional
Walking: Occasional

To avoid potential temporary exacerbation of symptoms due to coronary artery disease, physical deconditioning/other malaise, and obesity.
Bilateral Upper Extremities-
-Lifting: Occasional, up to 10lbs., utilizing both upper extremities together
-Pushing: Occasional, up to 10lbs., utilizing both upper extremities together
-Pulling: Occasional, up to 10lbs., utilizing both upper extremities together
-Carrying: Occasional, up to 10lbs., utilizing both upper extremities together

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Unrestricted, bilateral
-Below waist level: Occasional, bilateral

There were no significant findings associated with upper extremity pain or motor deficits, below the level of the shoulders bilaterally based on review of the available treatment records.
Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger: Unrestricted, bilateral
-Handle: Unrestricted, bilateral
-Feel: Unrestricted, bilateral

The claimant is managed for the conditions of coronary artery disease, physical deconditioning/other malaise, and obesity.
Climbing stairs: Occasional
Balancing: Never
Stooping: Never
Bending: Never
Kneeling: Never
Crouching: Never
Crawling: Never
Ladder climbing: Never
Lower extremities for foot controls- Occasional, bilateral

As of 10/06/2023 to present and ongoing, it is the opinion of this reviewer that the claimant has no sustainable work capacity at any level and is totally restricted from all work-related duties. Rationale is based on the presence of chest pain and tightness resulting in inpatient hospitalization. The claimant required cardiac catheterization as a result of symptoms. The claimant's medications were adjusted. There has been no updated information to provide insight into the claimant's current functional status. Therefore, it is the opinion of this reviewer, given extensive cardiac history, inpatient hospitalization requiring cardiac procedure, and advancing age, the claimant is totally restricted from any work-related duties as of 10/06/2023 to present and ongoing. This reviewer's assessment of the above medically supported restrictions and limitations are permanent. Reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for a progression of functional decline.

**4. Do medical records support any restrictions and limitations that were recommended by treating providers for the timeframes in question?**

Respectfully no. This reviewer disagrees with the recommendations for an off work status as opined by Dr. Carter prior to 10/06/2023. It is the opinion of this reviewer that the claimant had sustained full time work capacity (8hrs./day, 5 days/week) within the confines of the R&L as noted above through 10/05/2023.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

There are not any non-medical circumstances identified in the medical records that may adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the**

**occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.**

According to 10/06/2023 progress note, the claimants prescribed medications are as follows:

- Pantoprazole daily
- Ranolazine twice daily
- Advair Diskus
- Aspirin enteric coated
- Atorvastatin daily
- Buproprion daily
- Escitalopram daily
- Furosemide daily
- Levothyroxine daily
- Metformin daily
- Metoprolol succinate daily
- Tamsulosin daily
- Clopidogrel daily
- Nitroglycerin as needed

There was no documentation on review of the available treatment records to support the presence of side effects related to the claimant's medication regimen which would impact the claimants occupational functioning from 5/07/2022 to current.

**8. Do the medical records indicate restrictions/limitations that would prevent the claimant from performing on a reliable and consistent basis?**

It is the opinion of this reviewer that the medical records indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis as of 10/06/2023 to current and ongoing. Rationale is based on hospitalization and cardiac catheterization due to the claimant's symptom of chest pain. There has been no updated documentation evident to this reviewer to provide greater insight into the claimant's functional status after hospitalization. Therefore, it is the opinion of this reviewer that the claimant has no sustained work capacity at any level as of 10/06/2023 to current and beyond. This opinion is permanent based on the claimant's age and chronic nature of his cardiac conditions. Reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would

be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,



Robert A. Small, MD
Board-Certified in Internal Medicine
State Medical Licensure
IL: 036.071724

ECN
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
Exam Coordinators Network A division of Genex Services, LLC E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-3

"I, Robert A Small, MD, am a physician duly licensed to practice medicine in the State of ___IL__________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Robert A Small MD 12/13/2023
_______________________________________________________________________
Signature of Physician Date

Medical/Professional License # IL: 036.071724

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**December 13, 2023**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-2**

**Specialty: Psychiatry**

# Elbert Greer Richardson, MD

***Board-Certified in Psychiatry***

CLAIMANT NAME: Reynolds, William
EXAMINER: Elbert Greer Richardson, MD
ECN #: 225143-2
CLAIM #: 1220082997
DATE OF LOSS: 5/7/2022
DATE OF SERVICE: 12/13/2023

**Peer Review**

This is a peer review regarding Reynolds, William. I have been asked to review the medical records on behalf of ECN. I reviewed records from 11/11/2021 through 10/07/2023 including:

- J. Price McNamara / Attorney, extending from 01/12/2023 to 05/02/2023
- Jazleen Quintanilla / Notary Public, State of Texas, on 03/28/2023
- Jeanne J. May / Notary Public, on 04/19/2023
- Brittany Beck / Notary Public, State of Texas, on 04/21/2023
- Edgar Godinez Sanchez / Notary Public, State of Texas, on 04/21/2023
- Lenworth Ellis, MD, MPH / Internal Medicine and Occupational Medicine Consulting Physician, Clinical Review Memo, on 11/24/2022
- Steven Choi, DO / Psychiatry, Peer Review, on 12/12/2022
- Amy M., RN, CCM / LFG Nurse Disability Consultant, Appeal Nursing Memorandum, on 06/27/2023
- Pulin Patel, MD / Radiology, on 04/20/2022
- Clinton Carter, MD / Family Medicine, extending from 11/11/2021 to 03/27/2023
- Oscar Paniagua, MD / Cardiology, on 01/07/2022
- DRL Labs, extending from 02/21/2022 to 04/20/2022
- Clinical Pathology Laboratories, extending from 02/21/2022 to 04/20/2022
- Danyel Kush, FNP / Nurse Practitioner, extending from 02/21/2022 to 04/20/2022
- Peter Pitonak, MD / Cardiology, on 02/23/2022
- Rebecca Parker, FNP-C / Nurse Practitioner, on 06/21/2022
- Sarah Jordan, LPC / Licensed Professional Counselor, on 10/21/2022
- After Visit Summary, extending from 02/20/2023 to 05/12/2023
- Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine, on 04/06/2023
- Marina Flaskas, MD, FACC / Cardiology, extending from 05/12/2023 to 10/06/2023
- Kasi Addison, DO / Emergency Medicine, on 10/06/2023
- James G. Hoff, MD, FACC / Interventional Cardiology, extending from 10/06/2023 to 10/07/2023
- Michaela, RN / Nursing, on 10/07/2023
- Cassy, RN / Nursing, on 10/06/2023
- Genesis, RN / Nursing, on 10/07/2023

Following review of the available medical documentation, along with the treating provider's recommendation(s) for activity restrictions, there was sufficient information available to form an opinion as detailed below, and there was no need to consult the treating provider for clarification.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

04/28/22, Clinton Carter, MD / Family Medicine: The claimant reported he was placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion. He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. He was recommended time off work. He had a normal psychiatric exam.

07/26/22, Clinton Carter, MD / Family Medicine: The claimant attempted to return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed.

08/08/22, Attending Physician Statement by Clinton Carter, MD / Family Medicine: The claimant had a secondary diagnosis of acute stress reaction. He was documented to endorse a stress reaction with anxiety and worsening mental and physical fatigue, making it impossible for him to work. He was observed with flat affect, tearful, anxiety, and fatigue.

09/07/22, Clinton Carter, MD / Family Medicine: The claimant reported overwhelming anxiety at the thought of going to work. Dr. Carter noted the claimant was no longer able to do his job that required the complicated calculations and decision making. He had a normal psychiatric exam.

10/21/22, Attending Physician Statement by Sarah Jordan, LPC / Licensed Professional Counselor: The claimant reported anxiety and depression. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. Current diagnoses included other reactions to severe stress and adjustment disorder with mixed anxiety and depressed mood.

10/23/22, Clinton Carter, MD / Family Medicine: The claimant reported he just had a counseling session. He reported being in a funk. He had a PHQ-9 score of 7. He was started on Lexapro 10 mg.

11/08/22, Sarah Jordan, LPC / Licensed Professional Counselor: The claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On

04/22/22, he woke up with intrusive thoughts that he would die this day. He had been diagnosed with reactivity to severe stress and adjustment disorder with mixed anxiety and depressed mood.

12/12/22, Prior Review by Steven Choi, MD / Psychiatry: The claimant presented with complaints of anxiety and depression on 11/11/21 following cardiac surgery that he noted recovery exacerbated symptoms. He endorsed normal mental status exam findings. Overall, he appeared to lack severe psychiatric symptoms which would indicate the need for necessary restrictions and limitations.

03/27/23, Clinton Carter, MD / Family Medicine: The claimant's provider opined due to the medications he needed to be taking, he would not function well mentally and would experience clouded thinking, slow reaction time, and fatigue.

03/28/23, Affidavit: The claimant was in understanding that disability was result of heart attacks on 09/28/21 and 12/19/21. He documented medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. He noted struggling with concentration and required 3 or more breaks while doing complex comprehension activities in order to complete the tasks.

04/06/23, Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine: The claimant reported he was feeling better and had desire to do more things. He reported trazodone helping sleep. He had normal mental status exam.

05/02/23, Attorney Letter of Representation: The claimant obtained legal representation.

10/06/23, James G. Hoff, MD, FACC / Interventional Cardiology: The claimant had a normal psychiatric exam.

**DIAGNOSES:**

Other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, obesity

**RESPONSE TO QUESTIONS:**

1. Please identify the primary impairing Diagnosis(es) with ICD-10 Code(s).

F43.8 Other reactions to severe stress
F43.23 Adjustment disorder with mixed anxiety and depressed mood

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

N/A.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current, and comment on the expected duration.

No, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effect, the claimant does not have any supported level of impairment that translates into restrictions and limitations from 05/07/2022 to current.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

As the claimant's physical conditions are outside my scope of practice, I respectfully defer these to the appropriate specialty reviewer.

The claimant has a documented history of adjustment disorder with depressive and anxiety symptoms with severe stress reaction. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. The claimant was undergoing medication management with his primary care physician, Dr. Carter. On 04/28/22, he reported being placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. He endorsed a normal psychiatric exam. On 07/26/22, he reported attempt return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed. Dr. Carter completed an attending physician statement on 08/08/23 noting the claimant had observed symptoms of flat affect, tearful, anxiety, and fatigue. The claimant's therapist, LPC Sarah Jordan completed an attending physician statement on 10/21/23. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. On 10/23/22, the claimant was started on Lexapro 10 mg. LPC Jordan documented on 11/08/22 that the claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On 04/22/22, he woke up with intrusive thoughts that he would die this day. The claimant and Dr. Carter noted 03/27/23 and 03/28/23 that medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. On 04/06/23, Dr. Leffler documented the claimant had improved sleep on trazodone. He reported feeling better had having desire to do more things. The claimant endorsed a normal mental status exam.

Based on the information provided, there is no evidence of findings to suggest limitations in the claimant's status from 05/07/2022 to current from a mental health standpoint. While his symptoms of adjustment disorder with mixed anxiety and depression and severe stress reaction are acknowledged, they were not of such severity to impair his occupational functioning. The claimant and Dr. Carter opined inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits. Also, the claimant continued to be managed on Wellbutrin and Lexapro without report of adverse side effects resulting in required adjustments. The claimant endorsed unremarkable psychiatric examinations, in addition to PHQ-9 score of 7, reflecting symptom severity largely inconsistent with debilitating psychopathology. As it stands, progress notes from LPC Jordan or any other mental health provider were not available for review. The claimant also required no referral to a higher level of care, such as IOP, PHP, and hospitalization. Overall, considering the lack of measurable evidence the claimant endorsed impaired cognition, judgment, insight, or though process, restrictions and limitations are not supported.

**4. Do medical records support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question?**

No, medical records do not support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question.

Dr. Carter opined the claimant's inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts, child or elder care issues, or legal issues) that may adversely impact work?**

No, there are no non-medical circumstances identified in the medical records that may adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he suffers any side effects from the medications that he is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning, and any appropriate restrictions as noted by the physician due to noted side effects.**

No, based on the claimant`s medication list, there is no evidence that he suffers from any side effects from the medications that he is taking that would impact occupational functioning.

**8. Do the medical records indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis?**

No, the medical records do not indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis.

Sincerely,

**Elbert Greer Richardson, MD**
**ABPN Board Certification Psychiatry**
**American Board of Addiction Medicine**
**Medical License Number CT 037889**

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-2

"I, E. Greer Richardson, MD, am a physician duly licensed to practice medicine in the State of Connecticut. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_______________________________________________________________12/13/23__________________
Signature of Physician Date

Medical/Professional License # CT 037889

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**December 13, 2023**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-2**

**Specialty: Psychiatry**

# Elbert Greer Richardson, MD

***Board-Certified in Psychiatry***

CLAIMANT NAME: Reynolds, William
EXAMINER: Elbert Greer Richardson, MD
ECN #: 225143-2
CLAIM #: 1220082997
DATE OF LOSS: 5/7/2022
DATE OF SERVICE: 12/13/2023

**Peer Review**

This is a peer review regarding Reynolds, William. I have been asked to review the medical records on behalf of ECN. I reviewed records from 11/11/2021 through 10/07/2023 including:

- J. Price McNamara / Attorney, extending from 01/12/2023 to 05/02/2023
- Jazleen Quintanilla / Notary Public, State of Texas, on 03/28/2023
- Jeanne J. May / Notary Public, on 04/19/2023
- Brittany Beck / Notary Public, State of Texas, on 04/21/2023
- Edgar Godinez Sanchez / Notary Public, State of Texas, on 04/21/2023
- Lenworth Ellis, MD, MPH / Internal Medicine and Occupational Medicine Consulting Physician, Clinical Review Memo, on 11/24/2022
- Steven Choi, DO / Psychiatry, Peer Review, on 12/12/2022
- Amy M., RN, CCM / LFG Nurse Disability Consultant, Appeal Nursing Memorandum, on 06/27/2023
- Pulin Patel, MD / Radiology, on 04/20/2022
- Clinton Carter, MD / Family Medicine, extending from 11/11/2021 to 03/27/2023
- Oscar Paniagua, MD / Cardiology, on 01/07/2022
- DRL Labs, extending from 02/21/2022 to 04/20/2022
- Clinical Pathology Laboratories, extending from 02/21/2022 to 04/20/2022
- Danyel Kush, FNP / Nurse Practitioner, extending from 02/21/2022 to 04/20/2022
- Peter Pitonak, MD / Cardiology, on 02/23/2022
- Rebecca Parker, FNP-C / Nurse Practitioner, on 06/21/2022
- Sarah Jordan, LPC / Licensed Professional Counselor, on 10/21/2022
- After Visit Summary, extending from 02/20/2023 to 05/12/2023
- Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine, on 04/06/2023
- Marina Flaskas, MD, FACC / Cardiology, extending from 05/12/2023 to 10/06/2023
- Kasi Addison, DO / Emergency Medicine, on 10/06/2023
- James G. Hoff, MD, FACC / Interventional Cardiology, extending from 10/06/2023 to 10/07/2023
- Michaela, RN / Nursing, on 10/07/2023
- Cassy, RN / Nursing, on 10/06/2023
- Genesis, RN / Nursing, on 10/07/2023

Following review of the available medical documentation, along with the treating provider's recommendation(s) for activity restrictions, there was sufficient information available to form an opinion as detailed below, and there was no need to consult the treating provider for clarification.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

04/28/22, Clinton Carter, MD / Family Medicine: The claimant reported he was placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion. He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. He was recommended time off work. He had a normal psychiatric exam.

07/26/22, Clinton Carter, MD / Family Medicine: The claimant attempted to return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed.

08/08/22, Attending Physician Statement by Clinton Carter, MD / Family Medicine: The claimant had a secondary diagnosis of acute stress reaction. He was documented to endorse a stress reaction with anxiety and worsening mental and physical fatigue, making it impossible for him to work. He was observed with flat affect, tearful, anxiety, and fatigue.

09/07/22, Clinton Carter, MD / Family Medicine: The claimant reported overwhelming anxiety at the thought of going to work. Dr. Carter noted the claimant was no longer able to do his job that required the complicated calculations and decision making. He had a normal psychiatric exam.

10/21/22, Attending Physician Statement by Sarah Jordan, LPC / Licensed Professional Counselor: The claimant reported anxiety and depression. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. Current diagnoses included other reactions to severe stress and adjustment disorder with mixed anxiety and depressed mood.

10/23/22, Clinton Carter, MD / Family Medicine: The claimant reported he just had a counseling session. He reported being in a funk. He had a PHQ-9 score of 7. He was started on Lexapro 10 mg.

11/08/22, Sarah Jordan, LPC / Licensed Professional Counselor: The claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On

04/22/22, he woke up with intrusive thoughts that he would die this day. He had been diagnosed with reactivity to severe stress and adjustment disorder with mixed anxiety and depressed mood.

12/12/22, Prior Review by Steven Choi, MD / Psychiatry: The claimant presented with complaints of anxiety and depression on 11/11/21 following cardiac surgery that he noted recovery exacerbated symptoms. He endorsed normal mental status exam findings. Overall, he appeared to lack severe psychiatric symptoms which would indicate the need for necessary restrictions and limitations.

03/27/23, Clinton Carter, MD / Family Medicine: The claimant's provider opined due to the medications he needed to be taking, he would not function well mentally and would experience clouded thinking, slow reaction time, and fatigue.

03/28/23, Affidavit: The claimant was in understanding that disability was result of heart attacks on 09/28/21 and 12/19/21. He documented medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. He noted struggling with concentration and required 3 or more breaks while doing complex comprehension activities in order to complete the tasks.

04/06/23, Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine: The claimant reported he was feeling better and had desire to do more things. He reported trazodone helping sleep. He had normal mental status exam.

05/02/23, Attorney Letter of Representation: The claimant obtained legal representation.

10/06/23, James G. Hoff, MD, FACC / Interventional Cardiology: The claimant had a normal psychiatric exam.

**DIAGNOSES:**

Other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, obesity

**RESPONSE TO QUESTIONS:**

1. Please identify the primary impairing Diagnosis(es) with ICD-10 Code(s).

F43.8 Other reactions to severe stress
F43.23 Adjustment disorder with mixed anxiety and depressed mood

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

N/A.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current, and comment on the expected duration.

No, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effect, the claimant does not have any supported level of impairment that translates into restrictions and limitations from 05/07/2022 to current.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

As the claimant's physical conditions are outside my scope of practice, I respectfully defer these to the appropriate specialty reviewer.

The claimant has a documented history of adjustment disorder with depressive and anxiety symptoms with severe stress reaction. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. The claimant was undergoing medication management with his primary care physician, Dr. Carter. On 04/28/22, he reported being placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. He endorsed a normal psychiatric exam. On 07/26/22, he reported attempt return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed. Dr. Carter completed an attending physician statement on 08/08/23 noting the claimant had observed symptoms of flat affect, tearful, anxiety, and fatigue. The claimant's therapist, LPC Sarah Jordan completed an attending physician statement on 10/21/23. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. On 10/23/22, the claimant was started on Lexapro 10 mg. LPC Jordan documented on 11/08/22 that the claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On 04/22/22, he woke up with intrusive thoughts that he would die this day. The claimant and Dr. Carter noted 03/27/23 and 03/28/23 that medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. On 04/06/23, Dr. Leffler documented the claimant had improved sleep on trazodone. He reported feeling better had having desire to do more things. The claimant endorsed a normal mental status exam.

Based on the information provided, there is no evidence of findings to suggest limitations in the claimant's status from 05/07/2022 to current from a mental health standpoint. While his symptoms of adjustment disorder with mixed anxiety and depression and severe stress reaction are acknowledged, they were not of such severity to impair his occupational functioning. The claimant and Dr. Carter opined inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits. Also, the claimant continued to be managed on Wellbutrin and Lexapro without report of adverse side effects resulting in required adjustments. The claimant endorsed unremarkable psychiatric examinations, in addition to PHQ-9 score of 7, reflecting symptom severity largely inconsistent with debilitating psychopathology. As it stands, progress notes from LPC Jordan or any other mental health provider were not available for review. The claimant also required no referral to a higher level of care, such as IOP, PHP, and hospitalization. Overall, considering the lack of measurable evidence the claimant endorsed impaired cognition, judgment, insight, or though process, restrictions and limitations are not supported.

**4. Do medical records support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question?**

No, medical records do not support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question.

Dr. Carter opined the claimant's inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts, child or elder care issues, or legal issues) that may adversely impact work?**

No, there are no non-medical circumstances identified in the medical records that may adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he suffers any side effects from the medications that he is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning, and any appropriate restrictions as noted by the physician due to noted side effects.**

No, based on the claimant`s medication list, there is no evidence that he suffers from any side effects from the medications that he is taking that would impact occupational functioning.

**8. Do the medical records indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis?**

No, the medical records do not indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis.

Sincerely,

**Elbert Greer Richardson, MD**
**ABPN Board Certification Psychiatry**
**American Board of Addiction Medicine**
**Medical License Number CT 037889**

ECN
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
Exam Coordinators Network A division of Genex Services, LLC
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-2

"I, E. Greer Richardson, MD, am a physician duly licensed to practice medicine in the State of Connecticut. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_______________________________________________12/13/23________________
Signature of Physician Date

Medical/Professional License # CT 037889

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

**December 13, 2023**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-3**

**Specialty: Internal Medicine**

**Robert A. Small, MD**
***Board-Certified in Internal Medicine***

**Claimant Name:** William Reynolds
**Date of Birth:**
**ECN #:** 225143-3
**Claim #:** 1220082997
**Date of Service:** 12/13/2023

**PEER REVIEW**

**MEDICAL INFORMATION REVIEWED**

- 01/07/2022 – Christus Health – Echocardiogram
- 02/21/2022 – 10/07/2023 – Lab Reports
- 02/22/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 02/23/2022 – Trinity Clinic Cardiology – ECG – Peter Pitonak, M.D.
- 03/15/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 03/15/2022 – ECG
- 04/20/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP
- 04/20/2022 – Tyler Open MRI – X-ray of the Chest – Pulin Patel, M.D.
- 04/28/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 05/05/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.
- 06/21/2022 – MyMD Select Tyler – Office Visit Note – Rebecca Parker, FNP
- 07/26/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 07/26/2022 – Lincoln Financial Group – Short Term Continuance of Disability
- 08/08/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.
- 09/07/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 09/09/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 10/21/2022 – Lincoln Financial Group – Behavioral Health Disability Claim Form Treating Provider Statement – Sarah Jordan, LPC
- 10/23/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.
- 11/24/2022 – Clinical Review Memo – Lenworth Ellis, M.D.
- 11/24/2022 – Letter – Lenworth Ellis, M.D.
- 12/12/2022 – Peer Review – Steven Choi, D.O.
- 02/20/2023 – UT Health East Texas Pulmonary Institute – After Visit Summary – C Wang-Kocik, M.D.
- 03/27/2023 – Letter – Clinton Carter, M.D.
- 03/27/2023 – Physician's Recommended Restrictions – Clinton Carter, M.D.
- 04/06/2023 – History and Physical – Lisa Leffler, M.D.
- 05/12/2023 – Progress Note – Marina Flaskas, M.D.
- 06/26/2023 – Progress Note – Marina Flaskas, M.D.
- 06/27/2023 – Lincoln Financial Group – Appeal Nursing Memorandum – Amy M., RN
- 10/06/2023 – Progress Note – Marina Flaskas, M.D.
- 10/06/2023 – Emergency Department Note – Kasi Addison, M.D.

- 10/06/2023 – History and Physical – James G. Hoff, M.D.
- 10/06/2023 – Operative Note – James G. Hoff, M.D.
- 10/06/2023 – Cardiac Catheterization – James G. Hoff, M.D.
- 10/07/2023 – Progress Note – Michaela, RN
- 10/07/2023 – Discharge Summary – James G. Hoff, M.D.

**CLINICAL SYNOPSIS**

The claimant is a 70-year-old male retail project analyst. He is diagnosed with other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression and obesity.

**DIAGNOSTIC REPORTS**

01/07/2022 – Christus Health – Echocardiogram:
1. Normal left ventricular size.
2. Abnormal diastolic function is noted.
3. The visually estimated ejection fraction Is 65%.
4. There is no evidence of regional wall motion abnormalities.
5. There is trace mitral valve regurgitation.
6. The right ventricular systolic pressure is normal.

02/23/2022 – Trinity Clinic Cardiology – ECG – Peter Pitonak, M.D.:
1. Sinus rhythm with first degree av block.
2. Right axis deviation.
3. Possible inferior myocardial infarction.
4. Abnormal ECG.

03/15/2022 – ECG:
1. Sinus rhythm (slow).
2. First degree AV block (limited).
3. Slight high-lateral repolarization disturbance, consider ischemia, LV overload or a specific change.
4. Borderline ECG.

04/20/2022 – Tyler Open MRI – X-ray of the Chest – Pulin Patel, M.D.:
1. Scattered interstitial opacities due to edema or infiltrate.

10/06/2023 – Cardiac Catheterization – James G. Hoff, M.D.:
Emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction is 65%, left ventricular end diastolic pressure is 13 mm Hg.

**LAB REPORTS**

02/21/2022 – Lab Report:
Hemoglobin A1c: 5.8, Result: High.
Estimated Average Glucose: 120, Result: High.

TSH, Third Generation: 8.250, Result: High.
Vitamin-D, 25 OH: 26, Result: Low.

05/12/2023 – Lab Report:
ALT: 75, Result: High.
AST: 60, Result: High.

04/20/2022 – Lab Report:
Absolute Lymphocytes: 0.61, Result: Low.
Hemoglobin A1C: 5.7, Result: High.

10/06/2023 – Lab Report:
Neutrophils%: 73.5, Result: High.
Lymphocytes%: 14.8, Result: Low.
Lymphocytes#:0.90, Result: Low.
Sodium: 133, Result: Low.
Osmolality, Calculated: 268, Result: Low.

10/07/2023 – Lab Report:
Sodium: 133, Result: Low.
Chloride: 99, Result: Low.

**OFFICE VISITS**

02/22/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant presents to have labs drawn and a urine sample. He tolerated well with no complaints.

03/15/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant presents for the lab review, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1C, obstructive sleep apnea, low vitamin D, coronary artery disease and hypothyroid. He has been on metoprolol for the last two years and is stable but feels like he is slightly more tired than normal. He has some nocturia but is manageable. He has been more tired recently with time change and has been using temazepam nightly and using CPAP. He is being followed by cardiology closely. He had double bypass on 10/02/2021, then after completing cardiac rehab had a stent placed on 11/19/2021. He was seen two weeks ago by cardiologist and told he needs to walk at least 30 minutes a day. He did not want to do cardiac rehab. He is trying to walk daily for 30 minutes a day. He feels more tired some days than others. The diagnosis is preventive health care, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated hemoglobin A1c, obstructive sleep apnea, low vitamin D level, coronary artery disease, and hypothyroid. Recommended to continue wearing CPAP. Increased levothyroxine to 75 mcg. Ordered labs.

04/20/2022 – MyMD Select Tyler – Office Visit Note – Danyel Kush, FNP:
The claimant has been having an increased feeling of fatigue for the last seven months. He feels since CABG (coronary artery bypass graft) in December he has not felt the same. Prior to that he has was placed on Lexapro in October, but he feels like that with the Wellbutrin has made him feel flatter and no emotion. He endorses anhedonia, increased sleep, decreased appetite and at times has feelings of sadness. He has tried to wean off Wellbutrin in the past, but it did not feel right. He is also concerned that his thyroid level is causing his fatigue. He sleeps well and uses CPAP; most nights feel rested. His wife has noticed that he is hot himself. He has sore throat, dry cough, and headache for the last three days. He feels like the shortness of breath is slightly worse over the last three days with occasional wheeze. He has declined cardiac rehab in the past since coronary artery bypass graft. He feels that after he did its last time that is what cause last heart attack, and he just does not feel motivated and feels lazy to do it. He has been trying to walk 30 min

a day and do some yard work, but reports have to stop frequently as it causes increased frustration in him. He has major depressive disorder.

04/28/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant had a heart attack and had bypass surgery in September/October. He was doing cardiac rehab and then had another small heart attack requiring a stent to the anastomosis of the LIMA to the LAD which has greatly inhibited his ability/motivation to do cardiac rehab. It also halted the process he was making with depression. He went back to work as soon as possible both times, as he feels that he is the only one that really knows how to do his job. He has been under increased scrutiny at work since returning the second time as he is making more mistakes. He feels that there is more volume, so mistakes appear more frequent without an increase in the low% of mistakes made but fears that he now has the reputation of being mistake prone instead of the one people went to with problems. He feels extra pressure and is second guessing himself which slows him down and likely causes more mistakes. He had several anxiety attacks prior to going to work where he was sure that he was going to die that day but fortunately nothing physically deleterious took place. He does not feel that he really recovered from the two heart attacks, or the subsequent depression/anxiety and he is having difficulty fulfilling his work obligations. He needs to stop and do the physical and mental rehab that is necessary to function at his current position. The diagnosis is major depressive disorder. His major depressive disorder is greatly exacerbated by the open-heart surgery and then the secondary heart attack and complicated by incomplete rehab and amplified by increased pressure at work as the workload changes and increases. Recommended some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling, meds and exercise, etc. FMLA paper is delivered by him to be filled out.

05/05/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.:
The claimant had acute myocardial infarction in October 2021 with coronary artery bypass graft. His rehab got interrupted by a second myocardial infarction with a stent. He returned to work without mental/physical recovery. The acute stress and physical fatigue are making him unable to work. His symptoms include flat affect and is fearful while entering the office. His reduced ability to work was on 01/01/2022 and he was advised to stop working on 04/28/2022. The diagnosis is coronary artery bypass graft and acute stress reaction. His prognosis is good. Recommended cardiac rehab, physical therapy, and mental health counseling. He can return to work between 07/18/2022 – 08/01/2022. (Illegible handwritten record).

06/21/2022 – MyMD Select Tyler – Office Visit Note – Rebecca Parker, FNP:
The claimant has low back pain that started last week but was much worse yesterday. The pain is worse when he twists or steps down wrong and when trying to turn on side in bed. He has done some yards work this past week but does not recall any specific movement that caused the pain. He had a lumbar strain on the same side about 14 years ago that got improved with one-week bed rest. The physical examination revealed tenderness over lumbar paraspinal, mostly tender over SI joint. The straight leg is positive on left. The diagnosis is lumbago. Prescribed Tylenol, Voltaren gel, and Flexeril 10 mg.

07/26/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant follows up for coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. He has been on short term disability for further physical and mental rehab for almost 12 weeks. The short-term disability company stopped paying at 10 weeks and he needs a continuance form filled out today. He has been slowly progressing in his physical endurance, shortness of breath and ability to do activities of daily living. He is gradually improving with depression and anxiety. He still feels anxious about returning to his position and is due to speak with JSF/HR to discuss options. He did not feel that Lexapro was helping so he stopped it and is still on Wellbutrin 300 mg. He feels that he is gradually improving (depression). He still has minimal libido, and his wife is nervous about that level of exertion. She is also not comfortable with him being outside alone. He only needs Xanax 3-4 times per month. The

diagnosis is coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. Recommended to continue medication, physical and mental rehab. His short-term disability form has been filled in and is extended until 0/01/2022. Recommended to continue levothyroxine 75 mcg, Wellbutrin and temazepam.

07/26/2022 – Lincoln Financial Group – Short Term Continuance of Disability:
The claimant has acute myocardial infarction with coronary artery bypass graft then blocked graft with second myocardial infarction and stent that interrupted cardiac rehab and caused depression, fatigue, and decreased concentration. He cannot perform duties due to concentration and short-term memory. He is restricted from performing high level analysis. He is working on returning if possible and is following with employer as well.

08/08/2022 – Lincoln Financial Group – Short Term Disability Claim Form Physician's Statement – Clinton Carter, M.D.:
The claimant is unable to return to work due to mental and physical deconditioning which ultimately caused a stress reaction with anxiety and worsening mental and physical fatigue as well as anxiety and making it impossible for him to work. After completing a full round of short-term disability, he is still not able to return to his position due to complex mental requirements and the high stress environment of his job. The physical examination revealed flat affect, tearful, anxiety and DOE and fatigue with walking in office. The diagnosis is coronary bypass graft and acute stress reaction. He is restricted in physical exertion, complex decision making especially in high stress environments and high stress. He is unable to return to work.

09/07/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant is not going to be able to return to work. He gets overwhelming anxiety at the thought of it and at the thought of going on property. He has been gradually increasing his exercise capacity at home, under the close supervision of his wife. He feels that he needed to work longer as he had planned in order to afford to retire. He is unfortunately unable to return to work and it puts him in a financial bind. He is hoping to qualify for long term disability in order to make up for the lost wages due to his medical disability. The diagnosis is disability due to neurological disorder. He needs disability to afford to stop working at this time. Long term disability paperwork will be filled out when available.

09/09/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant has a history of coronary artery bypass graft, and he is gradually recovering. His wife does not let him work in the yard on his own. He has a stress reaction. He cannot return to work. He gets anxiety just thinking about trying to resume his job. He got anxious meeting them at the gate to pick up some of his things. He had definitely planned on working for several more years. He continues to address anxiety. The diagnosis is other reaction to severe stress and history of coronary artery bypass graft. The long-term disability will be filled out, Follow-up with cardiologist.

10/21/2022 – Lincoln Financial Group – Behavioral Health Disability Claim Form Treating Provider Statement – Sarah Jordan, LPC:
The claimant has anxiety and depression. The anxiety he experiences makes decision making and complex problem solving extremely difficult. He experiences anxiety at the job location. He has increased anxiety, and he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and concentrate. The physical examination revealed an anxious and depressed mood. Recommended cognitive behavioral therapy 2 times a week for 6 weeks.

10/23/2022 – MyMD Select Tyler – Office Visit Note – Clinton Carter, M.D.:
The claimant presents via telemedicine. He has depression and major depressive disorder. He has been in a funk. He just had his second counseling session with Sarah Jorden. His PHQ-9 score is 7 (mild depression).

The diagnosis is major depressive disorder. Prescribed Lexapro 10 mg. Recommended to continue Wellbutrin XL 300 mg Follow up in 1-2 months.

02/20/2023 – UT Health East Texas Pulmonary Institute – After Visit Summary – C Wang-Kocik, M.D.:
The claimant presents for sleep apnea. Follow up in three months.

03/27/2023 – Letter – Clinton Carter, M.D.:
The physician is familiar with his overall medical condition and his medication regimen. He has reviewed the attached affidavit of this claimant. The statements that he makes in his affidavit regarding his physical condition, limitations and the effects of his condition are credible, consistent with and expected given his overall medical condition and the physician's objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date. His statements regarding prescribed medication and its side-effects are also consistent with common side-effects of the prescribed medication. His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary. Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain and is not recommended and will be detrimental to and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve and rather are expected to continue to become worse with time. It is the physician, opinion that he is disabled from any type of gainful employment.

03/27/2023 – Physician’s Recommended Restrictions – Clinton Carter, M.D.:
The claimant can walk less than 1 hour due to cardiovascular limitations and medication side effects. He can stand up to less than 1 hour due to less stamina and balance. He can sit up to 2 hours due to drowsiness, stiffness and pain due to osteoarthritis. He should not be expected to be present for more than 1 total hour per day of the nine-hour workday. His medical condition is expected to cause absences from work, these absences can be 100% per month. He can occasionally lift/carry less than 10 lbs. for 1/3 of the day and frequently lift/carry less than 10 lbs. for 2/3 of the day. The medical conditions lift his ability to lift/carry are stamina, balance, and fatigue. He can use hands for repetitive movements in simple grasp and handling and push and pull and operating foot controls but cannot do fine manipulation and fingering due to arthritis. The medical condition limits his ability to use feet is limitation in sitting/standing. He is able to occasionally bend, climb stairs, reach above shoulder level, and operate machinery. He can never kneel, squat, crawl, climb ladders or work from heights. Dizziness, balance, and fatigue limit his ability to engage in the above activities. He should avoid engaging in any activities that cause severe pain. (Illegible handwritten records).

04/06/2023 – History and Physical – Lisa Leffler, M.D.:
The claimant presents with a complaint of depression. He reports improvement in mood and activities. The diagnosis is an encounter for annual general medical examination with abnormal findings in adult, moderate recurrent major depressive disorder, congestive heart failure, morbid obesity, BMI 38.0-38.9, adult, chronic obstructive pulmonary disease, paroxysmal A-fib, benign prostatic hyperplasia, controlled diabetes mellitus with diabetic polyneuropathy, acquired absence of the left finger, hypothyroid and hyperlipidemia. Recommended to continue Lexapro 10 mg, trazodone 100 mg, metoprolol succinate 25 mg, tamsulosin 0.4 mg and metformin 500 mg. Follow up with primary care physician.

05/12/2023 – Progress Note – Marina Flaskas, M.D.:
The claimant has worsening shortness of breath with exertion. He reports doing well in medical management. He reports that he would like to exercise more but shortness of breath stops him from activity. He was seen by a Pulmonary specialist and diagnosed with COPD. Since he started on inhalers, he is doing

significantly better concerning shortness of breath but not all back to baseline. Abnormal ECG was obtained in the office concerning ST elevation and depression in anterolateral leads. The diagnosis is dyspnea with exertion, coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021, Diastolic dysfunction, mixed dyslipidemia, obesity, angina at rest, primary hypertension, mixed hyperlipidemia and dyspnea on exertion. Ordered left heart catheterization. Prescribed Imdur 30 mg. Ordered labs.

06/26/2023 – Progress Note – Marina Flaskas, M.D.:
The claimant reports improvement in dyspnea on exertion after PCi to PDA. The diagnosis is coronary artery disease due to lipid-rich plaque, primary hypertension, mixed hyperlipidemia, status post coronary artery bypass graft X 2, dyspnea with exertion, coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021, diastolic dysfunction, mixed dyslipidemia, and obesity.

06/27/2023 – Lincoln Financial Group – Appeal Nursing Memorandum – Amy M., RN:
The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder with anxiety and depression related to his cardiac condition. The claimant is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine). There are no mental status exams documenting impaired psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) with noted improvements. Additional treatment includes psychotherapy by Jorden LPC however there is a significant gap in treatment from 12/01/2021-10/13/2022. Mental status exams are normal except noted anxious mood. From a mental health standpoint, although the claimant reports stress and anxiety that appears to specific to returning to the workplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that would support restrictions or limitations from 05/07/2022 and forward. All examinations, claimant is noted to be alert and oriented without documentation of cognitive slowing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and the claimant did not require a higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that would change the prior determination. NDC agrees with prior peer review. The medical records document ongoing care and treatment following coronary artery bypass graft and stent placement in 2021 associated with fatigue and shortness of breath with exertion. The claimant has a history of multiple medical conditions that are stable with medication management and CPAP. There are no documented side effects to any medications. Most recent ECHO 01/06/2022 showed normal ejection fraction. The claimant is treated by Dr. Carter (Family Medicine) without significant exam findings. His oxygen level is consistently normal. The records also indicate claimant is followed by cardiology and he is noted to be doing well from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries without clinical exam findings or treatment plans. During a follow-up visit on 05/12/2023 with Dr. Flakas (Cardiology), he reports dyspnea with exertion. He also noted a recent diagnosis of COPD treated with inhalers with significant improvements. The exam is unremarkable, however, he required hospitalization 05/12/2023-05/14/2023 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or with activity with symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated hypotension, pulmonary and dependent edema, dizziness, vertigo, witnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that would translate into a functional impairment 05/07/2022 and forward except during most recent hospitalization and diagnostic testing. The restrictions/limitations outlined in detail by peer reviewer Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

10/06/2023 – Progress Note – Marina Flaskas, M.D.:

The claimant reports compliance with dual antiplatelet therapy. Two weeks ago, had chest pains and tightness as pressure. The diagnosis is primary hypertension, coronary artery disease involving the native coronary artery of the native heart with angina pectoris and mixed hyperlipidemia.

10/06/2023 – Emergency Department Note – Kasi Addison, M.D.:
The claimant presents due to an abnormal ECG. He is seen by his cardiologist, Dr. Flaskas, this morning for a follow-up secondary to stent placement in May. He has been informed of an abnormal EKG and prompted to catheterization for further care. He does sleep with a CPAP machine. The physical examination revealed he is obese. He has a midline sternotomy scar. The diagnosis is an abnormal EKG. Ordered labs.

10/06/2023 – History and Physical – James G. Hoff, M.D.:
The claimant has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention, and he continues to have electrocardiogram changes. Recommended cardiac catheterization.

10/07/2023 – Progress Note – Michaela, RN:
The claimant's right groin dressing remains clean, dry, and intact. No complaints of pain since arrival to unit.

10/07/2023 – Discharge Summary – James G. Hoff, M.D.:
The claimant at the time of discharge, he does not have chest pain that sounds cardiac in nature. The diagnosis is ST elevation on electrocardiogram without active chest pain and a history of coronary atherosclerotic heart disease. Prescribed Protonix 40 mg and Ranexa 500 mg.

**Questions to be addressed:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s).**

Other reactions to severe stress, F43.8 –detailed discussion related to this condition is deferred as it is outside the scope of this review.
Coronary artery disease, I25.10
Physical deconditioning/other malaise, R53.81
Adjustment disorder with mixed anxiety and depression, F43.23–detailed discussion related to this condition is deferred as it is outside the scope of this review.
Obesity, E66*

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Atrial fibrillation, I48.1
Hypothyroidism, E03.9
Insomnia, G47.0

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current, and comment on the expected duration.**

The claimant is a 70-year-old male retail project analyst who is managed for the conditions of other reactions to severe stress, coronary artery disease, physical deconditioning/other malaise, adjustment disorder with mixed anxiety and depression, and obesity. Any detailed discussion related to the claimant's psychiatric symptoms and/or conditions related to potential impairments are deferred as they remain outside the scope of this review. Therefore, this reviewer defers any discussion related to the conditions of other reactions to severe stress and adjustment disorder with mixed anxiety and depression. The claimant is managed for the medical comorbid conditions of atrial fibrillation, hypothyroidism, and insomnia. On 01/07/2022, the claimant underwent an echocardiogram which revealed the following impressions:

Normal left ventricular size.
Abnormal diastolic function is noted.
The visually estimated ejection fraction Is 65%.
There is no evidence of regional wall motion abnormalities.
There is trace mitral valve regurgitation.
The right ventricular systolic pressure is normal.

On office visit note dated 04/20/2022, Danyel Kush, FNP evaluated the claimant for several month history of fatigue. The claimant reported he has not felt the same since his CABG (coronary artery bypass graft) in December. The claimant started on Lexapro in October prior to his CABG, but he feels like that with the Wellbutrin has made him feel flatter and no emotion. He endorses anhedonia, increased sleep, decreased appetite and at times has feelings of sadness. He has tried to wean off Wellbutrin in the past, but it did not feel right. He is also concerned that his thyroid level is causing his fatigue. He sleeps well and uses CPAP; most nights feel rested. His wife has noticed that he is hot himself. He has sore throat, dry cough, and headache for the last three days. He feels like the shortness of breath is slightly worse over the last three days with occasional wheeze. He has declined cardiac rehab in the past since coronary artery bypass graft. He feels that after he did its last time that is what cause last heart attack, and he just does not feel motivated and feels lazy to do it. He has been trying to walk 30 min a day and do some yard work, but reports have to stop frequently as it causes increased frustration in him. He has major depressive disorder.

5/5/2022 short term disability claim form physician's statement notes the claimant had acute myocardial infarction in October 2021 with coronary artery bypass graft. His rehab got interrupted by a second myocardial infarction with a stent. On office visit dated 07/26/2022, Dr. Carter evaluated the claimant in follow up for ongoing management of the conditions of coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. He has been slowly progressing in his physical endurance, shortness of breath and ability to do activities of daily living. Office visit note with Dr. Carter dated 9/07/2022 notes the claimant has been gradually increasing his exercise capacity at home, under the close supervision of his wife. Dr. Carter opined the claimant was unable to return to work.

On 3/27/2023, Dr. Carter authored a letter. Due to the claimant's physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full-time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain and is not recommended and will be detrimental to and exacerbate his condition and pain. Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time, and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks. His abilities, physical limitations, and conditions are not expected to improve and rather are expected to continue to become worse with time. It is the physician, opinion that he is disabled from any type of gainful employment.

Office visit note dated 5/12/2023 with Dr. Flaskas notes the claimant is experiencing worsening shortness of breath with exertion. The claimant would like to exercise more than he is currently, however, his shortness of breath stops him from activity. He was seen by a Pulmonary specialist and diagnosed with COPD. Since he started on inhalers, he is doing significantly better concerning shortness of breath but not all back to baseline. Abnormal ECG was obtained in the office concerning ST elevation and depression in anterolateral leads. The diagnosis is dyspnea with exertion, coronary artery disease, status post

aortocoronary bypass surgery, LIMA to LAD in December 2021, Diastolic dysfunction, mixed dyslipidemia, obesity, angina at rest, primary hypertension, mixed hyperlipidemia and dyspnea on exertion. Ordered left heart catheterization. Prescribed Imdur 30 mg. Ordered labs.

On 10/06/2023, Dr. Flaskas reports the claimant developed chest pains and tightness approximately 2 weeks ago. The diagnosis is primary hypertension, coronary artery disease involving the native coronary artery of the native heart with angina pectoris and mixed hyperlipidemia. The claimant presented to the emergency department on 10/06/2023 and was evaluated by Dr. Addison. EKG performed and noted to be abnormal. Recommendations were made for cardiac catheterization. The physical examination revealed he is obese. He has a midline sternotomy scar. On 10/06/2023, Dr. Hoff performed cardiac catheterization due to dynamic ST elevation on the electrocardiogram revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction is 65%, left ventricular end diastolic pressure is 13 mm Hg. The claimant was discharged to home on 10/07/2023 with prescriptions for chest pain, coronary atherosclerotic heart disease. Prescribed Protonix 40 mg and Ranexa 500 mg.

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, the supported level of impairment translates into restrictions and limitations from 05/07/2022 to 10/05/2023 of:

The claimant is managed for the conditions of coronary artery disease, physical deconditioning/other malaise, and obesity.
Sitting: Constant
Standing: Occasional
Walking: Occasional

To avoid potential temporary exacerbation of symptoms due to coronary artery disease, physical deconditioning/other malaise, and obesity.
Bilateral Upper Extremities-
-Lifting: Occasional, up to 10lbs., utilizing both upper extremities together
-Pushing: Occasional, up to 10lbs., utilizing both upper extremities together
-Pulling: Occasional, up to 10lbs., utilizing both upper extremities together
-Carrying: Occasional, up to 10lbs., utilizing both upper extremities together

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Unrestricted, bilateral
-Below waist level: Occasional, bilateral

There were no significant findings associated with upper extremity pain or motor deficits, below the level of the shoulders bilaterally based on review of the available treatment records.
Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger: Unrestricted, bilateral
-Handle: Unrestricted, bilateral
-Feel: Unrestricted, bilateral

The claimant is managed for the conditions of coronary artery disease, physical deconditioning/other malaise, and obesity.
Climbing stairs: Occasional
Balancing: Never
Stooping: Never
Bending: Never
Kneeling: Never
Crouching: Never
Crawling: Never
Ladder climbing: Never
Lower extremities for foot controls- Occasional, bilateral

As of 10/06/2023 to present and ongoing, it is the opinion of this reviewer that the claimant has no sustainable work capacity at any level and is totally restricted from all work-related duties. Rationale is based on the presence of chest pain and tightness resulting in inpatient hospitalization. The claimant required cardiac catheterization as a result of symptoms. The claimant's medications were adjusted. There has been no updated information to provide insight into the claimant's current functional status. Therefore, it is the opinion of this reviewer, given extensive cardiac history, inpatient hospitalization requiring cardiac procedure, and advancing age, the claimant is totally restricted from any work-related duties as of 10/06/2023 to present and ongoing. This reviewer's assessment of the above medically supported restrictions and limitations are permanent. Reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for a progression of functional decline.

**4. Do medical records support any restrictions and limitations that were recommended by treating providers for the timeframes in question?**

Respectfully no. This reviewer disagrees with the recommendations for an off work status as opined by Dr. Carter prior to 10/06/2023. It is the opinion of this reviewer that the claimant had sustained full time work capacity (8hrs./day, 5 days/week) within the confines of the R&L as noted above through 10/05/2023.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

There are not any non-medical circumstances identified in the medical records that may adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the**

**occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.**

According to 10/06/2023 progress note, the claimants prescribed medications are  as follows:

- Pantoprazole daily
- Ranolazine twice daily
- Advair Diskus
- Aspirin enteric coated
- Atorvastatin daily
- Buproprion daily
- Escitalopram daily
- Furosemide daily
- Levothyroxine daily
- Metformin daily
- Metoprolol succinate daily
- Tamsulosin daily
- Clopidogrel daily
- Nitroglycerin as needed

There was no documentation on review of the available treatment records to support the presence of side effects related to the claimant's medication regimen which would impact the claimants occupational functioning from 5/07/2022 to current.

**8. Do the medical records indicate restrictions/limitations that would prevent the claimant from performing on a reliable and consistent basis?**

It is the opinion of this reviewer that the medical records indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis as of 10/06/2023 to current and ongoing. Rationale is based on hospitalization and cardiac catheterization due to the claimant's symptom of chest pain. There has been no updated documentation evident to this reviewer to provide greater insight into the claimant's functional status after hospitalization. Therefore, it is the opinion of this reviewer that the claimant has no sustained work capacity at any level as of 10/06/2023 to current and beyond. This opinion is permanent based on the claimant's age and chronic nature of his cardiac conditions. Reevaluation of the claimant's functional status 6 months from the date of this report would appear applicable to evaluate for progression of functional decline.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would

be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Robert A Small MD

Robert A. Small, MD
Board-Certified in Internal Medicine
State Medical Licensure
IL: 036.071724

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-3

"I, Robert A Small, MD, am a physician duly licensed to practice medicine in the State of ___IL__________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Robert A Small MD 12/13/2023

______________________________________________

Signature of Physician Date

Medical/Professional License # IL: 036.071724

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**December 13, 2023**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: other reactions to sever stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression. obesity**

**DOD: 5/7/2022**

**DOR: 12/4/2023**

**Job Title: management analyst**

**ECN #: 225143-2**

**Specialty: Psychiatry**

# Elbert Greer Richardson, MD

***Board-Certified in Psychiatry***

CLAIMANT NAME: Reynolds, William
EXAMINER: Elbert Greer Richardson, MD
ECN #: 225143-2
CLAIM #: 1220082997
DATE OF LOSS: 5/7/2022
DATE OF SERVICE: 12/13/2023

**Peer Review**

This is a peer review regarding Reynolds, William. I have been asked to review the medical records on behalf of ECN. I reviewed records from 11/11/2021 through 10/07/2023 including:

- J. Price McNamara / Attorney, extending from 01/12/2023 to 05/02/2023
- Jazleen Quintanilla / Notary Public, State of Texas, on 03/28/2023
- Jeanne J. May / Notary Public, on 04/19/2023
- Brittany Beck / Notary Public, State of Texas, on 04/21/2023
- Edgar Godinez Sanchez / Notary Public, State of Texas, on 04/21/2023
- Lenworth Ellis, MD, MPH / Internal Medicine and Occupational Medicine Consulting Physician, Clinical Review Memo, on 11/24/2022
- Steven Choi, DO / Psychiatry, Peer Review, on 12/12/2022
- Amy M., RN, CCM / LFG Nurse Disability Consultant, Appeal Nursing Memorandum, on 06/27/2023
- Pulin Patel, MD / Radiology, on 04/20/2022
- Clinton Carter, MD / Family Medicine, extending from 11/11/2021 to 03/27/2023
- Oscar Paniagua, MD / Cardiology, on 01/07/2022
- DRL Labs, extending from 02/21/2022 to 04/20/2022
- Clinical Pathology Laboratories, extending from 02/21/2022 to 04/20/2022
- Danyel Kush, FNP / Nurse Practitioner, extending from 02/21/2022 to 04/20/2022
- Peter Pitonak, MD / Cardiology, on 02/23/2022
- Rebecca Parker, FNP-C / Nurse Practitioner, on 06/21/2022
- Sarah Jordan, LPC / Licensed Professional Counselor, on 10/21/2022
- After Visit Summary, extending from 02/20/2023 to 05/12/2023
- Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine, on 04/06/2023
- Marina Flaskas, MD, FACC / Cardiology, extending from 05/12/2023 to 10/06/2023
- Kasi Addison, DO / Emergency Medicine, on 10/06/2023
- James G. Hoff, MD, FACC / Interventional Cardiology, extending from 10/06/2023 to 10/07/2023
- Michaela, RN / Nursing, on 10/07/2023
- Cassy, RN / Nursing, on 10/06/2023
- Genesis, RN / Nursing, on 10/07/2023

Following review of the available medical documentation, along with the treating provider's recommendation(s) for activity restrictions, there was sufficient information available to form an opinion as detailed below, and there was no need to consult the treating provider for clarification.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

04/28/22, Clinton Carter, MD / Family Medicine: The claimant reported he was placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion. He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. He was recommended time off work. He had a normal psychiatric exam.

07/26/22, Clinton Carter, MD / Family Medicine: The claimant attempted to return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed.

08/08/22, Attending Physician Statement by Clinton Carter, MD / Family Medicine: The claimant had a secondary diagnosis of acute stress reaction. He was documented to endorse a stress reaction with anxiety and worsening mental and physical fatigue, making it impossible for him to work. He was observed with flat affect, tearful, anxiety, and fatigue.

09/07/22, Clinton Carter, MD / Family Medicine: The claimant reported overwhelming anxiety at the thought of going to work. Dr. Carter noted the claimant was no longer able to do his job that required the complicated calculations and decision making. He had a normal psychiatric exam.

10/21/22, Attending Physician Statement by Sarah Jordan, LPC / Licensed Professional Counselor: The claimant reported anxiety and depression. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. Current diagnoses included other reactions to severe stress and adjustment disorder with mixed anxiety and depressed mood.

10/23/22, Clinton Carter, MD / Family Medicine: The claimant reported he just had a counseling session. He reported being in a funk. He had a PHQ-9 score of 7. He was started on Lexapro 10 mg.

11/08/22, Sarah Jordan, LPC / Licensed Professional Counselor: The claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On

04/22/22, he woke up with intrusive thoughts that he would die this day. He had been diagnosed with reactivity to severe stress and adjustment disorder with mixed anxiety and depressed mood.

12/12/22, Prior Review by Steven Choi, MD / Psychiatry: The claimant presented with complaints of anxiety and depression on 11/11/21 following cardiac surgery that he noted recovery exacerbated symptoms. He endorsed normal mental status exam findings. Overall, he appeared to lack severe psychiatric symptoms which would indicate the need for necessary restrictions and limitations.

03/27/23, Clinton Carter, MD / Family Medicine: The claimant's provider opined due to the medications he needed to be taking, he would not function well mentally and would experience clouded thinking, slow reaction time, and fatigue.

03/28/23, Affidavit: The claimant was in understanding that disability was result of heart attacks on 09/28/21 and 12/19/21. He documented medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. He noted struggling with concentration and required 3 or more breaks while doing complex comprehension activities in order to complete the tasks.

04/06/23, Lisa Leffler, MD / Internal Medicine, and Geriatric Medicine: The claimant reported he was feeling better and had desire to do more things. He reported trazodone helping sleep. He had normal mental status exam.

05/02/23, Attorney Letter of Representation: The claimant obtained legal representation.

10/06/23, James G. Hoff, MD, FACC / Interventional Cardiology: The claimant had a normal psychiatric exam.

**DIAGNOSES:**

Other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, obesity

**RESPONSE TO QUESTIONS:**

1. Please identify the primary impairing Diagnosis(es) with ICD-10 Code(s).

F43.8 Other reactions to severe stress
F43.23 Adjustment disorder with mixed anxiety and depressed mood

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

N/A.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 05/07/2022 to current, and comment on the expected duration.

No, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effect, the claimant does not have any supported level of impairment that translates into restrictions and limitations from 05/07/2022 to current.

The claimant is a 70-year-old male with a medical history significant for other reactions to severe stress, coronary artery disease, physical deconditioning, adjustment disorder with mixed anxiety and depression, and obesity.

As the claimant's physical conditions are outside my scope of practice, I respectfully defer these to the appropriate specialty reviewer.

The claimant has a documented history of adjustment disorder with depressive and anxiety symptoms with severe stress reaction. Depression was noted to be greatly exacerbated by open heart surgery and then secondary heart attack. The claimant was undergoing medication management with his primary care physician, Dr. Carter. On 04/28/22, he reported being placed on Lexapro in October and felt like the Wellbutrin made him feel more flat and no emotion He endorsed anhedonia, increased sleep, decreased appetite, and feelings of sadness. He reported being under increased scrutiny at work since returning and that he was making more mistakes. He reported several anxiety attacks prior to going to work, where he was sure he was going to die that day. He endorsed a normal psychiatric exam. On 07/26/22, he reported attempt return to work to find that his concentration, memory, and speed of calculating was inhibited. He reported still feeling anxious about returning to position but was going to speak with HR to discuss options. He continued on Wellbutrin 300 mg and Xanax as needed. Dr. Carter completed an attending physician statement on 08/08/23 noting the claimant had observed symptoms of flat affect, tearful, anxiety, and fatigue. The claimant's therapist, LPC Sarah Jordan completed an attending physician statement on 10/21/23. His mental status exam was remarkable for anxious and depressed mood. He discussed the anxiety he experienced made decision making and complex problem solving extremely difficult. On 10/23/22, the claimant was started on Lexapro 10 mg. LPC Jordan documented on 11/08/22 that the claimant discussed difficulty with anxiety and depression while he recovered from cardiac accident. On 04/22/22, he woke up with intrusive thoughts that he would die this day. The claimant and Dr. Carter noted 03/27/23 and 03/28/23 that medications caused him to be even more forgetful and unable to perform adequately mentally and physically. He reported drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, including all activities of daily living. On 04/06/23, Dr. Leffler documented the claimant had improved sleep on trazodone. He reported feeling better had having desire to do more things. The claimant endorsed a normal mental status exam.

Based on the information provided, there is no evidence of findings to suggest limitations in the claimant's status from 05/07/2022 to current from a mental health standpoint. While his symptoms of adjustment disorder with mixed anxiety and depression and severe stress reaction are acknowledged, they were not of such severity to impair his occupational functioning. The claimant and Dr. Carter opined inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits. Also, the claimant continued to be managed on Wellbutrin and Lexapro without report of adverse side effects resulting in required adjustments. The claimant endorsed unremarkable psychiatric examinations, in addition to PHQ-9 score of 7, reflecting symptom severity largely inconsistent with debilitating psychopathology. As it stands, progress notes from LPC Jordan or any other mental health provider were not available for review. The claimant also required no referral to a higher level of care, such as IOP, PHP, and hospitalization. Overall, considering the lack of measurable evidence the claimant endorsed impaired cognition, judgment, insight, or though process, restrictions and limitations are not supported.

**4. Do medical records support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question?**

No, medical records do not support any Restrictions and Limitations that were recommended by treating providers for the timeframes in question.

Dr. Carter opined the claimant's inability to perform occupation and daily tasks due to medication side effects causing cognitive impairments, though this was not presented on any measurable testing. Furthermore, the claimant was not referred for neuropsychological evaluation to accurately assess cognitive functioning or definite deficits.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts, child or elder care issues, or legal issues) that may adversely impact work?**

No, there are no non-medical circumstances identified in the medical records that may adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he suffers any side effects from the medications that he is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning, and any appropriate restrictions as noted by the physician due to noted side effects.**

No, based on the claimant`s medication list, there is no evidence that he suffers from any side effects from the medications that he is taking that would impact occupational functioning.

**8. Do the medical records indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis?**

No, the medical records do not indicate restrictions and limitations that would prevent the claimant from performing on a reliable and consistent basis.

Sincerely,

**Elbert Greer Richardson, MD**
**ABPN Board Certification Psychiatry**
**American Board of Addiction Medicine**
**Medical License Number CT 037889**

ECN
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
Exam Coordinators Network A division of Genex Services, LLC
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-2

"I, E. Greer Richardson, MD, am a physician duly licensed to practice medicine in the State of Connecticut. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

[signature] MD

_______________________________________________12/13/23_______________
Signature of Physician Date

Medical/Professional License # CT 037889

DEC 12 2023

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/ccj
Enclosure

FILEVINE

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln - 2ND LTD APPEAL - 12-01-23_2023-12-01-0947-PST.pdf | **Pages:** | 45 |
| **Sent:** | December 1, 2023 9:58 AM PST | **Rec'd:** | December 1, 2023 10:13 AM PST |

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

*J. Price McNamara*

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

**Other Visit Diagnoses**

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 17.8 |
| • Smokeless tobacco: | Never |
| • Tobacco comments: | |

*Quit 15-16 years ago*

Substance and Sexual Activity

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks |
| Types: | 6 Glasses of wine per week |

*Comment: couple bottles of wine on weekend*

| | |
|---|---|
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023

- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems

Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Pcp, No

**Assessment and Plan**:

Assessment

1. **Coronary artery disease due to lipid rich plaque** **EKG 12 lead-IN ROOM**

2. Primary hypertension

3. Mixed hyperlipidemia

4. S/P CABG x 2

## Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

**Subjective:**

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year
Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 6/26/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

**Facility-Administered Encounter Medications as of 6/26/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD |

Allergies as of 06/26/2023
- (No Known Allergies)

Review of Systems
Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds (DOB: ) is a 70 y.o. male.

PCP: Per Patient, No Pcp

**Assessment and Plan**:

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

**Problem List Items Addressed This Visit**

None

**Visit Diagnoses**

**Primary hypertension** - Primary

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|

- Allergy — 1973
- Anxiety
- Biceps tendon rupture — 08/2017
  *Left - long head*
- BPH (benign prostatic hyperplasia)
- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) — 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50

Types: Cigarettes
Quit date: 7/1/2005
Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance and Sexual Activity
- Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  Partners: Female

Social History Narrative
*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023
- (No Known Allergies)

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan**:

Assessment

1. **Primary hypertension** **EKG 12 lead-IN ROOM**

2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category)

3. Mixed hyperlipidemia

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY | | 1973 |
| *blood clots from auto accident/concussion* | | |
| • BURR HOLE OF CRANIUM | | |
| *19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY | Left | |
| *Leg* | | |
| • KNEE SURGERY | Left | 06/27/2016 |
| *CAM* | | |
| • SHOULDER ARTHROSCOPY | Left | 2018 |
| *rotator cuff repair and subacromial decompression* | | |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History
- Marital status: Married

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance and Sexual Activity
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023
- (No Known Allergies)

ROS

**Objective:**

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

**History**

The history is provided by the patient.

**1:11 PM CDT**
70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

| | | |
|---|---|---|
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.2 |
| • Smokeless tobacco: | Never |
| • Tobacco comments:<br>*Quit 15-16 years ago* | |

Vaping Use

| | |
|---|---|
| • Vaping Use: | Never used |

Substance Use Topics

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks of alcohol |
| Types: | 6 Glasses of wine per week |
| *Comment: couple bottles of wine on weekend* | |
| • Drug use: | Never |

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**

BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
**Hospital Encounter on 10/06/23**
**Complete Blood Count with Differential**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis. The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

**Basic Metabolic Panel**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

**Pro BNP**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*
*Rule-In AHF Cut-Point Result*
*<50 years of age >450 pg/mL*
*50-75 years of age >900 pg/mL*
*>75 years of age >1800 pg/mL*
*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

**Troponin I**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**
Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**
**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once Route: Oral Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**
1. **Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

**Diagnosis**

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

# Discharge Summary

J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**

**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
**Treatment Team**

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
**Diagnostic Studies/Procedures**

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**<u>Discharge Cath Instructions: Groin Access</u>**

<u>Level of Activity</u>:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

## Adult Sedation / Anesthesia Discharge Instructions

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**:

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture *Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

| | |
|---|---|
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**PAST SURGICAL HISTORY**

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**

**No Known Allergies**

**HOME MEDICATIONS**

**Prior to Admission medications**

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | | **5/30/23** | | | **Provider, Historical** |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | **Take 1 tablet (81 mg total) by mouth daily** | **7/11/22** | | | **Pitonak, Peter, MD** |
| **atorvastatin (LIPITOR) 80 MG tablet** | **Take 1 tablet (80 mg total) by mouth nightly** | **7/11/22** | | | **Pitonak, Peter, MD** |

| | | | |
|---|---|---|---|
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | **Take 1 tablet (300 mg total) by mouth daily** | **4/24/20** | **Vig, Mark E, MD** |
| **clopidogrel (Plavix) 75 MG tablet** | **Take 1 tablet (75 mg total) by mouth daily** | **5/15/23** | **Carr, Jeffrey G, MD** |
| **escitalopram (Lexapro) 10 MG tablet** | | **4/18/23** | **Provider, Historical** |
| **levothyroxine (SYNTHROID) 50 MCG tablet** | **Take 50 mcg by mouth nightly** | | **Provider, Historical** |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | **Take 500 mg by mouth daily with dinner** | | **Provider, Historical** |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | **TAKE ONE TABLET BY MOUTH TWICE A DAY** | **1/15/23** | **Pitonak, Peter, MD** |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | **Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain** | **5/14/23** | **Carr, Jeffrey G, MD** |
| **tamsulosin (Flomax) 0.4 MG capsule** | **Take 2 capsules (0.8 mg total) by mouth daily** | **11/18/20** | **Vig, Mark E, MD** |
| **traZODone (Desyrel) 100 MG tablet** | | **4/30/23** | **Provider, Historical** |

**SOCIAL HISTORY**
**Social History**

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance Use Topics
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**
**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

**Recent Results (from the past 168 hour(s))**
**Complete Blood Count with Differential**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

**Basic Metabolic Panel**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

**Pro BNP**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

**Troponin I**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

## Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**
- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. **T**he following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**

These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*****Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Adequate for Discharge**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Adequate for Discharge**
**Problem: Cardiac Output Alteration**
**Goal: Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
**Outcome: Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Stabilized**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Stabilized**

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE®

PRIORITY® MAIL

FROM:

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

CERTIFIED MAIL

9402 8118 9956 2680 7607 28

PS Form 3800 6/02

$14.600
US POSTAGE
PRIORITY MAIL
COMBASPRICE
FROM 70809
12/01/2023
stamps endicia

- Expected delivery
- Domestic shipmen
- USPS Tracking® se
- Limited internatior
- When used interna

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

TO:

# FLAT RATE ENVELOPE

ONE RATE ▫ ANY WEIGHT

# TRACKED ▫ INSURED

CLAIMS SHARED SERVICES
The Lincoln National Life Insurance Company
PO BOX 2337
OMAHA NE 68103-2337

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

This package is made from post-consumer waste. Please recycle - again.

DEC 12 2023

DEC 12 2023

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/ccj
Enclosure

FILEVINE

[illegible]

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln - 2ND LTD APPEAL - 12-01-23_2023-12-01-0947-PST.pdf | **Pages:** | 45 |
| **Sent:** | December 1, 2023 9:58 AM PST | **Rec'd:** | December 1, 2023 10:13 AM PST |

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

**Other Visit Diagnoses**

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 17.8 |
| • Smokeless tobacco: | Never |
| • Tobacco comments: | |

*Quit 15-16 years ago*

Substance and Sexual Activity

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks |
| Types: | 6 Glasses of wine per week |

*Comment: couple bottles of wine on weekend*

| | |
|---|---|
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023
- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Pcp, No

**Assessment and Plan**:

Assessment

1. **Coronary artery disease due to lipid rich plaque EKG 12 lead-IN ROOM**
2. Primary hypertension
3. Mixed hyperlipidemia
4. S/P CABG x 2

## Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

**Subjective:**

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year
Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 6/26/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

**Facility-Administered Encounter Medications as of 6/26/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD |

Allergies as of 06/26/2023
- (No Known Allergies)

Review of Systems
Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
| --- | --- | --- |
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
| --- | --- | --- |
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
| --- | --- | --- |
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
| --- | --- | --- |
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
| --- | --- | --- |
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Per Patient, No Pcp

**Assessment and Plan**:

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

**Problem List Items Addressed This Visit**

None

**Visit Diagnoses**

**Primary hypertension** - Primary

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|

| | |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

| | |
|---|---|
| Socioeconomic History | |
| • Marital status: | Married |
| Tobacco Use | |
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |

| | |
|---|---|
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.2 |
| • Smokeless tobacco: | Never |
| • Tobacco comments: | |

*Quit 15-16 years ago*

Vaping Use

| | |
|---|---|
| • Vaping Use: | Never used |

Substance and Sexual Activity

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks of alcohol |
| Types: | 6 Glasses of wine per week |

*Comment: couple bottles of wine on weekend*

| | |
|---|---|
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

• (No Known Allergies)

| | |
|---|---|
| Interpreter | 5/14/2023 |
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: 9/11/1953)
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan**:

Assessment

| | |
|---|---|
| **1. Primary hypertension** | **EKG 12 lead-IN ROOM** |
| 2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category) | |
| 3. Mixed hyperlipidemia | |

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY *blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM *19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY *Leg* | Left | |
| • KNEE SURGERY *CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY *rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

- (No Known Allergies)

ROS

**Objective:**

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

**History**

The history is provided by the patient.

**1:11 PM CDT**
70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

| | | |
|---|---|---|
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.2 |
| • Smokeless tobacco: | Never |
| • Tobacco comments:<br>*Quit 15-16 years ago* | |

Vaping Use

| | |
|---|---|
| • Vaping Use: | Never used |

Substance Use Topics

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks of alcohol |
| Types: | 6 Glasses of wine per week |
| *Comment: couple bottles of wine on weekend* | |
| • Drug use: | Never |

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
**Hospital Encounter on 10/06/23**
**Complete Blood Count with Differential**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis. The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

**Basic Metabolic Panel**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

**Pro BNP**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*
*Rule-In AHF Cut-Point Result*
*<50 years of age >450 pg/mL*
*50-75 years of age >900 pg/mL*
*>75 years of age >1800 pg/mL*
*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

**Troponin I**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**
Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**
**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once<br>Route: Oral Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**
1. **Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

**Diagnosis**

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

# Discharge Summary

J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**
**9/11/1953**
**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
**Treatment Team**

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
**Diagnostic Studies/Procedures**

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**Discharge Cath Instructions: Groin Access**

Level of Activity:
- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

## Adult Sedation / Anesthesia Discharge Instructions

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**:

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**PAST SURGICAL HISTORY**

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**

**No Known Allergies**

**HOME MEDICATIONS**

**Prior to Admission medications**

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | | **5/30/23** | | | **Provider, Historical** |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | **Take 1 tablet (81 mg total) by mouth daily** | **7/11/22** | | | **Pitonak, Peter, MD** |
| **atorvastatin (LIPITOR) 80 MG tablet** | **Take 1 tablet (80 mg total) by mouth nightly** | **7/11/22** | | | **Pitonak, Peter, MD** |

| | | | |
|---|---|---|---|
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | **Take 1 tablet (300 mg total) by mouth daily** | **4/24/20** | **Vig, Mark E, MD** |
| **clopidogrel (Plavix) 75 MG tablet** | **Take 1 tablet (75 mg total) by mouth daily** | **5/15/23** | **Carr, Jeffrey G, MD** |
| **escitalopram (Lexapro) 10 MG tablet** | | **4/18/23** | **Provider, Historical** |
| **levothyroxine (SYNTHROID) 50 MCG tablet** | **Take 50 mcg by mouth nightly** | | **Provider, Historical** |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | **Take 500 mg by mouth daily with dinner** | | **Provider, Historical** |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | **TAKE ONE TABLET BY MOUTH TWICE A DAY** | **1/15/23** | **Pitonak, Peter, MD** |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | **Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain** | **5/14/23** | **Carr, Jeffrey G, MD** |
| **tamsulosin (Flomax) 0.4 MG capsule** | **Take 2 capsules (0.8 mg total) by mouth daily** | **11/18/20** | **Vig, Mark E, MD** |
| **traZODone (Desyrel) 100 MG tablet** | | **4/30/23** | **Provider, Historical** |

**SOCIAL HISTORY**
**Social History**

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance Use Topics
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**
**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

**Recent Results (from the past 168 hour(s))**
**Complete Blood Count with Differential**
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

**Basic Metabolic Panel**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

**Pro BNP**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

**Troponin I**

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

# Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

# Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**
- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:

1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Adequate for Discharge**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Adequate for Discharge**
**Problem: Cardiac Output Alteration**
**Goal: Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
**Outcome: Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Stabilized**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Stabilized**

Date: Mon Dec 04 14:30:58 CST 2023
From: Jeff Booth <Jeff.Booth@lfg.com>
To: bjackson@jsfoods.com
Message-ID: <1702585616.8.1701721858192.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 402-361-2665
Fax: 402-501-9321
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 4, 2023

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Brandy Jackson:

We are writing in regard to the Long Term Disability appeal for William Reynolds.

We have found it necessary to request additional information from William.

As soon as the requested information is received, we will notify you of the disposition of the appeal. Thank you for your patience during this time.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
402-361-2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Mon Dec 04 14:31:01 CST 2023
From: Jeff Booth <Jeff.Booth@lfg.com>
To: support@jpricemcnamara.com
Message-ID: <1181221625.13.1701721861232.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds.   You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com.   If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 402-361-2665
Fax: 402-501-9321
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 4, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on 05/03/2023 .

We are in the process of reviewing William Reynolds's appeal and we will notify you of the results within 45 days or as soon as a decision has been made.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
402-361-2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

Re: **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan:**

Assessment
ASSESSMENT AND PLAN:

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

Reynolds - Appeal 12/01/23 - 002

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

Reynolds - Appeal 12/01/23 - 003

Outpatient Encounter Medications as of 5/12/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023
• (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB:
is a 69 y.o. male.

PCP: Pcp, No

**Assessment and Plan**

Assessment

1. **Coronary artery disease due to lipid rich plaque EKG 12 lead-IN ROOM**

2. Primary hypertension

3. Mixed hyperlipidemia

4. S/P CABG x 2

Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

**Subjective:**

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year
Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

Reynolds - Appeal 12/01/23 - 007

- Marital status: Married

Tobacco Use

- Smoking status: Former
    - Packs/day: 0.50
    - Years: 25.00
    - Pack years: 12.50
    - Types: Cigarettes
    - Quit date: 7/1/2005
    - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
    *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
    - Alcohol/week: 6.0 standard drinks of alcohol
    - Types: 6 Glasses of wine per week
    - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
    - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 6/26/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

Facility-Administered Encounter Medications as of 6/26/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

Reynolds - Appeal 12/01/23 - 008

| | | | | | |
|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | |

Allergies as of 06/26/2023

- (No Known Allergies)

Review of Systems

Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Per Patient, No Pcp

**Assessment and Plan:**

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

Problem List Items Addressed This Visit
None
Visit Diagnoses

**Primary hypertension** - Primary

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

Past Medical History:

| Diagnosis | Date |
|---|---|

| | |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |

Types: Cigarettes
Quit date: 7/1/2005
Years since quitting: 18.2

- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

- (No Known Allergies)

Reynolds - Appeal 12/01/23 - 013

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

1. **Primary hypertension** **EKG 12 lead-IN ROOM**
2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category)
3. Mixed hyperlipidemia

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

Reynolds - Appeal 12/01/23 - 015

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

• (No Known Allergies)

ROS

**Objective:**

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

## History

The history is provided by the patient.

**1:11 PM CDT**

70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

| | | |
|---|---|---|
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance Use Topics
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
Hospital Encounter on 10/06/23
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis. The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

Basic Metabolic Panel
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*

| *Rule-In AHF Cut-Point* | *Result* |
|---|---|
| *<50 years of age* | *>450 pg/mL* |
| *50-75 years of age* | *>900 pg/mL* |
| *>75 years of age* | *>1800 pg/mL* |

*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**

Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**

**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once<br>Route: Oral Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**

1. **Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

Diagnosis

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

## Discharge Summary
J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**

**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
Treatment Team

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
Diagnostic Studies/Procedures

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**Discharge Cath Instructions: Groin Access**

Level of Activity:
- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

## Adult Sedation / Anesthesia Discharge Instructions

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**:

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture *Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**PAST SURGICAL HISTORY**

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**
**No Known Allergies**

**HOME MEDICATIONS**

Prior to Admission medications

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | 5/30/23 | | | Provider, Historical |
| aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 7/11/22 | | | Pitonak, Peter, MD |
| atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 7/11/22 | | | Pitonak, Peter, MD |

| | | | |
|---|---|---|---|
| buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 4/24/20 | Vig, Mark E, MD |
| clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 5/15/23 | Carr, Jeffrey G, MD |
| escitalopram (Lexapro) 10 MG tablet | | 4/18/23 | Provider, Historical |
| levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | Provider, Historical |
| metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | Provider, Historical |
| metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 1/15/23 | Pitonak, Peter, MD |
| nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 5/14/23 | Carr, Jeffrey G, MD |
| tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 11/18/20 | Vig, Mark E, MD |
| traZODone (Desyrel) 100 MG tablet | | 4/30/23 | Provider, Historical |

**SOCIAL HISTORY**

Social History

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

Recent Results (from the past 168 hour(s))
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

Basic Metabolic Panel

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

## Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

Problem: **Infection Risk**
Goal: **Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
Outcome: **Adequate for Discharge**
Problem: **Physical Mobility Impairment**
Goal: **Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
Outcome: **Adequate for Discharge**
Problem: **Cardiac Output Alteration**
Goal: **Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
Outcome: **Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

Problem: **Infection Risk**
Goal: **Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
Outcome: **Stabilized**
Problem: **Physical Mobility Impairment**
Goal: **Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
Outcome: **Stabilized**

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan:**

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset | Date |
|---|---|---|---|
| • Hypertension | Mother | | |
| • Bone cancer | Father | | |
| • No Known Problems | Maternal Grandmother | | |
| • No Known Problems | Maternal Grandfather | | |
| • Prostate cancer | Neg Hx | | |
| • Diabetes | Neg Hx | | |
| • Colon cancer | Neg Hx | | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

Reynolds - Appeal 12/01/23 - 003

Outpatient Encounter Medications as of 5/12/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023

• (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

Reynolds - Appeal 12/01/23 - 004

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Pcp, No

## Assessment and Plan

Assessment

1. **Coronary artery disease due to lipid rich plaque EKG 12 lead-IN ROOM**

2. Primary hypertension

3. Mixed hyperlipidemia

4. S/P CABG x 2

Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

## Subjective:

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year
Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

Reynolds - Appeal 12/01/23 - 007

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 6/26/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

Facility-Administered Encounter Medications as of 6/26/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

Reynolds - Appeal 12/01/23 - 008

| | | | | | |
|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | |

Allergies as of 06/26/2023

- (No Known Allergies)

Review of Systems
Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Per Patient, No Pcp

**Assessment and Plan:**

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

Problem List Items Addressed This Visit

None

Visit Diagnoses

**Primary hypertension** - Primary

**Future Appointments**

| Date | Time | Provider | Department | Center |
| --- | --- | --- | --- | --- |
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

Past Medical History:

| Diagnosis | Date |
| --- | --- |

| | |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

| Socioeconomic History | |
|---|---|
| • Marital status: | Married |
| **Tobacco Use** | |
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |

Types: Cigarettes
Quit date: 7/1/2005
Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance and Sexual Activity
- Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  Partners: Female

Social History Narrative
*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023
- (No Known Allergies)

Reynolds - Appeal 12/01/23 - 013

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: 9/11/1953)
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

1. **Primary hypertension** **EKG 12 lead-IN ROOM**
2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category)
3. Mixed hyperlipidemia

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Reynolds - Appeal 12/01/23 - 016

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

• (No Known Allergies)

ROS

**Objective:**

Reynolds - Appeal 12/01/23 - 017

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
<u>Physical Exam</u>
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

## History

The history is provided by the patient.

**1:11 PM CDT**
70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

Reynolds - Appeal 12/01/23 - 020

| | | |
|---|---|---|
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
Hospital Encounter on 10/06/23
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis.*
*The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

Basic Metabolic Panel
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*

*Rule-In AHF Cut-Point Result*
*<50 years of age >450 pg/mL*
*50-75 years of age >900 pg/mL*
*>75 years of age >1800 pg/mL*
*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**

Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**

**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once<br>Route: Oral Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**

**1. Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

Diagnosis

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

## Discharge Summary

J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**

**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
Treatment Team

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
Diagnostic Studies/Procedures

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:
- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**:

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**PAST SURGICAL HISTORY**

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**
**No Known Allergies**

**HOME MEDICATIONS**

Prior to Admission medications

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | 5/30/23 | | | Provider, Historical |
| aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 7/11/22 | | | Pitonak, Peter, MD |
| atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 7/11/22 | | | Pitonak, Peter, MD |

| | | | |
|---|---|---|---|
| buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 4/24/20 | Vig, Mark E, MD |
| clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 5/15/23 | Carr, Jeffrey G, MD |
| escitalopram (Lexapro) 10 MG tablet | | 4/18/23 | Provider, Historical |
| levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | Provider, Historical |
| metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | Provider, Historical |
| metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 1/15/23 | Pitonak, Peter, MD |
| nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 5/14/23 | Carr, Jeffrey G, MD |
| tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 11/18/20 | Vig, Mark E, MD |
| traZODone (Desyrel) 100 MG tablet | | 4/30/23 | Provider, Historical |

**SOCIAL HISTORY**

Social History

Tobacco Use

- Smoking status: Former
    - Packs/day: 0.50
    - Years: 25.00
    - Pack years: 12.50
    - Types: Cigarettes
    - Quit date: 7/1/2005
    - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
    - *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
    - Alcohol/week: 6.0 standard drinks of alcohol
    - Types: 6 Glasses of wine per week
    - *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

Recent Results (from the past 168 hour(s))
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

Basic Metabolic Panel

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

## Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**

These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

Problem: **Infection Risk**
Goal: **Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
Outcome: **Adequate for Discharge**
Problem: **Physical Mobility Impairment**
Goal: **Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
Outcome: **Adequate for Discharge**
Problem: **Cardiac Output Alteration**
Goal: **Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
Outcome: **Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

Problem: **Infection Risk**
Goal: **Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
Outcome: **Stabilized**
Problem: **Physical Mobility Impairment**
Goal: **Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
Outcome: **Stabilized**

LAW OFFICES
OF
J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

Claimant: William Reynolds
Claim Number: 1220082997
December 1, 2023 | 2

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

*J. Price McNamara* [signature]

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**

Assessment
ASSESSMENT AND PLAN:

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

**Other Visit Diagnoses**

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

Reynolds - Appeal 12/01/23 - 003

Outpatient Encounter Medications as of 5/12/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023
- (No Known Allergies)

| Interpreter | 7/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Pcp, No

**Assessment and Plan**

Assessment

1. **Coronary artery disease due to lipid rich plaque EKG 12 lead-IN ROOM**

2. Primary hypertension

3. Mixed hyperlipidemia

4. S/P CABG x 2

Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

**Subjective:**

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year
Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 6/26/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

**Facility-Administered Encounter Medications as of 6/26/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

Reynolds - Appeal 12/01/23 - 008

| | | | | |
|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD |

Allergies as of 06/26/2023
- (No Known Allergies)

Review of Systems
Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Per Patient, No Pcp

## Assessment and Plan

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

**Problem List Items Addressed This Visit**

None

Visit Diagnoses

**Primary hypertension** - Primary

### Future Appointments

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

## Subjective:

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

Past Medical History:

| Diagnosis | Date |
|---|---|

| | |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

| Socioeconomic History | |
|---|---|
| • Marital status: | Married |
| **Tobacco Use** | |
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |

Reynolds - Appeal 12/01/23 - 012

Types: Cigarettes
Quit date: 7/1/2005
Years since quitting: 18.2

- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

- (No Known Allergies)

Reynolds - Appeal 12/01/23 - 013

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: 9/11/1953)
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

1. **Primary hypertension** **EKG 12 lead-IN ROOM**
2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category)
3. Mixed hyperlipidemia

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

| Socioeconomic History | |
|---|---|
| • Marital status: | Married |
| **Tobacco Use** | |
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.2 |
| • Smokeless tobacco: | Never |
| • Tobacco comments:<br>*Quit 15-16 years ago* | |
| **Vaping Use** | |
| • Vaping Use: | Never used |
| **Substance and Sexual Activity** | |
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks of alcohol |
| Types: | 6 Glasses of wine per week |
| *Comment: couple bottles of wine on weekend* | |
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Reynolds - Appeal 12/01/23 - 016

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

- (No Known Allergies)

ROS

**Objective:**

Reynolds - Appeal 12/01/23 - 017

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

## History

The history is provided by the patient.

**1:11 PM CDT**
70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

| | | |
|---|---|---|
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
Hospital Encounter on 10/06/23
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis.*
*The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

Basic Metabolic Panel
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*

| *Rule-In AHF Cut-Point* | *Result* |
|---|---|
| *<50 years of age* | *>450 pg/mL* |
| *50-75 years of age* | *>900 pg/mL* |
| *>75 years of age* | *>1800 pg/mL* |

*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**

Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**

**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once<br>Route: **Oral** Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**

1. **Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

Diagnosis

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

## Discharge Summary

J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**

**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
Treatment Team

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
Diagnostic Studies/Procedures

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

Reynolds - Appeal 12/01/23 - 026

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**<u>Discharge Cath Instructions: Groin Access</u>**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:
- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

Reynolds - Appeal 12/01/23 - 030

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**:

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**PAST SURGICAL HISTORY**

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY *blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM *19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY *Leg* | Left | |
| • KNEE SURGERY *CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY *rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**
**No Known Allergies**

**HOME MEDICATIONS**

Prior to Admission medications

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | 5/30/23 | | | Provider, Historical |
| aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 7/11/22 | | | Pitonak, Peter, MD |
| atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 7/11/22 | | | Pitonak, Peter, MD |

Reynolds - Appeal 12/01/23 - 033

| | | | |
|---|---|---|---|
| buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 4/24/20 | Vig, Mark E, MD |
| clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 5/15/23 | Carr, Jeffrey G, MD |
| escitalopram (Lexapro) 10 MG tablet | | 4/18/23 | Provider, Historical |
| levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | Provider, Historical |
| metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | Provider, Historical |
| metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 1/15/23 | Pitonak, Peter, MD |
| nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 5/14/23 | Carr, Jeffrey G, MD |
| tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 11/18/20 | Vig, Mark E, MD |
| traZODone (Desyrel) 100 MG tablet | | 4/30/23 | Provider, Historical |

**SOCIAL HISTORY**

Social History

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

Recent Results (from the past 168 hour(s))
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

Basic Metabolic Panel

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

## Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

## Adult Sedation / Anesthesia Discharge Instructions

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**
- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Adequate for Discharge**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Adequate for Discharge**
**Problem: Cardiac Output Alteration**
**Goal: Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
**Outcome: Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Stabilized**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Stabilized**

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**NOTICE OF ATTORNEY FEE LIEN AND PAYMENT INSTRUCTIONS**

**Let this serve as notice that the undersigned has a lien on any payments made on this claim for attorney fees in connection with our representation in this matter.**

**Pursuant to our representation agreement with our client, and the lien referenced above, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara at 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**

Assessment
ASSESSMENT AND PLAN:

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

**Other Visit Diagnoses**

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |

Reynolds - Appeal 12/01/23 - 002

- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

Reynolds - Appeal 12/01/23 - 003

Outpatient Encounter Medications as of 5/12/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam (RESTORIL) 30 MG capsule | Take 30 mg by mouth nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) | | |

Allergies as of 05/12/2023

• (No Known Allergies)

Interpreter 7/6/2022

**Is an interpreter used?** No

Review of Systems

Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.

Reynolds - Appeal 12/01/23 - 004

HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses.
Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023
Marina Flaskas, MD

# Progress Notes

M Flaskas, MD at 6/26/2023 8:45 AM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Pcp, No

**Assessment and Plan**

Assessment

1. **Coronary artery disease due to lipid rich plaque EKG 12 lead-IN ROOM**

2. Primary hypertension

3. Mixed hyperlipidemia

4. S/P CABG x 2

Assessment and Plan

1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. No changes from previous. Reports improvement in DOE after PCi to PDA. DOE is considered anginal equivalent. DAPT 6-12 months

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP is wnl

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC

**Subjective:**

Subjective

**Chief Complaint: f/u after dx LHC, PCi to PDA**

HPI

This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year Las visit the patient c/o DOE, chest pain

Underwent dx LHC by Dr Carr, dx with severe PDA disease, now s/p DES to PDA, DAPT asa and plavix
Reports feeling better, involved in cardiac rehab

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

Reynolds - Appeal 12/01/23 - 007

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.0
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 6/26/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • [DISCONTINUED] isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |

**Facility-Administered Encounter Medications as of 6/26/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD |

Allergies as of 06/26/2023
- (No Known Allergies)

Review of Systems
Constitutional: Positive for malaise/fatigue. Negative for decreased appetite, diaphoresis, night sweats, weight gain and weight loss.
HENT: Negative for congestion, sore throat and tinnitus.
Eyes: Negative for blurred vision, pain and visual disturbance.
Cardiovascular: Negative for chest pain, dyspnea on exertion, irregular heartbeat, leg swelling, near-syncope, orthopnea, palpitations and syncope.
Respiratory: Positive for shortness of breath. Negative for cough and snoring.
Endocrine: Negative for cold intolerance, heat intolerance and polyuria.
Hematologic/Lymphatic: Negative for bleeding problem. Does not bruise/bleed easily.
Musculoskeletal: Negative for arthritis, back pain, falls, gout, joint pain, joint swelling, muscle cramps, muscle weakness, myalgias, neck pain and stiffness.
Gastrointestinal: Negative for bloating, abdominal pain, constipation, diarrhea, heartburn, nausea and vomiting.
Genitourinary: Negative for bladder incontinence, dysuria, flank pain, frequency, incomplete emptying and urgency.
Neurological: Positive for light-headedness. Negative for difficulty with concentration, disturbances in coordination, excessive daytime sleepiness, dizziness, headaches, loss of balance, numbness, sensory change, vertigo and weakness.
Psychiatric/Behavioral: Negative for altered mental status, depression, hallucinations and memory loss. The patient does not have insomnia and is not nervous/anxious.
Allergic/Immunologic: Negative for hives.

**Objective:**

Objective
BP 104/68 (BP Location: Left arm, Patient Position: Sitting) | Pulse 62 | Ht 1.727 m (5' 8") | Wt 112.6 kg (248 lb 3.2 oz) | SpO2 98% | BMI 37.74 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

# Progress Notes

M Flaskas, MD at 10/6/2023 12:15 PM

**Patient ID:** William J Reynolds ( )
is a 70 y.o. male.

PCP: Per Patient, No Pcp

## Assessment and Plan

Assessment
Dictation #2
MRN:096638825 CSN:400136317455

**Problem List Items Addressed This Visit**

None

Visit Diagnoses

**Primary hypertension** - Primary

### Future Appointments

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 10/6/2023 | 12:15 PM | Flaskas, Marina, MD | LPOHH CARD | LPOHH |

## Subjective:

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Follow-up on coronary artery disease and recent chest pains.

HISTORY OF PRESENT ILLNESS:
This is a pleasant 70-year-old Caucasian male, last visit was in June 2023; known coronary artery disease, status post non-ST MI in August 2022, severe multi-vessel coronary artery disease, aortocoronary bypass surgery, LIMA to LAD, saphenous venous graft to RCA, left appendage ligation with 45 mm AtriClip, successful, no significant complication. In December 2022 the patient developed worsening of shortness of breath, diagnosed with ST elevation MI in December 2021. Heart catheter showed subtotal anastomosis with LIMA to LAD, underwent drug-coated stent by Dr. Kumar. Was seen in May 2023. Complains on dyspnea on exertion and chest discomfort. At that time EKG showed Q waves in inferior leads, ST elevation, depression of ST segment in 1 and aVL, precordial leads; admitted, underwent heart catheter by Dr. Carr, which showed severe PDA disease, underwent drug-coated stent into PDA, compliant with aspirin and Plavix, LIMA to LAD patent, LAD without significant obstruction at that time. The patient has mild-to-moderate diffuse disease of left circumflex artery. Today reports compliance with dual antiplatelet therapy. Two weeks ago had chest pains and tightness as pressure. Saw some advertisement on TV talking about cell phones and he reports since _____ on the side of his cell phone.

NOTE: DICTATION ENDS ABRUPTLY

Marina Flaskas, MD, FACC
HD/#3196/1

Past Medical History:

| Diagnosis | Date |
|---|---|

| | |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |

Reynolds - Appeal 12/01/23 - 012

Types: Cigarettes
Quit date: 7/1/2005
Years since quitting: 18.2

- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  Alcohol/week: 6.0 standard drinks of alcohol
  Types: 6 Glasses of wine per week
  *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

**Outpatient Encounter Medications as of 10/6/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |

**Facility-Administered Encounter Medications as of 10/6/2023**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

- (No Known Allergies)

| Interpreter | 5/14/2023 |
|---|---|
| **Does the patient or family require interpretation?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
There were no vitals taken for this visit.

No flowsheet data found.
No flowsheet data found.
Physical Exam

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 05/14/2023 |
| BUN | 15 | 05/14/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

10/5/2023
Anthony Steigman, CCMA

M Flaskas, MD at 10/6/2023 12:15 PM

Patient taken to the ER for ekg results/ abnormal / ST elevation
**Patient ID:** William J Reynolds (DOB: )
is a 70 y.o. male.

PCP: Buzbee, Thomas, MD

**Assessment and Plan:**

Assessment

1. **Primary hypertension** **EKG 12 lead-IN ROOM**
2. Coronary artery disease involving native coronary artery of native heart with angina pectoris (HC Category)
3. Mixed hyperlipidemia

Assessment and Plan

Dictation #4
MRN:096638825 CSN:400136317455

**Subjective:**

Subjective
**Chief Complaint:**
HPI

Dictation #3
MRN:096638825 CSN:400136317455
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |

- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

Social History

| Socioeconomic History | |
|---|---|
| • Marital status: | Married |
| **Tobacco Use** | |
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 18.2 |
| • Smokeless tobacco: | Never |
| • Tobacco comments:<br>*Quit 15-16 years ago* | |
| **Vaping Use** | |
| • Vaping Use: | Never used |
| **Substance and Sexual Activity** | |
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks of alcohol |
| Types: | 6 Glasses of wine per week |
| *Comment: couple bottles of wine on weekend* | |
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

Outpatient Encounter Medications as of 10/6/2023

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | | |
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 90 tablet | 5 |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 90 tablet | 1 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • [DISCONTINUED] escitalopram (Lexapro) 10 MG tablet | | | |
| • [DISCONTINUED] traZODone (Desyrel) 100 MG tablet | | | |

Facility-Administered Encounter Medications as of 10/6/2023

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • [DISCONTINUED] diazepam (Valium) tablet 5 mg | 5 mg | Oral | Once | Carr, Jeffrey G, MD | | |
| • [DISCONTINUED] diphenhydrAMINE (Benadryl) capsule 25 mg | 25 mg | Oral | Once | Carr, Jeffrey G, MD | | |

Allergies as of 10/06/2023

• (No Known Allergies)

ROS

**Objective:**

Objective
BP 120/70 (BP Location: Left arm, Patient Position: Sitting) | Pulse 68 | Ht 1.727 m (5' 8") | Wt 111.9 kg (246 lb 12.8 oz) | BMI 37.53 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| HGB | 15.1 | 10/07/2023 |
| HCT | 44.6 | 10/07/2023 |
| MCV | 90.8 | 10/07/2023 |
| PLT | 185 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CREATININE | 0.90 | 10/07/2023 |
| BUN | 17 | 10/07/2023 |
| NA | 133 (L) | 10/07/2023 |
| K | 4.6 | 10/07/2023 |
| CL | 99 (L) | 10/07/2023 |
| CO2 | 25 | 10/07/2023 |

# ED Provider Notes

K Addison, DO at 10/6/2023 1:11 PM

## History

The history is provided by the patient.

**1:11 PM CDT**
70 y.o. male, William J Reynolds, presents to the ED c/o **abnormal ECG.** Pt seen by his cardiologist, Dr. Flaskas, this AM for follow up secondary to stent placement in May. Was informed of an abnormal EKG, and prompted to cath lab for further care. Pt came to ED. Pt denies any SOB or chest pain at this time. Is asymptomatic in ED. Does sleep with Cpap machine. **Denies** nausea, emesis, diarrhea, cough, congestion, and fever . No further complaints or concerns expressed at this time.

**PCP: Buzbee, Thomas, MD**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |

- FINGER AMPUTATION Left
- FRACTURE SURGERY Left
  *Leg*
- KNEE SURGERY Left 06/27/2016
  *CAM*
- SHOULDER ARTHROSCOPY Left 2018
  *rotator cuff repair and subacromial decompression*
- VASECTOMY 1990

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| Hypertension | Mother | |
| Bone cancer | Father | |
| No Known Problems | Maternal Grandmother | |
| No Known Problems | Maternal Grandfather | |
| Prostate cancer | Neg Hx | |
| Diabetes | Neg Hx | |
| Colon cancer | Neg Hx | |

Social History

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use
- Vaping Use: Never used

Substance Use Topics
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never

Review of Systems
Constitutional: Negative for chills and fever.
HENT: Negative for congestion, rhinorrhea and sore throat.
Eyes: Negative for pain and visual disturbance.
Respiratory: Negative for cough, chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain and leg swelling.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, myalgias and neck pain.
Skin: Negative for rash.
Neurological: Negative for weakness, numbness and headaches.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 111/69 | Pulse 63 | Temp 98 °F (36.7 °C) (Temporal) | Resp 9 | Ht 1.727 m (5' 8") | Wt 111.6 kg (246 lb) | SpO2 93% | BMI 37.40 kg/m²

**Physical Exam**
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: He is obese.
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Eyes:
General:
Right eye: No discharge.
Left eye: No discharge.
Conjunctiva/sclera: Conjunctivae normal.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Heart sounds: Normal heart sounds. No murmur heard.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No rales.
Chest:
Comments: **Midline sternotomy scar, well healed**
Abdominal:
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no guarding or rebound.
Musculoskeletal:
General: Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm.
Findings: No rash.
Neurological:
Mental Status: He is alert and oriented to person, place, and time.
Cranial Nerves: No cranial nerve deficit.
Psychiatric:
Behavior: Behavior normal.

**ED Course**

**MDM**
**Medical Decision Making**
Amount and/or Complexity of Data Reviewed
Labs: ordered.
ECG/medicine tests: ordered.
Details: My interpretation is: sinus at 68 bpm, normal axis, ST elvation in 3 and AVF, ST depression 1, AVL, V2, no STEMI
Discussion of management or test interpretation with external provider(s):

1:22 PM CDT
Discussed pt's case with Jason, COBS, who recommended discussing case with Dr.Flaskas.

1:40 PM CDT
Discussed pt's case with Dr. Flaskas, cardiologist, who stated pt was supposed to go to cath lab, not ED. Will call back.

1:42 PM CDT

Discussed pt's case with Dr. Flaskas, cardiologist, who stated cath team will come to transfer patient up to cath lab.

Risk
OTC drugs.
Decision regarding hospitalization.

**LABORATORY RESULTS**
Hospital Encounter on 10/06/23
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

*Narrative*
*Monocyte Distribution Width (MDW). The Early Sepsis Indicator (ESId) is intended for use with adult patients, 18-89 years, presenting to the emergency department only, on whom a white blood cell differential test has been ordered. MDW results greater than 20.0 together with other laboratory findings and clinical information, aids in identifying patients with sepsis or at increased risk of developing sepsis within the first 12 hours of hospital admission.*
*MDW results less than or equal to 20.0 cannot rule out sepsis or the development of sepsis within 12 hours of hospital admission.*
*The Early Sepsis Indicator should not be used as the sole basis to determine the absence of sepsis. The predictive value of MDW for identifying sepsis in patients with hematological abnormalities has not been established.*

Basic Metabolic Panel
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |

Reynolds - Appeal 12/01/23 - 023

| | | |
|---|---|---|
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

*Narrative*

| *Rule-In AHF Cut-Point* | *Result* |
|---|---|
| *<50 years of age* | *>450 pg/mL* |
| *50-75 years of age* | *>900 pg/mL* |
| *>75 years of age* | *>1800 pg/mL* |

*Interference with test results may occur in patients receiving therapy with biotin doses greater than 0.03 mg (or 30 mcg) perday. No samples should be collected until at least 72 hours after the last biotin administration.*

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

**IMAGING RESULTS**

Cardiac catheterization (Results Pending)

**MEDICATIONS GIVEN IN ED**

**All Medication Orders** (From admission, onward)

| Start | Ordered | | Status | Ordering Provider |
|---|---|---|---|---|
| 10/06/23 1330 | 10/06/23 1324 | **aspirin chewable tablet 162 mg** Once<br>Route: **Oral** Ordered Dose: 162 mg | Last MAR action: Given | ADDISON, KASI |

**RE-EVALUATIONS**

1:19 PM CDT
Paged COBS.

1:24 PM CDT
Attempted to call Dr. Flaskas, no answer, left voicemail informing patient is now in ED.

1:43 PM CDT
On re-evaluation, patient well appearing, non-toxic. Discussed with patient will transfer up to cath lab. Patient understanding and agreeable.

2:38 PM CDT
Patient admitted to cath lab now.

**DIAGNOSIS**

1. **Abnormal EKG**

I, **Nelly Soria-Baeza**, am scribing for and in the presence of Addison, Kasi, DO.

**I, Addison, Kasi, DO, personally performed the services described in this documentation.**

This note was completed with the aid of a scribe, a non professionally trained health care worker, and is subject to error.

**Clinical Impression**

Diagnosis

| Diagnosis | Comment | Added By | Time Added |
|---|---|---|---|
| **Abnormal EKG** | | Addison, Kasi, DO | 10/6/2023 2:41 PM |

**ED Dispo**
Admit

William J Reynolds will be admitted to cath lab.

MSE completed at 10/06/23 1438.

Addison, Kasi, DO
10/06/23 1441

## Discharge Summary
J Hoff, MD at 10/7/2023 9:05 AM

**Discharge Summary**

**William J Reynolds**

**Date of Admission:10/6/2023**
**Date of Discharge: 10/7/2023**
**400139156116**
**096638825**

**Primary Care Provider:** Buzbee, Thomas, MD

**Primary Cardiologist:** Dr. Marina Flaskas

**Discharge Diagnoses:**
**Primary Discharge Diagnosis: ST elevation on electrocardiogram(s) without active chest pain and a history of coronary atherosclerotic heart disease**
Principal Problem:
CAD in native artery
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia

Precordial pain
S/P CABG x 2

**Consultants:**
Treatment Team

| Provider | Service | Specialty |
|---|---|---|
| Hoff, James G, MD | Cardiology | Cardiology |
| Addison, Kasi, DO | Emergency | Emergency Medicine |

Cardiac Rehabilitation

**Procedures:**
Diagnostic Studies/Procedures

| Procedure/Test | Number of Times Performed |
|---|---|
| Cardiac catheterization | 1 |
| EKG 12 lead | 3 |

cardiac catheterization:
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**Significant Laboratory and Diagnostic Studies:**
Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.7 | 10/07/2023 |
| WBC | 6.9 | 05/12/2023 |
| HGB | 15.1 | 10/07/2023 |
| HGB | 14.9 | 05/12/2023 |
| HCT | 44.6 | 10/07/2023 |
| HCT | 45.1 | 05/12/2023 |
| PLT | 185 | 10/07/2023 |
| PLT | 221 | 05/12/2023 |
| MCV | 90.8 | 10/07/2023 |
| MCV | 91.6 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 133 (L) | 10/07/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.6 | 10/07/2023 |

| | | |
|---|---|---|
| K | 4.1 | 05/12/2023 |
| CL | 99 (L) | 10/07/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 25 | 10/07/2023 |
| CO2 | 26.0 | 05/12/2023 |
| BUN | 17 | 10/07/2023 |
| BUN | 15 | 05/14/2023 |
| GLUCOSE | 133.00 (H) | 10/01/2021 |
| ANIONGAP | 9 | 10/07/2023 |
| ANIONGAP | 10 | 05/12/2023 |

Lab Results

| Component | Value | Date |
|---|---|---|
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

No components found for: TROPONIN

**Complications:**
None.

**Hospital Course:**
William J Reynolds is a 70 y.o. male who was brought emergently from Dr. Marina Flaskas' office brought to the Emergency Department. He ruled out for a myocardial infarction. He then was brought emergently cardiac catheterization suite for reasons as detailed in the initial encounter, the discharge diagnoses, and the cardiac catheterization report. Please refer to that documentation for further details.

Mr. Reynolds improved with the acute care treatment, and then he has at least remained stable if not improved further. Please see the detailed notes available on EPIC for daily details, if necessary. Other issues encountered during this hospital stay are detailed in the discharge diagnoses list or in the EPIC documentation for this encounter.

At the time of discharge, he does not have chest pain that sounds cardiac in nature. Vital signs, ECGs and telemetry monitoring have progressed appropriately. His activity is as expected based on his age, health issues, activity capacity prior to admission, and the treatment that he received in the hospital.

Medical therapy was adjusted according to his clinical situation. The changes were reviewed with him, and with his family, if available. Please see details of the medication changes in the accompanying records.

I have spoken with his physicians and providers, as available. I will forward the appropriate notes, if possible. EPIC cannot always forward the notes to the requested recipient.

He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. Activities, diet, and fluid intake were reviewed.

**DISCHARGE EXAM:**
Blood pressure 108/65, pulse 65, temperature 36.5 °C (97.7 °F), temperature source Oral, resp. rate 17, height 1.727 m (5' 8"), weight 114.9 kg (253 lb 4.9 oz), SpO2 98 %.

Intake/Output Summary (Last 24 hours) at 10/7/2023 0905
Last data filed at 10/7/2023 0500

| | Gross per 24 hour |
|---|---|
| Intake | 1695 ml |
| Output | 1600 ml |
| **Net** | **95 ml** |

**Appearance:** Comfortable.
**HEENT:** Sclerae anicteric. Conjunctiva pink. Oral mucosa moist.
**Skin:** Good color.
**Neck:** No jugular venous distention.

**Chest:** Good air movement. Clear to auscultation.
**Cardiac:** Rhythm noted. No rubs. No gallops. No murmurs.
**Musculoskeletal:** Arthritic changes.
**Abdomen:** Active bowel sounds.
**Vascular:** There is acceptable perfusion of the fingernail beds.
**Extremities:** No clubbing. No cyanosis. No edema.
**Neurological:** Alert and oriented.
**Miscellaneous:** Support devices in place.

**Discharge Management Plans**:

Mr. Reynolds was given detailed instructions regarding activity limitations and was instructed how to monitor the groin puncture site for evidence of bleeding, hematoma formation and infection. Other issues to be aware of also were reviewed. Activities, diet, and other pertinent discharge instructions are included on the discharge instruction sheet. He was instructed to avoid tobacco use and/or exposure, as applicable in his situation. He was given contact numbers to call for any questions or problems, and will follow-up as instructed on the discharge instruction sheet. We reviewed events and/or symptoms of which he should be aware and for which he should return for evaluation. I asked him to contact me, and/or my staff, and/or his Primary Care Provider if he experiences any of them. If applicable, we discussed events and/or symptoms for which he should call Emergency Medical Services and/or go to the closest Emergency Department.

See discharge instructions that were formulated for Mr. Reynolds for further details.

**Discharge Medications:**

**Current Discharge Medication List**

**START taking these medications**

| | Details |
|---|---|
| **pantoprazole (Protonix) 40 MG enteric-coated tablet** | Take 1 tablet (40 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 0 |
| **ranolazine (Ranexa) 500 MG 12 hr sustained-release tablet** | Take 1 tablet (500 mg total) by mouth 2 (two) times daily<br>*Qty:* 180 tablet, *Refills:* 1 |

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **Advair Diskus 500-50 MCG/ACT aerosol powder inhaler** | |
| **aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet** | Take 1 tablet (81 mg total) by mouth daily<br>*Qty:* 30 tablet, *Refills:* 1 |
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth nightly<br>*Qty:* 90 tablet, *Refills:* 2 |
| **buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet** | Take 1 tablet (300 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 3 |
| **escitalopram (Lexapro) 10 MG tablet** | Take 10 mg by mouth daily |
| **furosemide (Lasix) 20 MG tablet** | Take 20 mg by mouth daily |

| | |
|---|---|
| **levothyroxine (SYNTHROID) 50 MCG tablet** | Take 50 mcg by mouth nightly |
| **metFORMIN (GLUCOPHAGE) 500 MG tablet** | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet** | TAKE ONE TABLET BY MOUTH TWICE A DAY<br>*Qty:* 60 tablet, *Refills:* 5 |
| **tamsulosin (Flomax) 0.4 MG capsule** | Take 2 capsules (0.8 mg total) by mouth daily<br>*Qty:* 180 capsule, *Refills:* 3 |
| **clopidogrel (Plavix) 75 MG tablet** | Take 1 tablet (75 mg total) by mouth daily<br>*Qty:* 90 tablet, *Refills:* 5 |
| **nitroglycerin (Nitrostat) 0.4 MG sublingual tablet** | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>*Qty:* 90 tablet, *Refills:* 1 |

**The anticipated duration of augmented anti-platelet agent therapy (clopidogrel/ prasugrel/ ticagrelor/ Etc.) is: one year without interruption unless another medical condition supercedes the requirement for the medication. Aspirin therapy most likely will be lifelong unless another medical condition supercedes the requirement for the aspirin.**

**Future Appointments Scheduled as of 10/7/2023 9:05 AM CDT (Other appointment(s) may be pending.)**
Mr. Reynolds will follow up with Toby Silvertooth, NP in one week, or as soon as possible, and with Dr. Marina Flaskas in 2 to 3 months, or as soon as possible.

**Condition on discharge:**
Mr. Reynolds is ambulating and feels well. He desires to go home.

**Special note:**
Please see details in EPIC and/or the Paper Lite chart for any information that is not included in this discharge summary.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

**Discharge instructions:**

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.

- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:
- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

Reynolds - Appeal 12/01/23 - 030

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler.
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for

what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## H&P

J Hoff, MD at 10/6/2023 2:03 PM

**Patient Name**: William J Reynolds
**Age**: 70 y.o. **Sex**: male **DOB**

**Primary Care Provider:** Buzbee, Thomas, MD
**Referring Provider:** Dr. Marina Flaskas
**Cardiologist**: Dr. Marina Flaskas

Dr. Marina Flaskas' note is not yet complete, but please see it for full details upon completion. Mr. Reynolds has been having chest pain similar to what he had before his 05/2023 percutaneous coronary intervention(s), and he continues to have electrocardiogram(s) changes.

There have been no significant changes since the admission documentation available in EPIC and/or the Paper Lite chart that pertains to this procedure. His clinical situation was reviewed.

All questions were answered to the satisfaction of those present.

Allergies and medications were reviewed.

**PAST MEDICAL HISTORY**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |

- CAD (coronary artery disease)
  *elevated calcium score - 688*
- Coronary artery disease
- Depression
- Diabetes mellitus (HC Category)
- ED (erectile dysfunction)
- History of irregular heartbeat
  *a-fib*
- Hyperthyroidism
- Insomnia
- Myocardial infarction (HC Category) 2015
  *a-fib*
- OSA on CPAP
- Osteoarthritis of left shoulder
  *Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.*
- Paroxysmal A-fib (HC Category)
- Rotator cuff tear, right

**PAST SURGICAL HISTORY**

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • CAROTID STENT | | 12/10/2021 |
| • CAROTID STENT | | 05/13/2023 |
| • DCCV | | |
| • double bypass | | 10/01/2021 |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**ALLERGIES**
**No Known Allergies**

**HOME MEDICATIONS**

Prior to Admission medications

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| Advair Diskus 500-50 MCG/ACT aerosol powder inhaler | | 5/30/23 | | | Provider, Historical |
| aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 7/11/22 | | | Pitonak, Peter, MD |
| atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 7/11/22 | | | Pitonak, Peter, MD |

| | | | |
|---|---|---|---|
| buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 4/24/20 | Vig, Mark E, MD |
| clopidogrel (Plavix) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily | 5/15/23 | Carr, Jeffrey G, MD |
| escitalopram (Lexapro) 10 MG tablet | | 4/18/23 | Provider, Historical |
| levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | Provider, Historical |
| metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | Provider, Historical |
| metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 1/15/23 | Pitonak, Peter, MD |
| nitroglycerin (Nitrostat) 0.4 MG sublingual tablet | Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain | 5/14/23 | Carr, Jeffrey G, MD |
| tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 11/18/20 | Vig, Mark E, MD |
| traZODone (Desyrel) 100 MG tablet | | 4/30/23 | Provider, Historical |

**SOCIAL HISTORY**

Social History

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 18.2
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Vaping Use

- Vaping Use: Never used

Substance Use Topics

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks of alcohol
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*

E-Cigarette/Vaping Use: Never User

**FAMILY HISTORY**

Family History

Reynolds - Appeal 12/01/23 - 034

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**REVIEW OF SYSTEMS:**
The patient and/or family provided information was reviewed. The nursing intake information was reviewed. Pre-admission information from the emergency room, doctor's office, or referring facility, as applicable, was reviewed. I also asked a 10 system review of systems. This information was notable for features as contained in other portions of this document and is otherwise negative.

No Known Allergies

(Not in a hospital admission)

**Physical Examination:**
There is no jugular venous distention.
The lungs are clear.
The heart sounds are without change.
He is alert and oriented.

The lab results that were available were reviewed. I will review any of his currently unavailable results, if applicable, prior to the procedure.

Recent Results (from the past 168 hour(s))
Complete Blood Count with Differential
Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| WBC | 6.2 | 4.5 - 11.0 10*3/uL |
| Red Cell Count | 5.04 | 4.50 - 5.90 10*6/uL |
| Hemoglobin | 15.6 | 13.5 - 17.5 g/dL |
| Hematocrit | 46.5 | 41.0 - 53.0 % |
| Mean Corpuscular Volume | 92.2 | 79.3 - 94.8 fL |
| Mean Corpuscular Hgb | 30.9 | 26.0 - 34.0 pg |
| Mean Corpuscular Hgb Conc | 33.5 | 31.0 - 37.0 g/dL |
| Red Cell Distribution Width | 14.3 | 11.5 - 14.5 % |
| Platelet Count | 219 | 150 - 450 10*3/uL |
| Mean Platelet Volume | 8.1 | 7.5 - 10.7 fL |
| MDW - Monocyte Distribution Width | 17.1 | <=20.0 |
| Neutrophils % | 73.5 (H) | 36.0 - 66.0 % |
| Lymphocytes % | 14.8 (L) | 24.0 - 44.0 % |
| Monocytes % | 9.4 | 0.0 - 10.0 % |

| | | |
|---|---|---|
| Eosinophils % | 1.5 | 0.0 - 5.0 % |
| Basophils % | 0.8 | 0.0 - 2.0 % |
| Neutrophils Absolute | 4.60 | 1.80 - 7.70 10*3/uL |
| Lymphocytes # | 0.90 (L) | 1.00 - 4.80 10*3/uL |
| Monocytes # | 0.60 | 0.00 - 1.10 10*3/uL |
| Eosinophils # | 0.10 | 0.00 - 0.70 10*3/uL |
| Basophils # | 0.00 | 0.00 - 0.20 10*3/uL |

Basic Metabolic Panel

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Glucose | 96 | 70 - 110 mg/dL |
| BUN | 18 | 9 - 20 mg/dL |
| Creatinine | 0.90 | 0.50 - 1.40 mg/dL |
| Est Glomerular Filtration Rate | 91.88 | >=60.00 mL/min/1.73m2 |
| Sodium | 133 (L) | 137 - 145 mmol/L |
| Potassium | 4.2 | 3.5 - 5.3 mmol/L |
| Chloride | 101 | 100 - 108 mmol/L |
| Carbon Dioxide | 22 | 22 - 30 mmol/L |
| Anion Gap | 10 | 8-16 mmol/L mmol/L |
| BUN/Creatinine Ratio | 20 | 12 - 20 mg/dL |
| Osmolality, Calculated | 268 (L) | 275 - 295 |
| Calcium | 8.8 | 8.4 - 10.2 mg/dL |

Pro BNP

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Pro BNP | 139 | 0 - 300 pg/mL |

Troponin I

Collection Time: 10/06/23 1:27 PM

| Result | Value | Ref Range |
|---|---|---|
| Troponin I | <12.00 | <=34.00 ng/L |

Principal Problem:
Precordial pain
Active Problems:
OSA on CPAP
Paroxysmal A-fib (HC Category) (HCC)
Obesity (BMI 30-39.9)
Dyslipidemia
CAD in native artery
S/P CABG x 2

**Recommendations:**

**Appropriate Use Criteria (AUC) Cardiac Catheterization - PCI Assessment Note**

**Patient:** William J Reynolds

**Patient Symptoms:** Symptomatic Chest pain / Unstable Angina

**Cardiac Catheterization Procedure Indications:** ACS >24 hours

**Stress Test Results: N/A**

**Is patient currently on two or more antianginal medications?** BB, Long act CCB, Long acting NTG or Ranolazine No

**Reason for no antianginal medication:** Intolerance

**CAD Presentation:** Unstable angina

The procedure(s) for today's encounter, risks, benefits, indications, and alternatives were discussed. All questions were answered. All want to proceed.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Interventional Cardiologist
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Progress Notes

Kayla at 10/7/2023 9:08 AM

MOON form reviewed and signed by patient.

Nurse Michaela, RN at 10/7/2023 5:49 AM

R groin dressing remains clean, dry, intact. No hematoma noted. RLE pulses remain palpable 2+. No complaints of pain since arrival to unit. Bed alarm on, call light within reach, all needs currently met.

## Discharge Instructions

J Hoff, MD at 10/6/2023 7:44 PM

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.

- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Cardiac/Diabetic.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**
- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.

- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

William J Reynolds has been referred for outpatient cardiac rehabilitation at LPOHH Tyler .
If you are not contacted by the referred cardiac rehab facility within the next week, please contact them at 903-606-4832.
Patient contact information was confirmed and will be faxed to the facility today.

**Patient Discharge Instruction Record**

I. Your **diet** will be: American Heart Association 1

II. Dietary Restrictions: American Diabetic Association Diet

III. The following **activities** are encouraged (or are acceptable):
1. Gentle walking on level ground
2. You may shower but **NO bathtub bathing for 2 days from the time of your last catheterization (angiogram).**
3. **Remove dressing** on the day after the catheterization (angiogram) if it were not removed in the hospital.
4. **Weigh daily**, if your doctor has instructed. (Call your Primary Care Provider for weight gain of 3 pounds in one (1) day or 5 pounds in 3 days.)
5. **Return to work** will depend on the type of procedure and the results. You may resume work without limitation on 10/09/2023 from a cardiac perspective. Please bring this note with you to work if your work requires a written statement of when you may return to work without limitation from a cardiac perspective. If you have other health issues that may prevent you from working, you will need to address those issues with the appropriate physician or provider.

**Activity limitations:**
These are guidelines. You also need to use common sense. Also, do not start or re-start an activity if another health care provider has recommended against it.

1. Limit strenuous activity of leg or wrist for 3 days after the last catheterization (angiogram) including aerobics, swimming, jogging, bicycling, bowling, dancing, rowing, stair-stepping.
2. Restrict stair-climbing for 3 days after the last catheterization (angiogram) if possible, if not, climb with your *non-cathed* leg, then bring the *cath* leg up to the same step.
3. Avoid pushing, pulling and lifting items greater than 10 lbs, for 3 days after the last catheterization (angiogram).
4. **NO driving** for 3 days after the last catheterization (angiogram). Someone must drive you home from the hospital.
5. **Customary sexual activity** may be resumed after 3 days after the last catheterization (angiogram).
6. Stop all tobacco use; for help quitting, call CHRISTUS Trinity Mother Frances.
7. Avoid straining for BM's for 7 days after the last catheterization (angiogram). You may use stool softeners as necessary.
8. Do not drink alcoholic beverages including beer or wine for 24 hours after the last catheterization (angiogram).
9. Do not make important decisions or sign important papers for 24 hours after the last catheterization (angiogram).
10. We recommend that you do not stay alone for the first 24 hours after the last catheterization (angiogram).
11. Avoid prolonged exposure, especially without appropriate clothing and climate control, to temperatures greater than 80 degrees Fahrenheit or less than 40 degrees Fahrenheit. There are no clear recommendation(s) for what amount of time is considered "prolonged exposure." I use 20 minutes as my definition of prolonged exposure. If you are exposed to these temperatures and feel poorly, you must seek a climate controlled area immediately.

IV. **Follow-up Care**: Telephone your doctor after your discharge for follow-up care. **Bring all medications in original container and medication list with you to your follow up doctor's appointments:**
*Please bring this form with you to your physician's office visit.

V. **Call your doctor** for any of the following:
1. Bleeding from the puncture site. Apply gentle pressure with a clean cloth and call your doctor or Emergency Medical Services.
2. If a knot or lump under the skin increases in size or causes pain.
3. Bruising or purple discoloration of the skin near the puncture site is common. However, if bruising appears to be worsening or moving down the leg rather than disappearing, call your doctor.
4. If the extremity appears pale or mottled in color, has numbness or tingling or feels cooler to touch compared to the opposite extremity.
5. Temperature above 101 degrees F.
6. Difficult breathing or chest pain.

VI. Follow-up will be arranged and detailed in the discharge documentation.

VII. Resume your metformin on 10/08/2023 with your evening dose.

## Sedation Documentation

Nurse Cassy, RN at 10/6/2023 3:50 PM

Post procedure time out completed with physician.

**Procedure(s) Performed/Plan of Care:**
LHC via RFA
DES to RCA
Sheath sutured in place.
Heparin given ACT therapeutic range
Plavix 600 given.

**Sedation/Procedural Medications:**
Sedation as well as procedural medications have been discussed and validated with physician.

**Intraprocedural Labs:**
Verbal orders for labs requested intra-procedurally have been read back for physician confirmation at time of order.

**Anticoagulation:**
Need for ongoing anticoagulation post procedure was discussed with physician. See Orders.

**Sheath Removal:**
Target ACT for sheath removal discussed. See Orders.

**Antiplatelet:**
Need for antiplatelet discussed with physician

**AKI/CIN Prevention:**
Pre-procedural hydration and intra-procedural fluid volumes discussed with physician.
MD verbalizes new orders for hydration will be placed as indicated by patient condition and plan of care.

# Immediate Post Op Note

J Hoff, MD at 10/6/2023 3:55 PM

**IMMEDIATE POST-OPERATIVE CARDIAC INTERVENTION NOTE:**

**NAME:** Mr. William Reynolds
**PROCEDURE DATE:** 10/6/2023

**PRIMARY CARE PROVIDER:** Buzbee, Thomas, MD
**REFERRING PROVIDER:** Dr. Marina Flaskas
**PRIMARY CARDIOLOGIST:** Dr. Marina Flaskas

**PRE-OPERATIVE DIAGNOSIS:** recent chest pain, significant ST elevation on electrocardiogram(s)
**POST-OPERATIVE DIAGNOSIS:** Same.
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.
10/6/2023: admitted out of Dr. Marina Flaskas' office with recent symptom(s) similar to before his ST segment elevation myocardial infarction and significant ST elevation on his electrocardiogram(s) despite being asymptomatic today.

**PROCEDURES PERFORMED:**
Aortic pressure measurement
Left heart catheterization
Left ventriculogram
Selective engagement and angiography of the left main coronary artery and right coronary artery
Selective engagement and angiography of the saphenous vein graft(s)
Selective engagement and angiography of the left subclavian artery
Selective engagement and angiography of the left internal mammary artery
Manual hemostasis will be obtained with adjunctive device(s) as needed
10/6/2023: percutaneous coronary intervention(s) of the proximal right coronary artery with a 4.5/22 mm Onyx drug eluting stent(s) post-dilated with a 4.5/22 mm Onyx balloon. A separate noncompliant balloon was not used due to the inflation size with the Synergy balloon.
10/6/2023: emergent cardiac catheterization due to dynamic ST elevation on the electrocardiogram(s) revealed a patent left internal mammary artery to left anterior descending, patent saphenous vein graft to the right posterior descending artery, patent right posterior descending artery stent, but very sluggish flow in the saphenous vein graft to the right posterior descending artery due to the small caliber of the vessel, 70% proximal left anterior descending, 80% proximal right coronary artery (60% visually but 80% based on stent inflation), ejection fraction = 65%, left ventricular end diastolic pressure = 13 mmHg.

Under my direct supervision, intravenous moderate conscious sedation was administered during the course of the procedure, with continuous monitoring of hemodynamic parameters. The total time of sedation was 56 minutes.

**COMPLICATIONS:** None

**EVENTS THAT CAN BE ASSOCIATED WITH THE PROCEDURE:** None

**ESTIMATED BLOOD LOSS:** 30 ml

**ANESTHESIA:** Intravenous conscious sedation
(Monitored Anesthesia Care if provided by Anesthesia)

**ANTICOAGULATION:** intravenous heparin

**SPECIMENS REMOVED:** None

**FINDINGS:**
See the post-operative diagnosis(es) and the updated Problem List.

**PLAN:**
1. A full note will follow.

James G. Hoff, MD, FACC
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Suite 4000
Tyler, TX 75702
Office: (903) 606-7000
Fax: (903) 606-7521

## Plan of Care

Nurse Genesis, RN at 10/7/2023 10:01 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Adequate for Discharge**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Adequate for Discharge**
**Problem: Cardiac Output Alteration**
**Goal: Improve-Cardiac Output Alteration**
Description: Change in or modification of the pumping action of the heart or blood vessels.
**Outcome: Adequate for Discharge**

Ming at 10/7/2023 8:07 AM

Patient education was provided on the following applicable areas:

-Outpatient cardiac rehab referral complete
-ADL
-Home exercise program
-Cardiac risk factor modification
-Substance use counseling
-Surgical precautions and restrictions
-HF
-Heart healthy nutrition
-Cardiac medications

Patient would like to attend CR at Christus LPOHH Tyler.
Patient contact information was confirmed and will be faxed to the facility today. Patient also provided with contact information to the facility.

Nurse Michaela, RN at 10/7/2023 3:04 AM

**Problem: Infection Risk**
**Goal: Stabilize- Infection Risk**
Description: Increased chance of contamination with disease-producing germs.
**Outcome: Stabilized**
**Problem: Physical Mobility Impairment**
**Goal: Improve-Physical Mobility**
Description: Diminished ability to perform independent movement.
**Outcome: Stabilized**

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

Re: **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record

LAW OFFICES OF J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

December 1, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Foods, Inc. - TX Location**

**SECOND APPEAL**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) July 21, 2023, termination or denial of his long-term disability benefits. In connection with his appeal for disability benefits, Mr. Reynolds provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

1. Dr. Marina Flaskas Medical Records (05/12/23 to 10/06/23) (001).
2. Dr. James Hoff Medical Records (10/06/23 to 10/07/23) (020).

All such evidence, described above and submitted here, is to be made part of the administrative record

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 21, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to John Soules Foods, Inc. - TX Location, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
>
> The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.

1. The Elimination Period:

a. begins on the first day of Disability; and

b. is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.

, the Insured Employee may return to work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.

2. Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to will not count towards the Elimination Period.

**ELIMINATION PERIOD**: calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a calendar day period.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

Main Duties include those job tasks:

1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:

1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or

2. whether a suitable opening is currently available with the Employer or in the local labor market.

Based on information obtained from your client's employer, occupational information contained within the *Dictionary of Occupational Titles* (DOT), and evaluation from vocational professionals, we have determined that your client's occupation as a Management Analyst is best defined as a Management Analyst in the national workforce. The material and substantial duties of a Management Analyst include but are not limited to the following:

- Analyzes business or operating procedures to devise most efficient methods of
- accomplishing work.
- Plans study of work problems and procedures, such as organizational change, communications, information flow, integrated production methods, inventory control, or cost analysis.
- Gathers and organizes information on problem or procedures including present operating procedures.
- Analyzes data gathered, develops information and considers available solutions or alternate methods of proceeding.
- Organizes and documents findings of studies and prepares recommendations for implementation of new systems, procedures or organizational changes.
- Confers with personnel concerned to assure smooth functioning of newly implemented systems or procedure.

Regarding physical capacity, a Management Analyst in the national workforce is a Sedentary physical capacity occupation. The definition of Sedentary work is Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

In order to be considered Totally Disabled, the medical evidence must support that your client would be unable to perform each of the main duties of your client's regular occupation. As such, in considering your client's eligibility for Long Term Disability benefits as of 08/05/2022, we evaluated whether your client would be restricted or limited from performing the main duties of your client's occupation as listed above.

Your client's entire file was reviewed upon appeal. Disability must be supported from 05/07/2022 forward, which was the focus of our determination.

**<u>Summary of Initial Claim Filing</u>**

Your client's initial claim forms state that your client was unable to continue working in your client's own occupation beyond 05/06/2022 due to reactions to severe stress.

Benefits were not approved after we determined your client is not Totally Disabled from performing the main duties of their occupation. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report from two independent physicians who are Board Certified in Psychiatry and Internal Medicine/Occupational Medicine. Our evaluation determined the medical records did not support restrictions and limitations that would render your client unable to perform the main duties of their occupation beyond 05/07/2022. For complete details please refer to our letter dated 12/16/2022.

**Summary of Appeal**

On 05/03/2023, your client filed an appeal in response to our determination to deny benefits. Additional information was submitted with your client's appeal, including office visit and progress notes from Pulmonology and affidavits from family members.

For details of the medical records that were reviewed and the determination of your client's restrictions and limitations, please refer to the report that was sent to you on 06/28/2023. The report was sent to you to afford an opportunity for you or your client's treating physician to respond or rebuttal. A response letter was received on 07/11/2023 that there would not be a response or rebuttal and to proceed with determination.

**Appeal Decision**

We understand that your client has been diagnosed with reactions to severe stress. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, as well as a review of any restrictions or limitations that were identified during our review process, determined the medical records do not support restrictions and limitations that would render your client was unable to perform the main duties of your client's own occupation beyond his date of disability of 05/07/2022, through his 90 day elimination period of 08/05/2022 and beyond.

Review of the medical records and two prior peer reviews in Psychiatry and IM/Occ Med did not find restrictions or limitations to preclude your client from performing in his own occupation. The clinical review on this appeal agreed with the latest Psychiatric peer in that there is no indication of further escalation of care or treatment by a psychiatrist and your client did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. Therefore, there is no new compelling evidence that would change the prior determination.

In regard to his physical conditions, the clinical reviewer also agreed with the recent IM/Occ peer in that the evidence failed to support multiple conditions that would translate in functional impairment of 05/07/2022 forward.

Therefore, we find that your client is not "Totally Disabled" as defined by his policy and listed on page one of this letter.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of records and other information relevant to the claim free of charge.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 11/02/2025.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫįóóǫéą́ąǫąíę́ę.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 21, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to John Soules Foods, Inc. - TX Location, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
>
> The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.

1. The Elimination Period:

a. begins on the first day of Disability; and

b. is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.

, the Insured Employee may return to work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.

2. Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to will not count towards the Elimination Period.

**ELIMINATION PERIOD**: calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a calendar day period.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

Main Duties include those job tasks:

1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:

1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or

2. whether a suitable opening is currently available with the Employer or in the local labor market.

Based on information obtained from your client's employer, occupational information contained within the *Dictionary of Occupational Titles* (DOT), and evaluation from vocational professionals, we have determined that your client's occupation as a Management Analyst is best defined as a Management Analyst in the national workforce. The material and substantial duties of a Management Analyst include but are not limited to the following:

- Analyzes business or operating procedures to devise most efficient methods of
- accomplishing work.
- Plans study of work problems and procedures, such as organizational change, communications, information flow, integrated production methods, inventory control, or cost analysis.
- Gathers and organizes information on problem or procedures including present operating procedures.
- Analyzes data gathered, develops information and considers available solutions or alternate methods of proceeding.
- Organizes and documents findings of studies and prepares recommendations for implementation of new systems, procedures or organizational changes.
- Confers with personnel concerned to assure smooth functioning of newly implemented systems or procedure.

Regarding physical capacity, a Management Analyst in the national workforce is a Sedentary physical capacity occupation. The definition of Sedentary work is Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

In order to be considered Totally Disabled, the medical evidence must support that your client would be unable to perform each of the main duties of your client's regular occupation. As such, in considering your client's eligibility for Long Term Disability benefits as of 08/05/2022, we evaluated whether your client would be restricted or limited from performing the main duties of your client's occupation as listed above.

Your client's entire file was reviewed upon appeal. Disability must be supported from 05/07/2022 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

Your client's initial claim forms state that your client was unable to continue working in your client's own occupation beyond 05/06/2022 due to reactions to severe stress.

Benefits were not approved after we determined your client is not Totally Disabled from performing the main duties of their occupation. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report from two independent physicians who are Board Certified in Psychiatry and Internal Medicine/Occupational Medicine. Our evaluation determined the medical records did not support restrictions and limitations that would render your client unable to perform the main duties of their occupation beyond 05/07/2022. For complete details please refer to our letter dated 12/16/2022.

**Summary of Appeal**

On 05/03/2023, your client filed an appeal in response to our determination to deny benefits. Additional information was submitted with your client's appeal, including office visit and progress notes from Pulmonology and affidavits from family members.

For details of the medical records that were reviewed and the determination of your client's restrictions and limitations, please refer to the report that was sent to you on 06/28/2023. The report was sent to you to afford an opportunity for you or your client's treating physician to respond or rebuttal. A response letter was received on 07/11/2023 that there would not be a response or rebuttal and to proceed with determination.

**Appeal Decision**

We understand that your client has been diagnosed with reactions to severe stress. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, as well as a review of any restrictions or limitations that were identified during our review process, determined the medical records do not support restrictions and limitations that would render your client was unable to perform the main duties of your client's own occupation beyond his date of disability of 05/07/2022, through his 90 day elimination period of 08/05/2022 and beyond.

Review of the medical records and two prior peer reviews in Psychiatry and IM/Occ Med did not find restrictions or limitations to preclude your client from performing in his own occupation. The clinical review on this appeal agreed with the latest Psychiatric peer in that there is no indication of further escalation of care or treatment by a psychiatrist and your client did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. Therefore, there is no new compelling evidence that would change the prior determination.

In regard to his physical conditions, the clinical reviewer also agreed with the recent IM/Occ peer in that the evidence failed to support multiple conditions that would translate in functional impairment of 05/07/2022 forward.

Therefore, we find that your client is not "Totally Disabled" as defined by his policy and listed on page one of this letter.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of records and other information relevant to the claim free of charge.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 11/02/2025.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hólǫ́. Kojį' hódíílnih áǫį̨óóǫéąą́ǫąíę́ę.

FILEVINE

# Fax Confirmation

**To:** (877) 843-3950

**From:** (225) 201-8313

**Doc:** Fax_Reynolds - Ltr to Lincoln Req Resume Review - 07-05-23_2023-07-05-0559-PDT.pdf

**Pages:** 1

**Sent:** July 5, 2023 5:59 AM PDT

**Rec'd:** July 5, 2023 6:00 AM PDT

JUL 11 2023

**LAW OFFICES OF J. PRICE MCNAMARA**

**J. PRICE McNAMARA**
**10455 Jefferson Highway, Ste. 130**
**Baton Rouge, LA 70809**
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
**www.jpricemcnamara.com**

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

July 5, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

In response to your letter of June 28, 2023, this is to advise that Mr. Reynolds will not be submitting additional evidence. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

CERTIFIED MAIL

RICHMOND VA 230
5 JUL 2023 PM 6 L

9414 8118 9956 2218 3704 62

PS Form 3800 6/02

$6.850
US POSTAGE
FIRST-CLASS
FROM 70809
07/05/2023
stamps endicia
062S0005843986

JUL 11 2023

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
Attn: Susan McShane
8801 INDIAN HILLS DR
OMAHA NE 68114-4066

68114-406699

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

July 5, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re:** **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

In response to your letter of June 28, 2023, this is to advise that Mr. Reynolds will not be submitting additional evidence. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara
**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 28, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This letter is in regard to your client's appeal for Long Term Disability benefits.

As part of your client's appeal review, your client's medical information was reviewed by a health care consultant. We are enclosing a copy of the report with this letter for you/your client to review prior to completion of our appeal decision. We are also enclosing the two prior peer reviews for your reference.

You/your client may wish to provide this assessment to his/her treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 07/19/2023. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your client's disability claim at this time as we want to provide your client every opportunity to review our assessment and provide a response.

If we do not receive a response by 07/19/2023 then we will render a decision based on the information currently in the file.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We are allowing you time to submit additional information. Due to these special circumstances an extension of time to process your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Date: June 27, 2023

Subject: Appeal Nursing Memorandum

Claim #: 1220082997
Claimant: William Reynolds
Date of Birth:
Date of Disability: 5/7/22

Review of medical records on file completed. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review.

Clinical Assessment:
The EE stopped working on 5/7/22 due to acute stress reaction, adjustment disorder with anxiety, and depression related to his cardiac condition. He has history of acute myocardial infarction (heart attack) 10/2021 and subsequent heart attack 12/2021 status post stent placement. An echocardiogram (evaluate the structures of the heart) 1/6/22 revealed abnormal diastolic function (left ventricle does not fill properly reducing the amount of blood pumped to the body) and normal ejection fraction (heart's ability to pump blood out of the heart). Co-morbid conditions include coronary artery disease, atrial fibrillation (abnormal heartrate), benign prostatic hypertrophy (enlarged prostate), insomnia, elevated A1C (measures average blood sugar), obstructive sleep apnea (intermittent air flow blockage while sleeping) treated with continuous positive airway pressure (CPAP) (delivers constant steady air pressure while sleeping), and hypothyroidism (underactive thyroid) that are stable/well controlled with medication management.

The EE saw Dr. Carter (Family Medicine) on 4/28/22 for FMLA evaluation. He reports stress for the past 7 months since bypass surgery; he was doing cardiac rehab and then he had another small heart attack requiring stent and this inhibited him from ability and motivation to do cardiac rehab; this has also impacted the progress he was making with his depression. He went back to work as soon as he could and notes issues since returning to work (pressure at work and increased workload); he does not feel he has recovered from his heart attacks or subsequent depression/anxiety, and he is now having difficulty doing his job; he needs to stop and do physical and mental rehab necessary to function in his current position. His blood pressure and oxygen level are normal. On exam, he alert and oriented, in no acute distress. He denies suicidal or homicidal ideation. Remaining exam is unremarkable. Recommend time off for physical rehab and mental health with counseling, medications, and exercise. FMLA paperwork completed. An APS dated 5/5/22 does not provide specific R/Ls. Treatment cardiac rehab, PT, and mental health counseling. Return to work 7/18/22-8/1/22. The EE saw Parker FNP (Family Medicine) on 6/21/22 for complaints of low back pain that started last week. He reports worsening back pain yesterday with certain movements. He denies known injury; he did yard work this past week but does not recall specific movement that caused pain. he denies radiation to buttock or legs, and no weakness or numbness. EE reports walking 2-4 miles a day for exercise. On exam, he is alert and oriented in no acute distress. Back exam documents full ROM mild tenderness lumbar paraspinals, mostly over left sacroiliac joint. Positive straight leg raises (assess presence of herniated disc/evaluate for nerve root sensitivity) on the left. Strength and sensation are intact. Plan is to start Flexeril (muscle relaxer) and over-the counter analgesic medications (Voltaren gel, Tylenol). On 7/26/22, he reports he is slowing progressing with his physical endurance, shortness of breath, and ability to do activities of daily living (ADLs) as well as gradual improvements in depression and anxiety; he still feels anxious about returning to work and is due to discuss options with employer. He stopped Lexapro (depression, anxiety) as he does not feel it was helping; he continues to take Wellbutrin (depression) and only takes Xanax (anxiety) 3-4 times a month. He still reports minimal libido, and his wife is nervous about that level of exertion, and she is also not comfortable with him being outside alone. Atrial fibrillation (abnormal heartbeat), EE was cleared to stop Eliquis (blood thinner) by cardiology last week. He reports sleeping well with Restoril (sleep aid). His vital signs are stable. There are no documented exam findings. Plan is to

continue current medications and recommend FMLA extension to 8/1/22. An APS dated 7/26/22 documents R/Ls to include limitations in concentration, short-term memory, and ability to perform high level analysis. An APS dated 8/8/22 documents diagnosis coronary artery bypass graft (CABG) and acute stress reaction. AP opines EE cannot return to work due to mental and physical deconditioning; he cannot return to his position due to complex mental requirements and high stress work environment. Objective findings include flat affect, tearful, anxiety, and shortness of breath and fatigue with walking into office. R/Ls include physical exertion, complex decision making, high stress. No return to work.
The EE saw Dr. Carter on 9/7/22 to discuss disability. He reports he is not going to return to work; he gets overwhelming anxiety at the thought of returning to work. He has been gradually increasing exercise capacity at home supervised by his wife. EE feels he needed to work longer as planned to afford retirement however the inability to return to work has put him in a financial bind and he is hoping to qualify for long-term disability to make up for lost wages due to medical disability. Limited exam notes EE to be alert and oriented, in no acute distress. Plan is to complete LTD paperwork. On 9/9/22, EE presents to discuss LTD. He reports gradual recovery from CABG; his wife still won't let him work in the yard on his own. He reports ongoing anxiety/stress about returning to work and he gets anxious when meeting employer at gate to pick up his things; he was planning to work several more years. Exam is unremarkable/unchanged. LTD paperwork completed.

The EE saw Jorden LPC (Therapist) on 10/17/22 for adjustment disorder with mixed anxiety and depressed mood. General mild anxiety with depressive features. On exam, he is alert and oriented with anxious mood and appropriate affect, fair judgement/insight. His memory is intact, attention is good, thought process/content is normal, speech is normal. Plan is to attend therapy every 2 weeks.

The EE saw Dr. Carter via telehealth on 10/23/22 for follow up depression. He reports he is in a "funk". He just had 2nd session with therapist. He has been taking Wellbutrin and took Lexapro for a short time without know side effects. Plan is to continue Wellbutrin and restart Lexapro and continue counseling. Check in in 2 weeks with follow up in 1-2 months.

A letter from Jorden LPC dated 11/8/22 documents EE's participation in counseling 11/17/21 and 12/1/21, and most recently 10/13/22, 10/25/22, 11/8/22 for severe stress reaction and adjustment disorder with mixed anxiety and depression.

An independent medical peer review was completed on 11/24/22 by Dr. Ellis (Internal Medicine/Occupational Medicine) who opined EE would have R/Ls 8/5/22-4/30/23 to include occasional lift, carry, push, or pull up to 10 lbs., climb stairs, stoop, squat, kneel or crawl. He cannot stand or walk for more than 2 hours in an 8-hour workday, climb ropes, ladders, or scaffolds. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder. Please see report for details.

An independent medical peer review was completed on 12/12/22 by Dr. Choi (Psychiatry) who opined the medical records lack severe symptoms and objective findings to support psychiatric impairment. Please see report for details.

Visit summaries from Dr. Johnson indicate EE was seen on 1/17/23 and 2/8/23 for his medical conditions including sleep disturbance, depression, in remission, high cholesterol, heart disease, atrial fibrillation, sleep apnea, high blood pressure, shortness of breath, fatigue, increased blood sugar, and obesity BMI 38.5 (normal 18.5-25). His vital signs are stable and oxygen level is normal. There are no documented exam findings or treatment plans.

Visit summary from Dr. Wang-Kocik (Pulmonology) indicates EE was seen on 2/20/23 for sleep apnea. His vital signs are stable and oxygen level is normal. There are no documented exam findings. Plan for follow up in 3 months.

A letter from Dr. Carter dated 3/27/23 opines the EE is disabled from any time of gainful employment.

The EE saw Dr. Leffler (Internal Medicine) on 4/6/23 for follow up depression. He reports he is feeling better and has the desire to do things; he continues to take Wellbutrin and Lexapro, and reports trazadone is helping with his sleep. Exam findings appear to be normal (distorted image). Mental status exam is unremarkable. EE is noted to be stable. He denies suicidal or homicidal ideation. Plan is to continue medications and continue to increase social activities. He is counseled on diet and exercise for weight loss.

The EE saw Dr. Flakas (Cardiology) on 5/12/23 for follow up CAD and shortness of breath (dyspnea) with exertion. He reports worsening shortness of breath with exertion; he is doing well on medication management. He denies chest pain. He reports seeing pulmonology and being diagnosed with chronic obstructive pulmonary disease (COPD) (inflammatory lung disease causing obstructive airflow from the lungs) and noted significant improvement since starting inhalers though he is not back to baseline. Vital signs are stable. On exam, he is noted to be alert and oriented, in no distress. Physical exam is unremarkable including normal cardiac and respiratory exams. EKG on this date is abnormal. Plan is to start Imdur (chest pain) and admit for left heart catheterization (evaluate for heart conditions). He is also referred for cardiac rehab.
A visit summary 5/12/23-5/14/23 documents EE's hospitalization for ST segment depression. On discharge, he is prescribed Plavix (blood thinner) and nitroglycerin (chest pain). Plan for follow up with cardiology on 6/26/23.

The medical records document ongoing care and treatment for acute stress reaction, adjustment disorder with anxiety, and depression related to his cardiac condition. The EE is treated by Dr. Carter (Family Medicine) and Dr. Leffler (Internal Medicine) as noted above. There are no mental status exam documenting impairing psychopathology. Treatment consists of medication management (Wellbutrin, Lexapro, Xanax) with noted improvements. Additional treatment includes psychotherapy by Jorden LPC however there is a significant gap in treatment from 12/1/21-10/13/22. Mental status exam is normal except noted anxious mood. From a mental health standpoint, although the EE reports stress and anxiety that appears to specific to returning to the workplace, the medical exam documentation does not reflect significant abnormal findings or functioning such as acute mood instability, disturbance in thinking or behavior, or cognitive deficits (memory, concentration) that would support restrictions or limitations from 5/7/22 and forward. All examinations, EE is noted to be alert and oriented without documentation of cognitive slowing or other observable issues. There is no indication of further escalation of care or treatment by a psychiatrist and EE did not require higher level of care such as inpatient admission, partial hospitalization, or intensive outpatient programs due to a deterioration in his mental status. There is no new compelling evidence that would change the prior determination. NDC agrees with prior peer review.

The medical records document ongoing care and treatment following CABG and stent placement in 2021 associated with fatigue and shortness of breath with exertion. EE has a history of multiple medical conditions that are stable with medication management and CPAP as noted above. There are no documented side effects to any medications. Most recent ECHO 1/6/22 showed normal ejection fraction. The EE is treated by Dr. Carter (Family Medicine) without significant exam findings. His oxygen level is consistently normal. The records also indicate EE is followed by cardiology and he is noted to be doing well from a cardiac standpoint and his blood thinner is discontinued. Most recent records from family medicine and pulmonology are visit summaries without clinical exam findings or treatment plans. During follow up visit 5/12/23 with Dr. Flakas (Cardiology), EE reports dyspnea with exertion. He also noted recent diagnosis of COPD treated with inhalers with significant improvements. Exam is unremarkable however EE required hospitalization 5/12/23-5/14/23 for further diagnostic testing due to abnormal EKG. Treatment consists of restarting blood thinner, and he is prescribed nitroglycerin. The medical evidence fails to demonstrate continued dyspnea/shortness of breath at rest and/or with activity with symptomatic hypoxia, hypoxemia, pallor, cyanosis, clubbing, orthostasis, decompensated

hypotension, pulmonary and dependent edema, dizziness, vertigo, witnessed syncope/observed altered mental status changes, perfusion deficits or significant, sustained cardiac rhythm pathology that would translate into a functional impairment 5/7/22 and forward except during most recent hospitalization and diagnostic testing. The R/Ls outlined in detail by peer reviewer Dr. Ellis (Internal Medicine/Occupational Medicine) continue to be supported.

Amy M. RN, CCM
Nurse Disability Consultant, Lincoln Financial Group

Clinical Review Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| John Soules Foods, Inc | William Reynolds | 1220082997 |

| | | | |
|---|---|---|---|
| **Report Date:** | 11/24/2022 | | |
| **Referred By:** | Joann Morfeld | **Claimant DOB:** | |
| **Referral Date:** | 11/16/2022 | **Job Title:** | Reports Analyst |
| **Due Date:** | 12/01/2022 | **Medical/ Surgical Condition:** | Neurological disorder, reactions to severe stress |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 05/06/2022 |
| | | **DOD:** | 05/07/2022 |
| **Physical Demands:** | | **BBD:** | 08/05/2022 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**

Response 1:

1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**

Response 2:

Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**

Response 3:

The medical evidence reasonably supports the following restrictions and limitations:

<u>From 8/5/22 to 4/30/23:</u>

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.

He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.

Date letter sent to AP: 11/24/2022.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**
The Claimant has sustained two heart attacks and has had significant deconditioning as a result. His echocardiogram on 1/5/22, indicated a normal ejection fraction with evidence of diastolic dysfunction. However, the Claimant has not been diagnosed with congestive heart failure. Most of his symptomatology appears to arise from physical deconditioning. It is notable, however, that his records indicate that he walked 2-4 miles per day, indicating that he has significant physical capacity. His PCP, Dr. Carter, has indicated that his impairment is largely psychological in nature, with a secondary role of his physical deconditioning. An evaluation of the Claimant's alleged psychological impairments is outside the scope of this Internal Medicine review. Restrictions and limitations as outlined are reasonably supported. It is unclear whether the Claimant will have sustained improvement of his physical capacity in the foreseeable future.

A chest x-ray performed on 4/20/22 indicated evidence of interstitial markings suggestive of edema or an infiltrate. The clinical significance of this finding is unclear. If additional pulmonary testing has been performed, including pulmonary function studies, 6 minute walk test or a CT scan of the chest, I would be happy to review these findings.

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**
The Claimant is a 69 year old reports analyst with a history of coronary artery disease, obstructive sleep apnea, anxiety, depression, benign prostatic hyperplasia, and hypothyroidism who sustained a myocardial infarction in October 2021, for which he underwent coronary artery bypass grafting. He was subsequently referred to cardiac rehab, but sustained a second myocardial infarction, for which he underwent angioplasty on 11/19/21. On 1/5/22, his echocardiogram demonstrated an ejection fraction of 65% with no evidence of regional wall motion abnormality. He had grade 2 diastolic dysfunction. He has a history of atrial fibrillation well managed without Metoprolol and Amiodarone. He has reported ongoing dyspnea on exertion and decreased mobility.

On 4/20/22, he reported cough and fatigue. His chest x-ray revealed scattered interstitial infiltrates secondary to edema or infiltrates.

On 6/21/22, he was seen by PA Rebecca Parker, and reported low back pain that started the prior week, worse the day before with certain movements especially if he twists or steps down. He reported that he walks for 2 to 4 miles per day. Examination revealed full range of motion of the lumbar spine, mild tenderness to the lumbar paraspinals, and over left sacro-iliac joint. Moist heat, stretching, Tylenol, Voltaren and Flexeril were recommended.

He has been diagnosed with depression and anxiety and has reported reluctance with returning to work because of decreased concentration and concerns that a return to work may exacerbate his psychological symptoms. He has been treated with Alprazolam, Temazepam and Wellbutrin. He is being seen by a psychotherapist.
---------------

11/11/21 Clinton Carter, MD. Virtual visit.
MDD. Noted by his wife. Mood changes fast. Gets angry. Feels like a failure. Not very motivated. Needs his wife to get up and go. Internal monologue is fairly frustrated with the slow and difficult recovery.
OSA. Using CPAP.
Chest pain. Open heart surgery 6 wks ago. Starting cardiac rehab this week. Getting a severe cough with rehab, stress, and someone mentioned it may be related to a nerve going to the diaphragm that can get damaged during surgery. Does not like using incentive spirometry. Causes coughing.
Ass: MDD. Continue Wellbutrin. Start Lexapro 10 mg daily. See about getting counseling. Could take a year to fully recover from cardiac surgery.
Continue CPAP.
Chest pain. 11/11/21 Dr. Turner states may return to regular activity with no restrictions. Recommend incentive spirometry and rehab. Could take a year from open heart surgery
Pantoprazole

1/5/22 Echocardiogram
Normal LV size. EF 65%. No regional WMA. Trace MR.
Grade 2 diastolic dysfunction

3/15/22 Danyel Kush, FNP
A fib has been stable off Amiodarone and Metoprolol. More tired since he has been on Metoprolol.
BPH. Still has some nocturia. Urinary stream stable with Flomax.
Able to empty bladder fully
CAD. Had a double bypass 10/2/21. Completed rehab then had a stent placed 11/19/21.
Told by cardiology that he needed to walk 30 mins per day
Meds: alprazolam. Clopidogrel. Flomax, levothyroxine, Lipitor. Metoprolol. Sildenafil. Temazepam. Wellbutrin.

4/20/22 Danyel Kush, NP
c/c cough, fatigue
increased fatigue x 7 mths. Since CABG has not felt the same. Placed on Lexapro in Oct. and Wellbutrin make his feel more flat. Did not feel right with attempted wean off Wellbutrin
sleeping well with CPAP.
Wife noticed he is not himself.
Sleeps well with CPAP.
URI sx: had sore throat dry cough headaches x 3 d.
Shortness of breath slightly worse over the last 3 days
Seen feb 2022. Cardiac w/u nl.

4/20/22 chest xray
Scattered interstitial opacities due to edema or infiltrate

4/28/22 Clinton Carter, MD
c/c FMLA eval
heart attack and bypass surgery sept/oct, doing cardiac rehab and had a small heart attack requiring a stent. Greatly inhibited motivation to do cardiac rehab.
Under increased scrutiny at work since returning the second time as he is making more mistakes. Increased volume so making more mistakes. Fears he is now mistake prone. Feeling extra pressure: second guessing himself, which slows him down and likely causes more mistakes. has anxiety attacks prior to work. Does not feel he fully recovered from the 2 heart attacks.
Needs to stop and do the physical and mental rehab.
Ass: MDD. Exacerbated to the open heart surgery and second heart attack
Incomplete rehab
Amplified by increased pressure at work.
Recommend time off work for physical rehab up to twice a day
FMLA ppw filled out.

5/5/22 STD Physician Statement
CABG. Acute stress reaction
Acute MI 10/2021. Returned to work w/o mental and physical recovery
CABG
Rehab interrupted by 2nd MI. acute stress and fatigue making him unable to work.
Flat affect, tearful. DOE entering the office.
Able to rtw full time on 5/5/22.

6/21/22 Rebecca Parker, PA-C
LBP started last week, worse yesterday, worse with certain movements especially if he twists or steps down. No known injury
Lumbar strain 14 yrs ago
Not able to take NSAIDs.
Denies radiation, numbness, weakness. denies bladder and bowel incontinence.
Alcohol 8-10 glasses of wine. No drug use. Former smoker.
Exercise 2-4 miles per day.
Exam: Back: FROM. Mild tenderness lumbar paraspinals. Mostly over left SI jt.
Ass: lumbago. Warm moist heat, gentle stretches
PL: Tylenol. Voltaren, prn. Flexeril

7/26/22 Clinton Carter, MD
CAD. Repeat STEMI 12/2/21, stented.
Attempted to RTW. Concentration, speed and memory speed of calculations was inhibited.
Has been on STD for further physical and mental rehab for 12 weeks.
STD stopped payment at 10 weeks, needs an extension
Slowly progressing in physical endurance, shortness of breath, and ability to do ADLs.
Gradually improving depression and anxiety.
Feels anxious about returning to his position due to discuss with HR to discuss options.
Did not feel Lexapro was helping so stopped it. Still on Wellbutrin. Feels he is gradually improving.
Needing Xanax 3-4x/mth

Sleeping well with Temazepam.
Ass: CAD. Continue mental and physical rehab. Follow up with cardiology last week was good.
STD form filled out. A fib. Hypothyroid. MDD. Continue Wellbutrin

7/26/22 Clint Carter, MD
Acute MI 10/2021, s/p CABG, then blocked graft with 2nd MI and stent, interrupted cardiac rehab, depression, fatigue, decreased concentration
Limitations: concentration, short term memory
Restrictions: ability to perform high level analysis.

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.
Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
Advised to stop work 4/28/22.
Prognosis poor. Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
c/c disability discussion
is not going to be able to rtw. Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD.
no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job. Gets anxious meeting them at the gate to pick up some of his things.
Ass: reaction to severe stress.
Unable to rtw. Continue to address anxiety. Will fill out LTD ppw.

10/17/22 MSE Sara Jorden
Ass: adjustment disorder with mixed anxiety and depressed mood.

**Electronically Signed:** *Lenworth Ellis*
**Lenworth Ellis, MD, MPH.**
**Board Certified, Internal Medicine & Occupational Medicine.**
**Consulting Physician.**

7

1220082997

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

**December 12, 2022**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: Adjustment d/o mixed anxiety and depression**

**DOD: 5/7/2022**

**DOR: 11/21/22**

**Job Title: Reports Analyst**

**ECN #: 225143-1**

**Specialty: Psychiatry**

**Steven Choi, DO**
***Board Certified in Psychiatry***

**CLAIMANT**: William Reynolds
**REVIEWER**: Steven Choi, DO
**ECN#:** 225143-1
**CLAIM#:** 1220082997
**DATE OF INJURY:** 05/07/2022
**DATE OF SERVICE:** 12/12/2022

## PEER REVIEW

## MEDICAL INFORMATION REVIEWED

- 09/29/2021 – Job Description
- 11/11/2021 – 10/23/2022 – Clinton Carter, MD, Office Notes
- 01/06/2022 – Christus Health, Echo Report
- 02/21/2022 – 04/20/2022 – CPL Laboratory Report, Lab Report
- 02/22/2022 – 03/15/2022 – Danyel Kush, FNP, Office Notes
- 02/23/2022 – Trinity Clinic Cardiology, EKG Report
- 03/15/2022 – Danyel Kush, FNP, EKG Report
- 04/20/2022 – Tyler Open MRI, X-ray of the Chest
- 05/05/2022 – Clinton Carter, MD, Attending Physician Statement
- 05/06/2022 – Clinton Carter, MD, Short Term Disability Claim Form Statement of Employee
- 06/21/2022 – Rebecca Parker, FNP-C, Office Note
- 08/08/2022 – Clint Carter, MD, Physician's Statement

## CLINICAL SYNOPSIS

The claimant is a 69-year-old male who was primarily medically treated up to 10/23/2022 for depression and anxiety. He underwent psychotherapy, counseling and medical treatment. The summary includes the claimant's diagnoses and treatment from 09/29/2021 to 10/23/2022. The diagnoses were adjustment disorder with mixed anxiety and depression. He underwent counseling, cognitive behavioral therapy and medical treatment.

## JOB DESCRIPTION:

The claimant worked as retail project analyst at John Soules Foods. The responsibilities included as follows - item management of inventory, ordering and forecast strategies, purchase order tracking and management, costing accuracy, appointment scheduling, presentations, design to develop metrics and reports to drive key business, making decisions, sales analytics and forecasting, sales reporting and development, promotion fulfillment, and other duties as assigned. The job required following skills and abilities such as excellent organizational, communication and interpersonal skills, excellent problem-solving skills, work well under high pressure situations, comfortable in fast-paced environment, adapting easily and quickly, communicate complicated situations clearly and concisely, strong attention to detail, ability to maintain accurate records and reports, self-starter and ability to manage oneself. The job involved long extended periods of time sitting, reviewing and calculating data on computer.

**DIAGNOSTIC TESTING**

01/06/2022 – Christus Health, Complete Echo was documented**.**

02/21/2022 – 04/20/2022 – CPL Laboratory Report, Laboratory Investigations were documented.

02/23/2022 – Trinity Clinic Cardiology, EKG was performed. The impressions were:

1. Sinus Rhythm slow
2. First degree AV block limited
3. Slight high – lateral repolarization disturbance, consider ischemia, LV overload, or specific change
4. Borderline ECG

03/15/2022 – Danyel Kush, FNP, EKG Report was documented.

04/20/2022 – Tyler Open MRI, X-ray of the Chest was performed. The impression was:

1. Scattered interstitial opacities due to oedema or infiltrate

**OFFICE VISITS**

11/11/2021 – Clinton Carter, MD, Telehealth Note. Complaints: The claimant presented with depression, cough, and for cardiac rehab. He also reported fast mood changes, getting angry easily, feeling of failure, lack of motivation, frustrated internal monologue with slow difficult recovery, obstructive sleep apnea, and using continuous positive airway pressure machine (CPAP), chest pain following cardiac surgery post six weeks, and got severe cough with rehabilitation on using spirometry. Exam: No exam documented. Dx: Major depressive disorder, obstructive sleep apnea, and chest pain. Plan: Advised to continue Wellbutrin 300, recommended to start Lexapro 10 daily, and Pantoprazole Sodium 40 mg delayed release, SI/HI warning given, continue CPAP for obstructive sleep apnea, recommended incentive spirometry and rehab as directed, and may take a fully year to recover from cardiac surgery.

02/22/2022 – Danyel Kush, FNP, Office Note. The claimant presented to have labs drawn and urine sample. He tolerated the procedure well.

03/15/2022 – Danyel Kush, FNP, Office Note. Complaints: The claimant presented for chronic disease follow-up and presented with atrial fibrillation which was stable with medications, he had some nocturia but was manageable, urinary stream was steady with Flomax daily, was able to empty the bladder fully, insomnia, more tired recently with time changes, also made dietary changes with eating low-carbs due to elevated HbA1c, remained compliant with continuous positive airway pressure machine (CPAP), use for obstructive sleep apnea, and had been taking medications for hypothyroidism. Exam: Well-appearing, no acute distress, lungs were clear to auscultation bilaterally with good air flow, regular rate and rhythm with no murmurs, gallops or rubs, no focal deficit, strength and sensation intact, alert, oriented to time, place and person, and appropriate psyche. Dx: Preventive health care, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1c, obstructive sleep apnea, low vitamin D levels, coronary artery disease, and hypothyroidism. Plan: Advised to continue with CPAP machine, encouraged to take over-the-counter Vitamin D supplement, increased levothyroxine to 75 mcg, and repeat labs thyroid test.

04/20/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported increased feeling of fatigue since last seven months, also reported cough, anhedonia, decreased appetite, increased sleep, feeling of sadness, he tried weaning off Wellbutrin in past but did not feel right, was sleeping well with CPAP, his increased thyroid level caused fatigue, sore throat, dry cough, headache, no fever or chills, shortness of breath slightly worse since three days prior, had occasional wheeze, he declined cardiac rehab in the past

post- CABG, was not feeling motivated and felt lazy, tried to walk 30 minutes per day but reported to stop frequently causing increased frustration. He had past medical history of atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1c, obstructive sleep apnea, low vitamin D levels, coronary artery disease, insulin resistance, wearing hearing aids in both the ears and hypothyroidism. The past surgical history included left biceps tendon repair, cataract repair and coronary artery bypass graft. "The Report was Incomplete."

04/28/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported being through a lot of stress due to heart attack and bypass surgery in September/October. He also reported inhibited ability/motivation to do cardiac rehab which made him feel more depressed, feared about work reputation of being more prone to mistakes, felt extra pressure and going to die, did not feel that he was recovered from two heart attacks, subsequent anxiety/depression, and difficulty fulfilling his work obligations. Exam: Well-appearing, no acute distress, alert and oriented to time, place and person. Dx: Major depressive disorder. Plan: Recommended some time off work for physical rehab twice a day as well as time to focus on mental health with counseling, medications and exercise.

05/05/2022 – Clinton Carter, MD, Attending Physician Statement. The claimant reduced work ability on 01/01/2022. The claimant stopped working since 04/28/2022. The claimant's return-to-work date was between 07/18/2022 to 08/1/2022. His prognosis was good.

05/06/2022 – Clinton Carter, MD, Short Term Disability Claim Form Statement of Employee. The claimant's last working date was 04/22/2022.

06/21/2022 – Rebecca Parker, FNP-C, Office Note. Complaints: The claimant reported low back pain worsened with certain movements especially on twisting or stepping down wrong and on trying to turn to side on bed with no known injury, was not able to take non-steroidal anti-inflammatory drugs due to blood thinners, took muscle relaxers in the past and was doing well, and denied radiation to buttock or legs, numbness or bladder or bowel incontinence. He had past medical history of left hip pain with joint and back pain, lumbar strain on the same side 14 years back which improved on one week bedrest. Exam: He had full range of motion in the back, mild tenderness to lumbar paraspinals, tenderness over the S1 joint, and straight leg raise was positive over the left. Dx: Lumbago. Plan: Recommended warm moist heat and gentle stretches, Tylenol for arthritis, Voltaren gel if needed, Flexeril 10 mg thrice a day, was advised to call if symptoms persist or worsen, and consider chiropractic therapy if not improving.

07/26/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant presented for cardiac recovery follow-up, he had slowly progressed with his physical endurance, short of breath, and ability to do ADLs, gradually improving with depression and anxiety, felt anxious about returning to his work, was doing well with hypothyroid as the dosage was increased to 75 mg, reported minimal libido and was sleeping fairly well for most part. Stopped taking Lexapro, as he felt it did not help. Exam: Unchanged. Dx: Coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. Plan: Recommended to continue physical and mental rehab, continue medications Levo 75, Wellbutrin, Temazepam, and short-term disability form was filled out.

08/08/2022 – Clint Carter, MD, Physician's Statement. The claimant reduced the ability to work on 01/01/2022 and was advised to stop working on 04/28/2022. The claimant was not able to return to work. The claimant had restrictions on physical exertion, complex decision-making skills and high stress. His prognosis was poor.

09/07/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported disability with not being able to return to work, overwhelmed anxiety at the thought of it and at the thought of doing it properly, physical guttural reaction, gradually increased his exercise capacity at home, felt he needed to work longer

as he had planned in order to afford retirement, financial bind, and he hoped to qualify for long term disability to make up for lost wages. Exam: He was well-appearing, no acute distress, alert and oriented to time, place and person. Dx: Disability due to neurological disorder. Plan: Long term disability paperwork.

09/09/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant presented for long-term disability discussion, had stress reaction, was not able to return to work, had anxiety on thinking of trying to resume work, and planning on working for several more years. He reported gradually recovering from coronary bypass graft surgery. Exam: Unchanged. Dx: Reaction to severe stress and history of coronary artery bypass graft surgery. Plan: Continue to address anxiety, will fill out long-term disability paperwork as unable to return to work and follow-up with cardiology.

10/17/2022 – Sarah Jordan, LPC, Pyshcotherapy Note. Complaints: The claimant presented with anxiety and depressed moods. MSE: fair judgement and insight, intact memory, intact attention, normal thought content, normal speech, and anxious moods. Recommended to continue therapy once every two weeks.

10/21/2022 – Sarah Jordan, LPC, Psychotherapy Note. Complaints: MSE: normal findings.

10/23/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported depression and being in funk, was taking Wellbutrin and was on Lexapro for short time with unknown side-effects. Exam: PHQ-9 score of seven indicating mild depression. Dx: Major depressive disorder. Rx: Advised to continue counseling, Wellbutrin 300, added Lexapro 10 daily, warnings were given, and to continue follow-up.

**Calls to Treating Providers:**
Clint Carter, MD / Danyel Kush, FNP, Phone: 903-630-7130

12/1/2022, at 1:28 PM - Attempted to contact Dr. Carter at 903-630-7130 to offer the opportunity to add additional claim information on behalf of Lincoln and reached Cindy. She stated that everything has been provided within the medical records.

Sarah S. Jorden, MA, LPC, Phone: 972-591-7012

12/1/2022, at 1:32 PM - Attempted to contact Sarah Jorden at 972-591-7012 to offer the opportunity to add additional claim information on behalf of Lincoln and reached the voicemail. A detailed reason for the call and contact information was provided.
12/2/2022, at 9:14 AM - Attempted to contact Sarah Jorden at 972-591-7012 to offer the opportunity to add additional claim information on behalf of Lincoln and reached staff. No additional information to offer.

**<u>Questions to be addressed:</u>**

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s).**

   The following psychiatric condition is not considered to be impairing:

   Adjustment disorder with mixed anxiety and depression (F43.23)

2. **If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

There are no co-morbid diagnoses significant to impairment.

3. **Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 5/2/22 to present and beyond, and comment on the expected duration.**

The claimant is a 69-year-old male with primary diagnosis of adjustment disorder with mixed anxiety and depression.

On 11/11/2021, he presented for an office visit with complaints of depression, mood changes, anger, and lack of motivation. His provider, Dr. Clinton Carter, MD, recommended he continue Wellbutrin and start Lexapro. He reported insomnia on 3/15/22. He had normal exam findings. On 4/20/22, he had a follow up with Dr. Carter and noted anhedonia, appetite changes, sleeping disorder, and feeling sad. He reported he tried to stop taking Wellbutrin. On 4/28/22, he reported increased depression and lack of motivation. He felt like he was going to die and had anxiety and difficulty performing work tasks. Dr. Carter recommended mental health counseling and remaining out of work through July/August 2022. On 7/26/22, he had an office visit with reports of depression and anxiety. He reported he stopped Lexapro because he did not think it helped his symptoms. Dr. Carter recommended he continue taking Wellbutrin and Temazepam. On 8/8/22, Dr. Carter recommended he remain out of work due to high stress and difficulty making decisions. On 9/7/22, he had a follow up with Dr. Carter and noted feeling overwhelmed, anxious, and worried in regard to his finances and disability case. He had normal exam findings. On 9/9/22, he had an office visit with Dr. Carter and noted complaints of anxiety. He had normal exam findings. On 10/17/22, he started psychotherapy with Sarah Jordan, LPC, and had a normal mental status exam. On 10/21/22, had a normal mental status exam during psychotherapy. On 10/23/22, he returned to see Dr. Carter and noted he had started therapy. He continued to report depression and had a PHQ-9 score of 7. Dr. Carter recommended he continue taking Wellbutrin and start back Lexapro and to continue therapy appointments.

The claimant first presented on 11/11/21 with complaints of anxiety and depression. He had cardiac surgery and noted his recovery had exacerbated his mental health symptoms. He noted mood changes, sleeping difficulty, and lack of motivation. He was managed with Lexapro and Wellbutrin by Dr. Clinton Carter. He had normal MSE findings on 3/15/22, 9/7/22, 10/17/22, and 10/21/22. He began psychotherapy on 10/17/22 and there were no significant psychiatric symptoms noted. He was recommended biweekly therapy sessions. Overall, he appears to be a lacking severe psychiatric symptoms which would indicate the need for impairment or any necessary restrictions and limitations. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond.

4. **Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

On 5/5/22, Dr. Carter recommended the claimant was unable to return to work. On 8/8/22, Dr. Carter opined the claimant had a poor prognosis and was unable to work due to difficulty making decisions and high stress. This reviewer does not agree with these recommendations as the medical records note normal MSE findings on multiple office visits. He began therapy on 10/17/22 and continued to have normal MSE findings. Overall, there is a lack of severe

symptoms and objective findings to support these recommendations from a psychiatric perspective.

5. **Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

   Overall, the medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported conditions. The claimant was managed for adjustment disorder with mixed anxiety and depression with therapy and medications.

6. **Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts- child or elder care issues, or legal issues) that may adversely impact work?**

   There are not any non-medical circumstances identified in the medical records that may adversely impact work.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,



**Steven Choi, DO**
Board Certified in Psychiatry
State Medical Licensure: MO, VA, WV, GA

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-1

"I, Steven Choi, DO, am a physician duly licensed to practice medicine in the State of MO. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

12/12/2022

___________________________________________________________________________

Signature of Physician Date

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Medical/Professional License # 2015030442

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 28, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This letter is in regard to your client's appeal for Long Term Disability benefits.

As part of your client's appeal review, your client's medical information was reviewed by a health care consultant. We are enclosing a copy of the report with this letter for you/your client to review prior to completion of our appeal decision. We are also enclosing the two prior peer reviews for your reference.

You/your client may wish to provide this assessment to his/her treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 07/19/2023. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your client's disability claim at this time as we want to provide your client every opportunity to review our assessment and provide a response.

If we do not receive a response by 07/19/2023 then we will render a decision based on the information currently in the file.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We are allowing you time to submit additional information. Due to these special circumstances an extension of time to process your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

**LAW OFFICES**
OF
**J. PRICE MCNAMARA**

JUN 12 2023

**J. PRICE McNAMARA**
**10455 Jefferson Highway, Ste. 130**
**Baton Rouge, LA 70809**
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
**www.jpricemcnamara.com**

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

June 8, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

We are in receipt of your May 12, 2023, letter. Enclosed are Mr. Reynolds' Christus Trinity Clinic medical records from May 12, 2023, to May 14, 2023, which concludes our submission on appeal at this time. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: )
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

Name: William J Reynolds | DOB | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

6/1/2023 4:08 PM Discharge Summary - T revision by J Carr, MD

---

5/14/2023 1:50 PM Operative Note -T signed by J Carr, MD

---

5/14/2023 1:49 PM Discharge Summary signed by J Carr, MD

---

5/14/2023 10:02 AM Progress Notes signed by Nurse Dora, RN

---

5/14/2023 4:24 AM Plan of Care signed by Nurse Sarah, RN

---

5/13/2023 1:05 PM Progress Notes signed by Nurse Dora, RN

---

5/13/2023 12:59 PM Discharge Instructions addendum by Nurse Jeanne, RN

---

5/13/2023 12:58 PM Progress Notes signed by J Carr, MD

5/13/2023 12:51 PM Immediate Post Op Note signed by J Carr, MD

5/13/2023 12:16 PM Sedation Documentation signed by Nurse Julie, RN

5/13/2023 4:10 AM Plan of Care signed by Nurse Acacia, RN

5/12/2023 10:39 PM H&P addendum by J Carr, MD

5/12/2023 5:11 PM ED Provider Notes signed by N Pakzad, MD

5/12/2023 3:23 PM ED Notes signed by Nurse McKenna, RN

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

## Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

## Subjective:

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of

breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History
- Marital status: Married

Tobacco Use
- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity
- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative
*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam | Take 30 mg by mouth | | |

| | |
|---|---|
| (RESTORIL) 30 MG capsule | nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) |

Allergies as of 05/12/2023
- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

<u>Review of Systems</u>
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**
**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |

| | | |
|---|---|---|
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023

Marina Flaskas, MD

## Patient Instructions

Nurse Cindy, RN at 5/12/2023 1:00 PM

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** DoB

5/12/2023 1:00 PM CHRISTUS Trinity Clinic Cardiology 903-606-7000

Instructions from M Flaskas, MD

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

Return in about 3 months (around 8/12/2023).

## What's Next

You currently have no upcoming appointments scheduled.

## Additional Information

If you are unable to keep your appointment, please call the clinic at least four hours prior to your scheduled appointment time.

## Today's Visit

You saw M Flaskas, MD on Friday May 12, 2023. The following issues were addressed

- Coronary artery disease due to lipid rich plaque
- Angina at rest

Blood Pressure 110/60

BMI 38.01

Weight 250 lb

Height 5' 8"

Pulse 72

Done Today

EKG 12 lead IN ROOM for Coronary artery disease due to lipid rich plaque

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org.

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Your Medication List as of May 12, 2023 1:47 PM

ⓘ Keep your medication list with you at all times and show to your healthcare providers.

| | |
|---|---|
| **aspirin (enteric-coated)** 81 MG enteric-coated tablet<br>Commonly known as: Ecasa | Take 1 tablet (81 mg total) by mouth daily |
| **atorvastatin** 80 MG tablet<br>Commonly known as: Lipitor | Take 1 tablet (80 mg total) by mouth nightly |
| **buPROPion** 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL | Take 1 tablet (300 mg total) by mouth daily |
| **clopidogrel** 75 MG tablet<br>Commonly known as: Plavix | Take 1 tablet (75 mg total) by mouth daily |
| **escitalopram** 10 MG tablet<br>Commonly known as: Lexapro | |
| **levothyroxine** 50 MCG tablet<br>Commonly known as: Synthroid | Take 50 mcg by mouth nightly |
| **metFORMIN** 500 MG tablet<br>Commonly known as: Glucophage | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate** 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL | TAKE ONE TABLET BY MOUTH TWICE A DAY |
| **tamsulosin** 0.4 MG capsule<br>Commonly known as: Flomax | Take 2 capsules (0.8 mg total) by mouth daily |
| **temazepam** 30 MG capsule<br>Commonly known as: Restoril | Take 30 mg by mouth nightly as needed for Sleep |
| **traZODone** 100 MG tablet<br>Commonly known as: Desyrel | |

## Your Medication Allergies

No active allergies

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** MRN: 096638825 ST segment depression 5/12/2023 - 5/14/2023 LPOHH 4

## Instructions

Your medications have changed

START taking:
**clopidogrel** (Plavix)
Start taking on: May 15, 2023

**nitroglycerin** (Nitrostat)

**Review your updated medication list below.**

## Your Next Steps

Do

☐ Pick up these medications from BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD
- clopidogrel
- nitroglycerin

☐ Go to M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
903-606-7000

Go

JUN 26 Follow Up Appointment 8:45 AM
M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.
Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.
We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.
You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

## What's Next

Go to M Flaskas, MD

CHRISTUS Trinity Clinic Cardiology
703 S Fleishel
Ste 4000
TYLER TX 75701
903-606-7000

---

JUN 26

Follow Up Appointment with M Flaskas, MD
Monday Jun 26, 2023 8:45 AM
Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.

Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.

We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.

You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

## Medications You Will Be Given

MAY 13

diazepam (Valium)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

MAY 13

diphenhydrAMINE (Benadryl)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

## Additional Discharge Instructions

**Infection Prevention:**

- Clean hands are the **BEST** protection to prevent infection
  - Wash your hands with soap and water before and after changing dressings
  - Wash your hands with soap and water after using the restroom
  - Do not pick at wounds or bandages
- Your physician will give you specific instructions for changing your bandages or dressings
- Maintain a clean environment
  - Change bed linens daily
  - Do not put lotions, ointments or oils on your incisions or wounds

## Additional Discharge Instructions (continued)

  - Do not let pets come in contact with or lick incisions or wounds
  - Do not apply heating pad to incisions or wounds
- Avoid submerging incisions or wounds:
  - No tub bathing
  - No swimming in pools, lake or at beach
  - No hot tubs

- **Notify your physician for:**
  - Fever over 101 degrees
  - Chills/Shaking
  - Increased redness of incision or wound
  - Increased drainage or pus from incision or wound
  - Odor from incision or wound
  - Development of severe diarrhea

**COVID-19:**

- For information about COVID-19, visit the Centers for Disease Control and Prevention site at: cdc.gov/coronavirus

Additional Discharge Instructions (continued)

**Heart Failure Zones**

| | |
|---|---|
| **EVERY DAY** | • No smoking<br>• Weigh yourself in the morning before breakfast, write it down, and compare to yesterday's weight<br>• Take your medicine as prescribed<br>• Check for swelling in your feet, ankles, legs, and stomach<br>• Eat a low-salt diet - see dietary handout<br>• Increase daily activity and balance with rest periods<br>• Which heart failure zone are you in today — green, yellow, or red? |
| **GREEN ZONE** | **All Clear – This Zone Is Your Goal**<br>Your symptoms are under control, you have:<br>• No shortness of breath<br>• No weight gain more than 2 lbs (it may change 1 or 2 lbs some days)<br>• No swelling of your feet, ankles, legs, or stomach<br>• No chest pain |
| **YELLOW ZONE** | **Caution – This Zone Is A Warning**<br>Call your doctor's office if:<br>• You have a weight gain of 3 lbs in 1 day or a weight gain of 5 lbs or more in 1 week<br>• More shortness of breath<br>• More swelling of your feet, ankles, legs, or stomach<br>• Feeling more tired, no energy<br>• Dry hacky cough<br>• Dizziness<br>• Feeling uneasy, you know something is not right<br>• It is harder for you to breathe when lying down. You need to sleep sitting up in chair |
| **RED ZONE** | **Emergency**<br>Go to the emergency room or call 911 if you have any of the following:<br>• Struggling to breathe, unrelieved shortness of breath while sitting still<br>• Have chest pain<br>• Have confusion or can't think clearly |

Here are a few Heart Failure Education website and video links for you to review.

1. "Living with Heart Failure--A Guide for Patients" educational video by the Heart Failure Society of America
   - http://www.hfsa.org/living-with-heart-failure-2/
2. American Heart Association Heart Failure
   - http://www.heart.org/HEARTORG/Conditions/HeartFailure/Heart-Failure_UCM_002019_SubHomePage.jsp
3. American Heart Association Online Heart Failure Support Group:
   - http://supportnetwork.heart.org/heart-failure
4. American Association of Heart Failure Nurses Patient Education
   - http://aahfnpatienteducation.com/
5. Heart Failure Matters
   - http://www.heartfailurematters.org/en_GB

**For Stroke Patients:**

## Additional Discharge Instructions (continued)

I understand that by carefully controlling and monitoring any of the risk factors listed, I can decrease my risk of future stroke:

- High Blood Pressure (hypertension)
- High Blood Cholesterol (hyperlipidemia)
- Diabetes
- Smoking
- Alcohol Abuse
- Drug Abuse

Call 911 if you have any of the following stroke symptoms:

- Sudden dizziness or unsteady gait
- Sudden facial droop
- Slurred speech
- Arm or leg numbness on one or both sides
- Confusion
- Loss of vision
- Severe headache with no known cause

You can reduce your risk of stroke by:

- If you smoke, stop.
- Reduce your alcohol intake.
- Lower your cholesterol by following a low fat diet.
- Lower your blood pressure.
- Increase physical activity as tolerated.
- Maintain a normal weight.

For more information:

American Stroke Association
888-478-7653
www.stroke.org

**Please keep this list of medications with you at all times in case of an emergency. Provide a copy to your primary care physician as soon as practical. Update your list if there are any changes, such as a change in dose or if medications are added or discontinued (including over the counter).**

## You are allergic to the following

No active allergies

## Vital Signs - Last Recorded

Most recent update: 5/14/2023 11:08 AM

| BP | Pulse | Temp | Resp | SpO2 |
|---|---|---|---|---|
| 114/64 (BP Location: Left arm, Patient Position: Lying) | 65 | 36.4 °C (97.6 °F) (Oral) | 18 | 95% |

Smoking Status
Former

Medication List

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| **aspirin (enteric-coated)** 81 MG enteric-coated tablet<br>Commonly known as: Ecasa<br>Take 1 tablet (81 mg total) by mouth daily<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 30 tablet | ✓<br>Last taken 5/14 | | | | |
| **atorvastatin** 80 MG tablet<br>Commonly known as: Lipitor<br>Take 1 tablet (80 mg total) by mouth nightly<br>Last time this was given: 80 mg on May 13, 2023 8:57 PM<br>Quantity: 90 tablet | | | | ✓ | |
| **buPROPion** 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL<br>Take 1 tablet (300 mg total) by mouth daily<br>Last time this was given: 300 mg on May 14, 2023 8:43 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| START **clopidogrel** 75 MG tablet<br>Commonly known as: Plavix<br>Start taking on: May 15, 2023<br>Take 1 tablet (75 mg total) by mouth daily<br>Last time this was given: 75 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| **escitalopram** 10 MG tablet<br>Commonly known as: Lexapro<br>Last time this was given: 10 mg on May 13, 2023 8:57 PM | | | | ✓ | |
| **isosorbide mononitrate** 30 MG 24 hr sustained-release tablet<br>Commonly known as: Imdur<br>Take 1 tablet (30 mg total) by mouth daily<br>Last time this was given: 30 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| **levothyroxine** 50 MCG tablet<br>Commonly known as: Synthroid<br>Take 50 mcg by mouth nightly<br>Last time this was given: 50 mcg on May 14, 2023 5:29 AM | | | | ✓ | |

## Medication List (continued)

| | Medication | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|---|
| | **metFORMIN** 500 MG tablet<br>Commonly known as: Glucophage<br>Take 500 mg by mouth daily with dinner | | | ✓ | | |
| | **metoprolol succinate** 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL<br>TAKE ONE TABLET BY MOUTH TWICE A DAY<br>Last time this was given: 25 mg on May 14, 2023 8:44 AM<br>Quantity: 60 tablet | ✓ Last taken 5/14 | | | ✓ | |
| START | **nitroglycerin** 0.4 MG sublingual tablet<br>Commonly known as: Nitrostat<br>Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 90 tablet | | | | | ✓ |
| | **tamsulosin** 0.4 MG capsule<br>Commonly known as: Flomax<br>Take 2 capsules (0.8 mg total) by mouth daily<br>Last time this was given: 0.8 mg on May 14, 2023 8:43 AM<br>Quantity: 180 capsule | ✓ Last taken 5/14 | | | | |
| | **traZODone** 100 MG tablet<br>Commonly known as: Desyrel<br>Last time this was given: 100 mg on May 13, 2023 8:57 PM | | | | ✓ | |

## Where to pick up your medications

Pick up these medications at BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD

clopidogrel • nitroglycerin

Address: 100 RICE RD, TYLER TX 75703
Phone: 903-561-7943

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org.

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

Instructions

**Discharge Cath Instructions: Groin Access**

Level of Activity:
- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.
- You may return to work on 05/17/2023.

Incision Site Care:
- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Heart Healthy/Cardiac Low Fat, Low Salt, INCREASE fruits, whole grains, and vegetables.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your

## Instructions (continued)

reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (877) 843-3950 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln FWD Christus Health Med Recs - 06-08-23_2023-06-08-0815-PDT.pdf | **Pages:** | 28 |
| **Sent:** | June 8, 2023 8:15 AM PDT | **Rec'd:** | June 8, 2023 8:23 AM PDT |

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

JUN 1 2 2023

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE®

PRIORITY® MAIL

FROM:

CERTIFIED MAIL

9402 8118 9956 2241 0536 58

PS Form 3800 6/02

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

$14.30⁰
US POSTAGE
PRIORITY MAIL
COMBASPRICE
FROM 70809
06/08/2023
stamps endicia

Expected deliver
Domestic shipm
USPS Tracking®
Limited internati
When used inter

ısurance does not cover certain items. For details regarding claims exclusions see the
ımestic Mail Manual at *http://pe.usps.com.*
See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

TO:

'LAT RATE ENVELOPE
NE RATE ■ ANY WEIGHT

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
Attn: Susan McShane
8801 INDIAN HILLS DR
OMAHA NE 68114-4066

'RACKED ■ INSURED

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

6-12-23

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

JUN 1 2 2023

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

June 8, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re:** **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

We are in receipt of your May 12, 2023, letter. Enclosed are Mr. Reynolds' Christus Trinity Clinic medical records from May 12, 2023, to May 14, 2023, which concludes our submission on appeal at this time. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

6/1/2023 4:08 PM Discharge Summary - T revision by J Carr, MD

---

5/14/2023 1:50 PM Operative Note -T signed by J Carr, MD

---

5/14/2023 1:49 PM Discharge Summary signed by J Carr, MD

---

5/14/2023 10:02 AM Progress Notes signed by Nurse Dora, RN

---

5/14/2023 4:24 AM Plan of Care signed by Nurse Sarah, RN

---

5/13/2023 1:05 PM Progress Notes signed by Nurse Dora, RN

---

5/13/2023 12:59 PM Discharge Instructions addendum by Nurse Jeanne, RN

---

5/13/2023 12:58 PM Progress Notes signed by J Carr, MD

5/13/2023 12:51 PM Immediate Post Op Note signed by J Carr, MD

5/13/2023 12:16 PM Sedation Documentation signed by Nurse Julie, RN

5/13/2023 4:10 AM Plan of Care signed by Nurse Acacia, RN

5/12/2023 10:39 PM H&P addendum by J Carr, MD

5/12/2023 5:11 PM ED Provider Notes signed by N Pakzad, MD

5/12/2023 3:23 PM ED Notes signed by Nurse McKenna, RN

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: 9/11/1953)
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

**Problem List Items Addressed This Visit**

**Coronary artery disease - Primary**

Relevant Medications

isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders

*EKG 12 lead-IN ROOM (Completed)*

Outpatient Cardiac Rehab Referral

## Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

**Subjective:**

Subjective
**Chief Complaint:**
HPI

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of

breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

Socioeconomic History

| | |
|---|---|
| • Marital status: | Married |

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former |
| Packs/day: | 0.50 |
| Years: | 25.00 |
| Pack years: | 12.50 |
| Types: | Cigarettes |
| Quit date: | 7/1/2005 |
| Years since quitting: | 17.8 |
| • Smokeless tobacco: | Never |
| • Tobacco comments: | |

*Quit 15-16 years ago*

Substance and Sexual Activity

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 6.0 standard drinks |
| Types: | 6 Glasses of wine per week |

*Comment: couple bottles of wine on weekend*

| | |
|---|---|
| • Drug use: | Never |
| • Sexual activity: | Yes |
| Partners: | Female |

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam | Take 30 mg by mouth | | |

| | |
|---|---|
| (RESTORIL) 30 MG capsule | nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) |

Allergies as of 05/12/2023
- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

**Accessory Data:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |

| | | |
|---|---|---|
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023

Marina Flaskas, MD

## Patient Instructions

Nurse Cindy, RN at 5/12/2023 1:00 PM

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** DoB: 5/12/2023 1:00 PM CHRISTUS Trinity Clinic Cardiology 903-606-7000

Instructions from M Flaskas, MD

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

Return in about 3 months (around 8/12/2023).

## What's Next

You currently have no upcoming appointments scheduled.

## Additional Information

If you are unable to keep your appointment, please call the clinic at least four hours prior to your scheduled appointment time.

## Today's Visit

You saw M Flaskas, MD on Friday May 12, 2023. The following issues were addressed

- Coronary artery disease due to lipid rich plaque
- Angina at rest

Blood Pressure 110/60

BMI 38.01

Weight 250 lb

Height 5' 8"

Pulse 72

Done Today

EKG 12 lead IN ROOM for Coronary artery disease due to lipid rich plaque

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org.

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Your Medication List as of May 12, 2023 1:47 PM

ⓘ Keep your medication list with you at all times and show to your healthcare providers.

| | |
|---|---|
| **aspirin (enteric-coated)** 81 MG enteric-coated tablet<br>Commonly known as: Ecasa | Take 1 tablet (81 mg total) by mouth daily |
| **atorvastatin** 80 MG tablet<br>Commonly known as: Lipitor | Take 1 tablet (80 mg total) by mouth nightly |
| **buPROPion** 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL | Take 1 tablet (300 mg total) by mouth daily |
| **clopidogrel** 75 MG tablet<br>Commonly known as: Plavix | Take 1 tablet (75 mg total) by mouth daily |
| **escitalopram** 10 MG tablet<br>Commonly known as: Lexapro | |
| **levothyroxine** 50 MCG tablet<br>Commonly known as: Synthroid | Take 50 mcg by mouth nightly |
| **metFORMIN** 500 MG tablet<br>Commonly known as: Glucophage | Take 500 mg by mouth daily with dinner |
| **metoprolol succinate** 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL | TAKE ONE TABLET BY MOUTH TWICE A DAY |
| **tamsulosin** 0.4 MG capsule<br>Commonly known as: Flomax | Take 2 capsules (0.8 mg total) by mouth daily |
| **temazepam** 30 MG capsule<br>Commonly known as: Restoril | Take 30 mg by mouth nightly as needed for Sleep |
| **traZODone** 100 MG tablet<br>Commonly known as: Desyrel | |

## Your Medication Allergies

No active allergies

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** MRN: 096638825 ST segment depression 5/12/2023 - 5/14/2023 LPOHH 4

## Instructions

Your medications have changed

START taking:
**clopidogrel** (Plavix)
Start taking on: May 15, 2023

**nitroglycerin** (Nitrostat)

**Review your updated medication list below.**

## Your Next Steps

Do

- ☐ Pick up these medications from BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD
  - clopidogrel
  - nitroglycerin
- ☐ Go to M Flaskas, MD
  CHRISTUS Trinity Clinic Cardiology
  903-606-7000

Go

JUN 26 Follow Up Appointment 8:45 AM
M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.
Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.
We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.
You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

## What's Next

Go to M Flaskas, MD

CHRISTUS Trinity Clinic Cardiology
703 S Fleishel
Ste 4000
TYLER TX 75701
903-606-7000

---

JUN 26

Follow Up Appointment with M Flaskas, MD
Monday Jun 26, 2023 8:45 AM
Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.

Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.

We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.

You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

## Medications You Will Be Given

MAY 13
diazepam (Valium)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

MAY 13
diphenhydrAMINE (Benadryl)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

## Additional Discharge Instructions

**Infection Prevention:**

- Clean hands are the **BEST** protection to prevent infection
  - Wash your hands with soap and water before and after changing dressings
  - Wash your hands with soap and water after using the restroom
  - Do not pick at wounds or bandages
- Your physician will give you specific instructions for changing your bandages or dressings
- Maintain a clean environment
  - Change bed linens daily
  - Do not put lotions, ointments or oils on your incisions or wounds

## Additional Discharge Instructions (continued)

  - Do not let pets come in contact with or lick incisions or wounds
  - Do not apply heating pad to incisions or wounds
- Avoid submerging incisions or wounds:
  - No tub bathing
  - No swimming in pools, lake or at beach
  - No hot tubs

- **Notify your physician for:**
  - Fever over 101 degrees
  - Chills/Shaking
  - Increased redness of incision or wound
  - Increased drainage or pus from incision or wound
  - Odor from incision or wound
  - Development of severe diarrhea

**COVID-19:**

- For information about COVID-19, visit the Centers for Disease Control and Prevention site at: cdc.gov/coronavirus

Additional Discharge Instructions (continued)

# Heart Failure Zones

| | |
|---|---|
| **EVERY DAY** | • No smoking<br>• Weigh yourself in the morning before breakfast, write it down, and compare to yesterday's weight<br>• Take your medicine as prescribed<br>• Check for swelling in your feet, ankles, legs, and stomach<br>• Eat a low-salt diet - see dietary handout<br>• Increase daily activity and balance with rest periods<br>• Which heart failure zone are you in today — green, yellow, or red? |
| **GREEN ZONE** | **All Clear – This Zone Is Your Goal**<br>Your symptoms are under control, you have:<br>• No shortness of breath<br>• No weight gain more than 2 lbs (it may change 1 or 2 lbs some days)<br>• No swelling of your feet, ankles, legs, or stomach<br>• No chest pain |
| **YELLOW ZONE** | **Caution – This Zone Is A Warning**<br>Call your doctor's office if:<br>• You have a weight gain of 3 lbs in 1 day or a weight gain of 5 lbs or more in 1 week<br>• More shortness of breath<br>• More swelling of your feet, ankles, legs, or stomach<br>• Feeling more tired, no energy<br>• Dry hacking cough<br>• Dizziness<br>• Feeling uneasy, you know something is not right<br>• It is harder for you to breathe when lying down. You need to sleep sitting up in chair |
| **RED ZONE** | **Emergency**<br>**Go to the emergency room or call 911 if you have any of the following:**<br>• Struggling to breathe, unrelieved shortness of breath while sitting still<br>• Have chest pain<br>• Have confusion or can't think clearly |

Here are a few Heart Failure Education website and video links for you to review.

1. "Living with Heart Failure--A Guide for Patients" educational video by the Heart Failure Society of America
   - http://www.hfsa.org/living-with-heart-failure-2/
2. American Heart Association Heart Failure
   - http://www.heart.org/HEARTORG/Conditions/HeartFailure/Heart-Failure_UCM_002019_SubHomePage.jsp
3. American Heart Association Online Heart Failure Support Group:
   - http://supportnetwork.heart.org/heart-failure
4. American Association of Heart Failure Nurses Patient Education
   - http://aahfnpatienteducation.com/
5. Heart Failure Matters
   - http://www.heartfailurematters.org/en_GB

**For Stroke Patients:**

## Additional Discharge Instructions (continued)

I understand that by carefully controlling and monitoring any of the risk factors listed, I can decrease my risk of future stroke:
- High Blood Pressure (hypertension)
- High Blood Cholesterol (hyperlipidemia)
- Diabetes
- Smoking
- Alcohol Abuse
- Drug Abuse

Call 911 if you have any of the following stroke symptoms:
- Sudden dizziness or unsteady gait
- Sudden facial droop
- Slurred speech
- Arm or leg numbness on one or both sides
- Confusion
- Loss of vision
- Severe headache with no known cause

You can reduce your risk of stroke by:
- If you smoke, stop.
- Reduce your alcohol intake.
- Lower your cholesterol by following a low fat diet.
- Lower your blood pressure.
- Increase physical activity as tolerated.
- Maintain a normal weight.

For more information:

American Stroke Association
888-478-7653
www.stroke.org

**Please keep this list of medications with you at all times in case of an emergency. Provide a copy to your primary care physician as soon as practical. Update your list if there are any changes, such as a change in dose or if medications are added or discontinued (including over the counter).**

## You are allergic to the following

No active allergies

## Vital Signs - Last Recorded

Most recent update: 5/14/2023 11:08 AM

| BP | Pulse | Temp | Resp | SpO2 |
|---|---|---|---|---|
| 114/64 (BP Location: Left arm, Patient Position: Lying) | 65 | 36.4 °C (97.6 °F) (Oral) | 18 | 95% |

Smoking Status
Former

## Medication List

| | Medication | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|---|
| | **aspirin (enteric-coated)** 81 MG enteric-coated tablet<br>Commonly known as: Ecasa<br>Take 1 tablet (81 mg total) by mouth daily<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 30 tablet | ✓<br>Last taken 5/14 | | | | |
| | **atorvastatin** 80 MG tablet<br>Commonly known as: Lipitor<br>Take 1 tablet (80 mg total) by mouth nightly<br>Last time this was given: 80 mg on May 13, 2023 8:57 PM<br>Quantity: 90 tablet | | | | ✓ | |
| | **buPROPion** 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL<br>Take 1 tablet (300 mg total) by mouth daily<br>Last time this was given: 300 mg on May 14, 2023 8:43 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| START | **clopidogrel** 75 MG tablet<br>Commonly known as: Plavix<br>Start taking on: May 15, 2023<br>Take 1 tablet (75 mg total) by mouth daily<br>Last time this was given: 75 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| | **escitalopram** 10 MG tablet<br>Commonly known as: Lexapro<br>Last time this was given: 10 mg on May 13, 2023 8:57 PM | | | | ✓ | |
| | **isosorbide mononitrate** 30 MG 24 hr sustained-release tablet<br>Commonly known as: Imdur<br>Take 1 tablet (30 mg total) by mouth daily<br>Last time this was given: 30 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| | **levothyroxine** 50 MCG tablet<br>Commonly known as: Synthroid<br>Take 50 mcg by mouth nightly<br>Last time this was given: 50 mcg on May 14, 2023 5:29 AM | | | | ✓ | |

## Medication List (continued)

| | | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|---|
| | **metFORMIN** 500 MG tablet<br>Commonly known as: Glucophage<br>Take 500 mg by mouth daily with dinner | | | ✓ | | |
| | **metoprolol succinate** 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL<br>TAKE ONE TABLET BY MOUTH TWICE A DAY<br>Last time this was given: 25 mg on May 14, 2023 8:44 AM<br>Quantity: 60 tablet | ✓ Last taken 5/14 | | | ✓ | |
| START | **nitroglycerin** 0.4 MG sublingual tablet<br>Commonly known as: Nitrostat<br>Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 90 tablet | | | | | ✓ |
| | **tamsulosin** 0.4 MG capsule<br>Commonly known as: Flomax<br>Take 2 capsules (0.8 mg total) by mouth daily<br>Last time this was given: 0.8 mg on May 14, 2023 8:43 AM<br>Quantity: 180 capsule | ✓ Last taken 5/14 | | | | |
| | **traZODone** 100 MG tablet<br>Commonly known as: Desyrel<br>Last time this was given: 100 mg on May 13, 2023 8:57 PM | | | | ✓ | |

## Where to pick up your medications

Pick up these medications at BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD

clopidogrel • nitroglycerin

Address: 100 RICE RD, TYLER TX 75703
Phone: 903-561-7943

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org.

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

Instructions

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.
- You may return to work on 05/17/2023.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Heart Healthy/Cardiac Low Fat, Low Salt, INCREASE fruits, whole grains, and vegetables.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your

## Instructions (continued)

reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (877) 843-3950 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln FWD Christus Health Med Recs - 06-08-23_2023-06-08-0815-PDT.pdf | **Pages:** | 28 |
| **Sent:** | June 8, 2023 8:15 AM PDT | **Rec'd:** | June 8, 2023 8:23 AM PDT |

LAW OFFICES OF J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

June 8, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

We are in receipt of your May 12, 2023, letter. Enclosed are Mr. Reynolds' Christus Trinity Clinic medical records from May 12, 2023, to May 14, 2023, which concludes our submission on appeal at this time. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

8-Jun-2023 15:16 +18778433950 +12252018313 p.4

PAGE 4/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB: 9/11/1953)
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

8-Jun-2023 15:16 +18778433950 +12252018313 p.2

PAGE 2/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

6/1/2023 4:08 PM Discharge Summary - T revision by J Carr, MD

5/14/2023 1:50 PM Operative Note -T signed by J Carr, MD

5/14/2023 1:49 PM Discharge Summary signed by J Carr, MD

5/14/2023 10:02 AM Progress Notes signed by Nurse Dora, RN

5/14/2023 4:24 AM Plan of Care signed by Nurse Sarah, RN

5/13/2023 1:05 PM Progress Notes signed by Nurse Dora, RN

5/13/2023 12:59 PM Discharge Instructions addendum by Nurse Jeanne, RN

5/13/2023 12:58 PM Progress Notes signed by J Carr, MD

8-Jun-2023 15:16 +18778433950 +12252018313 p.3

PAGE 3/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



5/13/2023 12:51 PM Immediate Post Op Note signed by J Carr, MD

5/13/2023 12:16 PM Sedation Documentation signed by Nurse Julie, RN

5/13/2023 4:10 AM Plan of Care signed by Nurse Acacia, RN

5/12/2023 10:39 PM H&P addendum by J Carr, MD

5/12/2023 5:11 PM ED Provider Notes signed by N Pakzad, MD

5/12/2023 3:23 PM ED Notes signed by Nurse McKenna, RN

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

p.5 +12252018313 +18778433950 8-Jun-2023 15:16

PAGE 5/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

## Problem List Items Addressed This Visit

**Coronary artery disease - Primary**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
*EKG 12 lead-IN ROOM (Completed)*
Outpatient Cardiac Rehab Referral

8-Jun-2023 15:17 +18778433950 +12252018313 p.6

PAGE 6/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



## Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

## Subjective:

Subjective
**Chief Complaint:**
HPI

p.7 +12252018313 +18778433950 8-Jun-2023 15:17

PAGE 7/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of

p.8 +12252018313 +18778433950 8-Jun-2023 15:17

PAGE 8/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |

8-Jun-2023 15:17 +18778433950 +12252018313 p.9

PAGE 9/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

p.10 +12252018313 +18778433950 8-Jun-2023 15:18

PAGE 10/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

8-Jun-2023 15:18 +18778433950 +12252018313 p.11

PAGE 11/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam | Take 30 mg by mouth | | |

p.12 +12252018313 +18778433950 8-Jun-2023 15:18



| | |
|---|---|
| (RESTORIL) 30 MG capsule | nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) |

Allergies as of 05/12/2023

- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²



PAGE 12/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

8-Jun-2023 15:18 +18778433950 +12252018313 p.13

PAGE 13/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



No flowsheet data found.
No flowsheet data found.
Physical Exam
Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

## Accessory Data:

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |

8-Jun-2023 15:19 +18778433950 +12252018313 p.14

PAGE 14/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



| | | |
|---|---|---|
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023

8-Jun-2023 15:19 +18778433950 +12252018313 p.15

PAGE 15/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



Marina Flaskas, MD

# Patient Instructions

Nurse Cindy, RN at 5/12/2023 1:00 PM

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** DoB: 5/12/2023 1:00 PM CHRISTUS Trinity Clinic Cardiology 903-606-7000

Instructions from M Flaskas, MD

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

Return in about 3 months (around 8/12/2023).

## What's Next

You currently have no upcoming appointments scheduled.

## Additional Information

If you are unable to keep your appointment, please call the clinic at least four hours prior to your scheduled appointment time.

## Today's Visit

You saw M Flaskas, MD on Friday May 12, 2023. The following issues were addressed:

- Coronary artery disease due to lipid rich plaque
- Angina at rest

Blood Pressure 110/60

BMI 38.01

Weight 250 lb

Height 5' 8"

Pulse 72

## Done Today

EKG 12 lead-IN ROOM for Coronary artery disease due to lipid rich plaque

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Your Medication List as of May 12, 2023 1:47 PM

Keep your medication list with you at all times and show to your healthcare providers.

| | |
|---|---|
| aspirin (enteric-coated) 81 MG enteric-coated tablet<br>Commonly known as: Ecasa | Take 1 tablet (81 mg total) by mouth daily |
| atorvastatin 80 MG tablet<br>Commonly known as: Lipitor | Take 1 tablet (80 mg total) by mouth nightly |
| buPROPion 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL | Take 1 tablet (300 mg total) by mouth daily |
| clopidogrel 75 MG tablet<br>Commonly known as: Plavix | Take 1 tablet (75 mg total) by mouth daily |
| escitalopram 10 MG tablet<br>Commonly known as: Lexapro | |
| levothyroxine 50 MCG tablet<br>Commonly known as: Synthroid | Take 50 mcg by mouth nightly |
| metFORMIN 500 MG tablet<br>Commonly known as: Glucophage | Take 500 mg by mouth daily with dinner |
| metoprolol succinate 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL | TAKE ONE TABLET BY MOUTH TWICE A DAY |
| tamsulosin 0.4 MG capsule<br>Commonly known as: Flomax | Take 2 capsules (0.8 mg total) by mouth daily |
| temazepam 30 MG capsule<br>Commonly known as: Restoril | Take 30 mg by mouth nightly as needed for Sleep |
| traZODone 100 MG tablet<br>Commonly known as: Desyrel | |

## Your Medication Allergies

No active allergies

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** MRN: 096638825 ST segment depression 5/12/2023 - 5/14/2023 LPOHH 4

## Instructions

### Your medications have changed

START taking:

**clopidogrel** (Plavix)
Start taking on: **May 15, 2023**

**nitroglycerin** (Nitrostat)

**Review your updated medication list below.**

## Your Next Steps

### Do

☐ Pick up these medications from BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD
- clopidogrel
- nitroglycerin

☐ Go to M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
903-606-7000

### Go

JUN 26 Follow Up Appointment 8:45 AM
M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.
Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.
We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.
You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

## What's Next

Go to M Flaskas, MD

CHRISTUS Trinity Clinic Cardiology
703 S Fleishel
Ste 4000
TYLER TX 75701
903-606-7000

JUN 26 Follow Up Appointment with M Flaskas, MD
Monday Jun 26, 2023 8:45 AM
Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.

Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.

We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.

You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

## Medications You Will Be Given

MAY 13 diazepam (Valium)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

MAY 13 diphenhydrAMINE (Benadryl)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

## Additional Discharge Instructions

**Infection Prevention:**

- Clean hands are the **BEST** protection to prevent infection
  - Wash your hands with soap and water before and after changing dressings
  - Wash your hands with soap and water after using the restroom
  - Do not pick at wounds or bandages
- Your physician will give you specific instructions for changing your bandages or dressings
- Maintain a clean environment
  - Change bed linens daily
  - Do not put lotions, ointments or oils on your incisions or wounds

## Additional Discharge Instructions (continued)

   - Do not let pets come in contact with or lick incisions or wounds
   - Do not apply heating pad to incisions or wounds
- Avoid submerging incisions or wounds:
   - No tub bathing
   - No swimming in pools, lake or at beach
   - No hot tubs

- **Notify your physician for:**
   - Fever over 101 degrees
   - Chills/Shaking
   - Increased redness of incision or wound
   - Increased drainage or pus from incision or wound
   - Odor from incision or wound
   - Development of severe diarrhea

**COVID-19:**
- For information about COVID-19, visit the Centers for Disease Control and Prevention site at: cdc.gov/coronavirus

Additional Discharge Instructions (continued)

| Heart Failure Zones | |
|---|---|
| **EVERY DAY** | • No smoking<br>• Weigh yourself in the morning before breakfast, write it down, and compare to yesterday's weight<br>• Take your medicine as prescribed<br>• Check for swelling in your feet, ankles, legs, and stomach<br>• Eat a low-salt diet- see dietary handout<br>• Increase daily activity and balance with rest periods<br>• Which heart failure zone are you in today — green, yellow, or red? |
| **GREEN ZONE** | **All Clear – This Zone Is Your Goal**<br>Your symptoms are under control, you have:<br>• No shortness of breath<br>• No weight gain more than 2 lbs (it may change 1 or 2 lbs some days)<br>• No swelling of your feet, ankles, legs, or stomach<br>• No chest pain |
| **YELLOW ZONE** | **Caution – This Zone Is A Warning**<br>Call your doctor's office if:<br>• You have a weight gain of 3 lbs in 1 day or a weight gain of 5 lbs or more in 1 week<br>• More shortness of breath<br>• More swelling of your feet, ankles, legs, or stomach<br>• Feeling more tired, no energy<br>• Dry hacky cough<br>• Dizziness<br>• Feeling uneasy, you know something is not right<br>• It is harder for you to breathe when lying down. You need to sleep sitting up in chair |
| | **Emergency**<br>**Go to the emergency room or call 911 if you have any of the following:**<br>• Struggling to breathe, unrelieved shortness of breath while sitting still<br>• Have chest pain<br>• Have confusion or can't think clearly |

Here are a few Heart Failure Education website and video links for you to review.

1. "Living with Heart Failure--A Guide for Patients" educational video by the Heart Failure Society of America
   - http://www.hfsa.org/living-with-heart-failure-2/
2. American Heart Association Heart Failure
   - http://www.heart.org/HEARTORG/Conditions/HeartFailure/Heart-Failure_UCM_002019_SubHomePage.jsp
3. American Heart Association Online Heart Failure Support Group:
   - http://supportnetwork.heart.org/heart-failure
4. American Association of Heart Failure Nurses Patient Education
   - http://aahfnpatienteducation.com/
5. Heart Failure Matters
   - http://www.heartfailurematters.org/en_GB

**For Stroke Patients:**

## Additional Discharge Instructions (continued)

I understand that by carefully controlling and monitoring any of the risk factors listed, I can decrease my risk of future stroke:
- High Blood Pressure (hypertension)
- High Blood Cholesterol (hyperlipidemia)
- Diabetes
- Smoking
- Alcohol Abuse
- Drug Abuse

Call 911 if you have any of the following stroke symptoms:
- Sudden dizziness or unsteady gait
- Sudden facial droop
- Slurred speech
- Arm or leg numbness on one or both sides
- Confusion
- Loss of vision
- Severe headache with no known cause

You can reduce your risk of stroke by:
- If you smoke, stop.
- Reduce your alcohol intake.
- Lower your cholesterol by following a low fat diet.
- Lower your blood pressure.
- Increase physical activity as tolerated.
- Maintain a normal weight.

For more information:

American Stroke Association
888-478-7653
www.stroke.org

**Please keep this list of medications with you at all times in case of an emergency. Provide a copy to your primary care physician as soon as practical. Update your list if there are any changes, such as a change in dose or if medications are added or discontinued (including over the counter).**

## You are allergic to the following

No active allergies

## Vital Signs - Last Recorded

Most recent update: 5/14/2023 11:08 AM

| BP | Pulse | Temp | Resp | SpO2 |
|---|---|---|---|---|
| 114/64 (BP Location: Left arm, Patient Position: Lying) | 65 | 36.4 °C (97.6 °F) (Oral) | 18 | 95% |

Smoking Status
Former

Medication List

| | Medication | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|---|
| | aspirin (enteric-coated) 81 MG enteric-coated tablet<br>Commonly known as: Ecasa<br>Take 1 tablet (81 mg total) by mouth daily<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 30 tablet | ✓<br>Last taken 5/14 | | | | |
| | atorvastatin 80 MG tablet<br>Commonly known as: Lipitor<br>Take 1 tablet (80 mg total) by mouth nightly<br>Last time this was given: 80 mg on May 13, 2023 8:57 PM<br>Quantity: 90 tablet | | | | ✓ | |
| | buPROPion 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL<br>Take 1 tablet (300 mg total) by mouth daily<br>Last time this was given: 300 mg on May 14, 2023 8:43 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| START | clopidogrel 75 MG tablet<br>Commonly known as: Plavix<br>Start taking on: May 15, 2023<br>Take 1 tablet (75 mg total) by mouth daily<br>Last time this was given: 75 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| | escitalopram 10 MG tablet<br>Commonly known as: Lexapro<br>Last time this was given: 10 mg on May 13, 2023 8:57 PM | | | | ✓ | |
| | isosorbide mononitrate 30 MG 24 hr sustained-release tablet<br>Commonly known as: Imdur<br>Take 1 tablet (30 mg total) by mouth daily<br>Last time this was given: 30 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓<br>Last taken 5/14 | | | | |
| | levothyroxine 50 MCG tablet<br>Commonly known as: Synthroid<br>Take 50 mcg by mouth nightly<br>Last time this was given: 50 mcg on May 14, 2023 5:29 AM | | | | ✓ | |

## Medication List (continued)

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| metFORMIN 500 MG tablet<br>Commonly known as: Glucophage<br>Take 500 mg by mouth daily with dinner | | | ✓ | | |
| metoprolol succinate 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL<br>TAKE ONE TABLET BY MOUTH TWICE A DAY<br>Last time this was given: 25 mg on May 14, 2023 8:44 AM<br>Quantity: 60 tablet | ✓<br>Last taken 5/14 | | | ✓ | |
| START nitroglycerin 0.4 MG sublingual tablet<br>Commonly known as: Nitrostat<br>Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 90 tablet | | | | | ✓ |
| tamsulosin 0.4 MG capsule<br>Commonly known as: Flomax<br>Take 2 capsules (0.8 mg total) by mouth daily<br>Last time this was given: 0.8 mg on May 14, 2023 8:43 AM<br>Quantity: 180 capsule | ✓<br>Last taken 5/14 | | | | |
| traZODone 100 MG tablet<br>Commonly known as: Desyrel<br>Last time this was given: 100 mg on May 13, 2023 8:57 PM | | | | ✓ | |

### Where to pick up your medications

Pick up these medications at BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD

clopidogrel • nitroglycerin

Address: 100 RICE RD, TYLER TX 75703
Phone: 903-561-7943

MyChart
Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:
- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Instructions

**Discharge Cath Instructions: Groin Access**

Level of Activity:

- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.
- You may return to work on 05/17/2023.

Incision Site Care:

- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:

- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:

- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Heart Healthy/Cardiac Low Fat, Low Salt, INCREASE fruits, whole grains, and vegetables.

- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your

## Instructions (continued)

reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.
**"The 7 D's":**
- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**
- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

June 8, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 877-843-3950**

The Lincoln National Life Insurance Company
**Attn: Susan McShane**
8801 Indian Hills Drive
Omaha, NE 68114-4066

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policyholder: John Soules Foods, Inc. - TX Location**

Dear Ms. McShane,

We are in receipt of your May 12, 2023, letter. Enclosed are Mr. Reynolds' Christus Trinity Clinic medical records from May 12, 2023, to May 14, 2023, which concludes our submission on appeal at this time. Please resume the appeal review.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

8-Jun-2023 15:16 +18778433950 +12252018313 p.2

PAGE 2/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

6/1/2023 4:08 PM Discharge Summary - T revision by J Carr, MD

5/14/2023 1:50 PM Operative Note -T signed by J Carr, MD

5/14/2023 1:49 PM Discharge Summary signed by J Carr, MD

5/14/2023 10:02 AM Progress Notes signed by Nurse Dora, RN

5/14/2023 4:24 AM Plan of Care signed by Nurse Sarah, RN

5/13/2023 1:05 PM Progress Notes signed by Nurse Dora, RN

5/13/2023 12:59 PM Discharge Instructions addendum by Nurse Jeanne, RN

5/13/2023 12:58 PM Progress Notes signed by J Carr, MD

p.3 +12252018313 +18778433950 8-Jun-2023 15:16

PAGE 3/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

5/13/2023 12:51 PM Immediate Post Op Note signed by J Carr, MD

5/13/2023 12:16 PM Sedation Documentation signed by Nurse Julie, RN

5/13/2023 4:10 AM Plan of Care signed by Nurse Acacia, RN

5/12/2023 10:39 PM H&P addendum by J Carr, MD

5/12/2023 5:11 PM ED Provider Notes signed by N Pakzad, MD

5/12/2023 3:23 PM ED Notes signed by Nurse McKenna, RN

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

p.4 +12252018313 +18778433950 8-Jun-2023 15:16

PAGE 4/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

Name: William J Reynolds | DOB: | MRN: 096638825 | PCP: Clinton Carter, MD | Legal Name: William J Reynolds

# Progress Notes

M Flaskas, MD at 5/12/2023 1:00 PM

**Patient ID:** William J Reynolds (DOB:
is a 69 y.o. male.

PCP: Carter, Clinton, MD

**Assessment and Plan**:

Assessment
ASSESSMENT AND PLAN:
1. Dyspnea with exertion, abnormal EKG was obtained today in the office concerning ST elevation and depression in anterolateral leads. The patient denies having any chest pain and is not in shortness of breath at the present time on exam, but reports shortness of breath with mild exertion. We will admit the patient for a diagnostic left heart catheterization. The patient understands the risk of stroke, heart attack, and death less than 1%. Partners were updated. Further recommendations after the study and he would benefit from cardiac rehabilitation in the future.

p.5 +12252018313 +18778433950 8-Jun-2023 15:16

PAGE 5/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

2. Coronary artery disease, status post aortocoronary bypass surgery, LIMA to LAD in December 2021. Management as above. Heart catheterization is in plan.

3. Diastolic dysfunction. The patient is on Lasix at home. BNP level to follow. We will decide if needs to be optimized.

4. Mixed dyslipidemia, doing well on present dose of statins. Follow up on fasting lipid profile, AST, and ALT.

5. Obesity. Weight reduction was discussed. The patient is compliant with CPAP.

Thank you for allowing me to participate in the care of this pleasant patient. We will follow.

Marina Flaskas, MD, FACC
VR/#2491/2

## Problem List Items Addressed This Visit

**Coronary artery disease - Primary**

Relevant Medications

isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders

*EKG 12 lead-IN ROOM (Completed)*

Outpatient Cardiac Rehab Referral

p.6 +12252018313 +18778433950 8-Jun-2023 15:17



PAGE 6/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

## Other Visit Diagnoses

**Angina at rest (HC Category)** (Chronic)
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

Other Relevant Orders
Outpatient Cardiac Rehab Referral

**Primary hypertension**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**Mixed hyperlipidemia**
Relevant Medications
isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet

**DOE (dyspnea on exertion)**

No future appointments.

## Subjective:

Subjective
**Chief Complaint:**
HPI

8-Jun-2023 15:17 +18778433950 +12252018313 p.7

PAGE 7/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

CHIEF COMPLAINT:
Followup on coronary artery disease and dyspnea with exertion.

HISTORY OF PRESENT ILLNESS:
This is a very pleasant 69-year-old Caucasian male with known coronary artery disease, status post non-ST elevation MI in August 2022. At that time, he was diagnosed with severe multivessel coronary artery disease and underwent aortocoronary bypass surgery with LIMA to LAD, saphenous venous graft to RCA, and left atrial appendage ligation with 45 millimeters AtriClip. Ligation was successful. Aortocoronary bypass surgery hospital course was without any significant issues. The patient has been compliant with medications for hypertension and dyslipidemia. He was involved in cardiac rehabilitation. In December 2022, the patient developed worsening shortness of breath with exertion and was diagnosed with ST elevation MI in December 2021. Heart catheterization showed subtotal anastomosis with LIMA to LAD. The patient underwent a drug-coated stent by Dr. Kumar successfully. He is compliant with present medical therapy as blood pressure is always on the low side. The patient tolerates aspirin, atorvastatin, and metoprolol. Plavix was mentioned on the medication list, but the patient had stopped taking Plavix last year. Today, he wishes to address worsening of shortness of breath with exertion. He denies any chest discomfort. He reports doing well on medical management. He reports that he would like to exercise more, but shortness of breath stops him from activity. He was seen by a Pulmonary specialist, was diagnosed with COPD. Since started on inhalers, he is doing significantly better concerning shortness of breath, but not all back to baseline.

EKG obtained today showed Q-waves in inferior leads, known from previous EKG, ST elevattion in the inferior leads, and ST depression in the lateral leads. The patient denies having any chest discomfort. No shortness of

8-Jun-2023 15:17 +18778433950 +12252018313 p.8



breath presently on exam.

Marina Flaskas, MD, FACC
VR/#2491/1

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy | 1973 |
| • Anxiety | |
| • Biceps tendon rupture<br>*Left - long head* | 08/2017 |
| • BPH (benign prostatic hyperplasia) | |
| • CAD (coronary artery disease)<br>*elevated calcium score - 688* | |
| • Coronary artery disease | |
| • Depression | |
| • Diabetes mellitus (HC Category) | |
| • ED (erectile dysfunction) | |
| • History of irregular heartbeat<br>*a-fib* | |
| • Hyperthyroidism | |
| • Insomnia | |
| • Myocardial infarction (HC Category)<br>*a-fib* | 2015 |
| • OSA on CPAP | |
| • Osteoarthritis of left shoulder<br>*Minimial degenerative change along the inferior glenoid. Minimal AC joint degenerative change.* | |
| • Paroxysmal A-fib (HC Category) | |
| • Rotator cuff tear, right | |



PAGE 8/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

8-Jun-2023 15:17 +18778433950 +12252018313 p.9

PAGE 9/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • BRAIN SURGERY<br>*blood clots from auto accident/concussion* | | 1973 |
| • BURR HOLE OF CRANIUM<br>*19 yo* | | |
| • CARDIAC SURGERY | | |
| • DCCV | | |
| • FINGER AMPUTATION | Left | |
| • FRACTURE SURGERY<br>*Leg* | Left | |
| • KNEE SURGERY<br>*CAM* | Left | 06/27/2016 |
| • SHOULDER ARTHROSCOPY<br>*rotator cuff repair and subacromial decompression* | Left | 2018 |
| • VASECTOMY | | 1990 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Bone cancer | Father | |
| • No Known Problems | Maternal Grandmother | |
| • No Known Problems | Maternal Grandfather | |
| • Prostate cancer | Neg Hx | |
| • Diabetes | Neg Hx | |
| • Colon cancer | Neg Hx | |

**Social History**

8-Jun-2023 15:10 +18778433950 +12252018313 p.10

PAGE 10/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



Socioeconomic History

- Marital status: Married

Tobacco Use

- Smoking status: Former
  - Packs/day: 0.50
  - Years: 25.00
  - Pack years: 12.50
  - Types: Cigarettes
  - Quit date: 7/1/2005
  - Years since quitting: 17.8
- Smokeless tobacco: Never
- Tobacco comments:
  *Quit 15-16 years ago*

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 6.0 standard drinks
  - Types: 6 Glasses of wine per week
  - *Comment: couple bottles of wine on weekend*
- Drug use: Never
- Sexual activity: Yes
  - Partners: Female

Social History Narrative

*Married. 2 grownchildren.*
*Works for john soules (desk job)*

No facility-administered encounter medications on file as of 5/12/2023.

**Outpatient Encounter Medications as of 5/12/2023**

8-Jun-2023 15:18 +18778433950 +12252018313 p.11

PAGE 11/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05



| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin, enteric-coated, (ECASA) 81 MG enteric-coated tablet | Take 1 tablet (81 mg total) by mouth daily | 30 tablet | 1 |
| • atorvastatin (LIPITOR) 80 MG tablet | Take 1 tablet (80 mg total) by mouth nightly | 90 tablet | 2 |
| • buPROPion (WELLBUTRIN XL) 300 MG 24 hr sustained-release tablet | Take 1 tablet (300 mg total) by mouth daily | 90 tablet | 3 |
| • escitalopram (Lexapro) 10 MG tablet | | | |
| • levothyroxine (SYNTHROID) 50 MCG tablet | Take 50 mcg by mouth nightly | | |
| • metFORMIN (GLUCOPHAGE) 500 MG tablet | Take 500 mg by mouth daily with dinner | | |
| • metoprolol succinate (Toprol-XL) 25 MG 24 hr sustained-release tablet | TAKE ONE TABLET BY MOUTH TWICE A DAY | 60 tablet | 5 |
| • tamsulosin (Flomax) 0.4 MG capsule | Take 2 capsules (0.8 mg total) by mouth daily | 180 capsule | 3 |
| • traZODone (Desyrel) 100 MG tablet | | | |
| • isosorbide mononitrate (Imdur) 30 MG 24 hr sustained-release tablet | Take 1 tablet (30 mg total) by mouth daily | 90 tablet | 3 |
| • [DISCONTINUED] clopidogrel (PLAVIX) 75 MG tablet | Take 1 tablet (75 mg total) by mouth daily (Patient not taking: Reported on 5/12/2023) | 90 tablet | 3 |
| • [DISCONTINUED] temazepam | Take 30 mg by mouth | | |

8-Jun-2023 15:18 +18778433950 +12252018313 p.12

PAGE 12/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

| | |
|---|---|
| (RESTORIL) 30 MG capsule | nightly as needed for Sleep (Patient not taking: Reported on 5/12/2023) |

Allergies as of 05/12/2023

- (No Known Allergies)

| Interpreter | 1/6/2022 |
|---|---|
| **Is an interpreter used?** | No |

Review of Systems
Constitutional: Negative for weight gain and weight loss.
Eyes: Negative for blurred vision.
Cardiovascular: Negative for chest pain, dyspnea on exertion, leg swelling, near-syncope and palpitations.
Respiratory: Negative for shortness of breath.
Endocrine: Negative for polydipsia.
Hematologic/Lymphatic: Does not bruise/bleed easily.
Skin: Negative for rash.
Musculoskeletal: Negative for back pain.
Gastrointestinal: Negative for abdominal pain.
Neurological: Negative for focal weakness.

**Objective:**

Objective
BP 110/60 (BP Location: Left arm, Patient Position: Sitting) | Pulse 72 | Ht 1.727 m (5' 8") | Wt 113.4 kg (250 lb) | BMI 38.01 kg/m²

8-Jun-2023 15:18 +18778433950 +12252018313 p.13

PAGE 13/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

No flowsheet data found.
No flowsheet data found.

Physical Exam

Constitutional: No distress.
HENT:
Mouth/Throat: Oropharynx is clear.
Eyes: Pupils are equal, round, and reactive to light.
Neck: Thyroid normal. No JVD present. No neck adenopathy.
Cardiovascular: Normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and normal pulses. Exam reveals no gallop, no S3, no S4 and no midsystolic click.
No murmur heard.
Pulses:
Dorsalis pedis pulses are 2+ on the right side and 2+ on the left side.
Pulmonary/Chest: Breath sounds normal. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no splenomegaly or hepatomegaly. There is no abdominal tenderness.
Musculoskeletal:
General: No tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry. No cyanosis.

## Accessory Data:

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 6.9 | 05/12/2023 |
| HGB | 14.9 | 05/12/2023 |

p.14 +12252018313 +18778433950 8-Jun-2023 15:19

| | | |
|---|---|---|
| HCT | 45.1 | 05/12/2023 |
| MCV | 91.6 | 05/12/2023 |
| PLT | 221 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHLPL | 114 | 05/12/2023 |
| HDL | 41 | 05/12/2023 |
| LDLCALC | 54 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| ALT | 75 (H) | 05/12/2023 |
| AST | 60 (H) | 05/12/2023 |
| ALKPHOS | 90 | 05/12/2023 |
| BILITOT | 0.7 | 05/12/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CREATININE | 1.10 | 05/12/2023 |
| BUN | 19 | 05/12/2023 |
| NA | 137 | 05/12/2023 |
| K | 4.1 | 05/12/2023 |
| CL | 101 | 05/12/2023 |
| CO2 | 26.0 | 05/12/2023 |

5/14/2023



PAGE 14/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

p.15 +12252018313 +18778433950 15:19 8-Jun-2023

PAGE 15/28 * RCVD AT 6/8/2023 11:15:46 AM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:+12252018313 * ANI:2252018313 * DURATION (mm-ss):08-05

Marina Flaskas, MD

# Patient Instructions

Nurse Cindy, RN at 5/12/2023 1:00 PM

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** DoB | 5/12/2023 1:00 PM | CHRISTUS Trinity Clinic Cardiology 903-606-7000

Instructions from M Flaskas, MD

**Imdur 30 mg daily**

**Referral to Cardiac rehab**

**Get admitted today and get cath done as inpatient.**

Return in about 3 months (around 8/12/2023).

## What's Next

You currently have no upcoming appointments scheduled.

## Additional Information

If you are unable to keep your appointment, please call the clinic at least four hours prior to your scheduled appointment time.

## Today's Visit

You saw M Flaskas, MD on Friday May 12, 2023. The following issues were addressed:

- Coronary artery disease due to lipid rich plaque
- Angina at rest

Blood Pressure 110/60

BMI 38.01

Weight 250 lb

Height 5' 8"

Pulse 72

## Done Today

EKG 12 lead-IN ROOM for Coronary artery disease due to lipid rich plaque

MyChart

Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:

- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Your Medication List as of May 12, 2023 1:47 PM

ⓘ Keep your medication list with you at all times and show to your healthcare providers.

| | |
|---|---|
| aspirin (enteric-coated) 81 MG enteric-coated tablet<br>Commonly known as: Ecasa | Take 1 tablet (81 mg total) by mouth daily |
| atorvastatin 80 MG tablet<br>Commonly known as: Lipitor | Take 1 tablet (80 mg total) by mouth nightly |
| buPROPion 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL | Take 1 tablet (300 mg total) by mouth daily |
| clopidogrel 75 MG tablet<br>Commonly known as: Plavix | Take 1 tablet (75 mg total) by mouth daily |
| escitalopram 10 MG tablet<br>Commonly known as: Lexapro | |
| levothyroxine 50 MCG tablet<br>Commonly known as: Synthroid | Take 50 mcg by mouth nightly |
| metFORMIN 500 MG tablet<br>Commonly known as: Glucophage | Take 500 mg by mouth daily with dinner |
| metoprolol succinate 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL | TAKE ONE TABLET BY MOUTH TWICE A DAY |
| tamsulosin 0.4 MG capsule<br>Commonly known as: Flomax | Take 2 capsules (0.8 mg total) by mouth daily |
| temazepam 30 MG capsule<br>Commonly known as: Restoril | Take 30 mg by mouth nightly as needed for Sleep |
| traZODone 100 MG tablet<br>Commonly known as: Desyrel | |

## Your Medication Allergies

No active allergies

CHRISTUS Health

# AFTER VISIT SUMMARY

**William J. Reynolds** MRN: 096638825 ST segment depression 5/12/2023 - 5/14/2023 LPOHH 4

Instructions

Your medications have changed

START taking:

**clopidogrel** (Plavix)
Start taking on: **May 15, 2023**

**nitroglycerin** (Nitrostat)

**Review your updated medication list below.**

## Your Next Steps

Do

- ☐ Pick up these medications from BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD
  - clopidogrel
  - nitroglycerin
- ☐ Go to M Flaskas, MD
  CHRISTUS Trinity Clinic Cardiology
  903-606-7000

Go

JUN 26 Follow Up Appointment 8:45 AM
M Flaskas, MD
CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.
Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.
We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.
You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

## What's Next

Go to M Flaskas, MD

CHRISTUS Trinity Clinic Cardiology
703 S Fleishel
Ste 4000
TYLER TX 75701
903-606-7000

JUN 26

Follow Up Appointment with M Flaskas, MD
Monday Jun 26, 2023 8:45 AM
Please arrive 15 minutes before your appointment. Bring your insurance cards, photo ID and a list of current medication.

CHRISTUS Trinity Clinic Cardiology
703 S. Fleishel, Ste 4000
TYLER TX 75701
903-606-7000

Please be prepared to pay your co-pay and any balance due at the time of visit. If you cannot make your appointment, please call at least 24 hours prior to cancel in order to avoid being charged a no show fee.

We at CHRISTUS Health value your health and safety. Patients and visitors are encouraged to wear a mask. Please tell us before your arrival if you or your essential visitor are experiencing fever and cough or fever and shortness of breath. Providing this information will help us ensure that we provide you with the best possible care in the appropriate setting.

You can streamline your check-in process and help maintain social distancing by using the e-Check in feature in MyChart prior to your arrival. We appreciate the opportunity to serve you. These measures are just a few steps we are taking to ensure to provide you and all others a safe environment. For more information, please visit our website at christushealth.org.

## Medications You Will Be Given

MAY 13
diazepam (Valium)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

MAY 13
diphenhydrAMINE (Benadryl)
Next due Saturday May 13 (Overdue)
Expected: once (1 dose remaining)

## Additional Discharge Instructions

**Infection Prevention:**

- Clean hands are the **BEST** protection to prevent infection
  - Wash your hands with soap and water before and after changing dressings
  - Wash your hands with soap and water after using the restroom
  - Do not pick at wounds or bandages
- Your physician will give you specific instructions for changing your bandages or dressings
- Maintain a clean environment
  - Change bed linens daily
  - Do not put lotions, ointments or oils on your incisions or wounds

## Additional Discharge Instructions (continued)

  - Do not let pets come in contact with or lick incisions or wounds
  - Do not apply heating pad to incisions or wounds
- Avoid submerging incisions or wounds:
  - No tub bathing
  - No swimming in pools, lake or at beach
  - No hot tubs

- **Notify your physician for:**
  - Fever over 101 degrees
  - Chills/Shaking
  - Increased redness of incision or wound
  - Increased drainage or pus from incision or wound
  - Odor from incision or wound
  - Development of severe diarrhea

**COVID-19:**

- For information about COVID-19, visit the Centers for Disease Control and Prevention site at: cdc.gov/coronavirus

Additional Discharge Instructions (continued)

| Heart Failure Zones | |
|---|---|
| **EVERY DAY** | • No smoking<br>• Weigh yourself in the morning before breakfast, write it down, and compare to yesterday's weight<br>• Take your medicine as prescribed<br>• Check for swelling in your feet, ankles, legs, and stomach<br>• Eat a low-salt diet- see dietary handout<br>• Increase daily activity and balance with rest periods<br>• Which heart failure zone are you in today — green, yellow, or red? |
| **GREEN ZONE** | **All Clear – This Zone Is Your Goal**<br>Your symptoms are under control, you have:<br>• No shortness of breath<br>• No weight gain more than 2 lbs (it may change 1 or 2 lbs some days)<br>• No swelling of your feet, ankles, legs, or stomach<br>• No chest pain |
| **YELLOW ZONE** | **Caution – This Zone Is A Warning**<br>Call your doctor's office if:<br>• You have a weight gain of 3 lbs in 1 day or a weight gain of 5 lbs or more in 1 week<br>• More shortness of breath<br>• More swelling of your feet, ankles, legs, or stomach<br>• Feeling more tired, no energy<br>• Dry hacky cough<br>• Dizziness<br>• Feeling uneasy, you know something is not right<br>• It is harder for you to breathe when lying down. You need to sleep sitting up in chair |
| | **Emergency**<br>**Go to the emergency room or call 911 if you have any of the following:**<br>• Struggling to breathe, unrelieved shortness of breath while sitting still<br>• Have chest pain<br>• Have confusion or can't think clearly |

Here are a few Heart Failure Education website and video links for you to review.

1. "Living with Heart Failure--A Guide for Patients" educational video by the Heart Failure Society of America
    - http://www.hfsa.org/living-with-heart-failure-2/
2. American Heart Association Heart Failure
    - http://www.heart.org/HEARTORG/Conditions/HeartFailure/Heart-Failure_UCM_002019_SubHomePage.jsp
3. American Heart Association Online Heart Failure Support Group:
    - http://supportnetwork.heart.org/heart-failure
4. American Association of Heart Failure Nurses Patient Education
    - http://aahfnpatienteducation.com/
5. Heart Failure Matters
    - http://www.heartfailurematters.org/en_GB

**For Stroke Patients:**

## Additional Discharge Instructions (continued)

I understand that by carefully controlling and monitoring any of the risk factors listed, I can decrease my risk of future stroke:
- High Blood Pressure (hypertension)
- High Blood Cholesterol (hyperlipidemia)
- Diabetes
- Smoking
- Alcohol Abuse
- Drug Abuse

Call 911 if you have any of the following stroke symptoms:
- Sudden dizziness or unsteady gait
- Sudden facial droop
- Slurred speech
- Arm or leg numbness on one or both sides
- Confusion
- Loss of vision
- Severe headache with no known cause

You can reduce your risk of stroke by:
- If you smoke, stop.
- Reduce your alcohol intake.
- Lower your cholesterol by following a low fat diet.
- Lower your blood pressure.
- Increase physical activity as tolerated.
- Maintain a normal weight.

For more information:
American Stroke Association
888-478-7653
www.stroke.org

**Please keep this list of medications with you at all times in case of an emergency. Provide a copy to your primary care physician as soon as practical. Update your list if there are any changes, such as a change in dose or if medications are added or discontinued (including over the counter).**

## You are allergic to the following

No active allergies

## Vital Signs - Last Recorded

Most recent update: 5/14/2023 11:08 AM

| BP | Pulse | Temp | Resp | SpO2 |
|---|---|---|---|---|
| 114/64 (BP Location: Left arm, Patient Position: Lying) | 65 | 36.4 °C (97.6 °F) (Oral) | 18 | 95% |

Smoking Status
Former

Medication List

| | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| aspirin (enteric-coated) 81 MG enteric-coated tablet<br>Commonly known as: Ecasa<br>Take 1 tablet (81 mg total) by mouth daily<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 30 tablet | ✓ Last taken 5/14 | | | | |
| atorvastatin 80 MG tablet<br>Commonly known as: Lipitor<br>Take 1 tablet (80 mg total) by mouth nightly<br>Last time this was given: 80 mg on May 13, 2023 8:57 PM<br>Quantity: 90 tablet | | | | ✓ | |
| buPROPion 300 MG 24 hr sustained-release tablet<br>Commonly known as: Wellbutrin XL<br>Take 1 tablet (300 mg total) by mouth daily<br>Last time this was given: 300 mg on May 14, 2023 8:43 AM<br>Quantity: 90 tablet | ✓ Last taken 5/14 | | | | |
| START clopidogrel 75 MG tablet<br>Commonly known as: Plavix<br>Start taking on: May 15, 2023<br>Take 1 tablet (75 mg total) by mouth daily<br>Last time this was given: 75 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓ Last taken 5/14 | | | | |
| escitalopram 10 MG tablet<br>Commonly known as: Lexapro<br>Last time this was given: 10 mg on May 13, 2023 8:57 PM | | | | ✓ | |
| isosorbide mononitrate 30 MG 24 hr sustained-release tablet<br>Commonly known as: Imdur<br>Take 1 tablet (30 mg total) by mouth daily<br>Last time this was given: 30 mg on May 14, 2023 8:44 AM<br>Quantity: 90 tablet | ✓ Last taken 5/14 | | | | |
| levothyroxine 50 MCG tablet<br>Commonly known as: Synthroid<br>Take 50 mcg by mouth nightly<br>Last time this was given: 50 mcg on May 14, 2023 5:29 AM | | | | ✓ | |

## Medication List (continued)

| Medication | Morning | Afternoon | Evening | Bedtime | As Needed |
|---|---|---|---|---|---|
| **metFORMIN** 500 MG tablet<br>Commonly known as: Glucophage<br>Take 500 mg by mouth daily with dinner | | | ✓ | | |
| **metoprolol succinate** 25 MG 24 hr sustained-release tablet<br>Commonly known as: Toprol-XL<br>TAKE ONE TABLET BY MOUTH TWICE A DAY<br>Last time this was given: 25 mg on May 14, 2023 8:44 AM<br>Quantity: 60 tablet | ✓<br>Last taken 5/14 | | | ✓ | |
| START **nitroglycerin** 0.4 MG sublingual tablet<br>Commonly known as: Nitrostat<br>Place 1 tablet (0.4 mg total) under the tongue every 5 (five) minutes as needed for Chest pain<br>Last time this was given: Ask your nurse or doctor<br>Quantity: 90 tablet | | | | | ✓ |
| **tamsulosin** 0.4 MG capsule<br>Commonly known as: Flomax<br>Take 2 capsules (0.8 mg total) by mouth daily<br>Last time this was given: 0.8 mg on May 14, 2023 8:43 AM<br>Quantity: 180 capsule | ✓<br>Last taken 5/14 | | | | |
| **traZODone** 100 MG tablet<br>Commonly known as: Desyrel<br>Last time this was given: 100 mg on May 13, 2023 8:57 PM | | | | ✓ | |

## Where to pick up your medications

Pick up these medications at BROOKSHIRE PHARMACY #051 - TYLER, TX - 100 RICE RD

clopidogrel • nitroglycerin

Address: 100 RICE RD, TYLER TX 75703
Phone: 903-561-7943

MyChart
Thank you for enrolling in MyChart!

With this secure, private connection, here are just a few of the many things you can do with MyChart:
- Review your clinic lab results
- Send a message to your provider's office
- Request prescription refills
- Schedule an appointment with your physician or advanced practitioner

Log into your MyChart account at christusmychart.org

Once your account is set up, you can access it on your iPhone or Droid by downloading the free MyChart App.

Remember, MyChart should not be used for emergencies. For medical emergencies, dial **911**.

Your MyChart username and password will also allow you to access your health information through apps that use an API. To learn more, visit www.christushealth.org/api.

## Instructions

**Discharge Cath Instructions: Groin Access**

Level of Activity:
- Avoid activities which require heavy lifting (over 10 pounds), straining, running, or contact sports until your physician releases you.
- Avoid excessive kneeling bending or squatting for 3 days.
- No driving for 3 days or until your Cardiologist releases you.
- Follow your home exercise program as prescribed by your Cardiologist and as instructed by Cardiac Rehab.
- Limited walking for 3 days. After the 3 day recovery period, walking at least 30 minutes a day / 5 days per week is recommended unless otherwise instructed by your Cardiologist.
- You may return to work on 05/17/2023.

Incision Site Care:
- You may have a small to moderate amount of bruising around the groin area extending in to the thigh region.
- You may notice a small knot in the groin incision area; it should not be larger that the size of a dime. This is normal as long as it is not painful, red, swollen, warm to touch or draining.
- You will be sent home from the hospital with a clear dressing on your groin. This is to be removed after 24 hours. It is usually easier to remove by wetting it in the shower.
- You may shower tomorrow.
- No tub baths for 3 days.
- Clear Dressing Removal: After 24 hours, gently remove the dressing while in the shower. Cleanse area with soapy hand. Do not scrub with a washcloth. Pat dry and apply a dry bandaid over the site each day for 3 days.
- DO NOT apply lotions, creams, ointments, or powders to the incision site.

Please notify your **Cardiologist immediately** if you have any of the following symptoms:
- Loss of sensation, tingling or numbness in the affected extremity.
- If you develop fever greater than 101, redness and warmth to the site(s), increased pain, milky or foul smelling drainage.
- Chest pain that is getting worse or does not subside.

Other:
- **If GROIN site becomes hard, swollen and painful or starts bleeding, apply pressure and seek medical attention immediately or call 911. DO NOT DRIVE YOURSELF.**

Diet: Heart Healthy/Cardiac Low Fat, Low Salt, INCREASE fruits, whole grains, and vegetables.
- DRINK PLENTY OF WATER FOR THE NEXT 48 HOURS.

If you have any problems or questions, please feel free to call your Cardiologist's office listed in the Follow-Up section of this After Visit Summary.

**Adult Sedation / Anesthesia Discharge Instructions**

The medication given to you today for your procedure will remain in your body for some time. You may feel lazy, drowsy, or lose your sense of balance. Your fine muscle control may be changed and your judgment could be affected. Your

## Instructions (continued)

reaction time, such as in driving a car will be slowed. You may not recognize any of these changes. **For your safety we have some strict instructions.** You must be accompanied by a responsible adult upon discharge.

**"The 7 D's":**

- Do not **DRIVE.**
- Do not use potentially **DANGEROUS** appliances or equipment (stove, lawn mower, garbage disposal, etc).
- You may become **DROWSY**. You could fall asleep while using equipment and cause harm to yourself.
- Watch out for **DIZZINESS.** Move slowly and take your time. Sudden position changes can cause nausea.
- Do not make any important **DECISIONS.** You may change your mind tomorrow.
- Do not **DRINK** alcoholic beverages. The drugs may cause your reaction to alcohol to be different.
- **DISCUSS** any questions you may have with your doctor.

**Others:**

- **EATING:** Drinking fluids is very important. Do not eat if there is any question of whether you feel nauseated or sick to your stomach; resume previous diet unless otherwise instructed. No alcoholic beverages.
- **MEDICATIONS:** Ask your doctor about taking or continuing medications including alternative dietary supplements.
- **PAIN CONTROL:** Use of medications and alternative measures as prescribed by your physician.
- **RECOVERY:** In general, you should be completely recovered from these medications by tomorrow.
- **REPORT:** Excessive nausea, uncontrollable pain, redness or swelling at the I.V. Site, increased temperature, or any new symptoms of concern.
- **PHYSICIAN NAME / PHONE NUMBER: Please refer to the Follow-Up Section of this After Visit Summary.**
- **Dial 911 for emergencies.**

REF #18580553

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 11, 2023

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Brandy Jackson:

We are writing in regard to the Long Term Disability appeal for William Reynolds.

We have found it necessary to request additional information from Mr. Reynolds.

As soon as the requested information is received, we will notify you of the disposition of the appeal. Thank you for your patience during this time.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 11, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on 05/03/2023 .

In an effort to provide Mr. Reynolds's claim with a full and fair review, it would be your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your client's appeal. For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated 12/16/2022>.

It is important that we have all available medical records so that we have a clear picture of Mr. Reynolds's current condition.

Please submit any and all additional medical evidence that you believe would support your client's appeal. Please have the medical records submitted to our office no later than 06/10/2023.

If we do not receive the additional information by 06/10/2023, we will review the appeal and render a decision based upon the information currently available in Mr. Reynolds's file.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of the appeal. For your convenience, all documents may be sent via facsimile to 402-361-1460.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We are allowing you time to submit additional information. Due to these special circumstances an extension of time to process your/your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal

Please note that we are not making a final determination on Mr. Reynolds's disability claim at this time as we want to provide your client with every opportunity to submit a complete appeal.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 11, 2023

LAW OFFICES OF J. PRICE MCNAMARA
ATTN J. PRICE MCNAMARA
10455 JEFFERSON HIGHWAY
SUITE SB
BATON ROUGE, LA 70809

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear J. PRICE MCNAMARA:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on 05/03/2023 .

In an effort to provide Mr. Reynolds's claim with a full and fair review, it would be your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your client's appeal. For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated 12/16/2022>.

It is important that we have all available medical records so that we have a clear picture of Mr. Reynolds's current condition.

Please submit any and all additional medical evidence that you believe would support your client's appeal. Please have the medical records submitted to our office no later than 06/10/2023.

If we do not receive the additional information by 06/10/2023, we will review the appeal and render a decision based upon the information currently available in Mr. Reynolds's file.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of the appeal. For your convenience, all documents may be sent via facsimile to 402-361-1460.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We are allowing you time to submit additional information. Due to these special circumstances an extension of time to process your/your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal

Please note that we are not making a final determination on Mr. Reynolds's disability claim at this time as we want to provide your client with every opportunity to submit a complete appeal.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Susan McShane
800-423-2765 *2769
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

MAY 8 2023

LAW OFFICES
OF
J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

**THE OFFICIAL ADMINISTRATIVE RECORD**

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. *See, e.g., Wildbur*, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
> > FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, but neither may an administrator arbitrarily refuse to credit reliable evidence.** See *Black & Decker Disability Plan v. Nord*,

538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiffs evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

---

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).

[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.III. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.III. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**PAYMENT INSTRUCTIONS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

FILEVINE

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln - LTD APPEAL - 05-02-23_2023-05-02-0940-PDT.pdf | **Pages:** | 29 |
| **Sent:** | May 2, 2023 9:41 AM PDT | **Rec'd:** | May 2, 2023 9:52 AM PDT |

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

## THE OFFICIAL ADMINISTRATIVE RECORD

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record.** ***See, e.g., Wildbur*****, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
> > FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, but neither may an administrator arbitrarily refuse to credit reliable evidence.** See *Black & Decker Disability Plan v. Nord*,

> 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiff's evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

---

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).

[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.III. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.III. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**PAYMENT INSTRUCTIONS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response**.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

BEFORE ME, the undersigned authority, came and appeared:

WILLIAM REYNOLDS

who after being duly sworn, did depose and state the following:

1. My date of birth is
2. I am currently married to Samantha Gail Reynolds.
3. Prior to becoming disabled from working, my employer was John Soules Foods since 1997, and my job title or position when I became disabled was Sales Analyst.
4. My last date of work for my employer upon becoming disabled was April 22, 2022.
5. As of my last date of work, my gross annual salary before taxes was $90,000.00
6. This information is all true and based upon personal knowledge.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023
[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

Reynolds - Appeal 05/02/23 - 001

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**WILLIAM REYNOLDS**

who after being duly sworn, did depose and state the following:

1. The following has been true continuously since my last day of work related to my disability claim through the date of this Affidavit.

2. My understanding is that my disability is the result of my heart attacks on September 28, 2021 and December 19, 2021.

3. My September 28, 2021, heart attack was followed by a double coronary bypass on October 1, 2021. After my December 19, 2021, heart attack, I was diagnosed with diffused coronary heart disease and had a stent inserted on December 20, 2021.

4. I take the following prescription medications, at the following dosages and intervals each day:

    1. *Metoprolol Succ Er – 25mg – Taken twice daily for heart rhythm.
    2. Aspirin – 81mg – Taken once daily for blood thinner.
    3. Wellbutrin XL – 300mg – Taken once daily for depression.
    4. *Metformin Hcl Er – 500mg – Taken once daily for pre-diabetes.
    5. Vitamin D3 – 125mcg – Taken once daily for Vitamin D deficiency.
    6. *Atorvastatin – 80mg – Taken once daily for cholesterol.
    7. *Levothyroxine – 75mg – Taken once daily for low thyroid.
    8. Escitalopram – 10mg – Taken once daily for depression.
    9. *Tamsulosin – 0.4mg – Taken once daily for enlarged prostate.
    10. Temazepam – 30mg – Taken once daily for sleep.
    11. Xanax – 0.5mg – Taken as needed for stress.
    12. Furosemide – 20mg – Taken once daily for fluid in the lungs.

5. The above-referenced medications marked with an *, when taken, cause me to be even more forgetful and unable to perform adequately mentally and physically than without taking them. They cause drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, as my ability to do everything is much slower, including all activities of daily living.

6. The above medications marked with an * cause negative side-effects, including but not limited to: statin-induced myopathy, dizziness, lightheadedness, bloating, heartburn, heat intolerance, excessive sweating, shortness of breath, and drowsiness.

7. With or without taking the above-referenced medications, my disability is severe. Whether or not taking my medication, the physical and mental effects of my medical condition as described in this affidavit do not change.

8. I am able to sit when I am not drowsy for 1 to 2 hours. If I sit for longer than 1 to 2 hours, I will doze off.

9. I can carry 10 to 20lbs for a maximum of 5 minutes and cannot lift more than 25 to 30lbs maximum. I need to pause and rest when carrying any significant weight due to severe shortness of breath.

10. I can stand for 15 to 20 minutes at a time and walk for 20 to 30 minutes before I need to rest. Excessive standing and walking cause me to experience fatigue, leg pain, and hip pain and weakness.

11. I am unable to drive for longer than an hour because my eyes and judgement become fatigued.

12. On a daily basis, I need to sit and rest 10 to 12 times for periods of 15 to 20 minutes at a time.

13. I experience fatigue and brain fog when I use my laptop for more than 20 to 30 minutes.

14. My wife watches me closely when I am outside of our home's living area because of my balance issues. She frequently assists me with any outdoor chores such as leaf blowing.

15. After my heart attacks, I've struggled with concentrating and require 3 or more breaks while doing complex comprehension activities in order to complete the task.

16. This Affidavit is based exclusively on my own knowledge and words, but it was completed over the course of several weeks, a little at a time, and required many hours of total time to complete it.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

**PARISH/COUNTY OF** WOOD

**STATE OF** Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**ERIC JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' son-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Eric Johnson
**ERIC JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

PARISH/COUNTY OF WOOD

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**EMILY JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' daughter.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Emily Johnson
**EMILY JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023
NOTARY PUBLIC STATE OF TEXAS

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SAMANTHA REYNOLDS**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' spouse and I help him with his care.
2. I observe him and converse with him daily.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

[signature]
SAMANTHA REYNOLDS

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2026
Notary ID 133391854

PARISH/COUNTY OF Ellis

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SANDRA ST. CLAIR**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' sister-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

EDGAR GODINEZ SANCHEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 02-24-26
Notary ID # 13360889-9

Sandra St Clair
**SANDRA ST. CLAIR**

Sworn to and subscribed
before me this 21 day
of April, 2023.

NOTARY PUBLIC
Notary/Bar No.: 13360889-9
My Commission Expires 02-24-26

PARISH/COUNTY OF Smith
STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**STEPHANIE PRICE**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' niece.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Stephanie Price
**STEPHANIE PRICE**

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133391854

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

**PHYSICIAN'S RECOMMENDED RESTRICTIONS**

Patient's Name: William Reynolds S.S.# ____________________
Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

Less than (1) ___2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

__________1___(2)___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

__X__ Yes

_____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. __100%__

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? __✓__Yes _____No

Pushing and pulling? __✓__Yes _____No

Fine manipulation and fingering? _____Yes __✓__No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

__✓__Yes

_____No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature]
Signature

3/27/23
Date

# Tyler
# History and Physical

| | | | |
|---|---|---|---|
| **Patient Name:** | William Reynolds | **Visit Date:** | April 6, 2023 |
| **Patient ID:** | 800509 | **Provider:** | Lisa Leffler, MD |
| **Sex:** | Male | **Location:** | Tyler |
| **Birthdate:** | | **Location Address:** | 2115 S Broadway Ave<br>Tyler, TX 75701-4214 |
| **Referring Provider:** | Lisa Leffler MD | **Location Phone:** | (903) 907-7002 |

## Chief Complaint

- Follow up on depression

## History Of Present Illness

Are you in pain today No
Have you been given any information to help you with hazards in your house that may hurt you such as fire hazards, fire arm safety, and fall risks No

Hearing screening
Do you have difficulty hearing No
If yes, do you wear hearing aids ANSWER
If yes, do your hearing aids work ANSWER
If no, are you interested in talking with your provider about hearing aids ANSWER

Fall Risk
Patient answerd yes to the following fall risks: no fall risk

Advance Directive:
Do you have a Power of Attorney Yes Do we have a completed POA form on file Yes
Do you have a POLST form or 5 Wishes filled out Yes Do we have the completed form on file Yes

Medical Scribe Signature and Authentication: This note was scribed by Christine McManus on 4/6/2023 at 03:23 PM for and in the presence of the attending provider Lisa Leffler MD, who personally performed the services described in this documentation and who confirms that after personal review this note is both accurate and complete.

[Digital Signature Validated]

William Reynolds is a male presenting for WRV. Labs from discussed with pt.

Heart
- Denies any chest pain
- Taking Metoprolol Succinate 25mg twice daily

Diabetes
- Taking Metformin 500 mg daily
- Bilateral foot pain, worse on L and bottoms of feet

Cholesterol
- Taking Atorvastatin 80 mg daily

Thyroid
- Taking Levothyroxine 75 mcg daily

COPD
- Reports mild SOB
- Denies need of rescue inhaler

Depression
- Taking Bupropion 300mg daily, Lexapro 10m daily
- States Trazadone is helping him sleep better
- States he is feeling better and has desire to do more things

BPH
- Taking Tamsulosin 0.4mg daily

Left hand
- L middle finger at knuckle absent

ROS:
No fever or chills. No weight loss. No weight gain. No change in hearing. No change in vision. No sore throat. No shortness of breath at rest. No chest pain. No cough. No abdominal pain. No nausea or vomiting. No diarrhea. No recent falls.

Patient is here today for REASON FOR VISIT per doctor's previous orders.

## Past Medical History

Alcohol abuse; CHF (congestive heart failure), NYHA class I, chronic, diastolic; Heart failure; Major depressive disorder, recurrent, moderate; Morbid obesity; Obstructive sleep apnea; Paroxysmal A-fib; Secondary hyperaldosteronism; Stable angina; Tobacco dependence in remission

## Past Surgical History

| Procedure Name | Date | Notes |
|---|---|---|
| Arm Surgery | -- | -- |
| Bypass Surgery | -- | -- |
| Hand Surgery | -- | -- |
| Heart Stent | -- | -- |
| Leg Surgery | -- | -- |
| Shoulder surgery | -- | -- |

[Digital Signature Validated]

## Medication List

| Name | Date Started | Instructions |
|---|---|---|
| traZODone 100 mg tablet | 03/29/2023 | take 1 pill every night for sleep |

## Allergy List

| Allergen Name | Date | Reaction | Notes |
|---|---|---|---|
| Percodan | -- | -- | -- |

## Family Medical History

| Disease Name | Relative/Age | Notes |
|---|---|---|
| Cancer (Other) | | -- |
| Heart Attack | | -- |
| Substance abuse | | -- |

## Social History

| Finding | Status | Start/Stop | Quantity | Notes |
|---|---|---|---|---|
| Ambulatory Status: Independent | -- | --/-- | -- | -- |
| Education: Some | -- | --/-- | -- | -- |
| Lives With Spouse | -- | --/-- | -- | -- |
| Marital Status: Married | -- | --/-- | -- | -- |
| Tobacco | Former | 20/50 | 10 | -- |
| Work: Retired | -- | --/-- | -- | -- |

## Immunizations

| NameDate Admin | Mfg | Trade Name | Lot Number | Route | Inj | VIS Given | VIS Publication |
|---|---|---|---|---|---|---|---|
| Tdap - adult01/28/2020 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | |
| Zoster (Shingles)10/08/2014 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | |

## Review of Systems

**Constitutional**
- * See HPI

**Eyes**
- * See HPI

**HENT**
- * See HPI

**Breasts**
- * See HPI

**Cardiovascular**
- * See HPI

**Respiratory**
- * See HPI

**Gastrointestinal**
- * See HPI

**Genitourinary**
- * See HPI

**Integument**
- * See HPI

**Neurologic**
- * See HPI

**Musculoskeletal**
- * See HPI

[Digital Signature Validated]

**Physical Examination**

**Constitutional**
- **Appearance** : Well nourished, well developed. No apparent distress.

**Head and Face**
- **Head** : Normocephalic
- **Face** : atraumatic

**Eyes**
- **General** : pupils equal and reactive to light. No conjunctival erythema. No discharge.

**Ears, Nose, Mouth and Throat**
- **Ears** : clear, no erythema or bulging. External canals clear. No pain or tenderness. Hearing grossly intact.
- **Nose** : nares patent
- **Oral Cavity** : Moist mucous membranes

**Respiratory**
- **General** : breathing unlabored. No accessory muscle use. Lungs clear to auscultation bilaterally. Good air movement in all lung fields.

**Cardiovascular**
- **Heart** : Regular rate and rhythm.

**GastroIntestinal**
- **Abdominal Examination** : Soft, No tenderness

**Neurologic**
- **General** : Mental status alert and oriented to person, place and time. Thought process is coherent.

## Results

**In-Office Procedures**

**Imaging procedure**

**QuantaFlo, In-Center Only (93922)**
- QuantaFlo Right: 1.20 Units
- Quantaflo Left: 1.12 Units

**Procedures**

**Diabetic foot assessment (G0245)**
- DM Foot Exam:: Result: Abnormal Neuro

## Assessment

- (1) Encounter for annual general medical examination with abnormal findings in adult V70.0/Z00.01
- (2) Major depressive disorder, recurrent, moderate 296.32/F33.1
4/6/2023

Patient reports improvement in mood and activities. Stable. Moderate. Recurrent. Controlled. Continue with Bupropion 300 mg daily, Lexapro 10 mg daily, Trazadone 100 mg daily. Continue trying to increase social interactions. Medication side effects discussed. No SI/HI. If depression worsens, or if there are suicidal or homicidal ideations seek medical care immediately. Continue to monitor and follow up with PCP.

[Digital Signature ...]

- (3) CHF (congestive heart failure), NYHA class I, chronic, diastolic 428.32/I50.32
  4/6/2023

  Stable. Echo from 7/2022 shows diastolic dysfunction. Controlled. Continue current medicines. Monitor Weight daily. If weight gc up by more than 5 pounds in 1 week, new leg edema or new shortness of breath call the doctor. Follow a low sodium diet. Retur to the clinic for any worsening. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (4) Morbid obesity 278.01/E66.01
  4/6/2023

  BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (5) BMI 38.0-38.9,adult V85.38/Z68.38
  4/6/2023

  BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (6) Stable angina 413.9/I20.8
  4/6/2023

  Stable. Controlled with Metoprolol Succinate 25 mg twice daily. Continue current medicines. For typical angina type chest pain, take nitroglycerin if prescribed. For chest pain that does not resolve within a reasonable time, contact the office and if indicated g to ER. Avoid stressful type situations that may provoke angina. If a change in angina or more frequent, notify your doctor right away. Continue to monitor. Continue to follow up with PCP.
- (7) COPD (chronic obstructive pulmonary disease) 496/J44.9
  4/6/2023

  Stable. PFT in clinic shows obstruction. Mild SOB. Will start Advair 2 puffs twice daily. Continue current medicines. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (8) Secondary hyperaldosteronism 255.14/E26.1
  4/6/2023

  Stable. Patient has secondary hyperaldosteronism due to CKD. Stressed importance of salt limitation, fluid restriction, daily monitoring for weight gain, and promptly reporting any symptoms of shortness of breath, orthopnea, weight gain, or swelling.
- (9) Paroxysmal A-fib 427.31/I48.0
  4/6/2023

  Stable. Controlled with Metoprolol Succinate 25 mg daily, Aspirin 81 mg daily. Continue current medicines. No palpitations. Rate controlled. Continue to monitor. Follow up as directed with PCP. Verbalized understanding and agreemen
- (10) Prevnar 20 V03.82/Z23
- (11) BPH (benign prostatic hyperplasia) 600.00/N40.0
  4/6/2023

  Stable. Controlled with Tamsulosin 0.4 mg daily. Continue current medicines. Denies urine retention. No dysuria. Discussed medicine side effects. Continue to monitor. Follow up with a primary care physician. Verbalized understanding and agreement.
- (12) Controlled diabetes mellitus with diabetic polyneuropathy
  Type 2 diabetes mellitus with diabetic polyneuropathy 250.60/E11.42
  Stable. A1C 5.9. Currently on Metformin 500 mg daily. Continue current medicines. Reviewed dietary recommendations for minimizing saturated fats and empty carbohydrates calories. Discussed use of home glucose monitoring. Reviewed signs/symptoms of hypoglycemia. Discussed benefits of regular exercise. Decreased sensation on exam. Check feet on a daily basis and apply lotion, checking for abrasions, sores or ulcers and if present notify the office urgently. Wear diabetic shoes and never go barefooted. Use care and caution in order not to fall and cause injury secondary to a decrease in sensation. Continue tc monitor. F/U with PCP. Verbalized understanding and agreement.
- (13) Acquired absence of finger, left V49.62/Z89.022
  4/6/2023

  L middle finger absent at knuckle.
- (14) Hypothyroid 244.9/E03.9
- (15) Hyperlipidemia 272.4/E78.5
  4/6/2023

[Digital Signature Validated]

Stable. Currently on Atorvastatin 80 mg daily. Continue current medicines. Continue low cholesterol diet. Discussed medicine side effects. Continue to monitor. F/U PCP. Verbalized understanding and agreement.

## Plan

**Orders**

- Annual Visit (G0439) (G0439) - V70.0/Z00.01 - 04/06/2023 - Hold lab results until reviewed :No
- Pneumococcal 20-Valent Conjugate Vaccine, Suspension for Intramuscular Injection (90677) - - 04/06/2023 - Hold lab results until reviewed :No
- Prevnar (Administration - Medicare) (G0009) - - 04/06/2023 - Hold lab results until reviewed :No

**Medications**

- Medications have been Reconciled
- Transition of Care or Provider Policy

**Electronically Signed by:** Lisa Leffler, MD -Author on April 6, 2023 04:48:12 PM

[Digital Signature Validated

## Today's Visit

You saw D Johnston, DO on Tuesday January 17, 2023. The following issues were addressed:

- Difficulty falling or staying asleep
- Recurrent major depressive disorder, in full remission
- Status post two vessel coronary artery bypass
- High cholesterol or triglycerides
- Obesity (BMI 30-39.9)
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Increased fasting blood sugar
- Sleep apnea
- High blood pressure
- Shortness of breath
- Underactive thyroid
- Blood Pressure 122/68
- BMI 38.57
- Weight 253 lb 11.2 oz
- Height 5' 8"
- Temperature 97.3 °F
- Pulse 73
- Respiration 16
- Oxygen Saturation 94%

## Today's Visit

You saw D Johnston, DO on Wednesday February 8, 2023. The following issues were addressed:

- Shortness of breath
- High blood pressure
- Sleep apnea
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Status post two vessel coronary artery bypass
- Increased fasting blood sugar
- Fatigue, unspecified type
- Blood Pressure 126/70
- BMI 38.62
- Weight 254 lb
- Height 5' 8"
- Temperature 97.7 °F
- Pulse 70
- Respiration 16
- Oxygen Saturation 96%

# AFTER VISIT SUMMARY

**Bill J. Reynolds** MRN: 1325941

2/20/2023 9:00 AM UT Health East Texas Pulmonary Institute in Tyler 903-592-6901

## Today's Visit

You saw C Wang-Kocik, MD on Monday February 20, 2023. The following issue was addressed: Sleep apnea.

- Blood Pressure 115/75
- BMI 38.47
- Weight 253 lb
- Height 5' 8"
- Pulse 72
- Oxygen Saturation 96%

## Instructions

from C Wang-Kocik, MD

- **Please call Lincare to ensure that they received your CPAP order, take your insurance, and inquire when they believe a machine will be available for you.**
  Www.Lincare.com

  **Tyler**
  3013 E 5th St
  903-533-1412

  **Athens**
  927 N Palestine
  Ste 101
  903-675-1058

  **Quitman**
  914 E Goode St
  903-763-0874

  **Longview**
  110 Triple Creek Dr
  Ste 73
  903-234-2233

  **Palestine**
  201 W Palestine Ave
  903-727-0863

  **Mount Pleasant**
  1629 W 16th St
  903-575-0855

- Return in about 3 months

  (around 5/20/2023).

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL MAY - 8 2023

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE®

PRIORITY® MAIL

FROM:

Expected delivery date specified for domestic use.
Domestic shipı
USPS Trackinç
Limited interna
When used int
ɔurance does not
mestic Mail Manuı
See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

CERTIFIED MAIL

Law Offices of J. Price McNamara
10455 Jefferson Highway
Suite 130
Baton Rouge LA 70809

9402 8118 9956 2293 9087 91

PS Form 3800 6/02

$14.300
US POSTAGE
PRIORITY MAIL
COMBASPRICE
FROM 70809
05/02/2023
stamps endicia
062S0005843986

TO:

CLAIMS SHARED SERVICES
The Lincoln National Life Insurance Company
PO BOX 2337
OMAHA NE 68103-2337

'LAT RATE ENVELOPE
NE RATE ◘ ANY WEIGHT

'RACKED ◘ INSURED

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

MAY 8 2023

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

**THE OFFICIAL ADMINISTRATIVE RECORD**

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. *See, e.g., Wildbur*, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
>> FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, but neither may an administrator arbitrarily refuse to credit reliable evidence.** See *Black & Decker Disability Plan v. Nord*,

> 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiffs evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

---

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).

[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.Ill. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.Ill. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**PAYMENT INSTRUCTIONS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

FILEVINE

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln - LTD APPEAL - 05-02-23_2023-05-02-0940-PDT.pdf | **Pages:** | 29 |
| **Sent:** | May 2, 2023 9:41 AM PDT | **Rec'd:** | May 2, 2023 9:52 AM PDT |

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

**THE OFFICIAL ADMINISTRATIVE RECORD**

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record.** ***See, e.g., Wildbur*****, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
> > FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and <u>evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony</u>. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, <u>but neither may an administrator arbitrarily refuse to credit reliable evidence.</u>** See *Black & Decker Disability Plan v. Nord*,

> 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiff's evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

---

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).

[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.III. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.III. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

## COURT REVIEW

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

## PAYMENT INSTRUCTIONS

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response**.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

*Price McNamara*

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

BEFORE ME, the undersigned authority, came and appeared:

WILLIAM REYNOLDS

who after being duly sworn, did depose and state the following:

1. My date of birth is
2. I am currently married to Samantha Gail Reynolds.
3. Prior to becoming disabled from working, my employer was John Soules Foods since 1997, and my job title or position when I became disabled was Sales Analyst.
4. My last date of work for my employer upon becoming disabled was April 22, 2022.
5. As of my last date of work, my gross annual salary before taxes was $90,000.00
6. This information is all true and based upon personal knowledge.

WILLIAM REYNOLDS

Sworn to and subscribed before me this 28th day of March, 2023
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

Reynolds - Appeal 05/02/23 - 001

**COUNTY OF** Smith

**STATE OF TEXAS**

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**WILLIAM REYNOLDS**

who after being duly sworn, did depose and state the following:

1. The following has been true continuously since my last day of work related to my disability claim through the date of this Affidavit.

2. My understanding is that my disability is the result of my heart attacks on September 28, 2021 and December 19, 2021.

3. My September 28, 2021, heart attack was followed by a double coronary bypass on October 1, 2021. After my December 19, 2021, heart attack, I was diagnosed with diffused coronary heart disease and had a stent inserted on December 20, 2021.

4. I take the following prescription medications, at the following dosages and intervals each day:

    1. *Metoprolol Succ Er – 25mg – Taken twice daily for heart rhythm.
    2. Aspirin – 81mg – Taken once daily for blood thinner.
    3. Wellbutrin XL – 300mg – Taken once daily for depression.
    4. *Metformin Hcl Er – 500mg – Taken once daily for pre-diabetes.
    5. Vitamin D3 – 125mcg – Taken once daily for Vitamin D deficiency.
    6. *Atorvastatin – 80mg – Taken once daily for cholesterol.
    7. *Levothyroxine – 75mg – Taken once daily for low thyroid.
    8. Escitalopram – 10mg – Taken once daily for depression.
    9. *Tamsulosin – 0.4mg – Taken once daily for enlarged prostate.
    10. Temazepam – 30mg – Taken once daily for sleep.
    11. Xanax – 0.5mg – Taken as needed for stress.
    12. Furosemide – 20mg – Taken once daily for fluid in the lungs.

5. The above-referenced medications marked with an *, when taken, cause me to be even more forgetful and unable to perform adequately mentally and physically than without taking them. They cause drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, as my ability to do everything is much slower, including all activities of daily living.

6. The above medications marked with an * cause negative side-effects, including but not limited to: statin-induced myopathy, dizziness, lightheadedness, bloating, heartburn, heat intolerance, excessive sweating, shortness of breath, and drowsiness.

7. With or without taking the above-referenced medications, my disability is severe. Whether or not taking my medication, the physical and mental effects of my medical condition as described in this affidavit do not change.

8. I am able to sit when I am not drowsy for 1 to 2 hours. If I sit for longer than 1 to 2 hours, I will doze off.

9. I can carry 10 to 20lbs for a maximum of 5 minutes and cannot lift more than 25 to 30lbs maximum. I need to pause and rest when carrying any significant weight due to severe shortness of breath.

10. I can stand for 15 to 20 minutes at a time and walk for 20 to 30 minutes before I need to rest. Excessive standing and walking cause me to experience fatigue, leg pain, and hip pain and weakness.

11. I am unable to drive for longer than an hour because my eyes and judgement become fatigued.

12. On a daily basis, I need to sit and rest 10 to 12 times for periods of 15 to 20 minutes at a time.

13. I experience fatigue and brain fog when I use my laptop for more than 20 to 30 minutes.

14. My wife watches me closely when I am outside of our home's living area because of my balance issues. She frequently assists me with any outdoor chores such as leaf blowing.

15. After my heart attacks, I've struggled with concentrating and require 3 or more breaks while doing complex comprehension activities in order to complete the task.

16. This Affidavit is based exclusively on my own knowledge and words, but it was completed over the course of several weeks, a little at a time, and required many hours of total time to complete it.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

PARISH/COUNTY OF WOOD

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**ERIC JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' son-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

**ERIC JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.

NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

**PARISH/COUNTY OF** WOOD

**STATE OF** Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**EMILY JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' daughter.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Emily Johnson
**EMILY JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SAMANTHA REYNOLDS**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' spouse and I help him with his care.
2. I observe him and converse with him daily.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

[signature]
SAMANTHA REYNOLDS

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2026
Notary ID 133391854

PARISH/COUNTY OF Ellis

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SANDRA ST. CLAIR**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' sister-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

EDGAR GODINEZ SANCHEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 02-24-26
Notary ID # 13360889-9

Sandra St Clair
**SANDRA ST. CLAIR**

Sworn to and subscribed
before me this 21 day
of April, 20 23.

NOTARY PUBLIC
Notary/Bar No.: 13360889-9
My Commission Expires 02-24-26

PARISH/COUNTY OF Smith
STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**STEPHANIE PRICE**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' niece.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Stephanie Price
**STEPHANIE PRICE**

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133391854

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23

PHYSICIAN SIGNATURE DATE

Clint Carter

PHYSICIAN PRINTED NAME

**PHYSICIAN'S RECOMMENDED RESTRICTIONS**

Patient's Name: William Reynolds S.S.#:__________
Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

____1__(2)__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

_X_ Yes

____ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. _100%_

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

| | |
|---|---|
| X | less than 10 pounds |
| | 11-20 pounds |
| | 21-50 pounds |
| | over 50 pounds |

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

| | |
|---|---|
| X | less than 10 pounds |
| | 11-20 pounds |
| | 21-50 pounds |
| | over 50 pounds |

What medical conditions limit the patient's ability to lift/carry?

stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? _✓_Yes ____No

Pushing and pulling? _✓_Yes ____No

Fine manipulation and fingering? ____Yes _✓_No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

_✓_Yes

____No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

_____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[signature] Signature

3/27/23 Date

# Tyler
# History and Physical

| | | | |
|---|---|---|---|
| **Patient Name:** | William Reynolds | **Visit Date:** | April 6, 2023 |
| **Patient ID:** | 800509 | **Provider:** | Lisa Leffler, MD |
| **Sex:** | Male | **Location:** | Tyler |
| **Birthdate:** | | **Location Address:** | 2115 S Broadway Ave<br>Tyler, TX 75701-4214 |
| **Referring Provider:** | Lisa Leffler MD | **Location Phone:** | (903) 907-7002 |

## Chief Complaint

- Follow up on depression

## History Of Present Illness

Are you in pain today No
Have you been given any information to help you with hazards in your house that may hurt you such as fire hazards, fire arm safety, and fall risks No

Hearing screening
Do you have difficulty hearing No
If yes, do you wear hearing aids ANSWER
If yes, do your hearing aids work ANSWER
If no, are you interested in talking with your provider about hearing aids ANSWER

Fall Risk
Patient answerd yes to the following fall risks: no fall risk

Advance Directive:
Do you have a Power of Attorney Yes Do we have a completed POA form on file Yes
Do you have a POLST form or 5 Wishes filled out Yes Do we have the completed form on file Yes

Medical Scribe Signature and Authentication: This note was scribed by Christine McManus on 4/6/2023 at 03:23 PM for and in the presence of the attending provider Lisa Leffler MD, who personally performed the services described in this documentation and who confirms that after personal review this note is both accurate and complete.

[Digital Signature Validated]

William Reynolds is a male presenting for WRV. Labs from discussed with pt.

Heart
- Denies any chest pain
- Taking Metoprolol Succinate 25mg twice daily

Diabetes
- Taking Metformin 500 mg daily
- Bilateral foot pain, worse on L and bottoms of feet

Cholesterol
- Taking Atorvastatin 80 mg daily

Thyroid
- Taking Levothyroxine 75 mcg daily

COPD
- Reports mild SOB
- Denies need of rescue inhaler

Depression
- Taking Bupropion 300mg daily, Lexapro 10m daily
- States Trazadone is helping him sleep better
- States he is feeling better and has desire to do more things

BPH
- Taking Tamsulosin 0.4mg daily

Left hand
- L middle finger at knuckle absent

ROS:
No fever or chills. No weight loss. No weight gain. No change in hearing. No change in vision. No sore throat. No shortness of breath at rest. No chest pain. No cough. No abdominal pain. No nausea or vomiting. No diarrhea. No recent falls.

Patient is here today for REASON FOR VISIT per doctor's previous orders.

## Past Medical History

Alcohol abuse; CHF (congestive heart failure), NYHA class I, chronic, diastolic; Heart failure; Major depressive disorder, recurrent, moderate; Morbid obesity; Obstructive sleep apnea; Paroxysmal A-fib; Secondary hyperaldosteronism; Stable angina; Tobacco dependence in remission

## Past Surgical History

| Procedure Name | Date | Notes |
|---|---|---|
| Arm Surgery | -- | -- |
| Bypass Surgery | -- | -- |
| Hand Surgery | -- | -- |
| Heart Stent | -- | -- |
| Leg Surgery | -- | -- |
| Shoulder surgery | -- | -- |

[Digital Signature Validated]

## Medication List

| Name | Date Started | Instructions |
|---|---|---|
| traZODone 100 mg tablet | 03/29/2023 | take 1 pill every night for sleep |

## Allergy List

| Allergen Name | Date | Reaction | Notes |
|---|---|---|---|
| Percodan | -- | -- | -- |

## Family Medical History

| Disease Name | Relative/Age | Notes |
|---|---|---|
| Cancer (Other) | | -- |
| Heart Attack | | -- |
| Substance abuse | | -- |

## Social History

| Finding | Status | Start/Stop | Quantity | Notes |
|---|---|---|---|---|
| Ambulatory Status: Independent | -- | --/-- | -- | -- |
| Education: Some | -- | --/-- | -- | -- |
| Lives With Spouse | -- | --/-- | -- | -- |
| Marital Status: Married | -- | --/-- | -- | -- |
| Tobacco | Former | 20/50 | 10 | -- |
| Work: Retired | -- | --/-- | -- | -- |

## Immunizations

| Name | Date Admin | Mfg | Trade Name | Lot Number | Route | Inj | VIS Given | VIS Publication |
|---|---|---|---|---|---|---|---|---|
| Tdap - adult | 01/28/2020 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | | |
| Zoster (Shingles) | 10/08/2014 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | | |

## Review of Systems

**Constitutional**
- * See HPI

**Eyes**
- * See HPI

**HENT**
- * See HPI

**Breasts**
- * See HPI

**Cardiovascular**
- * See HPI

**Respiratory**
- * See HPI

**Gastrointestinal**
- * See HPI

**Genitourinary**
- * See HPI

**Integument**
- * See HPI

**Neurologic**
- * See HPI

**Musculoskeletal**
- * See HPI

[Digital Signature Validated]

[illegible]

**Physical Examination**

**Constitutional**
- **Appearance** : Well nourished, well developed. No apparent distress.

**Head and Face**
- **Head** : Normocephalic
- **Face** : atraumatic

**Eyes**
- **General** : pupils equal and reactive to light. No conjunctival erythema. No discharge.

**Ears, Nose, Mouth and Throat**
- **Ears** : clear, no erythema or bulging. External canals clear. No pain or tenderness. Hearing grossly intact.
- **Nose** : nares patent
- **Oral Cavity** : Moist mucous membranes

**Respiratory**
- **General** : breathing unlabored. No accessory muscle use. Lungs clear to auscultation bilaterally. Good air movement in all lung fields.

**Cardiovascular**
- **Heart** : Regular rate and rhythm.

**Gastrointestinal**
- **Abdominal Examination** : Soft, No tenderness

**Neurologic**
- **General** : Mental status alert and oriented to person, place and time. Thought process is coherent.

## Results

**In-Office Procedures**

**Imaging procedure**

**QuantaFlo, In-Center Only (93922)**
- QuantaFlo Right: 1.20 Units
- Quantaflo Left: 1.12 Units

**Procedures**

**Diabetic foot assessment (G0245)**
- DM Foot Exam:: Result: Abnormal Neuro

## Assessment

- (1) Encounter for annual general medical examination with abnormal findings in adult V70.0/Z00.01
- (2) Major depressive disorder, recurrent, moderate 296.32/F33.1
  4/6/2023

  Patient reports improvement in mood and activities. Stable. Moderate. Recurrent. Controlled. Continue with Bupropion 300 mg daily, Lexapro 10 mg daily, Trazadone 100 mg daily. Continue trying to increase social interactions. Medication side effects discussed. No SI/HI. If depression worsens, or if there are suicidal or homicidal ideations seek medical care immediately. Continue to monitor and follow up with PCP.

[Digital Signature Not ...]

- (3) CHF (congestive heart failure), NYHA class I, chronic, diastolic 428.32/I50.32
  4/6/2023

  Stable. Echo from 7/2022 shows diastolic dysfunction. Controlled. Continue current medicines. Monitor Weight daily. If weight go up by more than 5 pounds in 1 week, new leg edema or new shortness of breath call the doctor. Follow a low sodium diet. Retur to the clinic for any worsening. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (4) Morbid obesity 278.01/E66.01
  4/6/2023

  BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (5) BMI 38.0-38.9,adult V85.38/Z68.38
  4/6/2023

  BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (6) Stable angina 413.9/I20.8
  4/6/2023

  Stable. Controlled with Metoprolol Succinate 25 mg twice daily. Continue current medicines. For typical angina type chest pain, take nitroglycerin if prescribed. For chest pain that does not resolve within a reasonable time, contact the office and if indicated g to ER. Avoid stressful type situations that may provoke angina. If a change in angina or more frequent, notify your doctor right away. Continue to monitor. Continue to follow up with PCP.
- (7) COPD (chronic obstructive pulmonary disease) 496/J44.9
  4/6/2023

  Stable. PFT in clinic shows obstruction. Mild SOB. Will start Advair 2 puffs twice daily. Continue current medicines. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (8) Secondary hyperaldosteronism 255.14/E26.1
  4/6/2023

  Stable. Patient has secondary hyperaldosteronism due to CKD. Stressed importance of salt limitation, fluid restriction, daily monitoring for weight gain, and promptly reporting any symptoms of shortness of breath, orthopnea, weight gain, or swelling.
- (9) Paroxysmal A-fib 427.31/I48.0
  4/6/2023

  Stable. Controlled with Metoprolol Succinate 25 mg daily, Aspirin 81 mg daily. Continue current medicines. No palpitations. Rate controlled. Continue to monitor. Follow up as directed with PCP. Verbalized understanding and agreemen
- (10) Prevnar 20 V03.82/Z23
- (11) BPH (benign prostatic hyperplasia) 600.00/N40.0
  4/6/2023

  Stable. Controlled with Tamsulosin 0.4 mg daily. Continue current medicines. Denies urine retention. No dysuria. Discussed medicine side effects. Continue to monitor. Follow up with a primary care physician. Verbalized understanding and agreement.
- (12) Controlled diabetes mellitus with diabetic polyneuropathy
  Type 2 diabetes mellitus with diabetic polyneuropathy 250.60/E11.42
  Stable. A1C 5.9. Currently on Metformin 500 mg daily. Continue current medicines. Reviewed dietary recommendations for minimizing saturated fats and empty carbohydrates calories. Discussed use of home glucose monitoring. Reviewed signs/symptoms of hypoglycemia. Discussed benefits of regular exercise. Decreased sensation on exam. Check feet on a daily basis and apply lotion, checking for abrasions, sores or ulcers and if present notify the office urgently. Wear diabetic shoes and never go barefooted. Use care and caution in order not to fall and cause injury secondary to a decrease in sensation. Continue tc monitor. F/U with PCP. Verbalized understanding and agreement.
- (13) Acquired absence of finger, left V49.62/Z89.022
  4/6/2023

  L middle finger absent at knuckle.
- (14) Hypothyroid 244.9/E03.9
- (15) Hyperlipidemia 272.4/E78.5
  4/6/2023

[Digital Signature Validated]

Stable. Currently on Atorvastatin 80 mg daily. Continue current medicines. Continue low cholesterol diet. Discussed medicine side effects. Continue to monitor. F/U PCP. Verbalized understanding and agreement.

## Plan

**Orders**

- Annual Visit (G0439) (G0439) - V70.0/Z00.01 - 04/06/2023 - Hold lab results until reviewed :No
- Pneumococcal 20-Valent Conjugate Vaccine, Suspension for Intramuscular Injection (90677) - - 04/06/2023 - Hold lab results until reviewed :No
- Prevnar (Administration - Medicare) (G0009) - - 04/06/2023 - Hold lab results until reviewed :No

**Medications**

- Medications have been Reconciled
- Transition of Care or Provider Policy

**Electronically Signed by:** Lisa Leffler, MD -Author on April 6, 2023 04:48:12 PM

[Digital Signature Validated

## Today's Visit

You saw D Johnston, DO on Tuesday January 17, 2023. The following issues were addressed:

- Difficulty falling or staying asleep
- Recurrent major depressive disorder, in full remission
- Status post two vessel coronary artery bypass
- High cholesterol or triglycerides
- Obesity (BMI 30-39.9)
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Increased fasting blood sugar
- Sleep apnea
- High blood pressure
- Shortness of breath
- Underactive thyroid
- Blood Pressure 122/68
- BMI 38.57
- Weight 253 lb 11.2 oz
- Height 5' 8"
- Temperature 97.3 °F
- Pulse 73
- Respiration 16
- Oxygen Saturation 94%

## Today's Visit

You saw D Johnston, DO on Wednesday February 8, 2023. The following issues were addressed:

- Shortness of breath
- High blood pressure
- Sleep apnea
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Status post two vessel coronary artery bypass
- Increased fasting blood sugar
- Fatigue, unspecified type
- Blood Pressure 126/70
- BMI 38.62
- Weight 254 lb
- Height 5' 8"
- Temperature 97.7 °F
- Pulse 70
- Respiration 16
- Oxygen Saturation 96%

# AFTER VISIT SUMMARY

**Bill J. Reynolds** MRN: 1325941

2/20/2023 9:00 AM UT Health East Texas Pulmonary Institute in Tyler 903-592-6901

## Today's Visit

You saw C Wang-Kocik, MD on Monday February 20, 2023. The following issue was addressed: Sleep apnea.

- Blood Pressure 115/75
- BMI 38.47
- Weight 253 lb
- Height 5' 8"
- Pulse 72
- Oxygen Saturation 96%

## Instructions

from C Wang-Kocik, MD

- **Please call Lincare to ensure that they received your CPAP order, take your insurance, and inquire when they believe a machine will be available for you.**
  Www.Lincare.com

  **Tyler**
  3013 E 5th St
  903-533-1412

  **Athens**
  927 N Palestine
  Ste 101
  903-675-1058

  **Quitman**
  914 E Goode St
  903-763-0874

  **Longview**
  110 Triple Creek Dr
  Ste 73
  903-234-2233

  **Palestine**
  201 W Palestine Ave
  903-727-0863

  **Mount Pleasant**
  1629 W 16th St
  903-575-0855

- Return in about 3 months

  (around 5/20/2023).

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

## THE OFFICIAL ADMINISTRATIVE RECORD

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. *See, e.g., Wildbur*, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
> > FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, but neither may an administrator arbitrarily refuse to credit reliable evidence.** See *Black & Decker Disability Plan v. Nord*,

> 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiff's evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

---

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).

[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.Ill. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.Ill. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**PAYMENT INSTRUCTIONS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response**.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

[signature]

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

PAGE 9/29 * RCVD AT 5/2/2023 12:41:44 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/1 * DNIS:4023611460 * CSID:+12252018313 * ANI:12252018313 * DURATION (mm-ss):11-09

2-May-2023 16:45 +14023611460 +12252018313 p.9

COUNTY OF Smith

STATE OF TEXAS

AFFIDAVIT

BEFORE ME, the undersigned authority, came and appeared:

WILLIAM REYNOLDS

who after being duly sworn, did depose and state the following:

1. My date of birth is

2. I am currently married to Samantha Gail Reynolds.

3. Prior to becoming disabled from working, my employer was John Soules Foods since 1997, and my job title or position when I became disabled was Sales Analyst.

4. My last date of work for my employer upon becoming disabled was April 22, 2022.

5. As of my last date of work, my gross annual salary before taxes was $90,000.00

6. This information is all true and based upon personal knowledge.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed before me this 28th day of March, 2023

[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

Reynolds - Appeal 05/02/23 - 001

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME,** the undersigned authority, came and appeared:

**WILLIAM REYNOLDS**

who after being duly sworn, did depose and state the following:

1. The following has been true continuously since my last day of work related to my disability claim through the date of this Affidavit.

2. My understanding is that my disability is the result of my heart attacks on September 28, 2021 and December 19, 2021.

3. My September 28, 2021, heart attack was followed by a double coronary bypass on October 1, 2021. After my December 19, 2021, heart attack, I was diagnosed with diffused coronary heart disease and had a stent inserted on December 20, 2021.

4. I take the following prescription medications, at the following dosages and intervals each day:

    1. *Metoprolol Succ Er – 25mg – Taken twice daily for heart rhythm.
    2. Aspirin – 81mg – Taken once daily for blood thinner.
    3. Wellbutrin XL – 300mg – Taken once daily for depression.
    4. *Metformin Hcl Er – 500mg – Taken once daily for pre-diabetes.
    5. Vitamin D3 – 125mcg – Taken once daily for Vitamin D deficiency.
    6. *Atorvastatin – 80mg – Taken once daily for cholesterol.
    7. *Levothyroxine – 75mg – Taken once daily for low thyroid.
    8. Escitalopram – 10mg – Taken once daily for depression.
    9. *Tamsulosin – 0.4mg – Taken once daily for enlarged prostate.
    10. Temazepam – 30mg – Taken once daily for sleep.
    11. Xanax – 0.5mg – Taken as needed for stress.
    12. Furosemide – 20mg – Taken once daily for fluid in the lungs.

5. The above-referenced medications marked with an *, when taken, cause me to be even more forgetful and unable to perform adequately mentally and physically than without taking them. They cause drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, as my ability to do everything is much slower, including all activities of daily living.

6. The above medications marked with an * cause negative side-effects, including but not limited to: statin-induced myopathy, dizziness, lightheadedness, bloating, heartburn, heat intolerance, excessive sweating, shortness of breath, and drowsiness.

7. With or without taking the above-referenced medications, my disability is severe. Whether or not taking my medication, the physical and mental effects of my medical condition as described in this affidavit do not change.

8. I am able to sit when I am not drowsy for 1 to 2 hours. If I sit for longer than 1 to 2 hours, I will doze off.

9. I can carry 10 to 20lbs for a maximum of 5 minutes and cannot lift more than 25 to 30lbs maximum. I need to pause and rest when carrying any significant weight due to severe shortness of breath.

10. I can stand for 15 to 20 minutes at a time and walk for 20 to 30 minutes before I need to rest. Excessive standing and walking cause me to experience fatigue, leg pain, and hip pain and weakness.

11. I am unable to drive for longer than an hour because my eyes and judgement become fatigued.

12. On a daily basis, I need to sit and rest 10 to 12 times for periods of 15 to 20 minutes at a time.

13. I experience fatigue and brain fog when I use my laptop for more than 20 to 30 minutes.

14. My wife watches me closely when I am outside of our home's living area because of my balance issues. She frequently assists me with any outdoor chores such as leaf blowing.

15. After my heart attacks, I've struggled with concentrating and require 3 or more breaks while doing complex comprehension activities in order to complete the task.

16. This Affidavit is based exclusively on my own knowledge and words, but it was completed over the course of several weeks, a little at a time, and required many hours of total time to complete it.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

PARISH/COUNTY OF WOOD

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**ERIC JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' son-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Eric Johnson
ERIC JOHNSON

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J. May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

PARISH/COUNTY OF WOOD

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**EMILY JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' daughter.

2. I observe him and converse with him regularly.

3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.

4. The entirety of his Affidavit is consistent with my observations of him.

5. The above is true and based upon personal knowledge.

Emily Johnson
**EMILY JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SAMANTHA REYNOLDS**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' spouse and I help him with his care.
2. I observe him and converse with him daily.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

SAMANTHA REYNOLDS

Sworn to and subscribed
before me this 21st day
of April, 2023.

NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133391854

PARISH/COUNTY OF Ellis

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SANDRA ST. CLAIR**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' sister-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

EDGAR GODINEZ SANCHEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 02-24-26
Notary ID # 13360889-9

Sandra St Clair
**SANDRA ST. CLAIR**

Sworn to and subscribed
before me this 21 day
of April, 2023.

NOTARY PUBLIC
Notary/Bar No.: 13360889-9
My Commission Expires 02-24-26

Reynolds - Appeal 05/02/23 - 007

PARISH/COUNTY OF Smith
STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**STEPHANIE PRICE**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' niece.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Stephanie Price
**STEPHANIE PRICE**

Sworn to and subscribed before me this 21st day of April, 2023.

NOTARY PUBLIC
Notary/Bar No.: 133321854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133321854

**NOTE**

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23
PHYSICIAN SIGNATURE DATE

Clint Carter
PHYSICIAN PRINTED NAME

## PHYSICIAN'S RECOMMENDED RESTRICTIONS

Patient's Name: William Reynolds S.S.#: ____________

Physician's Name: Clinton Carter

IMPORTANT:

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

Less than (1) __2__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

____1__(2)__3__4__5__6__7__8__9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than __1__ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

_X_ Yes

___ No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. _100%_

VII. In a given day, the patient can lift/carry:

<u>Occasionally</u> (meaning for as much as 1/3 of the day) a maximum of:

_X_ less than 10 pounds
___ 11-20 pounds
___ 21-50 pounds
___ over 50 pounds

<u>Frequently</u> (meaning for as much as 2/3 of the day) a maximum of:

_X_ less than 10 pounds
___ 11-20 pounds
___ 21-50 pounds
___ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? ✓ Yes ____ No

Pushing and pulling? ✓ Yes ____ No

Fine manipulation and fingering? ____ Yes ✓ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

____ No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?
Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__X__ Yes

_____ No

Additional Restrictions or Comments:
Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic

[illegible signature]
Signature

3/27/23
Date

# Tyler
## History and Physical

| | | | |
|---|---|---|---|
| **Patient Name:** | William Reynolds | **Visit Date:** | April 6, 2023 |
| **Patient ID:** | 800509 | **Provider:** | Lisa Leffler, MD |
| **Sex:** | Male | **Location:** | Tyler |
| **Birthdate:** | | **Location Address:** | 2115 S Broadway Ave. Tyler, TX 75701-4214 |
| **Referring Provider:** | Lisa Leffler MD | **Location Phone:** | (903) 907-7002 |

### Chief Complaint

- Follow up on depression

### History Of Present Illness

Are you in pain today No
Have you been given any information to help you with hazards in your house that may hurt you such as fire hazards, fire arm safety, and fall risks No

Hearing screening
Do you have difficulty hearing No
If yes, do you wear hearing aids ANSWER
If yes, do your hearing aids work ANSWER
If no, are you interested in talking with your provider about hearing aids ANSWER

Fall Risk
Patient answerd yes to the following fall risks: no fall risk

Advance Directive:
Do you have a Power of Attorney Yes Do we have a completed POA form on file Yes
Do you have a POLST form or 5 Wishes filled out Yes Do we have the completed form on file Yes

Medical Scribe Signature and Authentication: This note was scribed by Christine McManus on 4/6/2023 at 03:23 PM for and in the presence of the attending provider Lisa Leffler MD, who personally performed the services described in this documentation and who confirms that after personal review this note is both accurate and complete.

[Digital Signature Validated]

William Reynolds is a male presenting for WRV. Labs from discussed with pt.

Heart
- Denies any chest pain
- Taking Metoprolol Succinate 25mg twice daily

Diabetes
- Taking Metformin 500 mg daily
- Bilateral foot pain, worse on L and bottoms of feet

Cholesterol
- Taking Atorvastatin 80 mg daily

Thyroid
- Taking Levothyroxine 75 mcg daily

COPD
- Reports mild SOB
- Denies need of rescue inhaler

Depression
- Taking Bupropion 300mg daily, Lexapro 10m daily
- States Trazadone is helping him sleep better
- States he is feeling better and has desire to do more things

BPH
- Taking Tamsulosin 0.4mg daily

Left hand
- L middle finger at knuckle absent

ROS:
No fever or chills. No weight loss. No weight gain. No change in hearing. No change in vision. No sore throat. No shortness of breath at rest. No chest pain. No cough. No abdominal pain. No nausea or vomiting. No diarrhea. No recent falls.

Patient is here today for REASON FOR VISIT per doctor's previous orders.

## Past Medical History

Alcohol abuse; CHF (congestive heart failure), NYHA class I, chronic, diastolic; Heart failure; Major depressive disorder, recurrent, moderate; Morbid obesity; Obstructive sleep apnea; Paroxysmal A-fib; Secondary hyperaldosteronism; Stable angina; Tobacco dependence in remission

## Past Surgical History

| Procedure Name | Date | Notes |
|---|---|---|
| Arm Surgery | -- | -- |
| Bypass Surgery | -- | -- |
| Hand Surgery | -- | -- |
| Heart Stent | -- | -- |
| Leg Surgery | -- | -- |
| Shoulder surgery | -- | -- |

[Digital Signature Validated]

## Medication List

| Name | Date Started | Instructions |
|---|---|---|
| traZODone 100 mg tablet | 03/29/2023 | take 1 pill every night for sleep |

## Allergy List

| Allergen Name | Date | Reaction | Notes |
|---|---|---|---|
| Percodan | -- | -- | -- |

## Family Medical History

| Disease Name | Relative/Age | Notes |
|---|---|---|
| Cancer (Other) | | -- |
| Heart Attack | | -- |
| Substance abuse | | -- |

## Social History

| Finding | Status | Start/Stop | Quantity | Notes |
|---|---|---|---|---|
| Ambulatory Status: Independent | -- | --/-- | -- | -- |
| Education: Some | -- | --/-- | -- | -- |
| Lives With Spouse | -- | --/-- | -- | -- |
| Marital Status: Married | -- | --/-- | -- | -- |
| Tobacco | Former | 20/50 | 10 | -- |
| Work: Retired | -- | --/-- | -- | -- |

## Immunizations

| NameDate Admin | Mfg | Trade Name | Lot Number | Route | Inj | VIS Given | VIS Publication |
|---|---|---|---|---|---|---|---|
| Tdap - adult01/28/2020<br>Comments: | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Zoster (Shingles)10/08/2014<br>Comments: | NE | Not Entered | | NE | NE | 03/29/2023 | |

## Review of Systems

**Constitutional**
- * See HPI

**Eyes**
- * See HPI

**HENT**
- * See HPI

**Breasts**
- * See HPI

**Cardiovascular**
- * See HPI

**Respiratory**
- * See HPI

**Gastrointestinal**
- * See HPI

**Genitourinary**
- * See HPI

**Integument**
- * See HPI

**Neurologic**
- * See HPI

**Musculoskeletal**
- * See HPI

[Digital Signature Validated]

[illegible]

Endocrine
- [illegible]

Psychiatric
- [illegible]

Hematologic/Lymphatic
- [illegible]

Allergic/Immunologic
- [illegible]

All Others Negative

## Vitals

[illegible]

## Physical Examination

**Constitutional**
- **Appearance** : Well nourished, well developed, No apparent distress.

**Head and Face**
- **Head** : Normocephalic
- **Face** : atraumatic

**Eyes**
- **General** : pupils equal and reactive to light, No conjunctival erythema, No discharge.

**Ears, Nose, Mouth and Throat**
- **Ears** : clear, no erythema or bulging, External canals clear. No pain or tenderness, Hearing grossly intact.
- **Nose** : nares patent
- **Oral Cavity** : Moist mucous membranes

**Respiratory**
- **General** : breathing unlabored, No accessory muscle use. Lungs clear to auscultation bilaterally. Good air movement in all lung fields.

**Cardiovascular**
- **Heart** : Regular rate and rhythm.

**Gastrointestinal**
- **Abdominal Examination** : Soft, No tenderness

**Neurologic**
- **General** : Mental status alert and oriented to person, place and time. Thought process is coherent.

## Results

**In-Office Procedures**

**Imaging procedure**

**QuantaFlo, In-Center Only (93922)**
- QuantaFlo Right: 1.20 Units
- Quantaflo Left: 1.12 Units

**Procedures**

**Diabetic foot assessment (G0245)**
- DM Foot Exam:: Result: Abnormal Neuro

## Assessment

- (1) Encounter for annual general medical examination with abnormal findings in adult V70.0/Z00.01
- (2) Major depressive disorder, recurrent, moderate 296.32/F33.1
  4/6/2023

Patient reports improvement in mood and activities. Stable. Moderate. Recurrent. Controlled. Continue with Bupropion 300 mg daily, Lexapro 10 mg daily, Trazodone 100 mg daily. Continue trying to increase social interactions. Medication side effects discussed. No SI/HI. If depression worsens, or if there are suicidal or homicidal ideations seek medical care immediately. Continue to monitor and follow up with PCP.

[illegible]

Reynolds - Appeal 05/02/23 - 017

- (3) CHF (congestive heart failure), NYHA class I, chronic, diastolic 428.32/I50.32
4/6/2023

Stable. Echo from 7/2022 shows diastolic dysfunction. Controlled. Continue current medicines. Monitor Weight daily. If weight go up by more than 5 pounds in 1 week, new leg edema or new shortness of breath call the doctor. Follow a low sodium diet. Retur to the clinic for any worsening. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (4) Morbid obesity 278.01/E66.01
4/6/2023

BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (5) BMI 38.0-38.9,adult V85.38/Z68.38
4/6/2023

BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.
- (6) Stable angina 413.9/I20.8
4/6/2023

Stable. Controlled with Metoprolol Succinate 25 mg twice daily. Continue current medicines. For typical angina type chest pain, take nitroglycerin if prescribed. For chest pain that does not resolve within a reasonable time, contact the office and if indicated to ER. Avoid stressful type situations that may provoke angina. If a change in angina or more frequent, notify your doctor right away. Continue to monitor. Continue to follow up with PCP.
- (7) COPD (chronic obstructive pulmonary disease) 496/J44.9
4/6/2023

Stable. PFT in clinic shows obstruction. Mild SOB. Will start Advair 2 puffs twice daily. Continue current medicines. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (8) Secondary hyperaldosteronism 255.14/E26.1
4/6/2023

Stable. Patient has secondary hyperaldosteronism due to CKD. Stressed importance of salt limitation, fluid restriction, daily monitoring for weight gain, and promptly reporting any symptoms of shortness of breath, orthopnea, weight gain, or swelling.
- (9) Paroxysmal A-fib 427.31/I48.0
4/6/2023

Stable. Controlled with Metoprolol Succinate 25 mg daily, Aspirin 81 mg daily. Continue current medicines. No palpitations. Rate controlled. Continue to monitor. Follow up as directed with PCP. Verbalized understanding and agreemen
- (10) Prevnar 20 V03.82/Z23
- (11) BPH (benign prostatic hyperplasia) 600.00/N40.0
4/6/2023

Stable. Controlled with Tamsulosin 0.4 mg daily. Continue current medicines. Denies urine retention. No dysuria. Discussed medicine side effects. Continue to monitor. Follow up with a primary care physician. Verbalized understanding and agreement.
- (12) Controlled diabetes mellitus with diabetic polyneuropathy
Type 2 diabetes mellitus with diabetic polyneuropathy 250.60/E11.42
Stable. A1C 5.9. Currently on Metformin 500 mg daily. Continue current medicines. Reviewed dietary recommendations for minimizing saturated fats and empty carbohydrates calories. Discussed use of home glucose monitoring. Reviewed signs/symptoms of hypoglycemia. Discussed benefits of regular exercise. Decreased sensation on exam. Check feet on a daily basis and apply lotion, checking for abrasions, sores or ulcers and if present notify the office urgently. Wear diabetic shoes and never go barefooted. Use care and caution in order not to fall and cause injury secondary to a decrease in sensation. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.
- (13) Acquired absence of finger, left V49.62/Z89.022
4/6/2023

L middle finger absent at knuckle.
- (14) Hypothyroid 244.9/E03.9
- (15) Hyperlipidemia 272.4/E78.5
4/6/2023

[Digital Signature Validated]

Stable. Currently on Atorvastatin 80 mg daily. Continue current medicines. Continue low cholesterol diet. Discussed medicine side effects. Continue to monitor. F/U PCP. Verbalized understanding and agreement.

## Plan

**Orders**

- Annual Visit (G0439) (G0439) - V70.0/Z00.01 - 04/06/2023 - Hold lab results until reviewed :No
- Pneumococcal 20-Valent Conjugate Vaccine, Suspension for Intramuscular Injection (90677) - - 04/06/2023 - Hold lab results until reviewed :No
- Prevnar (Administration - Medicare) (G0009) - - 04/06/2023 - Hold lab results until reviewed :No

**Medications**

- Medications have been Reconciled
- Transition of Care or Provider Policy

**Electronically Signed by:** Lisa Leffler, MD -Author on April 6, 2023 04:48:12 PM

[Digital Signature Validated

## Today's Visit

You saw D Johnston, DO on Tuesday January 17, 2023. The following issues were addressed:

- Difficulty falling or staying asleep
- Recurrent major depressive disorder, in full remission
- Status post two vessel coronary artery bypass
- High cholesterol or triglycerides
- Obesity (BMI 30-39.9)
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Increased fasting blood sugar
- Sleep apnea
- High blood pressure
- Shortness of breath
- Underactive thyroid
- Blood Pressure 122/68
- BMI 38.57
- Weight 253 lb 11.2 oz
- Height 5' 8"
- Temperature 97.3 °F
- Pulse 73
- Respiration 16
- Oxygen Saturation 94%

## Today's Visit

You saw D Johnston, DO on Wednesday February 8, 2023. The following issues were addressed:

- Shortness of breath
- High blood pressure
- Sleep apnea
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Status post two vessel coronary artery bypass
- Increased fasting blood sugar
- Fatigue, unspecified type
- Blood Pressure 126/70
- BMI 38.62
- Weight 254 lb
- Height 5' 8"
- Temperature 97.7 °F
- Pulse 70
- Respiration 16
- Oxygen Saturation 96%

# AFTER VISIT SUMMARY

**Bill J. Reynolds** MRN: 1325941

2/20/2023 9:00 AM UT Health East Texas Pulmonary Institute in Tyler 903-592-6901

## Today's Visit

You saw C Wang-Kocik, MD on Monday February 20, 2023. The following issue was addressed: Sleep apnea.

- Blood Pressure 115/75
- BMI 38.47
- Weight 253 lb
- Height 5' 8"
- Pulse 72
- Oxygen Saturation 96%

## Instructions

from C Wang-Kocik, MD

- **Please call Lincare to ensure that they received your CPAP order, take your insurance, and inquire when they believe a machine will be available for you.**
  Www.Lincare.com

  **Tyler**
  3013 E 5th St
  903-533-1412

  **Athens**
  927 N Palestine
  Ste 101
  903-675-1058

  **Quitman**
  914 E Goode St
  903-763-0874

  **Longview**
  110 Triple Creek Dr
  Ste 73
  903-234-2233

  **Palestine**
  201 W Palestine Ave
  903-727-0863

  **Mount Pleasant**
  1629 W 16th St
  903-575-0855

- Return in about 3 months

  (around 5/20/2023).

LAW OFFICES OF J. PRICE McNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

May 2, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Sir/Madam,

**I represent William Reynolds in connection with the referenced claim. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

My client, William Reynolds, hereby appeals The Lincoln National Life Insurance Company's (alternatively called "the Plan" herein) December 16, 2022, termination or denial of his short-term disability benefits, long-term disability benefits, as well as any corresponding waiver of premium benefits resulting from the denial. In connection with his appeal for disability benefits, Claimant provides the following additional evidence, which concludes our submission on appeal at this time, subject to, requesting, and reserving the right to provide further evidence or comment for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after being given the opportunity to review such new evidence.

All such evidence, described above and submitted here, is to be made part of the administrative record for all purposes, including so that the court can consider it in any lawsuit if filed in this case.

1. Affidavits of William Reynolds (03/28/23) (001).
2. Affidavit of Eric Johnson (04/19/23) (004).
3. Affidavit of Emily Johnson (04/19/23) (005).
4. Affidavit of Samantha Reynolds (04/21/23) (006).
5. Affidavit of Sandra St. Clair (04/21/23) (007).
6. Affidavit of Stephanie Price (04/21/23) (008).
7. Dr. Clinton Carter Physician Note and Recommended Restrictions Form (03/27/23) (009).
8. Dr. Lisa Leffler Appointment Summary (04/06/23) (014).
9. UT Health Medical Records (01/17/23 to 02/20/23) (020).

**THE PLAN'S ROLE, AND ERISA'S PURPOSE IS TO PROMOTE THE INTERESTS OF EMPLOYEES AND THEIR BENEFICIARIES IN EMPLOYEE BENEFIT PLANS**

The Plan's position in this case demonstrates a purely adversarial role against its insured. The administrative record demonstrates a complete disregard of ERISA's broad remedial purposes which were intended to protect...participants in employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions and ready access to Federal Courts. 29 U.S.C. 1001(b); quoted in *Varity Corporation v. Howe*, 116 S.Ct. 1065, 1078 (1996); *Black & Decker Disability Plan v. NORD*, 538 U.S.A. 22, 123 S.Ct. 1965, 1970 (2003) (ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits. *Quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113; 109 S.Ct. 948 (1989) (Internal quotation marks and citations omitted.)

**STANDARD OF REVIEW**

If a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court applies the abuse of discretion standard and determines whether the administrator acted arbitrarily or capriciously. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999). A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337, 342 (5th Cir.2002). The Court must determine if substantial evidence exists in the record to support the decision. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Healthcare, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996).

Thus, an administrator's decision to deny benefits must be based on evidence, even if disputable, that clearly supports the basis for its denial. *Id.* (quoting *Vega*, 188 F.3d at 299). The Court owes no deference to an administrator's unsupported suspicions and will not uphold the denial of a claim solely because an administrator suspects something may be awry. *Vega*, 188 F.3d at 302. Simply put, there must be some concrete evidence in the administrative record that supports the denial of the claim. *Id.* If there is none, the Court must find that the administrator abused its discretion. *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 302).

However, as here when the insurer responsible for paying claims is also the party charged with determining the validity of claims, the standard of review is less deferential because the administrator is operating under a conflict of interest. Such administrators have a financial incentive to deny the claim and often can find a reason to do so. *Vega*, 188 F.3d at 296. Federal courts have adopted a sliding scale standard of review for such cases. *Vega*, 188 F.3d at 296. Using this sliding scale approach, the Court gives less deference to the administrator in proportion to the administrator's apparent conflict. *Id.* Where an administrator is conflicted, the Court will be less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Id.*, at 299.

In *Metro Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court held that an insurer that both administers benefits and is the funding source for the benefit payments faces a structural conflict of interest. In such cases, the presence of a conflict can be viewed as a tie-breaker in favor of the claimant. In *Glenn*, two factors the Court found significant included the insurer's encouragement of the claimant's application for Social Security disability benefits; however, when benefits were awarded, the determination was disregarded. The other factor that the Court cited was the insurer's selective review of the evidence. The

administrative record here demonstrates selective review of the evidence, and clear disregard of the opinions of all of the claimant's treating physicians, crediting only the opinions of its own consultants hired for litigation purposes only.

**THE OFFICIAL ADMINISTRATIVE RECORD**

If a claimant submits additional information or evidence to the administrator in a manner that gives the administrator a fair opportunity to consider it and to reconsider its decision denying benefits, that additional information should be treated as part of the administrative record.

More specifically, the Fifth Circuit, sitting *en banc*, spoke clearly in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc). No dissents, no concurrences, the decision was unanimous.

> **We hold today** that the administrative record consists of relevant information made available to the administrator **prior to the complainant's filing of a lawsuit** and in a manner that gives the administrator a fair opportunity to consider it. Thus, if the information in the doctors' affidavits had been presented to National Life **before filing this lawsuit** in time for their fair consideration, they could be treated as part of the record.[FN10] Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.
>
> > FN10. Because there is no evidence in either the administrative record or the record before the district court to support the Vegas' contention that they presented the information in the doctors' affidavits to National Life, we cannot treat this information as part of the record. However, had the Vegas demonstrated to the district court that the information in the doctors' affidavits was presented to the administrator, the district court should have treated that information as part of the record.

*Vega*, at 300 (emphasis added).

The *Vega* Court further explained:

> **Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level.** If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch*, which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

> **Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** In *Moore*, we said that Awe may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination. *Moore, 993 F.2d at 102.* **If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. *See, e.g., Wildbur*, 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.**

*Vega*, at 300 (emphasis added).

In *Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, P.A.*, 215 F.2d 516 (5th Cir.2000), the Fifth Circuit reaffirmed its en banc holding in *Vega*, stating again:

> The plan administrator has the obligation to identify the evidence in the administrative record **and the claimant must be afforded a reasonable opportunity to contest whether that record is complete.** *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201-02) (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* At 299.[FN5] **Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.** *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* At 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)).
>
> > FN5. **Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it.** *See Vega*, 188 F.3d at 300. **If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record.** *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 634-35 (5th Cir.1992))

*Id.*, at 521.

Accordingly, the documents enclosed herewith now form a part of the administrative record and must be considered, as must any further evidence or comment we supply for consideration in response to any new evidence generated by the Plan/insurer in connection with this appeal after we are given the opportunity to review such new evidence.

**THE EVIDENCE IN THIS CASE OVERWHELMINGLY SUPPORTS ENTITLEMENT TO DISABILITY BENEFITS**

The evidence presented here, along with all prior evidence forming the administrative record, clearly establishes Claimant's disability from his own occupation as well as any occupation as defined by the Plan/Policy in question. The claimant's own detailed description of the debilitating manifestations of his medical condition is corroborated many times over by his own medical providers, family members and relatives. No contrary assertion can be argued with any credibility, on this record, under applicable law.

**"'[T]he subjective element of pain [logically applicable to any other disabling manifestations of a given medical condition] is an important factor to be considered in determining disability.'"** *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (emphasis added) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). A plan administrator does not **necessarily** abuse its discretion **if** it requires objective support in addition to subjective reports of pain, however. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir.2009). **But a determination that pain complaints lack credibility must have some evidentiary basis in the record**. See *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir.2003).

Additionally, "**Plan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[s]**." See *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir.2006). But disregard such evidence is exactly what the Plan did here, contrary to law.

Analogous Fifth Circuit case law demonstrates that our record cannot support the denial. In *Salley v. E.I. Dupont de Nemours & Co*, 966 F.2d 1011, 116 (5th Cir. 1992) (emphasis added), the Fifth Circuit noted:

> Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, **the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility. If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony. The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.**

More recently, the Fifth Circuit, affirming Judge Eldon E. Fallon's holding that Hartford's denial of benefits was an abuse of discretion, awarding attorney's fees, stated:

> To be sure, there were lacunas in the Hartford's experts' reports concerning relevant matters to which the plaintiffs' experts opined, which were not explained by the Hartford when denying the plaintiff's claims, as detailed in the district court's opinion. **The Hartford also failed to consider Schully's longstanding subjective complaints of pain, which were repeatedly corroborated by the physicians most familiar with his condition and which were consistent with the medical evidence. As we have often explained, there is no treating physician preference in the context of ERISA, but neither may an administrator arbitrarily refuse to credit reliable evidence.** See *Black & Decker Disability Plan v. Nord*,

> 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). **It surely should not effectively ignore it. Nor may an administrator rely on an expert opinion without considering its basis or whether, as was the case here, it is in plain conflict with the medical records.** *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir.2007).[1]

The *Schully* Court further stated: "Moreover, we believe the district court properly took note of Hartford's conflict of interest and used it as a factor in its analysis in a manner consistent with *Metropolitan Life Insurance Co. v. Glenn*, 554 US 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.*, at 439. Affirming the district court's finding that Hartford "deliberately ignored" plaintiff's evidence in order to support its "preferential and predetermined conclusions," and finding significant evidence supporting that finding, the Fifth Circuit also affirmed the award of attorney's fees. *Id.*, at 439. The Plan's denial here is similar. This record is analogous, and the same result should apply.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La.2008) (J. Duval), the court reversed a plan administrator's denial of physical disability benefits under ERISA in part because, as here, the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator, as here, had simply disregarded the opinions of the plaintiff's treating physicians. *Id.* The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias. *Id.* The Plan's actions here reek of arbitrary bad faith far more than the administrator's actions in *Burdette*. The same result is warranted here.

Along similar lines, see *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009) (holding that denial decision was arbitrary where insurer selectively relied on pieces of evidence, while that evidence in context did not support the denial); *Leger v. Tribune Co.*, 557 F.3d 823, 832-33 (7th Cir.2009) (denial decision was arbitrary where, as here, the plan "cherry picked the statements from her medical history that supported the decision to terminate her benefits, while ignoring a wealth of evidence to support her claim that she was totally disabled"); *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 672-74 & n. 4 (6th Cir. 2006) (denial decision arbitrary where plan selectively considered evidence to reach decision unsupported by the record as a whole), aff'd 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

Faced with this record and a deserving claim, the financially conflicted Plan disregards and refuses to consider relevant evidence and instead parrots its contracted doctors who lacked the informed bases of treating physicians. This denial is wracked with omission, unsupported nonsensical conclusions and transparent, misleading advocacy for the Plan's cause of denial.[2]

**BAD FAITH**

In *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-808 (10th Cir.2004), the court explained:

> Aetna's position seems to be that as a plan fiduciary, it plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of

[1] *Schully, III v. Continental Casualty Company and Hartford Life Group Insurance Company*, 680 F.Ed. Appx. 437, 439 2010 WL 2332080 (5th Cir.2010)(emphasis and bracketed added).
[2] The injection of irrelevant and misleading material into the appeal committee's denial is further evidence that its conflict of interest affected the benefits decision. See *Durakovic v. Building Serivice 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010).

> a legitimate claim. The authority just cited suggests that Aetna has the wrong model.
>
> * * *
>
> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

Bad faith in the ERISA context is not the same as what is thought of as subjective insurance bad faith. According to *Production & Maintenance Employees' Local 504, Laborers' Intl Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992):

> Despite the references to good faith and harassment we do not read [Meredith v. Navistar Intl Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991)] to mean that a party must actually show subjective bad faith to justify a fee award. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to good faith and harassment simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a solid basis--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.

The loser's position is "substantially justified," when it is "justified to a degree that could satisfy a reasonable person." *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir. 2000)(citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)). Furthermore, to be "substantially justified the losing party's position needs to be more than merely not frivolous, but less than meritorious. "*Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984)(see also, *Pierce*, 487 U.S. at 568, n1, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness.") The Court thus should not focus on a subjective bad faith finding, but rather examine the reasonableness of the defendant's arguments and the Court's analysis of those arguments to determine whether to award fees. Hence, in *Deal v. Prudential Insur.Co. of America*, 263 F.Supp.2d, 1138 (N.D.Ill. 2003), the court found that in the absence of a "solid basis" for the insurer's termination of benefits, fees were due. Likewise, in *Brown v. Continental Casualty Co.*, 2005 U.S. Dist. LEXIS 16681 (E.D.Pa. 8/11/2005), the court held that fee awards provide a deterrent against unjustified benefit denials. *Brown* also ruled that fees need not be in proportion to the recovery.

A lack of substantial evidence also supported the fee award in *Denault v. American United Life Insu.Co.*, 2003 U.S. Dist.LEXIS 24210 (S.D.Ind. 12/19/2003). Further, in *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 2005 U.S.Dist LEXIS 1154 (N.D.Ill. 1/24/2005), the court found that the determination of substantial justification is derived from the ultimate result in the case. Even though the district court had granted summary judgment to the defendant, reversal by the Court of Appeals with a finding that the defendant's conduct was arbitrary and capricious justified a fee award. Expanding further on that theme, in *Moon v. UNUM Provident Corp.*, 461 F.3d 639 (6th Cir. 2006) the court ruled the district court erred in using its own decision that had been reversed as the basis for concluding that substantial evidence supported the claim denial.

In *Carroll v. Lucent Technologies, Inc. Long-Term Disability Plan for Management Employees*, 2003 U.S. Dist.LEXIS 9789 (E.D.Pa. 5/22/2003), the court determined that an arbitrary and capricious finding was the equivalent of "bad faith." Also see, *Smith v. Continental Casualty Co.*, 2003 U.S. Dist. LEXIS 19945 (D.Md. 10/27/2003), which found that the insurer's refusal to credit the plaintiff's subjective pain complaints despite an abundance of supporting medical evidence justified a fee award (vacated by *Smith v. Continental Casualty Co.*, 369 F.3d 412 (4th Cir. 5/28/2004). Likewise in *Curtin v. Unum Life Insur.Co. of America*, 2004 U.S. Dist.LEXIS 544 (D.Me. 1/12/04), the court found a fee award justified as a deterrent to wrongful denial of claims.

**COURT REVIEW**

Let this serve as notice of the claimant's intent to file suit immediately if the decision to deny benefits is not reversed. We will be seeking reimbursement of all costs and attorney's fees in connection with the court review, as the denial of this claim is nothing short of arbitrary, capricious and an abuse of discretion.

**PAYMENT INSTRUCTIONS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response**.

Please confirm receipt of this letter by email (support@jpricemcnamara.com) or fax (225-201-8313).

With kind regards, I remain

Sincerely,

*[signature]*

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

2-May-2023 16:45 +14023611460 +12252018313 p.9

PAGE 9/29 * RCVD AT 5/2/2023 12:41:44 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/1 * DNIS:4023611460 * CSID:+12252018313 * ANI:12252018313 * DURATION (mm-ss):11-09

COUNTY OF Smith

STATE OF TEXAS

AFFIDAVIT

BEFORE ME, the undersigned authority, came and appeared:

WILLIAM REYNOLDS

who after being duly sworn, did depose and state the following:

1. My date of birth is

2. I am currently married to Samantha Gail Reynolds.

3. Prior to becoming disabled from working, my employer was John Soules Foods since 1997, and my job title or position when I became disabled was Sales Analyst.

4. My last date of work for my employer upon becoming disabled was April 22, 2022.

5. As of my last date of work, my gross annual salary before taxes was $90,000.00

6. This information is all true and based upon personal knowledge.

WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023

NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME,** the undersigned authority, came and appeared:

**WILLIAM REYNOLDS**

who after being duly sworn, did depose and state the following:

1. The following has been true continuously since my last day of work related to my disability claim through the date of this Affidavit.

2. My understanding is that my disability is the result of my heart attacks on September 28, 2021 and December 19, 2021.

3. My September 28, 2021, heart attack was followed by a double coronary bypass on October 1, 2021. After my December 19, 2021, heart attack, I was diagnosed with diffused coronary heart disease and had a stent inserted on December 20, 2021.

4. I take the following prescription medications, at the following dosages and intervals each day:

    1. *Metoprolol Succ Er – 25mg – Taken twice daily for heart rhythm.
    2. Aspirin – 81mg – Taken once daily for blood thinner.
    3. Wellbutrin XL – 300mg – Taken once daily for depression.
    4. *Metformin Hcl Er – 500mg – Taken once daily for pre-diabetes.
    5. Vitamin D3 – 125mcg – Taken once daily for Vitamin D deficiency.
    6. *Atorvastatin – 80mg – Taken once daily for cholesterol.
    7. *Levothyroxine – 75mg – Taken once daily for low thyroid.
    8. Escitalopram – 10mg – Taken once daily for depression.
    9. *Tamsulosin – 0.4mg – Taken once daily for enlarged prostate.
    10. Temazepam – 30mg – Taken once daily for sleep.
    11. Xanax – 0.5mg – Taken as needed for stress.
    12. Furosemide – 20mg – Taken once daily for fluid in the lungs.

5. The above-referenced medications marked with an *, when taken, cause me to be even more forgetful and unable to perform adequately mentally and physically than without taking them. They cause drowsiness leading to errors and inability to keep pace as required to accomplish any task timely, as my ability to do everything is much slower, including all activities of daily living.

6. The above medications marked with an * cause negative side-effects, including but not limited to: statin-induced myopathy, dizziness, lightheadedness, bloating, heartburn, heat intolerance, excessive sweating, shortness of breath, and drowsiness.

7. With or without taking the above-referenced medications, my disability is severe. Whether or not taking my medication, the physical and mental effects of my medical condition as described in this affidavit do not change.

8. I am able to sit when I am not drowsy for 1 to 2 hours. If I sit for longer than 1 to 2 hours, I will doze off.

9. I can carry 10 to 20lbs for a maximum of 5 minutes and cannot lift more than 25 to 30lbs maximum. I need to pause and rest when carrying any significant weight due to severe shortness of breath.

10. I can stand for 15 to 20 minutes at a time and walk for 20 to 30 minutes before I need to rest. Excessive standing and walking cause me to experience fatigue, leg pain, and hip pain and weakness.

11. I am unable to drive for longer than an hour because my eyes and judgement become fatigued.

12. On a daily basis, I need to sit and rest 10 to 12 times for periods of 15 to 20 minutes at a time.

13. I experience fatigue and brain fog when I use my laptop for more than 20 to 30 minutes.

14. My wife watches me closely when I am outside of our home's living area because of my balance issues. She frequently assists me with any outdoor chores such as leaf blowing.

15. After my heart attacks, I've struggled with concentrating and require 3 or more breaks while doing complex comprehension activities in order to complete the task.

16. This Affidavit is based exclusively on my own knowledge and words, but it was completed over the course of several weeks, a little at a time, and required many hours of total time to complete it.

[signature]
WILLIAM REYNOLDS

Sworn to and subscribed
before me this 28th day
of March, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 132233689
My Commission Expires 10/31/2023

JAZLEEN QUINTANILLA
Notary Public, State of Texas
Comm. Expires 10-31-2023
Notary ID 132233689

PARISH/COUNTY OF WOOD

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**ERIC JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' son-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Eric Johnson
**ERIC JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J. May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

PARISH/COUNTY OF Wood

STATE OF Texas

**AFFIDAVIT**

**BEFORE ME,** the undersigned authority, came and appeared:

**EMILY JOHNSON**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' daughter.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Emily Johnson
**EMILY JOHNSON**

Sworn to and subscribed
before me this 19 day
of April, 2023.
Jeanne J May
NOTARY PUBLIC
Notary/Bar No.: 132268464
My Commission Expires NOV 27, 2023

JEANNE J MAY
Notary ID #132268464
My Commission Expires
November 27, 2023

COUNTY OF Smith

STATE OF TEXAS

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SAMANTHA REYNOLDS**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' spouse and I help him with his care.
2. I observe him and converse with him daily.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Samantha Reynolds
SAMANTHA REYNOLDS

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133391854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133391854

**PARISH/COUNTY OF** Ellis

**STATE OF** Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**SANDRA ST. CLAIR**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' sister-in-law.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

EDGAR GODINEZ SANCHEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 02-24-26
Notary ID # 13360889-9

Sandra St Clair
**SANDRA ST. CLAIR**

Sworn to and subscribed
before me this 21 day
of April, 20 23.

NOTARY PUBLIC
Notary/Bar No.: 13360889-9
My Commission Expires 02-24-26

Reynolds - Appeal 05/02/23 - 007

PARISH/COUNTY OF Smith
STATE OF Texas

**AFFIDAVIT**

**BEFORE ME**, the undersigned authority, came and appeared:

**STEPHANIE PRICE**

who after being duly sworn, did depose and state the following:

1. I am William Reynolds' niece.
2. I observe him and converse with him regularly.
3. I have read his Affidavit, a copy of which is attached hereto as Exhibit 1.
4. The entirety of his Affidavit is consistent with my observations of him.
5. The above is true and based upon personal knowledge.

Stephanie Price
**STEPHANIE PRICE**

Sworn to and subscribed
before me this 21st day
of April, 2023.
[signature]
NOTARY PUBLIC
Notary/Bar No.: 133321854
My Commission Expires 10-14-2025

BRITTANY BECK
Notary Public, State of Texas
Comm. Expires 10-14-2025
Notary ID 133321854

NOTE

**RE: Patient: William Reynolds**
**Date of Birth:**

To whom it may concern:

This is to document that I am the above patient's treating physician, and as such, I am familiar with his overall medical condition and his medication regimen.

I have reviewed the attached Affidavit of this patient. The statements that he makes in his Affidavit regarding his physical condition, limitations, and the effects of his condition are credible, consistent with and expected given his overall medical condition and my objective serial clinical physical examinations as well as all conducted objective diagnostic studies to date.

The patient's statements regarding prescribed medication and their side-effects are also consistent with common side-effects of the prescribed medication.

His complaints, clinical examination and all diagnostic studies also overwhelmingly and without question demonstrate severe disability which prevents him from working in any occupation, even sedentary.

Due to his physical condition, it is not reasonable to expect him to sit, walk or stand, even if alternating at will for a full 8-hour day. He is unable to engage in full time work, even if sedentary, on any sustained basis. Attempting to force himself to do so, or to intentionally persist in any activity that causes pain is not recommended, and will be detrimental to, and exacerbate his condition and pain.

Due to the medications he needs to be taking, he will not function well mentally and will experience clouded thinking, slow reaction time and fatigue. Thus, he cannot reasonably be expected to accurately and adequately perform mental tasks.

His abilities, physical limitations and conditions are not expected to improve and rather are expected to continue to become worse with time.

It is my opinion that he is disabled from any type of gainful employment.

If any further information is needed on his behalf, please request same by written contact so that there is no possibility of miscommunication.

Sincerely,

[signature] 3/27/23
PHYSICIAN SIGNATURE DATE

Clint Carter
PHYSICIAN PRINTED NAME

Reynolds - Appeal 05/02/23 - 009

**PHYSICIAN'S RECOMMENDED RESTRICTIONS**

Patient's Name: William Reynolds S.S.# ____________

Physician's Name: Clinton Carter

**IMPORTANT:**

Please answer the following items based on your clinical evaluations, test results, and medical treatment history of the patient. Please note the patient's limitations with regard to a worksetting where he/she would be required to work five days a week, on a sustained and regular basis. If, in your opinion, there is a medical basis for the patient's alleged pain, please consider pain as a factor in determining appropriate limitations.

****PLEASE ANSWER THE FOLLOWING QUESTIONS ASSUMING THAT YOUR PATIENT'S WORK DAY WOULD BE FOR NINE CONTINUOUS HOURS, INCLUDING A ONE HOUR LUNCH BREAK WHICH WOULD NOT PERMIT THE PATIENT TO LIE DOWN.**

I. The patient can walk up to:

Less than (1) 2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to walk?
Cardiovascular limitations, medication side effects

II. The patient can stand up to:

Less than (1) 2___3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to stand?
Stamina, balance

III. The patient can sit up to:

___1 (2) 3___4___5___6___7___8___9 hours

What medical conditions limit the patient's ability to sit?
Drowsiness, stiffness/pain due to OA (arthritis)

IV. The patient should not be expected to be present for more than ___1___ total hours per day of the nine hour work day described above on a sustained and regular basis in any combination of sitting, standing or walking.

V. Is the patient's medical condition expected to cause absences from work?

__X__Yes

_____No

VI. If the above question is answered "Yes", please estimate the number of such absences per month. __100%__

VII. In a given day, the patient can lift/carry:

**Occasionally** (meaning for as much as 1/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

**Frequently** (meaning for as much as 2/3 of the day) a maximum of:

__X__ less than 10 pounds
_____ 11-20 pounds
_____ 21-50 pounds
_____ over 50 pounds

What medical conditions limit the patient's ability to lift/carry?
Stamina, balance, fatigue

VIII. Can the patient use hands for repetitive:

Simple grasping and handling? ✓ Yes ____ No

Pushing and pulling? ✓ Yes ____ No

Fine manipulation and fingering? ____ Yes ✓ No

What medical conditions limit the patient's ability to use hands? arthritis

IX. Can the patient use feet for repetitive movements as in operating foot controls?

✓ Yes

____ No

What medical conditions limit the patient's ability to use feet? limitations in sitting/standing as above

X. The patient is able to:

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Bend | | ✓ | |
| Kneel | | | ✓ |
| Squat | | | ✓ |
| Crawl | | | ✓ |
| Climb stairs | | ✓ | |
| Climb ladders | | | ✓ |
| Reach above shoulder level | | ✓ | |
| Work from heights | | | ✓ |
| Drive or operate machinery | | ✓ | |

What medical conditions limit the patient's ability to engage in these activities?

Dizziness, balance, fatigue

XI. Should the patient avoid engaging in any activity that causes severe pain?

__Y__ Yes

____ No

Additional Restrictions or Comments:

Depression and anxiety secondary to the developed physical and mental limitations in the setting of a mentally demanding job make a return to work unrealistic.

[signature] Signature

3/27/23 Date

# Tyler
## History and Physical

| | | | |
|---|---|---|---|
| **Patient Name:** | William Reynolds | **Visit Date:** | April 6, 2023 |
| **Patient ID:** | 800509 | **Provider:** | Lisa Leffler, MD |
| **Sex:** | Male | **Location:** | Tyler |
| **Birthdate:** | | **Location Address:** | 2115 S Broadway Ave. Tyler, TX 75701-4214 |
| **Referring Provider:** | Lisa Leffler MD | **Location Phone:** | (903) 907-7002 |

### Chief Complaint

- Follow up on depression

### History Of Present Illness

Are you in pain today No
Have you been given any information to help you with hazards in your house that may hurt you such as fire hazards, fire arm safety, and fall risks No

Hearing screening
Do you have difficulty hearing No
If yes, do you wear hearing aids ANSWER
If yes, do your hearing aids work ANSWER
If no, are you interested in talking with your provider about hearing aids ANSWER

Fall Risk
Patient answerd yes to the following fall risks: no fall risk

Advance Directive:
Do you have a Power of Attorney Yes Do we have a completed POA form on file Yes
Do you have a POLST form or 5 Wishes filled out Yes Do we have the completed form on file Yes

Medical Scribe Signature and Authentication: This note was scribed by Christine McManus on 4/6/2023 at 03:23 PM for and in the presence of the attending provider Lisa Leffler MD, who personally performed the services described in this documentation and who confirms that after personal review this note is both accurate and complete.

[Digital Signature Validated]

Reynolds - Appeal 05/02/23 - 014

William Reynolds is a male presenting for WRV. Labs from discussed with pt.

Heart
- Denies any chest pain
- Taking Metoprolol Succinate 25mg twice daily

Diabetes
- Taking Metformin 500 mg daily
- Bilateral foot pain, worse on L and bottoms of feet

Cholesterol
- Taking Atorvastatin 80 mg daily

Thyroid
- Taking Levothyroxine 75 mcg daily

COPD
- Reports mild SOB
- Denies need of rescue inhaler

Depression
- Taking Bupropion 300mg daily, Lexapro 10m daily
- States Trazadone is helping him sleep better
- States he is feeling better and has desire to do more things

BPH
- Taking Tamsulosin 0.4mg daily

Left hand
- L middle finger at knuckle absent

ROS:
No fever or chills. No weight loss. No weight gain. No change in hearing. No change in vision. No sore throat. No shortness of breath at rest. No chest pain. No cough. No abdominal pain. No nausea or vomiting. No diarrhea. No recent falls.

Patient is here today for REASON FOR VISIT per doctor's previous orders.

## Past Medical History

Alcohol abuse; CHF (congestive heart failure), NYHA class I, chronic, diastolic; Heart failure; Major depressive disorder, recurrent, moderate; Morbid obesity; Obstructive sleep apnea; Paroxysmal A-fib; Secondary hyperaldosteronism; Stable angina; Tobacco dependence in remission

## Past Surgical History

| Procedure Name | Date | Notes |
|---|---|---|
| Arm Surgery | -- | -- |
| Bypass Surgery | -- | -- |
| Hand Surgery | -- | -- |
| Heart Stent | -- | -- |
| Leg Surgery | -- | -- |
| Shoulder surgery | -- | -- |

[Digital Signature Validated]

## Medication List

| Name | Date Started | Instructions |
|---|---|---|
| traZODone 100 mg tablet | 03/29/2023 | take 1 pill every night for sleep |

## Allergy List

| Allergen Name | Date | Reaction | Notes |
|---|---|---|---|
| Percodan | -- | -- | -- |

## Family Medical History

| Disease Name | Relative/Age | Notes |
|---|---|---|
| Cancer (Other) | | -- |
| Heart Attack | | -- |
| Substance abuse | | -- |

## Social History

| Finding | Status | Start/Stop | Quantity | Notes |
|---|---|---|---|---|
| Ambulatory Status: Independent | -- | --/-- | -- | -- |
| Education: Some | -- | --/-- | -- | -- |
| Lives With Spouse | -- | --/-- | -- | -- |
| Marital Status: Married | -- | --/-- | -- | -- |
| Tobacco | Former | 20/50 | 10 | -- |
| Work: Retired | -- | --/-- | -- | -- |

## Immunizations

| NameDate Admin | Mfg | Trade Name | Lot Number | Route | Inj | VIS Given | VIS Publication |
|---|---|---|---|---|---|---|---|
| Tdap - adult01/28/2020 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | |
| Zoster (Shingles)10/08/2014 | NE | Not Entered | | NE | NE | 03/29/2023 | |
| Comments: | | | | | | | |

## Review of Systems

**Constitutional**
- * See HPI

**Eyes**
- * See HPI

**HENT**
- * See HPI

**Breasts**
- * See HPI

**Cardiovascular**
- * See HPI

**Respiratory**
- * See HPI

**Gastrointestinal**
- * See HPI

**Genitourinary**
- * See HPI

**Integument**
- * See HPI

**Neurologic**
- * See HPI

**Musculoskeletal**
- * See HPI

[Digital Signature Validated]

Endocrine
- See HPI

Psychiatric
- See HPI

Heme-Lymph
- See HPI

Allergic-Immunologic
- See HPI

All Others Negative

## Vitals

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

## Physical Examination

**Constitutional**
- **Appearance** : Well nourished, well developed. No apparent distress.

**Head and Face**
- **Head** : Normocephalic
- **Face** : atraumatic

**Eyes**
- **General** : pupils equal and reactive to light. No conjunctival erythema. No discharge.

**Ears, Nose, Mouth and Throat**
- **Ears** : clear, no erythema or bulging. External canals clear. No pain or tenderness. Hearing grossly intact.
- **Nose** : nares patent
- **Oral Cavity** : Moist mucous membranes

**Respiratory**
- **General** : breathing unlabored. No accessory muscle use. Lungs clear to auscultation bilaterally. Good air movement in all lung fields.

**Cardiovascular**
- **Heart** : Regular rate and rhythm.

**Gastrointestinal**
- **Abdominal Examination** : Soft, No tenderness

**Neurologic**
- **General** : Mental status alert and oriented to person, place and time. Thought process is coherent.

## Results

**In-Office Procedures**

**Imaging procedure**

**QuantaFlo, In-Center Only (93922)**
- QuantaFlo Right: 1.20 Units
- Quantaflo Left: 1.12 Units

**Procedures**

**Diabetic foot assessment (G0245)**
- DM Foot Exam:: Result: Abnormal Neuro

## Assessment

- (1) Encounter for annual general medical examination with abnormal findings in adult V70.0/Z00.01
- (2) Major depressive disorder, recurrent, moderate 296.32/F33.1
  4/6/2023

Patient reports improvement in mood and activities. Stable, Moderate, Recurrent, Controlled. Continue with Bupropion 300 mg daily, Lexapro 10 mg daily, Trazadone 100 mg daily. Continue trying to increase social interactions. Medication side effects discussed. No SI/HI. If depression worsens, or if there are suicidal or homicidal ideations seek medical care immediately. Continue to monitor and follow up with PCP.

[Digital Signature [illegible]]

- (3) CHF (congestive heart failure), NYHA class 1, chronic, diastolic 428.32/I50.32
4/6/2023

Stable. Echo from 7/2022 shows diastolic dysfunction. Controlled. Continue current medicines. Monitor Weight daily. If weight go up by more than 5 pounds in 1 week, new leg edema or new shortness of breath call the doctor. Follow a low sodium diet. Retur to the clinic for any worsening. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.

- (4) Morbid obesity 278.01/E66.01
4/6/2023

BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.

- (5) BMI 38.0-38.9,adult V85.38/Z68.38
4/6/2023

BMI 38.60. Weight loss discussed. Lower caloric intake. Exercise 3-5 times a week. Discussed the need to lose weight due to increased morbidity with increased cardiovascular risks and mortality with morbid obesity. Pt voiced understanding.

- (6) Stable angina 413.9/I20.8
4/6/2023

Stable. Controlled with Metoprolol Succinate 25 mg twice daily. Continue current medicines. For typical angina type chest pain, take nitroglycerin if prescribed. For chest pain that does not resolve within a reasonable time, contact the office and if indicated to ER. Avoid stressful type situations that may provoke angina. If a change in angina or more frequent, notify your doctor right away. Continue to monitor. Continue to follow up with PCP.

- (7) COPD (chronic obstructive pulmonary disease) 496/J44.9
4/6/2023

Stable. PFT in clinic shows obstruction. Mild SOB. Will start Advair 2 puffs twice daily. Continue current medicines. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.

- (8) Secondary hyperaldosteronism 255.14/E26.1
4/6/2023

Stable. Patient has secondary hyperaldosteronism due to CKD. Stressed importance of salt limitation, fluid restriction, daily monitoring for weight gain, and promptly reporting any symptoms of shortness of breath, orthopnea, weight gain, or swelling.

- (9) Paroxysmal A-fib 427.31/I48.0
4/6/2023

Stable. Controlled with Metoprolol Succinate 25 mg daily, Aspirin 81 mg daily. Continue current medicines. No palpitations. Rate controlled. Continue to monitor. Follow up as directed with PCP. Verbalized understanding and agreemen

- (10) Prevnar 20 V03.82/Z23
- (11) BPH (benign prostatic hyperplasia) 600.00/N40.0
4/6/2023

Stable. Controlled with Tamsulosin 0.4 mg daily. Continue current medicines. Denies urine retention. No dysuria. Discussed medicine side effects. Continue to monitor. Follow up with a primary care physician. Verbalized understanding and agreement.

- (12) Controlled diabetes mellitus with diabetic polyneuropathy
Type 2 diabetes mellitus with diabetic polyneuropathy 250.60/E11.42
Stable. A1C 5.9. Currently on Metformin 500 mg daily. Continue current medicines. Reviewed dietary recommendations for minimizing saturated fats and empty carbohydrates calories. Discussed use of home glucose monitoring. Reviewed signs/symptoms of hypoglycemia. Discussed benefits of regular exercise. Decreased sensation on exam. Check feet on a daily basis and apply lotion, checking for abrasions, sores or ulcers and if present notify the office urgently. Wear diabetic shoes and never go barefooted. Use care and caution in order not to fall and cause injury secondary to a decrease in sensation. Continue to monitor. F/U with PCP. Verbalized understanding and agreement.

- (13) Acquired absence of finger, left V49.62/Z89.022
4/6/2023

L middle finger absent at knuckle.

- (14) Hypothyroid 244.9/E03.9
- (15) Hyperlipidemia 272.4/E78.5
4/6/2023

[Digital Signature Validated]

Stable. Currently on Atorvastatin 80 mg daily. Continue current medicines. Continue low cholesterol diet. Discussed medicine side effects. Continue to monitor. F/U PCP. Verbalized understanding and agreement.

## Plan

**Orders**

- Annual Visit (G0439) (G0439) - V70.0/Z00.01 - 04/06/2023 - Hold lab results until reviewed :No
- Pneumococcal 20-Valent Conjugate Vaccine, Suspension for Intramuscular Injection (90677) - - 04/06/2023 - Hold lab results until reviewed :No
- Prevnar (Administration - Medicare) (G0009) - - 04/06/2023 - Hold lab results until reviewed :No

**Medications**

- Medications have been Reconciled
- Transition of Care or Provider Policy

**Electronically Signed by:** Lisa Leffler, MD -Author on April 6, 2023 04:48:12 PM

[Digital Signature Validated

## Today's Visit

You saw D Johnston, DO on Tuesday January 17, 2023. The following issues were addressed:

- Difficulty falling or staying asleep
- Recurrent major depressive disorder, in full remission
- Status post two vessel coronary artery bypass
- High cholesterol or triglycerides
- Obesity (BMI 30-39.9)
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Increased fasting blood sugar
- Sleep apnea
- High blood pressure
- Shortness of breath
- Underactive thyroid
- Blood Pressure 122/68
- BMI 38.57
- Weight 253 lb 11.2 oz
- Height 5' 8"
- Temperature 97.3 °F
- Pulse 73
- Respiration 16
- Oxygen Saturation 94%

## Today's Visit

You saw D Johnston, DO on Wednesday February 8, 2023. The following issues were addressed:

- Shortness of breath
- High blood pressure
- Sleep apnea
- Hardening of the arteries of the heart
- Atrial fibrillation (irregular heartbeat)
- Status post two vessel coronary artery bypass
- Increased fasting blood sugar
- Fatigue, unspecified type
- Blood Pressure 126/70
- BMI 38.62
- Weight 254 lb
- Height 5' 8"
- Temperature 97.7 °F
- Pulse 70
- Respiration 16
- Oxygen Saturation 96%

# AFTER VISIT SUMMARY

**Bill J. Reynolds** MRN: 1325941

2/20/2023 9:00 AM UT Health East Texas Pulmonary Institute in Tyler 903-592-6901

## Today's Visit

You saw C Wang-Kocik, MD on Monday February 20, 2023. The following issue was addressed: Sleep apnea.

- Blood Pressure 115/75
- BMI 38.47
- Weight 253 lb
- Height 5' 8"
- Pulse 72
- Oxygen Saturation 96%

## Instructions

from C Wang-Kocik, MD

- **Please call Lincare to ensure that they received your CPAP order, take your insurance, and inquire when they believe a machine will be available for you.**
  Www.Lincare.com

  **Tyler**
  3013 E 5th St
  903-533-1412

  **Athens**
  927 N Palestine
  Ste 101
  903-675-1058

  **Quitman**
  914 E Goode St
  903-763-0874

  **Longview**
  110 Triple Creek Dr
  Ste 73
  903-234-2233

  **Palestine**
  201 W Palestine Ave
  903-727-0863

  **Mount Pleasant**
  1629 W 16th St
  903-575-0855

- Return in about 3 months

  (around 5/20/2023).

Reynolds - Appeal 05/02/23 - 021

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 19, 2023

**SENT VIA FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

Enclosed is an authorization for release of the entire administrative claims file to date, which Mr. Reynolds has completed and signed.

**Please confirm your receipt of this by fax or email.

With kind regards, I remain

Sincerely,

J. Price McNamara
**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

Vinesign Document ID: 5CF7EFF8-AAAF-4FC8-BC96-3D5A770C07C6

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 18, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

This is to advise that Price McNamara represents me in this matter and I direct and authorize The Lincoln National Life Insurance Company to provide him with my entire claim file to include any document he requests.

Sincerely,

[signature]

**William Reynolds**

The signed document can be validated at https://app.vinesign.com/Verify

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln FWD Auth to Release CF - 01-19-23_2023-01-19-1007-PST.pdf | **Pages:** | 3 |
| **Sent:** | January 19, 2023 10:07 AM PST | **Rec'd:** | January 19, 2023 10:09 AM PST |

***AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION***

I hereby authorize The Lincoln National Life Insurance Company (covered entity) to use or disclose the following protected health information (PHI) from the medical records of the patient listed below to:

**Requestor Name:** **J. Price McNamara, Attorney**
**Requestor Address:** **10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809**

**Patient Name:** William Reynolds
**Patient DOB:**
**Patient SSN:**
**Patient Address:** 514 Elmridge Dr., Tyler, TX 75703

Disclose the following PHI for treatment dates all to all

☒ Abstract/Pertinent ☒ History & Physical ☒ Discharge Summary ☒ Consult

☒ Operative Report ☒ Progress Notes ☒ Physician Orders ☒ Nurses Notes

☒ ER Report ☒ Lab ☒ X-ray ☒ Entire Chart

☒ Other Specified: Cover to Cover (Medical Records & Itemized Statement)

The above information is disclosed for the following purposes:

☐ Medical Care ☒ Legal ☒ Insurance ☐ Personal ☐ Other__________

****I acknowledge, and hereby consent to such, that the released information may contain alcohol and drug abuse, psychiatric, HIV or genetic information**

This authorization shall expire upon this expiration date: ______________________
** If I fail to specify an expiration date or event, this authorization will expire six (6) months from the date on which it was signed.

- I understand that I have the right to revoke this authorization at any time. I understand that I must do so in writing and present the written revocation to the above named covered entity. I understand that the revocation will not apply to information that has already been released to this authorization.

- I understand that my treatment, payment, enrollment or eligibility for benefits may not be conditioned on signing this authorization.

- The information used or disclosed pursuant to the authorization may be subject to redisclosure by the recipient and no longer protected.

*I have read the above and authorize the disclosure of the protected health information as stated.*

***Signature of Patient or Representative:***

[signature]

01/18/2023
Date

LAW OFFICES OF J. PRICE MCNAMARA
10455 JEFFERSON HWY
STE 130
BATON ROUGE LA 70809

CERTIFIED MAIL

BATON ROUGE LA 707
2023 PM 1 L

9414 8118 9956 2155 5248 50

PS Form 3800 6/02

$6.810
US POSTAGE
FIRST-CLASS
FROM 70809
01/19/2023
stamps
endicia
062S0005843986

CLAIMS SHARED SERVICES
The Lincoln National Life Insurance Company
ATTN: PAUL WEBBER
PO BOX 2337
OMAHA NE 68103-2337

68103-233737

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 19, 2023

**SENT VIA FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

Enclosed is an authorization for release of the entire administrative claims file to date, which Mr. Reynolds has completed and signed.

**Please confirm your receipt of this by fax or email.

With kind regards, I remain

Sincerely,

J. Price McNamara
Law Offices of J. Price McNamara

JPM/eej
Enclosure

Vinesign Document ID: 5CF7EFF8-AAAF-4FC8-BC96-3D5A770C07C6

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 18, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

This is to advise that Price McNamara represents me in this matter and I direct and authorize The Lincoln National Life Insurance Company to provide him with my entire claim file to include any document he requests.

Sincerely,

**William Reynolds**

The signed document can be validated at https://app.vinesign.com/Verify

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln FWD Auth to Release CF - 01-19-23_2023-01-19-1007-PST.pdf | **Pages:** | 3 |
| **Sent:** | January 19, 2023 10:07 AM PST | **Rec'd:** | January 19, 2023 10:09 AM PST |

***AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION***

I hereby authorize The Lincoln National Life Insurance Company (covered entity) to use or disclose the following protected health information (PHI) from the medical records of the patient listed below to:

**Requestor Name:** **J. Price McNamara, Attorney**
**Requestor Address:** **10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809**

**Patient Name:** William Reynolds
**Patient DOB:** 09/11/1953
**Patient SSN:** xxx-xx-4034
**Patient Address:** 514 Elmridge Dr., Tyler, TX 75703

Disclose the following PHI for treatment dates all to all

| | | | |
|---|---|---|---|
| ☒ Abstract/Pertinent | ☒ History & Physical | ☒ Discharge Summary | ☒ Consult |
| ☒ Operative Report | ☒ Progress Notes | ☒ Physician Orders | ☒ Nurses Notes |
| ☒ ER Report | ☒ Lab | ☒ X-ray | ☒ Entire Chart |

☒ Other Specified: Cover to Cover (Medical Records & Itemized Statement)

The above information is disclosed for the following purposes:

☐ Medical Care ☒ Legal ☒ Insurance ☐ Personal ☐ Other__________

******I acknowledge, and hereby consent to such, that the released information may contain alcohol and drug abuse, psychiatric, HIV or genetic information**

This authorization shall expire upon this expiration date: ________________________________
** If I fail to specify an expiration date or event, this authorization will expire six (6) months from the date on which it was signed.

- I understand that I have the right to revoke this authorization at any time. I understand that I must do so in writing and present the written revocation to the above named covered entity. I understand that the revocation will not apply to information that has already been released to this authorization.

- I understand that my treatment, payment, enrollment or eligibility for benefits may not be conditioned on signing this authorization.

- The information used or disclosed pursuant to the authorization may be subject to redisclosure by the recipient and no longer protected.

*I have read the above and authorize the disclosure of the protected health information as stated.*

***Signature of Patient or Representative:***

William Reynolds

01/18/2023
Date

Vinesign Document ID: 5CF7EFF8-AAAF-4FC8-BC96-3D5A770C07C6

**LAW OFFICES OF J. PRICE McNAMARA**

**J. PRICE McNAMARA**
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 18, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

This is to advise that Price McNamara represents me in this matter and I direct and authorize The Lincoln National Life Insurance Company to provide him with my entire claim file to include any document he requests.

Sincerely,

[signature]
**William Reynolds**

The signed document can be validated at https://app.vinesign.com/Verify

LAW OFFICES OF J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 19, 2023

**SENT VIA FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re:** **Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

Enclosed is an authorization for release of the entire administrative claims file to date, which Mr. Reynolds has completed and signed.

**Please confirm your receipt of this by fax or email.

With kind regards, I remain

Sincerely,

J. Price McNamara
Law Offices of J. Price McNamara

JPM/eej
Enclosure

## *AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION*

I hereby authorize The Lincoln National Life Insurance Company (covered entity) to use or disclose the following protected health information (PHI) from the medical records of the patient listed below to:

**Requestor Name:** **J. Price McNamara, Attorney**
**Requestor Address:** **10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809**

**Patient Name:** William Reynolds
**Patient DOB:** 09/11/1953
**Patient SSN:** xxx-xx-4034
**Patient Address:** 514 Elmridge Dr., Tyler, TX 75703

Disclose the following PHI for treatment dates all to all

☒ Abstract/Pertinent ☒ History & Physical ☒ Discharge Summary ☒ Consult

☒ Operative Report ☒ Progress Notes ☒ Physician Orders ☒ Nurses Notes

☒ ER Report ☒ Lab ☒ X-ray ☒ Entire Chart

☒ Other Specified: Cover to Cover (Medical Records & Itemized Statement)

The above information is disclosed for the following purposes:

☐ Medical Care ☒ Legal ☒ Insurance ☐ Personal ☐ Other__________

******I acknowledge, and hereby consent to such, that the released information may contain alcohol and drug abuse, psychiatric, HIV or genetic information**

This authorization shall expire upon this expiration date: ______________________________
** If I fail to specify an expiration date or event, this authorization will expire six (6) months from the date on which it was signed.

- I understand that I have the right to revoke this authorization at any time. I understand that I must do so in writing and present the written revocation to the above named covered entity. I understand that the revocation will not apply to information that has already been released to this authorization.

- I understand that my treatment, payment, enrollment or eligibility for benefits may not be conditioned on signing this authorization.

- The information used or disclosed pursuant to the authorization may be subject to redisclosure by the recipient and no longer protected.

*I have read the above and authorize the disclosure of the protected health information as stated.*

*Signature of Patient or Representative:*

[signature] ______________________________ 01/18/2023
Date

Vinesign Document ID: 5CF7EFF8-AAAF-4FC8-BC96-3D5A770C07C6

**LAW OFFICES OF J. PRICE McNAMARA**

**J. PRICE McNAMARA**
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 18, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

Dear Mr. Webber,

This is to advise that Price McNamara represents me in this matter and I direct and authorize The Lincoln National Life Insurance Company to provide him with my entire claim file to include any document he requests.

Sincerely,

[signature]

**William Reynolds**

The signed document can be validated at https://app.vinesign.com/Verify

***AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION***

I hereby authorize The Lincoln National Life Insurance Company (covered entity) to use or disclose the following protected health information (PHI) from the medical records of the patient listed below to:

**Requestor Name:** **J. Price McNamara, Attorney**
**Requestor Address:** **10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809**

**Patient Name:** William Reynolds
**Patient DOB:** 09/11/1953
**Patient SSN:** xxx-xx-4034
**Patient Address:** 514 Elmridge Dr., Tyler, TX 75703

Disclose the following PHI for treatment dates ___all___ to ___all___

☒ Abstract/Pertinent ☒ History & Physical ☒ Discharge Summary ☒ Consult

☒ Operative Report ☒ Progress Notes ☒ Physician Orders ☒ Nurses Notes

☒ ER Report ☒ Lab ☒ X-ray ☒ Entire Chart

☒ Other Specified: Cover to Cover (Medical Records & Itemized Statement)

The above information is disclosed for the following purposes:

☐ Medical Care ☒ Legal ☒ Insurance ☐ Personal ☐ Other__________

******I acknowledge, and hereby consent to such, that the released information may contain alcohol and drug abuse, psychiatric, HIV or genetic information**

This authorization shall expire upon this expiration date: ______________________________
** If I fail to specify an expiration date or event, this authorization will expire six (6) months from the date on which it was signed.

- I understand that I have the right to revoke this authorization at any time. I understand that I must do so in writing and present the written revocation to the above named covered entity. I understand that the revocation will not apply to information that has already been released to this authorization.

- I understand that my treatment, payment, enrollment or eligibility for benefits may not be conditioned on signing this authorization.

- The information used or disclosed pursuant to the authorization may be subject to redisclosure by the recipient and no longer protected.

*I have read the above and authorize the disclosure of the protected health information as stated.*

*Signature of Patient or Representative:*

[signature] ______________________________ 01/18/2023
Date

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 12, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 00001021227100000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

**REQUEST FOR COPY OF ADMINISTRATIVE RECORD**
**& ALL RELEVANT PLAN DOCUMENTS**

Dear Mr. Webber,

**I represent William Reynolds in connection with a denial of benefits for long-term, short-term, and/or waiver of premium benefits. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

We request a copy of the entire administrative claims file to date, including, but not limited to the following, including all data or information that exists in electronic or digital form.

1. All governing plan documents, including, but not limited to, the summary plan description, the plan itself, <u>and any and all policies of insurance covering the plan</u>.

2. All documents that are "relevant" to the claim in question within the meaning of 29 C.F.R. §2560.503-1(m)(8). **This includes, by statute, not only documents "relied upon" in making a benefit determination, but also all documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination."**

3. The entire claim file including, but not limited to, any applications, correspondence, handwritten notes, any and all surveillance, e-mails, activity logs, medical or physician reports and records, vocational reports, evaluation notes and any and all commentary by any employee or person contracted by you or claimant or claimant's employer or any other person or entity regarding the claim, job descriptions from the employer, any other investigatory materials, correspondence by and between anyone else involved with this claim such as reviewers, consultants, employer and claimant, documentation setting forth the qualifications of any individual involved in rendering a decision or participating in the rendering of a

decision in this matter, copies of criteria, protocols, rules or directives as to the evaluation of claims for insurance benefits (for example, claim manual and/or training materials).

4. Curriculum vitae for any physician or other consultant who played any part in the evaluation of this claim.

5. A copy of the audio recording and a transcript of each telephone conversation between the claimant or any representative of the insurer or Claims Administrator of Plan Administrator of the Plan. (See attached June 14, 2021 information letter from the United States Department of Labor declaring "relevant" information that must be produced under ERISA claims regulations.)

**Please email claim file to support@jpricemcnamara.com or mail to 10455 Jefferson Hwy., Suite 130, Baton Rouge, LA 70809.**

If we do not receive timely (30 days) production of the above documents and audio recordings, we will seek statutory penalties.

**INSTRUCTIONS FOR ALL BENEFIT PAYMENTS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please confirm your receipt of this by fax or email.

With kind regards, I remain

Sincerely,

J. Price McNamara

**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

U.S. Department of Labor

Employee Benefits Security Administration
Washington, D.C. 20210

June 14, 2021

Cassie Springer Ayeni
President and Managing Attorney
Springer Ayeni, A Professional Law Corporation
4319 Piedmont Ave., 2nd Fl.
Oakland, CA 94611

Dear Ms. Springer Ayeni:

This responds to your inquiry regarding the claims procedure requirements under section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA). In particular, you ask whether ERISA section 503 and the Department of Labor's implementing claims procedure regulation at 29 CFR 2560.503-1 require the responsible plan fiduciary to provide, upon a claimant's request, a copy of an audio recording and transcript of a telephone conversation between the claimant and a representative of the plan's insurer relating to an adverse benefit determination.

You are seeking guidance because you represent a claimant whose request for such a recording was denied. You indicate that the stated reasons for denial of the request for the audio recording are that the actual recording is distinct from the notes made available to you, which contemporaneously documented the content of the recorded conversation, and which became part of the "claim activity history through which [the insurer] develops, tracks and administers the claim." By contrast, the denial stated that the "recordings are for 'quality assurance purposes,'" and "are not created, maintained, or relied upon for claim administration purposes, and therefore are not part of the administrative record."

The Department may, when deemed appropriate and in the best interest of sound administration of ERISA, issue information letters calling attention to established principles under ERISA, even though an advisory opinion was requested. ERISA Procedure 76-1, section 5 (41 Fed. Reg. 36281 (Aug. 27, 1976)). We determined that it is appropriate to respond in the form of an information letter, the effect of which is described in section 11 of ERISA Procedure 76-1.

ERISA section 503 requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The Department's implementing regulations require employee benefit plans to "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 CFR 2560.503-1(b). The regulations further require that the claims procedures of a plan will not provide a reasonable opportunity for a full and fair review of a denied claim, unless, among other things, "the claims procedures provide that a claimant shall be provided, upon request . . . copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 CFR 2560.503-1(h)(2)(iii).

The regulation at 29 CFR 2560.503-1(m)(8) provides that, for this purpose, a document, record, or other information is "'relevant' to a claimant's claim" if the document, record, or other information:

> (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5); or (iv) constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

As subparagraph (ii) states, information is relevant to a claimant's claim if it "was ... generated in the course of making the benefit determination," even if it was not "relied upon in making the benefit determination." Consequently, for purposes of subparagraph (ii) it is immaterial whether information was "not created, maintained, or relied upon **for** claim administration purposes." (emphasis added).

Furthermore, with respect to a claim that a recording is not required to be disclosed because it was generated for quality assurance purposes, as noted above, subparagraph (iii) in 29 CFR 2560.503-1(m)(8) states, information is relevant for purposes of the disclosure requirement if it "demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5).".[1] Thus, the fact that a recording was made for quality assurance purposes would support it being subject to a disclosure request for relevant "documents, records, and other information" under 29 CFR 2560.503-1(h)(2)(iii).

Further, nothing in the regulation requires that "relevant documents, records, or other information" consist only of paper or written materials. Rather, in the preamble to recent amendments to 29 CFR. 2560.503-1, the Department recognized that an audio recording can be part of a claimant's administrative record. In responding to commenters' concerns that proposed amendment language would prohibit claimants from submitting audio evidence in support of their claim, the Department clarified that no limit was intended on the types of evidence claimants can submit. In its response, the Department listed "video, audio, or other electronic media" as types of evidence plans cannot refuse to accept. 81 Fed. Reg. at 92325 (Dec. 19, 2016).

In summary, a recording or transcript of a conversation with a claimant would not be excluded from the requirements under 29 CFR 2560.503-1 to disclose relevant "documents, records, and other information" merely because the plan or claims administrator does not include the recording or transcript in its administrative record; does not treat the recording or transcript as part of the claim activity history through which the insurer develops, tracks and administers the claim; or because the recording or transcript was generated for quality assurance purposes.

---

[1] The claims procedure regulation at 29 CFR 2560.503-1(b)(5) requires that, to be deemed reasonable, claims procedures must, among other things, "contain administrative processes and safeguards designed to ensure and to verify that benefit clam determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." In this connection, the Department has stated that "a plan must provide a claimant upon request after receiving an adverse benefit determination . . . any information that the plan has generated or obtained in the process of ensuring and verifying that, in making the particular determination, the plan complied with its own administrative processes and safeguards that ensure and verify appropriately consistent decision making in accordance with the plan's terms." 65 Fed. Reg. at 70252 (Nov. 21, 2000).

We hope this information is of assistance to you.

Sincerely,

Eric Berger
Acting Chief, Division of Coverage, Reporting and Disclosure
Office of Regulations and Interpretations

FILEVINE

# Fax Confirmation

| | | | |
|---|---|---|---|
| **To:** | (402) 361-1460 | **From:** | (225) 201-8313 |
| **Doc:** | Fax_Reynolds - Ltr to Lincoln Req LTD CF - 01-12-23_2023-01-12-0704-PST.pdf | **Pages:** | 5 |
| **Sent:** | January 12, 2023 7:04 AM PST | **Rec'd:** | January 12, 2023 7:06 AM PST |

LAW OFFICES OF J. PRICE MCNAMARA
10455 JEFFERSON HWY
STE 130
BATON ROUGE LA 70809

CERTIFIED MAIL

9414 8118 9956 2161 6697 29

BATON ROUGE, LA 708
PM
12 JAN
2023

$6.810
US POSTAGE
FIRST-CLASS
FROM 70809
01/12/2023
stamps endicia
063S0008843986

PS Form 3800 6/02

CLAIMS SHARED SERVICES
The Lincoln National Life Insurance Company
ATTN: PAUL WEBBER
PO BOX 2337
OMAHA NE 68103-2337

6810382337 B050

LAW OFFICES
OF
J. PRICE MCNAMARA

J. PRICE McNAMARA
10455 Jefferson Highway, Ste. 130
Baton Rouge, LA 70809
E: support@jpricemcnamara.com
P: (225) 201-8311 | F: (225) 201-8313
www.jpricemcnamara.com

HOLDING INSURANCE COMPANIES TO THEIR PROMISES

January 12, 2023

**SENT VIA CERTIFIED MAIL**
**& FAX 402-361-1460**

Claims Shared Services
The Lincoln National Life Insurance Company
**Attn: Paul Webber**
PO Box 2337
Omaha, NE 68103

**Re: Claimant: William Reynolds**
**Claim Number: 1220082997**
**Policy Number: 000010212271000000**
**Policy Holder: John Soules Doods, Inc. - TX Location**

**REQUEST FOR COPY OF ADMINISTRATIVE RECORD**
**& ALL RELEVANT PLAN DOCUMENTS**

Dear Mr. Webber,

**I represent William Reynolds in connection with a denial of benefits for long-term, short-term, and/or waiver of premium benefits. Please do not initiate contact with my client except through me, including any contact by telephone, postal mail or electronic means, including contact through insurer claim portals. This will further serve as a revocation of any and all previous consent for contact.**

We request a copy of the entire administrative claims file to date, including, but not limited to the following, including all data or information that exists in electronic or digital form.

1. All governing plan documents, including, but not limited to, the summary plan description, the plan itself, **and any and all policies of insurance covering the plan**.

2. All documents that are "relevant" to the claim in question within the meaning of 29 C.F.R. §2560.503-1(m)(8) **This includes, by statute, not only documents "relied upon" in making a benefit determination, but also all documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination."**

3. The entire claim file including, but not limited to, any applications, correspondence, handwritten notes, any and all surveillance, e-mails, activity logs, medical or physician reports and records, vocational reports, evaluation notes and any and all commentary by any employee or person contracted by you or claimant or claimant's employer or any other person or entity regarding the claim, job descriptions from the employer, any other investigatory materials, correspondence by and between anyone else involved with this claim such as reviewers, consultants, employer and claimant, documentation setting forth the qualifications of any individual involved in rendering a decision or participating in the rendering of a

decision in this matter, copies of criteria, protocols, rules or directives as to the evaluation of claims for insurance benefits (for example, claim manual and/or training materials).

4. Curriculum vitae for any physician or other consultant who played any part in the evaluation of this claim.

5. A copy of the audio recording and a transcript of each telephone conversation between the claimant or any representative of the insurer or Claims Administrator of Plan Administrator of the Plan. (See attached June 14, 2021 information letter from the United States Department of Labor declaring "relevant" information that must be produced under ERISA claims regulations.)

**Please email claim file to support@jpricemcnamara.com or mail to 10455 Jefferson Hwy., Suite 130, Baton Rouge, LA 70809.**

If we do not receive timely (30 days) production of the above documents and audio recordings, we will seek statutory penalties.

**INSTRUCTIONS FOR ALL BENEFIT PAYMENTS**

**Pursuant to our representation agreement with our client, all payments made to our client are to be made payable to the client and J. Price McNamara. Please mail all payments to J. Price McNamara, 10455 Jefferson Highway, Ste. 130, Baton Rouge, LA 70809. Our Tax ID Number is 72-1384876.**

**Strict compliance with this request is required by law until further written notice from this office. Failure to comply with this request will be considered intentional interference with contractual rights, resulting in appropriate legal response.**

**Please confirm your receipt of this by fax or email.

With kind regards, I remain

Sincerely,

J. Price McNamara
**J. Price McNamara**
**Law Offices of J. Price McNamara**

JPM/eej
Enclosure

**U.S. Department of Labor**

Employee Benefits Security Administration
Washington, D.C. 20210

June 14, 2021

Cassie Springer Ayeni
President and Managing Attorney
Springer Ayeni, A Professional Law Corporation
4319 Piedmont Ave., 2nd Fl.
Oakland, CA 94611

Dear Ms. Springer Ayeni:

This responds to your inquiry regarding the claims procedure requirements under section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA). In particular, you ask whether ERISA section 503 and the Department of Labor's implementing claims procedure regulation at 29 CFR 2560.503-1 require the responsible plan fiduciary to provide, upon a claimant's request, a copy of an audio recording and transcript of a telephone conversation between the claimant and a representative of the plan's insurer relating to an adverse benefit determination.

You are seeking guidance because you represent a claimant whose request for such a recording was denied. You indicate that the stated reasons for denial of the request for the audio recording are that the actual recording is distinct from the notes made available to you, which contemporaneously documented the content of the recorded conversation, and which became part of the "claim activity history through which [the insurer] develops, tracks and administers the claim." By contrast, the denial stated that the "recordings are for 'quality assurance purposes,'" and "are not created, maintained, or relied upon for claim administration purposes, and therefore are not part of the administrative record."

The Department may, when deemed appropriate and in the best interest of sound administration of ERISA, issue information letters calling attention to established principles under ERISA, even though an advisory opinion was requested. ERISA Procedure 76-1, section 5 (41 Fed. Reg. 36281 (Aug. 27, 1976)). We determined that it is appropriate to respond in the form of an information letter, the effect of which is described in section 11 of ERISA Procedure 76-1.

ERISA section 503 requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The Department's implementing regulations require employee benefit plans to "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 CFR 2560.503-1(b). The regulations further require that the claims procedures of a plan will not provide a reasonable opportunity for a full and fair review of a denied claim, unless, among other things, "the claims procedures provide that a claimant shall be provided, upon request . . . copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 CFR 2560.503-1(h)(2)(iii).

The regulation at 29 CFR 2560.503-1(m)(8) provides that, for this purpose, a document, record, or other information is "'relevant' to a claimant's claim" if the document, record, or other information:

> (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5); or (iv) constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

As subparagraph (ii) states, information is relevant to a claimant's claim if it "was … generated in the course of making the benefit determination," even if it was not "relied upon in making the benefit determination." Consequently, for purposes of subparagraph (ii) it is immaterial whether information was "not created, maintained, or relied upon **for** claim administration purposes." (emphasis added).

Furthermore, with respect to a claim that a recording is not required to be disclosed because it was generated for quality assurance purposes, as noted above, subparagraph (iii) in 29 CFR 2560.503-1(m)(8) states, information is relevant for purposes of the disclosure requirement if it "demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5).".[1] Thus, the fact that a recording was made for quality assurance purposes would support it being subject to a disclosure request for relevant "documents, records, and other information" under 29 CFR 2560.503-1(h)(2)(iii).

Further, nothing in the regulation requires that "relevant documents, records, or other information" consist only of paper or written materials. Rather, in the preamble to recent amendments to 29 CFR. 2560.503-1, the Department recognized that an audio recording can be part of a claimant's administrative record. In responding to commenters' concerns that proposed amendment language would prohibit claimants from submitting audio evidence in support of their claim, the Department clarified that no limit was intended on the types of evidence claimants can submit. In its response, the Department listed "video, audio, or other electronic media" as types of evidence plans cannot refuse to accept. 81 Fed. Reg. at 92325 (Dec. 19, 2016).

In summary, a recording or transcript of a conversation with a claimant would not be excluded from the requirements under 29 CFR 2560.503-1 to disclose relevant "documents, records, and other information" merely because the plan or claims administrator does not include the recording or transcript in its administrative record; does not treat the recording or transcript as part of the claim activity history through which the insurer develops, tracks and administers the claim; or because the recording or transcript was generated for quality assurance purposes.

---

[1] The claims procedure regulation at 29 CFR 2560.503-1(b)(5) requires that, to be deemed reasonable, claims procedures must, among other things, "contain administrative processes and safeguards designed to ensure and to verify that benefit clam determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." In this connection, the Department has stated that "a plan must provide a claimant upon request after receiving an adverse benefit determination . . . any information that the plan has generated or obtained in the process of ensuring and verifying that, in making the particular determination, the plan complied with its own administrative processes and safeguards that ensure and verify appropriately consistent decision making in accordance with the plan's terms." 65 Fed. Reg. at 70252 (Nov. 21, 2000).

We hope this information is of assistance to you.

Sincerely,

Eric Berger
Acting Chief, Division of Coverage, Reporting and Disclosure
Office of Regulations and Interpretations

REF #16096814

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 16, 2022

WILLIAM J REYNOLDS

Re: PolicyHolder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our review of your Long Term Disability claim and have determined that no benefits are payable.

To be eligible for benefits under the policy issued to your employer, an individual must satisfy all of the provisions of the policy. This includes but is not limited to the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any Gainful Occupation.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**REGULAR OCCUPATION** or **OWN OCCUPATION** means the occupation, trade or profession:

1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her primary source of earned income prior to Disability.

It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**Information reviewed and action taken**

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the definition of Total Disability, as defined above. Outlined below is the information reviewed which led to our determination.

In our review process, all information previously submitted as well as any new documentation is used to make a determination. The documentation contained in your claim file includes, but is not limited to the following:

- Office/Treatment Notes and Diagnostic Test Results from MyMed Select Tyler dated 11/11/2021-10/21/2022
- Attending Physician Statement completed by Clint Carter, MD dated 09/09/2022
- Behavioral Health Treating Provider Statement completed by Sarah S Jorden, MA, LPC dated 10/21/2022
- Letter from Sarah S Jorden, MA, LPC dated 11/08/2022
- Peer Review completed by Lenworth Ellis, MD, MPH Board Certified Internal Medicine & Occupational Medicine dated 11/24/2022
- Peer Review completed by Steven Choi, DO Board Certified in Psychiatry dated 12/12/2022

According to the information contained in your claim file, you stopped working on 05/06/2022 due to a diagnosis of other reactions to severe stress. You had a history of coronary artery disease, obstructive sleep apnea, anxiety, depression, benign prostatic hyperplasia, and hypothyroidism and sustained a myocardial infarction in October 2021, for which you underwent coronary artery bypass grafting. You were subsequently referred to cardiac rehab, but sustained a second myocardial infarction, for which you underwent angioplasty on 11/19/2021. On 01/05/2022, your echocardiogram demonstrated an ejection fraction of 65% with no evidence of regional wall motion abnormality. You had grade 2 diastolic dysfunction. You had a history of atrial fibrillation well managed without Metoprolol and Amiodarone. You had reported ongoing dyspnea on exertion and decreased mobility.

You were seen by Clinton Carter, MD via Telehealth on 11/11/2021 with complaints of depression, cough, and cardiac rehabilitation. You reported fast mood changes, getting angry easily, feeling of failure, lack of motivation, frustrated internal monologue with slow difficult recovery, obstructive sleep apnea, and using continuous positive airway pressure machine, chest pain following cardiac surgery post six weeks, and got severe cough with rehabilitation on using spirometry.

You were seen by Danyel Kush, NP on 04/20/2022 with complaints of cough and fatigue. You reported that you had no felt the same since coronary artery bypass grafting. It was noted that you were placed on Lexapro and Wellbutrin in 10/2021. You reported that Wellbutrin made you feel more flat and did not feel right with attempted wean off.

You were seen by Clinton Carter, MD on 04/28/2022 for an FMLA evaluation at which time you reported that you had been under increased scrutiny at work since returning and were making more mistakes. You reported increased volume of work, a fear that you were now mistake prone, feeling extra pressure, second guessing yourself, which slowed you down and were likely causing more mistakes. You reported anxiety attacks prior to work and that you felt you did not fully recover from your previous myocardial infarctions. You reported that you needed to stop working to do physical and mental rehabilitation.

You were seen by Clinton Carter, MD on 07/26/2022 at which time it was reported that you had attempted returning to work but concentration, speed, and memory speed of calculations were inhibited. It was reported that you felt anxious about returning to your position due to a discussing you had with Human Resources to discuss your options. You reported that you did not feel Lexapro was helping, so you discontinued taking it. You were still on Wellburtrin and felt you were gradually improving and needing Xanax 3 to 4 times per month. You were sleeping well on Temazepam. Regarding coronary artery disease, you were to continue physical rehabilitation.

You were seen by Clinton Carter, MD on 09/07/2022 and advised that you were not going to be able to return to work. You reported overwhelming anxiety at the thought of going on property and that you were in a financial bind, hoping to qualify for Long Term Disability. You reported that you were no longer able to do the job that requires complex calculations and decision making.

An Attending Physician Statement completed by Clint Carter, MD dated 09/09/2022 offered diagnoses of disability due to neurological disorder, other reactions to severe stress. Noted back-to-back acute myocardial infarctions with difficult rehab and depression, anxiety. It was noted that you were unable to return to his job of complex decision making and computations and anxiety became severe with returning to work/properties. It was noted that you had a reduced ability to work as of 01/01/2022 and advised to stop work 04/28/2022 providing restrictions of returning to complicated computations and decisions.

You were seen by Sarah S Jorden, MA, LPC dated 10/17/2022 noted you presented with anxiety and depressed moods. Mental Status Exam noted fair judgement and insight, intact memory, intact attention, normal thought content, normal speech, and anxious moods and it was recommended to continue therapy once every two weeks.

You were seen by Clinton Carter, MD on 10/23/2022 with complaints of depression. Patient Health Questionnaire-9 test score of seven indicated mild depression. Diagnosis of major depressive disorder was provided and that you were to continue counseling, Wellbutrin, and added Lexapro.

A Letter was received from Sarah S Jorden, MA, LPC dated 11/08/2022 declining to provide therapy notes.

A Peer Review was completed by Lenworth Ellis, MD, MPH on 11/24/2022 indicated that your physical primary impairing diagnoses were coronary artery disease and physical deconditioning. It was also noted that you had a history of anxiety and depression that was outside the scope of this internal medicine review. A teleconference occurred between the reviewer and Clinton Carter, MD on 11/23/2022 at which time Clinton Carter, MD indicated that you had been diagnosed with severe anxiety and had been under emotional stress. It was stated that you had been having panic attacks and had been treated with counseling and medications. It was reported that you could only exercise for short periods, became short of breath easily, and had a hard time functioning as you were severely deconditioned. Clinton Carter, MD expected you're your physical functioning will improve gradually with time.

The reviewer indicated that the documented medical evidence reasonably supported that you were able to lift, carry, push, or pull more than 10 lbs., climb stairs, stoop, squat, kneel, and crawl occasionally. You were unable to stand or walk for more than 2 hours in an 8 hour work

day. That you were unable to climb ropes, ladders, scaffolds. You were unrestricted in sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

A Peer Review completed by Steven Choi, DO on 12/12/2022 noted that your therapy began on 10/17/2022, you continued to have normal Mental Status Exam findings, and that overall, there was a lack of severe symptom and objective findings to s from a psychiatric perspective. He opined that taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects that your psychiatric condition adjustment disorder with mixed anxiety and depression was not impairing.

Teleconference were attempted with Clint Carter, MD and Sarah S Jorden, MA, LPC to offer the opportunity to add additional claim information. The reviewer reached Cindy for Clint Carter, MD on 12/01/2022 and was advised that everything had been provided within the medical records. The reviewer reached Sarah S Jorden, MA, LPC on 12/02/2022 and was advised there was no additional information to offer.

It is important to note that the policy under which you are covered refers to and is governed by the main duties of your regular "occupation" and not by the duties of your specific job. Nearly every job in the economy is performed slightly different from one employer to another. However, the Department of Labor groups jobs into occupations based on their similarities. The term "occupation" refers to a collective description of a number of individual jobs that are performed, with variations, in many establishments. Consequently, there will be similarities between the main duties of your occupation and those of your job. There may also be some differences.

In addition to the medical documentation submitted to our office, we obtained your written job description, your employer's description of your job duties, and the description of your occupation from the Department of Labor's Dictionary of Occupation Titles 161167010 In order to be eligible for Long Term Disability benefits, you must have been unable to perform each of the main duties of your occupation, as they would be performed in a typical setting for an employer.

The contract issued to John Soules Foods, Inc. - TX Location states, in part:

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

Main Duties include those job tasks:

1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

Based on information obtained from your employer and occupational information contained within the *Dictionary of Occupational Titles* (DOT), we have determined that your occupation is best defined as a MANAGEMENT ANALYST (profess. & kin.) alternate titles: in the national workforce. The material and substantial duties of a MANAGEMENT ANALYST (profess. & kin.) alternate titles: include but are not limited to the following:

- Analyzes business or operating procedures to devise most efficient methods of accomplishing work
- Plans study of work problems and procedures, such as organizational change, communications, information flow, integrated production methods, inventory control, or cost analysis
- Gathers and organizes information on problem or procedures including present operating procedures.
- Analyzes data gathered, develops information and considers available solutions or alternate methods of proceeding.
- Organizes and documents findings of studies and prepares recommendations for implementation of new systems, procedures or organizational changes.
- Confers with personnel concerned to assure smooth functioning of newly implemented systems or procedure.

We reviewed the medical documentation provided in conjunction with the written job description, your employer's description of your job duties, and the Department of Labor's Dictionary of Occupational Titles (DOT), and have determined that the medical evidence does not support Total Disability as defined by the policy.

**Summary**

In summary, the medical documentation contained in your claim file does not support Total Disability as defined by the policy. The supported restrictions and limitations as a result of your physical condition would not preclude you from performing the main or material duties of your

occupation. There are no supported restrictions or limitations as a result of your psychiatric condition. Therefore, you do not meet the definition of total disability as defined in this policy and your claim has been denied.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

REF #16096814

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

REF #16096814

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

REF #16098997

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 16, 2022

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Brandy Jackson:

This letter is to inform you that the Long Term Disability claim for William Reynolds has been denied.

A detailed letter has been sent to Mr. Reynolds advising of our decision and offering appeal rights. Due to protected health information, we are unable to provide you with a copy of the denial letter.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**December 12, 2022**

**Claimant Name: William Reynolds**

**Claim #: 1220082997**

**Primary Diagnosis: Adjustment d/o mixed anxiety and depression**

**DOD: 5/7/2022**

**DOR: 11/21/22**

**Job Title: Reports Analyst**

**ECN #: 225143-1**

**Specialty: Psychiatry**

**Steven Choi, DO**
***Board Certified in Psychiatry***

**CLAIMANT**: William Reynolds
**REVIEWER**: Steven Choi, DO
**ECN#:** 225143-1
**CLAIM#:** 1220082997
**DATE OF INJURY:** 05/07/2022
**DATE OF SERVICE:** 12/12/2022

## PEER REVIEW

### MEDICAL INFORMATION REVIEWED

- 09/29/2021 – Job Description
- 11/11/2021 – 10/23/2022 – Clinton Carter, MD, Office Notes
- 01/06/2022 – Christus Health, Echo Report
- 02/21/2022 – 04/20/2022 – CPL Laboratory Report, Lab Report
- 02/22/2022 – 03/15/2022 – Danyel Kush, FNP, Office Notes
- 02/23/2022 – Trinity Clinic Cardiology, EKG Report
- 03/15/2022 – Danyel Kush, FNP, EKG Report
- 04/20/2022 – Tyler Open MRI, X-ray of the Chest
- 05/05/2022 – Clinton Carter, MD, Attending Physician Statement
- 05/06/2022 – Clinton Carter, MD, Short Term Disability Claim Form Statement of Employee
- 06/21/2022 – Rebecca Parker, FNP-C, Office Note
- 08/08/2022 – Clint Carter, MD, Physician's Statement

### CLINICAL SYNOPSIS

The claimant is a 69-year-old male who was primarily medically treated up to 10/23/2022 for depression and anxiety. He underwent psychotherapy, counseling and medical treatment. The summary includes the claimant's diagnoses and treatment from 09/29/2021 to 10/23/2022. The diagnoses were adjustment disorder with mixed anxiety and depression. He underwent counseling, cognitive behavioral therapy and medical treatment.

### JOB DESCRIPTION:

The claimant worked as retail project analyst at John Soules Foods. The responsibilities included as follows - item management of inventory, ordering and forecast strategies, purchase order tracking and management, costing accuracy, appointment scheduling, presentations, design to develop metrics and reports to drive key business, making decisions, sales analytics and forecasting, sales reporting and development, promotion fulfillment, and other duties as assigned. The job required following skills and abilities such as excellent organizational, communication and interpersonal skills, excellent problem-solving skills, work well under high pressure situations, comfortable in fast-paced environment, adapting easily and quickly, communicate complicated situations clearly and concisely, strong attention to detail, ability to maintain accurate records and reports, self-starter and ability to manage oneself. The job involved long extended periods of time sitting, reviewing and calculating data on computer.

**DIAGNOSTIC TESTING**

01/06/2022 – Christus Health, Complete Echo was documented**.**

02/21/2022 – 04/20/2022 – CPL Laboratory Report, Laboratory Investigations were documented.

02/23/2022 – Trinity Clinic Cardiology, EKG was performed. The impressions were:
1. Sinus Rhythm slow
2. First degree AV block limited
3. Slight high – lateral repolarization disturbance, consider ischemia, LV overload, or specific change
4. Borderline ECG

03/15/2022 – Danyel Kush, FNP, EKG Report was documented.

04/20/2022 – Tyler Open MRI, X-ray of the Chest was performed. The impression was:
1. Scattered interstitial opacities due to oedema or infiltrate

**OFFICE VISITS**

11/11/2021 – Clinton Carter, MD, Telehealth Note. Complaints: The claimant presented with depression, cough, and for cardiac rehab. He also reported fast mood changes, getting angry easily, feeling of failure, lack of motivation, frustrated internal monologue with slow difficult recovery, obstructive sleep apnea, and using continuous positive airway pressure machine (CPAP), chest pain following cardiac surgery post six weeks, and got severe cough with rehabilitation on using spirometry. Exam: No exam documented. Dx: Major depressive disorder, obstructive sleep apnea, and chest pain. Plan: Advised to continue Wellbutrin 300, recommended to start Lexapro 10 daily, and Pantoprazole Sodium 40 mg delayed release, SI/HI warning given, continue CPAP for obstructive sleep apnea, recommended incentive spirometry and rehab as directed, and may take a fully year to recover from cardiac surgery.

02/22/2022 – Danyel Kush, FNP, Office Note. The claimant presented to have labs drawn and urine sample. He tolerated the procedure well.

03/15/2022 – Danyel Kush, FNP, Office Note. Complaints: The claimant presented for chronic disease follow-up and presented with atrial fibrillation which was stable with medications, he had some nocturia but was manageable, urinary stream was steady with Flomax daily, was able to empty the bladder fully, insomnia, more tired recently with time changes, also made dietary changes with eating low-carbs due to elevated HbA1c, remained compliant with continuous positive airway pressure machine (CPAP), use for obstructive sleep apnea, and had been taking medications for hypothyroidism. Exam: Well-appearing, no acute distress, lungs were clear to auscultation bilaterally with good air flow, regular rate and rhythm with no murmurs, gallops or rubs, no focal deficit, strength and sensation intact, alert, oriented to time, place and person, and appropriate psyche. Dx: Preventive health care, atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1c, obstructive sleep apnea, low vitamin D levels, coronary artery disease, and hypothyroidism. Plan: Advised to continue with CPAP machine, encouraged to take over-the-counter Vitamin D supplement, increased levothyroxine to 75 mcg, and repeat labs thyroid test.

04/20/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported increased feeling of fatigue since last seven months, also reported cough, anhedonia, decreased appetite, increased sleep, feeling of sadness, he tried weaning off Wellbutrin in past but did not feel right, was sleeping well with CPAP, his increased thyroid level caused fatigue, sore throat, dry cough, headache, no fever or chills, shortness of breath slightly worse since three days prior, had occasional wheeze, he declined cardiac rehab in the past

post- CABG, was not feeling motivated and felt lazy, tried to walk 30 minutes per day but reported to stop frequently causing increased frustration. He had past medical history of atrial fibrillation, benign prostatic hyperplasia, insomnia, elevated HbA1c, obstructive sleep apnea, low vitamin D levels, coronary artery disease, insulin resistance, wearing hearing aids in both the ears and hypothyroidism. The past surgical history included left biceps tendon repair, cataract repair and coronary artery bypass graft. “The Report was Incomplete.”

04/28/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported being through a lot of stress due to heart attack and bypass surgery in September/October. He also reported inhibited ability/motivation to do cardiac rehab which made him feel more depressed, feared about work reputation of being more prone to mistakes, felt extra pressure and going to die, did not feel that he was recovered from two heart attacks, subsequent anxiety/depression, and difficulty fulfilling his work obligations. Exam: Well-appearing, no acute distress, alert and oriented to time, place and person. Dx: Major depressive disorder. Plan: Recommended some time off work for physical rehab twice a day as well as time to focus on mental health with counseling, medications and exercise.

05/05/2022 – Clinton Carter, MD, Attending Physician Statement. The claimant reduced work ability on 01/01/2022. The claimant stopped working since 04/28/2022. The claimant’s return-to-work date was between 07/18/2022 to 08/1/2022. His prognosis was good.

05/06/2022 – Clinton Carter, MD, Short Term Disability Claim Form Statement of Employee. The claimant's last working date was 04/22/2022.

06/21/2022 – Rebecca Parker, FNP-C, Office Note. Complaints: The claimant reported low back pain worsened with certain movements especially on twisting or stepping down wrong and on trying to turn to side on bed with no known injury, was not able to take non-steroidal anti-inflammatory drugs due to blood thinners, took muscle relaxers in the past and was doing well, and denied radiation to buttock or legs, numbness or bladder or bowel incontinence. He had past medical history of left hip pain with joint and back pain, lumbar strain on the same side 14 years back which improved on one week bedrest. Exam: He had full range of motion in the back, mild tenderness to lumbar paraspinals, tenderness over the S1 joint, and straight leg raise was positive over the left. Dx: Lumbago. Plan: Recommended warm moist heat and gentle stretches, Tylenol for arthritis, Voltaren gel if needed, Flexeril 10 mg thrice a day, was advised to call if symptoms persist or worsen, and consider chiropractic therapy if not improving.

07/26/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant presented for cardiac recovery follow-up, he had slowly progressed with his physical endurance, short of breath, and ability to do ADLs, gradually improving with depression and anxiety, felt anxious about returning to his work, was doing well with hypothyroid as the dosage was increased to 75 mg, reported minimal libido and was sleeping fairly well for most part. Stopped taking Lexapro, as he felt it did not help. Exam: Unchanged. Dx: Coronary artery disease, atrial fibrillation, hypothyroid, major depressive disorder, and insomnia. Plan: Recommended to continue physical and mental rehab, continue medications Levo 75, Wellbutrin, Temazepam, and short-term disability form was filled out.

08/08/2022 – Clint Carter, MD, Physician’s Statement. The claimant reduced the ability to work on 01/01/2022 and was advised to stop working on 04/28/2022. The claimant was not able to return to work. The claimant had restrictions on physical exertion, complex decision-making skills and high stress. His prognosis was poor.

09/07/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported disability with not being able to return to work, overwhelmed anxiety at the thought of it and at the thought of doing it properly, physical guttural reaction, gradually increased his exercise capacity at home, felt he needed to work longer

as he had planned in order to afford retirement, financial bind, and he hoped to qualify for long term disability to make up for lost wages. Exam: He was well-appearing, no acute distress, alert and oriented to time, place and person. Dx: Disability due to neurological disorder. Plan: Long term disability paperwork.

09/09/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant presented for long-term disability discussion, had stress reaction, was not able to return to work, had anxiety on thinking of trying to resume work, and planning on working for several more years. He reported gradually recovering from coronary bypass graft surgery. Exam: Unchanged. Dx: Reaction to severe stress and history of coronary artery bypass graft surgery. Plan: Continue to address anxiety, will fill out long-term disability paperwork as unable to return to work and follow-up with cardiology.

10/17/2022 – Sarah Jordan, LPC, Pyshcotherapy Note. Complaints: The claimant presented with anxiety and depressed moods. MSE: fair judgement and insight, intact memory, intact attention, normal thought content, normal speech, and anxious moods. Recommended to continue therapy once every two weeks.

10/21/2022 – Sarah Jordan, LPC, Psychotherapy Note. Complaints: MSE: normal findings.

10/23/2022 – Clinton Carter, MD, Office Note. Complaints: The claimant reported depression and being in funk, was taking Wellbutrin and was on Lexapro for short time with unknown side-effects. Exam: PHQ-9 score of seven indicating mild depression. Dx: Major depressive disorder. Rx: Advised to continue counseling, Wellbutrin 300, added Lexapro 10 daily, warnings were given, and to continue follow-up.

**Calls to Treating Providers:**
Clint Carter, MD / Danyel Kush, FNP, Phone: 903-630-7130

12/1/2022, at 1:28 PM - Attempted to contact Dr. Carter at 903-630-7130 to offer the opportunity to add additional claim information on behalf of Lincoln and reached Cindy. She stated that everything has been provided within the medical records.

Sarah S. Jorden, MA, LPC, Phone: 972-591-7012

12/1/2022, at 1:32 PM - Attempted to contact Sarah Jorden at 972-591-7012 to offer the opportunity to add additional claim information on behalf of Lincoln and reached the voicemail. A detailed reason for the call and contact information was provided.
12/2/2022, at 9:14 AM - Attempted to contact Sarah Jorden at 972-591-7012 to offer the opportunity to add additional claim information on behalf of Lincoln and reached staff. No additional information to offer.

**<u>Questions to be addressed:</u>**

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s).**

   The following psychiatric condition is not considered to be impairing:

   Adjustment disorder with mixed anxiety and depression (F43.23)

2. **If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

There are no co-morbid diagnoses significant to impairment.

3. **Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 5/2/22 to present and beyond, and comment on the expected duration.**

The claimant is a 69-year-old male with primary diagnosis of adjustment disorder with mixed anxiety and depression.

On 11/11/2021, he presented for an office visit with complaints of depression, mood changes, anger, and lack of motivation. His provider, Dr. Clinton Carter, MD, recommended he continue Wellbutrin and start Lexapro. He reported insomnia on 3/15/22. He had normal exam findings. On 4/20/22, he had a follow up with Dr. Carter and noted anhedonia, appetite changes, sleeping disorder, and feeling sad. He reported he tried to stop taking Wellbutrin. On 4/28/22, he reported increased depression and lack of motivation. He felt like he was going to die and had anxiety and difficulty performing work tasks. Dr. Carter recommended mental health counseling and remaining out of work through July/August 2022. On 7/26/22, he had an office visit with reports of depression and anxiety. He reported he stopped Lexapro because he did not think it helped his symptoms. Dr. Carter recommended he continue taking Wellbutrin and Temazepam. On 8/8/22, Dr. Carter recommended he remain out of work due to high stress and difficulty making decisions. On 9/7/22, he had a follow up with Dr. Carter and noted feeling overwhelmed, anxious, and worried in regard to his finances and disability case. He had normal exam findings. On 9/9/22, he had an office visit with Dr. Carter and noted complaints of anxiety. He had normal exam findings. On 10/17/22, he started psychotherapy with Sarah Jordan, LPC, and had a normal mental status exam. On 10/21/22, had a normal mental status exam during psychotherapy. On 10/23/22, he returned to see Dr. Carter and noted he had started therapy. He continued to report depression and had a PHQ-9 score of 7. Dr. Carter recommended he continue taking Wellbutrin and start back Lexapro and to continue therapy appointments.

The claimant first presented on 11/11/21 with complaints of anxiety and depression. He had cardiac surgery and noted his recovery had exacerbated his mental health symptoms. He noted mood changes, sleeping difficulty, and lack of motivation. He was managed with Lexapro and Wellbutrin by Dr. Clinton Carter. He had normal MSE findings on 3/15/22, 9/7/22, 10/17/22, and 10/21/22. He began psychotherapy on 10/17/22 and there were no significant psychiatric symptoms noted. He was recommended biweekly therapy sessions. Overall, he appears to be a lacking severe psychiatric symptoms which would indicate the need for impairment or any necessary restrictions and limitations. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, psychiatric impairment is not supported from 5/2/22 to present and beyond.

4. **Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

On 5/5/22, Dr. Carter recommended the claimant was unable to return to work. On 8/8/22, Dr. Carter opined the claimant had a poor prognosis and was unable to work due to difficulty making decisions and high stress. This reviewer does not agree with these recommendations as the medical records note normal MSE findings on multiple office visits. He began therapy on 10/17/22 and continued to have normal MSE findings. Overall, there is a lack of severe

symptoms and objective findings to support these recommendations from a psychiatric perspective.

5. **Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

   Overall, the medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity for the reported conditions. The claimant was managed for adjustment disorder with mixed anxiety and depression with therapy and medications.

6. **Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts- child or elder care issues, or legal issues) that may adversely impact work?**

   There are not any non-medical circumstances identified in the medical records that may adversely impact work.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,



**Steven Choi, DO**
Board Certified in Psychiatry
State Medical Licensure: MO, VA, WV, GA

ECN
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
Exam Coordinators Network A division of Genex Services, LLC
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: William Reynolds
Claim Number: 1220082997
Case Number: 225143-1

"I, Steven Choi, DO, am a physician duly licensed to practice medicine in the State of MO. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

[signature] 12/12/2022

Signature of Physician Date

ECN
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
Exam Coordinators Network A division of Genex Services, LLC
E-mail: info@ecnime.com • Web: www.ecnime.com

Medical/Professional License # 2015030442

Jennifer Belew, MS, CRC
Vocational Rehabilitation Consultant
Group Protection

# OCCUPATIONAL ANALYSIS

| | |
|---|---|
| **Claimant Name:** | William Reynolds |
| **Claim Number:** | 1220082997 |
| **Claims Specialist:** | Paul K. Webber |
| **Employer:** | John Soules Foods, Inc. |
| **Date of Report:** | 12/09/2022 |

An Occupational Analysis was requested to compare the following:

**JOB:**

| | |
|---|---|
| Resources: | Job Description in AWD, dated 11/10/2022 |
| Title: | Retail Project Analyst |
| Duties: | Item Management – Inventory, ordering and forecast strategies<br>Purchase Order tracking, management<br>Costing accuracy<br>Appt Scheduling<br>Presentations<br>Design and develop metrics and reports to drive key business decisions<br>Sales Analytics and Forecasting<br>Sales Reporting and Development<br>Promotion fulfillment<br>And other duties as assigned |
| Level: | Not Specified. |
| Demands: | Long extended periods of time sitting, reviewing, and calculating data on a computer. |

**OCCUPATION:**

| | |
|---|---|
| Resources: | Dictionary of Occupational Titles (DOT): 161.167-010<br>Occupational Information Network (O*NET): 13.1111.00<br>Economic Research Institute (ERI): 161.167-010 |
| Title: | Management Analyst |
| Duties: | Analyzes business or operating procedures to devise most efficient methods of accomplishing work: Plans study of work problems and procedures, such as organizational change, communications, information flow, integrated production methods, inventory control, or cost analysis. Gathers and organizes information on problem or procedures including present operating procedures. Analyzes data gathered, develops information and considers available solutions or alternate methods of proceeding. Organizes and documents findings of studies and prepares recommendations for implementation of new systems, procedures or organizational changes. Confers with personnel concerned to assure smooth functioning of newly implemented systems or procedure. May install new systems and train personnel in application. May conduct operational effectiveness reviews |

| | |
|---|---|
| | to ensure functional or project systems are applied and functioning as designed. May develop or update functional or operational manuals outlining established methods of performing work in accordance with organizational policy.<br>Alternate Titles: Systems Analyst |
| Level: | **S-Sedentary Work** - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally, and all other sedentary criteria are met. |
| Demands: | • Frequent sitting, talking, hearing,<br>• Occasional walking, standing, reaching (at desk level), handling/gripping/grasping, fingering/typing/keyboarding, near acuity, accommodation.<br>• No reaching upward (including overhead reaching), reaching downward (waist to floor), climbing, balancing, stooping/bending, kneeling, crouching/squatting, crawling, feeling, tasting/smelling, far acuity, depth perception, color vision, field of vision. |

**CLAIMS SPECIALIST PHYSICAL REQUIREMENT REQUESTS (IF ANY):**
Employee RLs per Clinical Review Memo in AWD, dated 11/28/2022 and completed by Dr. Lenworth Ellis, MD, MPH (date of report 11/24/2022):

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8-hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

**LOCAL ECONOMY:**
N/A

**SUMMARY:**
The occupation (Management Analyst) is performed at the sedentary physical demand level.
Resources utilized include:
Dictionary of Occupational Titles (DOT): 161.167-010
Occupational Information Network (O*NET): 13.1111.00
Economic Research Institute (ERI): 161.167-010

I have not met with the Insured for the purpose of this review. All opinions are based on a review of resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

**Electronically Signed**

Jennifer Belew, MS, CRC
Vocational Rehabilitation Consultant

Lincoln Financial Group®

Jennifer Belew, MS, CRC
Vocational Rehabilitation Consultant
Group Protection

# OCCUPATIONAL ANALYSIS

| | |
|---|---|
| **Claimant Name:** | William Reynolds |
| **Claim Number:** | 1220082997 |
| **Claims Specialist:** | Paul K. Webber |
| **Employer:** | John Soules Foods, Inc. |
| **Date of Report:** | 12/09/2022 |

An Occupational Analysis was requested to compare the following:

**JOB:**

| | |
|---|---|
| Resources: | Job Description in AWD, dated 11/10/2022 |
| Title: | Retail Project Analyst |
| Duties: | Item Management – Inventory, ordering and forecast strategies<br>Purchase Order tracking, management<br>Costing accuracy<br>Appt Scheduling<br>Presentations<br>Design and develop metrics and reports to drive key business decisions<br>Sales Analytics and Forecasting<br>Sales Reporting and Development<br>Promotion fulfillment<br>And other duties as assigned |
| Level: | Not Specified. |
| Demands: | Long extended periods of time sitting, reviewing, and calculating data on a computer. |

**OCCUPATION:**

| | |
|---|---|
| Resources: | Dictionary of Occupational Titles (DOT): 161.167-010<br>Occupational Information Network (O*NET): 13.1111.00<br>Economic Research Institute (ERI): 161.167-010 |
| Title: | Management Analyst |
| Duties: | Analyzes business or operating procedures to devise most efficient methods of accomplishing work: Plans study of work problems and procedures, such as organizational change, communications, information flow, integrated production methods, inventory control, or cost analysis. Gathers and organizes information on problem or procedures including present operating procedures. Analyzes data gathered, develops information and considers available solutions or alternate methods of proceeding. Organizes and documents findings of studies and prepares recommendations for implementation of new systems, procedures or organizational changes. Confers with personnel concerned to assure smooth functioning of newly implemented systems or procedure. May install new systems and train personnel in application. May conduct operational effectiveness reviews |

| | |
|---|---|
| | to ensure functional or project systems are applied and functioning as designed. May develop or update functional or operational manuals outlining established methods of performing work in accordance with organizational policy.<br>Alternate Titles: Systems Analyst |
| Level: | **S-Sedentary Work** - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally, and all other sedentary criteria are met. |
| Demands: | • Frequent sitting, talking, hearing,<br>• Occasional walking, standing, reaching (at desk level), handling/gripping/grasping, fingering/typing/keyboarding, near acuity, accommodation.<br>• No reaching upward (including overhead reaching), reaching downward (waist to floor), climbing, balancing, stooping/bending, kneeling, crouching/squatting, crawling, feeling, tasting/smelling, far acuity, depth perception, color vision, field of vision. |

**CLAIMS SPECIALIST PHYSICAL REQUIREMENT REQUESTS (IF ANY):**
Employee RLs per Clinical Review Memo in AWD, dated 11/28/2022 and completed by Dr. Lenworth Ellis, MD, MPH (date of report 11/24/2022):

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8-hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

**LOCAL ECONOMY:**
N/A

**SUMMARY:**
The occupation (Management Analyst) is performed at the sedentary physical demand level.
Resources utilized include:
Dictionary of Occupational Titles (DOT): 161.167-010
Occupational Information Network (O*NET): 13.1111.00
Economic Research Institute (ERI): 161.167-010

I have not met with the Insured for the purpose of this review. All opinions are based on a review of resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

**Electronically Signed**

Jennifer Belew, MS, CRC
Vocational Rehabilitation Consultant

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| John Soules Foods, Inc | William Reynolds | 1220082997 |

| | | | |
|---|---|---|---|
| **Report Date:** | 11/24/2022 | | |
| **Referred By:** | Joann Morfeld | **Claimant DOB:** | |
| **Referral Date:** | 11/16/2022 | **Job Title:** | Reports Analyst |
| **Due Date:** | 12/01/2022 | **Medical/ Surgical Condition:** | Neurological disorder, reactions to severe stress |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 05/06/2022 |
| | | **DOD:** | 05/07/2022 |
| **Physical Demands:** | | **BBD:** | 08/05/2022 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Referral Questions**

**Question 1: Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**
Response 1:
1. Coronary artery disease (I25)
2. Physical deconditioning (Z72.3)

The records indicate that the Claimant has a history of anxiety and depression. An evaluation of these diagnoses is outside the scope of this Internal Medicine review.

**Question 2: If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**
Response 2:
Class 3 obesity (E66.01)

**Question 3: Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 8/5/22 to present and beyond, and comment on the expected duration.**
Response 3:
The medical evidence reasonably supports the following restrictions and limitations:
<u>From 8/5/22 to 4/30/23:</u>
1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.

3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

From 5/1/23 onwards:
Ongoing medical records, including updated cardiology records, stress testing etc., will be required in order to determine the need for restrictions and limitations.

**Question 4: Are the restrictions and limitations placed upon the claimant's work activities by Clint Carter, MD reasonable and consistent with the documented medical evidence? If so, describe their impact to the claimant's functional status, note the expected duration of the impairment and any accommodations that would be required.**
Response 4:
The restrictions and limitations recommended by Dr. Carter based on our discussion are reasonably supported.

**Question 5: Please describe the claimant's maximal functional abilities which he could safely and consistently perform from 08/05/22 and beyond? Please describe them in detail to include type activity, force capacity, and duration. a. Please include your opinion regarding the claimant's ability to work in regards to hours/day and days/week in a reliable and consistent manor. b. Please use standardized terms for activity duration such as Occasional (up to 1/3 of time); Frequent (1/3 - 2/3 of time); and Constant (2/3 of time or more). If other terms are used, please provide concrete and specific definitions for each one. c. Avoid reference to occupational levels from the Dictionary of Occupational Titles (Sedentary, Light, Medium, Heavy). d. In particular, please note his ability to lift/carry, sit, stand, walk, climb, bend, kneel, drive, finger, handle, operate foot controls, reach above shoulder.**
Response 5:
Please see response 3.

**Question 6: If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Clint Carter. Tel: 1 (903) 630 7130. Fax: 903-705-0992**

Response 6:
Date of call: 11/23/2022, Time: 3:35 pm
I called Dr. Carter's office. He indicated that the Claimant has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks, and has been treated with counseling and medications.

He has had two episodes of myocardial infarction, and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. He expects that his physical functioning will improve gradually with time.

Date letter sent to AP: 11/24/2022.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**
The Claimant has sustained two heart attacks and has had significant deconditioning as a result. His echocardiogram on 1/5/22, indicated a normal ejection fraction with evidence of diastolic dysfunction. However, the Claimant has not been diagnosed with congestive heart failure. Most of his symptomatology appears to arise from physical deconditioning. It is notable, however, that his records indicate that he walked 2-4 miles per day, indicating that he has significant physical capacity. His PCP, Dr. Carter, has indicated that his impairment is largely psychological in nature, with a secondary role of his physical deconditioning. An evaluation of the Claimant's alleged psychological impairments is outside the scope of this Internal Medicine review. Restrictions and limitations as outlined are reasonably supported. It is unclear whether the Claimant will have sustained improvement of his physical capacity in the foreseeable future.

A chest x-ray performed on 4/20/22 indicated evidence of interstitial markings suggestive of edema or an infiltrate. The clinical significance of this finding is unclear. If additional pulmonary testing has been performed, including pulmonary function studies, 6 minute walk test or a CT scan of the chest, I would be happy to review these findings.

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**
The Claimant is a 69 year old reports analyst with a history of coronary artery disease, obstructive sleep apnea, anxiety, depression, benign prostatic hyperplasia, and hypothyroidism who sustained a myocardial infarction in October 2021, for which he underwent coronary artery bypass grafting. He was subsequently referred to cardiac rehab, but sustained a second myocardial infarction, for which he underwent angioplasty on 11/19/21. On 1/5/22, his echocardiogram demonstrated an ejection fraction of 65% with no evidence of regional wall motion abnormality. He had grade 2 diastolic dysfunction. He has a history of atrial fibrillation well managed without Metoprolol and Amiodarone. He has reported ongoing dyspnea on exertion and decreased mobility.

On 4/20/22, he reported cough and fatigue. His chest x-ray revealed scattered interstitial infiltrates secondary to edema or infiltrates.

On 6/21/22, he was seen by PA Rebecca Parker, and reported low back pain that started the prior week, worse the day before with certain movements especially if he twists or steps down. He reported that he walks for 2 to 4 miles per day. Examination revealed full range of motion of the lumbar spine, mild tenderness to the lumbar paraspinals, and over left sacro-iliac joint. Moist heat, stretching, Tylenol, Voltaren and Flexeril were recommended.

He has been diagnosed with depression and anxiety and has reported reluctance with returning to work because of decreased concentration and concerns that a return to work may exacerbate his psychological symptoms. He has been treated with Alprazolam, Temazepam and Wellbutrin. He is being seen by a psychotherapist.
---------------

11/11/21 Clinton Carter, MD. Virtual visit.
MDD. Noted by his wife. Mood changes fast. Gets angry. Feels like a failure. Not very motivated. Needs his wife to get up and go. Internal monologue is fairly frustrated with the slow and difficult recovery.
OSA. Using CPAP.
Chest pain. Open heart surgery 6 wks ago. Starting cardiac rehab this week. Getting a severe cough with rehab, stress, and someone mentioned it may be related to a nerve going to the diaphragm that can get damaged during surgery. Does not like using incentive spirometry. Causes coughing.
Ass: MDD. Continue Wellbutrin. Start Lexapro 10 mg daily. See about getting counseling. Could take a year to fully recover from cardiac surgery.
Continue CPAP.
Chest pain. 11/11/21 Dr. Turner states may return to regular activity with no restrictions. Recommend incentive spirometry and rehab. Could take a year from open heart surgery
Pantoprazole

1/5/22 Echocardiogram
Normal LV size. EF 65%. No regional WMA. Trace MR.
Grade 2 diastolic dysfunction

3/15/22 Danyel Kush, FNP
A fib has been stable off Amiodarone and Metoprolol. More tired since he has been on Metoprolol.
BPH. Still has some nocturia. Urinary stream stable with Flomax.
Able to empty bladder fully
CAD. Had a double bypass 10/2/21. Completed rehab then had a stent placed 11/19/21.
Told by cardiology that he needed to walk 30 mins per day
Meds: alprazolam. Clopidogrel. Flomax, levothyroxine, Lipitor. Metoprolol. Sildenafil. Temazepam. Wellbutrin.

4/20/22 Danyel Kush, NP
c/c cough, fatigue
increased fatigue x 7 mths. Since CABG has not felt the same. Placed on Lexapro in Oct. and Wellbutrin make his feel more flat. Did not feel right with attempted wean off Wellbutrin
sleeping well with CPAP.
Wife noticed he is not himself.
Sleeps well with CPAP.
URI sx: had sore throat dry cough headaches x 3 d.
Shortness of breath slightly worse over the last 3 days
Seen feb 2022. Cardiac w/u nl.

4/20/22 chest xray
Scattered interstitial opacities due to edema or infiltrate

4/28/22 Clinton Carter, MD
c/c FMLA eval
heart attack and bypass surgery sept/oct, doing cardiac rehab and had a small heart attack requiring a stent. Greatly inhibited motivation to do cardiac rehab.
Under increased scrutiny at work since returning the second time as he is making more mistakes. Increased volume so making more mistakes. Fears he is now mistake prone. Feeling extra pressure: second guessing himself, which slows him down and likely causes more mistakes. has anxiety attacks prior to work. Does not feel he fully recovered from the 2 heart attacks.
Needs to stop and do the physical and mental rehab.
Ass: MDD. Exacerbated to the open heart surgery and second heart attack
Incomplete rehab
Amplified by increased pressure at work.
Recommend time off work for physical rehab up to twice a day
FMLA ppw filled out.

5/5/22 STD Physician Statement
CABG. Acute stress reaction
Acute MI 10/2021. Returned to work w/o mental and physical recovery
CABG
Rehab interrupted by 2nd MI. acute stress and fatigue making him unable to work.
Flat affect, tearful. DOE entering the office.
Able to rtw full time on 5/5/22.

6/21/22 Rebecca Parker, PA-C
LBP started last week, worse yesterday, worse with certain movements especially if he twists or steps down. No known injury
Lumbar strain 14 yrs ago
Not able to take NSAIDs.
Denies radiation, numbness, weakness. denies bladder and bowel incontinence.
Alcohol 8-10 glasses of wine. No drug use. Former smoker.
Exercise 2-4 miles per day.
Exam: Back: FROM. Mild tenderness lumbar paraspinals. Mostly over left SI jt.
Ass: lumbago. Warm moist heat, gentle stretches
PL: Tylenol. Voltaren, prn. Flexeril

7/26/22 Clinton Carter, MD
CAD. Repeat STEMI 12/2/21, stented.
Attempted to RTW. Concentration, speed and memory speed of calculations was inhibited.
Has been on STD for further physical and mental rehab for 12 weeks.
STD stopped payment at 10 weeks, needs an extension
Slowly progressing in physical endurance, shortness of breath, and ability to do ADLs.
Gradually improving depression and anxiety.
Feels anxious about returning to his position due to discuss with HR to discuss options.
Did not feel Lexapro was helping so stopped it. Still on Wellbutrin. Feels he is gradually improving.
Needing Xanax 3-4x/mth

Sleeping well with Temazepam.
Ass: CAD. Continue mental and physical rehab. Follow up with cardiology last week was good.
STD form filled out. A fib. Hypothyroid. MDD. Continue Wellbutrin

7/26/22 Clint Carter, MD
Acute MI 10/2021, s/p CABG, then blocked graft with 2nd MI and stent, interrupted cardiac rehab, depression, fatigue, decreased concentration
Limitations: concentration, short term memory
Restrictions: ability to perform high level analysis.

8/8/22 Clint Carter, MD
CABG. Acute stress reaction
Mental and physical deconditioning.
Stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible to work.
Still not able to return to position due to complex mental requirements and high stress environment.
Flat affect, tearful, anxiety. DOE and fatigue with walking in the office.
Advised to stop work 4/28/22.
Prognosis poor. Has not responded well to cardiac rehab. Persistent anxiety with trying complex computing and or returning to high-stress environment.

9/7/22 Clinton Carter, MD
c/c disability discussion
is not going to be able to rtw. Overwhelming anxiety at the thought of going on property. Gradually increasing exercise capacity. In a financial bind. Hoping to qualify for LTD.
no longer able to do the job that requires complex calculations and decision making. Has anxiety and a physical reaction when he thinks of going back to work. He needs disability to stop working at this time. LTD ppw will be filled.

9/9/22 Clinton Carter, MD
c/c LTD discussion
gradually recovering. Wife does not let him work in the yard on his own
follows with cardiology
stress reaction: cannot rtw. Gets anxiety thinking of going back and resuming his job. Gets anxious meeting them at the gate to pick up some of his things.
Ass: reaction to severe stress.
Unable to rtw. Continue to address anxiety. Will fill out LTD ppw.

10/17/22 MSE Sara Jorden
Ass: adjustment disorder with mixed anxiety and depressed mood.

**Electronically Signed:** *Lenworth Ellis*
**Lenworth Ellis, MD, MPH.**
**Board Certified, Internal Medicine & Occupational Medicine.**
**Consulting Physician.**

Secure fax provided by:
Lincoln Financial Group
Disability and Life Claims
P.O. Box 2578
Omaha, NE 68172-9688
Secure Fax 866-841-1415

Date: 11/24/2022

Name: Clinton Carter, MD
Fax: 903-705-0992

Re: Disability Benefits
Claimant Name: William Reynolds
Claimant DOB:
Claim Number: 1220082997

Dear Dr. Carter,

Thank you for taking my call on 11/23/22. As the physician who was asked by Lincoln Financial Group to review the medical records your patient submitted to request disability benefits, the chance to speak with you was appreciated. Please review this summary of our conversation for accuracy.

You indicated that Mr. Reynolds has been diagnosed with severe anxiety and has been under emotional stress. He has been having panic attacks and has been treated with counseling and medications. He has had two heart attacks and can only exercise for short periods. He becomes short of breath easily and has a hard time functioning, as he is severely deconditioned. You expect that his physical functioning will improve gradually with time.

As a result, current medical restrictions and limitations are:
From 8/5/22 to 4/30/23:

1. Unable to lift, carry, push or pull more than 10 pounds occasionally.
2. No restrictions on sitting, handling, fingering, operating foot controls, driving and reaching above the shoulder.
3. Unable to stand or walk for more than 2 hours in an 8 hour work day.
4. Unable to climb ropes, ladders or scaffolds.
5. Unable to climb stairs, stoop, squat, kneel or crawl, more than occasionally.

During our discussion you indicated that your patient's medical condition would not preclude participation in their activities which are within the above noted restrictions and limitations, including activities related to employment.

Your patient's disability case manager is requesting that within 5 days you make any needed corrections or comments in the margins of this letter, or if needed on a separate correspondence that should be attached to this letter. Please sign in the space provided and return this letter and any attachments via toll free and secure fax number to (866)841-1415.

It is my understanding that Lincoln Financial Group is willing to reimburse you for any reasonable costs incurred in responding to requests for information.

Thank you for your assistance

-Electronically Signed-

Lenworth Ellis, M.D., M.P.H.
Board Certified, Internal Medicine &
Occupational Medicine

__ No changes/comments, OR
__ With changes/comments as noted above

_________________________ _______
Clinton Carter, MD Date

Secure Fax provided by Lincoln Financial Group to facilitate information privacy

Date: Mon Nov 21 11:10:59 CST 2022
From: Paul Webber <Paul.Webber@lfg.com>
To:
Message-ID: <1780442109.13.1669050659728.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-confirmation from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Paul Webber**
**Specialist, LTD Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 7695
Fax: 402-951-0498
Email: Paul.Webber@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

November 21, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Mr. Reynolds:

On 09/26/2022, we received your claim for Long Term Disability benefits and advised that we were in the process of reviewing your claim. In order to be eligible for benefits under the plan, you must satisfy all of the provisions of the plan and be Disabled throughout and beyond the Elimination Period.

On 10/21/2022, we advised you of the need for a 30 day extension. We are approaching our second deadline for making a decision on your claim. Our decision is currently pending a full clinical review of the documented medical evidence received.

For these reasons, we require a 30 day extension of time to make a determination on your claim. You can expect to receive a decision from us within 30 days.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 11/10/2022 at 02:39 PM CST

# Clinical fax

ATTN: Lincoln Financial Group

From: Clinton Carter, M.D.

Subject: ATTN: Paul Webber

---

Note: Clinton Carter, M.D. has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**
1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**2LK-X3H-W1H**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

**Client:** Bill Reynolds
**Provider:** Sarah Jorden
**Provider License:** LPC #81868

## Mental Status Exam
## Date and Time: 10/21/22 10:27 AM

**Appearance:** Normal

**Dress:** Appropriate

**Motor Activity:** Normal

**Insight:** Fair

**Judgment:** Fair

**Affect:** Appropriate

**Mood:** Anxious

**Orientation:** X3: Oriented to person, place and time

**Memory:** Intact

**Attention:** Good

**Thought Content:** Normal

**Thought Process:** Normal

**Perception:** Normal

**Interview behavior:** Appropriate

**Speech:** Normal

Signed electronically by Clinton Carter, M.D. on 11/10/2022 2:30 pm in ElationHealth

Clarity Counseling of Tyler
1101 East Southeast Loop 323
Tyler, Texas 75701

November 8, 2022

Paul K Webber
LTD Technical Specialist

Dear Mr. Paul K Webber,

I am writing this letter to provide information that will provide the necessary facts that you are requesting without breaking the client confidentiality ethical practice of my profession requires.

My client, Bill Reynolds, was seen by telehealth on November 17, 2021, and December 1, 2021. He updated me periodically by email to report on his stress, anxiety and depression. Dnring this time, he was followed by his PCP. In 2022 he has attended in person confidential therapy sessions on October 13th, 25th and November 8th.

We have discussed his difficulty with anxiety and depression while he has recovered from his cardiac incidents. On April 22, 2022, Mr. Reynolds woke up with the intrusive thought that he would die this very day. He was able to go to work but with great difficulty. After that point he did not attend in person work. He has been diagnosed with Reactivity to severe stress and Adjustment disorder with mixed anxiety and depressed mood.

One of the premises Professional Counseling is built upon, is confidentiality and trust in the therapist. I have commnnicated both mental status exam and diagnoses of Mr. Reynolds. My therapy notes are confidential. I appreciate your support and understanding of the therapeutic process that I am building with my client.

Thank you for your care and concern,

Sarah S Jorden

Sarah Jorden, LPC
Licensed Professional Counselor

Signed electronically by Clinton Carter, M.D. on 11/10/2022 2:30 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

November 10, 2022

Lincoln Financial Group
8801 Indian Hills Dr, Omaha, NE 68114
Office: 800-423-2765
Fax: 877-843-3950

**Re: William Reynolds (DOB: )**

**Subject: ATTN: Paul Webber**

(No Message Body)

Sent by Melissa Roddy, RN on 11/10/2022 2:38 pm in ElationHealth .

**Note: Interactive patient chart available online**

To accompany this letter, Melissa Roddy, RN has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **2LK-X3H-W1H**

**Interactive Patient Chart Contents:**

- Patient Demographics *Address, Insurance Info, etc.*
- 11/10/2022 Medical Form Report *mental status exam*
- 11/10/2022 Miscellaneous Report *letter from Sarah Jorden*

**Replies:**
None

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 11/10/2022, in* ElationHealth

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| 514 ELMRIDGE DR<br>TYLER, TX 75703 |

| Contact Details | |
|---|---|
| Cell Phone: | 903-574-2872 |
| Phone 2: | |
| Email: | bill.reynolds@yahoo.com |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

OMB No. 1545-0008 Form **W-2 Wage and Tax Statement** **2008**

| Box | Value |
|---|---|
| 7 Social security tips | |
| 1 Wages, tips, other comp. | 97975.76 |
| 2 Federal income tax withheld | 11180.91 |
| 8 Allocated tips | |
| 3 Social security wages | 102863.10 |
| 4 Social security tax withheld | 6377.51 |
| 9 Advance EIC payment | |
| 5 Medicare wages and tips | 102863.10 |
| 6 Medicare tax withheld | 1491.51 |
| c Employer's name, address, and ZIP code | John Soules Foods Inc<br>PO Box 4579<br>Tyler TX 75712 |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a See instructions for box 12 | D 4990.94 |
| b Employer identification number (EIN) | 75-1569736 |
| 12b | DD 7589.07 |
| a Employee's social security number | |
| 12c | |
| 14 Other | |
| 12d | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | Retirement plan: X |
| e Employee's name, address, and ZIP code | William Reynolds<br>US |
| Suff. | |
| 15 State / Employer's state I.D. no. | |
| 16 State wages, tips, etc. | |
| 17 State income tax | |
| 18 Local wages, tips, etc. | |
| 19 Local income tax | |
| 20 Locality name | |

Copy 2 For Employee's State, City or Local Income Tax Return — Dept. of the Treasury - IRS

OMB No. 1545-0008 Form **W-2 Wage and Tax Statement** **2008**

| Box | Value |
|---|---|
| 7 Social security tips | |
| 1 Wages, tips, other comp. | 97975.76 |
| 2 Federal income tax withheld | 11180.91 |
| 8 Allocated tips | |
| 3 Social security wages | 102863.10 |
| 4 Social security tax withheld | 6377.51 |
| 9 Advance EIC payment | |
| 5 Medicare wages and tips | 102863.10 |
| 6 Medicare tax withheld | 1491.51 |
| c Employer's name, address, and ZIP code | John Soules Foods Inc<br>PO Box 4579<br>Tyler TX 75712 |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a See instructions for box 12 | D 4990.94 |
| b Employer identification number (EIN) | 75-1569736 |
| 12b | DD 7589.07 |
| a Employee's social security number | |
| 12c | |
| 14 Other | |
| 12d | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | Retirement plan: X |
| e Employee's name, address, and ZIP code | William Reynolds<br>US |
| Suff. | |
| 15 State / Employer's state I.D. no. | |
| 16 State wages, tips, etc. | |
| 17 State income tax | |
| 18 Local wages, tips, etc. | |
| 19 Local income tax | |
| 20 Locality name | |

COPY B To Be filed with employee's FEDERAL Tax Return
This information is being furnished to the Internal Revenue Service — Dept. of the Treasury - IRS

OMB No. 1545-0008 Form **W-2 Wage and Tax Statement** **2008**

| Box | Value |
|---|---|
| 7 Social security tips | |
| 1 Wages, tips, other comp. | 97975.76 |
| 2 Federal income tax withheld | 11180.91 |
| 8 Allocated tips | |
| 3 Social security wages | 102863.10 |
| 4 Social security tax withheld | 6377.51 |
| 9 Advance EIC payment | |
| 5 Medicare wages and tips | 102863.10 |
| 6 Medicare tax withheld | 1491.51 |
| c Employer's name, address, and ZIP code | John Soules Foods Inc<br>PO Box 4579<br>Tyler TX 75712 |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a See instructions for box 12 | D 4990.94 |
| b Employer identification number (EIN) | 75-1569736 |
| 12b | DD 7589.07 |
| a Employee's social security number | |
| 12c | |
| 14 Other | |
| 12d | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | Retirement plan: X |
| e Employee's name, address, and ZIP code | William Reynolds<br>US |
| Suff. | |
| 15 State / Employer's state I.D. no. | |
| 16 State wages, tips, etc. | |
| 17 State income tax | |
| 18 Local wages, tips, etc. | |
| 19 Local income tax | |
| 20 Locality name | |

COPY C For EMPLOYEE'S RECORDS
This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.
Dept. of the Treasury - IRS
(See Notice to Employee on back of Copy B.)

OMB No. 1545-0008 Form **W-2 Wage and Tax Statement** **2008**

| Box | Value |
|---|---|
| 7 Social security tips | |
| 1 Wages, tips, other comp. | 97975.76 |
| 2 Federal income tax withheld | 11180.91 |
| 8 Allocated tips | |
| 3 Social security wages | 102863.10 |
| 4 Social security tax withheld | 6377.51 |
| 9 Advance EIC payment | |
| 5 Medicare wages and tips | 102863.10 |
| 6 Medicare tax withheld | 1491.51 |
| c Employer's name, address, and ZIP code | John Soules Foods Inc<br>PO Box 4579<br>Tyler TX 75712 |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a See instructions for box 12 | D 4990.94 |
| b Employer identification number (EIN) | 75-1569736 |
| 12b | DD 7589.07 |
| a Employee's social security number | |
| 12c | |
| 14 Other | |
| 12d | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | Retirement plan: X |
| e Employee's name, address, and ZIP code | William Reynolds<br>US |
| Suff. | |
| 15 State / Employer's state I.D. no. | |
| 16 State wages, tips, etc. | |
| 17 State income tax | |
| 18 Local wages, tips, etc. | |
| 19 Local income tax | |
| 20 Locality name | |

Copy 2 For Employee's State, City or Local Income Tax Return — Dept. of the Treasury - IRS

Reynolds, William
10478

| Description | Rate | Hours | Earnings | Year to Date |
|---|---|---|---|---|
| Bns Annl | | | | 3000.00 |
| Bns Inct | | | | 2350.00 |
| Bns Line | | | | 2450.00 |
| Hrs Only | | | | |
| Retro | | | | 54.00 |
| Vacation | | | | 5502.00 |
| Holiday | 46.390 | 8.00 | 371.12 | 2587.04 |
| Regular | 46.390 | 32.00 | 1484.48 | 87808.16 |
| Bns Genl | 1069.000 | | 1069.00 | 6469.00 |
| Vacation Balance | | 16.00 | | |

| Description | Taxes/Ded | Year to Date |
|---|---|---|
| FIT WH | 377.19 | 11180.91 |
| MEDICARE | 40.37 | 1491.51 |
| SOC SEC | 172.63 | 6377.51 |
| 401k EE | 146.23 | 4990.94 |
| Dental 1 EE | 4.94 | 256.88 |
| Medical 500 EE | 132.33 | 6881.16 |
| Vision III EE | 3.00 | 156.00 |
| Spouse Voluntary Life | 7.85 | 408.20 |
| Vol Life | 49.43 | 2570.36 |

| | Earnings | Taxable Earnings | Deductions | Net Pay |
|---|---|---|---|---|
| CURR | 2,924.60 | 2,638.10 | 933.97 | 1,990.63 |
| YTD | 110,220.20 | 97,975.76 | 34,313.47 | 75,906.73 |

| Pay Period | Check No | Check Amount |
|---|---|---|
| | 269384 | 0.00 |
| 12/25/2021 | 269384 | |

John Soules Foods
Great Food, Made Simple

**John Soules Foods**
10150 FM 14
Tyler,TX 75706

Regions Bank
Texas

**DATE** 12/31/2021
**ADVICE NO.** 269384

PAY *VOID VOID VOID VOID VOID VOID VOID VOID*

Advice Amount
$ *****1,990.63

TO THE ORDER OF **Reynolds, William**

DIRECT DEPOSIT ADVICE

**NON-NEGOTIABLE**

10478

John Soules Foods
Great Food, Made Simple

3010 - 15

REYNOLDS, WILLIAM

# John Soules Foods Position Description

**Date:** September 29, 2021

**Position Title:** Retail Project Analyst

**Reports To:** Director of Customer Service

**Exempt or Non-Exempt**: Exempt

**Job Summary:** Walmart / Sam's Club Project Analyst

**Supervisory Responsibilities If Any:** None

**Duties/Responsibilities:**

Item Management – Inventory, ordering and forecast strategies

Purchase Order tracking, management
Costing accuracy
Appt Scheduling
Presentations
Design and develop metrics and reports to drive key business decisions
Sales Analytics and Forecasting
Sales Reporting and Development
Promotion fulfillment
And other duties as assigned

**Required Skills/Abilities:**

Must possess excellent organizational, communication, and interpersonal skills.
Excellent problem-solving skills.
Works very well under high pressure situations and is comfortable in a fast-paced environment
Adapts easily and quickly when parameters change which can occur quite often
Communicates complicated situations clearly and concisely and can be at a moment's notice
Strong attention to detail
Ability to develop and maintain accurate records and reports
Self-starter and ability to manage oneself

**Percent of Travel If Any:** Minimal if any

**Work Remotely Yes or No:** No

**Education and Experience:**

Bachelor's Degree (Supply Chain, Business)
Preferred
Must be proficient with Microsoft Office, Intermediate/Advanced Excel, PowerPoint
Retail Link Experience a plus

**Physical Requirements:**

Long extended periods of time sitting, reviewing,
and calculating data on a computer.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 11/03/2022 at 02:12 PM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: Clinton Carter, M.D.

Subject: Records

---

Note: Clinton Carter, M.D. has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**
1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**4BU-XT2-JMT**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

November 3, 2022

Lincoln Financial Group
8801 Indian Hills Dr, Omaha, NE 68114
Office: 800-423-2765
Fax: 877-843-3950

**Re: William Reynolds (DOB: )**

**Subject: Records**

To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.

Sent by Kasey Dawson, MA on 11/03/2022 2:11 pm in ElationHealth .

**Note: Interactive patient chart available online**

To accompany this letter, Kasey Dawson, MA has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **4BU-XT2-JMT**

**Interactive Patient Chart Contents:**

- 10/23/2022 Office Visit Note *1. ? Depression 2. Major depressive disorder*

**Replies:**
None

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William Reynolds

D.O.B.: ; 69 yrs, 1 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 10/23/2022**

**Subjective**

1. ? Depression
   - Has been in a funk
   - Just had his second session with counseling with Sarah Jorden
   - Has been on Welbutrin XL 300
   - Was on Lexapro for a short time without known side effects
2. Major depressive disorder

**Allergy: NKDA**

**Objective**

PE: virtual visit

**Assessment/Plan**

1. Major depressive disorder F32.9
   - Continue counseling
   - Continue Welbutrin XL 300
   - Add Lexapro 10 daily
   - Warnings given
   - PDQ-9 score of 7, Mild Depression
   - 1. Little interest or pleasure in doing things
     MORE THAN HALF THE DAYS (2)
     2. Feeling down, depressed, or hopeless
     SEVERAL DAYS (1)
     3. Trouble falling or staying asleep, or sleeping too much
     NOT AT ALL (0)
     4. Feeling tired or having little energy
     NEARLY EVERY DAY (3)
     5. Poor appetite or overeating
     NOT AT ALL (0)
     6. Feeling bad about yourself - or that you are a failure or have let yourself or your family down
     SEVERAL DAYS (1)
     7. Trouble concentrating on things, such as reading the newspaper or watching television
     NOT AT ALL (0)
     8. Moving or speaking so slowly that other people could have noticed
     NOT AT ALL (0)
     9. Thoughts that you would be better off dead, or of hurting yourself
     NOT AT ALL (0)
     10. If you checked off any problems, how difficult have these problems made it for you at work, home, or with other people?
     SOMEWHAT DIFFICULT
   - Warnings given for worsening
   - Will reach out in 2 weeks
   - Will follow up in 1-2 months

Proc: Virtual Telephone Visit

Orders: *New* Lexapro 10 mg Tab 1 tab po daily #90 RFx3

Signed electronically by Clinton Carter, M.D. on 10/25/2022 1:20 pm in ElationHealth



PAGE 3/3 * RCVD AT 11/3/2022 3:13:33 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:8778433950 * CSID:Elation * ANI:4156445307 * DURATION (mm-ss):00-59

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 11/03/2022 at 09:20 AM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: Clinton Carter, M.D.

Subject: Referral

---

Note: Clinton Carter, M.D. has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**
1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**DUL-P95-XCG**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Referral

*First - Last*
**For: William Reynolds**
D.O.B.: (Male)
Addr.:
Phone:
Ins: EBC-JSF ID: H1002000003-01 Group: JSF-ES

| | |
|---|---|
| **Consultant:** | **Lincoln Financial Group** |
| Phone: | 800-423-2765 |
| Fax Number: | 877-843-3950 |
| Address: | 8801 Indian Hills Dr, Omaha, NE 68114 |
| Date of Referral: | 11/03/2022 |
| **Reason for Referral:** | **Disability Paperwork** |
| | **To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.** |
| Authorization For: | Referral For Treatment, includes Consult Visit |
| Dxs: | |

Electronically signed off and sent by Michelle Smith, RN for Clinton Carter, M.D. in ElationHealth .

**Note: Interactive patient chart available online**

To accompany this letter, Clinton Carter, M.D. has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **DUL-P95-XCG**

**Interactive Patient Chart Contents:**

- 11/01/2022 Miscellaneous Report *Disability paperwork comleted by Sarah Jorden (Already faxed)*
- Clinical Profile *Allergies, Drug Intolerances, Problem List, History, Permanent Rx Meds, ...*
- Patient Demographics *Address, Insurance Info, etc.*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 11/03/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| |

| Contact Details | |
|---|---|
| Cell Phone: | |
| Phone 2: | |
| Email: | |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Clinical Profile

*As of 11/03/2022, in ElationHealth*

**Patient Name: William Reynolds**

D.O.B.: ; 69 yrs, 1 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

**Allergies**

NKDA

**Problem List**

1. 2019 Preventative health care
2. 2019 Atrial fibrillation

   *on Eliquis and Metoprolol*

   *Has been Amiodarone and Diltiazem in the past*

   *Torres (UT Health) previously managed*
   *Pitonak (Christus) now manages*

   *10/2021: Ligation of Left Atrial Appendage in setting of CABG*

   *1/2022: echocardiogram normal EF 65%*
   *Per cardiology Macrh 2022: finish amiodarone rx, then stop and continue Toprol-XL. currently on triple therapy ASA/Plavix/Eliquis. D/C ASA anc cont Eliquis/ Plavix for 1 year until Dec 2022.*
3. 2021 BPH (benign prostatic hyperplasia)
   *On Flomax BID*

   *08/31/2021: stable on flomax*
4. 2021 Insomnia
   *Stable on Temazepam*
5. 2021 Major depressive disorder
   *On Wellbutrin XL 300*
6. 2021 Elevated hemoglobin A1c
   *5.7 but stable - offered metformin but GFR is 60 and he is not anxious to initiate it. He wants to be very diligent about carbs (less than 100/day) and exercise 30 min 3 x/ week*
7. 2021 Elevated LDL cholesterol level
   *discussed goal of less than 70 in pre-diabetic. He is going to do Mediterranean diet and recheck*

   *08/31/2021: does not want statin - I rec we monitor closely and if we need to start statin, add on CoQ10*
8. 2016 OSA (obstructive sleep apnea)
   *compliant with CPAP*
9. 2021 Insulin resistance
   *Elevated insulin level: recommend Metformin*
   *low carb, intermittent fasting*
10. 2021 Low vitamin D level
    *taking 5,000 daily - need level next draw*
11. 2021 CAD (coronary artery disease)
    *9/2021: NSTEMI: Severe multi vessel CAD. CABG 10/1/2021 - CABG: LIMA --> LAD; SVG --> RCA*

    *12/19/2021: STEMI noted at outside ER, transferred to Christus. Stented bypass graft at LIMIA to LAD*

    *Macrh 2022: echocardiogram showed EF 65% with abnormal diastolic function, trace mitral regurg and normal right ventrilc function.*
12. 2021 Hx of CABG
    *CABG: LIMA --> LAD; SVG --> RCA*

    *11/11/2021: Dr Turner states patient may return to regular activity with no restrictions*
13. 2022 Hypothyroid
    *03/15/2022: increase levothyroxine to 75 mcg*
14. 2022 Wears hearing aid in both ears

*had hearing loss in right ear after tramatic event as teenager*

**Past Surgical History**

- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

**Family History**

- Mother: FH: Hypertension
- Father: Bone cancer

**Social History**

- Married
- Sales Analysis

**Habits**

- ETOH: Denies

**Cigs**

- Never smoker (as of: 03/24/2021)

**Permanent Rx Medications**

1. Albuterol Sulfate HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation INHALE ONE TO TWO PUFFS BY MOUTH EVERY 4 HOURS AS NEEDED FOR COUGH OR WHEEZE (started on 06/16)
2. ALPRAZolam 0.5 mg Tab TAKE ONE-HALF TO ONE TABLET BY MOUTH EVERY DAY AS NEEDED FOR ANXIETY (started on 03/30)
3. Clopidogrel Bisulfate 75 mg Tab (started on 03/15)
4. Flomax 0.4 mg Cap 1 capsule orally qhs (started on 02/05)
5. Flovent HFA 110 MCG/ACT Aerosol Inhalation 2 puffs inhaled orally 2 times per day (started on 04/20)
6. guaiFENesin-Codeine 100/10 mg/5ML Solution take 5-10 ml by mouth every 4-6 hours as needed for cough and sore throat (started on 09/10)
7. InspiraChamber/Mouthpiece Device use as directed (started on 04/20)
8. Levothyroxine Sodium 75 MCG Tab 1 tablet orally one time (started on 03/15)
9. Lexapro 10 mg Tab 1 tab po daily (started on 10/25)
10. Lipitor 40 mg Tab 1 tablet orally qhs (started on 03/15)
11. metFORMIN ER 500 mg Tab ER 24hr TAKE ONE TABLET BY MOUTH EVERY EVENING (started on 08/31)
12. Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally twice daily (started on 04/20)
13. ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation 1-2 puffs inhaled orally every 4 hours as needed for cough or wheeze (started on 04/20)
14. Sildenafil Citrate 20 mg Tab 1-3 tablets as needed 1 hour prior to intercourse (started on 07/12)
15. Tamiflu 75 mg Cap 1 capsule orally 2 times per day for 5 days (started on 09/10)
16. Temazepam 30 mg Cap 1 capsule orally daily at bedtime as needed (started on 02/05)
17. Wellbutrin XL 300 mg Tab ER 24hr 1 Tablet PO Daily (started on 02/05)

**Permanent OTC Medications**

1. Bumex 1 mg Tab 1 tab po daily for 3 days (started on 04/21)
2. Fluticasone Propionate 50 MCG/ACT Suspension Nasal 1-2 sprays intranasally daily in each nostril as needed (started on 04/19)
3. Vitamin D3 25 MCG (1000 UT) Cap 2 tablets orally daily (started on 04/20)

**Provider List**

- CRx
- Lincoln Financial Group
- **IM** Peter Pitonak, M.D. (Cardiology)
- UT Health East Tx South Broadway Urgent Clinic
- Christus TMF- gastroenterology

**Immunizations**

- 02/11/2021 zoster recombinant
- 12/08/2020 zoster recombinant
- 3/2021: Moderna Covid

**Health Maintenance**

- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019

- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Legal**

- HIPAA reviewed on 11/03/2018
- Flu Vaccine Consent 2020 reviewed on 12/08/2020
- release of records reviewed on 03/31/2021
- HIPAA reviewed on 03/31/2021
- Controlled substance agreement reviewed on 11/01/2021
- Controlled substance agreement reviewed on 02/22/2022
- HIPAA, 3/2022 reviewed on 03/18/2022
- HIPAA, 3/2022 reviewed on 03/15/2022
- Consent for Treatment reviewed on 05/03/2022
- LTD paperwork reviewed on 09/13/2022

Lincoln Financial Group®

# Behavioral Health Disability Claim Form
## Treating Provider Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**This form is for an initial claim under:** Short Term Disability Long Term Disability Full Name of

Patient:________________Bill Reynolds__________________________________________

Date of Birth: / / Claim Number:_______________________________

TREATING PROVIDER PLEASE COMPLETE THE FOLLOWING:

1. Dates of treatment related to this episode: 11/17 /21 to10 /25 /22 2. Date of next scheduled office visit:11 /08 / 22

3. Visit Type: Telemedicine with video Telemedicine without video In-Person Combination 4. Initial Date symptoms/accident occurred: / /

5. Precipitants leading to your patient's self-reported condition:
Cardiovascular health problems

6. Patient's self-reported symptoms:
Anxiety, depression

7. Observed examination findings and test results (include MSE/Observation during office visit): Mental Status Exam include fair insight and judgement, oriented to person place and time. Memory intact attention good, thought content normal, thought process normal, perception normal, interview behavior appropriate, speech normal, affect appropriate, mood is anxious and depressed.

8. Primary Psychiatric Diagnosis (include ICD-10 code): F 43.8 Other reactions to severe stress

Secondary Psychiatric Diagnosis (include ICD-10 code): F43.23 Adjustment disorder with mixed anxiety and depressed mood

9. Date behavioral health restrictions became clinically indicated: 4/ / 22

10. Has patient ever had same or similar condition? Yes _No

If yes, indicate when and describe:

11. Is the condition due to injury of sickness arising out of patient's employment? Yes No

If yes, is or will the patient be able to perform work related activities for another manager, department, location, or employer?

12. What are your patient's functional impairments? (e.g. What activities have been affected by his/her psychiatric condition and what are the associated deficits/inabilities?) ___The client discussed the anxiety he experiences makes decision making and complex problem solving extremely difficult.________________________

13. What behavioral health restrictions are you recommending for your patient? (e.g. pertaining to daily and work activities, such as social functioning, concentration, persistence, pace, adaptation, information processing, etc.)

14. Dates for behavioral health restrictions: Start: / /

Follow-up date to re-evaluate ongoing need for restrictions: / /

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



15. Treatment Plan:

a. Medications, date initiated, dosage/frequency, and changes:

b. Cognitive behavior therapy: CBT is recommended

c. Other:

16. List referrals made to specialist(s) or other level of care (include name and number of provider(s) referred to):

17. Has your patient been hospitalized? Yes No

If yes, for what reason/diagnosis?

________________________________________ 18. If yes, provide dates of inpatient admission/discharge: / / to / / 19. Is there a plan for step down to lower level of care? Yes No

If yes, when will the patient be stepped down? / /

Inpatient Residential Treatment Center (RTC) Partial Hospital Program (PHP)

Intensive Outpatient Program (IOP) Outpatient Services

20. Based on your observation, what is the patient's ability to focus during office visits, follow conversation, attend to tasks, concentrate, remember instructions, require redirection and maintain composure:

The patient experiences anxiety at the job location. He is triggered by location and memories when he experienced cardiac difficulty. While the patient has increased anxiety he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and to concentrate.

21. Are there any modifications that could assist your patient to return to their usual activities, including work? He has worked from home since the first incident, but it has become difficult.

Please specify the plan to improve functional abilities and reduce behavioral restrictions. Include time frame and expected duration: CBT to decrease anxiety related to location and memory. Expected duration every 2wks for 6 months.

22. When do you anticipate the patient will sufficiently recover, and have the ability to return to work (part time or full time)? If part time, please specify the recommended part time return to work plan and duration. It is unknown if this patient can overcome stress, anxiety and sensitivity to this particular location, job and requirements.

23. Printed Name of Provider, Credentials (e.g. MD, PhD) completing this form:______Sarah Jordan LPC

____________________________ If not an MD/PhD or equivalent, name of supervising provider (if applicable):

________________________________ Phone Number: - - Fax Number:_(972) 591-7012_____

Address:_________1101 ESE Loop 323 Suite 100-A, Tyler, Texas 75701

________________________________________________________________ Email Address:

Sarah2Jorden@gmail.com

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Sarah Jorden

__10__/__21__/__22____ Signature of Provider, Credentials and Specialty (No Stamps Please) Date **FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GLC12330 Page 3 of 12 5/22

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Mental Status Exam

**Appearance:** Normal
**Dress:** Appropriate
**Motor Activity:** Normal
**Insight:** Fair
**Judgment:** Fair
**Affect:** Appropriate
**Mood:** Anxious
**Orientation:** X3: Oriented to person, place and time
**Memory:** Intact
**Attention:** Good
**Thought Content:** Normal
**Thought Process:** Normal
**Perception:** Normal
**Interview behavior:** Appropriate
**Speech:** Normal
**Recommendations**

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Diagnosis and treatment plan

**Diagnosis**

F43.23 - Adjustment disorder with mixed anxiety and depressed mood

**Presenting Problem**

General mild anxiety with depressive features

**Goal**

Alleviate depressive symptoms and return to previous level of effective functioning. Develop healthy thinking patterns. Appropriately grieve the loss of routine and long time association with his job and normalize mood and adjustment. Return to normal creative hopeful level of functioning.

**Objective**

Assess for any issues of age and change. Assess severity of teh level of impairment to functioning. Learn the connection among cognition, depressive feelings and actions. Self monitor thoughts, feelings and actions. Assess the client's shift from biased depressive self-talk to reality-based cognitive messages that enhance self-confidence and increase adaptive actions.

**Treatment frequency:** Every two weeks

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Referral

*First - Last*
**For: William Reynolds**
D.O.B.: (Male)
Addr.:
Phone:
Ins: EBC-JSF ID: H1002000003-01 Group: JSF-ES

| | |
|---|---|
| **Consultant:** | **Lincoln Financial Group** |
| Phone: | 800-423-2765 |
| Fax Number: | 877-843-3950 |
| Address: | 8801 Indian Hills Dr, Omaha, NE 68114 |
| Date of Referral: | 11/03/2022 |
| **Reason for Referral:** | **Disability Paperwork** |
| | **To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.** |
| Authorization For: | Referral For Treatment, includes Consult Visit |
| Dxs: | |

Electronically signed off and sent by Michelle Smith, RN for Clinton Carter, M.D. in ElationHealth.

### Note: Interactive patient chart available online

To accompany this letter, Clinton Carter, M.D. has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **DUL-P95-XCG**

### Interactive Patient Chart Contents:

- 11/01/2022 Miscellaneous Report *Disability paperwork comleted by Sarah Jorden (Already faxed)*
- Clinical Profile *Allergies, Drug Intolerances, Problem List, History, Permanent Rx Meds, ...*
- Patient Demographics *Address, Insurance Info, etc.*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 11/03/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| |

| Contact Details |
|---|
| Cell Phone: |
| Phone 2: |
| Email: |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Clinical Profile

*As of 11/03/2022, in* ElationHealth

**Patient Name: William Reynolds**

D.O.B. 69 yrs, 1 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

**Allergies**

NKDA

**Problem List**

1. 2019 Preventative health care
2. 2019 Atrial fibrillation

   *on Eliquis and Metoprolol*

   *Has been Amiodarone and Diltiazem in the past*

   *Torres (UT Health) previously managed*
   *Pitonak (Christus) now manages*

   *10/2021: Ligation of Left Atrial Appendage in setting of CABG*

   *1/2022: echocardiogram normal EF 65%*
   *Per cardiology Macrh 2022: finish amiodarone rx, then stop and continue Toprol-XL. currently on triple therapy ASA/Plavix/Eliquis. D/C ASA anc cont Eliquis/ Plavix for 1 year until Dec 2022.*
3. 2021 BPH (benign prostatic hyperplasia)
   *On Flomax BID*

   *08/31/2021: stable on flomax*
4. 2021 Insomnia
   *Stable on Temazepam*
5. 2021 Major depressive disorder
   *On Wellbutrin XL 300*
6. 2021 Elevated hemoglobin A1c
   *5.7 but stable - offered metformin but GFR is 60 and he is not anxious to initiate it. He wants to be very diligent about carbs (less than 100/day) and exercise 30 min 3 x/ week*
7. 2021 Elevated LDL cholesterol level
   *discussed goal of less than 70 in pre-diabetic. He is going to do Mediterranean diet and recheck*

   *08/31/2021: does not want statin - I rec we monitor closely and if we need to start statin, add on CoQ10*
8. 2016 OSA (obstructive sleep apnea)
   *compliant with CPAP*
9. 2021 Insulin resistance
   *Elevated insulin level: recommend Metformin*
   *low carb, intermittent fasting*
10. 2021 Low vitamin D level
    *taking 5,000 daily - need level next draw*
11. 2021 CAD (coronary artery disease)
    *9/2021: NSTEMI: Severe multi vessel CAD. CABG 10/1/2021 - CABG: LIMA --> LAD; SVG --> RCA*

    *12/19/2021: STEMI noted at outside ER, transferred to Christus. Stented bypass graft at LIMIA to LAD*

    *Macrh 2022: echocardiogram showed EF 65% with abnormal diastolic function, trace mitral regurg and normal right ventrilc function.*
12. 2021 Hx of CABG
    *CABG: LIMA --> LAD; SVG --> RCA*

    *11/11/2021: Dr Turner states patient may return to regular activity with no restrictions*
13. 2022 Hypothyroid
    *03/15/2022: increase levothyroxine to 75 mcg*
14. 2022 Wears hearing aid in both ears

*had hearing loss in right ear after tramatic event as teenager*

**Past Surgical History**

- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

**Family History**

- Mother: FH: Hypertension
- Father: Bone cancer

**Social History**

- Married
- Sales Analysis

**Habits**

- ETOH: Denies

**Cigs**

- Never smoker (as of: 03/24/2021)

**Permanent Rx Medications**

1. Albuterol Sulfate HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation INHALE ONE TO TWO PUFFS BY MOUTH EVERY 4 HOURS AS NEEDED FOR COUGH OR WHEEZE (started on 06/16)
2. ALPRAZolam 0.5 mg Tab TAKE ONE-HALF TO ONE TABLET BY MOUTH EVERY DAY AS NEEDED FOR ANXIETY (started on 03/30)
3. Clopidogrel Bisulfate 75 mg Tab (started on 03/15)
4. Flomax 0.4 mg Cap 1 capsule orally qhs (started on 02/05)
5. Flovent HFA 110 MCG/ACT Aerosol Inhalation 2 puffs inhaled orally 2 times per day (started on 04/20)
6. guaiFENesin-Codeine 100/10 mg/5ML Solution take 5-10 ml by mouth every 4-6 hours as needed for cough and sore throat (started on 09/10)
7. InspiraChamber/Mouthpiece Device use as directed (started on 04/20)
8. Levothyroxine Sodium 75 MCG Tab 1 tablet orally one time (started on 03/15)
9. Lexapro 10 mg Tab 1 tab po daily (started on 10/25)
10. Lipitor 40 mg Tab 1 tablet orally qhs (started on 03/15)
11. metFORMIN ER 500 mg Tab ER 24hr TAKE ONE TABLET BY MOUTH EVERY EVENING (started on 08/31)
12. Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally twice daily (started on 04/20)
13. ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation 1-2 puffs inhaled orally every 4 hours as needed for cough or wheeze (started on 04/20)
14. Sildenafil Citrate 20 mg Tab 1-3 tablets as needed 1 hour prior to intercourse (started on 07/12)
15. Tamiflu 75 mg Cap 1 capsule orally 2 times per day for 5 days (started on 09/10)
16. Temazepam 30 mg Cap 1 capsule orally daily at bedtime as needed (started on 02/05)
17. Wellbutrin XL 300 mg Tab ER 24hr 1 Tablet PO Daily (started on 02/05)

**Permanent OTC Medications**

1. Bumex 1 mg Tab 1 tab po daily for 3 days (started on 04/21)
2. Fluticasone Propionate 50 MCG/ACT Suspension Nasal 1-2 sprays intranasally daily in each nostril as needed (started on 04/19)
3. Vitamin D3 25 MCG (1000 UT) Cap 2 tablets orally daily (started on 04/20)

**Provider List**

- CRx
- Lincoln Financial Group
- **IM** Peter Pitonak, M.D. (Cardiology)
- UT Health East Tx South Broadway Urgent Clinic
- Christus TMF- gastroenterology

**Immunizations**

- 02/11/2021 zoster recombinant
- 12/08/2020 zoster recombinant
- 3/2021: Moderna Covid

**Health Maintenance**

- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019

- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Legal**

- HIPAA reviewed on 11/03/2018
- Flu Vaccine Consent 2020 reviewed on 12/08/2020
- release of records reviewed on 03/31/2021
- HIPAA reviewed on 03/31/2021
- Controlled substance agreement reviewed on 11/01/2021
- Controlled substance agreement reviewed on 02/22/2022
- HIPAA, 3/2022 reviewed on 03/18/2022
- HIPAA, 3/2022 reviewed on 03/15/2022
- Consent for Treatment reviewed on 05/03/2022
- LTD paperwork reviewed on 09/13/2022

Lincoln Financial Group

# Behavioral Health Disability Claim Form
## Treating Provider Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**This form is for an initial claim under:** Short Term Disability Long Term Disability Full Name of

Patient:________________Bill Reynolds________________

Date of Birth: / / Claim Number:________________

TREATING PROVIDER PLEASE COMPLETE THE FOLLOWING:

1. Dates of treatment related to this episode: 11/17 /21 to10 /25 /22 2. Date of next scheduled office visit:11 /08 / 22

3. Visit Type: Telemedicine with video Telemedicine without video In-Person Combination 4. Initial Date symptoms/accident occurred: / /

5. Precipitants leading to your patient's self-reported condition:
Cardiovascular health problems

6. Patient's self-reported symptoms:
Anxiety, depression

7. Observed examination findings and test results (include MSE/Observation during office visit): Mental Status Exam include fair insight and judgement, oriented to person place and time. Memory intact attention good, thought content normal, thought process normal, perception normal, interview behavior appropriate, speech normal, affect appropriate, mood is anxious and depressed.

8. Primary Psychiatric Diagnosis (include ICD-10 code): F 43.8 Other reactions to severe stress

Secondary Psychiatric Diagnosis (include ICD-10 code): F43.23 Adjustment disorder with mixed anxiety and depressed mood

9. Date behavioral health restrictions became clinically indicated: 4/ / 22

10. Has patient ever had same or similar condition? Yes _No

If yes, indicate when and describe:

11. Is the condition due to injury of sickness arising out of patient's employment? Yes No

If yes, is or will the patient be able to perform work related activities for another manager, department, location, or employer?

12. What are your patient's functional impairments? (e.g. What activities have been affected by his/her psychiatric condition and what are the associated deficits/inabilities?) ___The client discussed the anxiety he experiences makes decision making and complex problem solving extremely difficult.________________

13. What behavioral health restrictions are you recommending for your patient? (e.g. pertaining to daily and work activities, such as social functioning, concentration, persistence, pace, adaptation, information processing, etc.)

14. Dates for behavioral health restrictions: Start: / /

Follow-up date to re-evaluate ongoing need for restrictions: / /

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



15. Treatment Plan:

a. Medications, date initiated, dosage/frequency, and changes:

b. Cognitive behavior therapy: CBT is recommended

c. Other:

16. List referrals made to specialist(s) or other level of care (include name and number of provider(s) referred to):

17. Has your patient been hospitalized? Yes No

If yes, for what reason/diagnosis?

_______________________________________________ 18. If yes, provide dates of inpatient admission/discharge: / / to / / 19. Is there a plan for step down to lower level of care? Yes No

If yes, when will the patient be stepped down? / /

Inpatient Residential Treatment Center (RTC) Partial Hospital Program (PHP)

Intensive Outpatient Program (IOP) Outpatient Services

20. Based on your observation, what is the patient's ability to focus during office visits, follow conversation, attend to tasks, concentrate, remember instructions, require redirection and maintain composure:

The patient experiences anxiety at the job location. He is triggered by location and memories when he experienced cardiac difficulty. While the patient has increased anxiety he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and to concentrate.

21. Are there any modifications that could assist your patient to return to their usual activities, including work? He has worked from home since the first incident, but it has become difficult.

Please specify the plan to improve functional abilities and reduce behavioral restrictions. Include time frame and expected duration: CBT to decrease anxiety related to location and memory. Expected duration every 2wks for 6 months.

22. When do you anticipate the patient will sufficiently recover, and have the ability to return to work (part time or full time)? If part time, please specify the recommended part time return to work plan and duration. It is unknown if this patient can overcome stress, anxiety and sensitivity to this particular location, job and requirements.

23. Printed Name of Provider, Credentials (e.g. MD, PhD) completing this form:______Sarah Jordan LPC

__________________________ If not an MD/PhD or equivalent, name of supervising provider (if applicable):

______________________________ Phone Number: - - Fax Number:_(972) 591-7012_____

Address:_________1101 ESE Loop 323 Suite 100-A, Tyler, Texas 75701

__________________________________________________________________________ Email Address:

Sarah2Jorden@gmail.com

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Sarah Jorden

__10___/___21__/___22_____ Signature of Provider, Credentials and Specialty (No Stamps Please) Date **FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Mental Status Exam

**Appearance:** Normal
**Dress:** Appropriate
**Motor Activity:** Normal
**Insight:** Fair
**Judgment:** Fair
**Affect:** Appropriate
**Mood:** Anxious
**Orientation:** X3: Oriented to person, place and time
**Memory:** Intact
**Attention:** Good
**Thought Content:** Normal
**Thought Process:** Normal
**Perception:** Normal
**Interview behavior:** Appropriate
**Speech:** Normal
**Recommendations**

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Diagnosis and treatment plan

**Diagnosis**

F43.23 - Adjustment disorder with mixed anxiety and depressed mood

**Presenting Problem**

General mild anxiety with depressive features

**Goal**

Alleviate depressive symptoms and return to previous level of effective functioning. Develop healthy thinking patterns. Appropriately grieve the loss of routine and long time association with his job and normalize mood and adjustment. Return to normal creative hopeful level of functioning.

**Objective**

Assess for any issues of age and change. Assess severity of teh level of impairment to functioning. Learn the connection among cognition, depressive feelings and actions. Self monitor thoughts, feelings and actions. Assess the client's shift from biased depressive self-talk to reality-based cognitive messages that enhance self-confidence and increase adaptive actions.

**Treatment frequency:** Every two weeks

Lincoln Financial Group

# Behavioral Health Disability Claim Form
## Treating Provider Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**This form is for an initial claim under:** Short Term Disability Long Term Disability Full Name of

Patient:________________Bill Reynolds________________________________

Date of Birth: / / Claim Number:_______________________________

TREATING PROVIDER PLEASE COMPLETE THE FOLLOWING:

1. Dates of treatment related to this episode: 11/17 /21 to10 /25 /22 2. Date of next scheduled office visit:11 /08 / 22

3. Visit Type: Telemedicine with video Telemedicine without video In-Person Combination 4. Initial Date symptoms/accident occurred: / /

5. Precipitants leading to your patient's self-reported condition:
Cardiovascular health problems

6. Patient's self-reported symptoms:
Anxiety, depression

7. Observed examination findings and test results (include MSE/Observation during office visit): Mental Status Exam include fair insight and judgement, oriented to person place and time. Memory intact attention good, thought content normal, thought process normal, perception normal, interview behavior appropriate, speech normal, affect appropriate, mood is anxious and depressed.

8. Primary Psychiatric Diagnosis (include ICD-10 code): F 43.8 Other reactions to severe stress

Secondary Psychiatric Diagnosis (include ICD-10 code): F43.23 Adjustment disorder with mixed anxiety and depressed mood

9. Date behavioral health restrictions became clinically indicated: 4/ / 22

10. Has patient ever had same or similar condition? Yes _No

If yes, indicate when and describe:

11. Is the condition due to injury of sickness arising out of patient's employment? Yes No

If yes, is or will the patient be able to perform work related activities for another manager, department, location, or employer?

12. What are your patient's functional impairments? (e.g. What activities have been affected by his/her psychiatric condition and what are the associated deficits/inabilities?) ___The client discussed the anxiety he experiences makes decision making and complex problem solving extremely difficult.________________

13. What behavioral health restrictions are you recommending for your patient? (e.g. pertaining to daily and work activities, such as social functioning, concentration, persistence, pace, adaptation, information processing, etc.)

14. Dates for behavioral health restrictions: Start: / /

Follow-up date to re-evaluate ongoing need for restrictions: / /

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GLC12330Page 1 of 12 5/22

15. Treatment Plan:

a. Medications, date initiated, dosage/frequency, and changes:

b. Cognitive behavior therapy: CBT is recommended

c. Other:

16. List referrals made to specialist(s) or other level of care (include name and number of provider(s) referred to):

17. Has your patient been hospitalized? Yes No

If yes, for what reason/diagnosis?

______________________________ 18. If yes, provide dates of inpatient admission/discharge: / / to / / 19. Is there a plan for step down to lower level of care? Yes No

If yes, when will the patient be stepped down? / /

Inpatient Residential Treatment Center (RTC) Partial Hospital Program (PHP)

Intensive Outpatient Program (IOP) Outpatient Services

20. Based on your observation, what is the patient's ability to focus during office visits, follow conversation, attend to tasks, concentrate, remember instructions, require redirection and maintain composure:

The patient experiences anxiety at the job location. He is triggered by location and memories when he experienced cardiac difficulty. While the patient has increased anxiety he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and to concentrate.

21. Are there any modifications that could assist your patient to return to their usual activities, including work? He has worked from home since the first incident, but it has become difficult.

Please specify the plan to improve functional abilities and reduce behavioral restrictions. Include time frame and expected duration: CBT to decrease anxiety related to location and memory. Expected duration every 2wks for 6 months.

22. When do you anticipate the patient will sufficiently recover, and have the ability to return to work (part time or full time)? If part time, please specify the recommended part time return to work plan and duration. It is unknown if this patient can overcome stress, anxiety and sensitivity to this particular location, job and requirements.

23. Printed Name of Provider, Credentials (e.g. MD, PhD) completing this form:______Sarah Jordan LPC

______________________ If not an MD/PhD or equivalent, name of supervising provider (if applicable):

______________________ Phone Number: - - Fax Number:_(972) 591-7012_____

Address:_________1101 ESE Loop 323 Suite 100-A, Tyler, Texas 75701

______________________________ Email Address:

Sarah2Jorden@gmail.com

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

__10___/___21__/___22_____ Signature of Provider, Credentials and Specialty (No Stamps Please) Date **FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Mental Status Exam

**Appearance:** Normal
**Dress:** Appropriate
**Motor Activity:** Normal
**Insight:** Fair
**Judgment:** Fair
**Affect:** Appropriate
**Mood:** Anxious
**Orientation:** X3: Oriented to person, place and time
**Memory:** Intact
**Attention:** Good
**Thought Content:** Normal
**Thought Process:** Normal
**Perception:** Normal
**Interview behavior:** Appropriate
**Speech:** Normal
**Recommendations**

**Client:** Bill Reynolds
**Provider:** sarah jorden
**Provider License:** LPC #81868

## Diagnosis and treatment plan

**Diagnosis**

F43.23 - Adjustment disorder with mixed anxiety and depressed mood

**Presenting Problem**

General mild anxiety with depressive features

**Goal**

Alleviate depressive symptoms and return to previous level of effective functioning. Develop healthy thinking patterns. Appropriately grieve the loss of routine and long time association with his job and normalize mood and adjustment. Return to normal creative hopeful level of functioning.

**Objective**

Assess for any issues of age and change. Assess severity of teh level of impairment to functioning. Learn the connection among cognition, depressive feelings and actions. Self monitor thoughts, feelings and actions. Assess the client's shift from biased depressive self-talk to reality-based cognitive messages that enhance self-confidence and increase adaptive actions.

**Treatment frequency:** Every two weeks

877-843-3950

Attn Paul Webber.
cs #1220082997

Lincoln Financial Group®

# Behavioral Health Disability Claim Form
## Treating Provider Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**This form is for an initial claim under:** Short Term Disability Long Term Disability Full Name of

Patient:_______________Bill Reynolds_______________

Date of Birth: / / Claim Number:_______________

TREATING PROVIDER PLEASE COMPLETE THE FOLLOWING:

1. Dates of treatment related to this episode: 11/17 /21 to10 /25 /22 2. Date of next scheduled office visit:11 /08 / 22

3. Visit Type: Telemedicine with video Telemedicine without video In-Person Combination 4. Initial Date symptoms/accident occurred: / /

5. Precipitants leading to your patient's self-reported condition:
   Cardiovascular health problems

6. Patient's self-reported symptoms:
   Anxiety, depression

7. Observed examination findings and test results (include MSE/Observation during office visit): Mental Status Exam include fair insight and judgement, oriented to person place and time. Memory intact attention good, thought content normal, thought process normal, perception normal, interview behavior appropriate, speech normal, affect appropriate, mood is anxious and depressed.

8. Primary Psychiatric Diagnosis (include ICD-10 code): F 43.8 Other reactions to severe stress

   Secondary Psychiatric Diagnosis (include ICD-10 code): F43.23 Adjustment disorder with mixed anxiety and depressed mood

9. Date behavioral health restrictions became clinically indicated: 4/ / 22

10. Has patient ever had same or similar condition? Yes _No

    If yes, indicate when and describe:

11. Is the condition due to injury of sickness arising out of patient's employment? Yes No

    If yes, is or will the patient be able to perform work related activities for another manager, department, location, or employer?

12. What are your patient's functional impairments? (e.g. What activities have been affected by his/her psychiatric condition and what are the associated deficits/inabilities?) ___The client discussed the anxiety he experiences makes decision making and complex problem solving extremely difficult.______________

13. What behavioral health restrictions are you recommending for your patient? (e.g. pertaining to daily and work activities, such as social functioning, concentration, persistence, pace, adaptation, information processing, etc.)

14. Dates for behavioral health restrictions: Start: / /

Follow-up date to re-evaluate ongoing need for restrictions: / /

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



15. Treatment Plan:

a. Medications, date initiated, dosage/frequency, and changes:

b. Cognitive behavior therapy: CBT is recommended

c. Other:

16. List referrals made to specialist(s) or other level of care (include name and number of provider(s) referred to):

17. Has your patient been hospitalized? Yes No

If yes, for what reason/diagnosis?

______________________________ 18. If yes, provide dates of inpatient admission/discharge: / / to / / 19. Is there a plan for step down to lower level of care? Yes No

If yes, when will the patient be stepped down? / /

Inpatient Residential Treatment Center (RTC) Partial Hospital Program (PHP)

Intensive Outpatient Program (IOP) Outpatient Services

20. Based on your observation, what is the patient's ability to focus during office visits, follow conversation, attend to tasks, concentrate, remember instructions, require redirection and maintain composure:

The patient experiences anxiety at the job location. He is triggered by location and memories when he experienced cardiac difficulty. While the patient has increased anxiety he has decreased ability to focus, concentrate and maintain composure. His depression makes it difficult to remember instructions, attend to tasks and to concentrate.

21. Are there any modifications that could assist your patient to return to their usual activities, including work? He has worked from home since the first incident, but it has become difficult.

Please specify the plan to improve functional abilities and reduce behavioral restrictions. Include time frame and expected duration: CBT to decrease anxiety related to location and memory. Expected duration every 2wks for 6 months.

22. When do you anticipate the patient will sufficiently recover, and have the ability to return to work (part time or full time)? If part time, please specify the recommended part time return to work plan and duration. It is unknown if this patient can overcome stress, anxiety and sensitivity to this particular location, job and requirements.

23. Printed Name of Provider, Credentials (e.g. MD, PhD) completing this form:______Sarah Jordan LPC

______________________ If not an MD/PhD or equivalent, name of supervising provider (if applicable):

______________________ Phone Number: - - Fax Number:_(972) 591-7012_____

Address:_________1101 ESE Loop 323 Suite 100-A, Tyler, Texas 75701

______________________________ Email Address:

Sarah2Jorden@gmail.com

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

__10___/___21__/___22____ Signature of Provider, Credentials and Specialty (No Stamps Please) Date **FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Date: Fri Oct 21 09:32:07 CDT 2022
From: Paul Webber <Paul.Webber@lfg.com>
To:
Message-ID: <917773782.18.1666362727514.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Paul Webber**
**Specialist, LTD Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 7695
Fax: 402-951-0498
Email: Paul.Webber@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 21, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Mr. Reynolds:

On 09/26/2022, we received your claim for Long Term Disability benefits and advised by letter that additional information was needed for the review of your claim. In order to be eligible for benefits under the policy, you must satisfy all of the provisions of the policy and be disabled throughout and beyond the Elimination Period.

We have received Office/Treatment Notes and Diagnostic Test Results from MyMed Select Tyler dated 11/11/2021-09/09/2022. We have asked for clarification if there are any dates of service or additional documented medical evidence available beyond 09/09/2022.

We received an email from you dated 10/19/2022 advising that you had been referred to Sarah S Jorden, MA, LPC and began a counseling program on 10/13/2022 where you will be seen bi-weekly. All available documented medical evidence will be required from her to current as well as a Behavioral Health Disability Treating Provider Statement. The telephone number provided for Sarah S Jorden, MA, LPC is unreconcilable, and we have been unable to locate a fax number for this provider. If you provide this information, we will submit a courtesy request for this information.

We are approaching our initial deadline for making a decision on your claim. Our decision is currently pending the following:

- Confirmation of any dates of service or additional documented medical evidence available beyond 09/09/2022 from MyMed Select Tyler
- All Office/Treatment Notes and Diagnostic Test Results from Sarah S Jorden, MA, LPC
- Behavioral Health Disability Treating Provider Statement completed by Sarah S Jorden, MA, LPC

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- Completed Telephone Interview

We are also pending information requested from your employer.

For these reasons, we require a 30 day extension of time to make a determination on your claim. However, the policy issued to John Soules Foods, Inc indicated that any request must be provided in 45 days.

If we do not receive this information by 11/10/2022, your claim will be closed.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

Social Security Administration
**Benefit Verification Letter**

Date: October 4, 2022
BNC#: 22OS940D27210
REF: A

*0101BEV7P27TV18* CCM.M72.BEV7P.R221004

LLIAM J REYNOLDS

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning January 2022, the full monthly Social Security benefit before any deductions is $2,936.00.

We deduct $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,936.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third Wednesday of each month.

**Information About Past Social Security Benefits**

From December 2021 to December 2021, the full monthly Social Security benefit before any deductions was $2,762.00.

We deducted $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,762.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly retirement benefits.

**Medicare Information**

You are entitled to hospital insurance under Medicare beginning September 2018.

See Next Page

Your Medicare number is 8AE9TD3YP13. You may use this number to get medical services while waiting for your Medicare card.

If you have any questions, please log into Medicare.gov, or call 1-800-MEDICARE (1-800-633-4227).

**Date of Birth Information**

The date of birth shown on our records is

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

**Need more help?**

1. Visit www.ssa.gov for fast, simple and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this letter when you call.
3. You may also call your local office at **1-877-319-5707**.

SOCIAL SECURITY
5509 S DONNYBROOK AVE
TYLER TX 75703

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

Social Security Administration
# Benefit Verification Letter

*0101BEV7P27TV18* CCM.M72.BEV7P.R221004

Date: October 4, 2022
BNC#: 22OS940D27210
REF: A

LLIAM J REYNOLDS

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning January 2022, the full monthly Social Security benefit before any deductions is $2,936.00.

We deduct $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,936.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third Wednesday of each month.

**Information About Past Social Security Benefits**

From December 2021 to December 2021, the full monthly Social Security benefit before any deductions was $2,762.00.

We deducted $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,762.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly retirement benefits.

**Medicare Information**

You are entitled to hospital insurance under Medicare beginning September 2018.

See Next Page

Your Medicare number is 8AE9TD3YP13. You may use this number to get medical services while waiting for your Medicare card.

If you have any questions, please log into Medicare.gov, or call 1-800-MEDICARE (1-800-633-4227).

**Date of Birth Information**

The date of birth shown on our records is

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

**Need more help?**

1. Visit www.ssa.gov for fast, simple and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this letter when you call.
3. You may also call your local office at **1-877-319-5707**.

SOCIAL SECURITY
5509 S DONNYBROOK AVE
TYLER TX 75703

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 10/03/2022 at 04:40 PM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: DANYEL KUSH, FNP

Subject: Referral

---

Note: DANYEL KUSH, FNP has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**
1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**GBF-NTK-HRD**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

Tyler Open MRI

Tyler Open MRI
1904 E Southeast Loop 323
Tyler, TX 75701
Phone #: (903)526-6736
Fax: (903)526-7911

| | | | |
|---|---|---|---|
| Name: | WILLIAM REYNOLDS | Exam Date: | 4/20/2022 06:01 PM |
| Patient ID: | 9912242739 | Exam Name: | Xray Chest 2 Views \| 71046 |
| Age: | 68Y 7M | Reason:: | Shortness of breath \| R0602 |
| DOB: | | Referrer: | DANYEL KUSH, FNP |
| Acc #: | 14827039 | 2nd Referrer: | |

EXAM: Xray Chest 2 Views 4/20/2022 5:50 PM

HISTORY:per order Shortness of breath \F\ R0602, per pt sob, cough and congestion

TECHNIQUE: Frontal and lateral (2) views of the chest.

COMPARISON: 01/20/2022

FINDINGS:
Stable sternotomy wires.
Heart: Normal cardiac silhouette
Aorta: Unremarkable
Pulmonary vessels: Normal
Costophrenic angles: Costophrenic angles are clear.
Lungs: Scattered interstitial opacities likely due to edema or infiltrate.
Pneumothorax: No pneumothorax
Osseous structures: No osseous abnormalities

IMPRESSION:
1. Scattered interstitial opacities due to edema or infiltrate.

-Electronically Signed By: Pulin Patel, MD
-Electronically Signed On: 4/21/2022 8:08 AM

Report Ends
Dr. PULIN PATEL is affiliated with Tyler Radiology Associates.

**Report Electronically Signed by:** PULIN PATEL
**Report Electronically Signed on:** 4/21/2022 08:08 AM

| | | | |
|---|---|---|---|
| Patient Name: | WILLIAM REYNOLDS | Exam: | Xray Chest 2 Views \| 71046 |
| Patient ID: | 9912242739 | Acc #: | 14827039 |
| Completed Date: | 4/20/2022 06:01 PM | Interpreting Rad: | PULIN PATEL |
| Transcribed By: | PULIN PATEL | Dictated Date: | 4/21/2022 08:08 AM |
| Transcribed Date: | 4/21/2022 08:08 AM | Finalized Date: | 4/21/2022 08:08 AM |

Signed electronically by DANYEL KUSH, FNP on 04/21/2022 10:32 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Referral

*First - Last*
**For: William Reynolds**
D.O.B.: (Male)
Addr.:
Phone:
Ins: EBC-JSF ID: H1002000003-01 Group: JSF-ES

| | |
|---|---|
| **Consultant:** | **Lincoln Financial Group** |
| Phone: | 800-423-2765 |
| Fax Number: | 877-843-3950 |
| Address: | 8801 Indian Hills Dr, Omaha, NE 68114 |
| Date of Referral: | 10/03/2022 |
| **Reason for Referral:** | **3 out of 3** |
| | **To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.** |
| Authorization For: | Referral For Treatment, includes Consult Visit |
| Dxs: | |



Electronically signed off and sent by Millie Robledo for DANYEL KUSH, FNP in ElationHealth .

### Note: Interactive patient chart available online

To accompany this letter, DANYEL KUSH, FNP has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **GBF-NTK-HRD**

### Interactive Patient Chart Contents:

- Patient Demographics *Address, Insurance Info, etc.*
- 03/11/2022 Electrocardiogram Report *EKG, 2/23/22*
- 03/15/2022 Electrocardiogram Report *!! STAT !! Annual EKG, 3/2022*
- 03/15/2022 Electrocardiogram Report *Annual EKG, 3/2022*
- 04/21/2022 Imaging Report *chest Xray*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 10/03/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| |

| Contact Details |
|---|
| Cell Phone: |
| Phone 2: |
| Email: |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

ID:
Name: REYNOLDS, WILLIAM
Age: 68 yr

Gender: Male

03/15/2022 02:16:57PM
P/PR: 98/228 ms
QRS: 104 ms
QT/QTc: 434/426 ms
P/QRS/T axis: 24/45/99 deg
Heart rate: 58 bpm

sinus rhythm (slow)
first degree AV block (limited)
slight high-lateral repolarization disturbance, consider ischemia, LV overload or aspecific change
Borderline ECG
Unconfirmed Report




25 mm/s 10 mm/mV Frequency Response [0.5-35] Hz 60Hz Version 2.10.09

Signed electronically by DANYEL KUSH, FNP on 03/15/2022 3:01 pm in ElationHealth

ID:
Name: REYNOLDS, WILLIAM
Age: 68 yr

Gender: Male

03/15/2022 02:16:57PM
P/PR: 98/228 ms
QRS: 104 ms
QT/QTc: 434/426 ms
P/QRS/T axis: 24/45/99 deg
Heart rate: 58 bpm

sinus rhythm (slow)
first degree AV block (limited)
slight high-lateral repolarization disturbance, consider ischemia, LV overload or aspecific change
Borderline ECG
Unconfirmed Report




25 mm/s 10 mm/mV Frequency Response [0.5-35] Hz 60Hz Version 2.10.09

Signed electronically by DANYEL KUSH, FNP on 03/21/2022 11:46 am in ElationHealth

| | | | |
|---|---|---|---|
| Pat ID 096638825 | 02/23/2022 10:39:09<br>68 yrs | REYNOLDS, WILLIAM<br>Male<br>Account # 400095037675 | Trinity Clinic Cardiology |
| RX | | | Dept |
| DX | | | Room - |
| | | | Tech HW |

| | | | |
|---|---|---|---|
| Rate | 60 | SINUS RHYTHM WITH FIRST DEGREE AV BLOCK | Req Provider: |
| PR | 248 | RIGHT AXIS DEVIATION [QRS AXIS > 90] | Facility: TMF - TYLER |
| QRSd | 105 | POSSIBLE INFERIOR MYOCARDIAL INFARCTION , OF INDETERMINATE AGE [30 ms Q WAVE IN | 400095037675 |
| QT | 436 | II/aVF] | |
| QTc | 437 | Electronically Signed On 2-23-2022 16:24:05 CST by Peter Pitonak, MD | |
| --Axis-- | | | |
| P | -66 | | |
| QRS | 100 | | |
| T | 107 | | |

- Abnormal ECG - Confirmed By: Peter Pitonak, MD 02/23/2022 16:24:05




MORT ELI380-1054 25 mm/sec 10.0 mm/mV 60~ 0.05 - 150 Hz

Signed electronically by DANYEL KUSH, FNP on 03/14/2022 8:23 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 10/03/2022 at 04:40 PM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: DANYEL KUSH, FNP

Subject: Referral

---

Note: DANYEL KUSH, FNP has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**

1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**PAB-592-CNY**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William Reynolds

D.O.B. 68 yrs, 11 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 09/09/2022**

**Exam Reason (CC): LTD discussion**

**Subjective**

1. Hx of CABG
   - Gradually recovering
   - His wife still doesn't let him work in the yard on his own
   - follows with cardiology
2. Stress reaction
   - He cannot return to work
   - He gets anxiety just thinking about trying to resume his job
   - He got anxious meeting them at the gate to pick up some of his things
   - He was definitely planning on working for several more years

**Allergy: NKDA**

ROS: GENERAL: As per HPI

**Objective**

PE: GENERAL: NAD, Well appearing
EYES: No injection
RESP: NAD;
SKIN: No visible rash
PSYCH: A/O x 3

Data: Lincoln Financial Short term disability form 05/06/2022

**Assessment/Plan**

1. Other reactions to severe stress F43.8
   - Unable to return to work
   - Continue to address anxiety
   - Will fill out LTD paperwork
2. Hx of CABG Z95.1
   - Follow up with cardiology

Signed electronically by Clinton Carter, M.D. on 09/13/2022 12:29 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Referral

*First - Last*
**For: William Reynolds**
D.O.B.: (Male)
Addr.:
Phone:
Ins: EBC-JSF ID: H1002000003-01 Group: JSF-ES

| | |
|---|---|
| **Consultant:** | **Lincoln Financial Group** |
| Phone: | 800-423-2765 |
| Fax Number: | 877-843-3950 |
| Address: | 8801 Indian Hills Dr, Omaha, NE 68114 |
| Date of Referral: | 10/03/2022 |
| **Reason for Referral:** | **2 out of 3** |
| | **To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.** |
| Authorization For: | Referral For Treatment, includes Consult Visit |
| Dxs: | |

Danyel Kush FNP-BC

Electronically signed off and sent by Millie Robledo for DANYEL KUSH, FNP in ElationHealth.

**Note: Interactive patient chart available online**

To accompany this letter, DANYEL KUSH, FNP has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **PAB-592-CNY**

**Interactive Patient Chart Contents:**

- Patient Demographics *Address, Insurance Info, etc.*
- 04/28/2022 Office Visit Note *cc: FMLA evaluation. 1. Stress*
- 06/21/2022 Office Visit Note *1. Low back pain*
- 07/26/2022 Office Visit Note *cc: Cardiac Recovery. 1. CAD (coronary artery disease) 2. Atrial fibrillation 3. Hypothyroid 4. Maj*
- 09/07/2022 Office Visit Note *cc: Disability discussion. 1. Disability*
- 09/09/2022 Office Visit Note *cc: LTD discussion. 1. Hx of CABG 2. Stress reaction*
- 02/21/2022 Laboratory Report *albumin/creatinine ratio, urine, random, cbc w/auto diff with platelets, comprehensive metabolic pan*
- 04/20/2022 Laboratory Report *cbc w/auto diff with platelets, comprehensive metabolic panel, estradiol, free t4 (thyroxine), hemog*
- 04/20/2022 Laboratory Report *!! STAT !! Point-of-Care Labs (with manually typed lab values)*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 10/03/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| |

| Contact Details | |
|---|---|
| Cell Phone: | |
| Phone 2: | |
| Email: | |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William Reynolds

D.O.B.: 68 yrs, 11 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 09/07/2022**

**Exam Reason (CC): Disability discussion**

**Subjective**

1. Disability
   - He is not going to be able to return to work
   - He gets overwhelming anxiety at the thought of it and at the thought of going on property
   - He has been gradually increasing his exercise capacity at home, under the close supervision of his wife
   - He feels that he needed to work longer, as he had planned, in order to afford to retire
   - He is unfortunately unable to return to work and it puts him in a financial bind
   - He is hoping to qualify for long term disability in order to make up for the lost wages due to his medical disability

**Allergy: NKDA**

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 129/69 HR: 73 Temp: 98.8 °F RR: 12 $O_2$: 96

PE: GENERAL: NAD, Well appearing
EYES: No injection
RESP: NAD;
SKIN: No visible rash
PSYCH: A/O x 3

**Assessment/Plan**

1. Disability due to neurological disorder R29.818
   - He is no longer able to do his job that requires the complicated calculations and decision making
   - The thought of going back causes him anxiety and a physical guttural reaction
   - He needs disability to afford to stop working at this time.
   - Long term disability paperwork will be filled out when available

Signed electronically by Clinton Carter, M.D. on 09/07/2022 3:18 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William Reynolds

D.O.B.: 68 yrs, 10 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 07/26/2022**

**Exam Reason (CC): Cardiac Recovery**

**Subjective**

1. CAD (coronary artery disease)
    - STEMI in end of Sept and CABG in first of Oct 2021
    - Repeat STEMI in 12/2021 that was able to be stented
    - Cardiac rehab was interrupted by the second MI as well as complicating the mental health recovery
    - He attempted to return to work to find that his concentration, memory, speed of calculating was inhibited and he was working slowly and more prone to mistakes
    - He has been on STD for further physical and mental rehab for almost 12 weeks
    - The STD company stopped paying at 10 weeks, and he needs a continuance form filled out today
    - He has been slowly progressing in his physical endurance, shortness of breath, and ability to do ADL's
    - He has also been gradually improving in depression and anxiety
    - He still feels anxious about returning to his position but is due to speak with JSF/HR to discuss options
2. Atrial fibrillation
    - Had Left Atrial Appendage removed during CABG
    - Just cleared to stop Eliquis last week at cardiology follow up
3. Hypothyroid
    - Doing well at the increased dose of 75
4. Major depressive disorder
    - Did not feel that the Lexapro was helping so stopped it
    - Still on Welbutrin 300 daily
    - Feels that he is gradually improving
    - Still minimal libido and his wife is nervous for that level of exertion. She is also not comfortable with him being outside alone, etc.
    - Only needing xanax 3-4 times per month
5. Insomnia
    - Has been sleeping fairly well, for the most part, with Temazepam

**Allergy: NKDA**

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 119/66 HR: 78 Temp: 97.1 °F RR: 16 Ht: 68 in. Wt: 244 lbs. [+6.6 from 237.4 lbs on 04/20/2022]
BMI: 37.1 [+3.99 from 33.11 on 04/20/2022] $O_2$: 97

Data:
- 3/2021: Moderna Covid
- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019
- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Assessment/Plan**

1. CAD (coronary artery disease) I25.10
    - Continue physical and mental rehab
    - STD continuance form filled out. Recommend extend until at least 8/1/22
    - Follow up with cardiology last week was good
    - Continue meds
    - Will follow
2. Atrial fibrillation I48.91
    - Continue meds
    - Will follow
3. Hypothyroid E03.9
    - Continue Levo 75
4. Major depressive disorder F32.9
    - Continue Welbutrin
    - Will follow
5. Insomnia G47.00
    - Continue Temazepam PRN

Signed electronically by Clinton Carter, M.D. on 07/26/2022 3:29 pm in ElationHealth

Amended and electronically signed by Clinton Carter, M.D. on 07/26/2022 3:30 pm

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: 68 yrs, 9 mo at the time of visit
Seen by Rebecca Parker, FNP-C

**Date of Encounter: 06/21/2022**

**Subjective**

1. Low back pain
    - Reports pain started last week but was much worse yesterday
    - Worse with certain movements; especially if he twists or steps down wrong and with trying to turn on side in bed
    - No known injury; reports some yard work this past week but does not recall any specific movement that caused the initial pain
    - Reports he had a lumbar strain on same side about 14 years ago that improved with 1 week bedrest
    - Not able to take NSAIDs d/t blood thinners
    - Has had muscle relaxers before and did well
    - Denies radiation to buttock or leg
    - No numbness or weakness
    - Denies bladder or bowel incontinence

**Allergy: NKDA**

PMH:
- What is the reason for your visit? - Left hip pain
- 2022 - Joint or back pains

Habits:
- Sleep: Yes
- Alcohol use: 8-10 glasses wine
- Drug use: None
- Former smoker

ROS: DIET: Low carb and low sugar, salt, fat
EXERCISE: 2-4 miles at home daily

**Objective**

**Vitals:**

BP: 121/82 HR: 69 Temp: 98.2 °F $O_2$: 97

PE: GENERAL: Well appearing, NAD
EYES: EOMI
HENT: Nontraumatic, no acute abnormalities of ENT
NECK: NT, FROM
RESP: CTA bilaterally with good air flow
CVS: RRR, no M,R,G
MSS: Using extremities normally. No CVA tenderness
Back: Full ROM, mild tenderness to Lumbar paraspinals; mostly tender over left SI joint
Straight leg raise positive on left
NS: No focal deficit. Strength and sensation intact. Normal reflexes bilaterally.
SKIN: No lesions, rash
PSYCH: A/O x 3, appropriate

Data:
- Follow-Up Medical History Form 06/21/2022
- Depression: PHQ-2 Score: 0 (06/21/2022)

**Assessment**

1. Lumbago M54.50
    - Warm moist heat and gentle stretches
    - Tylenol for Arthritis



PAGE 8/19 * RCVD AT 10/3/2022 5:46:28 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/1 * DNIS:8778433950 * CSID:Elation * ANI:4156445309 * DURATION (mm-ss):05-18

- Can also try Voltaren gel if needed
- Flexeril TID; reviewed sedation precautions
- Call if symptoms persist or worsen
- Could consider chiropract not if not improving

**Plan**

Tx: *New* Flexeril 10 mg Tab 1/2 to 1 tablet orally 3 times per day as needed for muscle spasm; causes sedation #20 tablet RFx0

Signed electronically by Rebecca Parker, FNP-C on 06/21/2022 11:25 am in Elation Health

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B. 68 yrs, 7 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 04/28/2022**

**Exam Reason (CC): FMLA evaluation**

**Subjective**

1. Stress
    - Bill has been through a lot in the last 7 months
    - He had a heart attack and had Bypass surgery in Sept/Oct
    - He was doing cardiac rehab and then had another small heart attack requiring a stent to the anastomosis of the LIMA to the LAD
    - This greatly inhibited his ability/motivation to do cardiac rehab
    - It also halted the process he was making with depression, etc.
    - He went back to work as soon as possible both times, as he feels that he is the only one that really knows how to do his job(s)
    - He has been under increased scrutiny at work since returning the second time that he is making more mistakes. He feels that it is that there is more volume so mistakes appear more frequent without in increase in the low % of mistakes made, but fears that he now has the reputation of being mistake prone instead of the one people went to with problems
    - He is now feeling extra pressure and is second guessing himself, which slows him down and likely causes more mistakes. He has had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place
    - He does not feel that he ever really recovered from the 2 heart attacks or the subsequent depression/anxiety and he is now having difficulty fulfilling his work obligations
    - He needs to stop and do the physical and mental rehab that is necessary to function at his current position

**Allergy: NKDA**

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 107/55 HR: 73 Temp: 98.5 °F $O_2$: 100

PE: GENERAL: NAD, Well appearing
EYES: No injection
RESP: NAD;
SKIN: No visible rash
PSYCH: A/O x 3; Denies SI/HI

Data:
- Christus Health, chest pain 09/28/2021
- Operative Report, cardiac cath 12/20/2021

**Assessment**

1. Major depressive disorder F32.9
    - Greatly exacerbated by the open heart surgery and then the secondary heart attack
    - Complicated by incomplete rehab
    - Amplified by increased pressure at work as the workload changes and increases
    - Recommend some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling, meds, exercise, etc
    - FMLA paperwork delivered by patient today to be filled out.

Signed electronically by Clinton Carter, M.D. on 04/30/2022 3:21 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Laboratory Report

*As of 10/03/2022, in ElationHealth*

**Patient Name: William Reynolds**
D.O.B.: ; 69 yrs, 0 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

File Received: 04/20/2022 1:23 pm
Ordered By: N/A

Requisition No.: N/A

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| COVID-19 | | | |
| SARS-CoV-2 IgA | Negative | Negative | |
| Rapid Influenza | | | |
| Rapid Influenza A | Negative | Negative | |
| Rapid Influenza B | Negative | Negative | |

Status: FINAL

Collected: 04/20/2022 1:22 pm
Completed: 04/20/2022 1:22 pm

Signed electronically by DANYEL KUSH, FNP on 04/20/2022 2:03 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# CPL Laboratory Report

*As of 10/03/2022, in ElationHealth*

**Patient Name: William Reynolds**
D.O.B.: ; 69 yrs, 0 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

File Received: 04/22/2022 8:46 am
Ordered By: KUSH,DANYEL
Requisition No.: SW2532280001514

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TESTOSTERONE | | | |
| TESTOSTERONE | 451 | 300 - 720 NG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621
Status: FINAL
Collected: 04/20/2022 11:50 am
Completed: 04/21/2022 12:11 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| COMPREHENSIVE METABOLIC PANEL | | | |
| GLUCOSE | 84 | 70 - 99 MG/DL | |
| BUN | 14 | 8 - 23 MG/DL | |
| CREATININE | 1.28 | 0.80 - 1.40 MG/DL | |
| eGFR (2021 CKD-EPI) | 61 | > 60 ML/MIN/1.73 | |
| CALC BUN/CREAT | 11 | 6 - 28 RATIO | |
| SODIUM | 138 | 133 - 146 MEQ/L | |
| POTASSIUM | 4.8 | 3.5 - 5.4 MEQ/L | |
| CHLORIDE | 100 | 96 - 107 MEQ/L | |
| CARBON DIOXIDE | 25 | 19 - 31 MEQ/L | |
| CALCIUM | 8.8 | 8.5 - 10.5 MG/DL | |
| PROTEIN, TOTAL | 6.5 | 6.1 - 8.3 G/DL | |
| ALBUMIN | 4.2 | 3.5 - 5.2 G/DL | |
| CALC GLOBULIN | 2.3 | 1.9 - 3.7 G/DL | |
| CALC A/G RATIO | 1.8 | 1.0 - 2.6 RATIO | |
| BILIRUBIN, TOTAL | 0.6 | <=1.2 MG/DL | |
| ALKALINE PHOSPHATASE | 93 | 40 - 125 U/L | |
| AST | 21 | 9 - 50 U/L | |
| ALT | 28 | 5 - 50 U/L | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621
Status: FINAL
Collected: 04/20/2022 11:50 am
Completed: 04/21/2022 12:58 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| CBC W/AUTO DIFF WITH PLATELETS | | | |
| WBC | 6.5 | 3.5 - 11.0 K/UL | |
| RBC | 5.20 | 4.50 - 6.10 M/UL | |
| HEMOGLOBIN | 15.1 | 13.5 - 17.0 G/DL | |
| HEMATOCRIT | 47.9 | 40.0 - 51.0 % | |
| MCV | 92.1 | 80.0 - 99.0 fL | |
| MCH | 29.0 | 25.0 - 33.0 PG | |
| MCHC | 31.5 | 31.0 - 36.0 G/DL | |
| RDW | 14.8 | 11.5 - 15.0 % | |
| NEUTROPHILS | 74 | % | |
| LYMPHOCYTES | 11 | % | |
| MONOCYTES | 11 | % | |
| EOSINOPHILS | 3 | % | |
| BASOPHILS | 1 | % | |
| PLATELET COUNT | 231 | 130 - 400 K/UL | |
| ABSOLUTE NEUTROPHILS | 4.80 | 1.50 - 7.50 K/UL | |
| **ABSOLUTE LYMPHOCYTES** | **0.69** L | 1.00 - 4.00 K/UL | |
| ABSOLUTE MONOCYTES | 0.74 | 0.20 - 1.00 K/UL | |
| ABSOLUTE EOSINOPHILS | 0.21 | 0.00 - 0.50 K/UL | |
| ABSOLUTE BASOPHILS | 0.06 | 0.00 - 0.20 K/UL | |

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 1:13 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| PSA, TOTAL | | | |
| PSA, TOTAL | 3.58 | < 4.000 NG/ML | |

NOTE: Methodology is Roche Cobas Electrochemiluminescence Immunoassay traceable to WHO reference standard 96/760.

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| ESTRADIOL | | | |
| ESTRADIOL | 29.4 | <=60.7 PG/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| T4 (THYROXINE) | | | |
| T4 (THYROXINE) | 8.7 | 4.5 - 10.5 UG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| FREE T4 (THYROXINE) | | | |
| FREE T4 (THYROXINE) | 1.43 | 0.80 - 1.90 NG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TSH, THIRD GENERATION | | | |
| TSH, THIRD GENERATION | 3.810 | 0.400 - 4.100 UIU/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN B-12 | | | |
| VITAMIN B-12 | 401 | 200 - 950 PG/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 3:38 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| HEMOGLOBIN A1c WITH EAG | | | |
| **HEMOGLOBIN A1c** | **5.7** H | 4.2 - 5.6 % | |
| ESTIMATED AVERAGE GLUCOSE | 117 | < 117 MG/DL | |

```
Testing Performed At:
DRL:  DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408
```

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/21/2022 5:15 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| NT-PROBNP | | | |
| NT-proBNP | 339 | SEE BELOW PG/ML | |

```
If NT-ProBNP is less than 300 PG/ML, heart failure is unlikely for all
ages.
      Age................Heart Failure Likely
      <50 Years..........>=450 PG/ML
      50-75 Years........>=900 PG/ML
      > 75 Years.........>=1800 PG/ML

Methodology: Roche Cobas Electrochemiluminescense Immunoassay
```

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: FX200370 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/22/2022 5:59 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| NOTE: | | | |
| NOTE: | (NOTE) | | |

```
     IN ACCORDANCE WITH FEDERAL GUIDELINES REQUIRING ALL VERBAL
     REQUESTS FOR LABORATORY TESTS TO BE ACCOMPANIED BY WRITTEN
     AUTHORIZATION WITHIN 30 DAYS OF THIS REQUEST, PLEASE SIGN BELOW
     AND RETURN A COPY OF THIS REPORT BY FAX TO THE LABORATORY
     SCANNING DEPARTMENT AT 512-873-5078.

     PHYSICIAN'S SIGNATURE _________________________ DATE __________
```

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: FX200370 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/22/2022 6:01 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN D, 25 OH | | | |
| VITAMIN D, 25 OH | 54 | SEE BELOW NG/ML | |

```
NOTE: 25-HYDROXYVITAMIN D ASSAY INCLUDES 25-HYDROXYVITAMIN D2
      AND D3.  METHODOLOGY IS CHEMILUMINESCENT IMMUNOASSAY.

                ***** INTERPRETIVE RANGES *****
PEDIATRIC (<17 YEARS) . . . . . . . . . . . NG/ML        20-100
ADULT:
  INSUFFICIENT  . . . . . . . . . . . . . . NG/ML        <20
  SUBOPTIMAL  . . . . . . . . . . . . . . . NG/ML        20-29
  OPTIMAL . . . . . . . . . . . . . . . . . NG/ML        30-100
```

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: FX155621 — Collected: 04/20/2022 11:50 am
Status: FINAL — Completed: 04/22/2022 6:59 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| THYROID PEROXIDASE AB | | | |
| THYROID PEROXIDASE AB | <1 | < 9 IU/ML | |

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: FX155621
Status: FINAL

Collected: 04/20/2022 11:50 am
Completed: 04/22/2022 9:04 am

**Abnormal Value Legend:**
H = Above high normal L = Below low normal

Signed electronically by DANYEL KUSH, FNP on 04/25/2022 8:17 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# CPL Laboratory Report

*As of 10/03/2022, in ElationHealth*

**Patient Name: William Reynolds**

D.O.B.: 69 yrs, 0 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

File Received: 02/25/2022 2:50 am
Ordered By: KUSH,DANYEL

Requisition No.: SW2532280001365

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TESTOSTERONE | | | |
| TESTOSTERONE | 517 | 300 - 720 NG/DL | |

```
Testing Performed At:
DRL:  DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408
```

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/23/2022 2:16 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| LIPID PANEL | | | |
| CHOLESTEROL | 143 | < 200 MG/DL | |
| TRIGLYCERIDES | 98 | < 150 MG/DL | |
| HDL CHOLESTEROL | 60 | > 39 MG/DL | |
| CALC LDL CHOL | 65 | < 100 MG/DL | |

```
NOTE: CALCULATED LDL IS BASED ON MARTIN-HOPKINS METHOD WHICH
INCLUDES ADJUSTABLE TRIGLYCERIDE:VLDL CHOLESTEROL RATIO.
THIS FACTOR VARIES BY MEASURED TRIGLYCERIDE AND NON-HDL
CHOLESTEROL CONCENTRATIONS WITH INCREASED CALCULATED LDL SEEN
IN HIGHER TRIGLYCERIDE OR LOWER NON-HDL SPECIMENS. FOR MORE
INFORMATION, SEE CLIENT ANNOUNCEMENT AT
http://www.cpllabs.com/CalcLDL-C
```

| | | | |
|---|---|---|---|
| RISK RATIO LDL/HDL | 1.08 | < 3.55 RATIO | |

```
Testing Performed At:
DRL:  DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408
```

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/23/2022 2:57 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| COMPREHENSIVE METABOLIC PANEL | | | |
| GLUCOSE | 91 | 70 - 99 MG/DL | |
| BUN | 15 | 8 - 23 MG/DL | |
| CREATININE | 1.16 | 0.80 - 1.40 MG/DL | |
| eGFR (2021 CKD-EPI) | 69 | > 60 ML/MIN/1.73 | |
| CALC BUN/CREAT | 13 | 6 - 28 RATIO | |
| SODIUM | 137 | 133 - 146 MEQ/L | |
| POTASSIUM | 5.4 | 3.5 - 5.4 MEQ/L | |
| CHLORIDE | 100 | 96 - 107 MEQ/L | |
| CARBON DIOXIDE | 23 | 19 - 31 MEQ/L | |
| CALCIUM | 9.2 | 8.5 - 10.5 MG/DL | |
| PROTEIN, TOTAL | 6.5 | 6.1 - 8.3 G/DL | |
| ALBUMIN | 4.3 | 3.5 - 5.2 G/DL | |
| CALC GLOBULIN | 2.2 | 1.9 - 3.7 G/DL | |
| CALC A/G RATIO | 2.0 | 1.0 - 2.6 RATIO | |
| BILIRUBIN, TOTAL | 0.4 | <=1.2 MG/DL | |
| ALKALINE PHOSPHATASE | 100 | 40 - 125 U/L | |
| AST | 20 | 9 - 50 U/L | |
| ALT | 25 | 5 - 50 U/L | |

```
Testing Performed At:
DRL:  DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408
```

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 2:57 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| CBC W/AUTO DIFF WITH PLATELETS | | | |
| WBC | 5.7 | 3.5 - 11.0 K/UL | |
| RBC | 5.21 | 4.50 - 6.10 M/UL | |
| HEMOGLOBIN | 14.8 | 13.5 - 17.0 G/DL | |
| HEMATOCRIT | 47.1 | 40.0 - 51.0 % | |
| MCV | 90.4 | 80.0 - 99.0 fL | |
| MCH | 28.4 | 25.0 - 33.0 PG | |
| MCHC | 31.4 | 31.0 - 36.0 G/DL | |
| RDW | 14.2 | 11.5 - 15.0 % | |
| NEUTROPHILS | 68 | % | |
| LYMPHOCYTES | 18 | % | |
| MONOCYTES | 10 | % | |
| EOSINOPHILS | 2 | % | |
| BASOPHILS | 1 | % | |
| PLATELET COUNT | 356 | 130 - 400 K/UL | |
| ABSOLUTE NEUTROPHILS | 3.89 | 1.50 - 7.50 K/UL | |
| ABSOLUTE LYMPHOCYTES | 1.00 | 1.00 - 4.00 K/UL | |
| ABSOLUTE MONOCYTES | 0.58 | 0.20 - 1.00 K/UL | |
| ABSOLUTE EOSINOPHILS | 0.11 | 0.00 - 0.50 K/UL | |
| ABSOLUTE BASOPHILS | 0.07 | 0.00 - 0.20 K/UL | |

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 3:11 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| HEMOGLOBIN A1c WITH EAG | | | |
| **HEMOGLOBIN A1c** | **5.8** H | 4.2 - 5.6 % | |
| **ESTIMATED AVERAGE GLUCOSE** | **120** H | < 117 MG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 4:29 pm

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| THYROID PEROXIDASE AB | | | |
| THYROID PEROXIDASE AB | <1 | < 9 IU/ML | |

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 7:04 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| ALBUMIN/CREATININE RATIO, URINE, RANDOM | | | |
| CREATININE, URINE, RANDOM | 216.9 | NOT ESTAB MG/DL | |
| ALBUMIN, URINE, RANDOM | 4.7 | NOT ESTAB MG/DL | |
| CALC ALBUMIN/CREAT, RND | 22 | < 30 MG/G | |

Note: Albumin/Creatinine ratio reference interval reflects ADA and NKF guidelines.

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 7:22 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| INSULIN | | | |
| INSULIN | 20 | 2 - 21 UIU/ML | |

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Note: Reference interval represents standard fasting reference range.

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| PSA, TOTAL | | | |
| PSA, TOTAL | 3.52 | < 4.000 NG/ML | |

NOTE: Methodology is Roche Cobas Electrochemiluminescence
Immunoassay traceable to WHO reference standard 96/760.

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| ESTRADIOL | | | |
| ESTRADIOL | 28.9 | <=60.7 PG/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| T4 (THYROXINE) | | | |
| T4 (THYROXINE) | 7.1 | 4.5 - 10.5 UG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| FREE T4 (THYROXINE) | | | |
| FREE T4 (THYROXINE) | 1.14 | 0.80 - 1.90 NG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TSH, THIRD GENERATION | | | |
| **TSH, THIRD GENERATION** | **8.250** H | 0.400 - 4.100 UIU/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN B-12 | | | |
| VITAMIN B-12 | 361 | 200 - 950 PG/ML | |

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

```
Testing Performed At:
DRL:  DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408
```

Accession No.: BL566780 | Collected: 02/21/2022 4:49 pm
Status: FINAL | Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN D, 25 OH | | | |
| **VITAMIN D, 25 OH** | **26** L | SEE BELOW NG/ML | |

```
NOTE: 25-HYDROXYVITAMIN D ASSAY INCLUDES 25-HYDROXYVITAMIN D2
      AND D3.  METHODOLOGY IS CHEMILUMINESCENT IMMUNOASSAY.

                ***** INTERPRETIVE RANGES *****
PEDIATRIC (<17 YEARS) . . . . . . . . . . . NG/ML        20-100
ADULT:
  INSUFFICIENT  . . . . . . . . . . . . . . NG/ML        <20
  SUBOPTIMAL  . . . . . . . . . . . . . . . NG/ML        20-29
  OPTIMAL . . . . . . . . . . . . . . . . . NG/ML        30-100
```

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 | Collected: 02/21/2022 4:49 pm
Status: FINAL | Completed: 02/25/2022 2:43 am

**Abnormal Value Legend:**
H = Above high normal    L = Below low normal

Signed electronically by DANYEL KUSH, FNP on 02/25/2022 9:24 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 10/03/2022 at 04:40 PM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: DANYEL KUSH, FNP

Subject: Referral

---

Note: DANYEL KUSH, FNP has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**

1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**ULF-RT6-29U**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: 09/11/1953; 68 yrs, 7 mo at the time of visit
Seen by DANYEL KUSH, FNP

**Date of Encounter: 04/20/2022**

**Exam Reason (CC): fatigue/cough**

**Subjective**

1. fatigue
    - pt states he has been having increased feeling of fatigue for the last 7 months. He feels since CABG in december he has not felt the same.
    - prior to that he has was placed on lexapro in oct and feels like that with the wellbutrin has made him feel more "flat and no emotion"
    - He endorses anhedonia, increased sleep, decreased appettite and at times feeling of sadness.
    - Has tried to wean off wellbutrin in the past; did not feel right.
    - He is also concerned that his thyroid level he is concerned it is causing his fatigue
    - states he is sleeping well and using CPAP, most nights feels rested.
    - wife has noticed that he is not himself. He denies having any issues in marriage and says homelife is great
    - has talked to Sara in the past and did not feel much difference
2. uri sx
    - has had sore throat, dry cough, headache for the last 3 days. No fever or chills
    - He feels like the shortness of breath is slightly worse over the last 3 days, occassional wheeze
    - no recent travle, no others ill.
3. shortness of breath
    - he has declined cardiac rehab in the past since CABG, he feels that after he did it last time that is what cause last heart attack.
    - He also states he just does not feel motivated andlazy to do it.
    - Has been trying to walk 30 min a day and do some yard work but reports having to stop frequently. He admits this has caused increased frustration for him
    - Cardiology saw him in Feb 2022 and told him ok to exercise 30 min a day; cardiac workup at that time was normal.
    - he denies any chest pain, palpitations or swelling in LE
4. Major depressive disorder

**Allergy: NKDA**

PMH:
- Preventative health care
- Atrial fibrillation
- BPH (benign prostatic hyperplasia)
- Insomnia
- Major depressive disorder
- Elevated hemoglobin A1c
- Elevated LDL cholesterol level
- OSA (obstructive sleep apnea)
- Insulin resistance
- Low vitamin D level
- CAD (coronary artery disease)
- Hx of CABG
- Hypothyroid
- Wears hearing aid in both ears

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Referral

*First - Last*
**For: William Reynolds**
D.O.B.: (Male)
Addr.:
Phone:
Ins: EBC-JSF ID: H1002000003-01 Group: JSF-ES

| | |
|---|---|
| **Consultant:** | **Lincoln Financial Group** |
| Phone: | 800-423-2765 |
| Fax Number: | 877-843-3950 |
| Address: | 8801 Indian Hills Dr, Omaha, NE 68114 |
| Date of Referral: | 10/03/2022 |
| **Reason for Referral:** | **1 out of 3** |
| | **To help you with seeing this patient, I've created a customized, interactive, HIPAA compliant patient chart that you can easily access online by following the instructions below. Please use Google Chrome or Firefox instead of Internet Explorer if at all possible to view the interactive chart.** |
| Authorization For: | Referral For Treatment, includes Consult Visit |
| Dxs: | |

Danyel Kush FNP-BC

Electronically signed off and sent by Millie Robledo for DANYEL KUSH, FNP in ElationHealth .

**Note: Interactive patient chart available online**

To accompany this letter, DANYEL KUSH, FNP has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **ULF-RT6-29U**

**Interactive Patient Chart Contents:**

- Patient Demographics *Address, Insurance Info, etc.*
- 11/11/2021 Office Visit Note *cc: PHONE - Cardiac Rehab, Depression, cough. 1. Major depressive disorder 2. OSA (obstructive sleep*
- 02/22/2022 Office Visit Note *cc: Fasting Male Pre Pellet, A1C, Lipids, Insulin and Urine MicroAlbumin.*
- 03/15/2022 Office Visit Note *cc: annual, chronic disease f/u. 1. Preventative health care 2. Atrial fibrillation 3. BPH (benign p*
- 04/20/2022 Office Visit Note *cc: fatigue/cough. 1. fatigue 2. uri sx 3. shortness of breath 4. Major depressive disorder*
- 04/20/2022 Laboratory Report *!! STAT !! Point-of-Care Labs (with manually typed lab values)*
- 02/21/2022 Laboratory Report *albumin/creatinine ratio, urine, random, cbc w/auto diff with platelets, comprehensive metabolic pan*
- 03/11/2022 Cardiac Report *Echocardiogram, 1/6/22*

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 10/03/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William Reynolds | M | | |

| Address |
|---|
| |

| Contact Details |
|---|
| Cell Phone: |
| Phone 2: |
| Email: |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

Meds:
- *Doc'd D/C* Levothyroxine Sodium 50 MCG Tab TAKE ONE TABLET BY MOUTH EVERY MORNING ON AN EMPTY STOMACH because: dosage increased (Rebecca Ellspermann, PA-C)
- *Doc'd D/C* Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally daily because: frequeny change (Rebecca Ellspermann, PA-C)
- *Doc'd New* Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally twice daily (Prescriber Not Specified)
- *Doc'd D/C* Flexeril 10 mg Tab 1 tablet orally 3 times per day as needed for muscle spasm because: no longer taking (Clinton Carter, M.D.)
- *Doc'd D/C* Flexeril 10 mg Tab 1 tablet orally 3 times per day as needed for muscle spasm because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Flonase Allergy Relief 50 MCG/ACT Suspension Nasal 2 sprays intranasally BID in each nostril x 1-2 weeks, then daily because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* predniSONE 20 mg Tab 2 tablets orally daily for 4 days because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* predniSONE 20 mg Tab 2 tablets orally daily for 4 days because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Robitussin AC 5-10 mL po q 4-6 hours prn cough or sore throat because: no longer taking (Rebecca Parker, FNP-C)
- *Doc'd D/C* Tessalon Perles 100 mg Cap 1 perl every 4-6 hours for cough because: no longer taking (Clinton Carter, M.D.)
- *Doc'd D/C* Ultram 50 mg Tab 1 tabs q 4-6 hours prn pain because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Zithromax Z-Pak 250 mg Tab 2 tablets orally one time, then one tab daily for 4 days because: no longer taking (Rebecca Parker, FNP-C)
- *Doc'd New* Lexapro 10 mg Tab 1 tablet orally daily (Prescriber Not Specified)
- *Doc'd New* Vitamin D3 25 MCG (1000 UT) Cap 2 tablets orally daily (Prescriber Not Specified)
- ALPRAZolam 0.5 mg Tab sig: TAKE ONE-HALF TO ONE TABLET BY MOUTH EVERY DAY AS NEEDED FOR ANXIETY
- Clopidogrel Bisulfate 75 mg Tab
- Flomax 0.4 mg Cap sig: 1 capsule orally qhs
- Flovent HFA 110 MCG/ACT Aerosol Inhalation sig: 2 puffs inhaled orally 2 times per day
- InspiraChamber/Mouthpiece Device sig: use as directed
- Levothyroxine Sodium 75 MCG Tab sig: 1 tablet orally one time
- Lexapro 10 mg Tab sig: 1 tablet orally daily
- Lipitor 40 mg Tab sig: 1 tablet orally qhs
- metFORMIN ER 500 mg Tab ER 24hr sig: TAKE ONE TABLET BY MOUTH EVERY EVENING
- Metoprolol Succinate ER 50 mg Tab ER 24hr sig: 1 tablet orally twice daily
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation sig: 1-2 puffs inhaled orally every 4 hours as needed for cough or wheeze
- Sildenafil Citrate 20 mg Tab sig: 1-3 tablets as needed 1 hour prior to intercourse
- Temazepam 30 mg Cap sig: 1 capsule orally daily at bedtime as needed
- Wellbutrin XL 300 mg Tab ER 24hr sig: 1 Tablet PO Daily
- Fluticasone Propionate 50 MCG/ACT Suspension Nasal sig: 1-2 sprays intranasally daily in each nostril as needed
- Vitamin D3 25 MCG (1000 UT) Cap sig: 2 tablets orally daily

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 126/76 HR: 64 Temp: 97.1 °F RR: 18 Ht: 71 in. Wt: 237.4 lbs. [-3.4 from 240.8 lbs on 03/15/2022]
BMI: 33.11 [-0.47 from 33.58 on 03/15/2022] $O_2$: 96

PE: GENERAL: NAD, Well appearing

EYES: No injection

RESP: NAD; occassional exp wheeze upper clears with cough; diminished slightly in lower lobes

CVS: RRR, no LE edema

SKIN: No visible rash

PSYCH: A/O x 3

Data:
- Labs collected from both RAC x1 and LAC x1 using sterile technique. Pt tolerated well with no complaints. Pt was fasting. ARoss, MA
- Covid and Flu test were also performed my Millie. Pt tolerated well with no complaints.
- SARS-CoV-2 IgA: Negative
- Rapid Influenza A: Negative
- Rapid Influenza B: Negative
- A Spacer along with verbal instructions given to Pt.
- albumin/creatinine ratio, urine, random, cbc w/auto diff with platelets, comprehensive metabolic panel, estradiol, free t4 (thyroxine), hemoglobin a1c with eag, insulin, lipid panel, psa, total, t4 (thyroxine), testosterone, thyroid peroxidase ab, tsh, third generation, vitamin b-12, vitamin d, 25 oh 02/21/2022
- NT-proBNP added- 2/21 by David @ CPL
- Echocardiogram, 1/6/22 03/11/2022

**Assessment**

1. Fatigue R53.83
   - male pre-pellet labs, A1C pending to be drawn today
   - WIll /ro metabolic cause before changing any medications
   - did discuss with him that some of the fatigue may be from his CABG and he was enc to do cardiac rehab; he declined
   - ALso discussed with him the potential for depression relate dto his chronic cardic issues. He admits that the CABG has changed his life and he feels like he is not the same
   - Suggested he see Sara; he has declines
   - Will order CXR to r/o CHF vs bronchitis since shortness of breath is slightly worse.
   - Had echo in March 2022; EF was 65% with abnormal diastolic function, trace mitral regurg, normal right ventricle function
   - case was also discussed with Dr carter
2. Shortness of breath R06.02
   - CXR pending
3. Major depressive disorder F32.9
   - He feels like he may be a little more depressed since having his CABG in Dec 2021.
   - some days he feels like he has less motivation and flat affect than others.
   - He wants to come off lexapro and has stopped taking it for a few days but did not feel like it made a difference. Discussed to remain on current medications until labs and imaging results are back to r/o other cause for sx.

**Follow-up**

labs today, flu/covid swab per pt request
CXR pending
will call pt to discuss results

Signed electronically by DANYEL KUSH, FNP on 04/21/2022 10:43 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: ; 68 yrs, 6 mo at the time of visit
Seen by DANYEL KUSH, FNP

**Date of Encounter: 03/15/2022**

**Exam Reason (CC): annual, chronic disease f/u**

**Subjective**

1. Preventative health care
   - pt is here to review labs
2. Atrial fibrillation
   - has been stable since being off amiodarone and on metoprolol.
   - He states since he has been on metoprolol for the last 2 years he feels like he is slightly more tired than normal.
   - Has talked with cardiology about this a couple weeks ago
3. BPH (benign prostatic hyperplasia)
   - still has some nocturia but manageble.
   - urinary stream is steady with flomax daily.
   - able to empty bladder fully
4. Insomnia
   - has been more tired recently with time change
   - Has been using temazepam nightly and using CPAP
5. Elevated hemoglobin A1c
   - has been tryin to make diet changes and eating less carbs
   - still eats a sugar free dessert most days of the week.
6. OSA (obstructive sleep apnea)
   - remains compliant with CPAP use
7. Low vitamin D level
   - has been low in the past and not taking a supplment
8. CAD (coronary artery disease)
   - he is followed by cardiology closely. Had double bypass 10/2/21, then after completing cardiac rehab had a stent placed 11/19/21.
   - Seen 2 weeks ago by cardiology and told he needs to walk at least 30 min a day. he did not want to do cardiac rehab.
9. Hypothyroid
   - has been taking medication as prescribed

**Allergy: NKDA**

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

Meds:
- ALPRAZolam 0.5 mg Tab sig: TAKE ONE-HALF TO ONE TABLET BY MOUTH EVERY DAY AS NEEDED FOR ANXIETY
- Clopidogrel Bisulfate 75 mg Tab
- Flomax 0.4 mg Cap sig: 1 capsule orally qhs
- Levothyroxine Sodium 50 MCG Tab sig: TAKE ONE TABLET BY MOUTH EVERY MORNING ON AN EMPTY STOMACH
- Lipitor 40 mg Tab sig: 1 tablet orally qhs
- metFORMIN ER 500 mg Tab ER 24hr sig: TAKE ONE TABLET BY MOUTH EVERY EVENING
- Metoprolol Succinate ER 50 mg Tab ER 24hr sig: 1 tablet orally daily
- Sildenafil Citrate 20 mg Tab sig: 1-3 tablets as needed 1 hour prior to intercourse
- Temazepam 30 mg Cap sig: 1 capsule orally daily at bedtime as needed
- Wellbutrin XL 300 mg Tab ER 24hr sig: 1 Tablet PO Daily

ROS: GENERAL: Denies fever, chills weight loss or sleep abnormalities
EYES: Denies visual abnormalities
HENT: Denies nasal discharge, sore throat, ear pain or headache
RESP: No shortness of breath or wheezing
CVS: Denies chest pain, palpitations, irregular heart beat or leg edema
GI: Denies nausea, vomiting, diarrhea, abdominal pain or blood in stool
GU: Denies dysuria, hesitancy or hematuria
MSS: Denies joint pain or swelling
NS: Denies weakness, nerve pain or numbness
SKIN: No rashes

**Objective**

**Vitals:**

BP: 134/73 HR: 68 Temp: 98.6 °F RR: 18 Wt: 240.8 lbs. [+1 from 239.8 lbs on 02/22/2022] BMI: 33.58 [+0.13 from 33.45 on 02/22/2022] $O_2$: 94

PE: GENERAL: Well appearing, NAD
EYES: EOMI
HENT: Nontraumatic, no acute abnormalities of ENT
NECK: Nontender, FROM
RESP: CTA bilaterally with good air flow
CVS: Regular rate and rhythm, no murmurs, rubs or gallops
ABDOM: nontender, normal bowel sounds. No masses or hepatosplenomegaly
MSS: Nontender back, no CVAT. Using extremities normally
NS: No focal deficit. Strength and sensation intact
SKIN: No lesions, rash
PSYCH: A/O x 3, appropriate

**Assessment**

1. Preventative health care Z00.00
    - reviewed all labs with pt.
    - current on colonoscopy; 2021
    - states he has had pneumonia vaccine in the past
2. Atrial fibrillation I48.91
    - remains in NSR. EKG unchanged from preious ones done by cardiology.
3. BPH (benign prostatic hyperplasia) N40.0
4. Insomnia G47.00
5. Elevated hemoglobin A1c R73.09
6. OSA (obstructive sleep apnea) G47.33
    - continue to wear CPAP
7. Low vitamin D level R79.89
    - remains low
    - enc to take OTC supplment
8. CAD (coronary artery disease) I25.10
    - trying to walk daily at least 30 min a day
    - states some days he feels more tired than others.
9. Hypothyroid E03.9
    - slightly increase in TSH; hypothyroid.
    - States he has been taking medication at night after dinner
    - Free T4 on lower end of normal
    - increase levothyroxine to 75 mcg
    - repeat thyroid labs in 8 weeks

**Plan**

Tx: *New* Levothyroxine Sodium 75 MCG Tab 1 tablet orally one time #30 tablet RFx3

**Follow-up**
redraw thyroid labs in 8 weeks

Signed electronically by DANYEL KUSH, FNP on 03/21/2022 1:08 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

**Office Visit Note** ElationHealth

**Patient Name: William Reynolds**
D.O.B.: 68 yrs, 5 mo at the time of visit
Seen by DANYEL KUSH, FNP

**Date of Encounter: 02/22/2022**

**Exam Reason (CC): Fasting Male Pre Pellet, A1C, Lipids, Insulin and Urine MicroAlbumin**

**Vitals:**

BP: 125/79 HR: 67 Temp: 96.6 °F RR: 18 Wt: 239.8 lbs. [-4.6 from 244.4 lbs on 08/31/2021] BMI: 33.45 [-0.64 from 34.09 on 08/31/2021]
$O_2$: 98

Pt came in to have labs drawn and a urine sample. Collected from the LAC x1 using sterile technique. Pt tolerated well with no complaints. Urine sample collected. Pt also signed a Control Substance Agreement. ARoss, MA

Signed electronically by DANYEL KUSH, FNP on 02/24/2022 1:23 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William Reynolds

D.O.B. ; 68 yrs, 2 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 11/11/2021**

**Exam Reason (CC): PHONE - Cardiac Rehab, Depression, cough**

**Subjective**

1. Major depressive disorder
   - Noted especially by his wife, who is familiar with depression.
   - Mood changes are fast. Gets angry
   - Feels like a failure
   - Not very motivated, needs his wife to make him get up and go
   - Internal monologue is fairly frustrated with the slow difficult recovery
2. OSA (obstructive sleep apnea)
   - Using CPAP
3. Chest pain
   - Had open heart surgery 6 wks ago
   - Starting cardiac rehab this week
   - Getting a severe cough with rehab, stress and someone mentioned that it might be related to a nerve going to the diaphragm that can get irritated or damaged during surgery
   - Doesn't like using the incentive spirometry. causes coughing

**Allergy: NKDA**

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: / (well controlled at home)

PE: virtual visit

**Assessment/Plan**

1. Major depressive disorder F32.9
   - Continue Welbutrin 300 XL
   - Start Lexapro 10 daily
   - Will see about getting Counseling with Sarah virtually
   - SI/HI warnings given
   - Could take a year to fully recover from open heart surgery
2. OSA (obstructive sleep apnea) G47.33
   - continue CPAP
3. Chest pain R07.9
   - 11/11/2021: Dr Turner states patient may return to regular activity with no restrictions
   - Recommend incentive spirometry and rehab as directed
   - Could take a year to fully recover from open heart surgery

Orders:
- *New* Lexapro 10 mg Tab 1 tab po daily #90 RFx2
- *New* Pantoprazole Sodium 40 mg Tab delayed rel 1 tablet orally daily on empty stomach #90 RFx1

Signed electronically by Clinton Carter, M.D. on 11/17/2021 12:49 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Laboratory Report

*As of 10/03/2022, in ElationHealth*

**Patient Name: William Reynolds**
D.O.B.: ; 69 yrs, 0 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

File Received: 04/20/2022 1:23 pm
Ordered By: N/A

Requisition No.: N/A

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| COVID-19 | | | |
| SARS-CoV-2 IgA | Negative | Negative | |
| Rapid Influenza | | | |
| Rapid Influenza A | Negative | Negative | |
| Rapid Influenza B | Negative | Negative | |

Status: FINAL

Collected: 04/20/2022 1:22 pm
Completed: 04/20/2022 1:22 pm

Signed electronically by DANYEL KUSH, FNP on 04/20/2022 2:03 pm in ElationHealth

CHRISTUS Health

CHRISTUS Mother Frances Hospital Tyler ECC
800 E Dawson
Tyler TX 75701

Reynolds, William J
MRN: 096638825, DOB: 9/11/1953, Sex: M
Adm: 1/6/2022

# William J Reynolds

1/6/2022 3:41 PM ED
MRN: 096638825

Description: Male DOB: Department: **MFH EMERGENCY CARE CENTER** Encounter #: **400097528236**

## Complete Echo (Adult): Patient Communication

Released

Not seen

# Results

Complete Echo (Adult) (Order 253436736)

## Complete Echo (Adult)

Order: 253436736

Status: **Final result** Visible to patient: **Yes (not seen)**

Next appt: **03/30/2022 at 10:00 AM in Otolaryngology (J Dan Toney, MD)**

0 Result Notes

**Details**

| Reading Physician | Reading Date | Result Priority |
|---|---|---|
| Paniagua, Oscar, MD<br>903-342-5227 | 1/7/2022 | |

Narrative & Impression
INTERPRETATION SUMMARY:

- Normal left ventricular size.
- Abnormal diastolic function is noted.
- The visually estimated ejection fraction is 65%.
- There is no evidence of regional wall motion abnormalities.
- There is trace mitral valve regurgitation.
- The right ventricular systolic pressure is normal.

IMPRESSION:

Left Ventricle
Normal left ventricular size. The left ventricular systolic function is normal. The visually estimated ejection fraction is 65%. There is no evidence of regional wall motion abnormalities. Abnormal diastolic function is noted. Evidence suggests diastolic dysfunction - Grade II (Mild-moderate increase in filling pressure).

Right Ventricle
Normal right ventricular size.

Atria
Both atria are normal in size. There is no evidence of interatrial shunt.

Aortic Valve
Normal aortic valve structure and function. There is no aortic valve regurgitation.

Mitral Valve
The mitral valve appears normal. There is trace mitral valve regurgitation.

Pulmonic Valve
The pulmonic valve was not well visualized. There is no pulmonic valve regurgitation.

Tricuspid Valve
Normal tricuspid valve structure. There is trace tricuspid valve regurgitation. The right ventricular systolic pressure is normal. The right ventricular systolic pressure is 25 mmHg.

Great Vessels
All visible segments of the aorta are normal in size.

Venous
The inferior vena cava is normal in size.

Pericardium/Pleural
There is no evidence of pericardial effusion.

| | Ref Range & Units | 1/7/22 12:06 PM |
|---|---|---|
| **LVEF Physician** | 55 - 70 | 65 |
| Resulting Agency | | TMFRadCard |

Specimen Collected: 01/07/22 11:42 AM    Last Resulted: 01/07/22 5:02 PM

Order Details  View Encounter  Lab and Collection Details  Routing  Result History

### Result Care Coordination

Patient Communication

Released    Not seen    Back to Top

### Lab Information

TMF RAD/CARD

### Linked Documents

View Image

Interpreting Provider
PANIAGUA, OSCAR [435]

| Electronically signed by | Result Date |
|---|---|
| PANIAGUA, OSCAR [435] | Jan 7, 2022 |

## Additional Information

| Specimen ID | Bill Type | Client ID |
|---|---|---|
| MI22-18948 | | |

| Specimen Date Taken | Specimen Time Taken | Specimen Received Date | Specimen Received Time | Result Date | Result Time |
|---|---|---|---|---|---|
| Jan 7, 2022 | 11:42 | | | Jan 7, 2022 | 17:02 |

### View SmartLink Info

Complete Echo (Adult) (Order #253436736) on 1/6/22

### Tracking Links

Cosign Tracking    Order Transmittal Tracking

Signed electronically by DANYEL KUSH, FNP on 03/14/2022 8:17 am in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# CPL Laboratory Report

*As of 10/03/2022, in* ElationHealth

**Patient Name: William Reynolds**

D.O.B.: ; 69 yrs, 0 mo at the time of printing this document
Gender: Male
Patient ID: 131770320027649
Cared for by Clinton Carter, M.D.

File Received: 02/25/2022 2:50 am
Ordered By: KUSH,DANYEL

Requisition No.: SW2532280001365

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TESTOSTERONE | | | |
| TESTOSTERONE | 517 | 300 - 720 NG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/23/2022 2:16 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| LIPID PANEL | | | |
| CHOLESTEROL | 143 | < 200 MG/DL | |
| TRIGLYCERIDES | 98 | < 150 MG/DL | |
| HDL CHOLESTEROL | 60 | > 39 MG/DL | |
| CALC LDL CHOL | 65 | < 100 MG/DL | |

NOTE: CALCULATED LDL IS BASED ON MARTIN-HOPKINS METHOD WHICH INCLUDES ADJUSTABLE TRIGLYCERIDE:VLDL CHOLESTEROL RATIO. THIS FACTOR VARIES BY MEASURED TRIGLYCERIDE AND NON-HDL CHOLESTEROL CONCENTRATIONS WITH INCREASED CALCULATED LDL SEEN IN HIGHER TRIGLYCERIDE OR LOWER NON-HDL SPECIMENS. FOR MORE INFORMATION, SEE CLIENT ANNOUNCEMENT AT http://www.cpllabs.com/CalcLDL-C

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| RISK RATIO LDL/HDL | 1.08 | < 3.55 RATIO | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/23/2022 2:57 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| COMPREHENSIVE METABOLIC PANEL | | | |
| GLUCOSE | 91 | 70 - 99 MG/DL | |
| BUN | 15 | 8 - 23 MG/DL | |
| CREATININE | 1.16 | 0.80 - 1.40 MG/DL | |
| eGFR (2021 CKD-EPI) | 69 | > 60 ML/MIN/1.73 | |
| CALC BUN/CREAT | 13 | 6 - 28 RATIO | |
| SODIUM | 137 | 133 - 146 MEQ/L | |
| POTASSIUM | 5.4 | 3.5 - 5.4 MEQ/L | |
| CHLORIDE | 100 | 96 - 107 MEQ/L | |
| CARBON DIOXIDE | 23 | 19 - 31 MEQ/L | |
| CALCIUM | 9.2 | 8.5 - 10.5 MG/DL | |
| PROTEIN, TOTAL | 6.5 | 6.1 - 8.3 G/DL | |
| ALBUMIN | 4.3 | 3.5 - 5.2 G/DL | |
| CALC GLOBULIN | 2.2 | 1.9 - 3.7 G/DL | |
| CALC A/G RATIO | 2.0 | 1.0 - 2.6 RATIO | |
| BILIRUBIN, TOTAL | 0.4 | <=1.2 MG/DL | |
| ALKALINE PHOSPHATASE | 100 | 40 - 125 U/L | |
| AST | 20 | 9 - 50 U/L | |
| ALT | 25 | 5 - 50 U/L | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 2:57 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| CBC W/AUTO DIFF WITH PLATELETS | | | |
| WBC | 5.7 | 3.5 - 11.0 K/UL | |
| RBC | 5.21 | 4.50 - 6.10 M/UL | |
| HEMOGLOBIN | 14.8 | 13.5 - 17.0 G/DL | |
| HEMATOCRIT | 47.1 | 40.0 - 51.0 % | |
| MCV | 90.4 | 80.0 - 99.0 fL | |
| MCH | 28.4 | 25.0 - 33.0 PG | |
| MCHC | 31.4 | 31.0 - 36.0 G/DL | |
| RDW | 14.2 | 11.5 - 15.0 % | |
| NEUTROPHILS | 68 | % | |
| LYMPHOCYTES | 18 | % | |
| MONOCYTES | 10 | % | |
| EOSINOPHILS | 2 | % | |
| BASOPHILS | 1 | % | |
| PLATELET COUNT | 356 | 130 - 400 K/UL | |
| ABSOLUTE NEUTROPHILS | 3.89 | 1.50 - 7.50 K/UL | |
| ABSOLUTE LYMPHOCYTES | 1.00 | 1.00 - 4.00 K/UL | |
| ABSOLUTE MONOCYTES | 0.58 | 0.20 - 1.00 K/UL | |
| ABSOLUTE EOSINOPHILS | 0.11 | 0.00 - 0.50 K/UL | |
| ABSOLUTE BASOPHILS | 0.07 | 0.00 - 0.20 K/UL | |

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 3:11 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| HEMOGLOBIN A1c WITH EAG | | | |
| **HEMOGLOBIN A1c** | **5.8** H | 4.2 - 5.6 % | |
| **ESTIMATED AVERAGE GLUCOSE** | **120** H | < 117 MG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/23/2022 4:29 pm

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| THYROID PEROXIDASE AB | | | |
| THYROID PEROXIDASE AB | <1 | < 9 IU/ML | |

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 7:04 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| ALBUMIN/CREATININE RATIO, URINE, RANDOM | | | |
| CREATININE, URINE, RANDOM | 216.9 | NOT ESTAB MG/DL | |
| ALBUMIN, URINE, RANDOM | 4.7 | NOT ESTAB MG/DL | |
| CALC ALBUMIN/CREAT, RND | 22 | < 30 MG/G | |

Note: Albumin/Creatinine ratio reference interval reflects ADA and NKF guidelines.

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 7:22 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| INSULIN | | | |
| INSULIN | 20 | 2 - 21 UIU/ML | |

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Note: Reference interval represents standard fasting reference range.

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| PSA, TOTAL | | | |
| PSA, TOTAL | 3.52 | < 4.000 NG/ML | |

NOTE: Methodology is Roche Cobas Electrochemiluminescence
Immunoassay traceable to WHO reference standard 96/760.

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| ESTRADIOL | | | |
| ESTRADIOL | 28.9 | <=60.7 PG/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| T4 (THYROXINE) | | | |
| T4 (THYROXINE) | 7.1 | 4.5 - 10.5 UG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| FREE T4 (THYROXINE) | | | |
| FREE T4 (THYROXINE) | 1.14 | 0.80 - 1.90 NG/DL | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| TSH, THIRD GENERATION | | | |
| **TSH, THIRD GENERATION** | **8.250** H | 0.400 - 4.100 UIU/ML | |

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780
Status: FINAL

Collected: 02/21/2022 4:49 pm
Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN B-12 | | | |
| VITAMIN B-12 | 361 | 200 - 950 PG/ML | |

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|

Testing Performed At:
DRL: DRL Labs, 3910 Brookside Dr., Ste. 200, Tyler, TX 75701
CLIA #: 45D1018408

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/24/2022 8:06 am

| Test Name | Value | Reference Range | Loc |
|---|---|---|---|
| VITAMIN D, 25 OH | | | |
| **VITAMIN D, 25 OH** | **26** L | SEE BELOW NG/ML | |

```
NOTE: 25-HYDROXYVITAMIN D ASSAY INCLUDES 25-HYDROXYVITAMIN D2
      AND D3.  METHODOLOGY IS CHEMILUMINESCENT IMMUNOASSAY.

                ***** INTERPRETIVE RANGES *****
PEDIATRIC (<17 YEARS) . . . . . . . . . . . NG/ML         20-100
ADULT:
  INSUFFICIENT  . . . . . . . . . . . . . . NG/ML         <20
  SUBOPTIMAL  . . . . . . . . . . . . . . . NG/ML         20-29
  OPTIMAL . . . . . . . . . . . . . . . . . NG/ML         30-100
```

Testing Performed At:
CPL: Clinical Pathology Laboratories, 9200 Wall St., Austin, TX 78754
Laboratory Director: Mark A Silberman, M.D., CLIA #: 45D0505003

Accession No.: BL566780 Collected: 02/21/2022 4:49 pm
Status: FINAL Completed: 02/25/2022 2:43 am

**Abnormal Value Legend:**
H = Above high normal L = Below low normal

Signed electronically by DANYEL KUSH, FNP on 02/25/2022 9:24 am in ElationHealth

Date: Tue Oct 04 08:12:16 CDT 2022
From: Lori Jones <Lori.Jones@lfg.com>
To:
E-communication from Lincoln Financial Group
Message-ID: <244018103.13.1664889136658.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Lori Jones**
**Claims Examiner II, Social Security**
LN10-Lincoln National Life Insurance Co
90th & Dodge
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 *2787
Fax: 402-361-1219
Email: Lori.Jones@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 4, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227100000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Mr. Reynolds:

While reviewing your claim for Long-Term Disability benefits, we have determined that we need additional Social Security information to update and appropriately manage your claim.

Please be advised that since you are at Full Retirement Age, we need you to provide our office with your Social Security Retirement Notice of Award letter. If you have not filed for Social Security Retirement benefits, you need to do so and provide our office with the notice of award.

Your Long Term Disability policy does state that you are required to file for any additional benefits that you are entitled to; such as Social Security Retirement benefits.

This information should be documentation you received directly from the Social Security Administration (SSA) office. Should you not have your most recent copy available, your local SSA office will be able to provide you with a copy to return to our office.

Please return all the requested information to our office by November 4, 2022.

You may forward this information to us at either of the following locations:

- The address in the above letterhead
- Fax Number: 1-877-843-3950
- Email: Disabilityclaims@LFG.com

Should you have any questions regarding this matter, feel free to contact me at 1-800-423-2765, ext-2787.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Sincerely,

Lori Jones
800-423-2765 *2787
Claims Examiner II, Social Security
The Lincoln National Life Insurance Company

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 3, 2022

CLINT CARTER, MD
RELEASE OF INFORMATION
1285 OAK ALLEY
TYLER, TX 75703

| | | |
|---|---|---|
| Re: | Policy Number: | 00001021227100000 |
| | Claim Number: | 1220082997 |
| | Patient: | William Reynolds |
| | DOB: | |

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 09/01/2021 to Present |
| Diagnostic Test Results | 09/01/2021 to Present |

Current state statutes for Texas: Doctors and Healthcare Providers shall charge a reasonable fee of no more than: $25.00 for the first 20 pages; $.50 per page thereafter; $8.00 per copy of an imaging study; $15.00 may be charged for executing an affidavit. Actual postage may be charged. A hospital may charge a reasonable fee. A basic retrieval fee, which must include the fee for providing the first 10 pages of the copies, may not exceed $52.12. For Pages 11-60 a fee of $1.76 per page; For Pages 61-400 a fee of $.86; for any remaining Pages a fee of $0.47. The actual cost of postage may be charged. If the records are on microfilm, the retrieval fee, which includes the fee for the first 10 pages may not exceed $79.39, and there is a $1.81 per page thereafter. The actual cost of postage may be charged. Digital or electronic medium records may charge a basic retrieval or processing fee of $94.42. Additionally, there may be a reasonable charge for certification of a document, and a written response to a written set of questions may charge a fee of $10.00. For pharmacies: A reasonable fee for providing the requested records in electronic format shall be a charge of no more than: $25 for 500 pages or less; $50 for more than 500 pages.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950**.

***Payment Options:***

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** *(*Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ______________________________ Date: ____________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Stephanie Wingfield
Assisting on behalf of Paul Webber
800-423-2765 x 7695
Adminr, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birth: ____ ____ ________ Social Security Number: ______________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** William Joseph Reynolds **DATE** 9/15/22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** William Joseph Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________

**ADDRESS:** ______________________ (Street)

______________ (City) (State) (Zip Code)

**PHONE NO:** ______________________

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birth: ____ - ____ - ________ Social Security Number: ________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** William Joseph Reynolds **DATE** 9/15/22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** William Joseph Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ________________

**ADDRESS:** ________________ (Street)

________________ (City) (State) (Zip Code)

**PHONE NO:** ________________

(Please see FRAUD NOTICES attached)

E-confirmation from Lincoln Financial Group

Date: Mon Sep 26 18:25:15 CDT 2022
From: Paul Webber <Paul.Webber@lfg.com>
To: bjackson@jsfoods.com
Message-ID: <1662824745.3.1664234715631.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Paul Webber**
**Specialist, LTD Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 7695
Fax: 402-951-0498
Email: Paul.Webber@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 26, 2022

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Brandy Jackson:

We have completed our initial review of the claim for Long Term Disability filed by Mr. Reynolds and have determined additional information is needed prior to benefits being considered.

At this time we need the following information from you:

- 2021 W-2 and End of Year Earnings Statement
- Documentation of other income received since last day worked
- Job Description
- Retirement/Pension Information
- Response to Email dated 09/26/2022

We have also requested information from your employee and their attending physician.

We request that this information be provided to our office no later than 11/10/2022. Once the requested information is received, the claim process will continue.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

Date: Mon Sep 26 18:15:44 CDT 2022
From: Paul Webber <Paul.Webber@lfg.com>
To:
Message-ID: <1595332876.28.1664234144528.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220082997 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220082997

Please review the attached letter and/or document(s) regarding the Claim #1220082997 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Paul Webber**
**Specialist, LTD Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 7695
Fax: 402-951-0498
Email: Paul.Webber@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 26, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212271000000
Claim Number: 1220082997
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our initial review of your claim for Long Term Disability and have determined additional information is needed prior to benefits being considered.

To determine disability, we must evaluate medical documentation to determine if your condition precludes you from performing the main duties of your occupation.

Medical documentation includes, but is not limited to, office and treatment records, testing results, therapy notes, consultation reports and operative reports. A note from your physician, without any supporting medical documentation as outlined above, will not be sufficient to consider your claim.

We have assisted you by requesting copies of all medical records from MyMD Select/Clint Carter, MD dated 09/01/2021 to Present. At this time, we will pay for the charges related to obtaining these records. It may help speed up the process if you contact your physician(s) and remind them of the urgency of this request. Please work with your physician(s) to ensure these records are received in our office no later than 10/26/2022.

Additionally, please provide The Lincoln National Life Insurance Company with the following documentation and contact us to complete your required telephone interview within the next 30 days:

- All Office/Treatment Notes and Diagnostic Test Results from all other Treating Medical Professionals [to include Psychotherapy, Cognitive Behavioral Therapy] dated 09/01/2021 to Present
- Social Security Retirement Income Notice of Award Letter

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We have also been in contact with your Employer regarding additional information required from them to continue processing your claim.

Once all of the requested information has been received, we will continue our review of your claim.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Paul Webber
800-423-2765 x 7695
Specialist, LTD Claims
The Lincoln National Life Insurance Company

Lincoln Financial Group

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birt[redacted] Social Security Number: [redacted]

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits, and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** William Joseph Reynolds **DATE** 9, 15, 22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** William Joseph Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________

**ADDRESS:** [redacted] (Street)

[redacted] (City) (State) (Zip Code)

**PHONE NO:** [redacted]

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC11750LTD

Lincoln Financial Group®

# Long Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**1. Your Information**

| | | |
|---|---|---|
| Full Name (First) | William | |
| (M.I.) | J | |
| (Last Name) | Reynolds | |
| Social Security Number | [redacted] | |
| Date of Birth | [redacted] | |
| Address / City / State / Zip Code | [redacted] | |
| Phone Number | [redacted] | ■ Male ☐ Female |
| Email Address | [redacted] | |

**2. Your Employer**

| | |
|---|---|
| Employer Name | John Soules Foods |
| Group ID | HCH1002 |
| Job Title | Sales Analyst |
| Policy Number | H1002000003-01 |
| Billing Location | Tyler, Texas |

**3. Reason for inability to work**

Description of Sickness, Injury or Pregnancy: Reduced concentration, confidence, and energy levels. Inability to handle the scope and stress of the job.

Date Last Worked: 04 / 22 / 2022

Injury work related? ☐ Yes ■ No

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | 2936 | 08 / 10 / 2022 | __/__/____ | 05 / 06 / 2022 |
| Workers' Comp | | __/__/____ | __/__/____ | __/__/____ |
| Salary Continuance | | __/__/____ | __/__/____ | __/__/____ |
| State Disability | | __/__/____ | __/__/____ | __/__/____ |
| Other Disability | | __/__/____ | __/__/____ | __/__/____ |
| Sick Pay | | __/__/____ | __/__/____ | __/__/____ |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

■ Yes ☐ No If yes, indicate how much? 15%

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

**5. Who is your treating health care provider?**

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

| | |
|---|---|
| Physician's Full Name | Dr. Clint Carter - MyMD Select Tyler, Tx |
| Phone Number | 903-630-7130 |
| Fax Number | 903-705-0992 |
| Street Address | 2385 Oak Alley |
| City | Tyler |
| State | TX |
| Zip Code | 75703 |

**6. Account for Direct Deposit** ■ Checking ☐ Saving

| | |
|---|---|
| Bank Name | Capital One Bank |
| Routing Number | [redacted] |
| Account Number | [redacted] |

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: William J Reynolds (signed) Date: 9/9/22

Print Name: William J Reynolds

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC11750LTD-A Claim Submission Part 1 of 1

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☐ Yes ■ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ■ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:

4. Please provide the location and address where the illness or injury occurred:

5. Please provide the Responsible Party's information:
   1. Name: ____________________
   2. Address: ____________________
   3. Telephone Number: ____________________
   4. Insurance Company's Name: ____________________
   5. Claim Number: ____________________
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: ____________________
   2. Address: ____________________
   3. Telephone Number: ____________________
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J Reynolds

Signature: [signature] Date: 9, 9, 22

GLC11750LTD-A

Page 2 of 4
12/17

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☐ Yes ■ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ■ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:

4. Please provide the location and address where the illness or injury occurred:

5. Please provide the Responsible Party's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
   4. Insurance Company's Name: ______
   5. Claim Number: ______
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J Reynolds

Signature: [signature] Date: 9, 9, 22

GLC11750LTD-A

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Bir[redacted] Social Security Number: [redacted]

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits, and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** William Joseph Reynolds **DATE** 9, 15, 22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** William Joseph Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____

**ADDRESS:** [redacted] (Street)

[redacted] (City) (State) (Zip Code)

**PHONE NO:** [redacted]

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC11750LTD

Lincoln Financial Group®

# Long Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**1. Your Information**

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number | Date of Birth |
|---|---|---|---|---|
| William | J | Reynolds | [redacted] | [redacted] |

[redacted] City State Zip Code

Phone Number: [redacted] ■ Male ☐ Female

Email Address: [redacted]

**2. Your Employer**

Employer Name: John Soules Foods

Group ID: HCH1002

Job Title: Sales Analyst

Policy Number: H1002000003-01

Billing Location: Tyler, Texas

**3. Reason for inability to work**

Description of Sickness, Injury or Pregnancy: Reduced concentration, confidence, and energy levels. Inability to handle the scope and stress of the job.

Date Last Worked: 04 / 22 / 2022

Injury work related? ☐ Yes ■ No

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | 2936 | 08 / 10 / 2022 | __/__/__ | 05 / 06 / 2022 |
| Workers' Comp | | __/__/__ | __/__/__ | __/__/__ |
| Salary Continuance | | __/__/__ | __/__/__ | __/__/__ |
| State Disability | | __/__/__ | __/__/__ | __/__/__ |
| Other Disability | | __/__/__ | __/__/__ | __/__/__ |
| Sick Pay | | __/__/__ | __/__/__ | __/__/__ |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

■ Yes ☐ No If yes, indicate how much? 15%

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

**5. Who is your treating health care provider?**

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Physician's Full Name: Dr. Clint Carter - MyMD Select Tyler, Tx

Phone Number: 903-630-7130

Fax Number: 903-705-0992

Street Address: 2385 Oak Alley

City: Tyler State: TX Zip Code: 75703

**6. Account for Direct Deposit** ■ Checking ☐ Saving

Bank Name: Capital One Bank

[redacted] Routing Number

[redacted] Account Number

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: William J Reynolds (signed) Date: 9 / 9 / 22

Print Name: William J Reynolds

(Please see FRAUD NOTICES attached)

# Appointments and Visits

## Upcoming Visits

There are no upcoming visits to display.

## Past Visits

Last 3 Months

AUG 23 2022 **Office Visit**
P Pitonak, MD
CHRISTUS Trinity Clinic Cardiology

JUL 19 2022 **Clinical Support**
LPOHH
CHRISTUS Trinity Clinic Cardiology

**Hospital Visit**
MOTHER FRANCES HOSPITAL
July 11, 2022 - July 11, 2022

JUL 8 2022 **Office Visit**
P Pitonak, MD
CHRISTUS Trinity Clinic Cardiology

3 Months Ago

MAR 31 2022 **Clinical Support**
LPOHH
CHRISTUS Trinity Clinic Cardiology

MAR 30 2022 **Office Visit**
J Torrey, MD
CHRISTUS Trinity Clinic Ear Nose and Throat

6 Months Ago

FEB 23 2022 **Office Visit**
P Pitonak, MD
CHRISTUS Trinity Clinic Cardiology

JAN 6 2022 **Emergency Department**
CHRISTUS Mother Frances Hospital Tyler EDC

DEC 30 2021 **Clinical Support**
LPOHH
CHRISTUS Trinity Clinic Cardiology

**Hospital Visit**
MOTHER FRANCES HOSPITAL
December 19, 2021 - December 21, 2021

NOV 19 2021 **Office Visit**
P Pitonak, MD
CHRISTUS Trinity Clinic Cardiology

NOV 15 2021 **Office Visit**
W Turner, MD
CHRISTUS Trinity Clinic Cardiothoracic Surgery

OCT 26 2021 Hospital Outpatient Visit
CHRISTUS Trinity Clinic Broadway Commons

OCT 14 2021 **Office Visit**
Nurse Haylee, RN
CHRISTUS Trinity Clinic Cardiothoracic Surgery

**Hospital Visit**
MOTHER FRANCES HOSPITAL
September 28, 2021 - October 08, 2021

1 Year Ago

JAN 29 2021 **Hospital Outpatient Visit**
S Hutto, MD
CHRISTUS Mother Frances Hospital Tyler Endoscopy Center

Lincoln Financial Group®

# Long Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**1. Your Information**

Full Name (First): William | (M.I.): J | (Last Name): Reynolds

[redacted]

City | State | Zip Code

Social Security Number [redacted] | Date of Birth

Phone Number [redacted] | ■ Male ☐ Female

Email Address [redacted]

**2. Your Employer**

Employer Name: John Soules Foods

Group ID: HCH1002 | Job Title: Sales Analyst

Policy Number: H1002000003-01 | Billing Location: Tyler, Texas

**3. Reason for inability to work**

Description of Sickness, Injury or Pregnancy: Reduced concentration, confidence, and energy levels. Inability to handle the scope and stress of the job.

Date Last Worked: 04/22/2022

Injury work related? ☐ Yes ■ No

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | 2936 | 08/10/2022 | __/__/__ | 05/06/2022 |
| Workers' Comp | | __/__/__ | __/__/__ | __/__/__ |
| Salary Continuance | | __/__/__ | __/__/__ | __/__/__ |
| State Disability | | __/__/__ | __/__/__ | __/__/__ |
| Other Disability | | __/__/__ | __/__/__ | __/__/__ |
| Sick Pay | | __/__/__ | __/__/__ | __/__/__ |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

■ Yes ☐ No If yes, indicate how much? 15%

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

**5. Who is your treating health care provider?**

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Physician's Full Name: Dr. Clint Carter - MyMD Select Tyler, Tx

Phone Number: 903-630-7130 | Fax Number: 903-705-0992

Street Address: 2385 Oak Alley

City: Tyler | State: TX | Zip Code: 75703

**6. Account for Direct Deposit** ■ Checking ☐ Saving

Bank Name: Capital One Bank

[redacted]

Routing Number

[redacted]

Account Number

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: William J Reynolds | Date: 9/9/22

Print Name: William J Reynolds

(Please see FRAUD NOTICES attached)

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☐ Yes ■ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ■ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:
4. Please provide the location and address where the illness or injury occurred:
5. Please provide the Responsible Party's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
   4. Insurance Company's Name: ______
   5. Claim Number: ______
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J Reynolds

Signature: [signature] Date: 9 / 9 / 22

Lincoln Financial Group®

# Long Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**1. Patient Information**

Full Name (First): William (M.I.): (Last Name): Reynolds

Social Security Number:

Height: 71 Weight: 245 Blood Pressure: 129/69

Employer Name: John Soules Foods

**2. Diagnosis**

Primary ICD diagnostic Code (Required): R29.818

Primary ICD diagnosis Description: Disability due to neuro d/o

Secondary ICD Diagnosis Code: F43.8

Secondary ICD Diagnosis Description: Other reactions to severe Stress

Pregnancy ___/___/___ First Treated ___/___/___ Estimated Delivery ___/___/___ Date of Delivery ☐ Vaginal ☐ C-Section

back to back acute MI's c̄ difficult rehab and depression, anxiety; unable to return to his job of complex decision making and computations. Anxiety becomes severe with returning to work / properties.

Symptoms

Flat affect, visable anxiety c̄ discussing returning to work

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings)

**3. Disability Circumstances** - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances

Date of:

Symptoms first Appeared: 9/26/21
Reduced Ability to work: 1/1/22
Advised to stop work: 4/28/22
Initial Treatment: 9/28/21
Most Recent Treatment: 9/7/22
Next Treatment: 2-3 mo
Dates hospital confined: 9/26/22 to 10/8/22

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



PAGE 1/1 * RCVD AT 9/9/2022 4:19:53 PM [Eastern Daylight Time] * SVR:VA1PWFAX101/1 * DNIS:8778433950 * CSID:9037050992 * ANI:9036306301 * DURATION (mm-ss):00-53

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Friday, December 15, 2023 9:04 AM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf |
| **Attachments:** | W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf |

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Friday, December 15, 2023 8:03:54 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Webber, Paul K <Paul.Webber@lfg.com>
**Subject:** W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Friday, January 12, 2024 1:43 PM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 INTERN MED ADDENDUM REPORT.pdf |
| **Attachments:** | W REYNOLDS 1220082997 INTERN MED ADDENDUM REPORT.pdf |

---

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Friday, January 12, 2024 12:42:15 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** W REYNOLDS 1220082997 INTERN MED ADDENDUM REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR – ADDENDUM REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

**From:** LFGAppeals
**Sent:** Monday, February 12, 2024 1:49 PM
**To:** entrprserip
**Subject:** FW: W REYNOLDS 1220082997 INTER MED ADDENDUM REPORT.pdf
**Attachments:** W REYNOLDS 1220082997 INTER MED ADDENDUM REPORT.pdf

---

**From:** Young, Amy D. (Medical Review) <Amy.Young2@lfg.com>
**Sent:** Monday, February 12, 2024 12:48:18 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** W REYNOLDS 1220082997 INTER MED ADDENDUM REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR – ADDENDUM REPORT

**Amy Young, CSSYB**
Manager, File Support
Clinical Support Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-7041 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Wednesday, February 14, 2024 3:51 PM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 PSYCH ADDENDUM REPORT.pdf |
| **Attachments:** | W REYNOLDS 1220082997 PSYCH ADDENDUM REPORT.pdf |

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Wednesday, February 14, 2024 2:50:08 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** W REYNOLDS 1220082997 PSYCH ADDENDUM REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR – ADDENDUM REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Friday, December 15, 2023 9:04 AM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 INTERN MED FINAL REPORT.pdf |
| **Attachments:** | W REYNOLDS 1220082997 INTERN MED FINAL REPORT.pdf |

---

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Friday, December 15, 2023 8:03:11 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Webber, Paul K <Paul.Webber@lfg.com>
**Subject:** W REYNOLDS 1220082997 INTERN MED FINAL REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

**From:** LFGAppeals
**Sent:** Thursday, May 11, 2023 1:53 PM
**To:** entrprserip
**Subject:** FW: Reynolds William (secure) 1220082997
**Attachments:** Reynolds William Attny ack letter.pdf

---

**From:** McShane, Susan <Susan.McShane@lfg.com>
**Sent:** Thursday, May 11, 2023 12:52:33 PM (UTC-06:00) Central Time (US & Canada)
**To:** helpdesk@jpricemcnamara.com <helpdesk@jpricemcnamara.com>
**Cc:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** Reynolds William (secure) 1220082997

**Susan McShane**
Claims Resolution Specialist
Claims Resolutions Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 x2769
Office

402-361-1152 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Wednesday, June 28, 2023 11:23 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Reynolds William (Secure) 1220082997 |
| **Attachments:** | Reynolds William Attny RTR letter.pdf; Reynolds William Clincal Review.pdf; Reynolds William IM OCC MED PER 112022.pdf; Reynolds Wiliam Psych Peer 122022.pdf |

---

**From:** McShane, Susan <Susan.McShane@lfg.com>
**Sent:** Wednesday, June 28, 2023 10:22:28 AM (UTC-06:00) Central Time (US & Canada)
**To:** support@pricemcnamara.com <support@pricemcnamara.com>
**Cc:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** Reynolds William (Secure) 1220082997

**Susan McShane**
Claims Resolution Specialist
Claims Resolutions Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 x2769
Office

402-361-1152 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Wednesday, July 26, 2023 11:49 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Reynolds William (secure) 1220082997 |
| **Attachments:** | Reynolds William Attny Uphold OO letter.pdf |

**From:** McShane, Susan <Susan.McShane@lfg.com>
**Sent:** Wednesday, July 26, 2023 10:48:10 AM (UTC-06:00) Central Time (US & Canada)
**To:** helpdesk@jpricemcnamara.com <helpdesk@jpricemcnamara.com>
**Cc:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** Reynolds William (secure) 1220082997

**Susan McShane**
Claims Resolution Specialist
Claims Resolutions Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 x2769
Office

402-361-1152 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Friday, December 15, 2023 9:00 AM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf |
| **Attachments:** | W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf |

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Friday, December 15, 2023 7:59:54 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>; Cronican, Amber <Amber.Cronican@lfg.com>
**Subject:** W REYNOLDS 1220082997 PSYCHIATRY FINAL REPORT.pdf

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Tuesday, December 13, 2022 5:50 PM
**To:** entrprserip
**Subject:** FW: W REYNOLDS 1220082997 FINAL REPORT.pdf
**Attachments:** W REYNOLDS 1220082997 FINAL REPORT.pdf

---

**From:** Young, Amy D. (Medical Review)
**Sent:** Tuesday, December 13, 2022 5:49:46 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Webber, Paul K
**Subject:** W REYNOLDS 1220082997 FINAL REPORT.pdf

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Amy Young, CSSYB**
Supervisor, File Support
Clinical Support Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-7041 Mobile

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Thursday, October 20, 2022 8:13 AM
**To:** entrprserip
**Subject:** FW: Lincoln Financial Group Information for Claim 1220082997 (SECURE)

---

**From:** Jones, Lori
**Sent:** Thursday, October 20, 2022 8:12:52 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Bill Reynolds
**Cc:** Disability Claims; Karen Dalton; Webber, Paul K; MD Clint Carter; sarah2jorden@gmail.com
**Subject:** RE: Lincoln Financial Group Information for Claim 1220082997 (SECURE)

Good Morning Mr., Reynolds,

Paul Webber is your Long-Term Disability claims examiner and he will be following up with you regarding your Long Term Disability claim.

Thank you.

**Lori Jones**
Social Security Technician
Claims Solutions Shared Services
402-361-2787 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

---

**From:** Bill Reynolds <
**Sent:** Wednesday, October 19, 2022 3:45 PM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>; Karen Dalton <karen.dalton@ebctx.com>; Webber, Paul K <Paul.Webber@lfg.com>; MD Clint Carter <drcarter@mymdselect.com>; sarah2jorden@gmail.com
**Subject:** Lincoln Financial Group Information for Claim 1220082997 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Lori,
On Thursday, October 13, 2022, I began a counseling program with Sarah S Jorden, Tyler, Texas. Sarah is a Licensed Professional Counselor, MA, LPC. and I will see her on a bi-weekly period going forward.

Her contact information is:

101 E Southeast Loop 323
Suite 100-A
Tyler, TX 75703
(903) 730-6676

I was referred to Ms. Jorden by Dr. Clint Carter and both she and Dr. Carter have discussed my anxiety and
stress issues relating to my pending long-term disability case. Dr. Carter has already submitted documents
to you on my behalf as he is my regular family doctor. Please feel free to reach out to either of these professionals
for their findings and my current limitations.

Thank you,

Bill Reynolds

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Thursday, November 10, 2022 3:12 PM
**To:** entrprserip
**Subject:** FW: LTD - William J Reynolds
**Attachments:** William ReynoldsW2.pdf; William Reynolds-YEAR END.pdf; Retail Project Analyst Position Description 9-2021 (002).pdf

---

**From:** Webber, Paul K
**Sent:** Thursday, November 10, 2022 3:11:10 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: LTD - William J Reynolds

---

**From:** Viviana Aguilar <vaguilar@jsfoods.com>
**Sent:** Thursday, November 10, 2022 11:08 AM
**To:** Webber, Paul K <Paul.Webber@lfg.com>
**Cc:** Brandy Jackson <bjackson@jsfoods.com>
**Subject:** RE: LTD - William J Reynolds

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Date of Hire: 02/13/1997
LFG LTD Enrollment Date: 01/01/2016
Insurance Class: 2
Last Day Worked Full-Time: 05/06/2022
Regular scheduled work hours (Example: Monday-Friday; 40 Hours per week): Monday – Friday; 40 hours a week.
Any other income receiving/has received (Sick Pay; Continuance Pay): STD 1,141.00 Weekly 05/10/2022-08/01/2022;
Retirement/Pension Information (Type of plan; Who contributes to it; and what percentages): Not that we are aware of.
Employment Status (Still Employed; Terminated; Leave of Absence): LOA.

What is your impression of what happened to cause the employee to stop working? Team member stopped working due to own personal illness. Cardiac rehab/mental health treatment.

Was there any time missed or absences prior to the employee's last day worked? If so, were these related to the employee's condition? No.

Has the employee indicated a potential return to work date? No return, he has exhausted FMLA.

Are you holding the job/position for the employee? Employee’s job is not protected, and we will be recruiting for his position.

What kind of worker was the employee prior to applying for disability? (Productive? Positive attitude? Relationships with peers/co-workers, supervisors/managers?) Productive, positive attitude, that we were aware of.

Are you willing to work with the employee if there are some restrictions and limitations identified by the physician? (This could be something like a graduated work schedule, light duty) Employee's job is not protected, and we will be recruiting for his position.

Team member's gross pay last year was $110,220.20
Net pay: $75,906.73

---

**From:** Brandy Jackson <bjackson@jsfoods.com>
**Sent:** Tuesday, September 27, 2022 8:54 AM
**To:** Webber, Paul K <Paul.Webber@lfg.com>
**Cc:** Viviana Aguilar <vaguilar@jsfoods.com>
**Subject:** RE: LTD - William J Reynolds

Adding our benefits coordinator to get you this information.

---

**From:** Webber, Paul K <Paul.Webber@lfg.com>
**Sent:** Monday, September 26, 2022 6:22 PM
**To:** Brandy Jackson <bjackson@jsfoods.com>
**Subject:** LTD - William J Reynolds

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good Afternoon,

I am currently reviewing Mr. Reynolds' claim for benefits under the LTD policy issued to John Soules Foods, Inc.

If you would please provide the employee's 2021 W-2 and End of Year Earnings Statement, job description, documentation of any other income you are aware the employee is receiving or has received since the employee's last day worked, and answer/confirm the following questions:

Date of Hire: 02/13/1997
LFG LTD Enrollment Date: 01/01/2016
Insurance Class: 2
Last Day Worked Full-Time: 05/06/2022
Regular scheduled work hours (Example: Monday-Friday; 40 Hours per week):
Any other income receiving/has received (Sick Pay; Continuance Pay): STD 1,141.00 Weekly 05/10/2022-08/01/2022;
Retirement/Pension Information (Type of plan; Who contributes to it; and what percentages):
Employment Status (Still Employed; Terminated; Leave of Absence):

What is your impression of what happened to cause the employee to stop working?

Was there any time missed or absences prior to the employee's last day worked? If so, were these related to the employee's condition?

Has the employee indicated a potential return to work date?

Are you holding the job/position for the employee?

What kind of worker was the employee prior to applying for disability? (Productive? Positive attitude? Relationships with peers/co-workers, supervisors/managers?)

Are you willing to work with the employee if there are some restrictions and limitations identified by the physician? (This could be something like a graduated work schedule, light duty)

Please don't hesitate to give me a call or email with any questions.

**Paul K Webber**
LTD Technical Specialist II

**Lincoln Financial Group**
LincolnFinancial.com

402.361.7695 Office

402.951.0498 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, November 28, 2022 12:26 PM |
| **To:** | entrprserip |
| **Subject:** | FW: W REYNOLDS 1220082997 FINAL REPORT |
| **Attachments:** | W REYNOLDS 1220082997 FINAL REPORT.pdf; W REYNOLDS 1220082997 AP LETTER.pdf |

---

**From:** Morfeld, Joann
**Sent:** Monday, November 28, 2022 12:25:26 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Webber, Paul K
**Subject:** W REYNOLDS 1220082997 FINAL REPORT

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

Joann Morfeld
File Support, Administrative Services
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

402-361-7203 Office

LincolnFinancial.com

**Follow us on:**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Friday, December 9, 2022 3:22 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Upload request for OA 1220082997 |
| **Attachments:** | image001.png; image002.png; image003.png; image004.png; image005.png; image006.png; WReynolds OA.pdf; WReynolds OA.pdf |

---

**From:** Belew, Jennifer
**Sent:** Friday, December 9, 2022 3:21:16 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Webber, Paul K
**Subject:** Upload request for OA 1220082997

Please upload this information for the OA completed on Claim Number: 1220082997

**Jennifer Belew, MS, CRC**
Vocational Rehabilitation Consultant
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

402-970-6809 Office

she/her/hers

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Wednesday, October 19, 2022 4:45 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1220082997 (SECURE) |

---

**From:** Bill Reynolds
**Sent:** Wednesday, October 19, 2022 4:44:40 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Jones, Lori
**Cc:** Disability Claims; Karen Dalton; Webber, Paul K; MD Clint Carter; sarah2jorden@gmail.com
**Subject:** Lincoln Financial Group Information for Claim 1220082997 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Lori,
On Thursday, October 13, 2022, I began a counseling program with Sarah S Jorden, Tyler, Texas. Sarah is a Licensed Professional Counselor, MA, LPC. and I will see her on a bi-weekly period going forward.

Her contact information is:

101 E Southeast Loop 323
Suite 100-A
Tyler, TX 75703
(903) 730-6676

I was referred to Ms. Jorden by Dr. Clint Carter and both she and Dr. Carter have discussed my anxiety and
stress issues relating to my pending long-term disability case. Dr. Carter has already submitted documents
to you on my behalf as he is my regular family doctor. Please feel free to reach out to either of these professionals
for their findings and my current limitations.

Thank you,

Bill Reynolds

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, September 29, 2022 1:44 PM |
| **To:** | entrprserip |
| **Subject:** | FW: WILLIAM REYNOLDS- 1220082997 - LFG AUTH.pdf |
| **Attachments:** | WILLIAM REYNOLDS- 1220082997 - LFG AUTH.pdf |

---

**From:** Wingfield, Stephanie
**Sent:** Thursday, September 29, 2022 1:44:15 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Kurtz, Keshia
**Subject:** WILLIAM REYNOLDS- 1220082997 - LFG AUTH.pdf

Please upload the attached auth into AWD.
Thank you.
Steph

**Stephanie Wingfield**
Lead Medical Records Coordinator
Group Protections

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-7250 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Tuesday, September 20, 2022 11:41 AM
**To:** entrprserip
**Subject:** FW: Pages 1,2,6 Long Term Disability Claim form
**Attachments:** IMG_0046.jpg; IMG_0047.jpg; IMG_0048.jpg; Bill Reynolds LTD Physician form

---

**From:** Taylor, Barbara S
**Sent:** Tuesday, September 20, 2022 11:40:50 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Pages 1,2,6 Long Term Disability Claim form

**Barbara Taylor**
Account Manager
Group Protection
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

---

**From:** Bill Reynolds <
**Sent:** Thursday, September 15, 2022 3:20 PM
**To:** Taylor, Barbara S <Barbara.Taylor@lfg.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Fw: Pages 1,2,6 Long Term Disability Claim form

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello Barbara,
Attached please find the three pages of six which were completed by me as requested.
Please reach out to me if you have any questions.

Thank you,
Bill Reynolds
work cell
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 personal cell

----- Forwarded Message -----
**From:** Bill Reynolds <
**To:** Bill Reynolds <
**Sent:** Thursday, September 15, 2022 at 03:16:49 PM CDT

**Subject:** Pages 1,2,6

Sent from my iPhone

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, October 4, 2022 11:15 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Claim # 1220082997 William Reynolds / John Soules foods |
| **Attachments:** | benefit-verification-letter (2).pdf |

---

**From:** Bill Reynolds
**Sent:** Tuesday, October 4, 2022 11:14:27 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Jones, Lori
**Cc:** Disability Claims; Karen Dalton; Webber, Paul K
**Subject:** Claim # 1220082997 William Reynolds / John Soules foods

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Lori,
Per your request, I have attached my Social Security Benefit Verification Letter.
My monthly benefit amount is $2,936.

Thank you,

Bill Reynolds
903-539-5767

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Wednesday, October 5, 2022 8:12 AM
**To:** entrprserip
**Subject:** FW: Claim # 1220082997 William Reynolds / John Soules foods
**Attachments:** benefit-verification-letter (2).pdf

---

**From:** Jones, Lori
**Sent:** Wednesday, October 5, 2022 8:12:17 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim # 1220082997 William Reynolds / John Soules foods

Completed

**Lori Jones**
Social Security Technician
Claims Solutions Shared Services
402-361-2787 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

---

**From:** Bill Reynolds <
**Sent:** Tuesday, October 4, 2022 10:14 AM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>; Karen Dalton <karen.dalton@ebctx.com>; Webber, Paul K <Paul.Webber@lfg.com>
**Subject:** Claim # 1220082997 William Reynolds / John Soules foods

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Lori,
Per your request, I have attached my Social Security Benefit Verification Letter.
My monthly benefit amount is $2,936.

Thank you,

Bill Reynolds
903-539-5767

**Lavoie, Chantal**

---

**From:** Clint Carter <clintcartermd@gmail.com>
**Sent:** Thursday, September 15, 2022 5:32 PM
**To:** Taylor, Barbara S
**Subject:** Bill Reynolds LTD Physician form
**Attachments:** BR LTD.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please find the attached Physician statement for patient William Reynolds
Let me know if you have any questions

Clint Carter, MD
MyMD Select
(c) (903) 520-8435
(o) (903) 630-7130
2385 Oak Alley, Tyler, TX 75703
Changing the practice of medicine, together

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, September 15, 2022 4:35 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Pages 1,2,6 Long Term Disability Claim form |
| **Attachments:** | IMG_0046.jpg; IMG_0047.jpg; IMG_0048.jpg |

---

**From:** Taylor, Barbara S
**Sent:** Thursday, September 15, 2022 4:33:53 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Pages 1,2,6 Long Term Disability Claim form

GRP ID: JSOULES3

**Barbara Taylor**
Account Manager
Group Protection
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

---

**From:** Bill Reynolds <
**Sent:** Thursday, September 15, 2022 3:20 PM
**To:** Taylor, Barbara S <Barbara.Taylor@lfg.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Fw: Pages 1,2,6 Long Term Disability Claim form

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello Barbara,
Attached please find the three pages of six which were completed by me as requested.
Please reach out to me if you have any questions.

Thank you,
Bill Reynolds
work cell
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 personal cell

----- Forwarded Message -----
**From:** Bill Reynolds <
**To:** Bill Reynolds <
**Sent:** Thursday, September 15, 2022 at 03:16:49 PM CDT

**Subject:** Pages 1,2,6

Sent from my iPhone

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Monday, September 12, 2022 9:50 AM
**To:** entrprserip
**Subject:** FW: LTD forms
**Attachments:** IMG_0041.jpg; IMG_0042.jpg; IMG_0043.jpg; IMG_0044.JPG; IMG_0045.jpg

---

**From:** Gorum, Kelly
**Sent:** Monday, September 12, 2022 9:49:40 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: LTD forms

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

---

**From:** Bill Reynolds <
**Sent:** Friday, September 9, 2022 1:40 PM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>; Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Fw: LTD forms

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Kelly,
Here are my completed LTD forms and medical backup.
Are you able to forward to LTD department?

Thank you,
Bill Reynolds
903-539-5767

STD CLAIM number 1220042749 (secure)
Yahoo/Medical

•

Gorum, Kelly <kelly.gorum@lfg.com>

To:

Cc:

Wed, Aug 31 at 1:14 PM

This message was sent securely using Zix®

Hello Bill,

Here are the forms for the Long Term Disability. Once they are complete you can have them faxed in. Someone from our Long Term disability department will reach out to you. Please let me know if you have any questions.

Thank you,

Kelly

**Kelly Gorum**

Claims Examiner II

Short Term Disability

800-423-2765 Toll Free

Ext. 3871

877-843-3950 Fax

**Follow us on:**

**Lincoln Financial Group**

8801 Indian Hills Dr.

Omaha, NE 68114

LincolnFinancial.com

----- Forwarded Message -----
**From:** Bill Reynolds <
**To:** Bill Reynolds <
**Sent:** Friday, September 9, 2022 at 01:31:14 PM CDT

**Subject:** LTD forms

Sent from my iPhone

# STD CLAIM PROFILE

**Date:** 4/25/2024 **LFG** **Claim #:** 1220042749

**Insurer:** The Lincoln National Life Insurance Company **Posted:** 5/5/2022 **Location:** HOME
**Policy:** 00001021227300000 - John Soules Foods, Inc. **Status:** CLOSED **User ID:** KEPGO5
**Business:** TRUE STD
**Close Date:** 9/1/2022 **Close Reason:** Not TD Own Occ

**Claimant Information**

**Name:** WILLIAM J REYNOLDS **Phone:** **DOB:**
**SSN:** **Sex:** M **Hire:** 2/3/1997
**Address:** **Ins Eff:** 1/1/2016
**Occ:** MANAGER, SALES (any ind **DOT':** 163167018
**Salary:** $1,902.00 **Period:** Weekly

**Claim Information**

**LTD Pol:** 1627205
**Special Provisions:** **Min Ben:** $114.10
**Ben:** 60% / $1,500.00 **Flat:** **Labor:** 1 **Age:** 68 **Elim Per:** 3 day
**DLW:** 5/6/2022 **DOD:** 5/7/2022 **S/A:** S **W/R:** N **Ben Amt:** $1,141.00

**Diagnosis Pri:** Z95.1 Presence of aortocoronary bypass graft **Max Weeks:** 13
**Sec:** F43.0 Acute stress reaction **Max Days:** 0
**Recovery Date:** 8/9/2022

**Benefit Information**

**Date Ben Begin:** 5/10/2022 **Weeks Paid:** 11

**Policy Information**

**SS Offset:** Primary & Family **Prex:** NONE

**Offset Information**

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| FED TX | PROCESSED | 5/8/2022 | | $50.00 | |
| 3M SURV | PENDING | 5/10/2022 | 5/10/2023 | | |
| RehabAst | PENDING | 5/10/2022 | | $95.10 | |

**Alert Information**

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|

**Action Plan**

# Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | WILLIAM REYNOLDS | | | **Occupation:** | MANAGER, SALES (any industry) | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 5/5/2022 | **Months Dis:** | 102 |
| **Claim #:** | 1220042749 | **DOD:** | 5/7/2022 | **Ben:** | $1,141.00 | **Months Pd:** | 11 |
| **Coverage:** | STD | **Status:** | CLOSED | **Close Date:** | 9/1/2022 | **Assignee:** | KEPGO5 |
| **Policy Holder:** | John Soules Foods, Inc. | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Not TD Own Occ | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 12/30/1899 | Claim Tasks | 19 | Call Claimant | Completed | KEPGO5 |

Complete Initial Calls
Await MR from MyMD Select/Clint Carter, Other Providers, SSRT NOA
Peer Review upon receipt

Ordered MR from MyMD Select/Clint Carter 09/01/2021 to Present to establish pre-disability baseline.
Requested all other MR/SSRT NOA from EE.

Sent Pend Letter/MR Follow Up Request Letter 09/26/2022.
Send 45 Day/Final Pend/Second Request Letter and place call to EE if not received by D30.
Send for Management Review for possible FTP closure if not received by D45.

D30: 10/26/2022
D45: 11/10/2022
- PKKWE5 - Sep 26, 2022 06:23:54 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/10/2022 | Claim Tasks | 1 | Eligibility Notes | Completed | REOBL8 |
| | Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD. (4/5/2022) - BRMCLMINTK - May 05, 2022 03:46:35 pm | | | | |
| 5/5/2022 3:46:31 PM | Claim Tasks | 1 | Eligibility Notes | Requested | REOBL8 |
| | Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD. (4/5/2022) - BRMCLMINTK - May 05, 2022 03:46:35 pm | | | | |
| 5/10/2022 | Claim Tasks | 2 | Verify Occupation | Completed | REOBL8 |
| | DOT/Occupation was Unknown | | | | |
| 5/5/2022 3:50:28 PM | Claim Tasks | 2 | Verify Occupation | Requested | REOBL8 |
| | DOT/Occupation was Unknown | | | | |
| 5/10/2022 | Claim Tasks | 3 | Missing Info | Completed | REOBL8 |
| | The following fields contained no data when the claim form was submitted: SALARY,SALARY_PERIOD,ACCOUNT_ID,HIRE_DATE | | | | |
| 5/5/2022 3:50:28 PM | Claim Tasks | 3 | Missing Info | Requested | REOBL8 |
| | The following fields contained no data when the claim form was submitted: SALARY,SALARY_PERIOD,ACCOUNT_ID,HIRE_DATE | | | | |
| 5/10/2022 | Claim Tasks | 4 | Verify Offsets | Completed | REOBL8 |
| | Verify Offsets | | | | |
| 5/5/2022 3:50:28 PM | Claim Tasks | 4 | Verify Offsets | Requested | REOBL8 |
| | Verify Offsets | | | | |
| 5/10/2022 | Claim Tasks | 5 | Verify BLOC / CLOC | Completed | REOBL8 |
| | Verify Billing Location | | | | |
| 5/5/2022 3:50:28 PM | Claim Tasks | 5 | Verify BLOC / CLOC | Requested | REOBL8 |
| | Verify Billing Location | | | | |
| 5/16/2022 | Claim Tasks | 6 | Call Employer | Completed | KEPGO5 |
| | f/u with ER for DOH, CLASS, SALARY, Sal cont, eff date, LTD - KEPGO5 - May 10, 2022 11:51:39 am | | | | |
| 5/10/2022 11:50:58 AM | Claim Tasks | 6 | Call Employer | Requested | KEPGO5 |
| | f/u with ER for DOH, CLASS, SALARY, Sal cont, eff date, LTD - KEPGO5 - May 10, 2022 11:51:39 am | | | | |
| 5/25/2022 | Claim Tasks | 7 | Update Claim Direction | Completed | KEPGO5 |
| 5/16/2022 1:46:38 PM | Claim Tasks | 7 | Update Claim Direction | Requested | KEPGO5 |
| 5/25/2022 | Claim Tasks | 8 | Close Claim Recommended | Completed | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/16/2022 1:46:58 PM | Claim Tasks | 8 | Close Claim Recommended | Requested | KEPGO5 |
| 7/14/2022 | Claim Tasks | 9 | Set Final Periodic Payment | Completed | KEPGO5 |
| 5/25/2022 7:55:36 AM | Claim Tasks | 9 | Set Final Periodic Payment | Requested | KEPGO5 |
| 7/19/2022 | Claim Tasks | 12 | RTW w ithin2 w eeks | Completed | KEPGO5 |
| 7/18/2022 8:01:52 PM | Claim Tasks | 12 | RTW w ithin2 w eeks | Requested | KEPGO5 |
| 7/20/2022 | Claim Tasks | 11 | Call Employer | Completed | KEPGO5 |
| 7/14/2022 1:23:43 PM | Claim Tasks | 11 | Call Employer | Requested | KEPGO5 |
| 7/22/2022 | Claim Tasks | 14 | Call Employer | Completed | KEPGO5 |
| 7/20/2022 8:40:39 AM | Claim Tasks | 14 | Call Employer | Requested | KEPGO5 |
| 7/29/2022 | Claim Tasks | 13 | Close Claim Recommended | Completed | KEPGO5 |
| 7/19/2022 8:25:31 AM | Claim Tasks | 13 | Close Claim Recommended | Requested | KEPGO5 |
| 8/1/2022 | Claim Tasks | 15 | Open Review | Completed | KEPGO5 |
| | suspend claim - KEPGO5 - Jul 29, 2022 10:54:09 am | | | | |
| 7/29/2022 10:53:57 AM | Claim Tasks | 15 | Open Review | Requested | KEPGO5 |
| | suspend claim - KEPGO5 - Jul 29, 2022 10:54:09 am | | | | |
| 8/1/2022 | Claim Tasks | 16 | 45 Day.Need Decision/Extension | Completed | KEPGO5 |
| 7/29/2022 8:13:02 PM | Claim Tasks | 16 | 45 Day.Need Decision/Extension | Requested | KEPGO5 |
| 8/1/2022 | Claim Tasks | 17 | 75 Day.Need Decision/Extension | Completed | KEPGO5 |
| 7/29/2022 8:14:52 PM | Claim Tasks | 17 | 75 Day.Need Decision/Extension | Requested | KEPGO5 |
| 8/31/2022 | Claim Tasks | 10 | LINKS Review | Completed | KEPGO5 |

EE OCC: sales manager
OCC LEVEL: 1
STD MBD: 08/09/2022
LTD EFF: verifying
LTD BCD: verifying
RGO: dallas
COMMENTS: Clmnt is a 68 y/o Male sales manager light occ, DLW 05/06/2022, DOD 05/07/2022, DX presence or aortocoronary bypass graft, acute stress reaction, TX cardiac rehab, physical therapy, mental health counselling, Claim has been approved to 07/18/2022. Will need updated med recs to ext beyond 07/18/2022
- KEPGO5 - Jul 14, 2022 01:28:08 pm

LTD EFF DATE 03/06/2022 - KEPGO5 - Jul 22, 2022 11:00:09 am

ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell- claim w as ext to 08/01/2022 - KEPGO5 - Aug 10, 2022 05:39:46 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/14/2022 8:02:32 PM | Claim Tasks | 10 | LINKS Review | Requested | KEPGO5 |

EE OCC: sales manager
OCC LEVEL: 1
STD MBD: 08/09/2022
LTD EFF: verifying
LTD BCD: verifying
RGO: dallas

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | COMMENTS: Clmnt is a 68 y/o Male sales manager light occ, DLW 05/06/2022, DOD 05/07/2022, DX presence or aortocoronary bypass graft, acute stress reaction, TX cardiac rehab, physical therapy, mental health counselling, Claim has been approved to 07/18/2022. Will need updated med recs to ext beyond 07/18/2022 - KEPGO5 - Jul 14, 2022 01:28:08 pm<br><br>LTD EFF DATE 03/06/2022 - KEPGO5 - Jul 22, 2022 11:00:09 am<br><br>ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell- claim w as ext to 08/01/2022 - KEPGO5 - Aug 10, 2022 05:39:46 am | | | | |
| 8/31/2022 | Claim Tasks | 18 | Close Claim Recommended | Completed | KEPGO5 |
| 8/1/2022 5:33:38 AM | Claim Tasks | 18 | Close Claim Recommended | Requested | KEPGO5 |
| 5/5/2022 | Documents/Mail<br>2022-05-05-12.59.10.040180O01 | 1 | Email | Completed | REOBL8 |
| 5/5/2022 | Documents/Mail<br>2022-05-05-16.22.51.737260O01 | 3 | Claim Form - Authorization | Completed | REOBL8 |
| 5/5/2022 | Documents/Mail<br>2022-05-05-12.59.10.059180O01 | 2 | Email | Completed | REOBL8 |
| 5/5/2022 | Documents/Mail<br>2022-05-05-16.23.21.353260O01 | 4 | Claim Form - EE, ER, APS | Completed | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-06-15.21.00.784180O01 | 8 | Fax | Completed | REOBL8 |
| 5/9/2022 12:39:37 PM | Documents/Mail<br>2022-05-06-15.21.00.784180O01 | 8 | Fax | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-05-15.34.43.114180O01 | 5 | Fax | Completed | REOBL8 |
| 5/6/2022 9:54:31 AM | Documents/Mail<br>2022-05-05-15.34.43.114180O01 | 5 | Fax | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-06-10.27.10.797200O01 | 7 | Claim Form - Authorization | Completed | REOBL8 |
| 5/6/2022 9:54:32 AM | Documents/Mail<br>2022-05-06-10.27.10.797200O01 | 7 | Claim Form - Authorization | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>From: Gorum, Kelly<br>Sent: Tuesday, May 10, 2022 11:47 AM<br>To: 'clong@jsfoods.com' <clong@jsfoods.com><br>Subject: std claim (secure)<br><br>Hello,<br><br>I have a claim for William Reynolds claim number 1220042749 and I am in need of some additional information. Can you please provide the follow ing? | 12 | Email | Completed | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | -Employer's Statement ( I have attached a copy if you need it)<br>-Job Description<br>-Class<br><br>Thank you and let me know if you have any questions.<br><br>Kelly<br><br>Kelly Gorum<br>Claims Examiner II<br>Short Term Disability<br><br>Lincoln Financial Group<br>8801 Indian Hills Dr.<br>Omaha, NE 68114800-423-2765 Toll Free<br>Ext. 3871<br>877-843-3950 Fax<br><br>LincolnFinancial.com<br>Follow us on:<br><br>- KEPGO5 - May 10, 2022 11:47:42 am | | | | |
| 5/10/2022 | Documents/Mail<br>2022-05-06-10.26.42.400200O01 | 6 | Claim Form - EE, ER, APS | Completed | REOBL8 |
| 5/6/2022 9:54:31 AM | Documents/Mail<br>2022-05-06-10.26.42.400200O01 | 6 | Claim Form - EE, ER, APS | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-06-15.21.07.733180O01 | 10 | Medical Records | Completed | REOBL8 |
| 5/9/2022 12:39:39 PM | Documents/Mail<br>2022-05-06-15.21.07.733180O01 | 10 | Medical Records | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-06-15.21.10.835180O01 | 11 | Claim Form - EE, ER, APS | Completed | REOBL8 |
| 5/9/2022 12:39:44 PM | Documents/Mail<br>2022-05-06-15.21.10.835180O01 | 11 | Claim Form - EE, ER, APS | Received | REOBL8 |
| 5/10/2022 | Documents/Mail<br>2022-05-06-15.21.03.281180O01 | 9 | Incoming Correspondence | Completed | REOBL8 |
| 5/9/2022 12:39:38 PM | Documents/Mail<br>2022-05-06-15.21.03.281180O01 | 9 | Incoming Correspondence | Received | REOBL8 |
| 5/16/2022 | Documents/Mail<br>2022-05-12-13.08.56.076200O01 | 16 | Claim Form - EE, ER, APS | Completed | REOBL8 |
| 5/13/2022 7:55:27 AM | Documents/Mail<br>2022-05-12-13.08.56.076200O01 | 16 | Claim Form - EE, ER, APS | Received | REOBL8 |
| 5/16/2022 | Documents/Mail<br>2022-05-12-13.08.56.051200O01 | 15 | Email | Completed | REOBL8 |
| 5/13/2022 7:55:26 AM | Documents/Mail<br>2022-05-12-13.08.56.051200O01 | 15 | Email | Received | REOBL8 |
| 5/16/2022 | Documents/Mail<br>From: Gorum, Kelly<br>Sent: Monday, May 16, 2022 1:48 PM<br>To: clong@jsfoods.com<br>Subject: std claim (secure) | 19 | Email | Completed | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hello,

I have a claim for William Reynolds and just need to verify additional information. We have Willam's date of disability as 04/28/2022 and date last w orked as 05/06/2022. Was he on approved leave?

Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - May 16, 2022 01:48:49 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/16/2022 | Documents/Mail | 13 | STD Claim Acknow ledgement - New | Completed | KEPGO5 |
| | Record w as canceled. Completed to remove from case diary. Date: 17-MAY-22 STD Claim Acknow ledgement - New | | | | |
| 5/10/2022 11:48:42 AM | Documents/Mail | 13 | STD Claim Acknow ledgement - New | Work In Progress | KEPGO5 |
| | Record w as canceled. Completed to remove from case diary. Date: 17-MAY-22 STD Claim Acknow ledgement - New | | | | |
| 5/16/2022 | Documents/Mail | 14 | STD Claim Acknow ledgement - New | Completed | KEPGO5 |
| | Record w as canceled. Completed to remove from case diary. Date: 17-MAY-22 STD Claim Acknow ledgement - New | | | | |
| 5/10/2022 11:48:42 AM | Documents/Mail | 14 | STD Claim Acknow ledgement - New | Work In Progress | KEPGO5 |
| | Record w as canceled. Completed to remove from case diary. Date: 17-MAY-22 STD Claim Acknow ledgement - New | | | | |
| 5/17/2022 | Documents/Mail | 17 | Pend Ltr to Employee | Completed | KEPGO5 |
| | Pend Ltr to Employee | | | | |
| 5/16/2022 8:24:19 AM | Documents/Mail | 17 | Pend Ltr to Employee | Work In Progress | KEPGO5 |
| | Pend Ltr to Employee | | | | |
| 5/17/2022 | Documents/Mail | 18 | Pend Ltr to Employer | Completed | KEPGO5 |
| | Pend Ltr to Employer | | | | |
| 5/16/2022 8:27:32 AM | Documents/Mail | 18 | Pend Ltr to Employer | Work In Progress | KEPGO5 |
| | Pend Ltr to Employer | | | | |
| 5/18/2022 | Documents/Mail | 24 | Email | Completed | KEPGO5 |
| | 2022-05-17-13.48.12.151300O01 | | | | |
| 5/18/2022 | Documents/Mail | 22 | Email | Completed | KEPGO5 |
| | 2022-05-17-10.41.30.015320O01 | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/18/2022 | Documents/Mail | 20 | Email | Completed | KEPGO5 |

From: Christina Long <clong@jsfoods.com>
Sent: Monday, May 16, 2022 2:05 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: std claim (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Yes, he w as using vacation time w hile aw aiting his STD to be approved.

Christina Long
Human Resources Specialist
John Soules Foods | Tyler
Office | 903-592-9800 Ext. 270
Fax | 903-363-1107
Email | clong@jsfoods.com
w w w | JohnSoulesFoods.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Monday, May 16, 2022 1:48 PM
To: Christina Long <clong@jsfoods.com>
Subject: std claim (secure)

This message w as sent securely using Zix®

Hello,

I have a claim for William Reynolds and just need to verify additional information. We have Willam's date of disability as 04/28/2022 and date last w orked as 05/06/2022. Was he on approved leave?

Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

Notice of Confidentiality: **This E-mail and any of its attachments may contain
Lincoln National Corporation proprietary information, w hich is privileged, confidential,
or subject to copyright belonging to the Lincoln National Corporation family of

companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

- KEPGO5 - May 18, 2022 05:03:13 am

| | | | | | |
|---|---|---|---|---|---|
| 5/18/2022 | Documents/Mail | 21 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Wednesday, May 18, 2022 7:53 AM
To: 'Bill Reynolds' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello,

Thank you for your email. Currently our Clinic Review Team is reviewing your claim. As soon as I get an update from them I will keep you updated. Please let me know if you have any other questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, May 17, 2022 12:48 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; Disability Claims <disabilityclaims@lfg.com>; mrostis@jsfoods.com
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,

On April 28 (my appointment), Dr. Clinton Carter suggested minimum 6 week (better 12 weeks) leave of absence due to stress. He can be reached at 903-593-8441. Also, my HR director, Mr. Mike Rostis, informed me that my FMLA was to begin on May 9, 2022.

Please keep me apprised of the situation as I have no income right now. I am not eligible for any SSI disability due to my age (68).

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Thank you,

Bill Reynolds

----- Forwarded Message -----
From: Kelly Gorum <kelly.gorum@lfg.com>
To: " <
Cc: "" <>
Sent: Tuesday, May 17, 2022, 08:46:06 AM CDT
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, Claims
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

- KEPGO5 - May 18, 2022 07:53:53 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/18/2022 | Documents/Mail | 23 | Incoming Correspondence | Completed | KEPGO5 |

2022-05-17-10.41.30.043320O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/19/2022 | Documents/Mail | 25 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, May 19, 2022 2:32 PM
To: Bill <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello William,

Thank you for your email. As of right now we have everything we need from your Attending Physician and employer. Our Clinical Review team is reviewing your claim. As soon as I have an update I will let you know.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Wednesday, May 18, 2022 9:01 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Kelly. My doctor and HR have submitted everything needed, correct?

Sent from my iPhone

On May 18, 2022, at 7:53 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello,

Thank you for your email. Currently our Clinic Review Team is review ing your claim. As soon as I get an update from them I w ill keep you updated. Please let me know if you have any other questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, May 17, 2022 12:48 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; Disability Claims <disabilityclaims@lfg.com>; mrostis@jsfoods.com

Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,

- KEPGO5 - May 19, 2022 02:32:25 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/1/2022 | Documents/Mail | 28 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Wednesday, June 1, 2022 6:21 AM
To: 'Bill' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently w aiting to hear back from my mentor on the approval of your claim. Your w eekly benefit amount is $1,141.00. We pay every tw o w eeks and w ill back date for your previous payment due. I w ill reach out to you later today w ith the exact dollar amount of the first payment and how many w eeks of payment that w ill be.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Tuesday, May 31, 2022 2:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Kelly,
I called your disability claims department a short time ago and spoke to Conya.
She said that my claim has been processed and approved for $1,141/w eek.
Could you please confirm this (as w ell as the effective disability dates of May 1 through July 18)?
Secondly, w hen can I expect to see the first deposit to my bank account? Will this be for five (5) w eeks of benefits?
Lastly, is there a specific day of w eek (bi-w eekly) for payments to me? Thank you for all your help; enjoy the rest of your day!

Bill Reynolds

Sent from my iPhone

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | On May 19, 2022, at 2:32 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:<br><br>This message w as sent securely using Zix®<br><br>Hello William,<br><br>- KEPGO5 - Jun 01, 2022 06:21:24 am | | | | |
| 6/1/2022 | Documents/Mail | 26 | STD Approval Letter Generic | Completed | KEPGO5 |
| | STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | | | | |
| 5/25/2022 7:56:46 AM | Documents/Mail | 26 | STD Approval Letter Generic | Work In Progress | KEPGO5 |
| | STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | | | | |
| 6/1/2022 | Documents/Mail | 27 | STD Approval Letter Generic | Completed | KEPGO5 |
| | STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | | | | |
| 5/25/2022 7:56:46 AM | Documents/Mail | 27 | STD Approval Letter Generic | Work In Progress | KEPGO5 |
| | STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | | | | |
| 6/7/2022 | Documents/Mail | 29 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, June 7, 2022 7:30 AM
To: Bill <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Here is a break dow n of your payment. 05/10/22-06/7/2022, check w as dated 06/01/2022 in the amount of 4,014.85. Withheld 200.00 for Federal taxes, 282.27 w as w ithheld for social security, and 66.18 w as w ithheld for medicare tax, your w eekly benefit amount is 1,141.00. please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Friday, June 3, 2022 2:33 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

I received my first deposit today! Thank you again.
Can I see the tax deduction info anyw here?

Sent from my iPhone

On Jun 1, 2022, at 3:56 PM, Bill Reynolds < w rote:

Thank you so much, Kelly!
You made my day!!!

On Wednesday, June 1, 2022, 08:50:43 AM CDT, Kelly Gorum <kelly.gorum@lfg.com> w rote:

- KEPGO5 - Jun 07, 2022 07:30:42 am

| 6/17/2022 | Documents/Mail | 30 | Email | Completed | KEPGO5 |
|---|---|---|---|---|---|

From: Gorum, Kelly
Sent: Friday, June 17, 2022 10:08 AM
To: 'Bill' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Good morning Bill,

Payment w as sent out today. Please allow a couple days for processing. Let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Friday, June 17, 2022 7:58 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning, Kelly.
I did not receive my bi-w eekly payment as expected today. Only one payment has been received to date, the initial 4-w eek retro paid on June 3rd. Please help resolve this; I have no other income at this time and I'm still catching up on numerous medical bills.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Thank you,
Bill Reynolds

Sent from my iPhone

On Jun 1, 2022, at 3:56 PM, Bill Reynolds < w rote:

Thank you so much, Kelly!
You made my day!!!

On Wednesday, June 1, 2022, 08:50:43 AM CDT, Kelly Gorum <kelly.gorum@lfg.com> w rote:

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, Claims
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

- KEPGO5 - Jun 17, 2022 10:08:52 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/21/2022 | Documents/Mail | 32 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, June 21, 2022 2:56 PM
To: 'Bill Reynolds' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

There is not 15 digit trace number. The only number w e have is the check number.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, June 21, 2022 2:03 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

On Tuesday, June 21, 2022, 02:01:23 PM CDT, Bill Reynolds < w rote:

Kelly,
Could I please have the 15-digit trace number? This is w hat the bank needs.

On Tuesday, June 21, 2022, 01:52:36 PM CDT, Gorum, Kelly <kelly.gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Thank you for reaching out to me. The payment w ent out on 06/17/2022 it does take 2-3 business days for that payment to post. With Monday being a holiday and banks closed you should receive that payment either tomorrow or at the latest Thursday. Here is a screenshot of the payment below ,

Please let me know if you have any questions.

Thank you,

- KEPGO5 - Jun 21, 2022 02:57:08 pm

| 6/21/2022 | Documents/Mail | 31 | Email | Completed | KEPGO5 |
|---|---|---|---|---|---|

From: Gorum, Kelly
Sent: Tuesday, June 21, 2022 1:52 PM
To: 'Bill' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Thank you for reaching out to me. The payment w ent out on 06/17/2022 it does take 2-3 business days for that payment to post. With Monday being a holiday and banks closed you should receive that payment either tomorrow or at the latest Thursday. Here is a screenshot of the payment below ,

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Tuesday, June 21, 2022 12:23 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

- KEPGO5 - Jun 21, 2022 01:53:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/14/2022 | Documents/Mail | 33 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, July 14, 2022 1:23 PM
To: 'clong@jsfoods.com' <clong@jsfoods.com>
Subject: std claim 1220042749 (secure)

Hello,

I have a claim for William Reynold and just need some additional information. Can you please provide the follow ing information?

-Confirmation of Long Term Coverage if applicable via an enrollment form, benefit statement, screenshot of coverage or a paystubs that includes original effective date.

Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - Jul 14, 2022 01:23:26 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/14/2022 | Documents/Mail | 34 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, July 14, 2022 1:33 PM
To: 'Bill' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Thank you for your email. You will have a payment that goes out today covering the payment period of 07/05/2022-07/18/2022 approve to date. We will need updated medical records to extend your claim beyond the 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 14, 2022 9:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello, Kelly. I am nearing the end of my 12 week disability period. Could you confirm that after tomorrow's payment, I will have one more 2-week payment covering the period 7/10 - 7/23 to be paid on July 29. Could you confirm this to be correct?
Thank you,
Bill Reynolds

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Sent from my iPhone

On Jun 1, 2022, at 6:21 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently w aiting to hear back from my mentor on the approval of your claim. Your w eekly benefit amount is $1,141.00. We pay every tw o w eeks and w ill back date for your previous payment due. I w ill reach out to you later today w ith the exact dollar amount of the first payment and how many w eeks of payment that w ill be.

Thank you,

Kelly

- KEPGO5 - Jul 14, 2022 01:33:28 pm

| 7/18/2022 | Documents/Mail | 35 | Email | Completed | KEPGO5 |
|---|---|---|---|---|---|

From: Gorum, Kelly
Sent: Monday, July 18, 2022 1:31 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Sharpe, Sara <Sara.Sharpe@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello,

Thank you for your email. Looking back at the claim for Mr. Reynold's w as approved from 05/07/2022 minus the 3 day elimination period w hich w ould make benefits begin on 05/10/2022. He w as approved to 07/18/2022. Last payment posted w ould be from 07/05/2022 to 07/18/2022 w ith a check date of 07/14/2022 in the amount of $1,864.03. We w ill need updated medical records to extend beyond the 07/18/2022 approval date. Please let me know if this helps or you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 12:48 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Cc: Sharpe, Sara <Sara.Sharpe@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Importance: High

Hi Kelly, sorry to bug you about this again, but the broker and HR rep are asking about it again, thanks.

Barbara Taylor
Account Manager
Group Protection

Lincoln Financial Group
LincolnFinancial.com
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: Taylor, Barbara S
Sent: Friday, July 15, 2022 11:35 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Claim 1220042749 BILL REYNOLDS

Hi Kelly, can you please help w ith this group's questions on this claim? He is thinking he w as not paid the full amount, thanks.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Friday, July 15, 2022 10:00 AM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>; Karen Dalton <karen.dalton@ebctx.com>
Subject: JSF: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Barbara,

Hope you are doing w ell!

Would you be able to review the payments for Bill Reynolds and let us know w hat you find?

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Michael Rostis <mrostis@jsfoods.com>
Sent: Friday, July 15, 2022 9:15 AM
To: Bill <
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Your disability payments should be for 12 w eeks Bill. I'm bringing Kelly Sackett into the loop on this so maybe she can help us.

Thanks,

Mike

From: Bill <
Sent: Friday, July 15, 2022 8:48 AM
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution w hen opening attachments or clicking links, especially from unknow n senders.
Mike,
My records show that my final disability pay
(w eeks 11-12) should be paid on 7/29.
I have received 8 w eeks pay so far,
6/03 for w eeks 1-4; 6/22 w eeks 5-6;
7/01 w eeks 7-8 and w eeks 9-10 payment
Is due today.
I w as approved for 12 w eeks, correct?

Thanks,
Bill

Sent from my iPhone

Begin forw arded message:
From: "Gorum, Kelly" <Kelly.Gorum@lfg.com>
Date: July 14, 2022 at 1:33:24 PM CDT
To: Bill <
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello Bill,

Thank you for your email. You w ill have a payment that goes out today covering the payment period of 07/05/2022-07/18/2022 approve to date. We w ill need updated medical records to extend your claim beyond the 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax


LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 14, 2022 9:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello, Kelly. I am nearing the end of my 12 week disability period. Could you confirm that after tomorrow's payment, I will have one more 2-week payment covering the period 7/10 - 7/23 to be paid on July 29. Could you confirm this to be correct?
Thank you,
Bill Reynolds

Sent from my iPhone

On Jun 1, 2022, at 6:21 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> wrote:

This message was sent securely using Zix®

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently waiting to hear back from my mentor on the approval of your claim. Your weekly benefit amount is $1,141.00. We pay every two weeks and will back date for your previous payment due. I will reach out to you later today with the exact dollar amount of the first payment and how many weeks of payment that will be.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax


LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Tuesday, May 31, 2022 2:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Kelly,
I called your disability claims department a short time ago and spoke to Conya.
She said that my claim has been processed and approved for $1,141/w eek.
Could you please confirm this (as w ell as the effective disability dates of May 1 through July 18)?
Secondly, w hen can I expect to see the first deposit to my bank account? Will this be for five (5) w eeks of benefits?
Lastly, is there a specific day of w eek (bi-w eekly) for payments to me? Thank you for all your help; enjoy the rest of your day!

Bill Reynolds

Sent from my iPhone

On May 19, 2022, at 2:32 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello William,

Thank you for your email. As of right now w e have everything w e need from your Attending Physician and employer. Our Clinical Review team is review ing your claim. As soon as I have an update I w ill let you know .

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Wednesday, May 18, 2022 9:01 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Kelly. My doctor and HR have submitted everything needed, correct?

Sent from my iPhone

- KEPGO5 - Jul 18, 2022 01:31:41 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/19/2022 | Documents/Mail | 36 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, July 19, 2022 8:23 AM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello,

Yes that is correct. He has been paid out 11 w eeks so far. We w ill need updated medical records to support disability beyond his approval date of 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 3:41 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly, can you please answ er the below questions from the broker? thanks.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Monday, July 18, 2022 3:38 PM

To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Barbara,

This is the 10 w eeks that Bill received payment due to the approval only going through mid-July, right?
He needs approval on the medical records before the remainder of the 12 w eeks is paid. Or does his final check take him out to the 12th w eeks based on his w eekly earnings?

Thank you for your help.
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: kelly.sackett
Sent: Monday, July 18, 2022 2:10 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Barbara! I'm passing this along.

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 1:35 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hi, just heard back. See below and let me know if you have any questions, thanks.

Looking back at the claim for Mr. Reynold's w as approved from 05/07/2022 minus the 3 day elimination period w hich w ould make benefits begin on 05/10/2022. He w as approved to 07/18/2022. Last payment posted w ould be from 07/05/2022 to 07/18/2022 w ith a check date of 07/14/2022 in the amount of $1,864.03. We w ill need updated medical records to extend beyond the 07/18/2022 approval date.

Barbara Taylor
Account Manager
Group Protection

Lincoln Financial Group
LincolnFinancial.com
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Monday, July 18, 2022 12:53 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you!

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 12:49 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
- KEPGO5 - Jul 19, 2022 08:23:48 am

7/19/2022 Documents/Mail 37 Suspend Benefits for Proof of Dis Completed KEPGO5
Suspend Benefits for Proof of Dis

7/19/2022 Documents/Mail 38 Suspend Benefits for Proof of Dis Completed KEPGO5
Suspend Benefits for Proof of Dis

7/20/2022 Documents/Mail 39 Email Completed KEPGO5
From: Gorum, Kelly
Sent: Wednesday, July 20, 2022 8:35 AM
To: 'kelly.sackett' <kelly.sackett@ebctx.com>; Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello there,

Thank you for your email. This is the breakdow n of the payments. I hope this helps.

Weeks 05/10/2022-06/07/2022 4,014.85 check date of 06/01/2022 (paid out 4w ks)
Weeks 06/07/2022 to 06/21/2022 2,007.43 check date of 06/17/2022 (paid out 2 w ks)
Weeks 06/21/2022 to 07//05/2022 2,007.43 check date of 06/29/2022 (paid out 2 w ks)
Weeks 07/05/2022 to 07/18/2022 1,864.03 check date of 07/14/2022 (paid out 1w k and 6 days)

He w as approve to 07/18/2022 and w ill need updated medical records to extend beyond the 07/18/2022 date.

Thank you for requesting those records/

Please let me know if you have any other questions. I hope this helps.

Kelly

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Tuesday, July 19, 2022 4:13 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>; Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you! I've contacted the physician to send medical records per your request.

I also received the following from the member.
6/03 for weeks 1-4; $4,015
6/22 weeks 5-6; $2,007
7/01 weeks 7-8 $2,007
7/18 weeks 9-10$1,864

I feel I am due two more weeks ($2,007) plus the day shorted in the check received on 7/18 ($143).

Thank you for your help.
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Tuesday, July 19, 2022 2:55 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

Hi Kelly, can you please assist with Kelly, the broker of record's questions below? thanks!

Barbara Taylor
Account Manager
Group Protection

Lincoln Financial Group
LincolnFinancial.com
972-520-6789 Office

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Tuesday, July 19, 2022 1:52 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Barbara,

I've spoken w ith Mr. Reynolds.

He stated that he has only been paid for 10 w eeks. He received his first check on June 2nd, for four w eeks. After that, he has received a check every 2 w eeks.

Could you let us know w hy the payment on this check w as less than the others?

Also, if you send me the form or request for medical records and I'll get that over to the physician to complete.

Thank you for your help.
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Tuesday, July 19, 2022 8:44 AM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Yes that is correct. He has been paid out 11 w eeks so far. We w ill need updated medical records to support disability beyond his approval date of 07/18/2022. Thanks.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: Taylor, Barbara S
Sent: Monday, July 18, 2022 4:19 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Sorry having to go back to the claims examiner on this.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Monday, July 18, 2022 3:38 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Barbara,

This is the 10 w eeks that Bill received payment due to the approval only going through mid-July, right?
He needs approval on the medical records before the remainder of the 12 w eeks is paid. Or does his final check take him out to the 12th w eeks based on his w eekly earnings?

Thank you for your help.
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: kelly.sackett
Sent: Monday, July 18, 2022 2:10 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Barbara! I'm passing this along.

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 1:35 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hi, just heard back. See below and let me know if you have any questions, thanks.

Looking back at the claim for Mr. Reynold's was approved from 05/07/2022 minus the 3 day elimination period which would make benefits begin on 05/10/2022. He was approved to 07/18/2022. Last payment posted would be from 07/05/2022 to 07/18/2022 with a check date of 07/14/2022 in the amount of $1,864.03. We will need updated medical records to extend beyond the 07/18/2022 approval date.

Barbara Taylor
Account Manager
Group Protection

Lincoln Financial Group
LincolnFinancial.com
972-520-6789 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Monday, July 18, 2022 12:53 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you!

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Monday, July 18, 2022 12:49 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

I just followed up again with claims and copied in a manager so hopefully we will hear back soon, thanks.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Monday, July 18, 2022 12:46 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Barbara,
Please let us know what you find out as soon as possible since this employee is emailing HR again.

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

From: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Sent: Friday, July 15, 2022 11:40 AM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

I am waiting to hear back from claims on this, thanks.

Barbara Taylor
Account Manager
Group Protection
972-520-6789 Office
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Friday, July 15, 2022 10:00 AM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>; Karen Dalton <karen.dalton@ebctx.com>
Subject: JSF: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Barbara,

Hope you are doing well!

Would you be able to review the payments for Bill Reynolds and let us know what you find?

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

From: Michael Rostis <mrostis@jsfoods.com>
Sent: Friday, July 15, 2022 9:15 AM
To: Bill <
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Your disability payments should be for 12 w eeks Bill. I'm bringing Kelly Sackett into the loop on this so maybe she can help us.

Thanks,

Mike

From: Bill <
Sent: Friday, July 15, 2022 8:48 AM
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution w hen opening attachments or clicking links, especially from unknow n senders.
Mike,
My records show that my final disability pay
(w eeks 11-12) should be paid on 7/29.
I have received 8 w eeks pay so far,
6/03 for w eeks 1-4; 6/22 w eeks 5-6;
7/01 w eeks 7-8 and w eeks 9-10 payment
Is due today.
I w as approved for 12 w eeks, correct?

Thanks,
Bill

Sent from my iPhone

Begin forw arded message:
From: "Gorum, Kelly" <Kelly.Gorum@lfg.com>
Date: July 14, 2022 at 1:33:24 PM CDT
To: Bill <
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello Bill,

Thank you for your email. You w ill have a payment that goes out today covering the payment period of 07/05/2022-07/18/2022 approve to date. We w ill need updated medical records to extend your claim beyond the 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.

Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 14, 2022 9:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello, Kelly. I am nearing the end of my 12 w eek disability period. Could you confirm that after tomorrow 's payment, I w ill have one more 2-w eek payment covering the period 7/10 - 7/23 to be paid on July 29. Could you confirm this to be correct?
Thank you,
Bill Reynolds

Sent from my iPhone

On Jun 1, 2022, at 6:21 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently w aiting to hear back from my mentor on the approval of your claim. Your w eekly benefit amount is $1,141.00. We pay every tw o w eeks and w ill back date for your previous payment due. I w ill reach out to you later today w ith the exact dollar amount of the first payment and how many w eeks of payment that w ill be.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Tuesday, May 31, 2022 2:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>

Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Kelly,
I called your disability claims department a short time ago and spoke to Conya.
She said that my claim has been processed and approved for $1,141/w eek.
Could you please confirm this (as w ell as the effective disability dates of May 1 through July 18)?
Secondly, w hen can I expect to see the first deposit to my bank account? Will this be for five (5) w eeks of benefits?
Lastly, is there a specific day of w eek (bi-w eekly) for payments to me? Thank you for all your help; enjoy the rest of your day!

Bill Reynolds

Sent from my iPhone

On May 19, 2022, at 2:32 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello William,

Thank you for your email. As of right now w e have everything w e need from your Attending Physician and employer. Our Clinical Review team is review ing your claim. As soon as I have an update I w ill let you know .

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Wednesday, May 18, 2022 9:01 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Kelly. My doctor and HR have submitted everything needed, correct?

Sent from my iPhone

On May 18, 2022, at 7:53 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello,

Thank you for your email. Currently our Clinic Review Team is review ing your claim. As soon as I get an update from them I w ill keep you updated. Please let me know if you have any other questions.

Thank you,

Kelly

- KEPGO5 - Jul 20, 2022 08:35:46 am

7/20/2022 Documents/Mail 40 Email Completed KEPGO5

From: Gorum, Kelly
Sent: Wednesday, July 20, 2022 8:40 AM
To: jbrow n@jsfoods.com
Cc: bjackson@jsfoods.com
Subject: std claim 1220042749 (secure)

Hello,

I have a claim for William Reynolds and just need some additional information. Can you please provide the follow ing information?

-Confirmation of Long Term Coverage if applicable via enrollment form, benefit statement, screenshot of coverage or a paystub.

Please let me know if you have any questions,

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - Jul 20, 2022 08:40:18 am

7/20/2022 Documents/Mail 42 Email Completed KEPGO5

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Wednesday, July 20, 2022 9:27 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; Taylor, Barbara S <Barbara.Taylor@lfg.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you!

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

We have contacted MyMD regarding the medical records and w ill follow up w ith them today.
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Wednesday, July 20, 2022 8:35 AM
To: kelly.sackett <kelly.sackett@ebctx.com>; Taylor, Barbara S <Barbara.Taylor@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello there,

Thank you for your email. This is the breakdow n of the payments. I hope this helps.

Weeks 05/10/2022-06/07/2022 4,014.85 check date of 06/01/2022 (paid out 4w ks)
Weeks 06/07/2022 to 06/21/2022 2,007.43 check date of 06/17/2022 (paid out 2 w ks)
Weeks 06/21/2022 to 07//05/2022 2,007.43 check date of 06/29/2022 (paid out 2 w ks)
Weeks 07/05/2022 to 07/18/2022 1,864.03 check date of 07/14/2022 (paid out 1w k and 6 days)

He w as approve to 07/18/2022 and w ill need updated medical records to extend beyond the 07/18/2022 date.

Thank you for requesting those records/

Please let me know if you have any other questions. I hope this helps.

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Tuesday, July 19, 2022 4:13 PM
To: Taylor, Barbara S <Barbara.Taylor@lfg.com>; Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>

- KEPGO5 - Jul 20, 2022 03:43:09 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/20/2022 | Documents/Mail | 41 | Email | Completed | KEPGO5 |

From: Jacqulynn Brown <jbrown@jsfoods.com>
Sent: Wednesday, July 20, 2022 8:45 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: std claim 1220042749 (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning,

I will definitely get that to you asap!

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Wednesday, July 20, 2022 8:40 AM
To: Jacqulynn Brown <jbrown@jsfoods.com>
Cc: Brandy Jackson <bjackson@jsfoods.com>
Subject: std claim 1220042749 (secure)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
This message was sent securely using Zix®

Hello,

I have a claim for William Reynolds and just need some additional information. Can you please provide the following information?

-Confirmation of Long Term Coverage if applicable via enrollment form, benefit statement, screenshot of coverage or a paystub.

Please let me know if you have any questions,

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.
- KEPGO5 - Jul 20, 2022 03:41:07 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/22/2022 | Documents/Mail | 44 | Incoming Correspondence | Completed | KEPGO5 |
| | 2022-07-20-16.52.10.359960O01 | | | | |
| 7/22/2022 | Documents/Mail | 43 | Email | Completed | KEPGO5 |
| | 2022-07-20-16.52.10.338960O01 | | | | |
| 7/25/2022 | Documents/Mail | 47 | Email | Completed | KEPGO5 |

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Gorum, Kelly
Sent: Monday, July 25, 2022 6:07 AM
To: 'kelly.sackett' <kelly.sackett@ebctx.com>; Bill <
Cc: Karen Dalton <karen.dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Good morning,

Thank you for your email. The maximum date for Short Term Disability benefits is 08/09/2022. Please let me know if you have any further questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.

Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Thursday, July 21, 2022 5:19 PM
To: Bill < Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Bill,
Kelly Gorum should be able to send us the end date for 12 w eeks according to the information they have.

Kelly- do you mind letting us know w hat the date w ould be the 12 w eeks of coverage is?

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Bill <
Sent: Thursday, July 21, 2022 7:22 AM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>; Kelly Gorum <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thanks, Kelly. I just have one question: in order to complete the 12 w eeks I w as approved for, shouldn't the extension be through August 2nd? This w ould add 7+7+1 (15) days w hich is the amount for 12 full w eeks minus w hat I have been paid for to date.
Thanks again for w orking so hard on this for me.
Bill Reynolds
Sent from my iPhone

On Jul 20, 2022, at 9:25 AM, kelly.sackett <kelly.sackett@ebctx.com> w rote:

Good morning, Bill.

This is to follow up w ith you on the status of your questions regarding the Short-Term Disability payments.

Your Lincoln claim examiner, Kelly Gorum, responded back w ith their record of the payments. This explains w hy the last payment w as less than your others as it paid out 1 w eek and 6 days.

I've contacted MyMD to complete the paperw ork needed to extend your approval through 7/18/22 and w ill follow up w ith them later today.

Below is the payment schedule forw arded from Lincoln:
Weeks 05/10/2022-06/07/2022 $4,014.85 check date of 06/01/2022 (paid out 4w ks)

Weeks 06/07/2022 to 06/21/2022 $2,007.43 check date of 06/17/2022 (paid out 2 w ks)
Weeks 06/21/2022 to 07/05/2022 $2,007.43 check date of 06/29/2022 (paid out 2 w ks)
Weeks 07/05/2022 to 07/18/2022 $1,864.03 check date of 07/14/2022 (paid out 1w k and 6 days)

Let me know of any questions in the meantime.
Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Bill <
Sent: Tuesday, July 19, 2022 2:02 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly,
Here are the details of the four payments I have received from Lincoln:

From: Bill <
Date: July 15, 2022 at 8:47:39 AM CDT
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Mike,

I have received 9+ w eeks pay so far,
6/03 for w eeks 1-4;
$4,015
6/22 w eeks 5-6;
$2,007
7/01 w eeks 7-8
$2,007
7/18 w eeks 9-10
$1,864

I feel I am due tw o more w eeks ($2,007) plus the day shorted in the check received on 7/18 ($143).

Thanks,
Bill

Sent from my iPhone

Begin forw arded message:
From: "Gorum, Kelly" <Kelly.Gorum@lfg.com>
Date: July 14, 2022 at 1:33:24 PM CDT
To: Bill <
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello Bill,

Thank you for your email. You w ill have a payment that goes out today covering the payment period of 07/05/2022-07/18/2022 approve to date. We w ill need updated medical records to extend your claim beyond the 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Thursday, July 14, 2022 9:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello, Kelly. I am nearing the end of my 12 w eek disability period. Could you confirm that after tomorrow 's payment, I w ill have one more 2-w eek payment covering the period 7/10 - 7/23 to be paid on July 29. Could you confirm this to be correct?
Thank you,
Bill Reynolds

Sent from my iPhone

On Jun 1, 2022, at 6:21 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently w aiting to hear back from my mentor on the approval of your claim. Your w eekly benefit amount is $1,141.00. We pay every tw o w eeks and w ill back date for your previous payment due. I w ill reach out to you later today w ith the exact dollar amount of the first payment and how many w eeks of payment that w ill be.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Tuesday, May 31, 2022 2:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Kelly,
I called your disability claims department a short time ago and spoke to Conya.
She said that my claim has been processed and approved for $1,141/w eek.
Could you please confirm this (as w ell as the effective disability dates of May 1 through July 18)?
Secondly, w hen can I expect to see the first deposit to my bank account? Will this be for five (5) w eeks of benefits?
Lastly, is there a specific day of w eek (bi-w eekly) for payments to me? Thank you for all your help; enjoy the rest of your day!

Bill Reynolds

Sent from my iPhone

On May 19, 2022, at 2:32 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello William,

Thank you for your email. As of right now w e have everything w e need from your Attending Physician and employer. Our Clinical Review team is review ing your claim. As soon as I have an update I w ill let you know .

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Wednesday, May 18, 2022 9:01 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Kelly. My doctor and HR have submitted everything needed, correct?

Sent from my iPhone

On May 18, 2022, at 7:53 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:
- KEPGO5 - Jul 25, 2022 06:07:46 am

| | | | | | |
|---|---|---|---|---|---|
| 7/25/2022 | Documents/Mail | 45 | Email | Completed | KEPGO5 |

Good morning Kelly,

I am attaching the benefit statement that has everything that you should be looking for. If there is something missing, please feel free to reach out to me.

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Wednesday, July 20, 2022 8:40 AM
To: Jacqulynn Brow n <jbrow n@jsfoods.com>
Cc: Brandy Jackson <bjackson@jsfoods.com>
Subject: std claim 1220042749 (secure)

CAUTION: This email originated from outside your organization. Exercise caution w hen opening attachments or

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

clicking links, especially from unknow n senders.
This message w as sent securely using Zix®

Hello,

I have a claim for William Reynolds and just need some additional information. Can you please provide the follow ing information?

-Confirmation of Long Term Coverage if applicable via enrollment form, benefit statement, screenshot of coverage or a paystub.

Please let me know if you have any questions,

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message w as secured by Zix®.
- KEPGO5 - Jul 25, 2022 05:36:33 am

| | | | | | |
|---|---|---|---|---|---|
| 7/25/2022 | Documents/Mail | 46 | Email | Completed | KEPGO5 |

Kelly Gorum

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Gorum, Kelly
Sent: Monday, July 25, 2022 5:54 AM
To: 'Bill' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Good Morning,

Thank you for your email. Currently your benefits have been suspended past 07/18/2022 due to needing updated medical records from your physician. Your maximum short term disability benefits date is 08/09/2022. We w ill need those updated medical records to review to try to extend past the 07/18/2022 date. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 21, 2022 7:22 AM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>; Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thanks, Kelly. I just have one question: in order to complete the 12 w eeks I w as approved for, shouldn't the extension be through August 2nd? This w ould add 7+7+1 (15) days w hich is the amount for 12 full w eeks minus

w hat I have been paid for to date.
Thanks again for w orking so hard on this for me.
Bill Reynolds

Sent from my iPhone

On Jul 20, 2022, at 9:25 AM, kelly.sackett <kelly.sackett@ebctx.com> w rote:

Good morning, Bill.

This is to follow up w ith you on the status of your questions regarding the Short-Term Disability payments.

Your Lincoln claim examiner, Kelly Gorum, responded back w ith their record of the payments. This explains w hy the last payment w as less than your others as it paid out 1 w eek and 6 days.

I've contacted MyMD to complete the paperw ork needed to extend your approval through 7/18/22 and w ill follow up w ith them later today.

Below is the payment schedule forw arded from Lincoln:

| | | | |
|---|---|---|---|
| Weeks 05/10/2022-06/07/2022 | $4,014.85 | check date of 06/01/2022 | (paid out 4w ks) |
| Weeks 06/07/2022 to 06/21/2022 | $2,007.43 | check date of 06/17/2022 | (paid out 2 w ks) |
| Weeks 06/21/2022 to 07/05/2022 | $2,007.43 | check date of 06/29/2022 | (paid out 2 w ks) |
| Weeks 07/05/2022 to 07/18/2022 | $1,864.03 | check date of 07/14/2022 | (paid out 1w k and 6 days) |

Let me know of any questions in the meantime.
Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Bill <
Sent: Tuesday, July 19, 2022 2:02 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly,
Here are the details of the four payments I have received from Lincoln:

From: Bill <
Date: July 15, 2022 at 8:47:39 AM CDT
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Mike,

I have received 9+ w eeks pay so far,
6/03 for w eeks 1-4;
$4,015

6/22 w eeks 5-6;
$2,007

7/01 w eeks 7-8
$2,007

7/18 w eeks 9-10
$1,864

I feel I am due tw o more w eeks ($2,007) plus the day shorted in the check received on 7/18 ($143).

Thanks,
Bill

Sent from my iPhone

Begin forw arded message:
From: "Gorum, Kelly" <Kelly.Gorum@lfg.com>
Date: July 14, 2022 at 1:33:24 PM CDT
To: Bill <
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello Bill,

Thank you for your email. You w ill have a payment that goes out today covering the payment period of 07/05/2022-07/18/2022 approve to date. We w ill need updated medical records to extend your claim beyond the 07/18/2022. Please let me know if you have any questions.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Thursday, July 14, 2022 9:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello, Kelly. I am nearing the end of my 12 w eek disability period. Could you confirm that after tomorrow 's payment, I w ill have one more 2-w eek payment covering the period 7/10 - 7/23 to be paid on July 29. Could you confirm this to be correct?
Thank you,
Bill Reynolds

Sent from my iPhone

On Jun 1, 2022, at 6:21 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Thank you for reaching out to me about your claim. I'm currently w aiting to hear back from my mentor on the approval of your claim. Your w eekly benefit amount is $1,141.00. We pay every tw o w eeks and w ill back date for your previous payment due. I w ill reach out to you later today w ith the exact dollar amount of the first payment and how many w eeks of payment that w ill be.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Tuesday, May 31, 2022 2:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Kelly,
I called your disability claims department a short time ago and spoke to Conya.
She said that my claim has been processed and approved for $1,141/w eek.
Could you please confirm this (as w ell as the effective disability dates of May 1 through July 18)?
Secondly, w hen can I expect to see the first deposit to my bank account? Will this be for five (5) w eeks of benefits?
Lastly, is there a specific day of w eek (bi-w eekly) for payments to me? Thank you for all your help; enjoy the rest of your day!

Bill Reynolds

Sent from my iPhone

On May 19, 2022, at 2:32 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello William,

Thank you for your email. As of right now w e have everything w e need from your Attending Physician and employer. Our Clinical Review team is review ing your claim. As soon as I have an update I w ill let you know .

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill <
Sent: Wednesday, May 18, 2022 9:01 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thank you, Kelly. My doctor and HR have submitted everything needed, correct?

Sent from my iPhone

On May 18, 2022, at 7:53 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello,

Thank you for your email. Currently our Clinic Review Team is review ing your claim. As soon as I get an update from them I w ill keep you updated. Please let me know if you have any other questions.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill Reynolds <

Sent: Tuesday, May 17, 2022 12:48 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; Disability Claims <disabilityclaims@lfg.com>; mrostis@jsfoods.com
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,

On April 28 (my appointment), Dr. Clinton Carter suggested minimum 6 w eek (better 12 w eeks) leave of absence due to stress. He can be reached at 903-593-8441. Also, my HR director, Mr. Mike Rostis, informed me that my FMLA w as to begin on May 9, 2022.

Please keep me apprised of the situation as I have no income right now . I am not eligible for any SSI disability due to my age (68).

Thank you,

Bill Reynolds

- KEPGO5 - Jul 25, 2022 05:54:52 am

| | | | | | |
|---|---|---|---|---|---|
| 7/28/2022 | Documents/Mail | 48 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 8:22 AM
To: 'Bill' <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning Bill,

Thank you for your email. I just need to verify some additional information w ith you. Are you doing cardiac rehab? Is your plan to return to w ork on 08/01/2022? Please let me know .

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Wednesday, July 27, 2022 12:33 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hi Kelly,
I saw Dr Carter yesterday and he sent my report to Lincoln National yesterday. I have attached a pdf copy below for your reference.
Please process my final disability payment for w eeks 11 and 12 plus the one day from w eek 10 w hich w as shorted in my July 15th payment. Thank you so much for all you help!

Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill <
Date: July 27, 2022 at 12:27:06 PM CDT
To:
Subject: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

- KEPGO5 - Jul 28, 2022 08:22:27 am

| | | | | | |
|---|---|---|---|---|---|
| 7/28/2022 | Documents/Mail | 49 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 8:30 AM
To: 'Karen Dalton' <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

Hello Karen,

Thank you for reaching out to me and sending me the updated medical records. I did reach out to Mr. Reynold's I have a couple questions to ask him. We did send his medical records over to our Clinical Review Team to review his updated records. Once I hear back from that team I w ill have an update. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, July 26, 2022 4:24 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Subject: FW: short term disability

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly!!!

Our Kelly is out the rest of this w eek and I am trying to figure out w here this w as left off.

From w hat I can tell you w ere needing updated doctor notes for Bill Reynolds.

Please see attached. What else might you need to extend this disability claim??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Tuesday, July 26, 2022 4:02 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: short term disability

Please see attached visit notes and continuance of disability form. Let me know if you need any additional info.

Melissa

________________________________
From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Monday, July 25, 2022 1:32 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: short term disability

Mr. Reynolds is scheduled to see Dr. Carter tomorrow (7/26). I w ill email you the visit notes as soon as Dr. Carter completes them.

Melissa

________________________________
From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Wednesday, July 20, 2022 11:59 AM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Cc: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability

Hi Melissa,
His STD benefits w ere only approved through 7/18. They need the medical records as soon as possible in order to extend it through the 12 w eek period. This w ould be an additional 2 w eeks or around 8/1.

Let us know if you need any other information.
Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680

Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Wednesday, July 20, 2022 11:07 AM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Re: short term disability

When does his STD end? He is scheduled to see a provider on 7/26. Does the paperw ork need to be completed sooner? I reached out to the patient and asked him if he's w anting to be cleared to return to w ork or if he's w anting it extended.

Melissa

________________________________________

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Tuesday, July 19, 2022 3:56 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Subject: RE: short term disability

Melissa,
Sorry about that. Attached is the continuation form.

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: kelly.sackett <kelly.sackett@ebctx.com>
Sent: Tuesday, July 19, 2022 3:55 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: JSF: short term disability

Melissa,

Would you be able to forw ard medical records show ing he is not capable of w orking through the 12 w eeks? Attached is a physician's statement to complete and send w ith the medical records.

Thank you!
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Tuesday, July 19, 2022 1:11 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: short term disability

Danyel forw arded to me the email that you sent her about William Reynold's short-term disability. The patient has a follow up appointment on 7/26. He said HR w as requiring a note for him to return to w ork, but it has been my understanding that they can return to w ork at the end of the designated time off unless it needs to be extended. We do not have any recent visit notes since patient w as originally taken off w ork.

Melissa Roddy, BSN, RN

2385 Oak Alley
Tyler, TX 75703

P: 903-630-7130 / F: 903-705-0992
w w w .mymdselecttyler.com

- KEPGO5 - Jul 28, 2022 08:31:03 am

| | | | | | |
|---|---|---|---|---|---|
| 7/28/2022 | Documents/Mail | 53 | Email | Completed | KEPGO5 |

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 3:31 PM
To: Bill <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Hello Bill,

I w as just follow ing up on my last email. I did try to call you as w ell. I just need a little more additional information. Can you please let me know if you are doing cardiac rehab and is your return to w ork plan still 08/01/2022?

Thank you,

Kelly

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 8:22 AM
To: Bill <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning Bill,

Thank you for your email. I just need to verify some additional information w ith you. Are you doing cardiac rehab? Is your plan to return to w ork on 08/01/2022? Please let me know .

Thank you,

Kelly

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Kelly Gorum<br>Claims Examiner II<br>Short Term Disability<br><br>Lincoln Financial Group<br>8801 Indian Hills Dr.<br>Omaha, NE 68114800-423-2765 Toll Free<br>Ext. 3871<br>877-843-3950 Fax<br><br>LincolnFinancial.com<br>Follow us on:<br><br>From: Bill <<br>Sent: Thursday, July 28, 2022 12:08 PM<br>To: Gorum, Kelly <Kelly.Gorum@lfg.com><br>Cc: kelly.sackett <kelly.sackett@ebctx.com><br>Subject: Re: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf<br><br>***This email is from an external source. Only open links and attachments from a Trusted Sender.***<br>Hi Kelly,<br>Could you please tell me my claim status now and w hen the final payment w ill be made?<br>Thank you.<br>Bill Reynolds<br><br>Sent from my iPhone<br><br>On Jul 27, 2022, at 12:32 PM, Bill < w rote:<br>Hi Kelly,<br>I saw Dr Carter yesterday and he sent my report to Lincoln National yesterday. I have attached a pdf copy below for your reference.<br>Please process my final disability payment for w eeks 11 and 12 plus the one day from w eek 10 w hich w as shorted in my July 15th payment. Thank you so much for all you help!<br><br>Bill Reynolds<br><br>Sent from my iPhone<br><br>Begin forw arded message:<br>From: Bill <<br>Date: July 27, 2022 at 12:27:06 PM CDT<br>To:<br>Subject: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf<br>- KEPGO5 - Jul 28, 2022 03:32:41 pm | | | | |
| 7/29/2022 | Documents/Mail<br>2022-07-27-06.49.33.294060O01 | 52 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| 7/28/2022 10:14:31 AM | Documents/Mail<br>2022-07-27-06.49.33.294060O01 | 52 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| 7/29/2022 | Documents/Mail<br>2022-07-27-16.17.15.137020O01 | 55 | Medical Records | Completed | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/28/2022 4:26:52 PM | Documents/Mail | 55 | Medical Records | Received | KEPGO5 |

2022-07-27-16.17.15.137020O01

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2022 | Documents/Mail | 61 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Friday, July 29, 2022 10:58 AM
To: 'Bill Reynolds' <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning Bill,

Thank you for your email. I just extended your claim to 08/01/2022. Payment w ill go out today. Please allow 2-3 business days for it to process through to your bank. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - Jul 29, 2022 10:58:30 am

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2022 | Documents/Mail | 57 | Email | Completed | KEPGO5 |

From: Bill Reynolds <
Sent: Thursday, July 28, 2022 3:44 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Hi Kelly,
I completed 4-5 w eeks of cardiac rehab and have been exercising on my ow n regularly w hich my cardiologist said w as ok. I w ill speak to HR next w eek about rerun to w ork options. Mike Rostis is out on vacation this w eek.

Thank you,
Bill Reynolds
Sent from my iPhone

On Jul 28, 2022, at 3:31 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

I w as just follow ing up on my last email. I did try to call you as w ell. I just need a little more additional information. Can you please let me know if you are doing cardiac rehab and is your return to w ork plan still

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

08/01/2022?

Thank you,

Kelly

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 8:22 AM
To: Bill <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning Bill,

Thank you for your email. I just need to verify some additional information with you. Are you doing cardiac rehab? Is your plan to return to work on 08/01/2022? Please let me know.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 28, 2022 12:08 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Re: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,
Could you please tell me my claim status now and when the final payment will be made?
Thank you.
Bill Reynolds

Sent from my iPhone

On Jul 27, 2022, at 12:32 PM, Bill < wrote:
Hi Kelly,
I saw Dr Carter yesterday and he sent my report to Lincoln National yesterday. I have attached a pdf copy below for your reference.

Please process my final disability payment for w eeks 11 and 12 plus the one day from w eek 10 w hich w as shorted in my July 15th payment. Thank you so much for all you help!

Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill <
Date: July 27, 2022 at 12:27:06 PM CDT
To:
Subject: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

Sent from my iPhone
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message w as secured by Zix®.
 - KEPGO5 - Jul 29, 2022 07:29:38 am

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2022 | Documents/Mail | 58 | Email | Completed | KEPGO5 |

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Friday, July 29, 2022 7:12 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Re: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning, Kelly. Please let me know if I should be w atching for a payment in my bank account today.
Thanks, as alw ays, for your help.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Bill Reynolds
Sent from my iPhone

On Jul 28, 2022, at 3:44 PM, Bill Reynolds < wrote:
Hi Kelly,
I completed 4-5 weeks of cardiac rehab and have been exercising on my own regularly which my cardiologist said was ok. I will speak to HR next week about rerun to work options. Mike Rostis is out on vacation this week.

Thank you,
Bill Reynolds
Sent from my iPhone

On Jul 28, 2022, at 3:31 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> wrote:

This message was sent securely using Zix®

Hello Bill,

I was just following up on my last email. I did try to call you as well. I just need a little more additional information. Can you please let me know if you are doing cardiac rehab and is your return to work plan still 08/01/2022?

Thank you,

Kelly

From: Gorum, Kelly
Sent: Thursday, July 28, 2022 8:22 AM
To: Bill <
Subject: RE: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf (secure)

Good morning Bill,

Thank you for your email. I just need to verify some additional information with you. Are you doing cardiac rehab? Is your plan to return to work on 08/01/2022? Please let me know.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill <
Sent: Thursday, July 28, 2022 12:08 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Re: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,
Could you please tell me my claim status now and when the final payment will be made?
Thank you.
Bill Reynolds

Sent from my iPhone

On Jul 27, 2022, at 12:32 PM, Bill < wrote:
Hi Kelly,
I saw Dr Carter yesterday and he sent my report to Lincoln National yesterday. I have attached a pdf copy below for your reference.
Please process my final disability payment for weeks 11 and 12 plus the one day from week 10 which was shorted in my July 15th payment. Thank you so much for all you help!

Bill Reynolds

Sent from my iPhone

Begin forwarded message:
From: Bill <
Date: July 27, 2022 at 12:27:06 PM CDT
To:
Subject: 8a96a5fe-e55e-0c46-6c63-6798-5d93f7e8.pdf

Sent from my iPhone
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**
- KEPGO5 - Jul 29, 2022 07:30:10 am

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2022 | Documents/Mail<br>2022-07-27-06.49.33.241060O01 | 50 | Email | Completed | KEPGO5 |
| 7/28/2022 10:14:29 AM | Documents/Mail<br>2022-07-27-06.49.33.241060O01 | 50 | Email | Received | KEPGO5 |
| 7/29/2022 | Documents/Mail<br>2022-07-27-16.17.15.156020O01 | 56 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| 7/28/2022 4:26:53 PM | Documents/Mail<br>2022-07-27-16.17.15.156020O01 | 56 | Claim Form - EE, ER, APS | Received | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/29/2022 | Documents/Mail<br>2022-07-27-06.49.33.271060O01 | 51 | Incoming Correspondence | Completed | KEPGO5 |
| 7/28/2022 10:14:30 AM | Documents/Mail<br>2022-07-27-06.49.33.271060O01 | 51 | Incoming Correspondence | Received | KEPGO5 |
| 7/29/2022 | Documents/Mail<br>2022-07-27-16.17.15.115020O01 | 54 | Email | Completed | KEPGO5 |
| 7/28/2022 4:26:50 PM | Documents/Mail<br>2022-07-27-16.17.15.115020O01 | 54 | Email | Received | KEPGO5 |
| 7/29/2022 | Documents/Mail<br>STD Extension Letter | 59 | STD Extension Letter | Completed | KEPGO5 |
| 7/29/2022 | Documents/Mail<br>STD Extension Letter | 60 | STD Extension Letter | Completed | KEPGO5 |
| 8/1/2022 | Documents/Mail | 62 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Monday, August 1, 2022 5:32 AM
To: 'Bill Reynolds' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Yes payment w as sent out on 07/29/2022. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Friday, July 29, 2022 11:46 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Thank you, Kelly!!! You're the BEST!!
Is it possible that you'll be sending a payment today?
Gratefully,
Bill Reynolds
Sent from my iPhone

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

On Jul 29, 2022, at 11:00 AM, Kelly Gorum <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, STD 1
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message w as secured by Zix®.
- KEPGO5 - Aug 01, 2022 05:32:23 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/1/2022 | Documents/Mail | 63 | Suspend Benefits for Proof of Dis | Completed | KEPGO5 |
| | Suspend Benefits for Proof of Dis | | | | |
| 8/1/2022 | Documents/Mail | 64 | Suspend Benefits for Proof of Dis | Completed | KEPGO5 |
| | Suspend Benefits for Proof of Dis | | | | |
| 8/4/2022 | Documents/Mail | 66 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, August 4, 2022 2:40 PM
To: 'Karen Dalton' <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hello Karen,

Thank you for your email. I just sent an email over to Bill as w ell. It looks like w e approved the claim until 08/01/2022. I did ask him w hat his expected return to w ork date is. We w ill need update medical records to extend beyond 08/01/2022. Please let me know if you have any questions.

Thank you,

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 2:25 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

Hi Kelly!! Bill is contacting the provider, us and I am sure you also for status of his disability payments. Any update you can offer??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, July 28, 2022 8:31 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

- KEPGO5 - Aug 04, 2022 02:40:06 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/4/2022 | Documents/Mail | 65 | Email | Completed | KEPGO5 |

From: Gorum, Kelly

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Sent: Thursday, August 4, 2022 2:36 PM
To: 'Bill Reynolds' <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

HI bill,

It looks like w e approved your claim until 08/01/2022 based on you doing cardiac rehab. Your physician recommended you to be out of w orking until 08/01/2022. Were you able to return to w ork? If not w hat is your expected return to w ork date? We w ill need update medical records to extend beyond 08/01/2022. You should have received the suspend benefit letter of w hat is needed to extend out the claim. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 10:37 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly,
Do you know anything about the status of my long term disability case?

Thanks,
Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 2, 2022 at 10:47:13 AM CDT
To: "Gorum, Kelly" <Kelly.Gorum@lfg.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly,
I received my payment today, thank you so much!!! Will my first long term disability payment be next w eek? Also, is this paid bi-w eekly as w ell?
As alw ays, I greatly appreciate all you do during this tough period I have been going through.

Bill Reynolds

Sent from my iPhone

On Aug 1, 2022, at 5:31 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

Yes payment w as sent out on 07/29/2022. Please let me know if you have any questions.

Thank you,

Kelly

<image001.png>Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

From: Bill Reynolds <
Sent: Friday, July 29, 2022 11:46 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Thank you, Kelly!!! You're the BEST!!
Is it possible that you'll be sending a payment today?
Gratefully,
Bill Reynolds
Sent from my iPhone

On Jul 29, 2022, at 11:00 AM, Kelly Gorum <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, STD 1
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message w as secured by Zix®.
Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlaw ful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message w as secured by Zix®.
- KEPGO5 - Aug 04, 2022 02:36:53 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/5/2022 | Documents/Mail | 68 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Friday, August 5, 2022 1:24 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

Hello Karen,

Thank you for your email. We w ill need updated medical records or office visit notes from his last office visit to extend his short term benefits. His max benefit amount for short term disability is through 08/09/2022. If I am able to approve to that date of 08/09/2022. I w ill roll his claim over to our long term disability department. I w ill attach the LTD form to this email as w ell. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 4:38 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

Hi Kelly!!!

Bill w ill be transitioning to LTD as he is unable to return to w ork. Dr. Carter w ill provide updated medical notes and is asking if there is a different form they should complete.

If so, can you please send or can Dr. Carter's office submit the same form as last w eek??

Thanks so much for your help!!!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, August 4, 2022 2:40 PM

To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

Thank you for your email. I just sent an email over to Bill as w ell. It looks like w e approved the claim until 08/01/2022. I did ask him w hat his expected return to w ork date is. We w ill need update medical records to extend beyond 08/01/2022. Please let me know if you have any questions.

Thank you,

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 2:25 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

Hi Kelly!! Bill is contacting the provider, us and I am sure you also for status of his disability payments. Any update you can offer??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, July 28, 2022 8:31 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

Thank you for reaching out to me and sending me the updated medical records. I did reach out to Mr. Reynold's I have a couple questions to ask him. We did send his medical records over to our Clinical Review Team to review his updated records. Once I hear back from that team I will have an update. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, July 26, 2022 4:24 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: short term disability

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly!!!

Our Kelly is out the rest of this week and I am trying to figure out where this was left off.

From what I can tell you were needing updated doctor notes for Bill Reynolds.

Please see attached. What else might you need to extend this disability claim??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Tuesday, July 26, 2022 4:02 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
- KEPGO5 - Aug 05, 2022 01:24:19 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/5/2022 | Documents/Mail | 67 | Email | Completed | KEPGO5 |

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 2:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Cc: kelly. sackett <Kelly.Sackett@ebctx.com>; Gorum, Kelly <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Karen,
I am unable to return to w ork at this time.
I met w ith Dr Carter on July 26 and discussed
my current state as w ell as future options.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 4, 2022, at 2:46 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill!!

Kelly from LFG just sent an email over to you as w ell. LFG approved the claim until 08/01/2022. Kelly informed us LFG needs your return to w ork date. LFG w ill need update medical records to extend beyond 08/01/2022.
—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 1:43 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 4, 2022 at 1:42:20 PM CDT
- KEPGO5 - Aug 05, 2022 01:17:21 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/8/2022 | Documents/Mail | 70 | Email | Completed | KEPGO5 |

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Friday, August 5, 2022 1:30 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

THANK YOU!! Have a great w eekend!!!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Friday, August 5, 2022 1:24 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

Thank you for your email. We w ill need updated medical records or office visit notes from his last office visit to extend his short term benefits. His max benefit amount for short term disability is through 08/09/2022. If I am able to approve to that date of 08/09/2022. I w ill roll his claim over to our long term disability department. I w ill attach the LTD form to this email as w ell. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 4:38 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

Hi Kelly!!!

Bill w ill be transitioning to LTD as he is unable to return to w ork. Dr. Carter w ill provide updated medical notes and is asking if there is a different form they should complete.

If so, can you please send or can Dr. Carter's office submit the same form as last w eek??

Thanks so much for your help!!!!!

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, August 4, 2022 2:40 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

Thank you for your email. I just sent an email over to Bill as w ell. It looks like w e approved the claim until 08/01/2022. I did ask him w hat his expected return to w ork date is. We w ill need update medical records to extend beyond 08/01/2022. Please let me know if you have any questions.

Thank you,

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 2:25 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: short term disability (secure)

Hi Kelly!! Bill is contacting the provider, us and I am sure you also for status of his disability payments. Any update you can offer??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, July 28, 2022 8:31 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: short term disability (secure)

This message w as sent securely using Zix®

Hello Karen,

Thank you for reaching out to me and sending me the updated medical records. I did reach out to Mr. Reynold's I have a couple questions to ask him. We did send his medical records over to our Clinical Review Team to review his updated records. Once I hear back from that team I w ill have an update. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, July 26, 2022 4:24 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: short term disability

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly!!!
- KEPGO5 - Aug 08, 2022 03:34:02 pm

8/8/2022 Documents/Mail 69 Email Completed KEPGO5

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Friday, August 5, 2022 1:30 PM
To: Bill Reynolds <
Cc: Gorum, Kelly <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
HI Bill!

We just received confirmation from Kelly as to w hat form is needed.

I have contacted Nurse Melissa to update the medical records and send to me. Once received, the notes w ill be sent to Kelly for review to extend benefits to 08.09.2022.

THANKS and have a great w eekend!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666

| Posted Date | Category | Seq | Item | Status | User |
| --- | --- | --- | --- | --- | --- |

Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Karen Dalton
Sent: Thursday, August 4, 2022 5:04 PM
To: 'Bill Reynolds' <
Cc: Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Bill!

I have been in communication w ith Melissa at MyMD. Dr. Carter is updating the notes that LFG needs.

We have asked Kelly if a different form is needed for LTD and once w e have that, w e w ill w ork w ith Dr. Carter to get updated notes so LFG can review to extend benefits past 08.01.2022.

Know w e are w orking on this. Thanks

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 2:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>; Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Karen,
I am unable to return to w ork at this time.
I met w ith Dr Carter on July 26 and discussed
my current state as w ell as future options.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 4, 2022, at 2:46 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill!!

Kelly from LFG just sent an email over to you as w ell. LFG approved the claim until 08/01/2022. Kelly informed us LFG needs your return to w ork date. LFG w ill need update medical records to extend beyond 08/01/2022.

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 1:43 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 4, 2022 at 1:42:20 PM CDT
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Mike,
Please see attached pdf. It seems that Lincoln is needing something else.
Please keep me in the loop.
Thank you,
Bill
Sent from my iPhone

Begin forw arded message:
From: Kelly Gorum <Kelly.Gorum@lfg.com>
Date: August 1, 2022 at 6:00:59 AM CDT
To:
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, STD 1
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

- KEPGO5 - Aug 08, 2022 03:33:26 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/10/2022 | Documents/Mail | 74 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Wednesday, August 10, 2022 1:53 PM
To: 'Karen Dalton' <karen.dalton@ebctx.com>
Subject: RE: disability paperw ork (secure)

Hello Karen,

Thank you for your email. The incoming documents have been received our Clinical Team is review ing the medical documents. As soon as they get back to me I w ill have a claim update. I w ill reach out to you and Mr. Reynold. Please let me know if you have any questions.

Thank you,

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Wednesday, August 10, 2022 10:34 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: disability paperw ork

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Hi Kelly!! Any update on this?? ?? THANKS

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Karen Dalton
Sent: Monday, August 8, 2022 8:50 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: disability paperw ork

Hi Kelly! Please review and advise if anything else is needed. THANKS

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Monday, August 8, 2022 8:37 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: disability paperw ork

Dr. Carter completed the form. I noticed he did not specify a return-to-w ork date. Also the only most recent visit note that w e have is July 26th. Is that ok?

Melissa

________________________________________
From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Friday, August 5, 2022 1:27 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Subject: RE: disability paperw ork

Hi Melissa!! For today, you can use the same form as you have in the past. If LFG approves his

LFG needs updated medical records or office visit notes from his last office visit to extend his short term benefits. His max benefit amount for short term disability is through 08/09/2022. If LFG does approve to that date of 08/09/2022., they w ill roll his claim over to the long term disability department.

THANKS and have a great w eekend!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Thursday, August 4, 2022 4:05 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: disability paperw ork

Mr. Williams is w anting to change it to long-term disability. Is there a different form that Dr. Carter needs to complete? Does Dr. Carter need to specify a certain end date for LTD? I apologize for all of the questions. We do not typically have a patient on disability for this long, so it's a new process for me.

________________________________________
From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 3:11 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Subject: RE: disability paperw ork

Yes ma'am. You can send to me once completed to send to LFG.

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Thursday, August 4, 2022 3:11 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: disability paperw ork

Mr. Williams states he is still unable to return to w ork. Does Dr. Carter need to fill out another disability continuance form?

________________________________________
From: Karen Dalton <karen.dalton@ebctx.com>

Sent: Thursday, August 4, 2022 2:46 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Subject: RE: disability paperw ork

Anytime!! LFG has approved his claim through 08.01. They w ill need more current records to extend past then. We are w aiting for him to advise his return to w ork date.

Appreciate you as w ell!!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Thursday, August 4, 2022 2:45 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: disability paperw ork

Oh w ow . I had no idea she left. Thank you for helping w ith this patient. Let me know if there is anything I need to do on our end. LFG seems to like to make the process a bit difficult.

Melissa

---

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Thursday, August 4, 2022 2:24 PM
To: Melissa Tyler Nurse <nursemelissa@mymdselect.com>; kelly.sackett <kelly.sackett@ebctx.com>
Subject: RE: disability paperw ork

Hi! Kelly is no longer w ith EBC. I intercepted your email and sent the records on 07.26 to LFG. Bill is w ell aw are of that as he also emailed LFG himself.

I'll follow up w ith LFG for status. THANKS

PS. You can direct emails to me for now .

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Melissa Tyler Nurse <nursemelissa@mymdselect.com>
Sent: Thursday, August 4, 2022 2:07 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: disability paperw ork

William Reynolds reached out asking me to urgently send visit notes to Lincoln Financial for his long-term disability. I emailed the visit notes and STD continuance form to you back on 7/26. Do I need to send anything to Lincoln Financial?

Melissa Roddy, BSN, RN

2385 Oak Alley
Tyler, TX 75703

P: 903-630-7130 / F: 903-705-0992
w w w .mymdselecttyler.com

- KEPGO5 - Aug 10, 2022 01:53:58 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/10/2022 | Documents/Mail 2022-08-08-09.56.21.276540O01 | 72 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| 8/9/2022 1:09:21 PM | Documents/Mail 2022-08-08-09.56.21.276540O01 | 72 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| 8/10/2022 | Documents/Mail 2022-08-08-09.56.21.250540O01 | 71 | Email | Completed | KEPGO5 |
| 8/9/2022 1:09:16 PM | Documents/Mail 2022-08-08-09.56.21.250540O01 | 71 | Email | Received | KEPGO5 |
| 8/10/2022 | Documents/Mail 2022-08-08-09.56.21.303540O01 | 73 | Medical Records | Completed | KEPGO5 |
| 8/9/2022 1:09:21 PM | Documents/Mail 2022-08-08-09.56.21.303540O01 | 73 | Medical Records | Received | KEPGO5 |
| 8/16/2022 | Documents/Mail | 75 | | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, August 16, 2022 11:37 AM
To: Bill Reynolds <
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

We sent for clinical review for the cardiac/physical piece of the claim, and w e are now sending for behavioral health to see if that supports. Once I have an update I w ill reach out to you and let you know . Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 7:25 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

| Posted Date | Category | Seq | Item | Status | User |
| --- | --- | --- | --- | --- | --- |

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning, Kelly.
Was my short-term disability payment sent last w eek?
It had not show n up yet. Please let me know at your earliest convenience.
Thank you,
Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 11, 2022 at 1:37:45 PM CDT
To: Kelly Gorum <Kelly.Gorum@lfg.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Hi Kelly,
Please let me know if a short-term payment of $2,007 w ill be paid to me tomorrow , August 12th.
Thanks,
Bill
Sent from my iPhone

On Aug 10, 2022, at 2:40 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill - from Kelly at LFG:

Thank you for your email. The incoming documents have been received our Clinical Team is review ing the medical documents. As soon as they get back to me I w ill have a claim update. I w ill reach out to you and Mr. Reynold. Please let me know if you have any questions.

Thanks and have a great day!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Wednesday, August 10, 2022 10:32 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Karen,
Could you please check w ith Lincoln regarding my long-term disability application status? Also, please confirm that tw o w eeks of short-term
disability w ill be paid this Friday, August 12.
As alw ays, I greatly appreciate all your efforts on my behalf.
Thank you,
Bill
Sent from my iPhone

On Aug 6, 2022, at 9:00 AM, Bill Reynolds < w rote:
Thanks, Karen. I am seeking approval for long-term disability. August 9th doesn't seem correct, but I'm unfamiliar w ith how LTD effective dates are set.
Thanks again,
Bill

Sent from my iPhone

On Aug 5, 2022, at 1:29 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

HI Bill!

We just received confirmation from Kelly as to w hat form is needed.

I have contacted Nurse Melissa to update the medical records and send to me. Once received, the notes w ill be sent to Kelly for review to extend benefits to 08.09.2022.

THANKS and have a great w eekend!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Karen Dalton
Sent: Thursday, August 4, 2022 5:04 PM
To: 'Bill Reynolds' <
Cc: Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Bill!

I have been in communication w ith Melissa at MyMD. Dr. Carter is updating the notes that LFG needs.

We have asked Kelly if a different form is needed for LTD and once w e have that, w e w ill w ork w ith Dr. Carter to get updated notes so LFG can review to extend benefits past 08.01.2022.

Know w e are w orking on this. Thanks

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 2:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Cc: kelly.sackett <kelly.sackett@ebctx.com>; Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Karen,
I am unable to return to w ork at this time.
I met w ith Dr Carter on July 26 and discussed
my current state as w ell as future options.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 4, 2022, at 2:46 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill!!

Kelly from LFG just sent an email over to you as w ell. LFG approved the claim until 08/01/2022. Kelly informed us LFG needs your return to w ork date. LFG w ill need update medical records to extend beyond 08/01/2022.

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 1:43 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 4, 2022 at 1:42:20 PM CDT
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Mike,
Please see attached pdf. It seems that Lincoln is needing something else.
Please keep me in the loop.
Thank you,
Bill
Sent from my iPhone

Begin forw arded message:
From: Kelly Gorum <Kelly.Gorum@lfg.com>
Date: August 1, 2022 at 6:00:59 AM CDT
To:
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, STD 1

Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.
<LFG.PDF>
 - KEPGO5 - Aug 16, 2022 12:10:14 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/18/2022 | Documents/Mail | 76 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Thursday, August 18, 2022 1:46 PM
To: Bill Reynolds <
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Bill,

Thank you for your email. I did leave you a voicemail early. I hope you did get that. I just want to let you know once Clinical Review came back I'm just waiting on the other review to come back. As soon as I get this back I will reach out to you. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 12:15 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Thanks, Kelly.
My immediate concern is for the short-term payment due to bring me current through 8/09. Please advise.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 16, 2022, at 11:36 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

We sent for clinical review for the cardiac/physical piece of the claim, and w e are now sending for behavioral health to see if that supports. Once I have an update I w ill reach out to you and let you know . Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 7:25 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>

Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning, Kelly.
Was my short-term disability payment sent last w eek?
It had not show n up yet. Please let me know at your earliest convenience.
Thank you,
Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 11, 2022 at 1:37:45 PM CDT
To: Kelly Gorum <Kelly.Gorum@lfg.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Hi Kelly,
Please let me know if a short-term payment of $2,007 w ill be paid to me tomorrow , August 12th.
Thanks,
Bill
Sent from my iPhone

- KEPGO5 - Aug 18, 2022 01:47:19 pm

8/18/2022 Documents/Mail 77 Email Completed KEPGO5

From: Gorum, Kelly
Sent: Thursday, August 18, 2022 1:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello,

Thank you for your email. I'm w aiting for our clinical review team to finish review ing Mr. Reynold's medical file. He w as approved to 08/01/2022. The maximum date for STD is 08/09/2022. If w e are able to approve to 08/09/2022 then w e w ill roll the claim over to LTD. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, August 16, 2022 1:10 PM

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!!

It w as unclear if your comments as to status w ere related to the STD or moving to LTD. Can you please specifically answ er about STD and the next steps that w ill need to be taken to move to LTD???

THANKS so much!!!!

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 12:15 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution w hen opening attachments or clicking links, especially from unknow n senders.

Thanks, Kelly.
My immediate concern is for the short-term payment due to bring me current through 8/09. Please advise.
Thank you,
Bill Reynolds

Sent from my iPhone

- KEPGO5 - Aug 18, 2022 01:55:31 pm

| 8/23/2022 | Documents/Mail | 78 | Email | Completed | KEPGO5 |
|---|---|---|---|---|---|

From: Gorum, Kelly
Sent: Tuesday, August 23, 2022 1:28 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Karen,

Thank you for your email. I just got done leaving Ms. Reynold a detailed message. Our clinical staff review ed the medical records on file and they are not able to support total disability on the claim. I w ill send a formal denial letter that's explains everything to Mr. Reynolds and he has the right to appeal the decision. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, August 23, 2022 8:25 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!! Any update?? Bill is follow ing up. THANKS

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, August 18, 2022 1:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>
- KEPGO5 - Aug 23, 2022 01:28:50 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/24/2022 | Documents/Mail | 79 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Wednesday, August 24, 2022 12:44 PM
To: 'Karen Dalton' <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

HI Karen!

Bill w as approved through 08/01/2022. Final payment w as on from 07/18/2022 to 08/01/2022. Short Term benefits w ere denied. He can start a Long Term claim if he w ould like to. Mr. Reynolds w ould call into our customer service department or email to forms in. Once the denial letters is w ritten I w ill send you a copy as w ell. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, August 23, 2022 3:56 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!

Was Bill's STD approved through 08.09.22? If so, w hen can he expect payment??

It is not clear if the STD and LTD w ere denied or just the LTD. Is it possible for a copy of the denial letter to be provided to us??

If you could please provide as much detail as possible, it w ould be greatly appreciated!!

THANKS

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Tuesday, August 23, 2022 1:28 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hi Karen,

Thank you for your email. I just got done leaving Ms. Reynold a detailed message. Our clinical staff review ed the medical records on file and they are not able to support total disability on the claim. I w ill send a formal denial letter that's explains everything to Mr. Reynolds and he has the right to appeal the decision. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.

Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, August 23, 2022 8:25 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!! Any update?? Bill is follow ing up. THANKS

__

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Gorum, Kelly <Kelly.Gorum@lfg.com>
Sent: Thursday, August 18, 2022 1:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

Hello,

Thank you for your email. I'm w aiting for our clinical review team to finish review ing Mr. Reynold's medical file. He w as approved to 08/01/2022. The maximum date for STD is 08/09/2022. If w e are able to approve to 08/09/2022 then w e w ill roll the claim over to LTD. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Tuesday, August 16, 2022 1:10 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!!

It w as unclear if your comments as to status w ere related to the STD or moving to LTD. Can you please specifically answ er about STD and the next steps that w ill need to be taken to move to LTD???

THANKS so much!!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 12:15 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution w hen opening attachments or clicking links, especially from unknow n senders.

Thanks, Kelly.
My immediate concern is for the short-term payment due to bring me current through 8/09. Please advise.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 16, 2022, at 11:36 AM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

Hello Bill,

We sent for clinical review for the cardiac/physical piece of the claim, and w e are now sending for behavioral health to see if that supports. Once I have an update I w ill reach out to you and let you know . Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free

Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, August 16, 2022 7:25 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning, Kelly.
Was my short-term disability payment sent last w eek?
It had not show n up yet. Please let me know at your earliest convenience.
Thank you,
Bill Reynolds

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 11, 2022 at 1:37:45 PM CDT
To: Kelly Gorum <Kelly.Gorum@lfg.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Hi Kelly,
Please let me know if a short-term payment of $2,007 w ill be paid to me tomorrow , August 12th.
Thanks,
Bill
Sent from my iPhone

On Aug 10, 2022, at 2:40 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill - from Kelly at LFG:

Thank you for your email. The incoming documents have been received our Clinical Team is review ing the medical documents. As soon as they get back to me I w ill have a claim update. I w ill reach out to you and Mr. Reynold. Please let me know if you have any questions.

Thanks and have a great day!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Wednesday, August 10, 2022 10:32 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Karen,
Could you please check w ith Lincoln regarding my long-term disability application status? Also, please confirm that

tw o w eeks of short-term
disability w ill be paid this Friday, August 12.
As alw ays, I greatly appreciate all your efforts on my behalf.
Thank you,
Bill
Sent from my iPhone

On Aug 6, 2022, at 9:00 AM, Bill Reynolds < w rote:
Thanks, Karen. I am seeking approval for long-term disability. August 9th doesn't seem correct, but I'm unfamiliar w ith how LTD effective dates are set.
Thanks again,
Bill

Sent from my iPhone

On Aug 5, 2022, at 1:29 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

HI Bill!

We just received confirmation from Kelly as to w hat form is needed.

I have contacted Nurse Melissa to update the medical records and send to me. Once received, the notes w ill be sent to Kelly for review to extend benefits to 08.09.2022.

THANKS and have a great w eekend!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Karen Dalton
Sent: Thursday, August 4, 2022 5:04 PM
To: 'Bill Reynolds' <
Cc: Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Bill!

I have been in communication w ith Melissa at MyMD. Dr. Carter is updating the notes that LFG needs.

We have asked Kelly if a different form is needed for LTD and once w e have that, w e w ill w ork w ith Dr. Carter to get updated notes so LFG can review to extend benefits past 08.01.2022.

Know w e are w orking on this. Thanks

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 2:55 PM
To: Karen Dalton <karen.dalton@ebctx.com>

Cc: kelly.sackett <kelly.sackett@ebctx.com>; Kelly Gorum <Kelly.Gorum@lfg.com>; Michael Rostis <mrostis@jsfoods.com>
Subject: Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Karen,
I am unable to return to w ork at this time.
I met w ith Dr Carter on July 26 and discussed
my current state as w ell as future options.
Thank you,
Bill Reynolds

Sent from my iPhone

On Aug 4, 2022, at 2:46 PM, Karen Dalton <karen.dalton@ebctx.com> w rote:

Hi Bill!!

Kelly from LFG just sent an email over to you as w ell. LFG approved the claim until 08/01/2022. Kelly informed us LFG needs your return to w ork date. LFG w ill need update medical records to extend beyond 08/01/2022.

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
w w w .EBCTX.com

From: Bill Reynolds <
Sent: Thursday, August 4, 2022 1:43 PM
To: kelly.sackett <kelly.sackett@ebctx.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Sent from my iPhone

Begin forw arded message:
From: Bill Reynolds <
Date: August 4, 2022 at 1:42:20 PM CDT
To: Michael Rostis <mrostis@jsfoods.com>
Subject: Fw d: Lincoln Financial Group Information for Claim 1220042749 (SECURE)
Mike,
Please see attached pdf. It seems that Lincoln is needing something else.
Please keep me in the loop.
Thank you,
Bill
Sent from my iPhone

Begin forw arded message:
From: Kelly Gorum <Kelly.Gorum@lfg.com>
Date: August 1, 2022 at 6:00:59 AM CDT
To:
Subject: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message w as sent securely using Zix®

E-communication from Lincoln Financial Group

Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

Kelly Gorum
Claims Examiner II, STD 1
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, w hich is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to w hich it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited
- KEPGO5 - Aug 24, 2022 12:44:19 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/30/2022 | Documents/Mail | 80 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, August 30, 2022 11:53 AM
To: Karen Dalton <karen.dalton@ebctx.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hello Karen,

Thank you for reaching out to me. I'm currently w orking on Mr. Reynolds denial letter. I w ill get yours out today. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

LincolnFinancial.com
Follow us on:

From: Karen Dalton <karen.dalton@ebctx.com>
Sent: Monday, August 29, 2022 2:36 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Subject: RE: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Hi Kelly!!

Can you please provide an update on the denial letter??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

- KEPGO5 - Aug 30, 2022 11:54:17 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/30/2022 | Documents/Mail | 81 | Generic Denial Ltr Sent to Employer | Completed | KEPGO5 |

Generic Denial Ltr Sent to Employer

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/31/2022 | Documents/Mail | 83 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Wednesday, August 31, 2022 1:15 PM
To: <
Subject: STD CLAIM number 1220042749 (secure)

Hello Bill,

Here are the forms for the Long Term Disability. Once they are complete you can have them faxed in. Someone from our Long Term disability department will reach out to you. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Follow us on:

- KEPGO5 - Aug 31, 2022 01:14:48 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/31/2022 | Documents/Mail | 82 | Email | Completed | KEPGO5 |

Hello Bill,

I w ill send a detailed denial letter as w ell. After our clinical review team review ed your medical file and the claim has been denied. It notes you w ere seen by Dr. Carter on 4/28/22 and reported anxiety attacks prior to w ork, making mistakes in the w orkplace, second guessing yourself, and decreased speed due to fear of making further mistakes. Dr. Carter recommended that the you take leave for physical and mental recovery. You w ere seen by Dr. Carter 7/26/22, at w hich time it w as noted that symptoms w ere gradually improving. Ongoing anxiety w as noted around return to w ork date. It w as reported that you had discontinued the Lexapro due to lack of benefit, but w as taking Wellbutrin, along w ith as needed anxiety medication, Xanax, 3-4 times per month. Psychiatric exam findings w ere not noted. Dr. Carter recommended that you remain out of w ork through at least 8/1/22, but no further escalations in care w ere noted, such as medication adjustments or referral to additional behavioral health providers. There is no indication that you treating w ith psychotherapy, as no records are currently available from any therapy provider, and records do not note treatment w ith outside therapy provider. Dr. Carter provided a Continuance of Disability Form dated 7/26/22 noting difficulty w ith concentration and short-term memory, along w ith difficulty w ith ability to perform high level analysis, but noted that you w ere w orking tow ards a return to w ork date if possible. There w as no indication that you received any escalations in care related to behavioral health conditions, as you declined to meet w ith behavioral health staff w ithin Dr. Carter's office, and discontinued you secondary anti-depressant medication, w ith no further medication adjustments indicated by Dr. Carter. There is no indication that you are currently treating w ith additional behavioral health providers, such as therapy or psychiatry, as no records are currently available from any additional providers, and this treatment is not noted w ithin visits w ith Dr. Carter. Dr. Carter noted you are seen every 3 months, w hich w ould not be a frequency consistent w ith impairing levels of psychiatric symptoms, w ith w hich treatment w ould be expected on a monthly basis. Due to these reasons restrictions and limitations are not supported beyond 08/01/2022.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - Aug 31, 2022 11:05:27 am

| | | | | | |
|---|---|---|---|---|---|
| 9/13/2022 | Documents/Mail | 89 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, September 13, 2022 3:56 PM

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

To: 'Bill Reynolds' <
Subject: RE: LTD forms (secure)

Hello Bill,

I did go ahead and forward your documents to our intake department. Someone from that department should reach out to you. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Friday, September 9, 2022 1:40 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; Karen Dalton <karen.dalton@ebctx.com>
Subject: Fw: LTD forms

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Kelly,
Here are my completed LTD forms and medical backup.
Are you able to forward to LTD department?

Thank you,
Bill Reynolds
903-539-5767

- KEPGO5 - Sep 13, 2022 03:56:57 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/16/2022 | Documents/Mail<br>2022-09-12-09.50.19.393980O01 | 86 | Email | Completed | KEPGO5 |
| 9/12/2022 4:44:11 PM | Documents/Mail<br>2022-09-12-09.50.19.393980O01 | 86 | Email | Received | KEPGO5 |
| 9/16/2022 | Documents/Mail<br>2022-09-12-17.17.08.681000O01 | 87 | Medical Records | Completed | KEPGO5 |
| 9/12/2022 4:44:12 PM | Documents/Mail<br>2022-09-12-17.17.08.681000O01 | 87 | Medical Records | Received | KEPGO5 |
| 9/16/2022 | Documents/Mail<br>From: Gorum, Kelly | 92 | Email | Completed | KEPGO5 |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Sent: Friday, September 16, 2022 2:51 PM
To: 'Bill Reynolds' <
Subject: RE: STD denial for extending beyond 8/1/22

Hello Bill,

Thank your for your email. The denial letter has been sent out. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Tuesday, September 13, 2022 2:32 PM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>
Cc: Karen Dalton <Karen.Dalton@ebctx.com>
Subject: Re: STD denial for extending beyond 8/1/22

***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Kelly,
I have not received any mail from you.
Please advise.
Thanks,
Bill Reynolds
Sent from my iPhone

On Aug 31, 2022, at 12:56 PM, Bill Reynolds < w rote:

Karen,
Here's w hat I received from Kelly.

- KEPGO5 - Sep 16, 2022 02:50:56 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/16/2022 | Documents/Mail | 85 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| | 2022-09-12-08.39.14.383980O01 | | | | |
| 9/12/2022 2:04:34 PM | Documents/Mail | 85 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| | 2022-09-12-08.39.14.383980O01 | | | | |
| 9/16/2022 | Documents/Mail | 90 | Email | Completed | KEPGO5 |
| | From: Gorum, Kelly | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Sent: Friday, September 16, 2022 2:35 PM<br>To: INTAKE <INTAKE@lfg.com><br>Subject: STD claim 1220042749<br><br>Please start LTD claim for ee,<br><br>Kelly Gorum<br>Claims Examiner II<br>Short Term Disability<br><br>Lincoln Financial Group<br>8801 Indian Hills Dr.<br>Omaha, NE 68114800-423-2765 Toll Free<br>Ext. 3871<br>877-843-3950 Fax<br><br>LincolnFinancial.com<br>Follow us on:<br><br>- KEPGO5 - Sep 16, 2022 02:35:18 pm | | | | |
| 9/16/2022 | Documents/Mail<br>2022-09-12-17.17.44.200000O01 | 88 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| 9/12/2022 4:44:13 PM | Documents/Mail<br>2022-09-12-17.17.44.200000O01 | 88 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| 9/16/2022 | Documents/Mail<br>Denial Not DisabledAttachments:Translation services | 84 | Denial Not Disabled | Completed | KEPGO5 |
| 9/1/2022 1:30:35 PM | Documents/Mail<br>Denial Not DisabledAttachments:Translation services | 84 | Denial Not Disabled | Work In Progress | KEPGO5 |
| 9/16/2022 | Documents/Mail<br>Generic Denial Ltr Sent to Employer | 91 | Generic Denial Ltr Sent to Employer | Completed | KEPGO5 |
| 9/22/2022 | Documents/Mail<br>2022-09-15-16.35.00.990920O01 | 93 | Email | Completed | KEPGO5 |
| 9/17/2022 11:25:53 AM | Documents/Mail<br>2022-09-15-16.35.00.990920O01 | 93 | Email | Received | KEPGO5 |
| 9/22/2022 | Documents/Mail<br>2022-09-17-12.24.14.421120O01 | 96 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| 9/17/2022 11:25:56 AM | Documents/Mail<br>2022-09-17-12.24.14.421120O01 | 96 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| 9/22/2022 | Documents/Mail<br>From: Gorum, Kelly<br>Sent: Thursday, September 22, 2022 3:12 PM<br>To: INTAKE <INTAKE@lfg.com><br>Subject: claim number 1220042749<br><br>Please move to LTD<br>- KEPGO5 - Sep 22, 2022 03:12:31 pm | 97 | Email | Completed | KEPGO5 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/22/2022 | Documents/Mail | 94 | Claim Form - Authorization | Completed | KEPGO5 |
| | 2022-09-17-12.23.15.164120O01 | | | | |
| 9/17/2022 11:25:54 AM | Documents/Mail | 94 | Claim Form - Authorization | Received | KEPGO5 |
| | 2022-09-17-12.23.15.164120O01 | | | | |
| 9/22/2022 | Documents/Mail | 95 | Claim Form - EE, ER, APS | Completed | KEPGO5 |
| | 2022-09-17-12.23.32.002120O01 | | | | |
| 9/17/2022 11:25:55 AM | Documents/Mail | 95 | Claim Form - EE, ER, APS | Received | KEPGO5 |
| | 2022-09-17-12.23.32.002120O01 | | | | |
| 9/27/2022 | Documents/Mail | 99 | Email | Completed | KEPGO5 |

From: Gorum, Kelly
Sent: Tuesday, September 27, 2022 5:57 AM
To: 'Bill Reynolds' <
Subject: RE: STD denial for extending beyond 8/1/22 (secure)

Hello Bill,

A detailed denial letter w as sent out on 09/16/2022. I w ill re send it out today. Please let me know if you don't receive it.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

From: Bill Reynolds <
Sent: Monday, September 26, 2022 11:22 AM
To: Gorum, Kelly <Kelly.Gorum@lfg.com>; Karen Dalton <Karen.Dalton@ebctx.com>
Subject: Re: STD denial for extending beyond 8/1/22

Kelly,
Still no USPS letter has been received to allow an appeal. Please advise if an email format appeal form is available.
Thank you,
Bill Reynolds

Sent from my iPhone

On Sep 16, 2022, at 2:50 PM, Gorum, Kelly <Kelly.Gorum@lfg.com> w rote:

This message w as sent securely using Zix®

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hello Bill,

Thank your for your email. The denial letter has been sent out. Please let me know if you have any questions.

Thank you,

Kelly

Kelly Gorum
Claims Examiner II
Short Term Disability

Lincoln Financial Group
8801 Indian Hills Dr.
Omaha, NE 68114800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com
Follow us on:

- KEPGO5 - Sep 27, 2022 05:57:41 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/27/2022 | Documents/Mail | 98 | Denial Not Disabled | Completed | KEPGO5 |
| | Denial Not DisabledAttachments:Translation services | | | | |
| 9/1/2022 1:30:35 PM | Documents/Mail | 98 | Denial Not Disabled | Work In Progress | KEPGO5 |
| | Denial Not DisabledAttachments:Translation services | | | | |
| 6/1/2022 11:51:05 PM | Payments | | DEPOSIT 5/10/2022 - 6/7/2022 | INITIAL | MAPPA3 |
| 7/29/2022 9:06:09 PM | Payments | | DEPOSIT 7/18/2022 - 8/1/2022 | CURRENT | MAPPA3 |
| 5/16/2022 | Referrals | 2 | Senior Review | Completed | KEPGO5 |

HI Allsion, Can you please put this claim in my initials? Thank you so much - Senior Review - KEPGO5 - May 16, 2022 08:18:34 am

claim has been moved to your initials, thank you! - Senior Review - ALAJO1 - May 16, 2022 10:28:12 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/17/2022 | Referrals | 1 | Mentor Review | Completed | MAPPA3 |

Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: need to verify
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022
DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: need to verify
Class: need to verify
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: need to verify
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:
Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP
- Mentor Review - KEPGO5 - May 10, 2022 12:15:32 pm

*SAP states w e need to verify occ but you did on initial call

*lets add to SAP w hat EE is stating about disability, EE statement and from phone call, do 'Per EE, ...' then summarize w hat he is telling you

*summarize OV 4/28.

*CLOC and BLOC doe not match

*w e dont need to verify class, policy only has one class, make sure not to ask ER for things w e dont need it, it creates confusion. its also on the ER statement so no need to call out specifically in email

*w e do need to confirm LTD but not in ER statement

*lets send the claim for CR using the 4/28 OV

*in inc letters w hen w e just need ER, the bolded "w hat you need to do" paragraph needs removed as w ell as the sentence below "Please forw ard..." there is nothing in the letter for the EE to do just makes the letter confusing - Mentor Review - MAPPA3 - May 11, 2022 09:22:11 am

*i see that you asked for class for LTD coverage so pls disregard above comments on LTD and class, sorry i missed that

*send a senior referral to allison to have this claim put in your initials - Mentor Review - MAPPA3 - May 11, 2022 09:26:02 am

please see updates below :

Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: sales manager level 1
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022

DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: 1902 w eekly
Class: 2
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: no sal continuance
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:
Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP

UPDATED ASSESSMENT: RCVD ER, class 2, DOH 02/03/1997, salary 1902 w eekly, no sal cont, dlw 05/06/2022

UPDATED PATH- claim pending due to need to verify gap btn DLW and DOD w ith ER, send for CR, send pending letters, set diary date out 45 days, set 30 and 45 day task, close if FTP

**************** clinical review ************

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: sales manager level 1
Diagnosis: acute stress reaction
DOD: 04/28/2022
DLW: 05/06/2022 verifying dlw w ith ER w ith the DOD

OV notes from 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx,

complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

Specific Medical Question: What R/L's are supported by medical records

- Mentor Review - KEPGO5 - May 16, 2022 08:31:11 am

*SAP good to add and go ahead and put in CR - Mentor Review - MAPPA3 - May 16, 2022 11:15:58 am

*set up tasks

*add hours per w eek in CR

*SAP and CR state verifying DLW w ith ER but i dont not see that email - Mentor Review - MAPPA3 - May 16, 2022 11:19:29 am

please see updates - Mentor Review - KEPGO5 - May 16, 2022 01:59:18 pm

5/10/2022 12:13:03 PM Referrals 1 Mentor Review Initial MAPPA3

Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: need to verify
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022
DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed.

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: need to verify
Class: need to verify
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: need to verify
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:

Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP
 - Mentor Review - KEPGO5 - May 10, 2022 12:15:32 pm

*SAP states w e need to verify occ but you did on initial call

*lets add to SAP w hat EE is stating about disability, EE statement and from phone call, do 'Per EE, ...' then summarize w hat he is telling you

*summarize OV 4/28.

*CLOC and BLOC doe not match

*w e dont need to verify class, policy only has one class, make sure not to ask ER for things w e dont need it, it creates confusion. its also on the ER statement so no need to call out specifically in email

*w e do need to confirm LTD but not in ER statement

*lets send the claim for CR using the 4/28 OV

*in inc letters w hen w e just need ER, the bolded "w hat you need to do" paragraph needs removed as w ell as the sentence below "Please forw ard..." there is nothing in the letter for the EE to do just makes the letter confusing - Mentor Review - MAPPA3 - May 11, 2022 09:22:11 am

*i see that you asked for class for LTD coverage so pls disregard above comments on LTD and class, sorry i missed that

*send a senior referral to allison to have this claim put in your initials - Mentor Review - MAPPA3 - May 11, 2022 09:26:02 am

please see updates below :

Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: sales manager level 1
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022
DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by

pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: 1902 w eekly
Class: 2
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: no sal continuance
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:
Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP

UPDATED ASSESSMENT: RCVD ER, class 2, DOH 02/03/1997, salary 1902 w eekly, no sal cont, dlw 05/06/2022

UPDATED PATH- claim pending due to need to verify gap btn DLW and DOD w ith ER, send for CR, send pending letters, set diary date out 45 days, set 30 and 45 day task, close if FTP

**************** clinical review ************

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: sales manager level 1
Diagnosis: acute stress reaction
DOD: 04/28/2022
DLW: 05/06/2022 verifying dlw w ith ER w ith the DOD

OV notes from 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

Specific Medical Question: What R/L's are supported by medical records

- Mentor Review - KEPGO5 - May 16, 2022 08:31:11 am

*SAP good to add and go ahead and put in CR - Mentor Review - MAPPA3 - May 16, 2022 11:15:58 am

*set up tasks

*add hours per w eek in CR

*SAP and CR state verifying DLW w ith ER but i dont not see that email - Mentor Review - MAPPA3 - May 16, 2022

11:19:29 am

please see updates - Mentor Review - KEPGO5 - May 16, 2022 01:59:18 pm

5/18/2022 Referrals 4 Mentor Review Completed MAPPA3

please see updates

UPDATED ASSESSMENT: rvcd email from ER, ee w as on approved leave, he used his vacation time.

UPDATED PATH- send for CR, pending letters sent, set diary date out 45 days, set 30 and 45 day task, - Mentor Review - KEPGO5 - May 18, 2022 05:04:11 am

5/20/2022 Referrals 5 Mentor Review Completed MAPPA3

Please see updates

UPDATED ASSESSMENT: Rcvd email from EE, that stated on 04/28/2022 Dr. Clinton Carter suggested minimum 6 w eeks (better 12 w eeks) leave of absence due to stress. FMLA w as to begin on 05/09/2022.

UPDATED PATH: claim is pending for CR,
- Mentor Review - KEPGO5 - May 18, 2022 03:22:20 pm

5/18/2022 3:21:57 PM Referrals 5 Mentor Review Initial MAPPA3

Please see updates

UPDATED ASSESSMENT: Rcvd email from EE, that stated on 04/28/2022 Dr. Clinton Carter suggested minimum 6 w eeks (better 12 w eeks) leave of absence due to stress. FMLA w as to begin on 05/09/2022.

UPDATED PATH: claim is pending for CR,
- Mentor Review - KEPGO5 - May 18, 2022 03:22:20 pm

5/25/2022 Referrals 3 Initial Claim Review Completed KEPGO5

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: sales manager level 1
Diagnosis: acute stress reaction
DOD: 04/28/2022
DLW: 05/06/2022 verifying dlw w ith ER w ith the DOD
HPW- 40

OV notes from 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

Specific Medical Question: What R/L's are supported by medical records - KEPGO5 - May 16, 2022 01:58:44 pm
transfer to kipos3 per ebobe4 - EBOBE4 - May 19, 2022 11:13:41 am
Date:May 20, 2022

Subject:Nursing Memorandum

Claim#: 1220042749
Claimant: William Reynolds
Clinical Assessment:

EE is a 68 yom sales manager w ho has been OOW since 04/28/22 for coronary artery disease and acute stress reaction. The EE had comorbidities of atrial fibrillation, sleep apnea, insulin resistance, hypothyroidism, hearing loss bilaterally, and obesity w hich may impede normal healing times. The EE suffered a heart attack in October 2021 w ith open heart coronary artery bypass surgery. He w as participating in cardiac rehabilitation and suffered a second

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

heart attack in December 2021 w ith cardiac stent placement. The 04/28/22 OVN w ith Dr. Clint Carter, MD (family medicine) show s the EE complained of stress. He has a fear of having another heart attack. He is making mistakes at w ork and has anxiety attacks prior to going to w ork. He did not complete cardiac rehab follow ing the first heart attack and he did not return to cardiac rehab follow ing the second heart attack. He complained of physical fatigue. The exam w as normal w ith clear lung sounds, normal heart sounds, and normal strength. He w ill begin a cardiac rehab program, attend counseling, and continue his current medications. The 05/05/22 APS from Dr. Carter show s the EE returned to w ork w ithout mental and physical recovery, acute stress and physical fatigue make him unable to w ork, he had a flat affect, w as tearful, and had shortness of breath entering the office, he w as advised to stop w ork on 04/28/22, treatment included cardiac rehab, PT, mental health counseling, w ith an ERTW date of betw een 07/18/22-08/01/22.

The medical evidence provided show s the EE is of advanced age w ith multiple comorbidities, he suffered 2 heart attacks since October 2021, he underw ent open heart bypass surgery and had stents placed, he returned to w ork; how ever, he has ongoing fatigue, shortness of breath w ith exertion, panic attacks, and fear of having another heart attack, he is being treated currently w ith cardiac rehab, PT, and mental health counseling w hich does support the R&Ls of no more than ADLs from DOD through 07/18/22 (per APS from Dr. Carter).

Recommendations: if there is no return to full time w ork by 07/18/22 please obtain updated OVNs from Dr. Carter and cardiology, diagnostic test reports, an APS w ith specific R&Ls and hold a functional detailed call w ith the EE to discuss ongoing symptoms and treatment plan. If the EE remains OOW for depression, please obtain counseling notes and send for a behavioral health review . Return to NDC for addendum as needed.

Kim O, RN BSN
Nurse Disability Consultant, Lincoln Financial Group - KIPOS3 - May 20, 2022 12:37:30 pm

| | | | | | |
|---|---|---|---|---|---|
| 5/16/2022 1:54:29 PM | Referrals | 3 | Initial Claim Review | Initial | KEPGO5 |

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: sales manager level 1
Diagnosis: acute stress reaction
DOD: 04/28/2022
DLW: 05/06/2022 verifying dlw w ith ER w ith the DOD
HPW- 40

OV notes from 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

Specific Medical Question: What R/L's are supported by medical records - KEPGO5 - May 16, 2022 01:58:44 pm
transfer to kipos3 per ebobe4 - EBOBE4 - May 19, 2022 11:13:41 am
Date:May 20, 2022

Subject:Nursing Memorandum

Claim#: 1220042749
Claimant: William Reynolds
Clinical Assessment:

EE is a 68 yom sales manager w ho has been OOW since 04/28/22 for coronary artery disease and acute stress reaction. The EE had comorbidities of atrial fibrillation, sleep apnea, insulin resistance, hypothyroidism, hearing loss bilaterally, and obesity w hich may impede normal healing times. The EE suffered a heart attack in October 2021 w ith open heart coronary artery bypass surgery. He w as participating in cardiac rehabilitation and suffered a second heart attack in December 2021 w ith cardiac stent placement. The 04/28/22 OVN w ith Dr. Clint Carter, MD (family medicine) show s the EE complained of stress. He has a fear of having another heart attack. He is making mistakes at w ork and has anxiety attacks prior to going to w ork. He did not complete cardiac rehab follow ing the first heart attack and he did not return to cardiac rehab follow ing the second heart attack. He complained of physical fatigue. The exam w as normal w ith clear lung sounds, normal heart sounds, and normal strength. He w ill begin a cardiac rehab program, attend counseling, and continue his current medications. The 05/05/22 APS from Dr. Carter show s the EE returned to w ork w ithout mental and physical recovery, acute stress and physical fatigue make him unable to

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

w ork, he had a flat affect, w as tearful, and had shortness of breath entering the office, he w as advised to stop w ork on 04/28/22, treatment included cardiac rehab, PT, mental health counseling, w ith an ERTW date of betw een 07/18/22-08/01/22.

The medical evidence provided show s the EE is of advanced age w ith multiple comorbidities, he suffered 2 heart attacks since October 2021, he underw ent open heart bypass surgery and had stents placed, he returned to w ork; how ever, he has ongoing fatigue, shortness of breath w ith exertion, panic attacks, and fear of having another heart attack, he is being treated currently w ith cardiac rehab, PT, and mental health counseling w hich does support the R&Ls of no more than ADLs from DOD through 07/18/22 (per APS from Dr. Carter).

Recommendations: if there is no return to full time w ork by 07/18/22 please obtain updated OVNs from Dr. Carter and cardiology, diagnostic test reports, an APS w ith specific R&Ls and hold a functional detailed call w ith the EE to discuss ongoing symptoms and treatment plan. If the EE remains OOW for depression, please obtain counseling notes and send for a behavioral health review . Return to NDC for addendum as needed.

Kim O, RN BSN
Nurse Disability Consultant, Lincoln Financial Group - KIPOS3 - May 20, 2022 12:37:30 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/1/2022 | Referrals | 6 | Mentor Review | Completed | KEPGO5 |

please see below rcvd CR back

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 04/28/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment.
- Mentor Review - KEPGO5 - May 25, 2022 08:01:24 am

*DLW is after DOD so incorrect, lets review , DOD may need to be 5/7 - Mentor Review - MAPPA3 - May 26, 2022 10:24:43 am

please see update

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 05/07/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment.
- Mentor Review - KEPGO5 - Jun 01, 2022 06:17:06 am

*payment released and SAP added

*letter incorrect, states approved as of 4/28 should be 5/7, once corrected, good to send - Mentor Review - MAPPA3 - Jun 01, 2022 08:43:07 am

| | | | | | |
|---|---|---|---|---|---|
| 5/25/2022 8:00:49 AM | Referrals | 6 | Mentor Review | Initial | KEPGO5 |

please see below rcvd CR back

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 04/28/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment.
- Mentor Review - KEPGO5 - May 25, 2022 08:01:24 am

*DLW is after DOD so incorrect, lets review , DOD may need to be 5/7 - Mentor Review - MAPPA3 - May 26, 2022 10:24:43 am

please see update

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 05/07/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment.
- Mentor Review - KEPGO5 - Jun 01, 2022 06:17:06 am

*payment released and SAP added

*letter incorrect, states approved as of 4/28 should be 5/7, once corrected, good to send - Mentor Review - MAPPA3 - Jun 01, 2022 08:43:07 am

| 7/14/2022 | Referrals | 7 | Mentor Review | Completed | LEPWH4 |
|---|---|---|---|---|---|

HI there i have a payment that needs to go out its over my limit for this ee - Mentor Review - KEPGO5 - Jul 14, 2022 01:30:21 pm

previous mentor review completed. Released beneft. - Mentor Review - LEPWH4 - Jul 14, 2022 03:07:02 pm

| 7/22/2022 | Referrals | 8 | Mentor Review | Completed | KEPGO5 |
|---|---|---|---|---|---|

Hey not sure w hat to do if I have the link task fire. Im w aiting to hear back from ER to see if ee has LTD coverage and if so for proof of coverage. do i push out links task? - Mentor Review - KEPGO5 - Jul 18, 2022 08:31:27 am

yea w here you have it is perfect, biggest thing is w e dont know w hat it closed before the claimif EE has LTD and needs to be updated accordingly
- Mentor Review - MAPPA3 - Jul 20, 2022 10:55:33 am

| 7/18/2022 8:30:39 AM | Referrals | 8 | Mentor Review | Initial | KEPGO5 |
|---|---|---|---|---|---|

Hey not sure w hat to do if I have the link task fire. Im w aiting to hear back from ER to see if ee has LTD coverage and if so for proof of coverage. do i push out links task? - Mentor Review - KEPGO5 - Jul 18, 2022 08:31:27 am

yea w here you have it is perfect, biggest thing is w e dont know w hat it closed before the claimif EE has LTD and needs to be updated accordingly
- Mentor Review - MAPPA3 - Jul 20, 2022 10:55:33 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/29/2022 | Referrals | 9 | Ongoing Claim Review | Completed | CTA |

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: Manager
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell.

Specific Medical Question: What R/L's are supported by medical records - KEPGO5 - Jul 28, 2022 08:27:48 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/28/2022 8:24:35 AM | Referrals | 9 | Ongoing Claim Review | Initial | CTA |

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: Manager
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 ,

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell.

Specific Medical Question: What R/L's are supported by medical records - KEPGO5 - Jul 28, 2022 08:27:48 am

| 7/29/2022 | Referrals | 10 | Mentor Review | Completed | KEPGO5 |
|---|---|---|---|---|---|

PDATED ASSESSMENT: Rcvd email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

UPDATED PATH: reasonable to ext to 08/01/2022 based on ee doing cardiac rehab, MD recommended for ee to be OOW until 08/01/2022, and OVN send ext letters set payment, w ill need updated med recs if ee unable to RTW
- Mentor Review - KEPGO5 - Jul 29, 2022 07:29:13 am

agrre w ith ext, go ahead and do, cancel CR
- Mentor Review - MAPPA3 - Jul 29, 2022 08:54:01 am

| 8/19/2022 | Referrals | 11 | Ongoing Claim Review | Completed | KEPGO5 |
|---|---|---|---|---|---|

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: manager level 1
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

Specific Medical Question: What R/Ls are supported - KEPGO5 - Aug 10, 2022 01:50:24 pm
Transfer file to JUPRH3 per ANKMA4 - ANKMA4 - Aug 12, 2022 07:31:56 am
Date:August 12, 2022

Subject:Nursing Memorandum

Claim#: 1220042749
Claimant: William Reynolds
Clinical Assessment:

The medical findings demonstrate that EE w ent OOW on 5/7/22 for coronary artery bypass graft (CABG) (surgery

to divert blood around narrow ed or clogged parts of the major arteries of the heart). For previous clinical history, see CR 5/20/22, w hich supported R&Ls of no activities greater than ADLs from DOD until 7/18/22, due to ongoing fatigue, shortness of breath w ith exertion, panic attacks, and fear of having another heart attack, as w ell as current treatments including cardiac rehabilitation, PT, and mental health counseling. Per previous CR, the EE's clinical course is significant for 2 heart attacks since October 2021, open heart bypass surgery w ith stent placement, and failed attempt to RTW. Comorbidities include atrial fibrillation (irregular heart rhythm), sleep apnea, insulin resistance, hypothyroidism, hearing loss bilaterally, and obesity, w hich may impede normal healing times. EE has been under the care of Dr. Clint Carter, MD (Family Medicine).
APS by Dr. Carter on 5/5/22 and 8/8/22 documents diagnosis of CABG (Z95.1) and acute stress reaction (F43.0). Per AP, EE's clinical course includes heart attack s/p open heart bypass surgery and cardiac rehab course that w as interrupted by second heart attack requiring stent procedure. AP states the EE then RTW w ithout proper physical and mental recovery and is now suffering from acute stress and physical fatigue. AP notes the EE is tearful, has a flat affect, and is short of breath on exertion upon entering the office. Hospitalization dates 9/28/22 to 10/8/22. R&Ls no physical exertion, no complex decision making or high stress activities. Current treatment to include cardiac rehab, physical therapy, and mental health counseling. OV note by Dr. Carter on 7/26/22 documents the EE has been slow ly progressing in his physical endurance, shortness of breath, and ability to perform ADLs as w ell as gradually improving in mental health symptoms w ith the help of counseling and medications. Per AP, blood thinner medications discontinued last w eek per cardiology. No physical exam on file, all vital signs normal. Plan to continue current treatment, no changes to medications, recommend OOW until 8/1/22. GCOD by Dr. Carter on 7/26/22 documents symptoms of depression, fatigue, and decreased concentration. Ongoing treatment includes cardiac rehab, PT, and OVs w ith primary care and cardiology. R&Ls impaired concentration and short-term memory, unable to perform high level analytics. APS by Dr. Carter on 8/8/22 documents the EE has not responded w ell to cardiac rehab and has persistent anxiety w ith complex computing or RTW in high stress environment that is required by his occupation. Per AP, EE w ill be unable to RTW.
Based on the medical records, R&Ls as stated by AP are not supported beyond current approved date of 8/1/22 due to lack of continued physical functional impairment documented as evidenced by no cardiology follow up available (including cardiac rehab), no physical exam, normal vital signs, and symptoms that are largely self-reported and related to mental health conditions, as w ell as no escalation of care despite no response to cardiac rehabilitation. Documentation provided by AP indicates the EE continues OOW due to mental health symptoms including anxiety and depression. Please be advised that mental health symptoms discussed by AP are not addressed in this clinical review and NDC advises those symptoms and treatment plan be addressed separately w ith a clinical review request w ith behavioral health. Assignment complete. Refer to clinical as needed.

Julia R, RN, BSN
Nurse Disability Consultant, Lincoln Financial Group - JUPRH3 - Aug 12, 2022 10:35:00 am

8/10/2022 1:49:55 PM Referrals 11 Ongoing Claim Review Initial KEPGO5

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: manager level 1
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

Specific Medical Question: What R/Ls are supported - KEPGO5 - Aug 10, 2022 01:50:24 pm
Transfer file to JUPRH3 per ANKMA4 - ANKMA4 - Aug 12, 2022 07:31:56 am
Date:August 12, 2022

Subject:Nursing Memorandum

Claim#: 1220042749
Claimant: William Reynolds
Clinical Assessment:

The medical findings demonstrate that EE w ent OOW on 5/7/22 for coronary artery bypass graft (CABG) (surgery to divert blood around narrow ed or clogged parts of the major arteries of the heart). For previous clinical history, see CR 5/20/22, w hich supported R&Ls of no activities greater than ADLs from DOD until 7/18/22, due to ongoing fatigue, shortness of breath w ith exertion, panic attacks, and fear of having another heart attack, as w ell as current treatments including cardiac rehabilitation, PT, and mental health counseling. Per previous CR, the EE's clinical course is significant for 2 heart attacks since October 2021, open heart bypass surgery w ith stent placement, and failed attempt to RTW. Comorbidities include atrial fibrillation (irregular heart rhythm), sleep apnea, insulin resistance, hypothyroidism, hearing loss bilaterally, and obesity, w hich may impede normal healing times. EE has been under the care of Dr. Clint Carter, MD (Family Medicine).
APS by Dr. Carter on 5/5/22 and 8/8/22 documents diagnosis of CABG (Z95.1) and acute stress reaction (F43.0). Per AP, EE's clinical course includes heart attack s/p open heart bypass surgery and cardiac rehab course that w as interrupted by second heart attack requiring stent procedure. AP states the EE then RTW w ithout proper physical and mental recovery and is now suffering from acute stress and physical fatigue. AP notes the EE is tearful, has a flat affect, and is short of breath on exertion upon entering the office. Hospitalization dates 9/28/22 to 10/8/22. R&Ls no physical exertion, no complex decision making or high stress activities. Current treatment to include cardiac rehab, physical therapy, and mental health counseling. OV note by Dr. Carter on 7/26/22 documents the EE has been slow ly progressing in his physical endurance, shortness of breath, and ability to perform ADLs as

w ell as gradually improving in mental health symptoms w ith the help of counseling and medications. Per AP, blood thinner medications discontinued last w eek per cardiology. No physical exam on file, all vital signs normal. Plan to continue current treatment, no changes to medications, recommend OOW until 8/1/22. GCOD by Dr. Carter on 7/26/22 documents symptoms of depression, fatigue, and decreased concentration. Ongoing treatment includes cardiac rehab, PT, and OVs w ith primary care and cardiology. R&Ls impaired concentration and short-term memory, unable to perform high level analytics. APS by Dr. Carter on 8/8/22 documents the EE has not responded w ell to cardiac rehab and has persistent anxiety w ith complex computing or RTW in high stress environment that is required by his occupation. Per AP, EE w ill be unable to RTW.
Based on the medical records, R&Ls as stated by AP are not supported beyond current approved date of 8/1/22 due to lack of continued physical functional impairment documented as evidenced by no cardiology follow up available (including cardiac rehab), no physical exam, normal vital signs, and symptoms that are largely self-reported and related to mental health conditions, as w ell as no escalation of care despite no response to cardiac rehabilitation. Documentation provided by AP indicates the EE continues OOW due to mental health symptoms including anxiety and depression. Please be advised that mental health symptoms discussed by AP are not addressed in this clinical review and NDC advises those symptoms and treatment plan be addressed separately w ith a clinical review request w ith behavioral health. Assignment complete. Refer to clinical as needed.

Julia R, RN, BSN
Nurse Disability Consultant, Lincoln Financial Group - JUPRH3 - Aug 12, 2022 10:35:00 am

9/1/2022 Referrals 12 Ongoing Claim Review Completed KEPGO5

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: manager level 1
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

Specific Medical Question: What R/Ls are supported - KEPGO5 - Aug 16, 2022 12:11:08 pm
TRANSFER TO KIPLA5 - SGGCO6 - Aug 22, 2022 06:18:24 am
Date:August 22, 2022

Subject:Nursing/Behavioral Health Memorandum

Claim#: 1220042749
Claimant: William Reynolds

Clinical Assessment:
Review ed file, including previous NDC review s dated 5/20/22 and 8/12/22 related to physical conditions. Please see these review s for full history related to cardiac conditions. Claim w as previously supported through 7/18/22. EE is currently treating w ith Clinton Carter, MD (Primary Care) for Acute Stress Reaction (F43.0) and Major Depressive Disorder (F32.9). The EE had met w ith a colleague of Dr. Carter, Danyel Kush, FNP on 4/20/22 and reported fatigue and symptoms of depression, such as fatigue, anhedonia (lack of interest or pleasure), increased sleep, decreased appetite, and sadness, along w ith lack of motivation to participate in cardiac rehab. The EE noted having met w ith behavioral health staff, Sara, in the past, but noted that he did not find it beneficial and declined to meet w ith this staff again. EE noted to be taking tw o anti-depressant medications, Wellbutrin and Lexapro, but indicated that he did not think the Lexapro w as helping and w ould like to discontinue this medication. Psychiatric exam findings w ere w ithin normal limits. With Ms. Kush recommending that the EE remain on current medications. The EE w as then seen by Dr. Carter on 4/28/22 and reported anxiety attacks prior to w ork, making mistakes in the w orkplace, second guessing himself, and decreased speed due to fear of making further mistakes. Dr. Carter recommended that the EE take leave for physical and mental recovery.

The EE w as not seen again by Dr. Carter until 7/26/22, at w hich time it w as noted that symptoms w ere gradually improving. Ongoing anxiety w as noted around RTW. The EE reported that he had discontinued the Lexapro due to lack of benefit, but w as taking Wellbutrin, along w ith as needed anxiety medication, Xanax, 3-4 times per month. Psychiatric exam findings w ere not noted. Dr. Carter recommended that the EE remain OOW through at least 8/1/22, but no further escalations in care w ere noted, such as medication adjustments or referral to additional behavioral health providers. There is no indication that the EE w as treating w ith psychotherapy, as no records are currently available from any therapy provider, and records do not note treatment w ith outside therapy provider. Dr. Carter provided a Continuance of Disability Form dated 7/26/22 noting difficulty w ith concentration and short-term memory, along w ith difficulty w ith ability to perform high level analysis, but noted that the EE w as w orking tow ards RTW if possible.

While the EE has continued to note some anxiety, there is currently no indication that the EE has received any escalations in care related to behavioral health conditions, as he declined to meet w ith behavioral health staff w ithin Dr. Carter's office, and discontinued his secondary anti-depressant medication, w ith no further medication adjustments indicated by Dr. Carter. There is no indication that the EE is currently treating w ith additional behavioral health providers, such as therapy or psychiatry, as no records are currently available from any additional providers, and this treatment is not noted w ithin visits w ith Dr. Carter. The EE is currently meeting w ith Dr. Carter every 3 months, w hich w ould not be a frequency consistent w ith impairing levels of psychiatric symptoms, w ith w hich treatment w ould be expected on a monthly basis. Due to these reasons, R&Ls beyond 7/18/22 w ould not be

supported from a behavioral health standpoint. Should additional information become available, such as records from behavioral health providers, such as therapy or psychiatry, it w ould be recommended that the CS re-refer to clinical for further review at that time. CS updated.

Kimberly L., LICSW
Behavioral Health Consultant, Lincoln Financial Group - KIPLA5 - Aug 22, 2022 09:51:26 am

8/16/2022 12:10:43 PM Referrals 12 Ongoing Claim Review Initial KEPGO5

Claimant Name: William Reynolds
Claim Number: 1220042749
Occupation/level: manager level 1
Diagnosis: Z95.1 CABG, F43.0 acute stress reaction
DOD: 05/07/2022
DLW: 05/06/2022

ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

Specific Medical Question: What R/Ls are supported - KEPGO5 - Aug 16, 2022 12:11:08 pm
TRANSFER TO KIPLA5 - SGGCO6 - Aug 22, 2022 06:18:24 am
Date:August 22, 2022

Subject:Nursing/Behavioral Health Memorandum

Claim#: 1220042749
Claimant: William Reynolds

Clinical Assessment:
Review ed file, including previous NDC review s dated 5/20/22 and 8/12/22 related to physical conditions. Please see these review s for full history related to cardiac conditions. Claim w as previously supported through 7/18/22. EE is currently treating w ith Clinton Carter, MD (Primary Care) for Acute Stress Reaction (F43.0) and Major Depressive Disorder (F32.9). The EE had met w ith a colleague of Dr. Carter, Danyel Kush, FNP on 4/20/22 and reported fatigue and symptoms of depression, such as fatigue, anhedonia (lack of interest or pleasure), increased sleep, decreased appetite, and sadness, along w ith lack of motivation to participate in cardiac rehab. The EE noted having met w ith behavioral health staff, Sara, in the past, but noted that he did not find it beneficial and declined to meet w ith this staff again. EE noted to be taking tw o anti-depressant medications, Wellbutrin and Lexapro, but indicated that he did not think the Lexapro w as helping and w ould like to discontinue this medication. Psychiatric exam findings w ere w ithin normal limits. With Ms. Kush recommending that the EE remain on current medications. The EE w as then seen by Dr. Carter on 4/28/22 and reported anxiety attacks prior to w ork, making mistakes in the w orkplace, second guessing himself, and decreased speed due to fear of making further mistakes. Dr. Carter recommended that the EE take leave for physical and mental recovery.

The EE w as not seen again by Dr. Carter until 7/26/22, at w hich time it w as noted that symptoms w ere gradually improving. Ongoing anxiety w as noted around RTW. The EE reported that he had discontinued the Lexapro due to lack of benefit, but w as taking Wellbutrin, along w ith as needed anxiety medication, Xanax, 3-4 times per month. Psychiatric exam findings w ere not noted. Dr. Carter recommended that the EE remain OOW through at least 8/1/22, but no further escalations in care w ere noted, such as medication adjustments or referral to additional behavioral health providers. There is no indication that the EE w as treating w ith psychotherapy, as no records are currently available from any therapy provider, and records do not note treatment w ith outside therapy provider. Dr. Carter provided a Continuance of Disability Form dated 7/26/22 noting difficulty w ith concentration and short-term memory, along w ith difficulty w ith ability to perform high level analysis, but noted that the EE w as w orking tow ards RTW if possible.

While the EE has continued to note some anxiety, there is currently no indication that the EE has received any escalations in care related to behavioral health conditions, as he declined to meet w ith behavioral health staff w ithin Dr. Carter's office, and discontinued his secondary anti-depressant medication, w ith no further medication adjustments indicated by Dr. Carter. There is no indication that the EE is currently treating w ith additional behavioral health providers, such as therapy or psychiatry, as no records are currently available from any additional providers, and this treatment is not noted w ithin visits w ith Dr. Carter. The EE is currently meeting w ith Dr. Carter every 3 months, w hich w ould not be a frequency consistent w ith impairing levels of psychiatric symptoms, w ith w hich treatment w ould be expected on a monthly basis. Due to these reasons, R&Ls beyond 7/18/22 w ould not be supported from a behavioral health standpoint. Should additional information become available, such as records from behavioral health providers, such as therapy or psychiatry, it w ould be recommended that the CS re-refer to clinical for further review at that time. CS updated.

Kimberly L., LICSW
Behavioral Health Consultant, Lincoln Financial Group - KIPLA5 - Aug 22, 2022 09:51:26 am

| 9/16/2022 | Referrals | 13 | Mentor Review | Completed | KEPGO5 |
|---|---|---|---|---|---|

Hi there can you please look of my denial letter to ee....There is one bullet that I can not figure out how to get to line up w ith the others? Can you show me how to do that please?

- Mentor Review - KEPGO5 - Sep 01, 2022 02:36:32 pm

UPDATED ASSESSMENT: rcvd CR back ee has his LOV on 07/26/2022 at it w as noted symptoms w ere gradually

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

improving, Dr. Carter gave a oow date until 08/01/2022 nothing more w as noted, no higher level of care w as notes such as medications adjustments or referral to behavioral health provider. EE declined to meet w ith behavioral health professionals and discontinued anti depressant medication. The ee is meeting w ith Dr. carter every 3 months tx w ould be expected once a month, R/L;s are not supported.

UPDATED PATH: close claim due to not disabled
- Mentor Review - KEPGO5 - Sep 01, 2022 02:36:57 pm

*SAP good to add

*ER letter needed

*messed w ith bullet and got it to fix

*OV 4/28 not summarized

*med recs/forms should be in order of date, looks like the second APS needs moved

*LFG CR should be summarized in summary not w ithin the med recs summary

*5/5 APS, w hat is tx? some info on symtpoms listed. needs more info

*occ in letter does not match w hat ER gave for occ

*more info from second APS as w ell - Mentor Review - MAPPA3 - Sep 02, 2022 08:55:07 am

| | | | | | |
|---|---|---|---|---|---|
| 9/1/2022 2:35:41 PM | Referrals | 13 | Mentor Review | Initial | KEPGO5 |

Hi there can you please look of my denial letter to ee....There is one bullet that I can not figure out how to get to line up w ith the others? Can you show me how to do that please?

- Mentor Review - KEPGO5 - Sep 01, 2022 02:36:32 pm

UPDATED ASSESSMENT: rcvd CR back ee has his LOV on 07/26/2022 at it w as noted symptoms w ere gradually improving, Dr. Carter gave a oow date until 08/01/2022 nothing more w as noted, no higher level of care w as notes such as medications adjustments or referral to behavioral health provider. EE declined to meet w ith behavioral health professionals and discontinued anti depressant medication. The ee is meeting w ith Dr. carter every 3 months tx w ould be expected once a month, R/L;s are not supported.

UPDATED PATH: close claim due to not disabled
- Mentor Review - KEPGO5 - Sep 01, 2022 02:36:57 pm

*SAP good to add

*ER letter needed

*messed w ith bullet and got it to fix

*OV 4/28 not summarized

*med recs/forms should be in order of date, looks like the second APS needs moved

*LFG CR should be summarized in summary not w ithin the med recs summary

*5/5 APS, w hat is tx? some info on symtpoms listed. needs more info

*occ in letter does not match w hat ER gave for occ

*more info from second APS as w ell - Mentor Review - MAPPA3 - Sep 02, 2022 08:55:07 am

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/1/2022 2:37:13 PM | Status | | Not TD Ow n Occ | CLOSED | KEPGO5 |
| 9/16/2022 | Summary/Assessment/Pa | 1 | h | Completed | KEPGO5 |

Summary Notes

Assessment Notes

Path Notes
Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: sales manager level 1
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022
DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: 1902 w eekly
Class: 2
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: no sal continuance
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:
Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP

UPDATED ASSESSMENT: RCVD ER, class 2, DOH 02/03/1997, salary 1902 w eekly, no sal cont, dlw 05/06/2022

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

UPDATED PATH- claim pending due to need to verify gap btn DLW and DOD w ith ER, send for CR, send pending letters, set diary date out 45 days, set 30 and 45 day task, close if FTP - KEPGO5 - May 16, 2022 01:54:23 pm

UPDATED ASSESSMENT: rvcd email from ER, ee w as on approved leave, he used his vacation time.

UPDATED PATH- send for CR, pending letters sent, set diary date out 45 days, set 30 and 45 day task, - MAPPA3 - May 18, 2022 10:35:43 am

UPDATED ASSESSMENT: Rcvd email from EE, that stated on 04/28/2022 Dr. Clinton Carter suggested minimum 6 w eeks (better 12 w eeks) leave of absence due to stress. FMLA w as to begin on 05/09/2022.

UPDATED PATH: claim is pending for CR, - MAPPA3 - May 20, 2022 08:56:55 am

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 05/07/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment. - MAPPA3 - Jun 01, 2022 08:41:19 am

UPDATED PATH: suspended claim due to needing updated medical records, send suspend letters, call clmnt on suspend, set diary date out 30 days - KEPGO5 - Jul 19, 2022 08:32:03 am

UPDATED ASSESSMENT: rcvd email from er, per er w ill send proof of long term coverage asap

UPDATED PATH: suspended claim due to needing updated medical records, send suspend letters, call clmnt on suspend, set diary date out 30 days
- KEPGO5 - Jul 20, 2022 03:42:13 pm

UPDATED ASSESSMENT: rcvd benefit statement from ER LTD coverage eff date 03/06/2022

UPDATED PATH: suspended claim due to needing updated med recs, sent sus letters, dairy date out 30 days close if ftp - KEPGO5 - Jul 25, 2022 05:37:28 am

UPDATED ASSESSMENT: rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell.

UPDATED PATH: send OVN and GCD to disability claims to be uploaded into claim. Send for CR
- KEPGO5 - Jul 28, 2022 08:24:18 am

PDATED ASSESSMENT: Rcvd email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

UPDATED PATH: reasonable to ext to 08/01/2022 based on ee doing cardiac rehab, MD recommended for ee to be OOW until 08/01/2022, and OVN send ext letters set payment, w ill need updated med recs if ee unable to RTW - KEPGO5 - Jul 29, 2022 10:53:45 am

UPDATED PATH: Suspend claim, send suspend letters, close if FTP - KEPGO5 - Aug 01, 2022 05:33:06 am

UPDATED ASSESSMENT: rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

UPDATED PATH: send for CR
- KEPGO5 - Aug 10, 2022 01:46:31 pm

UPDATED ASSESSMENT: rcvd CR ee dlw 05/07/2022, for coronary artery bypass graft (CABG) (surgery to divert blood around narrow ed or clogged parts of the major arteries of the heart). EE also has a DX of acute stress reaction, based on med recs r/ls are not supported beyond 08/01/2022 due to lack of physical function impairment , no cardiology follow up, no escalation of care APS noted ee continues to be OOW due to mental health symptoms such as anxiety and depression

UPDATED PATH: send medical file to CR for behavioral health review , once rcvd should have a claim decision.
- KEPGO5 - Aug 19, 2022 01:51:12 pm

UPDATED ASSESSMENT: rcvd CR back ee has his LOV on 07/26/2022 at it w as noted symptoms w ere gradually improving, Dr. Carter gave a oow date until 08/01/2022 nothing more w as noted, no higher level of care w as notes such as medications adjustments or referral to behavioral health provider. EE declined to meet w ith behavioral health professionals and discontinued anti depressant medication. The ee is meeting w ith Dr. carter every 3 months tx w ould be expected once a month, R/L;s are not supported.

UPDATED PATH: close claim due to not disabled - KEPGO5 - Sep 16, 2022 02:36:10 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/16/2022 1:54:11 PM | Summary/Assessment/Path | 1 | | Requested | KEPGO5 |

Summary Notes

Assessment Notes

Path Notes
Summary WILLIAM REYNOLDS 1220042749
Claimant age / sex: 68 y/o M
Occupation title / level: sales manager level 1
Being treated for (diagnosis): severe, debilitating anxirty since heart attacks (2) by pass sx
DLW:04/22/2022
DOD (address gap, if applicable): 04/28/2022

ASSESMENT:
ICD Code: Z95.1 CABG, F43.0 acute stress reaction
MDA min/opt/max: no MDA in guidelines
Subjective symptoms: Oct 2021 w CABG, rehab interrupted by second stent. Returned to w ork w ithout mental/ physical recovery acute stress and physical fatigue making him unable to w ork.
Objective symptoms: flat affect, tearful, entering the office
R & L's: , left blank
Treatment: cardiac rehab, physical therapy, mental health counselling
ERTW per physician: 07/18/2022-08/01/2022
Other important information (recurrences, hospitalization dates, etc): hospitalization dates 09/28/2022- 10/08/22 , initial tx 09/28/21, advise to stop w orking on 04/28/2022, NOV 1-2 months, needs cardiac rehab and mental health, prognosis is good. Rehab w as interrupted and refused to w ork and got overw helmed. PER EE depression and anxiety 04/22/2022 had 2 heart attacks 9/21 and 10/21, EE is unsure of RTW w ont know how strong he w ill feel to go back to w ork, Per EE had double by pass sx on 10/01/21 stent placed on 12/20/21, ee feels very drained, started rehab in November then had 2 heart attacks. No longer doing therapy. Just going for w alks at home, LOV 04/28/2022, NOV is w ith cardiology on 7/22, EE statement stats severe debilitating anxiety since heart attack and by pass surgery. He also stated anxiety due to stress and severe depression regarding his performance since heart attacks and open heart sx. EE is stating this is w ork related to his job. HE w as seen by Clinton Carter on 04/28/2022 the assessment revealed that he has major depressive disorder from the open heart sx, complicated by incomplete rehab, increased pressure at w ork, MD recommended time off of w ork for physical rehab tw o a day as w ell as time to focus on mental health w ith counseling and meds. EE w as also seen on 04/20/22 assessment show ed Fatigue, Shortness of Breath and Major depressive disorder.

ELIGIBLITY
List or Self-Billed: SELF BILLED
Coverage confirmed via (census, enrollment form, Ardis, 100% ER paid): 100% ER PAID
EE effective date: need to verify
Pre/Post Tax: pre tax
Salary: 1902 w eekly
Class: 2
FIT tax able yes 50.00
Pre-Ex _/_ (if no pre-ex, indicate none): none
PIC (only if pre-ex in policy): none
Continuance pay: no sal continuance
LTD eff: need to verify

Special Handling Task: Class 3 STD does not have LTD, only class 1 and 2 do. Do not reach out to ER to verify if an EE in class 3 has LTD.

Path:
Rationale (Claim status and the reason claim is in that status): Incomplete due to missing ER

Next steps: send incomplete letters, set task to f/u w ith ER, email ER, set task to f/u w ith ER, set dairy date out 15 days close if FTP

UPDATED ASSESSMENT: RCVD ER, class 2, DOH 02/03/1997, salary 1902 w eekly, no sal cont, dlw 05/06/2022

**Chronological Activity List**

UPDATED PATH- claim pending due to need to verify gap btn DLW and DOD w ith ER, send for CR, send pending letters, set diary date out 45 days, set 30 and 45 day task, close if FTP - KEPGO5 - May 16, 2022 01:54:23 pm

UPDATED ASSESSMENT: rvcd email from ER, ee w as on approved leave, he used his vacation time.

UPDATED PATH- send for CR, pending letters sent, set diary date out 45 days, set 30 and 45 day task, - MAPPA3 - May 18, 2022 10:35:43 am

UPDATED ASSESSMENT: Rcvd email from EE, that stated on 04/28/2022 Dr. Clinton Carter suggested minimum 6 w eeks (better 12 w eeks) leave of absence due to stress. FMLA w as to begin on 05/09/2022.

UPDATED PATH: claim is pending for CR, - MAPPA3 - May 20, 2022 08:56:55 am

UPDATED ASSESSMENT; Rcvd CR back- clmt has been OOW since 04/28/2022, he has been dx w ith coronary artery disease and acute stress reaction. Clmnt has AFIB, sleep apnea, and insulin resistance, hypothyroidism, hearing loss and obesity. Clmnt had a heart attack in 2021 w hich cause him to have open heart sx, and by pass sx. While clmnt w as in cardiac rehab he suffered another heart attack. Which happen in December of 2021. And during that time had a stent placed. Clmnt is advanced age w ith multiple illnesses.

UPDATED PATH; reasonable to approve from 05/07/2022-07/18/2022 due to APS from Dr. Carter. Will need med recs from Dr. Carter and cardiology, diagnostic test reports, and APS, if OOW for depression w ill need records from counseling, and send for behavioral health review . Send approval letters, call clmnt on approval and w ill need med recs to extend beyond 07/18/2022, set up payment. - MAPPA3 - Jun 01, 2022 08:41:19 am

UPDATED PATH: suspended claim due to needing updated medical records, send suspend letters, call clmnt on suspend, set diary date out 30 days - KEPGO5 - Jul 19, 2022 08:32:03 am

UPDATED ASSESSMENT: rcvd email from er, per er w ill send proof of long term coverage asap

UPDATED PATH: suspended claim due to needing updated medical records, send suspend letters, call clmnt on suspend, set diary date out 30 days
- KEPGO5 - Jul 20, 2022 03:42:13 pm

UPDATED ASSESSMENT: rcvd benefit statement from ER LTD coverage eff date 03/06/2022

UPDATED PATH: suspended claim due to needing updated med recs, sent sus letters, dairy date out 30 days close if ftp - KEPGO5 - Jul 25, 2022 05:37:28 am

UPDATED ASSESSMENT: rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell.

UPDATED PATH: send OVN and GCD to disability claims to be uploaded into claim. Send for CR
- KEPGO5 - Jul 28, 2022 08:24:18 am

PDATED ASSESSMENT: Rcvd email from EE, ee completed 4-5 w eeks of cardiac rehab and been exercising on his ow n regualry w hich cardiology stated w as okay, EE w ill speak to HR next w eek about RTW process. rcvd OVN dated 07/26/2022 ee w as seen for cardiac recovery his dx is CAD, Atrial fibrillation, Hypothyroid, Major depressive disorder, insomnia. The OVN noted he has been slow ly progressing in his physical endurance, shortness of breath and ability to do ADL's, He is also been gradually improving in depression and anxiety, EE w as just cleared to stop Eliquis last w eek at cardiology appt, EE does not feel like Lexapro w as helping so he stopped it, still on w elbtrin 300 daily, feels that he is gradually improving only need Xanax 3-4 times per month. Assessment and plan is MD recommend extend STD until 08/01/2022, contiune meds, follow up w ith cardiology w as good, RCVD GCD DX acute Mi 10/21 CABG then blocked graft w ith 2nd MI and stent caused interrupted cardiac rehab, derpression, fatigue and decreased concentration. Date of first tx 09/28/2021, LOV 4/28/2022 and 07/26/2022, Fregency of tx rehab, PT follow uo w pcp/cardiology, R/L's constatation, short term memory ability to perfor high level analysis, w orking on return if possible but follow ing w ith employer as w ell

UPDATED PATH: reasonable to ext to 08/01/2022 based on ee doing cardiac rehab, MD recommended for ee to be OOW until 08/01/2022, and OVN send ext letters set payment, w ill need updated med recs if ee unable to RTW - KEPGO5 - Jul 29, 2022 10:53:45 am

UPDATED PATH: Suspend claim, send suspend letters, close if FTP - KEPGO5 - Aug 01, 2022 05:33:06 am

UPDATED ASSESSMENT: rcvd updated APS Z95.1 CABG, F43.0 Acute stress reaction, symptoms acute MI 10/21 w ith CBAG, rehab interrupted by second MI in Dec requiring a stent unable to RTW due to mental and physical deconditioning, Ultimately caused a stress reaction w ith anxiety and w orsening mental and physical fatigue, as w ell as anxiety making it impossible for him to w ork. After completing ful round of STD he is still not able to RTW his position due to complex mental requirement and high stress environment of his job, Objective findings flat affect, tearful, anxiety DOE and fatigue w ith w alking in office. Advised to stop w orking on 04/28/2022, LOV 07/26/2022, NOV 10/25/2022 dates of hospitalization 09/28/2021 to 10/28/2021, R/L's physical exertion, complex decision making high stress, TX cardiac follow up and mental health counselling and TX, Prognosis is poor has not responded w ell to cardiac rehab has persistent anxiety w ith trying complex computing and or RTW to the high stress environment that is necessary to perform his w ork. TX as per cardiology every 3 months w ith PCP, Unable to RTW Rcvd OVN dated 07/26/2022, ee w as seen for cardiac recovery, ee attempted to RTW to find he w as making mistakes, he has gradually improving w ith depression and anxiety, ee w as cleared to stop using Eliquis last w eek, ee feels like he is gradually improving w ith depressive disorder, ee has been sleeping fairly w ell w ith Temazepam. EE w ill continue physical and mental rehab, ee w ill continue w ith medications.

UPDATED PATH: send for CR
- KEPGO5 - Aug 10, 2022 01:46:31 pm

UPDATED ASSESSMENT: rcvd CR ee dlw 05/07/2022, for coronary artery bypass graft (CABG) (surgery to divert blood around narrow ed or clogged parts of the major arteries of the heart). EE also has a DX of acute stress reaction, based on med recs r/ls are not supported beyond 08/01/2022 due to lack of physical function impairment , no cardiology follow up, no escalation of care APS noted ee continues to be OOW due to mental health symptoms such as anxiety and depression

UPDATED PATH: send medical file to CR for behavioral health review , once rcvd should have a claim decision.
- KEPGO5 - Aug 19, 2022 01:51:12 pm

UPDATED ASSESSMENT: rcvd CR back ee has his LOV on 07/26/2022 at it w as noted symptoms w ere gradually improving, Dr. Carter gave a oow date until 08/01/2022 nothing more w as noted, no higher level of care w as notes such as medications adjustments or referral to behavioral health provider. EE declined to meet w ith behavioral health professionals and discontinued anti depressant medication. The ee is meeting w ith Dr. carter every 3 months tx w ould be expected once a month, R/L;s are not supported.

UPDATED PATH: close claim due to not disabled - KEPGO5 - Sep 16, 2022 02:36:10 pm

| | | | | | |
|---|---|---|---|---|---|
| 5/23/2022 | Telephone (IN)<br>William Reynolds<br>1220042749<br>JSOULES3 | 2 | WILLIAM J REYNOLDS | Completed | KEPGO5 |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Informed of cr status and provided tat. IS understood and w ill w ait for f/u.

| 5/31/2022 | Telephone (IN) | 3 | William Reynolds | Completed | KEPGO5 |
|---|---|---|---|---|---|

Approved To 07/18/2022
rel pay

| 6/21/2022 | Telephone (IN) | 5 | WILLIAM J REYNOLDS | Completed | KEPGO5 |
|---|---|---|---|---|---|

CBN: 9035742872
Birthdate
John Soules Foods, Inc.

Member w as looking for a tracing number for their payment

member w as lookng for a 'tracing number'

Connected to CSA

| 8/18/2022 | Telephone (IN) | 9 | WILLIAM J REYNOLDS | Completed | KEPGO5 |
|---|---|---|---|---|---|

w illiam reynolds
ssn
jone sole foods
cb 903 574 2872
ee called to see about claim ext adv w as still in cr and w as sent 8/10 and can take 7-10 bus days. ee had questions on ltd please fu w ith ee

| 8/23/2022 | Telephone (IN) | 11 | William Reynolds | Completed | KEPGO5 |
|---|---|---|---|---|---|

William Reynolds
claim or ssn
phone
er Johns Soules Food

adv per path notes UPDATED PATH: send medical file to CR for behavioral health review , once rcvd should have a claim decision.
- KEPGO5 - Aug 19, 2022 01:51:12 pm

| 8/31/2022 | Telephone (IN) | 14 | William Reynolds | Completed | KEPGO5 |
|---|---|---|---|---|---|

Name: w illiam reynolds
SSN or Claim#:
Group: John Soules Foods, Inc.
CB Number: 9035395767
ee w ants to start ltd
xfr to ce

sent email to EE w ith LTD forms pelase see email - KEPGO5 - Aug 31, 2022 01:15:13 pm

| 5/10/2022 | Telephone (OUT) | 1 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |
|---|---|---|---|---|---|

INITIAL CALL:
Need to Verify Below :

SSN: verified
DOB: verified
Address: verified
Email: verified
Dir Depos info : verified
Preferred Correspondence for letters - mail or email: mail

Confirm FIT if applicable - if EE w ants this w ithheld w e need to send the W-4S(min of $20/w eek):: 50 yes

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Are you Receiving any other sort of income? like sal cont-pto, vac, sick, etc? rcvd PTO

Specific JD/Job Title: sales manager
Normal w ork schedule: 730-530 50 HRs per w eek

Is this an injury, if so, is it a w ork related injury? Yes, depression and anxiety due to job
When/how did injury occur? Depression and anxiety 04/22/2022- had 2 heart attacks 9/21 and 10/21

DLW: 04/22/2022
Was your last day at w ork a full day? If not, w hy? Full day
DOD: 04/25/2022
What is the reason for gap in b/w DLW and DOD, if applicable:
RTW PLAN: clmnt unsure, w on't know how strong he w ill feel to go back to w ork
Confirm DX: anxiety and depression
Hospitalized? If so, w hat dates? No not since 01/22
Any Surgery? Double by pass on 10/01/2022, stent placed on 12/20/21
If so, What type of Surgery & w ere there any complications? No, clmnt feels very drained
What is your Treatment plan?
Any sort of Therapy or Rehab? If so, how often are you going? Started rehab in November then had 2nd heart attack. No longer doing therapy, just going for w alks at home.
LOV? 04/28/2022
NOV? has cardiology appt scheduled for 7/22
R&L's? rest half the time
Using any assistive devices? Just medications and CPAP
- KEPGO5 - May 10, 2022 12:08:54 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/1/2022 | Telephone (OUT) | 4 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

called ee, no asnw er, lvm for ee to call back 1800 number. Called to let clmnt know claim has been approved from 05/07/2022 to 07/18/2022 - KEPGO5 - Jun 01, 2022 08:49:41 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/19/2022 | Telephone (OUT) | 6 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

called ee, no asnw er, lvmf for ee to call back 1800 number. Called ee to let ee know claim has been suspend due to needing updated med recs, and need a ertw date as w ell? - KEPGO5 - Jul 19, 2022 08:31:47 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/28/2022 | Telephone (OUT) | 7 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

Called ee, no asnw er, lvm for ee to call back 1800 number. Need to verify if ee is doing cardiac rehab and RTW of 08/01/2022 - KEPGO5 - Jul 28, 2022 08:20:26 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/18/2022 | Telephone (OUT) | 8 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

Rcvd VM from ee, called ee back, no asnw er, lvm for ee to call back 1800 number. Called to let ee know that claim is still being review d by CR team. Once rcvd w ill call w ith an update - KEPGO5 - Aug 18, 2022 11:45:25 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/18/2022 | Telephone (OUT) | 10 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

called ee, no asnw er, phone rang 5 times and hung up, unable to LVM - KEPGO5 - Aug 18, 2022 03:04:58 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/23/2022 | Telephone (OUT) | 12 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

Rcvd VM from ee, called ee back, called to let ee know claim w ill be denied and w ill send denial letters. - KEPGO5 - Aug 23, 2022 01:23:19 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/31/2022 | Telephone (OUT) | 13 | WILLIAM J. REYNOLDS | Completed | KEPGO5 |

Rcvd VM from ee, called ee back, let ee know w e w ill send the deniial letter out as soon as w e can. - KEPGO5 - Aug 31, 2022 10:49:00 am

AMENDMENT NO. 1

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010212273

ISSUED TO: John Soules Foods, Inc.

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated May 1, 2020.

The effective date of this amendment is May 1, 2020; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Accepted by the Group Policyholder this ________ day of __________________________ 20______

By _______________________________________ Title _____________________________________

Lincoln Financial Group®

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

Group Policyholder:

John Soules Foods, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on February 1, 2016, and on the same day of each month after that. Policy anniversaries will be each January 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska. The issue date of this Policy is January 1, 2016.

SECRETARY PRESIDENT

**WORKERS' COMPENSATION INSURANCE NOTICE**

**THIS IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. THE EMPLOYER DOES NOT BECOME A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM BY PURCHASING THIS POLICY. IF THE EMPLOYER IS A NON-SUBSCRIBER, THE EMPLOYER LOSES THOSE BENEFITS WHICH WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS. THE EMPLOYER MUST COMPLY WITH THE WORKERS' COMPENSATION LAW AS IT PERTAINS TO NON-SUBSCRIBERS. THE REQUIRED NOTIFICATIONS MUST BE FILED AND POSTED.**

**GROUP INSURANCE POLICY**
No. 000010212273
PROVIDING
WEEKLY DISABILITY INCOME INSURANCE

# TOLL-FREE TELEPHONE NUMBERS FOR INFORMATION AND COMPLAINTS

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call The Lincoln National Life Insurance Company's toll-free telephone number for information or to make a complaint at:
1-800-423-2765.

You may also write to The Lincoln National Life Insurance Company at:
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114-4066

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:
1-800-252-3439.

You may write the Texas Department of Insurance:
P.O. Box #149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact the Company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener información o para presenter una queja:

Usted puede llamar al número de teléfono gratuito de The Lincoln National Life Insurance Company's para obtener información o para presentar una queja al:
1-800-423-2765.

Usted también puede escribir a The Lincoln National Life Insurance Company:
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114-4066

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:
1-800-252-3439.

Usted puede escribir al Departamento de Seguros de Texas a:
P.O. Box #149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Sitio Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con la compañía primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:** Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

## TABLE OF CONTENTS

Schedule of Insurance....3

Definitions....4

General Provisions....9

Provisions Applicable to Participating Employers....11

Eligibility and Effective Dates....12

Individual Terminations....14

Premiums and Premium Rates....15

Grace Period....16

Policy Termination....16

Claims Procedures for Weekly Disability Income Benefits....17

Weekly Disability Income Insurance....20

Vocational Rehabilitation Benefit....25

Rehabilitation Incentive Benefit....26

Reasonable Accommodation Benefit....27

Family Income Benefit....28

Notice....29

Prior Insurance Credit Provision....30

**John Soules Foods, Inc.**
**000010212273**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

| | |
|---|---|
| Class 1 | All Full-Time Employees |

This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**John Soules Foods, Inc.**
**000010212273**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - All Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
90 days of continuous Active Work

CONTRIBUTIONS: Insured Employees are not required to contribute to the cost of the Weekly Disability Income Insurance.

## WEEKLY DISABILITY INCOME INSURANCE

BENEFIT PERCENTAGE: 60%

MAXIMUM WEEKLY BENEFIT: $1,500

MINIMUM WEEKLY BENEFIT: 10% of the Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 4th consecutive day of Disability due to Accidental Injury; and
4th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 13 weeks

The Maximum Weekly Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.

Weekly Disability Income Insurance will terminate when an Insured Person retires.

ADDITIONAL FEATURES:

Family Income Benefit: 3 times the Insured Person's last Weekly Benefit payable immediately prior to death.

Rehabilitation Assistance Benefit:
- Rehabilitation Incentive Benefit of 5% of Basic Weekly Earnings
- Reasonable Accommodation Benefit
- Vocational Rehabilitation Benefit

# DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
(1) the Employer's place of business; or
(2) any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.
This includes a Military Leave or an approved Family or Medical Leave that is not due to the Employee's own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means 1/52 of the Insured Person's annual gross earnings from the Employer during the calendar year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It is figured from the income box on the Insured Person's W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes the Insured Person's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:
(1) any Employer contributions to a deferred compensation plan;
(2) income received from any car, housing or moving allowance; or
(3) income from a source other than the Employer.
It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by this Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records. For an Insured Person who did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the weekly gross earnings received during the actual period of employment, as shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.
If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**DEFINITIONS**
**(Continued)**

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:
(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary, on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under this Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:
(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.
If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours the Insured Person was regularly scheduled to work, at his or her Own Occupation, during the week just prior to:
(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while the Insured Person is continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of this Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:
(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before the Insured Person's Effective Date under this Policy.

The term "Injury" shall not include any:
(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**DEFINITIONS**
**(Continued)**

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
(1) are normally required to perform the Insured Person's Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
(1) the Employer is subject to the Act; or
(2) the Insured Person has requested such a job accommodation.
An Employer's failure to modify or omit other job tasks does **not** render the Insured Person unable to perform the Main Duties of the job.

Main Duties include those job tasks:
(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.
Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Person's Disability. Such treatment must be rendered:
(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
(1) in which the Insured Person was employed with the Employer prior to Disability; and
(2) which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, the Insured Person:
(1) is unable to perform one or more of the Main Duties of his or her Own Occupation, or is unable to perform such duties Full-Time; and
(2) is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Person is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
(1) the Insured Person's hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) the Insured Person is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:
(1) who is a member of an Employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by this Policy on Insured Persons.

**PHYSICIAN** means:
(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Person's disabling condition.

Physician does **not** include the Insured Person or a relative of the Insured Person receiving treatment. Relatives include:
(1) the Insured Person's spouse, siblings, parents, children and grandparents; and
(2) his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means the Insured Person:
(1) personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
(2) receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**--See Own Occupation or Regular Occupation definition.

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by an Insured Person (Payments representing Employee contributions are deemed to be received over the Insured Person's expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
    (a) early or normal retirement; or
    (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which the Insured Person is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of an Insured Person's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Person for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to the Insured Person who is Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
(1) this Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy, unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
(1) determine the insurability of a group or any individual within a group;
(2) make a contract in the Company's name;
(3) amend or waive any provision of this Policy; or
(4) extend the time for payment of any premium.
No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
(1) this Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
(1) an Insured Person incurs a claim during the first two years of coverage; and
(2) the Company discovers that the Insured Person made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for Insured Person's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NONPARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Group Policyholder and any Participating Employers may be required to furnish any information needed to administer this Policy, including:
(1) information about Persons:
 (a) who become eligible for insurance;
 (b) whose amounts of coverage change; or
 (c) whose eligibility or coverage ends;
(2) occupational information and other facts that may be needed to manage a claim; and
(3) any other information that the Company may reasonably require.
The Company may inspect the Group Policyholder's or any Participating Employer's records that relate to this Policy, at any reasonable time.

**GENERAL PROVISIONS**
**(Continued)**

Clerical error by the Group Policyholder or Participating Employer:
(1) will not void or terminate insurance that otherwise would be in effect;
(2) will not result in insurance coverage that otherwise would not be in effect; and
(3) will not continue insurance that otherwise would be terminated.

Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof such an adjustment should be made.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:
(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under this Policy.

If an Insured Person's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER.** In administering this Policy, the Group Policyholder must:
(1) treat Employees the same in like situations; and
(2) allow the Company, without inquiry, to rely on its acts.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of this Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CERTIFICATES.** The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES.** If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY.** In administering this Policy:
(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** This Policy does not replace or provide benefits required by:
(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Policy may not be assigned.

## PROVISIONS APPLICABLE TO PARTICIPATING EMPLOYERS

A Participating Employer has no rights under this Policy except as provided in this Section. The Participating Employer will be responsible for all premiums payable with respect to any of its Employees who are Insured Persons under this Policy.

PARTICIPATING EMPLOYER means an employer who has been approved by the Company for participation in the coverage provided by this Policy. The following are Participating Employers:

John Soules Acquisitions

EFFECTIVE DATE. As it applies to any Participating Employer, the Effective Date of this Policy will be the later of:

(a) the date this Policy is issued;
(b) the first day of the Insurance Month following the Company's approval of the employer's Participation Agreement; or
(c) a date agreed upon by the Company, the Participating Employer, and the Group Policyholder.

TERMINATION: A Participating Employer's participation under this Policy ends on the earliest of the following dates:

(a) the date the employer no longer meets the definition of a Participating Employer;
(b) the date the Participating Employer has fewer than 10 Insured Persons;
(c) the date the Participating Employer suspends active business operations, is placed in bankruptcy or receivership, dissolves, merges or relocates;
(d) the date the Participating Employer, without good cause, fails to:
    (a) promptly furnish the Company any information it may reasonably require; or
    (b) perform its duties pertaining to this Policy in good faith;
(e) the last day of the Insurance Month for which premium is paid;
(f) the last day of the Insurance Month in which the Company receives the Participating Employer's written request to cease participation; or
(g) the date the Company terminates the coverage under this Policy for all Participating Employers in this state.

On the day participation ends, Policy coverage will terminate for all the Participating Employer's employees and their Dependents. If an employer ceases to be a Participating Employer, it may not be a Participating Employer again; until the Company reapproves it as such.

## ELIGIBILITY AND EFFECTIVE DATES

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Insurance. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY.** A Person becomes eligible for coverage provided by this Policy on the later of:
(1) this Policy's date of issue; or
(2) the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Insurance. Prior service in an Eligible Class will apply toward the Waiting Period, when:
(1) a former Employee is rehired within one year after his or her employment ends; or
(2) an Employee returns from an approved Family or Medical Leave within:
 (a) the 12-week leave period required by federal law; or
 (b) any longer period required by a similar state law; or
(3) an Employee returns from a Military Leave within the period required by federal USERRA law.

**EFFECTIVE DATE.** A Person's initial amount of Personal Insurance becomes effective at 12:01 a.m. on the latest of:
(1) the next day following the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for coverage and signs:
 (a) a payroll deduction order, if the Insured Person pays any part of this Policy's premiums; or
 (b) an order to pay premiums from the Person's Flexible Benefits Plan account, if Employer contributions are made through such an account; or
(4) the date the Company approves the Person's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the date on which the Insured Person becomes eligible for the increase, if Actively at Work on that day;
(2) the date the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Person is Actively at Work.

**Evidence of Insurability**. Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
(1) a Person makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for coverage after he or she has requested:
 (a) to cancel insurance;
 (b) to stop payroll deductions for the insurance; or
 (c) to stop premium payments from the Flexible Benefits Plan account.

**Effective Date for Change in Eligible Class.** An Insured Person may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
(1) on the first day of the Insurance Month coinciding with or next following the date of the change;
(2) except as stated in the Effective Date provision for increases or decreases.

## ELIGIBILITY AND EFFECTIVE DATES
## (Continued)

**REINSTATEMENT RIGHTS.** If an Insured Person's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for this Policy's coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

(1) return from an approved Family or Medical Leave within:
   (a) the 12-week period required by federal law; or
   (b) any longer period required by a similar state law;
(2) return from a Military Leave within the period required by federal USERRA law; or
(3) return from any other approved leave of absence within six months after the leave begins.

To reinstate coverage, the Insured Person must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Person returns to Active Work.

# INDIVIDUAL TERMINATIONS

**TERMINATION OF COVERAGE.** An Insured Person's coverage will terminate at 12:00 midnight on the earliest of:

(1) the date this Policy terminates or the Employer's participation terminates (but without prejudice to any claim incurred prior to termination);
(2) the date the Insured Person's Class is no longer eligible for insurance;
(3) the date the Insured Person ceases to be a member of an Eligible Class;
(4) the last day of the Insurance Month in which the Insured Person requests termination;
(5) the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(6) the end of the period for which the last required premium has been paid;
(7) with respect to any particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
(8) the date the Insured Person's employment with the Group Policyholder or Participating Employer terminates (unless coverage is continued as provided below); or
(9) the date the Insured Person enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium).

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Person's eligibility for coverage, but coverage may be continued as follows.

**Disability.** If the Insured Person is absent due to Total Disability or engaged in Partial Disability Employment, coverage may be continued:

(1) until the Day Benefits Begin; and
(2) during the period for which benefits are payable.

The Company must receive the required premium from the Employer.

**Family or Medical Leave.** If an Insured Person goes on an approved Family or Medical Leave and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued until the earliest of:

(1) the end of the leave period approved by the Employer;
(2) the end of the leave period required by federal law, or any more favorable period required by a similar state law;
(3) the date the Insured Person notifies the Employer that he or she will not return; or
(4) the date the Insured Person begins employment with another employer.

The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Military Leave.** If an Insured Person goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Lay Off or Other Leave.** When an Insured Person ceases work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Conditions.** In administering the above continuations, the Employer must not act so as to discriminate unfairly among Insured Persons in similar situations. Insurance may **not** be continued when an Insured Person ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Person's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUMS.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

**PREMIUM RATE CHANGE.** The Company may change any premium rate on any of the following dates:

(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Company’s liability is changed because the Group Policyholder (or any covered division, subsidiary or affiliated company):
  (a) relocates, dissolves or merges, or is added to or removed from this Policy; or
  (b) ceases to be covered by the state Worker’s compensation program or any other program of like intent; or
  (c) ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 60 days' advance written notice of any increase in premium rates.

**PREMIUM AMOUNT.** The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.

(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

| | |
|---|---|
| Monthly Weekly Disability Income Rate | $.424 per $10 of weekly benefit |

## GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:

(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
    (a) promptly furnish any information the Company reasonably requires; or
    (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance or weekly disability income insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

## CLAIMS PROCEDURES
## FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE AND PROOF OF CLAIM -- Notice of Claim.** Written notice of a Disability claim must be given:
(1) within 20 days after the Injury or Sickness causing Disability begins; or
(2) as soon as reasonably possible after that.*

The notice must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days, the Insured Person may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send the Insured Person additional claim forms.

**Proof of Claim.** The Company must be given written proof of a Disability claim:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.*

Proof of claim must be provided at the Insured Person's own expense. It must show the date the Disability began, its cause and degree. Documentation must include the following:
(1) completed statements by the Insured Person and the Employer;
(2) a completed statement by the attending Physician, which must describe any restrictions on the performance of the duties of the Insured Person's Regular Occupation;
(3) proof of any other income received, and of any other benefits available from other income sources, which may affect Policy benefits;
(4) a signed authorization for the Company to obtain more information; and
(5) any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

***Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the Insured Person lacks legal capacity.

**EXAMINATION.** The Company may have the Insured Person examined:
(1) by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
(2) as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Person has:
(1) failed to cooperate with an examiner;
(2) failed to take an exam scheduled by the Company; or
(3) postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**CLAIMS PROCEDURES**
**(Continued)**

**TIME OF PAYMENT OF CLAIMS.** Weekly Disability Income Benefits payable under this Policy will be paid:
(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in any event, within 60 days after the Company receives acceptable proof of claim.
Such benefits will be paid biweekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a pro rata basis. The daily rate will equal 1/7 of the Weekly Benefit.

Any balance, which remains unpaid at the end of the period of liability, will be paid:
(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in any event, within 60 days after the Company receives acceptable proof of claim.

**TO WHOM PAYABLE**. All Weekly Disability Income Benefits are payable to the Insured Person, while living. After the Insured Person's death, such benefits will be payable to his or her estate.

**NOTICE OF CLAIM DECISION**. The Company will send the Insured Person a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the Insured Person may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.
This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice**. The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Person a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain:
(1) what additional information is needed to determine liability; and
(2) when a decision can be expected.
If the Insured Person does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Person to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE**. Within 180 days after receiving a denial notice, the Insured Person may request a claim review by sending the Company:
(1) a written request; and
(2) any written comments or other items to support the claim.
He or she may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the Insured Person a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
(1) any further appeal procedures available under this Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.
This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

## CLAIMS PROCEDURES
## (Continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
(1) an extension of up to 45 more days will be permitted; and
(2) the Company will send the Insured Person a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** The Company may need more information from the Insured Person to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
(1) an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
(2) the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
(1) reduce future benefits and suspend payment of the Minimum Weekly Benefit under this Policy, until full reimbursement is made;
(2) reduce benefits payable to the Insured Person or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
(3) recover such overpayments from the Insured Person or his or her estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

# WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT**. The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if the Insured Person:
- (1) becomes Totally Disabled while insured for this benefit;
- (2) is under the Regular Care of a Physician; and
- (3) at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

**Duration.** Benefits start on the Day Benefits Begin, and end on the earliest of:
- (1) the date the Insured Person ceases to be Totally Disabled or dies;
- (2) the date the Maximum Benefit Period ends; or
- (3) the date the Insured Person is able, but chooses not to engage in Partial Disability Employment in his or her Own Occupation.

Proportional benefits will be paid for a partial week of Total Disability.

At the Company's option, benefits may also be denied or suspended on any of the following dates:
- (1) the date the Insured Person (without good cause):
  - (a) fails to take a required medical exam;
  - (b) fails to cooperate with an examiner; or
  - (c) postpones a required exam more than twice;
- (2) the 45th day after the Company requests additional proof, if not given; or
- (3) the 45th day after the Company requests proof of the Insured Person's application for any Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Total Disability Benefit equals the lesser of:
- (1) the Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage; minus Other Income Benefits except any pay received under the Employer's Sick Leave or Salary Continuance Plan;
- (2) 100% of the Insured Person's Basic Weekly Earnings; minus Other Income Benefits including any pay received under the Employer's Sick Leave or Salary Continuance Plan; or
- (3) the Maximum Weekly Benefit.

In no event will the amount of the Weekly Total Disability Benefit plus any pay received under the Employer's Sick Leave or Salary Continuance Plan exceed 100% of the Insured Person's Basic Weekly Earnings.

The amount of the Weekly Total Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT**. The Company will pay a Weekly Partial Disability Benefit, if the Insured Person:
- (1) becomes Partially Disabled while insured for this benefit;
- (2) is engaged in Partial Disability Employment;
- (3) is earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
- (4) is under the Regular Care of a Physician; and
- (5) at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Person is not required to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination of these. Proportional benefits will be paid for a partial week of Partial Disability.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**Duration.** Benefits start on the Day Benefits Begin, and will cease on the earliest of:
(1) the date the Insured Person ceases to be Partially Disabled or dies;
(2) the date the Maximum Benefit Period ends;
(3) the date the Insured Person earns more than 99% of Basic Weekly Earnings; or
(4) the date the Insured Person is able, but chooses not to work Full-Time or part-time in his or her Own Occupation.

At the Company's option, benefits may also be denied or suspended on any of the following dates:
(1) the date the Insured Person (without good cause):
  (a) fails to take a required medical exam;
  (b) fails to cooperate with an examiner; or
  (c) postpones a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of the Insured Person's application for Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:
(A) (1) The Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
  (2) Other Income Benefits, except for earnings the Insured Person receives from Partial Disability Employment; or
(B) The Insured Person's Basic Weekly Earnings minus Other Income Benefits.

The amount of the Weekly Partial Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**OTHER INCOME BENEFITS** means Earnings, benefits, awards, or settlements from the following sources. These amounts will be offset, in determining the Insured Person's Weekly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Weekly Benefit is payable under this Policy.

**Compulsory Benefits.** Any disability income benefits the Insured Person is eligible to receive under:
(1) state temporary disability income benefit laws;
(2) state no fault auto insurance laws; or
(3) any other compulsory benefit act or law (except Workers' Compensation and laws of like intent).

**Other Insurance Plans.** Any disability income benefits for which the Insured Person is eligible under any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which the Insured Person is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay, or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits the Insured Person receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
(1) **disability benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's Disability;
(2) **unreduced retirement benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's eligibility for unreduced retirement benefits; or
(3) **reduced retirement benefits** actually received by the Insured Person and any spouse or child, because of the Insured Person's receipt of reduced retirement benefits.

As used above, "**Government Retirement Plans**" include disability and retirement benefits under:
(1) the federal Social Security Act, Jones Act or Railroad Retirement Act;
(2) the Canada Pension Plan or Quebec Pension Plan;
(3) any similar plan or act of any country, state, province or other political unit; or
(4) any plan provided in place of one of the above plans.

**"Earnings"**, as used in this provision, means pay the Insured Person earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
(1) salaried or hourly Employee's gross earnings (shown on Form W-2); including:
    (a) wages, tips, commissions, bonuses and overtime pay; and
    (b) any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
(2) proprietor's net profit (figured from Form 1040, Schedule C);
(3) professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
(4) partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
(5) Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Recovery from Third Party.** Any amount the Insured Person recovers from a third party as a result of the Disability (whether by judgment, settlement or otherwise). The offset:
(1) will be reduced by attorney fees and other reasonable costs of recovery; and
(2) will not exceed 100% of the net settlement.

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Weekly Benefit:

(1) a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
(2) reimbursement for hospital, medical or surgical expense;
(3) reimbursement for attorney fees or other reasonable costs of claiming Other Income Benefits;
(4) group credit or mortgage disability insurance;
(5) early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
(6) any amounts under the Employer's Retirement Plan that:
  (a) represent the Insured Person's contributions; or
  (b) are received upon termination of employment without being disabled or retired;
(7) benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
(8) vacation pay, holiday pay, or severance pay; or
(9) disability income benefits under any individual policy, franchise plan, association group plan, or auto liability insurance policy (except no fault auto insurance).

**RULES CONCERNING OTHER INCOME BENEFITS.** If the Insured Person may be entitled to Other Income Benefits that affect Policy benefits, he or she is required to actively claim them. For example, if Social Security or other Government Retirement Plan benefits may be payable, the Insured Person:

(1) must promptly apply for such benefits; and, if denied
(2) must file an appeal or request an administrative hearing, upon Company request.

If the Insured Person fails to promptly pursue such benefits, the Company has the option to deny or suspend Weekly Benefits or to reduce them by an estimated amount.

If Workers' Compensation or similar benefits may be payable for the same Disability, the Insured Person and Employer are required to cooperate in filing for those benefits. The Company will require proof of the denial or duration of those benefits to confirm its liability under this Policy.

**Refunding Overpayments.** Upon receiving Other Income Benefits, the Insured Person must refund any resulting overpayment of Weekly Benefits under this Policy. If he or she does not promptly refund an overpayment to the Company within 60 days, in a lump sum, then:

(1) the Company will reduce or eliminate future payments; and
(2) the Minimum Weekly Benefit will not apply, until the amount is repaid.

**Cost of Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Weekly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

**RECURRENT DISABILITY. "Recurrent Disability"** means a Disability caused by an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Weekly Benefits were payable.

(1) A Recurrent Disability will be treated as a new period of Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for two consecutive weeks or more.
  A new Day Benefits Begin and new Maximum Benefit Period will apply.
(2) A Recurrent Disability will be treated as part of the prior Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for less than two consecutive weeks.
  The same Day Benefits Begin and same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.

## WEEKLY DISABILITY INCOME INSURANCE
## (Continued)

To qualify for a Weekly Benefit for a Recurrent Disability, the Insured Person must earn less than the percentage of Predisability Income specified in the Partial Disability Benefit section. Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Person who becomes eligible for coverage under any other group short-term disability policy.

**EXCLUSIONS.** Weekly Benefits will not be payable for any period of Disability:

(1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
(2) during which the Insured Person is not under the Regular Care of a Physician;
(3) which is the result of war (declared or undeclared) or any act of war;
(4) which is the result of a Sickness or Injury for which the Insured Person receives benefits under Workers' Compensation or similar coverage; or
(5) which arises out of (or in the course of) any employment for wage or profit, when the Disability would be covered by Workers' Compensation or similar coverage if:
    (a) the Employer had enrolled the Insured Person for such coverage; and
    (b) the Insured Person and Employer had cooperated in filing a claim under that plan.

## VOCATIONAL REHABILITATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, he or she may be eligible for a Vocational Rehabilitation Benefit. This benefit consists of services which may include:

(1) vocational evaluation, counseling, training or job placement;
(2) job modification or special equipment; and
(3) other services which the Company deems reasonably necessary to help the Insured Person return to work.

The Company will determine the Insured Person's eligibility and the amount of any benefit payable.

**ELIGIBILITY.** An Insured Person may be eligible for the Vocational Rehabilitation Benefit if the Company finds that he or she:

(1) has a Disability that prevents the performance of the Main Duties of his or her Own Occupation;
(2) has the physical and mental abilities needed to complete a Rehabilitation Program; and
(3) is reasonably expected to return to work after completing the Rehabilitation Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Person's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** The Company, the Insured Person, or his or her Physician may first propose vocational rehabilitation. When a Rehabilitation Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; however, it will be reapplied after the Rehabilitation Program ends. The Company will determine the amount and duration of any Weekly Disability benefits payable after the Rehabilitation Program ends.

**LIMITATION.** This Policy will not cover any period of Disability for an Insured Person who has received a Vocational Rehabilitation Benefit and has failed to complete the Rehabilitation Program, without Good Cause.

**DEFINITIONS.**

**"Good Cause,"** as used in this provision, means the Insured Person's:

(1) documented physical or mental impairments, which render the Insured Person unable to take part in or complete a Rehabilitation Program;
(2) involvement in a medical program, which prevents or interferes with the Insured Person's taking part in or completing a Rehabilitation Program; or
(3) participating in good faith in some other vocational rehabilitation program, which:
    (a) conflicts with taking part in or completing a Rehabilitation Program developed by the Company; and
    (b) is reasonably expected to return the Insured Person to work.

**"Rehabilitation Program"** means a written vocational rehabilitation program:

(1) which the Company develops with input from:
    (a) the Insured Person;
    (b) the Insured Person's Physician; and
    (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

# REHABILITATION INCENTIVE BENEFIT

**BENEFIT.** The Company will pay a Rehabilitation Incentive Benefit to an Insured Person who is Totally or Partially Disabled and who actively participates in a Rehabilitation Program approved by the Company.

This benefit is included in the premium rate for the Policy. You will not be charged any additional premium for this benefit.

**AMOUNT.** The amount of the Rehabilitation Incentive Benefit is shown in the Schedule of Insurance.

The Rehabilitation Incentive Benefit is paid in addition to any other Policy benefits, and is not subject to Policy provisions that would otherwise reduce the benefit amount, such as the Other Income Benefits provision.

**DURATION.** The Rehabilitation Incentive Benefit starts on the latest of:
(1) the date the Insured Person begins to participate in an approved Rehabilitation Program; or
(2) the date the Company approves the Insured Person's Rehabilitation Program.

The Rehabilitation Incentive Benefit will cease on the earliest of:
(1) the date the Weekly Total or Partial Disability Benefits would otherwise cease under this Policy; or
(2) the date the Insured Person ceases participation in an approved Rehabilitation Program.

**DEFINITION.**

**"Rehabilitation Program"** means a written vocational rehabilitation program:
(1) which the Company develops with input from:
  (a) the Insured Person;
  (b) the Insured Person's Physician; and
  (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**PROOF.** Written proof of active participation in a Rehabilitation Program must be given:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.
Proof of active participation must be provided at the Insured Person's own expense. The proof must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Exception:** Failure to furnish proof of active participation in a Rehabilitation Program within the required time period will not invalidate the benefit, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while the Insured Person lacks legal capacity.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## REASONABLE ACCOMMODATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, then the Group Policyholder may be eligible for a Reasonable Accommodation benefit. This benefit reimburses the Group Policyholder for 50% of the expense incurred for reasonable accommodation services for the Insured Person, but will not exceed the lesser of:

(1) a maximum benefit of $2500 for any one Insured Person; or
(2) the Company's expected liability for the Insured Person's Weekly Disability Income claim.

Such services may include:

(1) providing the Insured Person a more accessible parking space or entrance;
(2) removing barriers or hazards to the Insured Person from the worksite;
(3) special seating, furniture or equipment for the Insured Person's work station;
(4) providing special training materials or translation services during the Insured Person's training; and
(5) other services the Company deems reasonably necessary to help the Insured Person return to work with the Group Policyholder.

**ELIGIBILITY.** The Company will determine the Group Policyholder's eligibility to receive the Reasonable Accommodation benefit. To qualify for the Reasonable Accommodation benefit, the Group Policyholder must have an Insured Person:

(1) whose Disability prevents the performance of his or her Own Occupation at the Group Policyholder's worksite;
(2) who has the physical and mental abilities needed to perform his or her Own Occupation or another occupation at the Group Policyholder's worksite, but only with the help of the proposed accommodation; and
(3) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation benefit is less than the expected liability for the Insured Person's Weekly Disability Income claim.

**WRITTEN PROPOSAL.** The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

(1) the Group Policyholder;
(2) the Insured Person; and
(3) the Insured Person's Physician, when appropriate.

The proposal must state:

(1) the purpose of the proposed accommodation; and
(2) the times, dates, and costs of the services.

**CONDITIONS.** The Company, the Group Policyholder, the Insured Person, or the Insured Person's Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will reimburse the Group Policyholder upon receipt of proof that the Group Policyholder:

(1) has provided the services for the Insured Person; and
(2) has paid the provider for the services.

**OTHER PROVISIONS.** Unless stated otherwise, the Reasonable Accommodation benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## FAMILY INCOME BENEFIT

**BENEFIT.** The Company will pay a benefit to the Eligible Survivor(s) when satisfactory written proof is received that an Insured Person died:

(1) after Disability had continued for at least 14 consecutive days; and
(2) while receiving a Weekly Benefit.

If payment becomes due to the Insured Person's children; then payment will be made to:

(1) the surviving children, in equal shares; or
(2) a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the Insured Person's children.

If there are no Eligible Survivors, payment will be made to the Insured Person's estate.

**AMOUNT.** The Family Income Benefit is shown in the Schedule of Insurance. Reductions for Other Income Benefits will not apply.

If any state disability plan compulsory death benefits become payable upon the Insured Person's death, then any Family Income Benefit amount payable will be reduced by such compulsory death benefits.

**DEFINITION.**

**"Eligible Survivor(s)"** means the Insured Person's:

(1) surviving spouse or domestic partner; or, if none,
(2) surviving children who are under age 25 on the Insured Person's date of death.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

# IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION
**(For insurers declared insolvent or impaired on or after September 1, 2011)**

Texas law establishes a system to protect Texas policyholders if their life or health insurance company fails. The Texas Life and Health Insurance Guaranty Association ("the Association") administers this protection system. Only the policyholders of insurance companies that are members of the Association are eligible for this protection which is subject to the terms, limitations, and conditions of the Association law. (The law is found in the *Texas Insurance Code,* Chapter 463.)

**It is possible that the Association may not protect all or part of your policy because of statutory limitations.**

## Eligibility for Protection by the Association

When a member insurance company is found to be insolvent and placed under an order of liquidation by a court or designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- Residents of Texas **(regardless of where the policyholder lived when the policy was issued)**
- Residents of other states, ONLY if the following conditions are met:
  1. The policyholder has a policy with a company domiciled in Texas;
  2. The policyholder's state of residence has a similar guaranty association; and
  3. The policyholder is *not eligible* for coverage by the guaranty association of the policyholder's state of residence.

## Limits of Protection by the Association

**Accident, Accident and Health, or Health Insurance:**

- For each individual covered under one or more policies: up to a total of $500,000 for basic hospital, medical-surgical, and major medical insurance, $300,000 for disability or long term care insurance, or $200,000 for other types of health insurance.

**Life Insurance:**

- Net cash surrender value or net cash withdrawal value up to a total of $100,000 under one or more policies on a single life; or
- Death benefits up to a total of $300,000 under one or more policies on a single life; or
- Total benefits up to a total of $5,000,000 to any owner of multiple non-group life policies.

**Individual Annuities:**

- Present value of benefits up to a total of $250,000 under one or more contracts on any one life.

**Group Annuities:**

- Present value of allocated benefits up to a total of $250,000 on any one life; or
- Present value of unallocated benefits up to a total of $5,000,000 for one contractholder regardless of the number of contracts.

**Aggregate Limit:**

- $300,000 on any one life with the exception of the $500,000 health insurance limit, the $5,000,000 multiple owner life insurance limit, and the $5,000,000 unallocated group annuity limit.

These limits are applied for each insolvent insurance company.

**Insurance companies and agents are prohibited by law from using the existence of the Association for the purpose of sales, solicitation, or inducement to purchase any form of insurance. When you are selecting an insurance company, you should not rely on Association coverage. For additional questions on Association protection or general information about an insurance company, please use the following contact information.**

Texas Life and Health Insurance
Guaranty Association
515 Congress Avenue, Suite 1875
Austin, Texas 78701
800-982-6362 or www.txlifega.org

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439 or www.tdi.texas.gov

**AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO: 000010212273**

**ISSUED TO: John Soules Foods, Inc.**

**The Policy is amended by the addition of the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF DISABILITY INCOME INSURANCE CARRIERS**

This provision prevents loss of disability income coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan**" means a prior carrier's group disability income policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to premium payments, this Policy will provide disability income coverage to a Person who:

(1) was insured by the prior plan on its termination date; and
(2) was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE. Until the Person satisfies this Policy's Active Work rule, his or her disability income coverage will not exceed that provided by the prior plan, had it remained in force. The Company will pay:

(1) the benefit the prior plan would have paid; minus
(2) any amount for which the prior carrier is liable.

**This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. GL 000010212273 has been issued to
John Soules Foods, Inc.
(The Group Policyholder)

The issue date of the Policy is January 1, 2016.

Certificate of Insurance for Class 1 of Plan 1

You are entitled to the benefits described in this Certificate only if you are eligible, become and remain insured under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms. If the provisions of this Certificate and the Policy do not agree, the provisions of the Policy will apply.

**WORKERS' COMPENSATION NOTICE**
**THE INSURANCE POLICY UNDER WHICH THIS CERTIFICATE IS ISSUED IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. YOU SHOULD CONSULT YOUR EMPLOYER TO DETERMINE WHETHER YOUR EMPLOYER IS A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM.**

Ellen Cooper
PRESIDENT

**CERTIFICATE OF GROUP INSURANCE**
**PROVIDING**
**WEEKLY DISABILITY INCOME INSURANCE**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

# TOLL-FREE TELEPHONE NUMBERS FOR INFORMATION AND COMPLAINTS

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call The Lincoln National Life Insurance Company's toll-free telephone number for information or to make a complaint at:
1-800-423-2765.

You may also write to The Lincoln National Life Insurance Company at:
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114-4066

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:
1-800-252-3439.

You may write the Texas Department of Insurance:
P.O. Box #149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact the Company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener información o para presenter una queja:

Usted puede llamar al número de teléfono gratuito de The Lincoln National Life Insurance Company's para obtener información o para presentar una queja al:
1-800-423-2765.

Usted también puede escribir a The Lincoln National Life Insurance Company:
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114-4066

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:
1-800-252-3439.

Usted puede escribir al Departamento de Seguros de Texas a:
P.O. Box #149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Sitio Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con la compañía primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:** Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

**John Soules Foods, Inc.**
**000010212273**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

**Class 1 - All Full-Time Employees**

The Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**John Soules Foods, Inc.**
**000010212273**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - All Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
90 days of continuous Active Work

CONTRIBUTIONS: You are not required to contribute to the cost of the Weekly Disability Income Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**

BENEFIT PERCENTAGE: 60%

MAXIMUM WEEKLY BENEFIT: $1,500

MINIMUM WEEKLY BENEFIT: 10% of your Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 4th consecutive day of Disability due to Accidental Injury; and
4th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 13 weeks

The Maximum Weekly Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.

Weekly Disability Income Insurance will terminate when you retire.

ADDITIONAL FEATURES:

Family Income Benefit: 3 times your last Weekly Benefit payable immediately prior to death.

Rehabilitation Assistance Benefit:
- Rehabilitation Incentive Benefit of 5% of Basic Weekly Earnings
- Reasonable Accommodation Benefit
- Vocational Rehabilitation Benefit

# TABLE OF CONTENTS

Definitions....3

General Provisions....8

Eligibility and Effective Dates....10

Individual Terminations....12

Claims Procedures for Weekly Disability Income Benefits....13

Weekly Disability Income Insurance....16

Vocational Rehabilitation Benefit....21

Rehabilitation Incentive Benefit....22

Reasonable Accommodation Benefit....23

Family Income Benefit....24

Notice....25

Prior Insurance Credit Provision....26

# DEFINITIONS

**As used throughout the Policy, the following terms shall have the meanings indicated below. Other parts of the Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means your performance of all Main Duties of your Own Occupation, for the regularly scheduled number of hours, at:
(1) the Employer's place of business; or
(2) any other business location where the Employer requires you to travel.

Unless disabled on the prior workday or on the day of absence, you will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.
This includes a Military Leave or an approved Family or Medical Leave that is not due to your own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means 1/52 of your annual gross earnings from the Employer during the calendar year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It is figured from the income box on your W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes your income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:
(1) any Employer contributions to a deferred compensation plan;
(2) income received from any car, housing or moving allowance; or
(3) income from a source other than the Employer.
It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by the Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records. If you did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the weekly gross earnings received during the actual period of employment, as shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.
If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

**DEFINITIONS**
**(Continued)**

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:
(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary, on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under the Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of your medical history. The Company uses this to determine your acceptance for insurance or an increased amount of insurance. Such proof will be provided at your own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:
(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.
If you are entitled to a leave under both the federal FMLA law and a similar state law, you may elect the more favorable leave (but not both). If you are on an FMLA leave due to your own health condition on the date Policy coverage takes effect, you are not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours you were regularly scheduled to work, at your Own Occupation, during the week just prior to:
(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while you are continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of the Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:
(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before your Effective Date under the Policy.

The term "Injury" shall not include any:
(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**DEFINITIONS**
**(Continued)**

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
(1) are normally required to perform your Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
(1) the Employer is subject to the Act; or
(2) you have requested such a job accommodation.
An Employer's failure to modify or omit other job tasks does **not** render you unable to perform the Main Duties of the job.

Main Duties include those job tasks:
(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.
Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing your Disability. Such treatment must be rendered:
(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
(1) in which you were employed with the Employer prior to Disability; and
(2) which was your main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, you:
(1) are unable to perform one or more of the Main Duties of your Own Occupation, or are unable to perform such duties Full-Time; and
(2) are engaged in Partial Disability Employment.

## DEFINITIONS
## (Continued)

**PARTIAL DISABILITY EMPLOYMENT** means you are working at your Own Occupation or any other occupation; however, because of a Partial Disability:

(1) your hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) you are working in a lower-paid occupation.

During Partial Disability Employment, your current earnings:

(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:

(1) who is a member of an Employee class which is eligible for coverage under the Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by the Policy on Insured Persons.

**PHYSICIAN** means:

(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for your disabling condition.

Physician does **not** include you or your relatives. Relatives include:

(1) your spouse, siblings, parents, children and grandparents; and
(2) your spouse's relatives of like degree.

**POLICY** means the group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means you:

(1) personally visit a Physician, as often as medically required according to standard medical practice to effectively manage and treat your disabling condition; and
(2) receive Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**--See Own Occupation or Regular Occupation definition.

**DEFINITIONS**
**(Continued)**

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by you (Payments representing Employee contributions are deemed to be received over your expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
  (a) early or normal retirement; or
  (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which you are eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of your Predisability Income for a specified period after you become Disabled.

It does **not** include compensation the Employer pays you for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means your inability, due to Sickness or Injury, to perform each of the Main Duties of your Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time you must be employed in an eligible class with the Employer, before you become eligible to enroll for coverage under the Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to you while you are Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
(1) the Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached to the Policy);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by the Policy, unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
(1) the Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION**. The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
(1) you incur a claim during the first two years of coverage; and
(2) the Company discovers that you made a Material Misrepresentation on your application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for your claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:
(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under the Policy.
If your age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of the Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CURRENCY.** In administering the Policy:
(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefits must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** The Policy does not replace or provide benefits required by:
(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**GENERAL PROVISIONS**
**(Continued)**

**ASSIGNMENT.** The rights and benefits under this Certificate may not be assigned.

## ELIGIBILITY AND EFFECTIVE DATES

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Insurance. The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY.** A Person becomes eligible for coverage provided by the Policy on the later of:
- (1) the Policy's date of issue; or
- (2) the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Insurance. Prior service in an Eligible Class will apply toward the Waiting Period, when:
- (1) you are a former Employee and are rehired within one year after your employment ends;
- (2) you return from an approved Family or Medical Leave within:
  - (a) the 12-week period required by federal law; or
  - (b) any longer period required by a similar state law; or
- (3) you return from a Military Leave within the period required by federal USERRA law.

**EFFECTIVE DATE.** Your initial amount of Personal Insurance becomes effective at 12:01 a.m. on the latest of:
- (1) the next day following the date you become eligible for the coverage;
- (2) the date you resume Active Work, if not Actively at Work on the day you become eligible;
- (3) the date you make written application for coverage and sign:
  - (a) a payroll deduction order, if you pay any part of the Policy premiums; or
  - (b) an order to pay premiums from your Flexible Benefits Plan account, if Employer contributions are made through such an account; or
- (4) the date the Company approves your Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:

- (1) the first day of the Insurance Month coinciding with or next following the day on which you become eligible for the increase, if Actively at Work on that day;
- (2) the date you resume Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
- (3) the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not you are Actively at Work.

**Evidence of Insurability.** Evidence of Insurability satisfactory to the Company must be submitted (at your expense); when:
- (1) you make written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage; or
- (2) you make written application for coverage after you have requested:
  - (a) to cancel insurance;
  - (b) to stop payroll deductions for the insurance; or
  - (c) to stop premium payments from the Flexible Benefits Plan account.

**Effective Date for Change in Eligible Class.** You may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
- (1) on the first day of the Insurance Month coinciding with or next following the date of the change;
- (2) except as stated in the Effective Date provision for increases or decreases.

**ELIGIBILITY AND EFFECTIVE DATES**
**(Continued)**

**REINSTATEMENT RIGHTS.** If your coverage terminates due to one of the following breaks in service, you will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

(1) return from an approved Family or Medical Leave within:
 (a) the 12-week period required by federal law; or
 (b) any longer period required by a similar state law;
(2) return from a Military Leave within the period required by federal USERRA law; or
(3) return from any other approved leave of absence within six months after the leave begins.

To reinstate coverage, you must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date you return to Active Work.

## INDIVIDUAL TERMINATIONS

**TERMINATION OF COVERAGE.** Your coverage will terminate at 12:00 midnight on the earliest of:
(1) the date the Policy terminates or the Employer's participation ends (but without prejudice to any claim incurred prior to termination);
(2) the date your class is no longer eligible for insurance;
(3) the date you cease to be a member of an Eligible Class;
(4) the last day of the Insurance Month in which you request termination;
(5) the last day of the last Insurance Month for which premium payment is made on your behalf;
(6) the end of the period for which the last required premium has been paid;
(7) with respect to any particular insurance benefit, the day the portion of the Policy providing that benefit terminates;
(8) the date your employment with the Group Policyholder or Participating Employer terminates (unless coverage is continued as provided below); or
(9) the date you enter the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of your eligibility for coverage, but coverage may be continued as follows.

**Disability.** If you are absent due to Total Disability or engaged in Partial Disability Employment, coverage may be continued:
(1) until the Day Benefits Begin; and
(2) during the period for which benefits are payable.
The Company must receive the required premium from the Employer.

**Family or Medical Leave.** If you go on an approved Family or Medical Leave and are **not** entitled to the more favorable continuation available during Disability, coverage may be continued until the earliest of:
(1) the end of the leave period approved by the Employer;
(2) the end of the leave period required by federal law, or any more favorable period required by a similar state law;
(3) the date you notify the Employer that you will not return; or
(4) the date you begin employment with another employer.
The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Military Leave.** If you go on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Lay Off or Other Leave.** If you cease work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Conditions.** In administering the above continuations, the Employer must not act so as to discriminate unfairly among Insured Persons in similar situations. Insurance may **not** be continued when you cease Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of your coverage during a Disability will have no effect on benefits payable for that period of Disability.

## CLAIMS PROCEDURES
## FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE AND PROOF OF CLAIM -- Notice of Claim**. Written notice of a Disability claim must be given:
(1) within 20 days after the Injury or Sickness causing Disability begins; or
(2) as soon as reasonably possible after that.*****
The notice must be sent to the Company's Group Insurance Service Office. It should include your name and address, and the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days, you may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send you additional claim forms.

**Proof of Claim.** The Company must be given written proof of a Disability claim:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.*****

Proof of claim must be provided at your own expense. It must show the date the Disability began, its cause and degree. Documentation must include the following:
(1) completed statements by you and your Employer;
(2) a completed statement by the attending Physician, which must describe any restrictions on the performance of the duties of your Regular Occupation;
(3) proof of any other income received, and of any other benefits available from other income sources, which may affect Policy benefits;
(4) a signed authorization for the Company to obtain more information; and
(5) any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

***Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while you lack legal capacity.

**EXAMINATION.** The Company may have you examined:
(1) by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
(2) as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) you have:
(1) failed to cooperate with an examiner;
(2) failed to take an exam scheduled by the Company; or
(3) postponed such an exam more than twice.
In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.** Weekly Disability Income Benefits payable under the Policy will be paid:
(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in any event, within 60 days after the Company receives acceptable proof of claim.
Such benefits will be paid biweekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a pro rata basis. The daily rate will equal 1/7 of the Weekly Benefit.

**CLAIMS PROCEDURES**
**(Continued)**

Any balance, which remains unpaid at the end of the period of liability, will be paid:
(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in any event, within 60 days after the Company receives acceptable proof of claim.

**TO WHOM PAYABLE**. All Weekly Disability Income Benefits are payable to you, while living. After your death, such benefits will be payable to your estate.

**NOTICE OF CLAIM DECISION**. The Company will send you a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how you may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.
This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice**. The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send you a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain:
(1) what additional information is needed to determine liability; and
(2) when a decision can be expected.
If you do not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from you to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE**. Within 180 days after receiving a denial notice, you may request a claim review by sending the Company:
(1) a written request; and
(2) any written comments or other items to support the claim.
You may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send you a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.
This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
(1) an extension of up to 45 more days will be permitted; and
(2) the Company will send you a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**CLAIMS PROCEDURES**
**(Continued)**

**Exception:** The Company may need more information from you to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:

(1) an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
(2) the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:

(1) reduce future benefits and suspend payment of the Minimum Weekly Benefit under the Policy, until full reimbursement is made;
(2) reduce benefits payable to you or your beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
(3) recover such overpayments from you or your estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

# WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT**. The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if you:

(1) become Totally Disabled while insured for this benefit;
(2) are under the Regular Care of a Physician; and
(3) at your own expense, submit proof of continued Total Disability and Physician's care to the Company upon request.

**Duration.** Benefits start on the Day Benefits Begin, and end on the earliest of:

(1) the date you cease to be Totally Disabled or die;
(2) the date the Maximum Benefit Period ends; or
(3) the date you are able, but choose not to engage in Partial Disability Employment in your Own Occupation.

Proportional benefits will be paid for a partial week of Total Disability.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date you (without good cause):
    (a) fail to take a required medical exam;
    (b) fail to cooperate with an examiner; or
    (c) postpone a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of your application for any Other Income Benefits to which you may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Total Disability Benefit equals the lesser of:

(1) your Basic Weekly Earnings multiplied by the Benefit Percentage; minus Other Income Benefits except any pay received under the Employer's Sick Leave or Salary Continuance Plan;
(2) 100% of your Basic Weekly Earnings; minus Other Income Benefits including any pay received under the Employer's Sick Leave or Salary Continuance Plan; or
(3) the Maximum Weekly Benefit.

In no event will the amount of the Weekly Total Disability Benefit plus any pay received under the Employer's Sick Leave or Salary Continuance Plan exceed 100% of your Basic Weekly Earnings.

The amount of the Weekly Total Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of your Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT**. The Company will pay a Weekly Partial Disability Benefit, if you:

(1) become Partially Disabled while insured for this benefit;
(2) are engaged in Partial Disability Employment;
(3) are earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
(4) are under the Regular Care of a Physician; and
(5) at your own expense, submit proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

You are not required to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination of these. Proportional benefits will be paid for a partial week of Partial Disability.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**Duration.** Benefits start on the Day Benefits Begin, and will cease on the earliest of:
(1) the date you cease to be Partially Disabled or die;
(2) the date the Maximum Benefit Period ends;
(3) the date you earn more than 99% of Basic Weekly Earnings; or
(4) the date you are able, but choose not to work Full-Time or part-time in your Own Occupation.

At the Company's option, benefits may also be denied or suspended on any of the following dates:
(1) the date you (without good cause):
  (a) fail to take a required medical exam;
  (b) fail to cooperate with an examiner; or
  (c) postpone a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of your application for Other Income Benefits to which you may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:
(A) (1) Your Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
  (2) Other Income Benefits, except for earnings you receive from Partial Disability Employment; or
(B) Your Basic Weekly Earnings minus Other Income Benefits.

The amount of the Weekly Partial Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of your Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**OTHER INCOME BENEFITS** means Earnings, benefits, awards, or settlements from the following sources. These amounts will be offset, in determining your Weekly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Weekly Benefit is payable under the Policy.

**Compulsory Benefits.** Any disability income benefits you are eligible to receive under:
(1) state temporary disability income benefit laws;
(2) state no fault auto insurance laws; or
(3) any other compulsory benefit act or law (except Workers' Compensation and laws of like intent).

**Other Insurance Plans.** Any disability income benefits for which you are eligible under any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which you are eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay, or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits you receive under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
(1) **disability benefits** for which you and any spouse or child is eligible, because of your Disability;
(2) **unreduced retirement benefits** for which you and any spouse or child is eligible, because of your eligibility for unreduced retirement benefits; or
(3) **reduced retirement benefits** actually received by you and any spouse or child, because of your receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
(1) the federal Social Security Act, Jones Act or Railroad Retirement Act;
(2) the Canada Pension Plan or Quebec Pension Plan;
(3) any similar plan or act of any country, state, province or other political unit; or
(4) any plan provided in place of one of the above plans.

**"Earnings"**, as used in this provision, means pay you earn or receive from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
(1) salaried or hourly Employee's gross earnings (shown on Form W-2); including:
  (a) wages, tips, commissions, bonuses and overtime pay; and
  (b) any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
(2) proprietor's net profit (figured from Form 1040, Schedule C);
(3) professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
(4) partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
(5) Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**WEEKLY DISABILITY INCOME INSURANCE**
**(Continued)**

**Recovery from Third Party.** Any amount you recover from a third party as a result of the Disability (whether by judgment, settlement or otherwise). The offset:
(1) will be reduced by attorney fees and other reasonable costs of recovery; and
(2) will not exceed 100% of the net settlement.

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Weekly Benefit:
(1) a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
(2) reimbursement for hospital, medical or surgical expense;
(3) reimbursement for attorney fees or other reasonable costs of claiming Other Income Benefits;
(4) group credit or mortgage disability insurance;
(5) early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
(6) any amounts under the Employer's Retirement Plan that:
    (a) represent your contributions; or
    (b) are received upon termination of employment without being disabled or retired;
(7) benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
(8) vacation pay, holiday pay, or severance pay; or
(9) disability income benefits under any individual policy, franchise plan, association group plan, or auto liability insurance policy (except no fault auto insurance).

**RULES CONCERNING OTHER INCOME BENEFITS.** If you may be entitled to Other Income Benefits that affect Policy benefits, you are required to actively claim them. For example, if Social Security or other Government Retirement Plan benefits may be payable, you:
(1) must promptly apply for such benefits; and, if denied
(2) must file an appeal or request an administrative hearing, upon Company request.
If you fail to promptly pursue such benefits, the Company has the option to deny or suspend Weekly Benefits or to reduce them by an estimated amount.

If Workers' Compensation or similar benefits may be payable for the same Disability, you and your Employer are required to cooperate in filing for those benefits. The Company will require proof of the denial or duration of those benefits to confirm its liability under the Policy.

**Refunding Overpayments.** Upon receiving Other Income Benefits, you must refund any resulting overpayment of Weekly Benefits under the Policy. If you do not promptly refund an overpayment to the Company within 60 days, in a lump sum, then:
(1) the Company will reduce or eliminate future payments; and
(2) the Minimum Weekly Benefit will not apply, until the amount is repaid.

**Cost of Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Weekly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

**RECURRENT DISABILITY.** **"Recurrent Disability"** means a Disability caused by an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Weekly Benefits were payable.

(1) A Recurrent Disability will be treated as a new period of Disability, if you:
 (a) have returned to your Own Occupation; and
 (b) have worked on a full-time basis, for two consecutive weeks or more.
 A new Day Benefits Begin and new Maximum Benefit Period will apply.

(2) A Recurrent Disability will be treated as part of the prior Disability, if you:
 (a) have returned to your Own Occupation; and
 (b) have worked on a full-time basis, for less than two consecutive weeks.
 The same Day Benefits Begin and same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.

To qualify for a Weekly Benefit for a Recurrent Disability, the Insured Person must earn less than the percentage of Predisability Income specified in the Partial Disability Benefit section. Benefit payments will be subject to all other terms of the Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply when you become eligible for coverage under any other group short-term disability policy.

**EXCLUSIONS.** Weekly Benefits will not be payable for any period of Disability:

(1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
(2) during which you are not under the Regular Care of a Physician;
(3) which is the result of war (declared or undeclared) or any act of war;
(4) which is the result of a Sickness or Injury for which you receive benefits under Workers' Compensation or similar coverage; or
(5) which arises out of (or in the course of) any employment for wage or profit, when the Disability would be covered by Workers' Compensation or similar coverage if:
 (a) the Employer had enrolled you for such coverage; and
 (b) you and your Employer had cooperated in filing a claim under that plan.

## VOCATIONAL REHABILITATION BENEFIT

**BENEFIT.** If you are Disabled and are receiving Weekly Benefits under the Policy, you may be eligible for a Vocational Rehabilitation Benefit. This benefit consists of services which may include:
(1) vocational evaluation, counseling, training or job placement;
(2) job modification or special equipment; and
(3) other services which the Company deems reasonably necessary to help you return to work.
The Company will determine your eligibility and the amount of any benefit payable.

**ELIGIBILITY.** You may be eligible for the Vocational Rehabilitation Benefit if the Company finds that you:
(1) have a Disability that prevents the performance of the Main Duties of your Own Occupation;
(2) have the physical and mental abilities needed to complete a Rehabilitation Program; and
(3) are reasonably expected to return to work after completing the Rehabilitation Program; in view of your degree of motivation and the labor force demand for workers in the proposed occupation.
The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under your health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** The Company, you, or your Physician may first propose vocational rehabilitation. When a Rehabilitation Program is approved by the Company, the Policy's definition of "Disability" will be waived during the rehabilitation period; however, it will be reapplied after the Rehabilitation Program ends. The Company will determine the amount and duration of any Weekly Disability benefits payable after the Rehabilitation Program ends.

**LIMITATION.** The Policy will not cover any period of Disability if you have received a Vocational Rehabilitation Benefit and have failed to complete the Rehabilitation Program, without Good Cause.

**DEFINITIONS.**

**"Good Cause,"** as used in this provision, means your:
(1) documented physical or mental impairments, which render you unable to take part in or complete a Rehabilitation Program;
(2) involvement in a medical program, which prevents or interferes with your taking part in or completing a Rehabilitation Program; or
(3) participating in good faith in some other vocational rehabilitation program, which:
  (a) conflicts with taking part in or completing a Rehabilitation Program developed by the Company; and
  (b) is reasonably expected to return you to work.

**"Rehabilitation Program"** means a written vocational rehabilitation program:
(1) which the Company develops with input from:
  (a) you;
  (b) your Physician; and
  (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of the Policy.

## REHABILITATION INCENTIVE BENEFIT

**BENEFIT.** The Company will pay you a Rehabilitation Incentive Benefit if you are Totally or Partially Disabled and actively participating in a Rehabilitation Program approved by the Company.

**AMOUNT.** The amount of the Rehabilitation Incentive Benefit is shown in the Schedule of Insurance.

The Rehabilitation Incentive Benefit is paid in addition to any other Policy benefits, and is not subject to Policy provisions that would otherwise reduce the benefit amount, such as the Other Income Benefits provision.

**DURATION.** The Rehabilitation Incentive Benefit starts on the latest of:
- (1) the date you begin to participate in an approved Rehabilitation Program; or
- (2) the date the Company approves your Rehabilitation Program.

The Rehabilitation Incentive Benefit will cease on the earliest of:
- (1) the date the Weekly Total or Partial Disability Benefits would otherwise cease under the Policy; or
- (2) the date you cease participation in an approved Rehabilitation Program.

**DEFINITION.**

**"Rehabilitation Program"** means a written vocational rehabilitation program:
- (1) which the Company develops with input from:
  - (a) you;
  - (b) your Physician; and
  - (c) any current or prospective employer, when appropriate; and
- (2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**PROOF.** Written proof of active participation in a Rehabilitation Program must be given:
- (1) within 90 days after the Day Benefits Begin; or
- (2) as soon as reasonably possible after that.

Proof of active participation must be provided at your own expense. The proof must be sent to the Company's Group Insurance Service Office. It should include your name and address and the number of the Policy.

Exception**:** Failure to furnish proof of active participation in a Rehabilitation Program within the required time period will not invalidate the benefit, if it is shown that it was done:
- (1) as soon as reasonably possible; and
- (2) in no event more than one year after it was required.

These time limits will not apply while you lack legal capacity.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of the Policy.

## REASONABLE ACCOMMODATION BENEFIT

**BENEFIT.** If you are Disabled and are receiving Weekly Benefits under the Policy, then the Group Policyholder may be eligible for a Reasonable Accommodation benefit. This benefit reimburses the Group Policyholder for 50% of the expense incurred for reasonable accommodation services for you, but will not exceed the lesser of:

(1) a maximum benefit of $2500 for any one Insured Person; or
(2) the Company's expected liability for your Weekly Disability Income claim.

Such services may include:

(1) providing you a more accessible parking space or entrance;
(2) removing barriers or hazards to you from the worksite;
(3) special seating, furniture or equipment for your work station;
(4) providing special training materials or translation services during your training; and
(5) other services the Company deems reasonably necessary to help you return to work with the Group Policyholder.

**ELIGIBILITY.** The Company will determine the Group Policyholder's eligibility to receive the Reasonable Accommodation benefit. To qualify for the Reasonable Accommodation benefit, the Group Policyholder must have an Insured Person:

(1) whose Disability prevents the performance of his or her Own Occupation at the Group Policyholder's worksite;
(2) who has the physical and mental abilities needed to perform his or her Own Occupation or another occupation at the Group Policyholder's worksite, but only with the help of the proposed accommodation; and
(3) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation benefit is less than the expected liability for your Weekly Disability Income claim.

**WRITTEN PROPOSAL.** The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

(1) the Group Policyholder;
(2) you; and
(3) your Physician, when appropriate.

The proposal must state:

(1) the purpose of the proposed accommodation; and
(2) the times, dates, and costs of the services.

**CONDITIONS.** The Company, the Group Policyholder, you, or your Physician may first voluntarily propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will reimburse the Group Policyholder upon receipt of proof that the Group Policyholder:

(1) has provided the services for you; and
(2) has paid the provider for the services.

**OTHER PROVISIONS.** Unless stated otherwise, the Reasonable Accommodation benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of the Policy.

## FAMILY INCOME BENEFIT

**BENEFIT.** The Company will pay a benefit to the Eligible Survivor(s) when satisfactory written proof is received that you died:
(1) after Disability had continued for at least 14 consecutive days; and
(2) while receiving a Weekly Benefit.

If payment becomes due to your children; then payment will be made to:
(1) the surviving children, in equal shares; or
(2) a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, your children.

If there are no Eligible Survivors, payment will be made to your estate.

**AMOUNT.** The Family Income Benefit is shown in the Schedule of Insurance. Reductions for Other Income Benefits will not apply.

If any state disability plan compulsory death benefits become payable upon your death, then any Family Income Benefit amount payable will be reduced by such compulsory death benefits.

**DEFINITION.**

**"Eligible Survivor(s)"** means your:
(1) surviving spouse; or, if none,
(2) surviving children who are under age 25 on your date of death.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of the Policy.

# IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION
**(For insurers declared insolvent or impaired on or after September 1, 2011)**

Texas law establishes a system to protect Texas policyholders if their life or health insurance company fails. The Texas Life and Health Insurance Guaranty Association ("the Association") administers this protection system. Only the policyholders of insurance companies that are members of the Association are eligible for this protection which is subject to the terms, limitations, and conditions of the Association law. (The law is found in the *Texas Insurance Code,* Chapter 463.)

**It is possible that the Association may not protect all or part of your policy because of statutory limitations.**

## Eligibility for Protection by the Association

When a member insurance company is found to be insolvent and placed under an order of liquidation by a court or designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:
- Residents of Texas **(regardless of where the policyholder lived when the policy was issued)**
- Residents of other states, ONLY if the following conditions are met:
  (1) The policyholder has a policy with a company domiciled in Texas;
  (2) The policyholder's state of residence has a similar guaranty association; and
  (3) The policyholder is *not eligible* for coverage by the guaranty association of the policyholder's state of residence.

## Limits of Protection by the Association

**Accident, Accident and Health, or Health Insurance:**
- For each individual covered under one or more policies: up to a total of $500,000 for basic hospital, medical-surgical, and major medical insurance, $300,000 for disability or long term care insurance, or $200,000 for other types of health insurance.

**Life Insurance:**
- Net cash surrender value or net cash withdrawal value up to a total of $100,000 under one or more policies on a single life; or
- Death benefits up to a total of $300,000 under one or more policies on a single life; or
- Total benefits up to a total of $5,000,000 to any owner of multiple non-group life policies.

**Individual Annuities:**
- Present value of benefits up to a total of $250,000 under one or more contracts on any one life.

**Group Annuities:**
- Present value of allocated benefits up to a total of $250,000 on any one life; or
- Present value of unallocated benefits up to a total of $5,000,000 for one contractholder regardless of the number of contracts.

**Aggregate Limit:**
- $300,000 on any one life with the exception of the $500,000 health insurance limit, the $5,000,000 multiple owner life insurance limit, and the $5,000,000 unallocated group annuity limit.

These limits are applied for each insolvent insurance company.

**Insurance companies and agents are prohibited by law from using the existence of the Association for the purpose of sales, solicitation, or inducement to purchase any form of insurance. When you are selecting an insurance company, you should not rely on Association coverage. For additional questions on Association protection or general information about an insurance company, please use the following contact information.**

Texas Life and Health Insurance
Guaranty Association
515 Congress Avenue, Suite 1875
Austin, Texas 78701
800-982-6362 or www.txlifega.org

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439 or www.tdi.texas.gov

**AMENDMENT TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000010212273**

**ISSUED TO: John Soules Foods, Inc.**

**Your Certificate is amended by adding the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF DISABILITY INCOME INSURANCE CARRIERS**

This provision prevents loss of disability income coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

**"Prior Plan"** means a prior carrier's group disability income policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to premium payments, the Policy will provide disability income coverage if you:

(1) were insured by the prior plan on its termination date; and
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE. Until you satisfy the Policy's Active Work rule, your disability income coverage will not exceed that provided by the prior plan, had it remained in force. The Company will pay:

(1) the benefit the prior plan would have paid; minus
(2) any amount for which the prior carrier is liable.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains unchanged.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

[signature]

Officer of the Company

# SUMMARY PLAN DESCRIPTION

The following information together with your group insurance certificate issued to you by The Lincoln National Life Insurance Company of Fort Wayne, Indiana, is the Summary Plan Description required by the Employee Retirement Income Security Act of 1974 to be distributed to participants in the Plan. This Summary Plan Description is only intended to provide an outline of the Plan's benefits. The Plan Document will govern if there is any discrepancy between the information contained in this Description and the Plan.

The name of the Plan is: Weekly Disability Income Insurance for Employees of John Soules Foods, Inc..

The name, address and ZIP code of the Sponsor of the Plan is: John Soules Foods, Inc., 10150 FM 14, Tyler, TX, 75706.

Employer Identification Number (EIN): 75-1569736 IRS Plan Number: 504

The name, business address, ZIP code and business telephone number of the Plan Administrator is: John Soules Foods, Inc., 10150 FM 14, Tyler, TX, 75706, (903) 363-1014.

The Plan Administrator is responsible for the administration of the Plan and is the designated agent for the service of legal process for the Plan. Functions performed by the Plan Administrator include: the receipt and deposit of contributions, maintenance of records of Plan participants, authorization and payment of Plan administrative expenses, selection of the insurance consultant, selection of the insurance carrier and assisting The Lincoln National Life Insurance Company. The Lincoln National Life Insurance Company has the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions, on the Plan Administrator's behalf (this does not apply to employers sitused in California or to California residents).

Type of Administration. The Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by The Lincoln National Life Insurance Company whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska.

Type of Plan. The benefits provided under the Plan are: Weekly Disability Income Insurance benefits.

Type of Funding Arrangement: The Lincoln National Life Insurance Company.

All employees are given a Certificate of Group Insurance which contains a detailed description of the Benefits, any Pre-Existing Condition Limitation and Exclusions. The Certificate also contains the Schedule of Insurance which includes the Benefit Percentage, Maximum and Minimum Weekly Benefits, Maximum Benefit Period, Day Benefits Begin, Waiting Period and age reduction information. If your Booklet, Certificate or Schedule of Insurance has been misplaced, you may obtain a copy from the Plan Administrator at no charge.

Eligibility. Full-time employees working at least 30 hours per week.

Employees become eligible on the day following completion of 90 days of active full-time employment.

Contributions. You are not required to contribute to the cost of the Weekly Disability Income Insurance.

The Plan's year ends on: December 31st of each year.

The name and section of relevant Collective Bargaining Agreements: None

The name, title and address of each Plan Trustee: None

**Loss of Benefits**. The Plan Administrator may terminate the policy, or, subject to The Lincoln National Life Insurance Company's approval, may modify, amend or change the provisions, terms and conditions of the policy. Coverage will also terminate if the premiums are not paid when due. No consent of any Insured Person or any other person referred to in the policy will be required to terminate, modify, amend or change the policy. See your Plan Administrator to determine what, if any, arrangements may be made to continue your coverage beyond the date you cease active work.

**Claims Procedures**. You may obtain claim forms and instructions for filing claims from the Plan Administrator or from the Group Insurance Service Office of The Lincoln National Life Insurance Company. To expedite the processing of your claim, instructions on the claim form should be followed carefully; be sure all questions are answered fully. In accordance with ERISA, The Lincoln National Life Insurance Company will send you a written notice of its claim decision within:

- 45 days after receiving the first proof of a claim for disability benefits (105 days under special circumstances).

If a claim is partially or wholly denied, this written notice will explain the reason(s) for denial, how a review of the decision may be requested, and whether more information is needed to support the claim. You may request a review of the claim by making a written request to The Lincoln National Life Insurance Company within:

- 180 days after receiving a denial notice of a claim for disability income benefits.

This written request for review should state the reasons why you feel the claim should not have been denied and should include any additional documentation to support your claim. You may also submit for consideration additional questions or comments you feel are appropriate, and you may review certain non-privileged information relating to the request for review. The Lincoln National Life Insurance Company will make a full and fair review of the claim and provide a final written decision to you within:

- 45 days after receiving the request for review of a claim for disability income benefits (90 days under special circumstances).

If more information is needed to resolve a claim, the information must be supplied within 45 days after requested. Any resulting delay will not count toward the above time limits for claims or appeals processing. Please refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claims procedures.

**Statement of ERISA Rights**

The following statement of ERISA rights is required by federal law and regulation. As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits.** Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series), if any, filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series), if any, and updated summary plan description. The administrator may make a reasonable charge for copies.

Receive a summary of the plan's annual financial report if the plan covers 100 or more participants. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries.** In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights.** If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions.** If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

Lincoln Financial Group

# Lincoln Financial Group® Privacy Practices Notice

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. We do not sell your personal information to third parties. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information we may collect and use

We collect personal information about you to help us identify you as a consumer, our customer, or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; to analyze in order to enhance our products and services; to tell you about our products or services we believe you may want and use; and as otherwise permitted by law. The type of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies**: If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer**: If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative in order to enroll you in the plan.

## How we use your personal information

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you, your employer, or your group representative have requested; to provide customer service; to analyze in order to evaluate or enhance our products and services; to gain customer insight; to provide education and training to our workforce and customers; and to inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers), regulatory authorities and law enforcement officials, and to other non-affiliated or affiliated parties as permitted by law. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or release your information to outside marketers who may want to offer you their own products and services; nor do we release information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

## Security of information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your rights regarding your personal information

This Privacy Notice describes how you can exercise your rights regarding your personal information. Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically, whichever you prefer. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the persons and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for the specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide for additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to act upon your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial Group, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice. For general account service requests or inquiries, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company
Lincoln Investment Advisors Corporation
Lincoln Life & Annuity Company of New York
Lincoln Life Assurance Company of Boston
Lincoln Retirement Services Company, LLC
Lincoln Variable Insurance Products Trust
The Lincoln National Life Insurance Company

**This Notice is effective 14 calendar days after it is made available on Lincoln's website, www.LFG.com/privacy.

DUPLICATE - September 27, 2022 REF #14713779

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 1, 2022

WILLIAM J REYNOLDS

Re: PolicyHolder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our review of your Short Term Disability claim and have determined that no benefits are payable beyond 08/01/2022.

To be eligible for benefits under the policy issued to your employer, an individual must satisfy all of the provisions of the policy. This includes but is not limited to the following:

> **TOTAL DISABILITY or TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

**<u>Information reviewed and action taken</u>**

After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the definition of Total Disability, as defined above. Outlined below is the information reviewed which led to our determination.

In our review process, all information previously submitted as well as any new documentation is used to make a determination. The documentation contained in your claim file includes, but is not limited to the following:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- Attending Physician Statement completed by Dr. Clint Carter 05/05/2022
- Office and treatment notes from Dr. Clint Carter 07/26/2022
- Office and treatment notes from Dr. Clint Carter 04/20/2022 to 04/28/2022
- Short-Term Continuance Of Disability Form 07/26/2022
- Attending Physician Statement completed by Dr. Clint Carter 08/08/2022
- Clinical review completed by Lincoln Financial Groups clinical staff

According to the information contained in your claim file, you stopped working on 05/06/2022 due to a diagnosis of Presence of aortocoronary bypass graft.

Dr. Clint Carter completed the Attending Physician Statement on 05/05/2022, on which he states you had a CABG and Acute stress Reaction. He noted you had acute stress and physical fatigue making you unable to work He advised to stop working on 04/28/2022 and gave a return to work date of 08/01/2022.

On 04/20/2022 Dr. Clint Cater stated you were seen for fatigue/cough. It was discussed some of the fatigue may be from the CABG. It noted you feel a little more depressed since having the CABG in December of 2021. On 04/28/2022 you were seen by Dr. Clint Cater for FMLA evaluation. It noted you have been through a lot of stress the last seven months. That you had a heart attack and Bypass surgery in September/ October. You do not feel as you ever fully recovered from the 2 heart attacks or the subsequent depression/anxiety and is having a difficult time. Dr. Clint Carter recommends some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling and medications.

You were seen by Dr. Clint Cater on 07/26/2022 for Cardiac Recover it noted that you have been slowly progressing in physical endurance, shortness of breath, and ability to do activities of daily living. You also have been gradually improving in depression and anxiety. Dr. Clint Carter gave a return-to-work date of 08/01/2022.

Dr. Clint Carter completed an updated Attending Physician Statement on 08/08/2022, on which it states you had CABG and Acute reaction. He noted you last office visit was on 07/26/2022 and your next office visit is scheduled for 10/28/2022 with every three-month follow-up appointment with your primary care physician. It noted you had symptoms of Flat effect, tearful, anxiety, DOE and fatigue with walking in the office.

The Group Continuance of Disability Form completed on 07/26/2022 stated you were working on a return-to-work date, if possible, but had to follow up with your employer. Restrictions and Limitations were given of short-term memory and ability to perform high level analysis.

It is important to note that the policy under which you are covered refers to and is governed by the main duties of your regular "occupation" and not by the duties of your specific job. Nearly every job in the economy is performed slightly different from one employer to another. However, the Department of Labor groups jobs into occupations based on their similarities. The term "occupation" refers to a collective description of a number of individual jobs that are performed, with variations, in many establishments. Consequently, there will be similarities between the main duties of your occupation and those of your job. There may also be some differences.

In addition to the medical documentation submitted to our office, we obtained your written job description, your employer's description of your job duties, and the description of your occupation from the Department of Labor's Dictionary of Occupation Titles 163167018 In order to be eligible for Short Term Disability benefits, you must have been unable to perform each of the main duties of your occupation, as they would be performed in a typical setting for an employer.

The contract issued to John Soules Foods, Inc. - TX Location states, in part:

**MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

(1) are normally required to perform the Insured Person's Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

(1) the Employer is subject to the Act; or
(2) the Insured Person has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does not render the Insured Person unable to perform the Main Duties of the job.

Main Duties include those job tasks:

(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.

Main Duties are not limited to those specific job tasks as performed for a certain firm or at a certain work site.

Based on information obtained from your employer and occupational information contained within the *Dictionary of Occupational Titles* (DOT), we have determined that your occupation is best defined as a SALES REPORTING ANALYST in the national workforce. The material and substantial duties of a SALES REPORTING ANALYST include but are not limited to the following:

- Compiling, analyzing, and reporting sales data.
- Monitoring and analyzing competitive activity, customer, and market trends.
- Providing actionable insights to guide the sales and marketing teams.

We reviewed the medical documentation provided in conjunction with the written job description, your employer's description of your job duties, and the Department of Labor's Dictionary of Occupational Titles (DOT), and determine that the medical evidence does not support Total Disability as defined by the policy.

**Summary**

In summary, the medical documentation contained in your claim file does not support Total Disability as defined by the policy. Dr. Clint Carter states you were unable to work due you your condition(s). However, the medical documentation provided lacks the description of any symptoms or evidence of any physical or mental functional deficits that translate into limitations or restrictions that would support your inability to perform your occupation's functional demands on a full or part-time basis. Lincoln Financial Group's clinical staff completed a review of your medical file finding that the medical evidence does not support disability beyond 08/01/2022. You did not have a higher level of care or referral to behavioral health provider. No medication adjustments were noted. Dr. Clint Carter gave a return-to-work date as of 08/01/2022. There is nothing to support ongoing restrictions and limitations beyond 08/01/2022. In review, our findings do not support Total Disability. Therefore, benefits are being denied.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

DUPLICATE - September 27, 2022 REF #14713779

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Koji̜' hódíílnih áǫį̜óóǫéą̜ą́ǫąíę́ę.

Date: Fri Sep 16 14:50:19 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
Message-ID: <628599133.3.1663357819385.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 1, 2022

WILLIAM J REYNOLDS

Re: PolicyHolder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our review of your Short Term Disability claim and have determined that no benefits are payable beyond 08/01/2022.

To be eligible for benefits under the policy issued to your employer, an individual must satisfy all of the provisions of the policy. This includes but is not limited to the following:

> **TOTAL DISABILITY or TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

**Information reviewed and action taken**

After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the definition of Total Disability, as defined above. Outlined below is the information reviewed which led to our determination.

In our review process, all information previously submitted as well as any new documentation is used to make a determination. The documentation contained in your claim file includes, but is not limited to the following:

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- Attending Physician Statement completed by Dr. Clint Carter 05/05/2022
- Office and treatment notes from Dr. Clint Carter 07/26/2022
- Office and treatment notes from Dr. Clint Carter 04/20/2022 to 04/28/2022
- Short-Term Continuance Of Disability Form 07/26/2022
- Attending Physician Statement completed by Dr. Clint Carter 08/08/2022
- Clinical review completed by Lincoln Financial Groups clinical staff

According to the information contained in your claim file, you stopped working on 05/06/2022 due to a diagnosis of Presence of aortocoronary bypass graft.

Dr. Clint Carter completed the Attending Physician Statement on 05/05/2022, on which he states you had a CABG and Acute stress Reaction. He noted you had acute stress and physical fatigue making you unable to work He advised to stop working on 04/28/2022 and gave a return to work date of 08/01/2022.

On 04/20/2022 Dr. Clint Cater stated you were seen for fatigue/cough. It was discussed some of the fatigue may be from the CABG. It noted you feel a little more depressed since having the CABG in December of 2021. On 04/28/2022 you were seen by Dr. Clint Cater for FMLA evaluation. It noted you have been through a lot of stress the last seven months. That you had a heart attack and Bypass surgery in September/ October. You do not feel as you ever fully recovered from the 2 heart attacks or the subsequent depression/anxiety and is having a difficult time. Dr. Clint Carter recommends some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling and medications.

You were seen by Dr. Clint Cater on 07/26/2022 for Cardiac Recover it noted that you have been slowly progressing in physical endurance, shortness of breath, and ability to do activities of daily living. You also have been gradually improving in depression and anxiety. Dr. Clint Carter gave a return-to-work date of 08/01/2022.

Dr. Clint Carter completed an updated Attending Physician Statement on 08/08/2022, on which it states you had CABG and Acute reaction. He noted you last office visit was on 07/26/2022 and your next office visit is scheduled for 10/28/2022 with every three-month follow-up appointment with your primary care physician. It noted you had symptoms of Flat effect, tearful, anxiety, DOE and fatigue with walking in the office.

The Group Continuance of Disability Form completed on 07/26/2022 stated you were working on a return-to-work date, if possible, but had to follow up with your employer. Restrictions and Limitations were given of short-term memory and ability to perform high level analysis.

It is important to note that the policy under which you are covered refers to and is governed by the main duties of your regular "occupation" and not by the duties of your specific job. Nearly every job in the economy is performed slightly different from one employer to another. However, the Department of Labor groups jobs into occupations based on their similarities. The term "occupation" refers to a collective description of a number of individual jobs that are performed, with variations, in many establishments. Consequently, there will be similarities between the main duties of your occupation and those of your job. There may also be some differences.

In addition to the medical documentation submitted to our office, we obtained your written job description, your employer's description of your job duties, and the description of your occupation from the Department of Labor's Dictionary of Occupation Titles 163167018 In order to be eligible for Short Term Disability benefits, you must have been unable to perform each of the main duties of your occupation, as they would be performed in a typical setting for an employer**.**

The contract issued to John Soules Foods, Inc. - TX Location states, in part:

> **MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
>
> (1) are normally required to perform the Insured Person's Own Occupation; and
> (2) could not reasonably be modified or omitted.
>
> To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
>
> (1) the Employer is subject to the Act; or
> (2) the Insured Person has requested such a job accommodation.
>
> An Employer's failure to modify or omit other job tasks does not render the Insured Person unable to perform the Main Duties of the job.
>
> Main Duties include those job tasks:
>
> (1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
> (2) as performed in the general labor market and national economy.
>
> Main Duties are not limited to those specific job tasks as performed for a certain firm or at a certain work site.

Based on information obtained from your employer and occupational information contained within the *Dictionary of Occupational Titles* (DOT), we have determined that your occupation is best defined as a SALES REPORTING ANALYST in the national workforce. The material and substantial duties of a SALES REPORTING ANALYST include but are not limited to the following:

- Compiling, analyzing, and reporting sales data.
- Monitoring and analyzing competitive activity, customer, and market trends.
- Providing actionable insights to guide the sales and marketing teams.

We reviewed the medical documentation provided in conjunction with the written job description, your employer's description of your job duties, and the Department of Labor's Dictionary of Occupational Titles (DOT), and determine that the medical evidence does not support Total Disability as defined by the policy.

**<u>Summary</u>**

In summary, the medical documentation contained in your claim file does not support Total Disability as defined by the policy. Dr. Clint Carter states you were unable to work due you your condition(s). However, the medical documentation provided lacks the description of any symptoms or evidence of any physical or mental functional deficits that translate into limitations or restrictions that would support your inability to perform your occupation's functional demands on a full or part-time basis. Lincoln Financial Group's clinical staff completed a review of your medical file finding that the medical evidence does not support disability beyond 08/01/2022. You did not have a higher level of care or referral to behavioral health provider. No medication adjustments were noted. Dr. Clint Carter gave a return-to-work date as of 08/01/2022. There is nothing to support ongoing restrictions and limitations beyond 08/01/2022. In review, our findings do not support Total Disability. Therefore, benefits are being denied.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti’go Diné bizaad, saad bee áká’ánida’áwo’dę́ę́’ t’áá jiik’eh, ná hóló̜. Kojį’ hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Date: Fri Sep 16 14:40:29 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: bjackson@jsfoods.com
Message-ID: <127449697.8.1663357229007.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 16, 2022

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Brandy Jackson:

This letter is to inform you that the Short Term Disability claim for William Reynolds has been denied beyond 08/01/2022.

A detailed letter has been sent to Mr. Reynolds advising of our decision and offering appeal rights. Due to protected health information, we are unable to provide you with a copy of the denial letter.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Tue Aug 30 12:00:29 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: bjackson@jsfoods.com
Message-ID: <2107853606.3.1661878829143.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-confirmation from Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 30, 2022

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Brandy Jackson
10150 FM 14
TYLER, TX 75706

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Brandy Jackson:

This letter is to inform you that the Short Term Disability claim for William Reynolds has been denied beyond 08/01/2022.

A detailed letter has been sent to Mr. Reynolds advising of our decision and offering appeal rights. Due to protected health information, we are unable to provide you with a copy of the denial letter.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number |
|---|---|---|---|
| William | J | Reynolds | |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| 71 | 244 | 119/66 | John Soules Foods |

## 2. Diagnosis

| Primary ICD diagnostic Code **(Required)** | Primary ICD diagnosis Description |
|---|---|
| Z95.1 | CABG |

| Secondary ICD Diagnosis Code | Secondary ICD Diagnosis Description |
|---|---|
| F43.0 | Acute stress reaction |

**Pregnancy** First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery __/__/__ ☐ Vaginal ☐ C-Section

Acute Mi Oct 2021 with CABG;
Rehab interrupted by second MI in Dec, requiring a stent
Unable to return to work due to mental and physical deconditioning.
Ultimately caused a stress reaction with anxiety and worsening mental and physical fatigue, as well as anxiety, making it impossible for him to work.
After completing a full round fo short term disability, he is still not able to return to his postition due to complex mental requirements and high stress environment of his job

Symptoms

Flat affect
Tearful
Anxiety
DOE and fatigue with walking in office

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings)

## 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 9/28/21 | 1/1/22 | 4/28/22 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 9/28/21 | 7/26/22 | 10/25/22 |

Dates hospital confined: 9/28/21 to 10/28/21

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 4. Limitations and Restrictions

Physical exertion, Complex decision making, High stress

Restrictions (what the patient SHOULD NOT do)

complex decision making, especially in a high stress environment

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ____ | Standing | ____ | Crouching | ____ | Overhead | ____ |
| 6-10 lbs. | ____ | Walking | ____ | Crawling | ____ | Desk Level | ____ |
| 11-25 lbs. | ____ | Sitting | ____ | Grasping | ____ | Below Waist | ____ |
| 26-50 lbs. | ____ | Balancing | ____ | Climbing | ____ | | |
| 51-100 lbs. | ____ | Stooping | ____ | Pushing | ____ | | |
| 100 + lbs. | ____ | Kneeling | ____ | Pulling | ____ | | |
| | | Fingering | ____ | Bending | ____ | | |

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

Date patient experienced loss of Cognitive Functioning: ____/____/________

## 5. Treatment

Cardiac follow up
Mental health counseling and treatment

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

As per cardiology; Every 3 months with PCP

Describe ongoing treatment frequency

## 6. Prognosis

Poor
Has not responded well to cardiac rehab
Has persistent anxiety with trying complex computing and or returning to the high stress environment that is necessary to perform his work

Describe the patients prognosis for recovery

Unable

Patient able to return to work Full-Time on:

____/____/________ to ____/____/________

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

## 7. Physician's Information

Clint Carter
Name

2385 oak alley
Street Address

Tyler
City

TX
State

75703
Zip Code

903-630-7130
Phone Number

903-705-0992
Fax Number

[signature]
Signature

8/8/22
Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia, and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: 68 yrs, 10 mo at the time of visit
Seen by Clinton Carter, M.D.

### Date of Encounter: 07/26/2022

### Exam Reason (CC): Cardiac Recovery

**Subjective**

1. CAD (coronary artery disease)
    - STEMI in end of Sept and CABG in first of Oct 2021
    - Repeat STEMI in 12/2021 that was able to be stented
    - Cardiac rehab was interrupted by the second MI as well as complicating the mental health recovery
    - He attempted to return to work to find that his concentration, memory, speed of calculating was inhibited and he was working slowly and more prone to mistakes
    - He has been on STD for further physical and mental rehab for almost 12 weeks
    - The STD company stopped paying at 10 weeks, and he needs a continuance form filled out today
    - He has been slowly progressing in his physical endurance, shortness of breath, and ability to do ADL's
    - He has also been gradually improving in depression and anxiety
    - He still feels anxious about returning to his position but is due to speak with JSF/HR to discuss options
2. Atrial fibrillation
    - Had Left Atrial Appendage removed during CABG
    - Just cleared to stop Eliquis last week at cardiology follow up
3. Hypothyroid

    Doing well at the increased dose of 75
4. Major depressive disorder
    - Did not feel that the Lexapro was helping so stopped it
    - Still on Welbutrin 300 daily
    - Feels that he is gradually improving
    - Still minimal libido and his wife is nervous for that level of exertion. She is also not comfortable with him being outside alone, etc.
    - Only needing xanax 3-4 times per month
5. Insomnia

    Has been sleeping fairly well, for the most part, with Temazepam

**Allergy: NKDA**

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 119/66 HR: 78 Temp: 97.1 °F RR: 16 Ht: 68 in. Wt: 244 lbs. [+6.6 from 237.4 lbs on 04/20/2022]
BMI: 37.1 [+3.99 from 33.11 on 04/20/2022] $O_2$: 97

Data:
- 3/2021: Moderna Covid
- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019
- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Assessment/Plan**

1. CAD (coronary artery disease) I25.10
   - Continue physical and mental rehab
   - STD continuance form filled out. Recommend extend until at least 8/1/22
   - Follow up with cardiology last week was good
   - Continue meds
   - Will follow
2. Atrial fibrillation I48.91
   - Continue meds
   - Will follow
3. Hypothyroid E03.9
   Continue Levo 75
4. Major depressive disorder F32.9
   - Continue Welbutrin
   - Will follow
5. Insomnia G47.00
   Continue Temazepam PRN

Electronically signed by Clinton Carter, M.D. on 07/26/2022 3:29 pm in ElationHealth

Amended and electronically signed off by Clinton Carter, M.D. on 07/26/2022 3:30 pm.

Date: Mon Aug 01 06:00:53 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
Message-ID: <1573760791.13.1659351653575.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-confirmation from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 1, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

Please refer to your Short Term Disability approval letter of 07/29/2022 in which we advised additional medical information would be needed if you are/were unable to return to work. As of this date, we have not received any updated medical information and your benefits have been suspended.

As stated in your policy, benefits are payable when proof of continued disability and regular care of a physician are given to the Company.

We must receive the following information in order to continue our review of your claim:

- Updated Office and Treatment notes to include any testing results from your most recent appointment(s)

As stated earlier, benefits beyond 08/01/2022 have been suspended until the requested information is received in our office. Future benefits cannot be determined until proof of continued disability is received which may include requesting additional information from you or your physician(s). Your immediate response in providing the information requested will assist in our determination of your eligibility for further benefits.

Please submit this information by 08/31/2022. If we do not receive this information by 08/31/2022 your claim will be closed.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Jacqulynn Brown
10150 FM 14
TYLER, TX 75706

Date: Mon Aug 01 06:00:57 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: jbrown@jsfoods.com
Message-ID: <1243963753.18.1659351657283.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-confirmation from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 1, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

Please refer to your Short Term Disability approval letter of 07/29/2022 in which we advised additional medical information would be needed if you are/were unable to return to work. As of this date, we have not received any updated medical information and your benefits have been suspended.

As stated in your policy, benefits are payable when proof of continued disability and regular care of a physician are given to the Company.

We must receive the following information in order to continue our review of your claim:

- Updated Office and Treatment notes to include any testing results from your most recent appointment(s)

As stated earlier, benefits beyond 08/01/2022 have been suspended until the requested information is received in our office. Future benefits cannot be determined until proof of continued disability is received which may include requesting additional information from you or your physician(s). Your immediate response in providing the information requested will assist in our determination of your eligibility for further benefits.

Please submit this information by 08/31/2022. If we do not receive this information by 08/31/2022 your claim will be closed.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Jacqulynn Brown
10150 FM 14
TYLER, TX 75706

Date: Fri Jul 29 11:00:32 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
E-confirmation from Lincoln Financial Group
Message-ID: <15328743332.3.1659110432432.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 29, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We are writing to you regarding your claim for Short Term Disability benefits. We previously approved benefits to 07/18/2022 and have received additional medical documentation for consideration of additional benefits.

Based on the information received, your benefits have been extended to 08/01/2022. To consider benefits beyond this date, you will need to provide our office with current medical documentation.

Medical evidence may include office and treatment notes, progress notes, testing and/or laboratory results, x-ray results, therapy notes and operative reports. This documentation may be obtained from your physician and should be provided at your own expense. A note from your physician, without any supporting medical documentation, may not be sufficient to consider further benefits.

If you return to work prior to this date, please notify our office as soon as possible to avoid an overpayment.

To expedite claim processing, please feel free to fax information toll-free to our office at 1-877-843-3950.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Jacqulynn Brown
10150 FM 14
TYLER, TX 75706

Date: Fri Jul 29 11:00:44 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: jbrown@jsfoods.com
Message-ID: <1148052349.8.1659110444683.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, STD 1**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 29, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We are writing to you regarding your claim for Short Term Disability benefits. We previously approved benefits to 07/18/2022 and have received additional medical documentation for consideration of additional benefits.

Based on the information received, your benefits have been extended to 08/01/2022. To consider benefits beyond this date, you will need to provide our office with current medical documentation.

Medical evidence may include office and treatment notes, progress notes, testing and/or laboratory results, x-ray results, therapy notes and operative reports. This documentation may be obtained from your physician and should be provided at your own expense. A note from your physician, without any supporting medical documentation, may not be sufficient to consider further benefits.

If you return to work prior to this date, please notify our office as soon as possible to avoid an overpayment.

To expedite claim processing, please feel free to fax information toll-free to our office at 1-877-843-3950.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Jacqulynn Brown
10150 FM 14
TYLER, TX 75706

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: 68 yrs, 10 mo at the time of visit
Seen by Clinton Carter, M.D.

### Date of Encounter: 07/26/2022

### Exam Reason (CC): Cardiac Recovery

**Subjective**

1. CAD (coronary artery disease)
    - STEMI in end of Sept and CABG in first of Oct 2021
    - Repeat STEMI in 12/2021 that was able to be stented
    - Cardiac rehab was interrupted by the second MI as well as complicating the mental health recovery
    - He attempted to return to work to find that his concentration, memory, speed of calculating was inhibited and he was working slowly and more prone to mistakes
    - He has been on STD for further physical and mental rehab for almost 12 weeks
    - The STD company stopped paying at 10 weeks, and he needs a continuance form filled out today
    - He has been slowly progressing in his physical endurance, shortness of breath, and ability to do ADL's
    - He has also been gradually improving in depression and anxiety
    - He still feels anxious about returning to his position but is due to speak with JSF/HR to discuss options
2. Atrial fibrillation
    - Had Left Atrial Appendage removed during CABG
    - Just cleared to stop Eliquis last week at cardiology follow up
3. Hypothyroid

    Doing well at the increased dose of 75
4. Major depressive disorder
    - Did not feel that the Lexapro was helping so stopped it
    - Still on Welbutrin 300 daily
    - Feels that he is gradually improving
    - Still minimal libido and his wife is nervous for that level of exertion. She is also not comfortable with him being outside alone, etc.
    - Only needing xanax 3-4 times per month
5. Insomnia

    Has been sleeping fairly well, for the most part, with Temazepam

**Allergy: NKDA**

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 119/66 HR: 78 Temp: 97.1 °F RR: 16 Ht: 68 in. Wt: 244 lbs. [+6.6 from 237.4 lbs on 04/20/2022]
BMI: 37.1 [+3.99 from 33.11 on 04/20/2022] $O_2$: 97

Data:

- 3/2021: Moderna Covid
- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019
- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Assessment/Plan**

1. CAD (coronary artery disease) I25.10
    - Continue physical and mental rehab
    - STD continuance form filled out. Recommend extend until at least 8/1/22
    - Follow up with cardiology last week was good
    - Continue meds
    - Will follow
2. Atrial fibrillation I48.91
    - Continue meds
    - Will follow
3. Hypothyroid E03.9
    Continue Levo 75
4. Major depressive disorder F32.9
    - Continue Welbutrin
    - Will follow
5. Insomnia G47.00
    Continue Temazepam PRN

Electronically signed by Clinton Carter, M.D. on 07/26/2022 3:29 pm in ElationHealth

Amended and electronically signed off by Clinton Carter, M.D. on 07/26/2022 3:30 pm.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**, PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## SHORT-TERM CONTINUANCE OF DISABILITY

TO FACILITATE PROMPT SERVICE TO YOUR PATIENT, PLEASE ANSWER ALL QUESTIONS COMPLETELY. PLEASE COMPLETE AND RETURN BY ________________. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

**Attending Physician's Statement** Claim Number ________

1. Patient's Name William Reynolds Date of Birth ____
2. Diagnosis, nature of sickness or injury that causes functional impairments (describe complications, if any)
Acute MI Oct 2021 c̄ CABG, then blocked graft c̄ 2nd MI and stent, caused interrupted cardiac rehab, depression / fatigue, decreased concentration
3. a. Date of first treatment 9/28/21
   b. Date of most recent treatment 4/28/22, 7/26/22
   c. Frequency of treatments Rehab, PT, follow ups PCP / Cardiology
   d. Type of treatment rendered "
   f. Type and dates of recent diagnostic testing CXR 4/21/22
   e. Is surgery scheduled? If so, when? had CABG 10/1/21, Stent 12/19/21
4. a. Is the patient incapable of performing the duties of a Financial Analyst? ☐ Yes ☒ No
   b. If yes, from (date) ________ to (date) ________
   c. Is the inability total or partial (some restriction or light duty)? ☒ Total ☐ Partial ☐ N/A
5. What specifically prevents the patient from performing these duties?
   a. Limitations (what is the patient incapable of doing based on the impairments listed above?)
   Concentration, short term memory
   b. Restrictions (what activities must the patient avoid due to substantial risk of medical harm?)
   Ability to perform high level analysis
6. Remarks or comments (please include the basis of your conclusions above)
working on returning if possible, but following c̄ employer as well

Date (M/D/Y) 7/26/22
Signed (Attending Physician) [signature]
Degree/Specialty MD
Address 2385 Oak Alley
City, State, Zip Tyler TX 75701
Phone 903 630-7130 Fax 903-705-0992

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

## Patient Name: William Reynolds

D.O.B.: 68 yrs, 10 mo at the time of visit
Seen by Clinton Carter, M.D.

### Date of Encounter: 07/26/2022

### Exam Reason (CC): Cardiac Recovery

**Subjective**

1. CAD (coronary artery disease)
   - STEMI in end of Sept and CABG in first of Oct 2021
   - Repeat STEMI in 12/2021 that was able to be stented
   - Cardiac rehab was interrupted by the second MI as well as complicating the mental health recovery
   - He attempted to return to work to find that his concentration, memory, speed of calculating was inhibited and he was working slowly and more prone to mistakes
   - He has been on STD for further physical and mental rehab for almost 12 weeks
   - The STD company stopped paying at 10 weeks, and he needs a continuance form filled out today
   - He has been slowly progressing in his physical endurance, shortness of breath, and ability to do ADL's
   - He has also been gradually improving in depression and anxiety
   - He still feels anxious about returning to his position but is due to speak with JSF/HR to discuss options
2. Atrial fibrillation
   - Had Left Atrial Appendage removed during CABG
   - Just cleared to stop Eliquis last week at cardiology follow up
3. Hypothyroid

   Doing well at the increased dose of 75
4. Major depressive disorder
   - Did not feel that the Lexapro was helping so stopped it
   - Still on Welbutrin 300 daily
   - Feels that he is gradually improving
   - Still minimal libido and his wife is nervous for that level of exertion. She is also not comfortable with him being outside alone, etc.
   - Only needing xanax 3-4 times per month
5. Insomnia

   Has been sleeping fairly well, for the most part, with Temazepam

**Allergy: NKDA**

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 119/66 HR: 78 Temp: 97.1 °F RR: 16 Ht: 68 in. Wt: 244 lbs. [+6.6 from 237.4 lbs on 04/20/2022]
BMI: 37.1 [+3.99 from 33.11 on 04/20/2022] $O_2$: 97

Data:
- 3/2021: Moderna Covid
- High calcium score in Sept 2019
- Normal chemical nuclear stress test - 2019
- Colonoscopy: 2021
- Myriad: 3/2021- NOT FLAG
- Echo: 1/7/22: EF 65% and evidence of diastolic dysfunction Grade II

**Assessment/Plan**

1. CAD (coronary artery disease) I25.10
    - Continue physical and mental rehab
    - STD continuance form filled out. Recommend extend until at least 8/1/22
    - Follow up with cardiology last week was good
    - Continue meds
    - Will follow
2. Atrial fibrillation I48.91
    - Continue meds
    - Will follow
3. Hypothyroid E03.9

   Continue Levo 75
4. Major depressive disorder F32.9
    - Continue Welbutrin
    - Will follow
5. Insomnia G47.00

   Continue Temazepam PRN

Electronically signed by Clinton Carter, M.D. on 07/26/2022 3:29 pm in ElationHealth

Amended and electronically signed off by Clinton Carter, M.D. on 07/26/2022 3:30 pm.

Lincoln Financial Group®

The Lincoln National Life Insurance Company, PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## SHORT-TERM CONTINUANCE OF DISABILITY

TO FACILITATE PROMPT SERVICE TO YOUR PATIENT, PLEASE ANSWER ALL QUESTIONS COMPLETELY. PLEASE COMPLETE AND RETURN BY ______________. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

**Attending Physician's Statement** Claim Number ______________

1. Patient's Name William Reynolds Date of Birth ______________
2. Diagnosis, nature of sickness or injury that causes functional impairments (describe complications, if any)
   Acute MI Oct 2021 c̄ CABG, then blocked graft c̄ 2nd MI and stent, caused interrupted cardiac rehab, depression fatigue, decreased concentration
3. a. Date of first treatment 9/28/21
   b. Date of most recent treatment 4/28/22, 7/26/22
   c. Frequency of treatments Rehab, PT, follow ups PCP / Cardiology
   d. Type of treatment rendered ______________
   f. Type and dates of recent diagnostic testing CXR 4/21/22
   e. Is surgery scheduled? If so, when? had CABG 10/1/21, Stent 12/19/21
4. a. Is the patient incapable of performing the duties of a Financial Analyst? ☐ Yes ☒ No
   b. If yes, from (date) ______________ to (date) ______________
   c. Is the inability total or partial (some restriction or light duty)? ☒ Total ☐ Partial ☐ N/A
5. What specifically prevents the patient from performing these duties?
   a. Limitations (what is the patient incapable of doing based on the impairments listed above?)
   Concentration, short term memory
   b. Restrictions (what activities must the patient avoid due to substantial risk of medical harm?)
   Ability to perform high level analysis
6. Remarks or comments (please include the basis of your conclusions above)
   working on returning if possible, but following c̄ employer as well

Date (M/D/Y) 7/26/22

Signed (Attending Physician) [signature]

Degree/Specialty MD

Address 2385 Oak Alley

City, State, Zip Tyler TX 75701

Phone 903 630-7130 Fax 903-705-0992

# William Reynolds - 10478

## Current

| Plan | Type | Begin | Options | Coverage: Coverage Including Amount Subject To EOI | Coverage: Amount | Contribution: Employee Pre Tax | Contribution: Employee After Tax | Contribution: Employer |
|---|---|---|---|---|---|---|---|---|
| 401K | Defined Contribution | 01/01/2020 | | 0.000000 | 0.000000 | 5.00 | 0.00 | 0.00 |
| Basic Life Insurance | Employee Life | 01/01/2022 | | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 |
| Dental Plan | Dental | 02/20/2022 | Employee & Spouse | 0.00 | 0.00 | 256.88 | 0.00 | 0.00 |

| Dependent | Gender | Relationship | Birthdate | Student | Disabled | Start | End |
|---|---|---|---|---|---|---|---|
| REYNOLDS, SAMANTHA | Female | Spouse | | | | 02/20/2022 | |

| Plan | Type | Begin | Options | Coverage: Coverage Including Amount Subject To EOI | Coverage: Amount | Contribution: Employee Pre Tax | Contribution: Employee After Tax | Contribution: Employer |
|---|---|---|---|---|---|---|---|---|
| Long Term Disability | Disability | 03/06/2022 | | 59,342.40 | 59,342.40 | 0.00 | 0.00 | 0.00 |
| Medical Plan 500 | Health | 02/20/2022 | Employee & Spouse | 0.00 | 0.00 | 6,881.16 | 0.00 | 7,445.88 |

| Dependent | Gender | Relationship | Birthdate | Student | Disabled | Start | End |
|---|---|---|---|---|---|---|---|
| REYNOLDS, SAMANTHA | Female | Spouse | | | | 02/20/2022 | |

| Plan | Type | Begin | Options | Coverage: Coverage Including Amount Subject To EOI | Coverage: Amount | Contribution: Employee Pre Tax | Contribution: Employee After Tax | Contribution: Employer |
|---|---|---|---|---|---|---|---|---|
| Spouse Voluntary Life | Dependent Life | 01/01/2022 | | 50,000.00 | 50,000.00 | 0.00 | 408.00 | 0.00 |

| Dependent | Gender | Relationship | Birthdate | Student | Disabled | Start | End |
|---|---|---|---|---|---|---|---|
| REYNOLDS, SAMANTHA | Female | Spouse | | | | 01/01/2022 | |

| | | | | Coverage | | Contribution | | |
|---|---|---|---|---|---|---|---|---|
| Plan | Type | Begin | Options | Coverage Including Amount Subject To EOI | Amount | Employee Pre Tax | Employee After Tax | Employer |
| Short Term Disability | Disability | 03/06 /2022 | | 59,342.40 | 59,342.40 | 0.00 | 0.00 | 0.00 |
| Vision Plan II | Vision | 02/20 /2022 | Employee & Spouse | 0.00 | 0.00 | 156.00 | 0.00 | 0.00 |

| Dependent | Gender | Relationship | Birthdate | Student | Disabled | Start | End |
|---|---|---|---|---|---|---|---|
| REYNOLDS, SAMANTHA | Female | Spouse | | | | 02/20/2022 | |

| | | | | Coverage | | Contribution | | |
|---|---|---|---|---|---|---|---|---|
| Plan | Type | Begin | Options | Coverage Including Amount Subject To EOI | Amount | Employee Pre Tax | Employee After Tax | Employer |
| Voluntary Life | Employee Life | 03/06 /2022 | | 140,000.00 | 140,000.00 | 0.00 | 2,570.57 | 0.00 |

**Annual salary: 98,904.00**

**Total employee cost: 67,857.74**

**Total employer cost: 52,121.16**

**Total compensation including salary and estimated benefits: 151,025.16**

## Contribution History

| | | | Employee | Employer | |
|---|---|---|---|---|---|
| Benefit Plan | Payroll Year | Date | Pre Tax | Contribution | Total Contribution |
| 401K | 2022 | 01/07/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 01/14/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 01/21/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 01/28/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 02/04/2022 | 242.78 | 145.67 | 388.45 |
| 401K | 2022 | 02/11/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 02/18/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 02/25/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 03/04/2022 | 92.78 | 55.67 | 148.45 |

| Benefit Plan | Payroll Year | Date | Employee Pre Tax | Employer Contribution | Total Contribution |
|---|---|---|---|---|---|
| 401K | 2022 | 03/11/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 03/18/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 03/25/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 04/01/2022 | 92.78 | 55.67 | 148.45 |
| 401K | 2022 | 04/08/2022 | 95.10 | 57.06 | 152.16 |
| 401K | 2022 | 04/15/2022 | 95.10 | 57.06 | 152.16 |
| 401K | 2022 | 04/22/2022 | 95.10 | 57.06 | 152.16 |
| 401K | 2022 | 04/29/2022 | 95.10 | 57.06 | 152.16 |
| 401K | 2022 | 05/06/2022 | 95.10 | 57.06 | 152.16 |
| 401K | 2022 | 05/13/2022 | 95.10 | 57.06 | 152.16 |
| Total for: 401K | | | 1,926.74 | 1,156.07 | 3,082.81 |
| Total | | | 1,926.74 | 1,156.07 | 3,082.81 |

## Vesting As Of July 20, 2022

Date: Tue Jul 19 08:35:32 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
Message-ID: <15888123326.8.1658237732322.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 19, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

Please refer to your Short Term Disability approval letter of 05/25/2022 in which we advised additional medical information would be needed if you are/were unable to return to work. As of this date, we have not received any updated medical information and your benefits have been suspended.

As stated in your policy, benefits are payable when proof of continued disability and regular care of a physician are given to the Company.

We must receive the following information in order to continue our review of your claim:

- Updated Office and Treatment notes to include any testing results from your most recent appointment(s)

As stated earlier, benefits beyond 07/18/2022 have been suspended until the requested information is received in our office. Future benefits cannot be determined until proof of continued disability is received which may include requesting additional information from you or your physician(s). Your immediate response in providing the information requested will assist in our determination of your eligibility for further benefits.

Please submit this information by 08/10/2022. If we do not receive this information by 08/10/2022 your claim will be closed.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Brandy Jackson
10150 FM 14
TYLER, TX 75706

Date: Tue Jul 19 08:35:35 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: bjackson@jsfoods.com
Message-ID: <88472478.13.1658237735636.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 19, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 00001021227300000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

Please refer to your Short Term Disability approval letter of 05/25/2022 in which we advised additional medical information would be needed if you are/were unable to return to work. As of this date, we have not received any updated medical information and your benefits have been suspended.

As stated in your policy, benefits are payable when proof of continued disability and regular care of a physician are given to the Company.

We must receive the following information in order to continue our review of your claim:

- Updated Office and Treatment notes to include any testing results from your most recent appointment(s)

As stated earlier, benefits beyond 07/18/2022 have been suspended until the requested information is received in our office. Future benefits cannot be determined until proof of continued disability is received which may include requesting additional information from you or your physician(s). Your immediate response in providing the information requested will assist in our determination of your eligibility for further benefits.

Please submit this information by 08/10/2022. If we do not receive this information by 08/10/2022 your claim will be closed.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

CC: John Soules Foods, Inc. - TX Location
ATTN: Brandy Jackson
10150 FM 14
TYLER, TX 75706

Date: Wed Jun 01 08:50:33 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
Message-ID: <17612524332.13.1654091433798.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 25, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

This letter is to advise you your claim for Short Term Disability benefits has been approved beginning on 05/07/2022.

The policy issued to John Soules Foods, Inc. - TX Location, has a 3 day elimination period during which no benefits are payable. Your benefits will begin on 05/10/2022. Your first payment will be received separately within the next business week. Subsequent payments will be issued weekly or biweekly depending on your specific policy language.

Based on your Basic Weekly Earnings, your benefit will equal $1,141.00. However, if you are receiving Other Income Benefits as defined by your policy, your benefit may be reduced based on policy provisions.

At this time your benefits are being allowed to 07/18/2022. This date represents the recovery period that has been suggested by your physician or the usual and customary recovery period for your disability and occupation.

If you are unable to return to work on this date due to your disability, please provide the attached form to your doctor to complete and return to Lincoln Financial for consideration of additional disability benefits; or provide medical documentation that supports continued disability.

Medical documentation may include, but is not limited to, office and treatment notes, physical examination notes, progress notes, testing and or laboratory results, operative reports, hospitalization records, all types of therapy notes and consultations. This information may be obtained from your physicians and should be provided at your own expense. A note from your

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

physician without any supporting documentation may not be sufficient to approve further benefits.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Enclosure(s): Group Continuance DISB APS
CC: John Soules Foods, Inc. - TX Location
ATTN: Christina Long
10150 FM 14
TYLER, TX 75706

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

## GROUP CONTINUANCE OF DISABILITY
## (PLEASE see FRAUD NOTICES attached)

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
John Soules Foods, Inc. - TX Location IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

### Attending Physician's Statement

1. Patient's Name William Reynolds ______ Date of Birth ______
2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any)

______

______

3. a) Date of First Treatment ______
   b) Date of Most Recent Treatment ______
   c) Frequency of Treatments ______
   d) Type of Treatment Rendered ______
   e) Is surgery scheduled? If so, when? ______
4. The patient has been continuously Totally Disabled (unable to perform regular job) from ______ to ______
   The patient has been continuously Partially Disabled (some restrictions or light duty) from ______ to ______
   If the patient is still disabled, when should the patient be able to return to work? ______
5. Remarks or Comments: ______

______

6. List Restrictions and Limitations: ______

______

7. Physical Impairment:
- ☐ Class 1 – No limitation – capable of heavy work – No restrictions (1-10%)
- ☐ Class 2 – Medium manual activity (15 – 30%)
- ☐ Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
- ☐ Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
- ☐ Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments (if applicable)
- ☐ Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)
- ☐ Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
- ☐ Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
- ☐ Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
- ☐ Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date ______ (Month Day Year) Signed ______ (Attending Physician, No Stamps, please) /Degree/Specialty ______

Street Address ______

City, State ______

Phone Number ______

Fax Number ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫį́óóǫéą̨́ǫąíę́ę.

Date: Wed Jun 01 08:50:39 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: clong@jsfoods.com
Message-ID: <1817632772.18.1654091439406.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 25, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

This letter is to advise you your claim for Short Term Disability benefits has been approved beginning on 05/07/2022.

The policy issued to John Soules Foods, Inc. - TX Location, has a 3 day elimination period during which no benefits are payable. Your benefits will begin on 05/10/2022. Your first payment will be received separately within the next business week. Subsequent payments will be issued weekly or biweekly depending on your specific policy language.

Based on your Basic Weekly Earnings, your benefit will equal $1,141.00. However, if you are receiving Other Income Benefits as defined by your policy, your benefit may be reduced based on policy provisions.

At this time your benefits are being allowed to 07/18/2022. This date represents the recovery period that has been suggested by your physician or the usual and customary recovery period for your disability and occupation.

If you are unable to return to work on this date due to your disability, please provide the attached form to your doctor to complete and return to Lincoln Financial for consideration of additional disability benefits; or provide medical documentation that supports continued disability.

Medical documentation may include, but is not limited to, office and treatment notes, physical examination notes, progress notes, testing and or laboratory results, operative reports, hospitalization records, all types of therapy notes and consultations. This information may be obtained from your physicians and should be provided at your own expense. A note from your

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

physician without any supporting documentation may not be sufficient to approve further benefits.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
1800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Enclosure(s): Group Continuance DISB APS
CC: John Soules Foods, Inc. - TX Location
ATTN: Christina Long
10150 FM 14
TYLER, TX 75706

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

## GROUP CONTINUANCE OF DISABILITY
## (PLEASE see FRAUD NOTICES attached)

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
John Soules Foods, Inc. - TX Location IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

### Attending Physician's Statement

1. Patient's Name William Reynolds ______ Date of Birth ______
2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any)
______
______
3. a) Date of First Treatment ______
   b) Date of Most Recent Treatment ______
   c) Frequency of Treatments ______
   d) Type of Treatment Rendered ______
   e) Is surgery scheduled? If so, when? ______
4. The patient has been continuously Totally Disabled (unable to perform regular job) from ______ to ______
   The patient has been continuously Partially Disabled (some restrictions or light duty) from ______ to ______
   If the patient is still disabled, when should the patient be able to return to work? ______
5. Remarks or Comments: ______
______
6. List Restrictions and Limitations: ______
______
7. Physical Impairment:
- ☐ Class 1 – No limitation – capable of heavy work – No restrictions (1-10%)
- ☐ Class 2 – Medium manual activity (15 – 30%)
- ☐ Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
- ☐ Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
- ☐ Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments (if applicable)
- ☐ Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)
- ☐ Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
- ☐ Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
- ☐ Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
- ☐ Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date ______ Signed ______ /Degree/Specialty ______
(Month Day Year) (Attending Physician, No Stamps, please)

Street Address ______

City, State ______

Phone Number ______

Fax Number ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Koji̜' hódíílnih áǫį̨óóǫéąą́ǫąíę́ę.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 16, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our initial review of your claim for Short Term Disability and have determined additional information is needed prior to benefits being considered.

To determine disability, we must evaluate medical documentation to determine if your condition precludes you from performing the main duties of your occupation.

Medical documentation includes, but is not limited to, office and treatment records, testing results, therapy notes, consultation reports and operative reports. A note from your physician, without any supporting medical documentation as outlined above, may not be sufficient to consider your claim.

We are currently reviewing your medical records from you physician.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Date: Tue May 17 08:45:53 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To: clong@jsfoods.com
Message-ID: <642056770.38.1652795153793.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge®

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 16, 2022

JOHN SOULES FOODS, INC. - TX LOCATION
ATTN Christina Long
10150 FM 14
TYLER, TX 75706

Re: Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Christina Long:

We have completed our initial review of the claim for Short Term Disability filed by Mr. Reynolds and have determined additional information is needed prior to benefits being considered.

We are currently reviewing all medical records from his physician.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Kelly Gorum
800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Tue May 17 08:45:57 CDT 2022
From: Kelly Gorum <Kelly.Gorum@lfg.com>
To:
E-confirmation from Lincoln Financial Group
Message-ID: <2016922012431652795157215.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1220042749 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 16, 2022

WILLIAM J REYNOLDS

Re: Policyholder: John Soules Foods, Inc. - TX Location
Policy Number: 000010212273000000
Claim Number: 1220042749
Claimant: William Reynolds

Dear Mr. Reynolds:

We have completed our initial review of your claim for Short Term Disability and have determined additional information is needed prior to benefits being considered.

To determine disability, we must evaluate medical documentation to determine if your condition precludes you from performing the main duties of your occupation.

Medical documentation includes, but is not limited to, office and treatment records, testing results, therapy notes, consultation reports and operative reports. A note from your physician, without any supporting medical documentation as outlined above, may not be sufficient to consider your claim.

We are currently reviewing your medical records from you physician.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

©2022 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Kelly Gorum
800-423-2765
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employer

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

*Please submit a written job description for the employee's position with this claim form
*Please submit a copy of this employee's enrollment statement with this claim form

**1. This claim is for:**

| Full Name (First) | (M.I.) | (Last Name) |
|---|---|---|
| William | | Reynolds |

| Social Security Number | Coverage Start Date |
|---|---|
| | 01/01/2019 |

**2. Employee's Coverage & Policy**

| Organization Name | Insurance Class |
|---|---|
| John Soules Foods | 2 |

| Group ID | Policy Number |
|---|---|
| | 000010212273 |

| Billing Location | Claim Location |
|---|---|
| Tyler, TX | Tyler, TX |

**3. Describe Employee's Role**

Job Title: Sales Reporting Analyst

Description of Duties: heavy lifting, walking, bending, kneeling, stooping, reaching, climbing, twisting, standing, pulling

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Retirement Income | | / / | / / | / / |
| Workers' Comp | | / / | / / | / / |
| Salary Continuance | | / / | / / | / / |
| State Disability | | / / | / / | / / |
| Other Disability pay | | / / | / / | / / |

Have you considered job accommodations? ☐ Yes ■ No

Injury work related? ☐ Yes ■ No

| Date hired | Hours worked in a standard day |
|---|---|
| 02/13/1997 | 8 |

| Date last worked | Hours worked in a standard week |
|---|---|
| 05/06/2022 | 40 |

| Date back to work full-time | Hours worked on day last worked |
|---|---|
| / / | 8 |

| Earnings | Frequency (W/M/Y etc.) |
|---|---|
| $ 1902 | weekly |

**5. Employer Contact**

Employer Contact Name: Christina Long

Street Address: 10150 FM 14

| City | State | Zip Code |
|---|---|---|
| Tyler | TX | 75706 |

| Phone Number | Fax Number |
|---|---|
| (903)592-9800 ext. 270 | (903)363-1107 |

Email Address: clong@jsfoods.com

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: [signature] Date: 5/11/22

Print Name: Christina Long

(Please see FRAUD NOTICES attached)

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

FAX
www.elationemr.com

Sent on 05/06/2022 at 01:49 PM CDT

# Clinical fax

ATTN: Lincoln Financial Group

From: Clinton Carter, M.D.

Subject: STD claim form

---

Note: Clinton Carter, M.D. has also prepared an interactive patient chart online with additional clinical content.

**To access chart:**
1. Go to **elationemr.com/fax**
2. Enter the **Reference Code** on this fax

**Reference Code:**

**YJB-SKC-YUQ**

**Confidentiality Notice**
The information contained in this facsimile transmission is privileged and confidential, and may contain confidential health information that is legally protected. All information in this transmission is intended solely for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42 CFR, Part 2, and 45 CFR, Part 160). If you have received this fax in error, please notify the sender immediately by calling the phone number above to arrange for return or destruction of these documents.

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

May 6, 2022

Lincoln Financial Group
8801 Indian Hills Dr, Omaha, NE 68114
Office: 800-423-2765
Fax: 877-843-3950

**Re: William "Bill" Reynolds (DOB: 09/11/1953)**

**Subject: STD claim form**

(No Message Body)

Sent by Melissa Roddy, RN on 05/06/2022 1:48 pm in ElationHealth .

**Note: Interactive patient chart available online**

To accompany this letter, Melissa Roddy, RN has prepared an interactive patient chart for you to view online. Anyone in your practice can access the chart following the instructions below:

1. Go to **elationemr.com/fax**
2. Enter this Reference Code: **YJB-SKC-YUQ**

**Interactive Patient Chart Contents:**

- 05/06/2022 Medical Form Report *Lincoln Financial Short term disability form*
- Patient Demographics *Address, Insurance Info, etc.*
- 04/20/2022 Office Visit Note *cc: fatigue/cough. 1. fatigue 2. uri sx 3. shortness of breath 4. Major depressive disorder*
- 04/28/2022 Office Visit Note *cc: FMLA evaluation. 1. Stress*

**Replies:**
None

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

# Patient Demographic Information

*As of 05/06/2022, in ElationHealth*

| Patient Name | Sex | Birthdate | SSN |
|---|---|---|---|
| William "Bill" Reynolds | M | 09/11/1953 | |

| Address |
|---|
| |

| Contact Details |
|---|
| Cell Phone:<br>Phone 2:<br>Email: |

| Primary Provider in Practice | Preferred Language | Preferred Method of Contact |
|---|---|---|
| Clinton Carter, M.D. | | sms |

| Primary Insurance | |
|---|---|
| Plan Name: | EBC-JSF |
| Group No.: | JSF-ES |
| Member No.: | H1002000003-01 |

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William "Bill" Reynolds

D.O.B.: 68 yrs, 7 mo at the time of visit
Seen by Clinton Carter, M.D.

**Date of Encounter: 04/28/2022**

**Exam Reason (CC): FMLA evaluation**

**Subjective**

1. Stress
   - Bill has been through a lot in the last 7 months
   - He had a heart attack and had Bypass surgery in Sept/Oct
   - He was doing cardiac rehab and then had another small heart attack requiring a stent to the anastomosis of the LIMA to the LAD
   - This greatly inhibited his ability/motivation to do cardiac rehab
   - It also halted the process he was making with depression, etc.
   - He went back to work as soon as possible both times, as he feels that he is the only one that really knows how to do his job(s)
   - He has been under increased scrutiny at work since returning the second time that he is making more mistakes. He feels that it is that there is more volume so mistakes appear more frequent without in increase in the low % of mistakes made, but fears that he now has the reputation of being mistake prone instead of the one people went to with problems
   - He is now feeling extra pressure and is second guessing himself, which slows him down and likely causes more mistakes. He has had several anxiety attacks prior to going to work, where he was sure that he was going to die that day. Fortunately, nothing physically deleterious took place
   - He does not feel that he ever really recovered from the 2 heart attacks or the subsequent depression/anxiety and he is now having difficulty fulfilling his work obligations
   - He needs to stop and do the physical and mental rehab that is necessary to function at his current position

**Allergy: NKDA**

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 107/55 HR: 73 Temp: 98.5 °F $O_2$: 100

PE: GENERAL: NAD, Well appearing
EYES: No injection
RESP: NAD;
SKIN: No visible rash
PSYCH: A/O x 3; Denies SI/HI

Data:
- Christus Health, chest pain 09/28/2021
- Operative Report, cardiac cath 12/20/2021

**Assessment**

1. Major depressive disorder F32.9
   - Greatly exacerbated by the open heart surgery and then the secondary heart attack
   - Complicated by incomplete rehab
   - Amplified by increased pressure at work as the workload changes and increases
   - Recommend some time off of work for physical rehab up to twice a day as well as time to focus on mental health with counseling, meds, exercise, etc
   - FMLA paperwork delivered by patient today to be filled out.

Electronically signed by Clinton Carter, M.D. on 04/30/2022 3:21 pm in ElationHealth

MyMD Select Tyler
Clint Carter, MD; A Jorden, MD; Stephanie Carter PA-C; Danyel Kush, FNP; Rebecca Parker, FNP
2385 Oak Alley, Tyler, TX 75703
Office: 903-630-7130; Fax: 903-705-0992

## Office Visit Note

ElationHealth

### Patient Name: William "Bill" Reynolds

D.O.B ; 68 yrs, 7 mo at the time of visit
Seen by DANYEL KUSH, FNP

**Date of Encounter: 04/20/2022**

**Exam Reason (CC): fatigue/cough**

**Subjective**

1. fatigue
    - pt states he has been having increased feeling of fatigue for the last 7 months. He feels since CABG in december he has not felt the same.
    - prior to that he has was placed on lexapro in oct and feels like that with the wellbutrin has made him feel more "flat and no emotion"
    - He endorses anhedonia, increased sleep, decreased appettite and at times feeling of sadness.
    - Has tried to wean off wellbutrin in the past; did not feel right.
    - He is also concerned that his thyroid level he is concerned it is causing his fatigue
    - states he is sleeping well and using CPAP, most nights feels rested.
    - wife has noticed that he is not himself. He denies having any issues in marriage and says homelife is great
    - has talked to Sara in the past and did not feel much difference
2. uri sx
    - has had sore throat, dry cough, headache for the last 3 days. No fever or chills
    - He feels like the shortness of breath is slightly worse over the last 3 days, occassional wheeze
    - no recent travle, no others ill.
3. shortness of breath
    - he has declined cardiac rehab in the past since CABG, he feels that after he did it last time that is what cause last heart attack.
    - He also states he just does not feel motivated andlazy to do it.
    - Has been trying to walk 30 min a day and do some yard work but reports having to stop frequently. He admits this has caused increased frustration for him
    - Cardiology saw him in Feb 2022 and told him ok to exercise 30 min a day; cardiac workup at that time was normal.
    - he denies any chest pain, palpitations or swelling in LE
4. Major depressive disorder

**Allergy: NKDA**

PMH:
- Preventative health care
- Atrial fibrillation
- BPH (benign prostatic hyperplasia)
- Insomnia
- Major depressive disorder
- Elevated hemoglobin A1c
- Elevated LDL cholesterol level
- OSA (obstructive sleep apnea)
- Insulin resistance
- Low vitamin D level
- CAD (coronary artery disease)
- Hx of CABG
- Hypothyroid
- Wears hearing aid in both ears

PSH:
- unremarkable
- Left Biceps Tendon repair 2018
- Cataract Repair 5/2021
- CABG x 2 9/2021

FH:
- Mother: FH: Hypertension
- Father: Bone cancer

SH:
- Married
- Sales Analysis

Habits:
- Never smoker (as of: 03/24/2021)
- ETOH: Denies

Meds:
- *Doc'd D/C* Levothyroxine Sodium 50 MCG Tab TAKE ONE TABLET BY MOUTH EVERY MORNING ON AN EMPTY STOMACH because: dosage increased (Rebecca Ellspermann, PA-C)
- *Doc'd D/C* Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally daily because: frequeny change (Rebecca Ellspermann, PA-C)
- *Doc'd New* Metoprolol Succinate ER 50 mg Tab ER 24hr 1 tablet orally twice daily (Prescriber Not Specified)
- *Doc'd D/C* Flexeril 10 mg Tab 1 tablet orally 3 times per day as needed for muscle spasm because: no longer taking (Clinton Carter, M.D.)
- *Doc'd D/C* Flexeril 10 mg Tab 1 tablet orally 3 times per day as needed for muscle spasm because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Flonase Allergy Relief 50 MCG/ACT Suspension Nasal 2 sprays intranasally BID in each nostril x 1-2 weeks, then daily because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* predniSONE 20 mg Tab 2 tablets orally daily for 4 days because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* predniSONE 20 mg Tab 2 tablets orally daily for 4 days because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Robitussin AC 5-10 mL po q 4-6 hours prn cough or sore throat because: no longer taking (Rebecca Parker, FNP-C)
- *Doc'd D/C* Tessalon Perles 100 mg Cap 1 perl every 4-6 hours for cough because: no longer taking (Clinton Carter, M.D.)
- *Doc'd D/C* Ultram 50 mg Tab 1 tabs q 4-6 hours prn pain because: no longer taking (Armon Jorden, MD)
- *Doc'd D/C* Zithromax Z-Pak 250 mg Tab 2 tablets orally one time, then one tab daily for 4 days because: no longer taking (Rebecca Parker, FNP-C)
- *Doc'd New* Lexapro 10 mg Tab 1 tablet orally daily (Prescriber Not Specified)
- *Doc'd New* Vitamin D3 25 MCG (1000 UT) Cap 2 tablets orally daily (Prescriber Not Specified)
- ALPRAZolam 0.5 mg Tab sig: TAKE ONE-HALF TO ONE TABLET BY MOUTH EVERY DAY AS NEEDED FOR ANXIETY
- Clopidogrel Bisulfate 75 mg Tab
- Flomax 0.4 mg Cap sig: 1 capsule orally qhs
- Flovent HFA 110 MCG/ACT Aerosol Inhalation sig: 2 puffs inhaled orally 2 times per day
- InspiraChamber/Mouthpiece Device sig: use as directed
- Levothyroxine Sodium 75 MCG Tab sig: 1 tablet orally one time
- Lexapro 10 mg Tab sig: 1 tablet orally daily
- Lipitor 40 mg Tab sig: 1 tablet orally qhs
- metFORMIN ER 500 mg Tab ER 24hr sig: TAKE ONE TABLET BY MOUTH EVERY EVENING
- Metoprolol Succinate ER 50 mg Tab ER 24hr sig: 1 tablet orally twice daily
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution Inhalation sig: 1-2 puffs inhaled orally every 4 hours as needed for cough or wheeze
- Sildenafil Citrate 20 mg Tab sig: 1-3 tablets as needed 1 hour prior to intercourse
- Temazepam 30 mg Cap sig: 1 capsule orally daily at bedtime as needed
- Wellbutrin XL 300 mg Tab ER 24hr sig: 1 Tablet PO Daily
- Fluticasone Propionate 50 MCG/ACT Suspension Nasal sig: 1-2 sprays intranasally daily in each nostril as needed
- Vitamin D3 25 MCG (1000 UT) Cap sig: 2 tablets orally daily

ROS: GENERAL: As per HPI

**Objective**

**Vitals:**

BP: 126/76 HR: 64 Temp: 97.1 °F RR: 18 Ht: 71 in. Wt: 237.4 lbs. [-3.4 from 240.8 lbs on 03/15/2022]
BMI: 33.11 [-0.47 from 33.58 on 03/15/2022] $O_2$: 96

PE: GENERAL: NAD, Well appearing

EYES: No injection

RESP: NAD; occassional exp wheeze upper clears with cough; diminished slightly in lower lobes

CVS: RRR, no LE edema

SKIN: No visible rash

PSYCH: A/O x 3

Data:
- Labs collected from both RAC x1 and LAC x1 using sterile technique. Pt tolerated well with no complaints. Pt was fasting. ARoss, MA
- Covid and Flu test were also performed my Millie. Pt tolerated well with no complaints.
- SARS-CoV-2 IgA: Negative
- Rapid Influenza A: Negative
- Rapid Influenza B: Negative
- A Spacer along with verbal instructions given to Pt.
- albumin/creatinine ratio, urine, random, cbc w/auto diff with platelets, comprehensive metabolic panel, estradiol, free t4 (thyroxine), hemoglobin a1c with eag, insulin, lipid panel, psa, total, t4 (thyroxine), testosterone, thyroid peroxidase ab, tsh, third generation, vitamin b-12, vitamin d, 25 oh 02/21/2022
- NT-proBNP added- 2/21 by David @ CPL
- Echocardiogram, 1/6/22 03/11/2022

**Assessment**

1. Fatigue R53.83
   - male pre-pellet labs, A1C pending to be drawn today
   - WIll /ro metabolic cause before changing any medications
   - did discuss with him that some of the fatigue may be from his CABG and he was enc to do cardiac rehab; he declined
   - ALso discussed with him the potential for depression relate dto his chronic cardic issues. He admits that the CABG has changed his life and he feels like he is not the same
   - Suggested he see Sara; he has declines
   - Will order CXR to r/o CHF vs bronchitis since shortness of breath is slightly worse.
   - Had echo in March 2022; EF was 65% with abnormal diastolic function, trace mitral regurg, normal right ventricle function
   - case was also discussed with Dr carter
2. Shortness of breath R06.02

   CXR pending
3. Major depressive disorder F32.9
   - He feels like he may be a little more depressed since having his CABG in Dec 2021.
   - some days he feels like he has less motivation and flat affect than others.
   - He wants to come off lexapro and has stopped taking it for a few days but did not feel like it made a difference. Discussed to remain on current medications until labs and imaging results are back to r/o other cause for sx.

**Follow-up**

labs today, flu/covid swab per pt request
CXR pending
will call pt to discuss results

Electronically signed by DANYEL KUSH, FNP on 04/21/2022 10:43 am in ElationHealth

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

William | J | Reynolds | 
Full Name (First) | (M.I.) | (Last Name) | Social Security Number

71" | 237 | 186/76 | John Soules Foods
Height | Weight | Blood Pressure | Employer Name

## 2. Diagnosis

Z95.1 | CABG
Primary ICD diagnostic Code (Required) | Primary ICD diagnosis Description

F43.0 | Acute Stress Reaction
Secondary ICD Diagnosis Code | Secondary ICD Diagnosis Description

Pregnancy ___/___/___ First Treated ___/___/___ Estimated Delivery ___/___/___ Date of Delivery ☐ Vaginal ☐ C-Section

Acute MI Oct 2021 c̄ CABG; Rehab interrupted by second MI c̄ a stent. Returned to work without mental/physical recovery. Acute stress and physical fatigue making him unable to work.

Symptoms

Flat affect, fearful, SOB entering the office.

Objective Findings (include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings)

## 3. Disability Circumstances - Check if applicable

☒ Illness ☐ Injury ☐ Work Related

Date of:

| | | |
|---|---|---|
| 9/28/21 | 1/1/22 | 4/28/22 |
| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
| 9/28/21 | 4/28/21 | 1-2 mo 4hr but needs cardiac rehab and mental health |
| Initial Treatment | Most Recent Treatment | Next Treatment |
| Dates hospital confined: | 9/28/22 | to 10/8/22 |

If work related or injury, summarize circumstances

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)





PAGE 8/9 * RCVD AT 5/6/2022 2:50:52 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/4 * DNIS:8778433950 * CSID:Elation * ANI:4156925676 * DURATION (mm-ss):04-10

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 4. Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

Indicate frequency per day the listed activities below can be used performed using:
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ____ | Standing | ____ | Crouching | ____ | Overhead | ____ |
| 6-10 lbs. | ____ | Walking | ____ | Crawling | ____ | Desk Level | ____ |
| 11-25 lbs. | ____ | Sitting | ____ | Grasping | ____ | Below Waist | ____ |
| 26-50 lbs. | ____ | Balancing | ____ | Climbing | ____ | | |
| 51-100 lbs. | ____ | Stooping | ____ | Pushing | ____ | | |
| 100 + lbs. | ____ | Kneeling | ____ | Pulling | ____ | | |
| | | Fingering | ____ | Bending | ____ | | |

What job modifications would allow the patient to return to work?

## 5. Treatment

Cardiac rehab, physical therapy
mental health counseling

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

## 6. Prognosis

Good. Rehab was interrupted and returned to work anyway and got overwhelmed.

Describe the patients prognosis for recovery

## 7. Physician's Information

Clint Carter
Name

7385 Oak Alley
Street Address

Tyler
City

TX
State

75703
Zip Code

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

Date patient experienced loss of Cognitive Functioning: ____/____/________

Cardiac Rehab / home rehab daily
Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

7/18/22 to 8/1/22

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

903 630 7130
Phone Number

903 705 0992
Fax Number

[signature]
Signature

5/5/22
Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)



Electronically signed by Clinton Carter, M.D. on 05/06/2022 1:46 pm in Elation-health



PAGE 9/9 * RCVD AT 5/6/2022 2:50:52 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/4 * DNIS:8778433950 * CSID:Elation * ANI:4156925676 * DURATION (mm-ss):04-10

Lincoln Financial Group

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) authorize any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birth: ___ ___ ______ Social Security Number: ____ ______

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

SIGNATURE William J Reynolds DATE 5/6/22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: William J Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ______________

ADDRESS: ______________________________ (Street)

______________ (City) ______________ (State) ______________ (Zip Code)

PHONE NO: ______________________________

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3050
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Your Information

William | J | Reynolds
Full Name (First) (M.I.) (Last Name)

Social Security Number | Date of Birth

S

Phone Number

☒ Male ☐ Female

City | State | Zip Code

Email Address

## 2. Your Employer

John Soules Foods
Employer Name

JSOULES3
Group ID

Sales Analyst
Job Title

10212373
Policy Number

Tyler TX
Billing Location

## 3. Reason for inability to work

Severe, debilitating anxiety since heart attacks (2) and bypass surgery.
Description of Sickness, Injury or Pregnancy

4 / 22 / 22
Date Last Worked

Injury work related? ☒ Yes ☐ No

## 4. Other Income Being Received

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | | __/__/__ | __/__/__ | __/__/__ |
| Workers' Comp | | __/__/__ | __/__/__ | __/__/__ |
| Salary Continuance | | __/__/__ | __/__/__ | __/__/__ |
| State Disability | | __/__/__ | __/__/__ | __/__/__ |
| Other Disability | | __/__/__ | __/__/__ | __/__/__ |
| Sick Pay | | __/__/__ | __/__/__ | __/__/__ |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

☒ Yes ☐ No If yes, indicate how much? $50.00

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

## 5. Who is your treating health care provider?

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Dr Clinton Carter
Physician's Full Name

903 630 7130
Phone Number

N/A
Fax Number

2385 Oak Alley
Street Address

Tyler | TX | 75703
City | State | Zip Code

## 6. Account for Direct Deposit ☒ Checking ☐ Saving

Capital One Bank
Bank Name

Routing

Account Number

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

William J Reynolds (signature) | 5/6/22
Signature | Date

William J Reynolds
Print Name

(Please see FRAUD NOTICES attached)

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☒ Yes ☐ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ☒ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:
   Anxiety due to Stress And Severe pressure regarding my performance since heart Attacks and open heart Surgery.
4. Please provide the location and address where the illness or injury occurred:
   John Soules Foods 10150 FM14 Tyler Tx 75706
5. Please provide the Responsible Party's information:
   1. Name: John Soules Foods
   2. Address: 10150 FM 14 Tyler Tx 75706
   3. Telephone Number: 903 592 9800
   4. Insurance Company's Name: Lincoln National
   5. Claim Number: ______
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J. Reynolds

Signature: [signature] Date: 5 / 6 / 22

5. Who is your treating health care provider?

Date

[illegible] of my ability. I understand that fraudulently answering any of these [illegible] of any [illegible]. I further understand that I have [illegible] obligation to [illegible] any of the above information change in the future.

... used by Lincoln to evaluate and administer my claim for benefits. I also authorize ...

... my employer ...

... may further authorize ...

... will be considered as valid as the original ...

SIGNATURE [illegible] DATE [illegible]

PRINT NAME [illegible]

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Your Information

Full Name (First): William | (M.I.): J | (Last Name): Reynolds

Social Security Number: | Date of Birth:

Street Address:

Phone Number: | ☒ Male ☐ Female

City: | State: | Zip Code:

Email Address:

## 2. Your Employer

Employer Name: John Soules Foods

Group ID: JSOULES3 | Job Title: Sales Analyst

Policy Number: 10212373 | Billing Location: Tyler TX

## 3. Reason for inability to work

Description of Sickness, Injury or Pregnancy: Severe, debilitating anxiety since heart attacks (2) and bypass surgery.

Date Last Worked: 4/22/22

Injury work related? ☒ Yes ☐ No

## 4. Other Income Being Received

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | | / / | / / | / / |
| Workers' Comp | | / / | / / | / / |
| Salary Continuance | | / / | / / | / / |
| State Disability | | / / | / / | / / |
| Other Disability | | / / | / / | / / |
| Sick Pay | | / / | / / | / / |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

☒ Yes ☐ No If yes, indicate how much? $50.00

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

## 5. Who is your treating health care provider?

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Physician's Full Name: Dr Clinton Carter

Phone Number: 9036307130 | Fax Number: N/A

Street Address: 2385 Oak Alley

City: Tyler | State: TX | Zip Code: 75703

## 6. Account for Direct Deposit ☒ Checking ☐ Saving

Bank Name: Capital One Bank

Routing:

Account Number:

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: [signature] | Date: 5/6/22

Print Name: William J Reynolds

(Please see FRAUD NOTICES attached)

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☒ Yes ☐ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐Yes ☒No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:
   Anxiety due to stress and severe pressure regarding my performance since heart attacks and open heart surgery.
4. Please provide the location and address where the illness or injury occurred:
   John Soules Foods 10150 FM14 Tyler TX 75706
5. Please provide the Responsible Party's information:
   1. Name: John Soules Foods
   2. Address: 10150 FM 14 Tyler TX 75706
   3. Telephone Number: 903 592 9800
   4. Insurance Company's Name: Lincoln National
   5. Claim Number: ______
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: ______
   2. Address: ______
   3. Telephone Number: ______
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J. Reynolds

Signature: [signature] Date: 5 / 6 / 22

Lincoln Financial Group

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) authorize any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birth: Social Security Number: ______

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

SIGNATURE William J Reynolds DATE 5/6/22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: William J Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ______

ADDRESS: ______ (Street)

______ (City) (State) (Zip Code)

PHONE NO: ______

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employee

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Your Information

Full Name (First): William (M.I.): J (Last Name): Reynolds

Social Security Number: Date of Birth:

Street Address:

Phone Number: ☒ Male ☐ Female

City: State: Zip Code:

Email Address:

## 2. Your Employer

Employer Name: John Soules Foods

Group ID: JSOULES3 Job Title: Sales Analyst

Policy Number: 10212273 Billing Location: Tyler TX

## 3. Reason for inability to work

Description of Sickness, Injury or Pregnancy: Severe, debilitating anxiety since heart attacks (2) HA bypass surgery.

Date Last Worked: 4/22/22

Injury work related? ☒ Yes ☐ No

## 4. Other Income Being Received

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | | / / | / / | / / |
| Workers' Comp | | / / | / / | / / |
| Salary Continuance | | / / | / / | / / |
| State Disability | | / / | / / | / / |
| Other Disability | | / / | / / | / / |
| Sick Pay | | / / | / / | / / |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

☒ Yes ☐ No If yes, indicate how much? $50.00

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

## 5. Who is your treating health care provider?

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Physician's Full Name: Dr Clinton Carter

Phone Number: 9036307130 Fax Number: N/A

Street Address: 2385 Oak Alley

City: Tyler State: TX Zip Code: 75703

## 6. Account for Direct Deposit ☒ Checking ☐ Saving

Bank Name: Capital One Bank

Routing Number:

Account Number:

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: William J Reynolds Date: 5/6/22

Print Name: William J Reynolds

(Please see FRAUD NOTICES attached)

## Illness or Injury Supplemental Questionnaire

Instructions: Please answer the questions to the best of your ability and sign and date below.

1. Is someone else responsible for your illness/injury? ☒ Yes ☐ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ☒ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:
Anxiety due to Stress And Severe pressure regarding my performance since heart Attacks and open heart Surgery.
4. Please provide the location and address where the illness or injury occurred:
John Soules Foods 10150 FM14 Tyler Tx 75706
5. Please provide the Responsible Party's information:
   1. Name: John Soules Foods
   2. Address: 10150 FM 14 Tyler Tx 75706
   3. Telephone Number: 903 592 9800
   4. Insurance Company's Name: Lincoln National
   5. Claim Number:
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name:
   2. Address:
   3. Telephone Number:
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: William J. Reynolds

Signature: [signature] Date: 5 / 6 / 22

Lincoln Financial Group

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Reynolds (Last) William (First) Joseph (Middle)

Date of Birth: _ Social Security Number: _

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** William J Reynolds **DATE** 5/6/22

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** William J Reynolds

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient _

**ADDRESS:** _ (Street)

_ (City) (State) (Zip Code)

**PHONE NO:** _

(Please see FRAUD NOTICES attached)

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Wednesday, July 20, 2022 4:51 PM |
| **To:** | entrprserip |
| **Subject:** | FW: std claim 1220042749 (secure) |
| **Attachments:** | Reynolds, William Benefits Statement.pdf |

---

**From:** Gorum, Kelly
**Sent:** Wednesday, July 20, 2022 4:51:07 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: std claim 1220042749 (secure)

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

---

**From:** Jacqulynn Brown <jbrown@jsfoods.com>
**Sent:** Wednesday, July 20, 2022 2:25 PM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Subject:** RE: std claim 1220042749 (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning Kelly,

I am attaching the benefit statement that has everything that you should be looking for. If there is something missing, please feel free to reach out to me.

---

**From:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Sent:** Wednesday, July 20, 2022 8:40 AM
**To:** Jacqulynn Brown <jbrown@jsfoods.com>
**Cc:** Brandy Jackson <bjackson@jsfoods.com>
**Subject:** std claim 1220042749 (secure)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

This message was sent securely using Zix®

Hello,

I have a claim for William Reynolds and just need some additional information. Can you please provide the following information?

- Confirmation of Long Term Coverage if applicable via enrollment form, benefit statement, screenshot of coverage or a paystub.

Please let me know if you have any questions,

Thank you,

Kelly

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Wednesday, July 27, 2022 6:49 AM |
| **To:** | entrprserip |
| **Subject:** | FW: short term disability |
| **Attachments:** | William Reynolds - DOS_ 07_26_2022.pdf; short-term continuance of disability.pdf |

---

**From:** Gorum, Kelly
**Sent:** Wednesday, July 27, 2022 6:48:44 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: short term disability

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Tuesday, July 26, 2022 4:24 PM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Subject:** FW: short term disability

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Kelly!!!

Our Kelly is out the rest of this week and I am trying to figure out where this was left off.

From what I can tell you were needing updated doctor notes for Bill Reynolds.

Please see attached. What else might you need to extend this disability claim??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Tuesday, July 26, 2022 4:02 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: short term disability

Please see attached visit notes and continuance of disability form. Let me know if you need any additional info.

Melissa

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Monday, July 25, 2022 1:32 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: short term disability

Mr. Reynolds is scheduled to see Dr. Carter tomorrow (7/26). I will email you the visit notes as soon as Dr. Carter completes them.

Melissa

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Wednesday, July 20, 2022 11:59 AM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** RE: short term disability

Hi Melissa,
His STD benefits were only approved through 7/18. They need the medical records as soon as possible in order to extend it through the 12 week period. This would be an additional 2 weeks or around 8/1.

Let us know if you need any other information.
Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Wednesday, July 20, 2022 11:07 AM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** Re: short term disability

When does his STD end? He is scheduled to see a provider on 7/26. Does the paperwork need to be completed sooner? I reached out to the patient and asked him if he's wanting to be cleared to return to work or if he's wanting it extended.

Melissa

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Tuesday, July 19, 2022 3:56 PM

**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Subject:** RE: short term disability

Melissa,
Sorry about that. Attached is the continuation form.

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Tuesday, July 19, 2022 3:55 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Cc:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** JSF: short term disability

Melissa,

Would you be able to forward medical records showing he is not capable of working through the 12 weeks?
Attached is a physician's statement to complete and send with the medical records.

Thank you!
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Tuesday, July 19, 2022 1:11 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** short term disability

Danyel forwarded to me the email that you sent her about William Reynold's short-term disability. The patient has a follow up appointment on 7/26. He said HR was requiring a note for him to return to work, but it has been my understanding that they can return to work at the end of the designated time off unless it needs to be extended. We do not have any recent visit notes since patient was originally taken off work.

*Melissa Roddy, BSN, RN*
My MD SELECT
2385 Oak Alley
Tyler, TX 75703

P: 903-630-7130 / F: 903-705-0992

www.mymdselecttyler.com

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Wednesday, July 27, 2022 4:17 PM |
| **To:** | entrprserip |
| **Subject:** | FW: short term disability |
| **Attachments:** | William Reynolds - DOS_ 07_26_2022.pdf; short-term continuance of disability.pdf |

---

**From:** Gorum, Kelly
**Sent:** Wednesday, July 27, 2022 4:16:35 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: short term disability

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Tuesday, July 26, 2022 4:24 PM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Subject:** FW: short term disability

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Kelly!!!

Our Kelly is out the rest of this week and I am trying to figure out where this was left off.

From what I can tell you were needing updated doctor notes for Bill Reynolds.

Please see attached. What else might you need to extend this disability claim??

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Tuesday, July 26, 2022 4:02 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: short term disability

Please see attached visit notes and continuance of disability form. Let me know if you need any additional info.

Melissa

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Monday, July 25, 2022 1:32 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: short term disability

Mr. Reynolds is scheduled to see Dr. Carter tomorrow (7/26). I will email you the visit notes as soon as Dr. Carter completes them.

Melissa

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Wednesday, July 20, 2022 11:59 AM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Cc:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** RE: short term disability

Hi Melissa,
His STD benefits were only approved through 7/18. They need the medical records as soon as possible in order to extend it through the 12 week period. This would be an additional 2 weeks or around 8/1.

Let us know if you need any other information.
Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Wednesday, July 20, 2022 11:07 AM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** Re: short term disability

When does his STD end? He is scheduled to see a provider on 7/26. Does the paperwork need to be completed sooner? I reached out to the patient and asked him if he's wanting to be cleared to return to work or if he's wanting it extended.

Melissa

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Tuesday, July 19, 2022 3:56 PM

**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Subject:** RE: short term disability

Melissa,
Sorry about that. Attached is the continuation form.

Thanks,
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** kelly.sackett <kelly.sackett@ebctx.com>
**Sent:** Tuesday, July 19, 2022 3:55 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Cc:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** JSF: short term disability

Melissa,

Would you be able to forward medical records showing he is not capable of working through the 12 weeks?
Attached is a physician's statement to complete and send with the medical records.

Thank you!
Kelly

Kelly Sackett
Employee Benefits Consulting | EBC
Cell: 903.521.4680
Kelly.Sackett@EBCTX.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Tuesday, July 19, 2022 1:11 PM
**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** short term disability

Danyel forwarded to me the email that you sent her about William Reynold's short-term disability. The patient has a follow up appointment on 7/26. He said HR was requiring a note for him to return to work, but it has been my understanding that they can return to work at the end of the designated time off unless it needs to be extended. We do not have any recent visit notes since patient was originally taken off work.

*Melissa Roddy, BSN, RN*
My MD SELECT
2385 Oak Alley
Tyler, TX 75703

P: 903-630-7130 / F: 903-705-0992

www.mymdselecttyler.com

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, August 8, 2022 9:56 AM |
| **To:** | entrprserip |
| **Subject:** | FW: disability paperwork |
| **Attachments:** | doc04804420220808082434.pdf; William Reynolds - DOS_ 07_26_2022.pdf |

**From:** Gorum, Kelly
**Sent:** Monday, August 8, 2022 9:55:45 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: disability paperwork

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Monday, August 8, 2022 8:50 AM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Subject:** FW: disability paperwork

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Kelly! Please review and advise if anything else is needed. THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Monday, August 8, 2022 8:37 AM
**To:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: disability paperwork

Dr. Carter completed the form. I noticed he did not specify a return-to-work date. Also the only most recent visit note that we have is July 26th. Is that ok?

Melissa

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Friday, August 5, 2022 1:27 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Subject:** RE: disability paperwork

Hi Melissa!! For today, you can use the same form as you have in the past. If LFG approves his

LFG needs updated medical records or office visit notes from his last office visit to extend his short term benefits. His max benefit amount for short term disability is through 08/09/2022. If LFG does approve to that date of 08/09/2022., they will roll his claim over to the long term disability department.

THANKS and have a great weekend!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Thursday, August 4, 2022 4:05 PM
**To:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: disability paperwork

Mr. Williams is wanting to change it to long-term disability. Is there a different form that Dr. Carter needs to complete? Does Dr. Carter need to specify a certain end date for LTD? I apologize for all of the questions. We do not typically have a patient on disability for this long, so it's a new process for me.

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Thursday, August 4, 2022 3:11 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Subject:** RE: disability paperwork

Yes ma'am. You can send to me once completed to send to LFG.

THANKS

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Thursday, August 4, 2022 3:11 PM
**To:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: disability paperwork

Mr. Williams states he is still unable to return to work. Does Dr. Carter need to fill out another disability continuance form?

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Thursday, August 4, 2022 2:46 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Subject:** RE: disability paperwork

Anytime!! LFG has approved his claim through 08.01. They will need more current records to extend past then. We are waiting for him to advise his return to work date.

Appreciate you as well!!!!

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Thursday, August 4, 2022 2:45 PM
**To:** Karen Dalton <karen.dalton@ebctx.com>
**Subject:** Re: disability paperwork

Oh wow. I had no idea she left. Thank you for helping with this patient. Let me know if there is anything I need to do on our end. LFG seems to like to make the process a bit difficult.

Melissa

---

**From:** Karen Dalton <karen.dalton@ebctx.com>
**Sent:** Thursday, August 4, 2022 2:24 PM
**To:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>; kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** RE: disability paperwork

Hi! Kelly is no longer with EBC. I intercepted your email and sent the records on 07.26 to LFG. Bill is well aware of that as he also emailed LFG himself.

I'll follow up with LFG for status. THANKS

PS. You can direct emails to me for now.

—

Karen L. Dalton
Employee Benefits Consulting | EBC
Cell: 817.925.7666
Karen.Dalton@ebctx.com
www.EBCTX.com

---

**From:** Melissa Tyler Nurse <nursemelissa@mymdselect.com>
**Sent:** Thursday, August 4, 2022 2:07 PM

**To:** kelly.sackett <kelly.sackett@ebctx.com>
**Subject:** disability paperwork

William Reynolds reached out asking me to urgently send visit notes to Lincoln Financial for his long-term disability. I emailed the visit notes and STD continuance form to you back on 7/26. Do I need to send anything to Lincoln Financial?

*Melissa Roddy, BSN, RN*

My MD SELECT
2385 Oak Alley
Tyler, TX 75703

P: 903-630-7130 / F: 903-705-0992
www.mymdselecttyler.com

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Tuesday, May 17, 2022 1:48 PM
**To:** entrprserip
**Subject:** FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

---

**From:** Bill Reynolds
**Sent:** Tuesday, May 17, 2022 1:47:48 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Gorum, Kelly; Disability Claims; mrostis@jsfoods.com
**Subject:** Re: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Kelly,

On April 28 (my appointment), Dr. Clinton Carter suggested minimum 6 week (better 12 weeks) leave of absence due to stress. He can be reached at 903-593-8441. Also, my HR director, Mr. Mike Rostis, informed me that my FMLA was to begin on May 9, 2022.

Please keep me apprised of the situation as ***I have no income right now.*** I am not eligible for any SSI disability due to my age (68).

Thank you,

Bill Reynolds

----- Forwarded Message -----
**From:** Kelly Gorum <kelly.gorum@lfg.com>
**To:** " <
**Cc:** "" <>
**Sent:** Tuesday, May 17, 2022, 08:46:06 AM CDT
**Subject:** Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, May 12, 2022 1:08 PM |
| **To:** | entrprserip |
| **Subject:** | FW: std claim (secure) |
| **Attachments:** | Bill Reynolds STD.pdf |

---

**From:** Gorum, Kelly
**Sent:** Thursday, May 12, 2022 1:08:09 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: std claim (secure)

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

---

**From:** Christina Long <clong@jsfoods.com>
**Sent:** Wednesday, May 11, 2022 10:33 AM
**To:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Subject:** RE: std claim (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Mr. Reynolds is a Class 2 employee. Attached is his employer statement.

Thank you,

**Christina Long**
**Human Resources Specialist**
**John Soules Foods | Tyler**
Office | 903-592-9800 Ext. 270
Fax | 903-363-1107
Email | clong@jsfoods.com
www | JohnSoulesFoods.com

**From:** Gorum, Kelly <Kelly.Gorum@lfg.com>
**Sent:** Tuesday, May 10, 2022 11:47 AM
**To:** Christina Long <clong@jsfoods.com>
**Subject:** std claim (secure)

You don't often get email from kelly.gorum@lfg.com. Learn why this is important

This message was sent securely using Zix®

Hello,

I have a claim for William Reynolds claim number 1220042749 and I am in need of some additional information. Can you please provide the following?

- Employer's Statement ( I have attached a copy if you need it)
- Job Description
- Class

Thank you and let me know if you have any questions.

Kelly

**Kelly Gorum**
Claims Examiner II
Short Term Disability

**Lincoln Financial Group**
8801 Indian Hills Dr.
Omaha, NE 68114

800-423-2765 Toll Free
Ext. 3871
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.

**Lavoie, Chantal**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, May 17, 2022 10:41 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1220042749 (SECURE) |
| **Attachments:** | LFG.PDF |

---

**From:** Bill Reynolds
**Sent:** Tuesday, May 17, 2022 10:40:59 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Gorum, Kelly; Disability Claims; mrostis@jsfoods.com
**Subject:** Fw: Lincoln Financial Group Information for Claim 1220042749 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Kelly,

On April 28 (my appointment), Dr. Clinton Carter suggested minimum 6 week (better 12 weeks) leave of absence due to stress. He can be reached at 903-593-8441. Also, my HR director, Mr. Mike Rostis, informed me that my FMLA was to begin on May 9, 2022.

Please keep me apprised of the situation as ***I have no income right now.*** I am not eligible for any SSI disability due to my age (68).

Thank you,

Bill Reynolds

----- Forwarded Message -----
**From:** Kelly Gorum <kelly.gorum@lfg.com>
**To:** " <
**Cc:** "" <>
**Sent:** Tuesday, May 17, 2022, 08:46:06 AM CDT
**Subject:** Lincoln Financial Group Information for Claim 1220042749 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1220042749

Please review the attached letter and/or document(s) regarding the Claim #1220042749 for William Reynolds. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Gorum**
**Claims Examiner II, Claims**
Elkhorn, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 3871
Fax: 877-843-3950
Email: Kelly.Gorum@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by Zix®.

**Lavoie, Chantal**

**From:** Disability Claims
**Sent:** Thursday, May 5, 2022 12:59 PM
**To:** entrprserip
**Subject:** FW: Short term disability claim form-William J Reynolds, John Soules Foods
**Attachments:** Short Term Disability Claim Form Statement Of Employee.pdf

---

**From:** Bill
**Sent:** Thursday, May 5, 2022 12:58:18 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** Short term disability claim form-William J Reynolds, John Soules Foods

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Sent from my iPhone